IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al.,<br><br>Defendants. | CIVIL NO. CV03-00385 SOM LEK<br>(Copyright)<br><br>Volume 1 |

DEPOSITION OF WAYNE BERRY,

taken on behalf of the Defendant, Post-Confirmation Trust, at the Law Offices of Kobayashi, Sugita & Goda, 999 Bishop Street, Suite 2600, Honolulu, Hawaii, 96813, commencing at 8:59 a.m., on Wednesday, May 18, 2005, pursuant to Notice.

BEFORE: Julie A. Peterson, CSR #361, CRR, RMR
Registered Professional Reporter
Notary Public, State of Hawaii

Ali'i Court Reporting
2355 Ala Wai Blvd., Suite 306
Honolulu, Hawaii 96815
(808) 926-1719

EXHIBIT "A"

APPEARANCES:

For the Plaintiff: TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813

For the Defendant Post-Confirmation Trust:
LEX R. SMITH, ESQ.
ANNE E. LOPEZ, ESQ.
Kobayashi, Sugita & Goda
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

and

ERIC C. LIEBELER, ESQ.
DAMIAN D. CAPOZZOLA, ESQ.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California 90017

For the Defendants Mark Dillon, Teresa Noa and Brian Christensen, et al:
LYLE S. HOSODA, ESQ.
RAINA P.B. MEAD, ESQ.
Lyle S. Hosoda & Associates
345 Queen Street, Suite 804
Honolulu, Hawaii 96813

A What do you call it? Like a post office box.

Q Is your father named Paul Berry?

A Yes.

Q Did Paul Berry ever file a suit against you, sir?

A I believe he did, yes.

Q Did you ever appear to defend yourself in that action?

MR. HOGAN: Objection, calls for legal conclusion. Also vague as to the term "appear," whether or not it means he physically appeared in the courtroom or whether he filed an appearance.

A I'm not too sure how to answer that with the legal -- I don't know what the legal -- I'm not trying to evade your question, but the legal term "appear" technically means.

Q (By Mr. Liebeler): Do you know where that litigation was brought, sir, what state it was filed in?

A California.

Q Did you ever physically travel to the California courthouse and go to that courthouse for purposes of that litigation?

A No.

Q Did you ever retain a lawyer to defend you in

that litigation?

A I'm hesitating because I don't know how to answer the defense of it. If I ever -- Originally, no. Later, yes.

Q Did you ever retain counsel to represent you in California for purposes of that litigation?

A Yes.

Q Who was that lawyer?

A I don't recall the name.

Q Do you know, yes or no, whether or not that lawyer ever appeared on your behalf in California court for purposes of that litigation?

A It's my understanding he did. I wasn't there.

Q Are you aware that a default judgment was entered against you in that litigation?

A I think there was a default judgment entered against me in litigation where I had not retained an attorney to appear for me at that time.

Q Did your father sue you more than once?

A Not that I'm aware of.

Q Has that judgment, to your understanding, ever been satisfied?

A I don't know.

Q You're aware that there's a judgment currently against you, sir?

A Last time I looked several years ago, yes.

Q What is it that you have done, if anything, to satisfy that judgment?

MR. HOGAN: I'm going to object on the grounds of relevance.

A What do you mean by "satisfy"?

Q (By Mr. Liebeler): Pay.

A I think at one point years ago there were some offers made and they weren't accepted, but nothing more than that.

Q Has any material amount of that judgment actually been paid by you, sir?

A Not that I'm aware of.

Q Let's go ahead and mark an exhibit as 46.

(Whereupon, Berry Deposition Exhibit 46 marked for identification, 5-18-05.)

MR. HOGAN: Just for the record, we agreed to go beyond seven-hour limit based on the fact that representation be relevant questioning to this depo. That is apparently not so, so we will hold you to the seven hours.

Q (By Mr. Liebeler): Have you ever seen 46 before, Mr. Berry?

MR. HOGAN: Object to the foundation for the document. It's not a certified copy of the judgment.

The witness can answer the question if he can.

MR. LIEBELER: Just so we're clear, I'm not purporting to serve him with it.

MR. HOGAN: I'm just objecting on the grounds of foundation, Counsel.

MR. LIEBELER: I'm asking whether he's seen the document, yes or no. There's no proper foundation objection to that question.

MR. HOGAN: Again, I've just made an objection, Counsel. Do I get to do that?

MR. LIEBELER: Fair point, Mr. Hogan.

A It looks to me like a collection of documents. I don't remember seeing any of them.

Q (By Mr. Liebeler): Your recollection, then, sir, is that you have seen none of the documents that have been collected together as Exhibit 46; am I right?

A I don't recall them, that's correct.

Q Looking at the sixth page of 46, which is the second page of the Garnishee Order, you see where it indicates that you owe approximately $273,494?

MR. HOGAN: Objection, document speaks for itself.

A Yes.

Q (By Mr. Liebeler): Is that consistent with

your understanding of the amount of the judgment that was entered against you in California?

A I don't know what the amount is that was entered as a judgment in California.

Q Is the number that I articulated to you consistent with your knowledge of that judgment?

A I'm not sure.

Q You have no basis to judge whether the 273,000 odd number is consistent or inconsistent with the judgment entered against you in California, sir?

MR. HOGAN: Objection, compound.

A Can you rephrase that?

Q (By Mr. Liebeler): Do you have any basis to tell me that that $273,000 odd number is in any way incorrect?

A No.

Q No, you have no such basis, correct?

A I have no basis.

Q Do you, as we sit here today, sir, have the ability to satisfy that judgment?

MR. HOGAN: Objection, relevance.

A What do you mean by "satisfy"?

Q (By Mr. Liebeler): Pay it.

MR. HOGAN: Vague as to the term "sit here today."

A I can't reach into my pocket and pull that kind of money out right now, no.

Q (By Mr. Liebeler): Do you have that amount of money available to you to pay that judgment if necessary?

MR. HOGAN: Objection as to the term "available to you."

A I'm not too sure what that means, available to me.

Q (By Mr. Liebeler): Well, do you have sufficient assets that you could sell to pay that judgment? Do you have sufficient borrowing capacity to pay that judgment? Could you satisfy that judgment, sir?

MR. HOGAN: Objection, calls for speculation.

A I don't know. I'd have to -- Do you want me to guess?

Q (By Mr. Liebeler): I want you to give me your best testimony, sir.

A I don't know.

Q Do you have a checking account?

A Not right now, no.

Q Do you have a savings account?

A No.

Q Do you have any money in your wallet?

MR. HOGAN: I'm going to object, and I don't have any idea where this is going. It is obviously an attempt to attack the plaintiff. No relevance whatsoever regarding a matter in which Mr. Smith has been actively engaged and has conflicted your firm as well as his firm presently from representing the PCT. I'll state that for the record. I'll ask to have a copy of the transcript provided to the Office of the United States Trustee in Delaware to make it clear that you are conflicted.

Q (By Mr. Liebeler): Go ahead.

A I don't have a wallet.

Q Do you have any money in your personal possession right now, sir?

A Yes.

Q How much?

MR. HOGAN: I object to this question.

A A couple hundred dollars.

Q (By Mr. Liebeler): Do you own any real estate assets?

A No.

Q Do you own any liquid stocks or bonds or securities of any type?

A "Liquid" meaning?

Q Readily marketable.

A No.

Q Do you hold any illiquid securities of any type?

MR. HOGAN: I would like to request we take a break and contact the Discovery Master, have this transcript read to the Discovery Master, and ask him to rule on whether or not this is out of bounds in regard to this deposition.

MR. LIEBELER: There's a question pending, sir.

MR. HOGAN: The witness can answer the question.

A Not that I can think of right now.

MR. HOGAN: I've asked to have a ruling made by the Discovery Master. His appointment is consistent with his obligation to make such rulings. Are you going to permit me to ask for that ruling, sir?

MR. LIEBELER: I think I have one more question on this document and then we're done with it for the day. So if you want to do that for one question about the address of the witness that appears on another document, you can, but I don't think it a productive use of our time.

MR. HOGAN: Go ahead, ask the question.

MR. LIEBELER: Let's have marked as Exhibit 47 that one.

(Whereupon, Berry Deposition Exhibit 47 marked for identification, 5-18-05.)

MR. HOGAN: I'll make an objection, foundation. The document is not a certified document. The witness can answer questions.

Q (By Mr. Liebeler): Have you ever seen a copy of that document before, Mr. Berry?

A No, not that I can recall.

Q On the face of the document it indicates that at one point you had an address at 59-379 Alapio Road in Haleiwa. Was that at one point your address?

A Yes.

Q When, sir?

A I'm trying to place the year. It seems like June 2001.

Q That was when it was last your address, sir?

A I think so.

MR. LIEBELER: Mr. Hogan, I have one more question on this document and I understand that you may want to go to the Discovery Master. Let me tell you what my question is and I think you'll probably let me ask it, although I don't want to presume.

I just want to ask the witness whether or not the examination that is articulated by this document ever took place.

MR. HOGAN: Go ahead and ask the question.

Q (By Mr. Liebeler): Mr. Berry, this document indicates that it's an order for an examination of you as a judgment debtor. Did that examination ever take place, sir?

A Not that I recall.

Q You indicated to us at the last deposition, Mr. Berry, that API was a company in which you were some way associated or affiliated, and I don't want to butcher the term, but you know about a company called API, right?

A You mean Atlantic Pacific International, is that -- using API as an acronym for that?

Q That's correct.

A Yes.

Q And you typically have used API as an acronym for Atlantic Pacific International, correct?

A Yes. I just wanted to make sure we were talking about the same thing.

Q Correct, and we are.

Is API still seeking to collect its receivables?

A I'm not sure. You mean out to collect from -- Filed a claim in the bankruptcy.

Q Well, that was going to be my next question.

STATE OF HAWAII )
) ss.
CITY AND COUNTY OF HONOLULU )

I, Julie A. Peterson, Notary Public, State of Hawaii, do hereby certify:

That on May 18, 2005, commencing at 8:59 a.m., appeared before me Wayne Berry, the witness whose deposition is contained herein; that prior to being examined he was by me duly sworn; that the deposition was taken in machine shorthand by me and thereafter reduced to typewriting under my supervision; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

That the deponent was notified through counsel, by mail or by telephone, to appear and sign; that if the transcript is filed without signature, deponent has failed to appear and the transcript is therefore kept on file without signature pursuant to Court rules.

I further certify that I am not attorney for any of the parties hereto, nor in any way interested in the outcome of the cause named in the caption.

Dated at Honolulu, Hawaii, this 22nd day of May, 2005.

NOTARY PUBLIC, STATE OF HAWAII

My Commission Expires: 9/1/2006

JULIE A. PETERSON NOTARY PUBLIC STATE OF HAWAII