IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;

              Plaintiff,

    vs.

HAWAIIAN EXPRESS SERVICE, INC., et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL NO. CV03-00385 SOM-LEK
(Copyright)

**MEMORANDUM IN SUPPORT OF DEFENDANT PCT'S MOTION IN LIMINE NO. 2 (TO EXCLUDE THOMAS UENO)**

Judge:      Hon. Susan O. Mollway
Trial Date:   January 24, 2006

Hearing Date:  January 20, 2006
Hearing Time:  2:00 p.m.

# TABLE OF CONTENTS

A.    Introduction ........................................................................................... 1

B.    Federal Rule of Evidence 702 Requires That Expert Testimony Stand on
      Reliable Application of Scientific Principles to Sufficient Facts or Data. ..... 2

C.    Ueno's Opinions Do Not Meet the Standards of F.R.E. 702. ....................... 3

      1.    The Court Should Exclude Ueno's Opinion On Profits. ..................... 5

            a.    Ueno based his profits analysis on unsupported facts. .................. 5

            b.    Ueno does not link profits to infringement. ................................ 7

      2.    The Court Should Exclude Ueno's Opinion On Actual Damages. .... 10

            a.    Berry's actual damages fail because they are not related to
                  "market value." ..................................................................... 10

            b.    Berry's actual damages also fail because they are based on
                  erroneous premises and are not causally connected to the alleged
                  infringement. ......................................................................... 12

            c.    The actual damages opinion has no probative value and is likely to
                  confuse the jury. .................................................................... 15

      3.    The Court Should Exclude Mr. Ueno's Late, New Opinions. ........... 16

D.    Conclusion ........................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

Adams Apple Distr. Co. v. Papeleras Reunidas, S.A.,
  773 F.2d 925 (7th Cir. 1985) .................................................................. 3

Agent Orange Prod. Liab. Litig.,
  611 F. Supp. 1223 (E.D.N.Y. 1985) ...................................................... 12

Amerinet, Inc. v. Xerox Corp.,
  972 F.2d 1483 (8th Cir. 1992) ................................................................ 7

Argus Inc. v. Eastman Kodak Co.,
  612 F. Supp. 904 (S.D.N.Y. 1985) ......................................................... 3

Cabrera v. Cordis Corp.,
  134 F.3d 1418 (9th Cir. 1998) ................................................................ 2

China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.,
  856 F. Supp. 856 (D. Del 1994)............................................................. 16

City of Vernon v. Southern California Edison Co.,
  955 F.2d 1361 (9th Cir. 1992) ................................................................ 6

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993)...........................................................2, 3, 4, 11

Domingo ex rel. Domingo v. T. K. M.D.,
  289 F.3d 600 (9th Cir. 2002) .................................................................. 3

First Savings Bank, F.S.B. v. U.S. Bancorp,
  117 F. Supp. 2d 1078 (D. Kan. 2000)...................................................... 9

Guidroz-Brault v. Missouri Pac. R.R.,
  254 F.3d 825 (9th Cir. 2001) .................................................................. 2

Hangarter v. Provident Life & Accident Ins. Co.,
  373 F.3d 998 (9th Cir. 2004) .................................................................. 2

Jack v. Glaxo Wellcome, Inc.,
  239 F. Supp. 2d 1308 (N.D. Ga. 2002)................................................... 4

Jenkins v. Whittaker Corp.,
  785 F.2d 720 (9th Cir. 1986) ................................................................ 17

Kumho Tire Co. v. Carmichael,
  526 U.S. 137 (1999 ................................................................................ 2

Mackie v. Rieser,
  296 F. 3d 909 (9th Cir. 2002).................................................5, 7, 8, 10

McGlinchy v. Shell Chem. Co.,
  845 F.2d 802 (9th Cir. 1988) ................................................................ 15

Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd.,
  125 S. Ct. 2764 (2005)........................................................................... 5

Oiness v. Walgreen Co.,
88 F.3d 1025 (Fed. Cir. 1996) ............................................................ 15

Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto
Rico,
248 F.3d 29 (1st Cir. 2001).................................................................. 17

Paoli R.R. Yard PCB Litig.,
35 F.3d 717 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995)............................ 4

Paradigm Sale, Inc. v. Weber Marking Sys., Inc.,
880 F. Supp. 1247 (N.D. Ind. 1995) ..................................................... 16

Piper v. J.R. Simplot Co., Inc.,
24 F.3d 248 (9th Cir. 1994) ................................................................ 17

Polar Bear Productions, Inc. v. Timex Corp.,
384 F.3d 700 (9th Cir. 2004) ................................................... 5, 10, 11

Real Estate Value Co. v. USAir, Inc.,
979 F. Supp. 731 (N.D. Ill. 1997) ....................................................... 15

Rebel Oil Co., Inc. v. Atlantic Richfield Co.,
146 F.3d 1088 (9th Cir. 1998) .............................................................. 4

Schiller & Schmidt, Inc. v. Nordisco Corp.,
969 F.2d 410 (7th Cir. 1992) ....................................................... 7, 8, 9

Shaw by Strain v. Strackhouse,
920 F.2d 1135 (3d Cir. 1990) ............................................................... 5

Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.,
73 F.3d 546 (5th Cir. 1996), cert. denied, 519 U.S. 811 (1996)......................... 17

Tyger Constr. Co. v. Pensacola Constr. Co.,
29 F.3d 137 (4th Cir. 1994) ................................................................. 5

United States v. City of Miami, Fla.,
115 F.3d 870 (11th Cir. 1997) ............................................................. 5

United States v. Williams,
95 F.3d 723 (8th Cir. 1996) ................................................................. 3

Virginia Panel Corp. v. MAC Panel Co.,
133 F.3d 860 (Fed. Cir. 1997), cert. denied, 119 S. Ct. 52 (1998)....................... 7

Wong v. Regents of Univ. of Cal.,
410 F.3d 1052 (9th Cir. 2005) ............................................................ 16

## Rules

Fed. R. Civ. P. 26 ............................................................................ 22
Fed. R. of Evid. 702.......................................................... 1, 2, 4, 5

## Other Authorities

4 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 14.02[A], 14-12 (2005)..10

iv

## A.    Introduction

When asked about Fleming's profits, Wayne Berry's expert, Thomas Ueno, opined that "if you pull [Berry's] software out [of Fleming], there will be no gross profits." Ex. 25 (Ueno deposition, July 22, 2005) at 116:9-118:7. When pressed to identify the basis for this opinion, he responded only that the software was "feature rich" and that Fleming "wouldn't give it up." Ex. 25 at 118:22-119:10. His entire factual basis for lost profits consists of two statements, one which is so vague it is meaningless, and the other which is factually wrong. Mr. Ueno's opinion fails as a matter of law, and should be excluded.

Ueno's analysis of purported "actual damages" likewise fails; it is based on incorrect and unsupportable assumptions that purport to generate a per-container license fee of $1,772 per container on software that Berry originally licensed for no charge at all. Fleming therefore moves this Court to exclude the testimony and report of Thomas Ueno from the trial of this matter and to prohibit Wayne Berry from introducing any of Mr. Ueno's opinions in any form.

Finally, Berry's counsel served a new opinion from Mr. Ueno on December 27, 2005. That opinion should also be excluded:  not only is it far too late, but it is (like Mr. Ueno's other opinions) conclusory and unreliable.

**B.    Federal Rule of Evidence 702 Requires That Expert Testimony Stand on Reliable Application of Scientific Principles to Sufficient Facts or Data.**

An expert's opinions must be relevant, reliable, and must not be unduly prejudicial. Federal Rule of Evidence 702 states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Cases interpreting this Rule have uniformly held that the evidence "assist the trier of fact," or in other words, that it be relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

The rule also demands that the evidence be reliable. *See id.* at 590. Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs. *See id.*; *Guidroz-Brault v. Missouri Pac. R.R.*, 254 F.3d 825, 830-31 (9th Cir. 2001). An expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field, and the opinion must be grounded on more than subjective belief or unsupported speculation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1421 (9th Cir. 1998).

The trial court therefore has broad discretion to exclude proposed opinions not conforming to these standards. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (broad discretion both in exercising gate keeping function and in determining how reliability is to be measured); *Domingo ex rel. Domingo v. T. K. M.D.*, 289 F.3d 600, 607 (9th Cir. 2002) (expert testimony properly excluded and summary judgment granted where proposed testimony was not based on objective and verifiable evidence).

In addition, a plaintiff's proffered damages calculation cannot be based upon "conjecture or speculation." *Adams Apple Distr. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir. 1985). Indeed, "[i]t is the obligation of a Court to exclude, in limine, exhibits and damage theories which are based on speculation and guesswork, and are not 'sufficiently probative.'" *Argus Inc. v. Eastman Kodak Co.*, 612 F. Supp. 904, 923 (S.D.N.Y. 1985).

## C.    Ueno's Opinions Do Not Meet the Standards of F.R.E. 702.

Ueno's damages opinions are unreliable. *See* Ex. 8 (Ueno Report, internal Attachment A, p. 4). His opinion on Fleming's profits from infringement is premised on the false assumption that Fleming refused to give up Berry's software. Furthermore, it fails to causally link profits to infringement. His opinion of actual damages is an unsupportable extrapolation based on flawed assumptions. The Court should bar both damages opinions because Berry has not shown by a

preponderance of the evidence that his expert's opinions rest on valid reasoning and methodology. *See Daubert,* 509 U.S. at 592 n.10; Fed. R. Evid. 702 Adv. Comm. Notes; *United States v. Williams*, 95 F.3d 723, 729 (8th Cir. 1996).

Under *Daubert*, the test for the admission of expert testimony "is not the correctness of the expert's conclusions but the soundness of his methodology." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 146 F.3d 1088, 1097 (9th Cir. 1998). Mr. Ueno offers no discernable methodology at all.   He simply jumps to unsupported conclusions without any factual support.   He "neither explain[ed] the methodology [he] followed to reach [his] conclusions nor point[ed] to any external source to validate that methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1319 (9th Cir. 1995).  In sum:

> his analysis is based, at least in significant part, on his own ipse dixit. Such opinions are generally not admissible under the rules of evidence or Daubert.

*Jack v. Glaxo Wellcome, Inc.,* 239 F. Supp. 2d 1308, (N.D. Ga. 2002). Ueno's analysis must be excluded because "[a]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." Fed. R. Evid. 702 Adv. Comm. Notes; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995).

1.    **The Court Should Exclude Ueno's Opinion On Profits.**

Ueno opines that during the relevant period of time (April 1, 2003 to June 9, 2003) Fleming's gross profits range from $1,922,303 to $20,970,582.  Ex. 26 at p. 10 (Ueno report, March 21, 2005).  But for damages for both direct and vicarious infringement, the law requires Berry (through Ueno) to articulate a causal connection between Berry's software and those profits.  *Mackie v. Rieser*, 296 F. 3d 909, 915-16 (9th Cir. 2002) (requiring causal showing); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2767 (2005) (elements of vicarious liability); *see also* Ex. 28 at 38 (June 27, 2005 Court Order) (*citing Mackie* and cases from other jurisdictions).  This Ueno did not do.

a.    **Ueno based his profits analysis on unsupported facts.**

The threshold problem is Ueno's flawed assumptions.  Opinions founded on unsupported and erroneous assumptions carry no weight.  *See e.g. United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997) (finding it proper to exclude opinions derived from erroneous data); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990) (affirming exclusion of expert opinion founded on assumption contrary to facts in record).

Instead of analyzing infringing software and profits, Ueno simply assumed the Berry software was critical to Fleming's operations -- and thus, "if you pull the software out, there will be no gross profits." Ex. 25 at 116:9-118:7. When pressed to identify the basis for this assumption, his entire response was that the software was "feature rich" and that Fleming "wouldn't give it up." Ex. 25. at 118:22-119:10. Ueno went on to contradict himself, conceding Berry's software was **not** responsible for one hundred percent of the profit:

> "I'm not saying that, you know, by itself, okay, it made all the profits by itself."

Ex. 25 at 117:2-117:4. This contradiction alone demonstrates that Ueno has no idea what profits, if any, were related to Berry's software.

This Court has already suggested that Ueno's factual bases are inadequate: "Ueno does not identify a single relevant feature, and otherwise a "feature rich" description "does not necessarily establish that Berry's software was integral to Fleming's operations or necessary for Fleming's survival. Indeed, a feature rich software program could reasonably play an insignificant role in the operation of a company." Ex. 27 at 21 (October 21, 2005 Order). His assertion that Fleming wouldn't give up the software is "incorrect, as a matter of law of the case." Ex. 27 at 21; *see also* Ex. 28 at 27. Because Ueno's opinions are based on unsupported facts, his opinion should be barred.

### b.    Ueno does not link profits to infringement.

In addition to the underlying false assumptions, Ueno's analysis never attempted to allocate any portion of Fleming's alleged profits to the use of Berry's software, changed or not, during the relevant time. *See* Ex. 26; Ex. 25 at 104:16-104:18; 115:23-119:10. But a plaintiff cannot recover damages that are not attributable to a defendant's alleged wrongful conduct. *See City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992) (concluding that there was "no proper proof of damages at all" and upholding summary judgment against plaintiff for failure to prove damages where damages study failed to disaggregate damages); *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 873 (Fed. Cir. 1997) ("When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principles estimate of the amount of damage."), *cert. denied*, 119 S. Ct. 52 (1998); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1504 (8th Cir. 1992) (ruling that plaintiff failed to establish damages on the grounds that "[i]n its proof of tort damages, as in its proof of antitrust damages, [plaintiff] made no effort to distinguish the effect of other probable causes of its business decline from the effects of [defendant's] alleged tortious behavior").

Ueno fails to causally connect profits with infringement. His opinion should be barred. *See Mackie*, 296 F.3d at 916; *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992). In *Mackie*, plaintiffs sought profits the Seattle Symphony allegedly gained from ticket purchases and membership subscriptions that stemmed from the Symphony's infringing use of plaintiff's artwork. Plaintiff's expert initially stated that he could not understand how there would be a link between the use of the artwork and any revenues generated through including the artwork in the Symphony's direct-mail literature. *Mackie*, 296 F.3d at 916. Then plaintiff's expert submitted a contradictory declaration stating that because the Symphony hoped for a 1.5% return rate on its ticket and subscription mailings, that entire amount was the appropriate profit to attribute to plaintiff's artwork. *Id.* at 913, 916. The court expressed its dissatisfaction with the expert's analysis, calling it "a virtual non-sequitur," and further noted that "such a rudimentary analysis cannot determine how many of those individuals subscribed" because of the artwork in question. *Id.* at 916.

In *Schiller*, the plaintiff's expert ascribed the entire $1.1 million difference in revenue streams of the mail order office supply seller to the defendant's misconduct. This was despite the fact that 95% of the names on the mail order list was not attributed to the plaintiff's intellectual property and at least some of the profits were from the defendants lawful competition and conduct. 969 F.2d at 415.

The court stated that "[p]eople who want damages have to prove them, using methodologies that need not be intellectually sophisticated but most not insult the intelligence. *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic . . . ." *Id.* They found the plaintiffs' damages calculation for copyright and alleged trade secret misappropriation flawed because it failed to "separate the damages" resulting from lawful conduct. *Id.*

As in *Mackie*, Berry's expert (a) contradicts himself as to how important Berry's software was to Fleming's profits, and (b) glibly attributes the entire amount of the profit to Berry's software based only on what Berry and his counsel have told him and on other vague notions of the software being "feature rich" and Fleming being "unwilling to give it up." Like the expert in *Schiller*, Ueno engages in the simplest arithmetic to arrive at his profits number -- he simply takes a percentage of gross profits. He fails to link that number to the infringing elements of the Berry database. He never even looked at the software itself. Ex. 25 at 104:16-104:18 (Q: Did you ever look at the software that's the subject of this case? A: I did not.).

Ueno's failure to exclude sums not attributable to a Fleming's alleged wrongful conduct renders his opinion fatally speculative and therefore inadmissible. *See, e.g., Schiller*, 969 F.2d at 415-16; *First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084 (D. Kan. 2000) (excluding expert report

and testimony as "inherently unreliable and purely speculative" where expert
"improperly attributed all losses to the defendants' allegedly illegal acts, despite
the presence of other factors that could be significant to his analysis.").

### 2.    The Court Should Exclude Ueno's Opinion On Actual Damages.

Ueno applied similarly faulty methods in calculating his other damage
models.  Just like a profits-based remedy, a showing of actual damages must be
connected to the infringement.  Despite the Ninth Circuit requirement to calculate
the loss in the fair market value of the infringed product, Ueno instead calculated
what he called a "reasonable license fee."  This is irrelevant to the damages that the
plaintiff must show.  Even on these faulty premises, Mr. Ueno's calculation of that
so-called "reasonable" fee ranges from two million to about eleven million dollars
-- all on a product that Wayne Berry admits he licensed to Fleming for free.  It is
no hyperbole to assert that Mr. Ueno has wildly exaggerated his damage numbers.
The Court should exclude them.

### a.    Berry's actual damages fail because they are not related to "market value."

Ueno's actual damage measurements are irrelevant and unrelated to the legal
standard.  The "reasonable license fee" Ueno calculated as a measure of Berry's
actual damages ignores the "market value" standard the law requires.  *Polar Bear*,
384 F.3d at 707-708; *Mackie,* 296 F.3d at 916-17; 4 M. Nimmer and D. Nimmer,
*Nimmer on Copyright* § 14.02[A], 14-12 (2005) ("Actual damages represent the

extent to which infringement has injured or destroyed the market value of the

copyrighted work at the time of the infringement."). Ueno himself admitted that

his "reasonable license fee" did not reflect fair market value. Ex. 25 at 40:11-

40:14, 48:3-48:10; Ex. 26 at 4-6.

> Q:    You've testified that a reasonable license fee is different
>        than fair market value.
>
> A:    Well, I don't believe that in this particular situation,
>        okay, that they were the same.
>
> *             *             *             *             *
>
> Q:    So in the work that you did, you didn't attempt to
>        determine what the fair market value would be of a
>        license to use their software?
>
> A:    No, I didn't do a fair market value analysis even as the
>        way that you tried to explain it. That wasn't what we
>        were trying to do, okay. We just came up with what I've
>        characterized or I have termed as a reasonable license
>        fee.

Ex. 25 at pp. 40:11-40:14, 48:3-48:10.

In sum, Mr. Ueno simply ignored the correct measure of damages. This

Court should likewise simply disregard his analysis.[1]

---

[1]    The PCT directs the Court to Ueno's self-serving about-face at the end of
questioning on these issues, after he had obviously figured out that he must
have been giving answers damaging to Berry's case. Ex. 25 at 54:23-54:25.
This in no way diminishes the damage done by his previous answers, and the
PCT submits that Ueno's willingness to materially contradict himself in the
same deposition further supports the conclusion that the Court should not allow
him to testify about anything at all.

**b.    Berry's actual damages also fail because they are based on erroneous premises and are not causally connected to the alleged infringement.**

As with profits, 17 U.S.C. § 504(b) also requires that a plaintiff demonstrate a causal connection between the alleged infringement and actual damages claimed. *Polar Bear*, 384 F.3d at 708 ("From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits.  We take this opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages.").

This opinion is based on unsupported assumptions and unsound extrapolation.  Mr. Ueno opines that a "reasonable" license fee would be somewhere between $2,004,891 and a much higher number.  Ex. 26 at p. 6.   To calculate this fee, Ueno divides what he says Fleming paid for the software by the number of containers for which Fleming used Berry's database over a period of time to derive a per-container license fee.  But neither his numerator nor his denominator have any basis in fact.

Ueno's analysis rests on facts that are "so lacking in probative force that no reasonable expert could rely on them."  *See In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1246 (E.D.N.Y. 1985) (excluding proposed testimony because

it was based on self-serving and unverified checklists filled out by the plaintiffs and inapposite general studies and literature). His first flawed premise is anchoring the value of Berry's software based on Fleming's payment to an unrelated third party. His second flawed premise is assuming without any support from the record that Fleming's license for Berry's software was for a fixed period of time.

Mr. Ueno claims that Fleming provided $1,295,000 in consideration for use of the Berry software. As it happens, API (a company for which Berry worked but did not own)[2] owed that amount to Fleming in late 1999. At that time, Fleming released any claim to this amount, and Ueno assumes Fleming exchanged this debt forgiveness for license rights to the Berry database. Ex. 26 at pp. 5-6. But in reality, Fleming exchanged that debt forgiveness for $1.2 million worth of claims API had against Fleming. Ex. 29, p. 2 (Settlement and Release Agreement, October 7, 1999). That release was a transaction between Fleming and API. Ex. 29. Quite literally, Berry's software had nothing to do with it: in fact, API expressly stated that it could not convey its "non-transferable license" to Berry's software to Fleming as part of that transaction. Ex. 30, p.2. (Letter, September 16,

---

[2] The distinction between API and Berry personally is material. Even though Fleming acquired all of API's assets, Berry claimed that he **personally** owned the 1993 FCS, Ex. 9 (End Use License Agreement, October 29, 1999) at p. 3, and thus that Fleming acquired no rights to that software when it acquired API.

1999). Moreover, Berry testified that Fleming owed him nothing when he specifically licensed his software to Fleming for free. Ex. 11, p. 1 (Memorandum Agreement, November 26, 1999) (Berry agreeing to provide "a no charge user license."); Ex. 31, at 87:23-87:25 (Hearing Testimony of Berry, February 25, 2003). The number in Ueno's numerator should thus be zero -- as should Mr. Ueno's "reasonable license fee."

Mr. Ueno's denominator is even more baseless, as hard as that might be to imagine. For unspecified reasons, Mr. Ueno assumed that the $1,295,000 (itself incorrect) bought Fleming the right to use the 1993 FCS for just thirteen weeks: October 9, 1999 to January 10, 2000. Ex. 26, p. 4. Notwithstanding the facial implausibility of Fleming's agreeing to pay almost $100,000 per week to use the same FCS that Berry licensed to Fleming for free, Ueno then estimates the number of containers Fleming received per week to determine an overall number of containers for which Fleming paid Berry. Ex. 26, pp. 5-6. But Ueno has no basis whatsoever for his assumption that Fleming intended to stop using the software on January 10, 2000 or at any other particular time. Ex. 25 at 94:12-96:3 (Ueno conceding that user of copyrighted software "may or may not" want to stop using it). He thus arbitrarily limits the number of containers in his denominator -- and thereby vastly increases the per-container license fee.

Mr. Ueno thus arrives at a per-container price of $1,772. Multiplying that number by various numbers of containers over various time periods, Mr. Ueno arrives at his massive damage numbers. None of his analysis has any basis in the record, or in reality, and Berry therefore demonstrates no causal connection between the alleged infringement and actual damages claimed.

### c. The actual damages opinion has no probative value and is likely to confuse the jury.

The Court should not subject the jury to Ueno's opinions because his calculations "rest on unsupported assumptions and unsound extrapolation." *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (upholding exclusion of expert's damages testimony); *Real Estate Value Co. v. USAir, Inc.*, 979 F. Supp. 731, 744 (N.D. Ill. 1997) (finding expert's "opinions regarding lost profits on supermarket promotions will not assist the trier of fact because they are based on unsupported facts"). In *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-30 (Fed. Cir. 1996), the court rejected an expert's damages analysis because it relied on unsupported assumptions that were "fraught with speculation." The court concluded that the expert "offered no sound economic reasoning to support his assumption" and that his "projections lacked evidentiary support." *Id.* at 1032. Consequently, the court overturned the jury's lost profits award because the expert's analysis "invite[d] the jury to engage in rapt speculation." *Id.* at 1029.

As in *Oiness*, Ueno's broad range of damages and flawed method invites the jury to engage in rapt speculation. The Court should exclude even relevant and qualified expert opinion if its probative value is outweighed by the risk of prejudice, confusion, or waste of time.

### 3.    The Court Should Exclude Mr. Ueno's Late, New Opinions.

At the exchange of trial exhibits on December 27, Mr. Hogan included a new set of opinions from Mr. Ueno. Ex. 32 (Ueno's Supplemental Report December 27, 2005). In this opinion, Mr. Ueno makes new calculations based on his absurd $1772/per container fee; it also appears to claim that Berry is owed some $2.5 million for shipments to third parties. Mr. Ueno's brand-new four-page opinion is conclusory, baseless and largely incoherent. He has never been deposed on it. Berry and his counsel have offered no excuse why Mr. Ueno's new opinions have been disclosed months after the expert disclosure deadline. Fleming will be substantially prejudiced if it has to confront new, never-before-disclosed opinions from Mr. Ueno at trial.

Courts routinely exclude late-disclosed expert opinions. *See e.g. Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1067 (9th Cir. 2005) (granting summary judgment for defendant and excluding late-disclosed expert); *Paradigm Sale, Inc. v. Weber Marking Sys., Inc.*, 880 F. Supp. 1247, 1252 (N.D. Ind. 1995) (excluding expert opinion testimony on infringement because it was not included in expert

report); *China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 856 F. Supp. 856, 867 (D. Del 1994) (refusing to allow expert to testify at trial for failure to provide an expert report).

In *Wong*, the district court denied supplemental expert testimony even though the plaintiff promptly notified the court and opposing counsel and proffered the witness for deposition. 410 F.3d at 1060. The court said that because the necessity of the witness could have reasonably been anticipated at the established deadlines, the delay was unjustified. *Id.* at 1062. The court granted summary judgment for defendant and excluded the late expert. *Id.* The Ninth Circuit affirmed despite the harsh result. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) (upholding exclusion of expert even though it prevented plaintiff from proving his case and was "a harsh sanction to be sure").

Here, Berry neither notified the Court nor made Mr. Ueno available for deposition. The Court should exclude his new opinion. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 573 (5th Cir. 1996) (refusing to permit late supplement to expert report), *cert. denied,* 519 U.S. 811 (1996).

Berry's expert report was due in June 2005. Ex. 47 (May 13, 2005 letter dated from Special Master Matsui). Berry has failed to comply with that deadline. He offers no excuse for his failure. This Court should preclude his expert from

offering his new opinion. *See e.g. Jenkins v. Whittaker Corp.*, 785 F.2d 720 (9th Cir. 1986) (upholding the exclusion of undisclosed opinion testimony by a party's employee); *Piper v. J.R. Simplot Co., Inc.*, 24 F.3d 248 (9th Cir. 1994) (upholding exclusion of additional and previously undisclosed expert witness testimony as a violation of Rule 26).

**D.   Conclusion**

Both Ueno's analysis of profits and actual damages are founded on unsupported assumptions and fail to establish the legally required causal link between infringement and damages. His analysis is so flawed that it will confuse the jury. His late-filed report suffers from the same substantive problems, and should not come in because its delay is unjustified and prejudicial. For all of the foregoing reasons, the PCT requests that the Court issue an in limine order excluding the opinions of Thomas Ueno and precluding Berry from introducing them to the jury in any form.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated:  Honolulu, Hawaii, January 3, 2006

KOBAYASHI, SUGITA & GODA
Lex R. Smith (659-0)
Thomas H. Yee (7344-0)
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:    (808) 539-8700
Facsimile:    (808) 539-8799

        and

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Co-Counsel for the Post Confirmation Trust for
Fleming Companies, Inc.