IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., et al.,<br><br>Defendants. | CIVIL NO. CV03-00385 SOM-LEK<br>(Copyright)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT PCT'S MOTION IN LIMINE NO. 3 (TO EXCLUDE REFERENCE TO CERTAIN TESTIMONY BY MARK DILLON)**<br><br>Judge:        Hon. Susan O. Mollway<br>Trial Date:   January 24, 2006<br><br>Hearing Date: January 20, 2006<br>Hearing Time: 2:00 p.m. |

This will be a trial about what damages (if any) Berry is entitled to recover for Fleming's use of a slightly modified version of Berry's database between April 1, 2003 and June 9, 2003. Because of this Court's June 27, 2005 Order, this is <u>not</u> a case about Excel spreadsheets used by the defendants after June 9, 2003. The Court has already granted summary judgment against all claims concerning the spreadsheets.

Nonetheless, Berry has historically and frequently attempted to blur the distinction between the software in use prior to June 9, 2003 and the spreadsheets used after that, primarily by blatantly mischaracterizing testimony Mark Dillon gave during the September 28, 2004 injunction hearing. As we explain, Berry's interpretation is a trick. He should not be permitted to play it in front of the jury.

## A. The Court Should Prevent Berry from Applying Dillon's Testimony About Excel Spreadsheets to the Berry Software.

Federal Rules of Evidence 402 and 403 exclude evidence that is not relevant as well as evidence that, although technically relevant, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Under either rule, the outcome remains the same: the Court should bar Berry from attempting to claim that Dillon's testimony about the **spreadsheets** actually refers to Berry's 1993 FCS.

1. **Dillon's Testimony about Spreadsheets is Irrelevant to the Berry Software.**

As a threshold matter, evidence must be relevant to be admissible. *See United States v. Guiterrez-Alba*, 929 F. Supp. 1318, 1323 (D. Haw. 1996) (excluding evidence re prior deportation as irrelevant to trial on unlawful entry); *Biggs v. The Nicewonger Co., Inc.*, 897 F. Supp. 483, 485 (D. Or. 1995) (excluding as irrelevant incidents of sexual harassment not witnessed by or related to the former employee plaintiff while on the job).

Mark Dillon's testimony regarding non-infringing spreadsheets has no relevance whatsoever to whether Fleming infringed Berry's 1993 FCS and is not within the time period at issue. At the May 28, 2004 injunction hearing, Mark Dillon testified that an order to stop using the <u>spreadsheets</u> would create a great hardship:

> Q. If you were ordered, Mr. Dillon, to stop using spreadsheets, what impact would that have on the operations out at Kapolei?
>
> A. I don't see how we could work. It wouldn't be possible from what I -- we have to have something to handle that volume of data. I just don't know what else we could use.
>
> Q. Is it fair to say, sir, if you're ordered to stop using the spreadsheets, that running the logistics operation out at Kapolei would become much more difficult?
>
> A. Much more --

    Q.    Difficult. Difficult, sir.

    A.    I'd say impossible. But, yeah, I can't conceive of it. I don't know how we would carry on.

Ex. 17, p. 113:8-113:21 (September 28, 2004 hearing transcript); *see also* Ex. 16, p.2 (Berry seeks broad injunctive relief and interpreting the spreadsheets as a derivative work).

Despite Berry's wishful and self-serving interpretation, Dillon's testimony concerned the Excel **spreadsheets** Fleming began using on June 9, 2003 -- <u>not</u> the software it used between April 1 and June 9.

The Court has already eliminated from the case all claims concerning the spreadsheets, and this trial now exclusively measures two months' damages from alleged infringement of Berry's Freight Tracking System. Testimony concerning the subsequently-used Excel spreadsheets can not possibly have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," as relevant evidence is defined by Rule 401 and required by Rule 402.

### 2. Dillon's Testimony Will Confuse the Issues and Mislead the Jury about Berry's Software.

Even if the Court were to find that Dillon's testimony somehow technically "relevant" under Rule 401, Rule 403 still compels its exclusion. Any probative value that Dillon's testimony may have is substantially outweighed by its prejudicial effect. Evidence is unfairly prejudicial if it tends to suggest a decision

on an improper basis. *See United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) ("'Unfair prejudice' ... means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'" *quoting* Fed. R. Evid. 403, Advisory Committee Notes); *Steger v. General Electric Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003); *Stump v. Gates*, 211 F.3d 527, 534 (10th Cir. 2000).

Assessing whether evidence should be excluded under Rule 403 requires the Court to consider its probative value to the issues actually being tried. For example, in *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996), the Ninth Circuit affirmed the exclusion of a five-year-old child plaintiff's testimony in a § 1983 action against police officers who killed her father because the prejudicial impact of the testimony of a highly sympathetic child was outweighed by the limited probative value of her testimony. She was not born at the time of her father's death, knew nothing about the circumstances, and could not meaningfully testify about her distress. *Id.* In short, the witness had nothing to offer bearing directly on the facts being tried, and the testimony would simply have served to improperly prejudice the jury.

In our case, as in *Trevino*, the prejudice is likewise clear. Even if Dillon's testimony is somehow relevant, its probative value is minimal and substantially outweighed by its prejudicial effect. Berry has repeatedly construed Dillon's

testimony to mean that Fleming could not operate without the Berry FCS. That isn't what Dillon said and isn't what Dillon meant: Dillon was discussing different software.

Two examples of Berry's penchant for misinterpretation appear in his September 15, 2005 summary judgment opposition alone:

> "Dillon [] admitted during [the injunction hearing] that, without the use of freight tracking software, the Logistics Department would be out of business."

> "Mr. Dillon and Ms. Noa both admit that, but for the freight control software, they could not operate the logistics department and would be out of jobs."

Ex. 15 at 11, 34 (Pl. Sept. 15, 2005 Opp.); *see also* Ex. 18 at 9, 23 (similar argument in September 15, 2005 opposition to former employees' motion), Ex. 1 (same in Berry April 22, 2005 interrogatory response no. 8).

On the other hand, the probative value of Dillon's testimony is low because the spreadsheets were different from the Freight Tracking Software and used in the time period not at issue in this case. In fact, the spreadsheets comprised Fleming's efforts to get as far as possible from Berry's Freight Tracking Software. And in its June 20, 2005 Order the Court has already determined that the spreadsheets do not infringe on Berry's software.

Any effort by Berry to use Dillon's testimony about the spreadsheets to argue about the importance of the Freight Control Software will be highly

5

prejudicial and necessarily confuse the issues and mislead the jury. The Court should in advance preclude Berry from doing so by entering an in limine order to that effect.

## CONCLUSION

The Court should preclude Berry's use of Dillon's testimony about non-infringing excel spreadsheets. The Court should also prevent Berry's use of this testimony to mislead and confuse the jury into thinking that Dillon was speaking about the Berry software.

Dated: Honolulu, Hawaii, January 3, 2006.

_____

KOBAYASHI, SUGITA & GODA
Lex R. Smith (659-0)
Thomas H. Yee (7344-0)
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:   (808) 539-8700
Facsimile:   (808) 539-8799

and

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Co-Counsel for the Post Confirmation Trust for Fleming Companies, Inc.