IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK<br>) (Copyright)<br>) |
| Plaintiff, | ) **MEMORANDUM IN SUPPORT OF**<br>) **DEFENDANT PCT'S MOTION IN**<br>) **LIMINE NO. 5 (TO EXCLUDE OR** |
| vs. | ) **LIMIT THE TESTIMONY OF DR.**<br>) **PHILIP JOHNSON)**<br>) |
| HAWAIIAN EXPRESS SERVICE,<br>INC., et al., | ) Judge:        Hon. Susan O. Mollway<br>) Trial Date:   January 24, 2006<br>) |
| Defendants. | ) Hearing Date: January 20, 2006<br>) Hearing Time: 2:00 p.m. |

Expert opinion testimony is supposed to aid the jury. But where an expert fails to reach an opinion by applying his or her expertise independently to the facts, and instead simply parrots opinions fed to the expert by the client, the expert's "opinion" is unreliable, cumulative, adds no value and should be excluded. Just so here.

Berry's technical expert, Dr. Philip Johnson, has disclosed only one relevant opinion: "Fleming clearly was not using the October 1999 version of the Berry Software on April 1, 2003." He has only two bases for this opinion. One is a spreadsheet put together by Mr. Berry. The other is an excerpt of Mark Dillon's testimony from the September 28, 2004 injunction hearing in which he refers to certain aspects of Berry's spreadsheet. Dillon's testimony neither validates the entire spreadsheet nor substitutes for actual analysis on Dr. Johnson's part, analysis, which Johnson did not do.

Dr. Johnson concedes that Mr. Berry knows more about the structure of the software than he does. The Court should exclude Dr. Johnson's testimony because he has not analyzed the underlying software and has served only as a human highlighter for the plaintiff's analysis and conclusions.

Alternatively, if Dr. Johnson testifies, the Court should limit his testimony to a discussion of the changes on which he based his opinion. In two years of litigation, he has identified only seven changes between the October 1999

(licensed) version of Berry's software and the April 1, 2003 version. These changes were identified by the plaintiff himself, and some of these changes were conceded by Dillon. In all this time, Johnson has not raised additional differences. Therefore, these seven changes should form the outer boundaries of his testimony if the Court hears him at all.

### A. Johnson Has Only One Relevant Opinion Under Federal Rule of Evidence 702

An expert's opinions must be relevant, reliable, and must not be unduly prejudicial. Federal Rule of Evidence 702 states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Cases interpreting this Rule have uniformly held that the evidence "assist the trier of fact," or in other words, that it be relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Dr. Johnson's one-page report expresses only one opinion: "Fleming clearly was not using the October 1999 version of the Berry Software on April 1, 2003." Ex. 19, p. 1. On or about February 25, 2005, Dr. Johnson circulated a second report expressing only one additional opinion: "Fleming was using a derivation of

2

the Berry database structure in their new version of the software." Ex. 20. Finally, on or about March 21, 2005, Dr. Johnson circulated a third report that simply combined his two opinions but did no additional analysis on either. It simply referred the reader back to the first report for "details" concerning the first opinion. Ex. 21.

**B.   Johnson's Lone Remaining Opinion Does Not Meet the Standards of F.R.E. 702 and the Court Should Exclude It.**

   **1.   Johnson's Report Fails to Provide Sufficient Detail.**

Johnson's first and only relevant report is deficient because it fails to provide the detailed and complete basis and reasons for the opinions contained within it. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 573 (5th Cir. 1996) (affirming district court's exclusion of oil company's expert testimony for failure to provide detailed and complete initial expert disclosures despite their more detailed later-filed rebuttal reports), *cert. denied*, 519 U.S. 811 (1996).

The purpose of a detailed report under Rule 26 is to conserve resources, eliminate unfair surprise and reduce the need to take expert depositions. *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995); *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996) (stating that the test of the sufficiency of a report is whether it is complete and detailed enough to eliminate surprise, avoid unnecessary depositions and reduce costs).

3

Johnson's report merely restates Wayne Berry's the conclusions. Only two items form the bases of Dr. Johnson's first opinion regarding which software Fleming was using: (a) seven pages of injunction hearing testimony from Mark Dillon; and (b) Wayne Berry's "Exhibit 27" from the injunction briefing, which contains a spreadsheet summary of Berry's own comparisons of his "original FCS Logistics Data.MDB (the real original one) to the various Dillon creations." *See* Exs. 19-21 (Johnson reports), Ex. 17 (referenced Dillon testimony), Ex. 23 (Berry Ex. 27), and Ex. 24 (excerpt from Berry Sept. 20, 2004 declaration bearing on creation of Ex. 27). Based exclusively on his review of these items received from Berry, Dr. Johnson opines as follows:

> Given that there are fields present in queries against the modified version of the system that were not present in 1999, and given that the programmer actually admitted to having made modifications to the 1999 version that were not removed, it appears certain that Fleming was not using the October 1999 version of the software.

Ex. 19, p. 1.

"An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (upholding exclusion of expert testimony under *Daubert*) (internal quotations omitted), *cert. denied*, 519 U.S. 819 (1996); *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997) (same). Johnson's report is merely a bottom line, lacks sufficient detail and should therefore be

4

excluded. *See Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("An expert must 'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.'").

### 2. Johnson Did Not Use a Reasonable Methodology.

The plaintiff bears the burden of establishing that his expert's opinions rest on valid reasoning and methodology. See Fed. R. Evid. 702 Adv. Comm. Notes; *United States v. Williams*, 95 F.3d 723, 729 (8th Cir. 1996). "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." Fed. R. Evid. 702 Adv. Comm. Notes; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995).

Rule 702 demands that the evidence be reliable. See *Daubert,* 509 U.S. at 590. Expert testimony must relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs. *See id.*; *Guidroz-Brault v. Missouri Pac. R.R.*, 254 F.3d 825, 830-31 (9th Cir. 2001). An expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field, and the opinion must be grounded on more than subjective belief or unsupported speculation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1421 (9th Cir. 1998).

Johnson's regurgitation of Berry's conclusions, with no independent evaluation or analysis, is an unreliable and improper method for an expert to use. *See In re TMI Litig.*, 193 F.3d 613, 715-16 (3d Cir. 1999) (blind reliance on other expert's opinions demonstrates flawed methodology under *Daubert*), *amended by* 199 F.3d 158 (3d Cir. 2000); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (excluding expert who relied on another expert's report); *National Bank of Commerce v. Dow Chem. Co.*, 965 F. Supp. 1490, 1524 (E.D. Ark. 1996) (finding expert's opinion unreliable because it was not based on "independent research" and because of its "reliance on the opinions of [other experts]").

This Court should exclude Johnson's opinions because they are based on the secondary analysis of another's work. *See Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1317 (N.D. Ga. 2002) (excluding causation expert's testimony as unreliable "because it is a re-analysis of other studies which did not reach the same conclusion"). The court reasoned that it was flawed methodology to believe the post-hoc judgment of the plaintiff's expert is superior to the classification made by the investigators who had direct contact. *Id.*

Similarly, in *TK-7 Corp. v. Estate of Barbouti*, the court held that the plaintiff's expert failed to satisfy the requirements for expert testimony under the Federal Rules of Evidence where the expert merely "assum[ed] the sales

6

projections" of another expert "to form his opinion as to the amount of lost profits." 993 F.2d 722, 732 (10th Cir. 1993). The court concluded that assuming the sales figures "cannot be considered 'reasonable reliance' for purposes of forming [his own] opinion of the amount of lost profits." *Id.* The court ruled that "[b]y assuming the sales projections [the expert] in essence assumed the very matter at issue on which he was called to express his opinion." *Id.*

Here, as in *Jack* and *TK-7*, the plaintiff's expert offers an analysis that is purely derivative of someone else's examination of the facts. Dr. Johnson's report suggested that he simply accepted at face value Berry's comparison of the original software ("Berry FCS 1993" on his summary) against the version being used as of April 1, 2003 ("Original Logistics Data.mdb" on his summary). Ex. 19, Ex. 23, Ex. 24 at ¶¶ 30-31 (noting seven changes between original version and April 1, 2003 version); Ex. 13 at 202:14-22 (Berry deposition testimony) (confirming identification of seven differences). His testimony confirmed it:

> Q. Do you know who drafted Exhibit 27?
>
> A. I believe it was Wayne Berry.
>
> Q. Have you articulated the complete analysis that you conducted to come to your first opinion in this case?
>
> A. I believe so.
>
> Q. Did you do any analysis to see how close Mr. Dillon got to the original version?
>
> A. No.

7

Johnson refers to Mark Dillon's hearing testimony, but this testimony only references three of the seven alleged changes in Exhibit 27 ("Scratch Name," "Voucher Number Old," and "Voucher ID"). Dillon's testimony does not address the other four changes. Dr. Johnson relies on Dillon and Berry and never independently examined either Berry's original FCS or any other iteration to probe the validity of Berry's Ex. 27. In fact, he never even so much as booted up a copy of the software. Ex. 22 at 42:19-43:1. Against this background, Dr. Johnson's proposed expert opinions add no independent expertise or value that would justify his testimony.

His methodology is flawed not only because he relied on another's work, but because Dr. Johnson never examined the actual software at issue. Ex. 22 at 42:19-43:1. This violates Rule 702. Courts applying the *Daubert* principles have held that an expert may not reach his conclusion first and do the research later. *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). There, the court reasoned that "because [plaintiffs' expert] wrote his report before having the supporting data, his opinions are not 'based upon sufficient facts or data' and do not proceed from 'reliable principles and methods,' as required by Rule 702." Here, Dr. Johnson never even did the research later; he never even looked at the underlying software.

8

Finally, Johnson's opinion is further suspect because it was based upon evidence "carefully tailored to support [a] position." *SEC v. Lipson*, 46 F. Supp. 2d 758, 764 (N.D. Ill. 1998), *United States EEOC v. Rockwell Int'l, Corp.*, 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999) (expert's report and testimony are inadmissible under Rule 702 where, inter alia, expert "relied on materials, reports and summaries given to him by counsel, and failed to verify the information from reliable, independent sources."). The plaintiff spoon fed him theories that he accepted without independent analysis. Johnson's opinion is entirely devoid of any independent expert analysis that would justify placing him on the stand to address the jury.

### 3. Johnson's Opinion is Cumulative and Unhelpful to the Trier of Fact.

The Court must exclude even relevant and qualified expert opinion if its probative value is outweighed by the risk of prejudice, confusion, or waste of time. As explained in *Daubert*: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595. This Court therefore has broad discretion to exclude proposed opinions not conforming to these standards. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (broad discretion both in

9

exercising gate keeping function and in determining how reliability is to be measured); *Domingo ex rel. Domingo v. T. K. M.D.*, 289 F.3d 600, 607 (9th Cir. 2002) (expert testimony properly excluded and summary judgment granted where proposed testimony was not based on objective and verifiable evidence).

Johnson's report is cumulative testimony and merely serves to highlight the plaintiff's conclusions based on the plaintiff's analysis of the software. As such, it is not helpful to the trier of fact and should be excluded. The Supreme Court noted that the second prong of its test -- that expert evidence assist the trier of fact -- is related to the concept of "relevancy" set forth in Federal Rules of Evidence 401 and 402. *Daubert*, 509 U.S. at 580. The second relevancy prong of Rule 702 requires "a valid scientific connection to the pertinent inquiry." *Id.* at 592. This "fit" mandates a logical nexus between the scientific expert evidence at issue and the particular facts of the case. *Id.*

Experts are not document readers or human highlighters for the jury. Expert testimony that seeks to "'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence'" is not relevant. *In re Rezulin*, 309 F. Supp. 2d at 541 (citations omitted); *Lipson*, 46 F. Supp. 2d at 763 (expert testimony must assist and not "merely to repeat or summarize what the jury independently has the ability to understand"); *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (proposed expert's "skill, experience, training and education

as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles").

Dr. Johnson's opinion is merely Berry's opinion. Johnson never reviewed the software himself and is simply highlighting the testimony the jury will hear from Berry. Dr. Johnson's testimony is cumulative, adds nothing to help the jury, and the Court should therefore exclude it.

### C. If Johnson Is Allowed to Testify, His Testimony Should Be Limited to a Discussion of the Seven Changes He Referenced in His Report.

If the Court allows Dr. Johnson to testify, the Court should limit his testimony to the seven changes referenced in Berry's Exhibit 27. Dr. Johnson identified only these seven changes through the entire discovery process, three separate reports and his deposition. Specifically, Berry's Exhibit 27 notes seven infringing fields that Berry claims were not in the originally licensed version of his freight tracking software:

1. Name - Company.ScratchName
2. NotesCtnFirsts.FirstofFlemingLocations
3. NotesCtnFirsts.FirstofLastDaytoReturn
4. NotesCtnFirsts.FirstofStatus
5. NotesCtnFirsts.FirstCfStatusDate
6. ARPayments.Voucher Number Old
7. ARPaymentsDistribution.Voucher ID Old

Dr. Johnson cites a portion of Dillon's testimony that references only three of these fields and does not expand on Berry's Exhibit 27.

11

Dr. Johnson should be limited to the opinions expressed in his report by the same rationale that requires an expert report to set forth all relevant opinions -- "the elimination of unfair surprise to the opposing party and the conservation of resources." *See Sylla-Sawdon*, 47 F.3d at 284 (affirming district court's decision to exclude expert's testimony on matters not contained in expert's report); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1067 (9th Cir. 2005) (granting summary judgment for defendant and excluding late-disclosed expert); *Paradigm Sale, Inc. v. Weber Marking Sys., Inc.*, 880 F. Supp. 1247, 1252 (N.D. Ind. 1995) (excluding expert opinion testimony on infringement because it was not included in expert report).

Because the seven changes listed in Exhibit 27 comprise the total universe of changes supporting Dr. Johnson's opinion that "Fleming clearly was not using the October 1999 version of the Berry Software on April 1, 2003," the Court should clarify in advance that any testimony Dr. Johnson might give must remain within their confines.

**D.     Conclusion**

Johnson issues only one relevant opinion. That opinion is not admissible because it provides insufficient detail and is a result of unreliable methods. It is a secondary analysis, conclusory and without independent research and finally, is untrustworthy because it was spoon-fed to him from the plaintiff. In addition, his

opinion is cumulative and a waste of time. If the Court allows Johnson to testify regarding his one relevant opinion, he should be limited to the already-disclosed bases of his opinion.

Dated: Honolulu, Hawaii, January 3, 2006

_/s/_

KOBAYASHI, SUGITA & GODA
Lex R. Smith 659-0
Thomas H. Yee 7344-0
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI 96813
Telephone:   (808) 539-8700
Facsimile:   (808) 539-8799

and

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Co-Counsel for the POST CONFIRMATION
TRUST FOR FLEMING COMPANIES, INC.