393107

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, | ) CIVIL NO. CV 03 00385 SOM LEK |
| Plaintiff, | ) (Copyright) |
| | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| vs. | ) THE POST CONFIRMATION TRUST |
| | ) FOR THE FLEMING COMPANIES, |
| HAWAII EXPRESS SERVICE, INC., et al., | ) INC.'S MOTION IN LIMINE NO. 6 |
| | ) REGARDING ALLEGED |
| | ) UNRELATED BAD ACTS |
| Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF THE POST CONFIRMATION TRUST
FOR THE FLEMING COMPANIES, INC.'S  MOTION IN LIMINE
REGARDING ALLEGED UNRELATED BAD ACTS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................ 5

    A.    REFERENCE TO UNFOUNDED ALLEGATIONS AND
    OTHER IRRELEVANT MATTERS IS INADMISSIBLE
    UNDER FED. R. EVID. RULE 402 ................................................... 5

    B.    EVIDENCE OF FLEMING'S OTHER ALLEGED BAD
    ACTS IS INADMISSIBLE UNDER FED. R. EVID. RULES
    404 AND 403 ................................................................................... 12

        1.    Reference to any alleged prior bad acts must be barred
        from admission under Fed. R. Evid. Rule 404(b) ................... 12

        2.    Evidence of Fleming's other alleged unrelated bad acts
        should be excluded under Fed. R. Evid. 404(b) and 403 ........ 16

III.  CONCLUSION ............................................................................................ 19

393107

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

<u>Coursen v. A.H. Robins Co., Inc.</u>, 764 F.2d 1329, 1334 (9th Cir.1985) ............... 17

<u>Duran v. City of Maywood</u>, 221 F.3d 1127, 1132-33 (9th Cir. 2000).................... 13

<u>Huddleston v. United States</u>, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501,
    99 L.Ed.2d 771 (1988) ................................................................ 14, 15

<u>Kramas v. Security Gas & Oil Inc.</u>, 672 F.2d 766 (1982)................................ 17, 18

<u>United States v. Hitt</u>, 981 F.2d 422, 423 (9th Cir. 1992) ....................................... 11

<u>United States v. Khang</u>, 36 F.3d 77, 79 (9th Cir. 1994)......................................... 14


<u>Federal Rules</u>

Fed. R. Evid. 403 ......................................................................................... 16

Fed. R. Evid. 404(b) ................................................................................. i, 16

Fed. R. Evid. Rule 401 .................................................................................... 5

Fed. R. Evid. Rule 403 ............................................................................... 5, 12

Fed. R. Evid. Rule 404 .................................................................................. 13

Fed. R. Evid. Rule 404(a)-(b) ....................................................................... 13

Fed. R. Evid. Rule 404(b)........................................................................ i, 4, 12

393107

## I.  **INTRODUCTION**

This will be a trial about Plaintiff's Freight Control System ("FCS"), Fleming's minor modifications to that system, and what damages (if any) Plaintiff Wayne Berry ("Plaintiff" or "Berry"), is entitled to recover for Fleming's use of that system between April 1, 2003 and June 9, 2003.    This Court's June 27, 2005 and October 21, 2005 Summary Judgment Orders have narrowed the issues to be tried to (a) whether Fleming profited from the infringing use of FCS by former Fleming employees between April 1, 2003 to June 9, 2003, thereby vicariously infringing on Plaintiff's copyright in FCS; and (b) what, if any, damages Plaintiff may recover from the Post Confirmation Trust for the Fleming Companies, Inc. ("PCT") on this vicarious liability theory, as well as what, if any, damages Plaintiff is entitled to for direct infringement between April 1, 2003 and June 9, 2003.

Although unrelated to the instant case, Mr. Berry may attempt to introduce evidence or refer to certain character evidence at trial.    Throughout the course of the present case, as well as in connection with the Fleming bankruptcy, Plaintiff has made numerous allegations against Fleming, including, for example:

1.  That Fleming is still in operation.[1]

---

[1] In his May 18, 2005 deposition, Plaintiff testified that he believed Fleming was still in operation both in Hawaii as well as around the rest of the Country.  See Exhibit "45" to the Declaration of Lex R. Smith.  Moreover, in explaining why he believed this to be the case, Plaintiff alluded to what he believed to be a scheme by Fleming to sell outdated, "re-pasteurized" milk to Hawaii consumers.  Id.  Neither

2.  That Fleming and its counsel have connections to terrorist organizations[2] and have sent armed gunmen to his home;[3]

3.  That Fleming has engaged in cigarette smuggling; [4]

4.  That Fleming is affiliated with organized crime; [5]

---

topics have any relevance whatsoever to the issues to be tried here, and any reference to either should be excluded from evidence.

[2] In his Motion for Leave to File Second Amended Complaint in the present case, Plaintiff included in his proposed draft Second Amended Complaint, allegations that Fleming is involved in a criminal racketeering scheme involving terrorists, notably Al Quida [sic].

[3] In his February 5, 2003 deposition in Plaintiff's previous suit against Fleming, Civil No. CV 01 00446, Plaintiff stated that he believed that Fleming had sent armed gunmen to his home.  See Exhibit 31 to the Smith Declaration.

[4] In his RICO statement, Plaintiff states that he "discovered certain records of Fleming related companies that appeared to be engaged in cigarette diversions or trafficking," and that "[a]fter further investigation, Mr. Berry discovered documents dating back to 1993 detailing the agreement by Lokelani Lindsey and Mr. Borja using the Fleming money to facilitate the trafficking of untaxed cigarettes."  Plaintiff Wayne Berry's RICO Statement, filed June 18, 2004, at 18-19, attached as Exhibit 41 to the Smith Declaration.

[5] In his Memorandum in Opposition to Hawaii Transfer Company, Ltd.'s Motion for Summary Judgment, Plaintiff noted:

> Mr. Berry has alleged one of the most vibrant and ongoing racketeering enterprises in the history of the State of Hawaii.  This enterprise, as set forth in Mr. Berry's declaration in ¶¶ 18-42 and as alleged by the Second Verified Complaint, and RICO statement the conduct of an enterprise engaged in numerous predicate acts, including mail and wire fraud, the smuggling of untaxed cigarettes and, as to Mr. Berry's specific RICO injury, clear acts of criminal copyright infringement.

. . .

5. That Fleming has engaged in trafficking of illegal firearms;[6]

6. That Fleming is engaged in a racketeering scheme involving Kmart;[7]

7. That Fleming is/was behind a scheme to overcharge Hawaii consumers, using Plaintiff's FCS.[8]

Fleming, therefore, brings this motion *in limine* to preclude Mr. Berry from introducing or in any way referring to evidence in the above-listed categories, as well as any and all evidence of other unrelated grievances, complaints, lawsuits,

---

In any event, Mr. Berry has uncovered the link between this Hawaii based Racketeering Enterprise operating as the Fleming Logistics Enterprise and the Providence Rhode Island Patriarcha Crime Family through DiSilva Transportation, Inc. and its subsidiary Webster Trucking and its principal Thomas DiSilva that are closely associated with C&S and James Kleban.

Plaintiff Wayne Berry's Memorandum in Opposition to Hawaii Transfer Company, Ltd.'s Motion for Summary Judgment filed on October 2, 2004, at 6-7, attached as Exhibit 42 to the Smith Declaration.

[6] In his RICO Statement, Plaintiff asserts that "In or about 1998, Mr. Berry was informed by a temporary API employee, Mauro Edwards, that he overheard one of Jack Borja's relatives, who was an API employee, discussing the shipment of machine guns with silencers in Fleming controlled ocean containers . . . Mr. Berry immediately contacted the Alcohol Tobacco and Firearms ("ATF") to report this information." Plaintiff Wayne Berry's RICO Statement, filed June 18, 2004 at 18, attached as Exhibit 41 to the Smith Declaration.

[7] Again in his RICO Statement, Plaintiff describes a "Fleming-Kmart fraudulent billing scheme," through which he alleges that one of the Fleming entities ships goods for Kmart "under materially false shipping documents created through the unlawful infringing use" of FCS. RICO Statement at 14.

[8] Again, Plaintiff alleged in his RICO Statement, that ". . . victims include the consumers of the state of Hawaii, that, through the maintenance of a monopoly facilitated by this infringement have been overcharged no less than 15% on all consumable packaged foods for the past 10 years or more." Exhibit 41 to the Smith Declaration at 10.

alleged or proven violations of the law, and any other acts including, but not limited to:  (a) allegations that the Fleming Companies are still in operation (including, but not limited to any reference to a scheme to sell re-pasteurized milk); (b) communications with the FBI, (c) Al Qaeda, (d) terrorists, (e) cigarette smuggling (including, but not limited to any reference to Lokelani Lindsey), (f) K-Mart, (g) armed gunmen, (h) references to attorneys' fees stemming from prepetition trial, (i) references to the SEC investigation / PCT's complaint on that issue, (j) anything having to do with API, in particular allegations that Fleming stole API's accounts receivable, (k) any reference to Plaintiff's purported motivations in creating FCS (i.e., to create cost savings that could be passed on to Hawaii consumers) or that Fleming used FCS to overcharge Hawaii consumers; (l) representations that software development is important to Hawaii's economy, and that it is therefore crucial that an independent Hawaii software developer be protected from a national company's attempts to infringe on his intellectual property; and (m) any references to pornography or evidence of pornography purportedly found on the "Guidance Image" computer drives.

Given the narrow issues to be decided in the upcoming trial, any evidence of the above is:  (1) irrelevant under Fed. R. Evid. Rule 402; (2) inadmissible as character evidence under Fed. R. Evid. Rule 404(b); and (3) unfairly prejudicial

under Fed. R. Evid. Rule 403 notwithstanding any probative value thereof, and should, therefore, be held inadmissible.

## II.    **ARGUMENT**

### A.    **REFERENCE TO UNFOUNDED ALLEGATIONS AND OTHER IRRELEVANT MATTERS IS INADMISSIBLE UNDER FED. R. EVID. RULE 402.**

By this Court's prior orders, the trial will be limited to resolving the issue of what, if any, damages, Plaintiff may recover. Evidence in the above-listed categories is irrelevant to any fact of consequence in Mr. Berry's cause of action in the instant case and should be barred from admission under Rule 402 of the Federal Rules of Evidence. Fed. R. Evid. Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. **Evidence which is not relevant is not admissible**.

Fed. R. Evid. Rule 402 (emphasis added). "Relevant evidence" is defined as:

> having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. Rule 401.

1.    **Any allegation that the Fleming Companies are still in operation, should be excluded as outside the relevant time period and irrelevant to the issues to be tried.** The issues to be tried will revolve around events that occurred between April 1, 2003 and June 9, 2003, and specifically will

focus on what damages, if any, flow from events that took place in that time period. Fleming's operations outside of this limited time period are therefore irrelevant.

2. **Any reference to communications with any federal law enforcement agency has nothing to do with the remaining issues to be tried, and should be excluded as irrelevant and prejudicial**. Plaintiff has previously referred to his involvement in aiding federal law enforcement agencies in investigating Fleming for a number of alleged crimes, including gun smuggling and cigarette smuggling. Again, such discussions have no bearing on the issues of damages to be tried. At most, Plaintiff could have argued that they were related tangentially to his RICO claims. However, as Plaintiff's RICO claims have been dismissed entirely, any reference to Plaintiff's purported communications with any federal law enforcement agency is irrelevant, and would serve no purpose other than to prejudice or confuse a jury, and should be excluded.

3. **Likewise, any reference to Al Qeda is irrelevant to the remaining issues and should be excluded as irrelevant and prejudicial**. Plaintiff has also, in the course of this litigation, alluded to his belief that Fleming was somehow affiliated with Al Qeda. Again, these unfounded accusations may have been tenuously related to Plaintiff's RICO claims, but now have absolutely no

bearing on the issues to be tried and should be excluded, as any such reference

would serve no purpose other than to prejudice or confuse a jury.

4.    **Similarly, any references to terrorists and allegations that Fleming is or was somehow affiliated with terrorists, are irrelevant and should be excluded as irrelevant and prejudicial**.

5.    **Any reference to cigarette smuggling, and in particular, any evidence or allegation that Fleming was involved in a plot to smuggle untaxed cigarettes, is irrelevant, prejudicial, and is also prohibited as pertaining to allegations of a prior bad act**.  As noted above (see note 2), Plaintiff has alleged that Fleming took part in a plot to smuggle untaxed cigarettes.  Along with the categories of irrelevant subjects listed above, any mention of cigarette smuggling had, at most, a strained relationship to Plaintiff's RICO claims, and is now completely irrelevant to the pending trial.  Moreover, any reference to cigarette smuggling is barred by Rule 404 as an allegation of a prior bad act (see below).

6.    **Any reference to Kmart has no relevance to the issues at trial, and should be stricken on this basis, as well as on the basis that any such reference would be unduly prejudicial, confusing and a waste of time**.  As referenced in note 5, above, Plaintiff has alleged in relation to his RICO claims, that Fleming was involved in a fraudulent billing scheme with Kmart.  Any reference to Kmart is now, therefore irrelevant, prejudicial, and would constitute

an allegation of a prior bad act. On these bases, any reference to Kmart should be excluded.

7.  **Any reference to or evidence pertaining to armed gunmen should also be excluded as irrelevant, prejudicial, and based entirely on hearsay.** At his deposition in the pre-petition litigation, Plaintiff explained at length his belief that Fleming had caused armed gunmen to come to his house looking for him. As with the other allegations listed above, this has absolutely no relationship to the issue of damages in his copyright infringement case, and could only tend to prejudice a jury against Fleming with unfounded accusations. Moreover, Plaintiff's testimony indicates that his knowledge of this alleged event is based entirely on hearsay, and on that basis as well, should be excluded.

8.  **Any reference to attorneys' fees stemming from the prepetition trial has no bearing on the issues at trial here, and is so far removed from the relevant time period and issues, that it would only tend to confuse or prejudice a jury.** Such references should be excluded as irrelevant and prejudicial.

9.  **Any reference to the SEC investigation and/or PCT's complaint on that issue is irrelevant and would only tend to confuse or prejudice a jury, and on those grounds should be excluded.** This issue has no

relation to the question of damages resulting from copyright infringement during

the limited time period in question.

        10.    **Any reference to API, and in particular, allegations that**

**Fleming stole API's accounts receivable, should be excluded as irrelevant, as**

**any such reference would have no bearing on the damages issues to be tried**

**for the relevant time period**.  Moreover, such references would also be prohibited

insofar as they contain allegations of a prior bad act.  API ceased operations long

before the relevant time period, and as this Court has already ruled on the issue of

Fleming's direct infringement, any reference to API is no longer relevant and

should be excluded.

        11.    **Any reference to Plaintiff's reasons for creating the FCS**

**software (i.e., that his software was intended to benefit Hawaii consumers), or**

**that Fleming used FCS to overcharge Hawaii consumers, should be excluded**

**as irrelevant and prejudicial**.  Count V of Plaintiff's Second Amended

Complaint alleges a scheme by Fleming to overcharge Hawaii consumers, and

Plaintiff has argued, in his Memorandum in Opposition to the C&S Defendants'

Counter-Motion for Summary Judgment, that "Mr. Berry is a person who can

provide software that can bypass [successor to Fleming's purported overcharge

scheme] C&S and essentially operate in competition with C&S."  Memorandum in

Opposition at 17, attached as Exhibit 43 to the Smith Declaration.  Whatever

Plaintiff believes about the potential benefits his FCS software might bestow on the people of Hawaii, such references have no relation to the question of damages in this case.  Any attempt to portray himself as a modern day Robin Hood, has no place in this trial and would operate only as an attempt to prejudice the jury.

12.    **Likewise, any representation that software development is important to Hawaii's economy, or any assertion that it is crucial to protect an independent, local software developer from purported copyright infringement by a large, mainland company, are both irrelevant to the issues on trial and should be excluded.**  Such references could only be intended to prejudice a jury, and any possible value of such references would be clearly outweighed by their prejudicial tendencies.

13.    **Any reference to pornography, or evidence of pornography purportedly found on computer drives produced by Fleming, is clearly irrelevant and prejudicial, as it would serve no purpose other than to demonize Fleming and/or its employees.**  During a meeting between Plaintiff's counsel and counsel for the PCT and counsel for the Fleming Employees, Plaintiff's counsel alluded to "evidence of child pornography" he discovered on the "Guidance Image" disk drives produced by Fleming.  Smith Declaration.

14.    **Finally, Fleming, in the course of its Delaware Chapter 11 bankruptcy case (Case No. 03-10945), filed a declaratory relief action against**

**Plaintiff, for an injunction barring him from carrying on a campaign of harassment against Fleming (the "Declaratory Relief Action").** Fleming's Complaint for Declaratory Relief and Injunction Prohibiting Harassment ("Declaratory Relief Complaint") extensively details examples of Plaintiff's various allegations and conspiracy theories. See Exhibit 46 to the Smith Declaration. Many of the allegations detailed in regard to the Declaratory Relief Action are the same as those outlined above, pertaining to various irrelevant and inflammatory issues. On that basis, the pleadings filed in relation to that Declaratory Relief Action, and any reference to the Declaratory Relief Action, should be excluded as irrelevant and prejudicial.

The central issues, in the instant case, relate to whether Berry is entitled to recover damages for Fleming's use of Berry's FCS between April 1, 2003 and June 9, 2003, and for Fleming's minor modifications to that system. None of the topics listed above have any bearing on the issues to be tried, and any evidence in these categories would not remotely tend to make the existence of any fact of consequence in the copyright infringement action more probable or less probable. See United States v. Hitt, 981 F.2d 422, 423 (9th Cir. 1992). Evidence of other alleged acts, as described above, is irrelevant and inadmissible under Rule 402 of the Federal Rules of Evidence.

B.    **EVIDENCE OF FLEMING'S OTHER ALLEGED BAD ACTS IS INADMISSIBLE UNDER FED. R. EVID. RULES 404 AND 403.**

In addition to lacking any bearing on the narrow issues remaining, any reference to Alleged Other Acts is likewise inadmissible to show Fleming's propensity to commit other, similar "bad acts," under Rule 404. Moreover, any such reference would also likely prejudice and/or draw a jury's attention away from the actual issues at trial, potentially causing confusion and wasting the Court's time. Any of the above-listed references are therefore also inadmissible under Federal Rules of Evidence Rule 403.

1.    **Reference to any alleged prior bad acts must be barred from admission under Fed. R. Evid. Rule 404(b).**

Rule 404 absolutely precludes the introduction of evidence of prior "bad acts" of Fleming to prove that Fleming acted in conformity with those "bad acts" in relation to the copyright infringement.

Rule 404 provides, in relevant part, that:

**(a) Character evidence generally**

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . . .

**(b) Other crimes, wrongs, or acts**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. Rule 404(a)-(b). [9]  The Ninth Circuit has held that "other act"

evidence is admissible under Rule 404(b) if the following test is satisfied:

> (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged.  See Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991); United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989).  Even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  Id.

Duran v. City of Maywood, 221 F.3d 1127, 1132-33 (9th Cir. 2000).  The Alleged

Other Acts meet none of these requirements.

Of primary importance is that none of the Alleged Other Acts have any

relevance to the narrow issues to be tried.  "Relevancy is not an inherent

characteristic of any item of evidence but exists only as a relation between an item

of evidence and a matter properly provable in the case."  Huddleston v. United

---

[9] The term "person" as used in Fed. R. Evid. Rule 404 applies to corporations.  See Coursen v. A. H. Robins Co., Inc., 764 F.2d 1329, 1334-35 (9th Cir. 1985)

States, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).  Even assuming, arguendo, that Mr. Berry did have proof of any of the other alleged bad acts, none of those allegations are even marginally relevant to a case involving copyright infringement.  Material evidence has been defined as "evidence, fact, statement, or information that, if believed would tend to influence or affect the issue under determination."  United States v. Khang, 36 F.3d 77, 79 (9th Cir. 1994).

The issue under determination is copyright infringement and what damages, if any, Plaintiff is entitled to.  The alleged other acts that Mr. Berry wishes to introduce cannot address whether Berry is entitled to recover damages for Fleming's use of the Freight Control System between April 1, 2003 and June 9, 2003, or for Fleming's minor modifications to the FCS.

The other alleged bad acts are not remotely similar to the issue of copyright infringement.  The issues remaining in this case regarding damages, relate in no way to monopoly, overcharging, smuggling, or any of Mr. Berry's other grievances.  Consequently, none of the above-listed categories of evidence survive the threshold inquiry of whether the evidence is probative of a material issue other than character, to show whether the alleged act is sufficiently "similar."  Huddleston, 485 U.S. at 685-86, 108 S.Ct. at 1499, 99 L.Ed.2d 771.  In that case,

_____

(explaining that evidence of corporation's prior bad acts were inadmissible under

the government was prosecuting Huddleston for, among other things, selling stolen

Memorex tapes in interstate commerce. The government introduced evidence that

Huddleston had tried to "sell new 12" television sets for $28.00 apiece." Id. at

683, 108 S.Ct. at 1498. There was no evidence that the television sets were stolen.

The Court explained that

> [t]he Government's theory of relevance was that the televisions
> were stolen, and proof that [Huddleston] had engaged in a
> series of sales of stolen merchandise from the same suspicious
> source would be strong evidence that he was aware that each of
> these items, including the Memorex tapes was stolen."

Id. at 686, 108 S.Ct. at 1499. This type of similarity is completely lacking in the

instant case. The issue of damages resulting from copyright infringement bears no

similarity to monopolization, overcharging, or cigarette smuggling.

Under the language of Rule 404(b), evidence of Fleming's other alleged bad

acts is "evidence of other crimes, wrongs or acts" and "is not admissible to prove

the character of a person to show action in conformity therewith." Inasmuch as the

evidence Mr. Berry seeks to introduce bears no relation, in any way, to the

question of damages, Mr. Berry's only motive for introducing such evidence must

be to prove Fleming's conduct was in conformity with such evidence. However,

because the remaining issues in the instant case focus exclusively on damages, Mr.

Berry simply cannot introduce evidence of such other alleged bad acts.

---

Rules 404 and 403).

2.    **Evidence of Fleming's other alleged unrelated bad acts
      should be excluded under Fed. R. Evid. 404(b) and 403.**

Even if the Court somehow manages to find that the evidence at issue herein

is admissible for some purpose other than to show propensity, the evidence at issue

should still be excluded under Rules 404(b) and 403 of the Federal Rules of

Evidence since the probative value of such evidence is greatly outweighed by the

danger of unfair prejudice, confusion of the issues, and misleading the jury.

If the evidence is admissible for some other purpose than to show propensity, Rule

404(b) does not require that the evidence be excluded. See Notes of the Advisory

Committee on the 1972 Proposed Rules. The admissibility of such evidence then

turns on a determination of whether the danger of undue prejudice outweighs the

probative value of the evidence in view of the availability of other means of proof

and other factors appropriate for making decisions of this kind under Rule 403.[10]

See Notes of the Advisory Committee on the 1972 Proposed Rules. Additionally,

---

[10]    Rule 403 provides that:

> **Rule 403    Exclusion of relevant evidence on grounds of prejudice,
> confusion, or waste of time.** Although relevant, evidence may be excluded if
> its probative value is substantially outweighed by the danger of unfair
> prejudice, confusion of the issues, or misleading the jury, or by considerations
> of undue delay, waste of time, or needless presentation of cumulative
> evidence.

Fed. R. Evid. 403.

the Ninth Circuit requires that such evidence be of sufficient proof for the jury to

find that the defendant committed the other acts.  The Ninth Circuit in <u>Coursen v.</u>

<u>A.H. Robins Co., Inc.</u>, 764 F.2d 1329, 1334 (9th Cir.1985), stated that:

> Evidence of prior misconduct in admissible [under Rule 404(b)]
> if it is clear and convincing; relevant to an issue other than
> character; **and its probative value outweighs any potential**
> **prejudicial effect**.

(emphasis added).

The Ninth Circuit's decision in <u>Kramas v. Security Gas & Oil Inc.</u>, 672 F.2d

766 (1982), illustrates the inadmissibility of the evidence at issue.  In <u>Kramas</u>,

where the plaintiff brought a suit alleging violations of the securities laws, the

Ninth Circuit approved the trial court's refusal to admit evidence, under Rule

404(b), of a consent decree entered in a prior SEC enforcement proceeding against

the defendants.  <u>Id.</u> at 768 and 772.  The Ninth Circuit stated that:

> The consent decree involved no finding of culpability and no
> judgment of wrongdoing, and contained a recitation that it did
> not constitute evidence of wrongdoing in the enforcement
> proceeding or in any other proceeding. . . .  Moreover, whether
> the danger or prejudice from admission of evidence of other
> wrongful acts--the decree or direct evidence of the alleged
> wrongful conduct--outweighed its probative value was
> committed to the trial court's sound discretion. . . .  **In this**
> **instance the probative value of the evidence was limited--it**
> **related to different transactions and alleged**
> **misrepresentations of a different kind--while the prejudicial**
> **impact of the evidence upon the jury was obviously**
> **substantial**.  Moreover, admission of the evidence would have
> opened large areas of proof on collateral matters.  The district

court could reasonably conclude that the balance favored
exclusion.

Id. at 772 (citations omitted and emphasis added).

Evidence of Fleming's alleged bad acts is inadmissible under Rules 404(b)

and 403 for several reasons. First, any such evidence sought to be introduced must

be clear and convincing and it is doubtful that Mr. Berry can meet this evidentiary

standard. Second, like Kramas, the evidence at issue herein has no probative value

as it relates to different and unrelated bad acts, claims, actions, and disputes while

the prejudicial impact of such evidence is substantial. The admission of such

evidence presents a danger of unfair prejudice by subtly permitting the jury to

punish Fleming because of its alleged character despite what the evidence in the

case shows actually happened.

The danger of unfair prejudice is increased by the admission of evidence of

monopolization, overcharging, and cigarette smuggling, given society's distaste for

such activity. Such evidence would unfairly invoke hostility on the part of the jury

against Fleming in the instant case and may lead the jury to make its decision on an

improper basis.

Consideration of other Rule 403 factors favors exclusion of such evidence.

If this Court allowed such evidence, Fleming will then be compelled to submit

large amounts of counterproof to rebut any inferences of "bad character" drawn

from evidence of these collateral matters. The mini-trials on these collateral

matters will undoubtedly confuse and mislead the jury.  Additionally, these mini-trials on collateral issues would unduly delay the adjudication of the merits of this case and waste this Court's time.

Consequently, Rules 404(b) and 403 should exclude any and all evidence of other unrelated grievances, complaints, union disputes, lawsuits or claims against or involving Fleming, alleged or proven violations of the law, including, but not limited to the Alleged Other Acts listed above.

III.    **CONCLUSION**

For the foregoing reasons, Fleming respectfully requests that this Honorable Court bar the admission of evidence of other unrelated grievances, complaints, lawsuits, alleged or proven violations of the law, and any other acts including, but not limited to:  (a) allegations that the Fleming Companies are still in operation, (b) communications with the FBI, (c) Al Qaeda, (d) terrorists, (e) cigarette smuggling, (f) K-Mart, (g) armed gunmen, (h) references to attorneys' fees stemming from prepetition trial, (i) references to the SEC investigation / PCT's complaint on that issue, (j) anything having to do with API, in particular allegations that Fleming stole API's accounts receivable, (k) any reference to the fact that Kirkland & Ellis LLP and its attorneys, are a mainland law firm, and (l) any reference to Plaintiff's purported motivations in creating FCS (i.e., to create cost savings that could be passed on to Hawaii consumers).

DATED:  Honolulu, Hawaii, January 3, 2006.


KOBAYASHI, SUGITA & GODA

BERT T. KOBAYASHI, JR.
LEX R. SMITH
THOMAS H. YEE
Attorneys for Defendant
THE POST CONFIRMATION
TRUST FOR THE FLEMING
COMPANIES, INC.

and

KIRKLAND & ELLIS LLP
Eric C. Liebler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 228611)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 680-8400
Facsimilie: (213) 680-8500

Co-Counsel for the Post Confirmation
Trust for Fleming Companies, Inc.