# Exhibit 4

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 16 2004

at ____ o'clock and ____ min ____ M
WALTER A.Y.H. CHINN, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;   ) | Civ. No. CV03 00385 SOM-LEK |
|   ) | (Copyright) |
| Plaintiff,   ) | |
|   ) | SECOND AMENDED VERIFIED |
| vs.   ) | COMPLAINT; EXHIBIT "A"; |
|   ) | DEMAND FOR JURY TRIAL; AND |
|   ) | SUMMONS |
| HAWAIIAN EXPRESS SERVICE,   ) | |
| INC., a California corporation; H.E.S. ) | |
| TRANSPORTATION SERVICES,   ) | |
| INC., a California corporation;   ) | |
| CALIFORNIA PACIFIC   ) | |
| CONSOLIDATORS, INC., a   ) | |
| California corporation; JEFFREY P. ) | |
| GRAHAM and PETER SCHAUL,   ) | |
| California citizens; MARK DILLON   ) | |
| and TERESA NOA, BRIAN   ) | |
| CHRISTENSEN, Hawaii citizens;   ) | |
| FLEMING COMPANIES, INC., an   ) | |
| Oklahoma corporation; C & S   ) | |
| LOGISTICS OF HAWAII, LLC, a   ) | |
| Delaware LLC; C & S WHOLESALE ) | |
| GROCERS, INC., a Vermont   ) | |
| corporation;   ) | |

Exhibit 4

210

C & S ACQUISITIONS, LLC;                    )
FOODLAND SUPER MARKET,                      )
LIMITED, a Hawaii corporation;              )
HAWAII TRANSFER COMPANY,                    )
LIMITED, a Hawaii Corporation,              )
RICHARD COHEN, a New Hampshire)
citizen ES3, LLC, a Delaware Limited        )
Liability Company, MELVIN PONCE,            )
SONIA PURDY, JUSTIN                         )
FUKUMOTO, AFREDDA                           )
WAIOLAMA, JACQUELINE RIO,                   )
Hawaii citizens; JESSIE GONZALES,           )
LUIZ RODRIGUES, AL PEREZ and                )
PATRICK HIRAYAMA , California               )
citizens; GUIDANCE SOFTWARE,                )
LLC, a California, LLC; MICHAEL             )
GURZI, a California citizen; ALIX           )
PARTNERS, LLC, a Delaware LLC  ;  )
DOE INDIVIDUALS 2-350; DOE                  )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20,                )
                                            )
            Defendants.                     )
_____            )

## SECOND AMENDED VERIFIED COMPLAINT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his

undersigned counsel, and hereby complains of the above-entitled Defendants and

alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C. § 1338 (b) and The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Clayton Act, 15 U.S. C. §§ 15 & 26.   In addition, this Court has federal subject matter jurisdiction pursuant to §1964(c) of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1964(c) and the state law claims are brought pursuant to pendent jurisdiction.

2.     Venue is proper in the District pursuant to 15 U.S.C. § 22, 28 U.S.C. §§ 1391and 1400 because the wrongs that are the subject of this complaint occurred in the State of Hawaii and were directed against one of its citizens.   As set forth herein, each of the Defendants named herein have had sufficient minimum contacts with the state of Hawaii to be amenable to service of process by a Hawaii court.  Venue is also proper in the District of Hawaii pursuant to §1965(a) of RICO, 18 U.S.C. §1965(a) because each of the defendants resides and/or is found to have an agent and/or transact their affairs in this district.   As to foreign defendants, in accordance with §1965(b) of RICO, the ends of justice require that all defendants be brought before this Court.

3

## THE PARTIES

3.    Defendant Hawaiian Express Service, Inc. ("HEX") is a corporation, formed under the laws of the State of California, with its principal place of business in the State of California. HEX also maintains a place of business in the State of Hawaii and transacts business in the State of Hawaii. HEX, HEST and CALPAC, through the unauthorized use of Plaintiff's intellectual property ship a significant portion of all food stuffs sold to consumers in the State of Hawaii. HEX may be found in the State and maintain offices and agent in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than sufficient minimum contact with Hawaii to make it amenable to service in the State of Hawaii because it is found in the State.

4.    Defendant H.E.S. Transportation Services, Inc. ("HEST") is a corporation, formed under the laws of the State of California, with its principal place of business in the State of California. HEST transacts business in the State of Hawaii directly and through HEX and other entities. HEX, HEST and CALPAC, through the unauthorized use of Plaintiff's intellectual property, ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. HEST and its agents and bailees may be found in the State of Hawaii and maintain

offices in the State of Hawaii and conducts sufficient business in the State of

Hawaii that it has availed itself of the benefits of the State of Hawaii and has more

than the sufficient minimum contact with Hawaii make it amenable to service in

the State of Hawaii. By intentionally committing criminal and civil wrongs

against a citizen of Hawaii HEST has had sufficient minimum contacts with the

State of Hawaii to confer venue in this District.

     5.     Defendant California Pacific Consolidators ("CALPAC") is a

California corporation doing business in the state of Hawaii. CALPAC is a large

supplier of refrigerated food products to the state of Hawaii and sells to both

civilian and military customers. HEX, HEST and CALPAC, through the

unauthorized use of Plaintiff's intellectual property, ships a significant portion of

all food-stuffs sold to consumers in the State of Hawaii. CALPAC and its agents

and bailees may be found in the State of Hawaii and maintain offices in the State

of Hawaii and conducts sufficient business in the State of Hawaii that it has

availed itself of the benefits of the State of Hawaii and has more than the sufficient

minimum contact with Hawaii make it amenable to service in the State of Hawaii.

By intentionally committing criminal and civil wrongs against a citizen of Hawaii

HEST has had sufficient minimum contacts with the State of Hawaii to confer

venue in this District.

6.    Defendant C & S Logistics of Hawaii, LLC ("C & S Logistics") is a Delaware limited liability company registered to do business in the state of Hawaii. C & S Logistics is an entity formed by the principals of C & S Wholesale Grocers, Inc., for the purpose of operating a freight logistics business on behalf of other defendants, including, but not limited to, C & S Wholesale Grocers, Inc., C & S Acquisitions, LLC and Foodland Super Market, Limited. C & S Logistics has stepped into the shoes of Fleming Logistics an unincorporated association comprised of persons affiliated with Fleming Companies, Inc., and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement. Through the unauthorized use of Plaintiff's intellectual property, C & S Logistics presently ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. C & S Logistics maintains an agent for service in the state of Hawaii and its agents and bailees may be found in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By intentionally committing criminal and civil wrongs against a citizen of Hawaii C & S Logistics has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

6

7.      Defendant C & S Wholesale Grocers, Inc.("C & S Wholesale") is a Vermont corporation doing business in the state of Hawaii.  C & S through its agent C & S Logistics is selling groceries and operating a freight logistics business on behalf of other defendants, including, but not limited to,  C & S Acquisitions, LLC and Foodland Super Market, Limited and the principals of these companies. C & S Wholesale has stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement.   Through the unauthorized use of Plaintiff's intellectual property, C & S Wholesale and its agents presently ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii.   C & S Wholesale maintains no agent for service in the state of Hawaii but its agents and bailees may be found in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than the sufficient  minimum contact with Hawaii make it amenable to service in the State of Hawaii.  By intentionally committing criminal and civil wrongs against a citizen of Hawaii, C & S Wholesale has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

8.      Defendant C & S Acquisition, LLC ("C & S Acquisition") is a Delaware limited liability company doing business in the state of Hawaii.  C & S

7

Acquisition, through its agent C & S Logistics is operating a freight logistics business on its own behalf and on behalf of other defendants, including, but not limited to, C & S Wholesale Grocers, Inc., and Foodland Super Market, Limited. C & S Acquisition and its affiliates have stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement. Through the unauthorized use of Plaintiff's intellectual property, C & S and its agents presently ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. C & S Acquisition maintains no agent for service in the state of Hawaii but its agents and bailees may be found in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By intentionally committing criminal and civil wrongs against a citizen of Hawaii C & S Acquisition has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

9.    Hereinafter the party defendants C & S Logistics, C & S Wholesale and C & S Acquisition shall be together referred to as "C & S."

10.    Hawaii Transfer Company, Limited ("HTC"), is a Hawaii

corporation, doing business in the state of Hawaii and using the Berry Freight

Control System without any license and is a willful infringer.

11.    Foodland Super Markets, Limited ("Foodland") is a Hawaii

corporation doing business in the state of Hawaii as its largest retail grocery

distributor doing business in the Hawaii civilian retail grocery market.

12.    Defendant Fleming Companies, Inc. ("Fleming") is an Oklahoma

corporation and is presently the debtor in a pending Delaware bankruptcy case.

Fleming is registered to do business in the state of Hawaii and maintains an agent

for service.  Fleming is the sole full line wholesale grocery distributor in the state

of Hawaii and by the illegal use of the Berry Freight Control System and earned

more than $500 million in food sales annually.  Fleming as debtor in possession is

made a party to this suit solely to enjoin its illegal conduct all committed after the

filing of the voluntary Chapter 11 petition.   Plaintiff does not seek to execute

upon any money judgment against Fleming or to otherwise assert rights to

property of the Fleming Bankruptcy Estate without order of the Bankruptcy Court.

13.    Defendant Jeffrey P. Graham ("Graham") is a California Citizen and

upon information and belief is the president of HEX, HEST and CALPAC.

Graham has responsibility for causing and directing the infringing activities that

are the subject of this complaint and derives a direct financial benefit from the

9

infringement. Graham conducts sufficient business in the State of Hawaii that he may be found in the District of Hawaii and has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Graham has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

14.    Defendant Peter Schaul ("Schaul") is a California Citizen and upon information and belief is the general manager of HEX, HEST and CALPAC. Schaul has certain responsibility for causing and directing the infringing activities that are the subject of this complaint and derives a direct financial benefit from infringement. Schaul conducts sufficient business in the State of Hawaii and may be found in the State of Hawaii and he has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Schaul has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

15.    Defendants Mark Dillon ("Dillon") and Teresa Noa ("Noa") are citizens of the state of Hawaii and have both used and made unauthorized changes to Plaintiff's intellectual property within the state of Hawaii and may be found in

10

the State of Hawaii. Both Dillon and Noa had direct access to Plaintiff's software as employees of Atlantic Pacific International, Inc, and later as Fleming Companies, Inc. Both Dillon and Noa have possession of the software including its source code and have committed numerous acts of copyright infringement regarding Plaintiff's intellectual property. If not enjoined, Plaintiff is at real risk that additional infringements will be committed by these individual defendants.

16.    Defendant Brian Christensen ("Christensen") is a citizen of the state of Hawaii and Fleming's Hawaii division president and responsible for the direction of the July 7, 2003 infringement and the continued use of the Berry Freight Control System after April 1, 2003.

17.    Upon information and belief, Defendant ES3, LLC ("ES3") is a limited liability company with its principal place of business in the State of New Hampshire and does business throughout the United States including Hawaii. ES3 was identified previously as Doe Defendant Corporation Number 1. ES3 purports to develop software that directly competes with Mr. Berry. ES3 operates the same web server as defendant C&S Wholesale Grocers, Inc. and upon information and belief shares common information technology personnel and infrastructure. Because it can access C&S Wholesale Grocers, Inc.'s information systems and is a developer of freight control software, its access to Mr. Berry's software that has

11

been illegal copied by agents of C&S, puts Mr. Berry at risk of imminent irreparable harm. In addition, any similar software developed by ES3 or modified since the access began would constitute an infringement of Plaintiff's original work. Further, ES3 combines horizontal competitors in the food distribution business and facilitates anti-competitive behavior among competing actors.

18.    Defendant Richard Cohen, is a New Hampshire citizen and the principal of ES3, C&S Wholesale Grocers, Inc., C&S Logistics of Hawaii, LLC and C&S Acquisitions, LLC (hereinafter "C&S"). Upon information and belief Mr. Cohen has traveled to the State of Hawaii to conduct business on behalf of C&S through the various entities he controls. Based on the admissions in the Guidance Report he has asserted ownership over Plaintiff's intellectual property without lawful right. Mr. Cohen had been given notice of the alleged infringement and, upon information and belief, has taken no actions to cause the infringing conduct of persons under his authority to cease. Mr. Cohen derives significant sums of money from the operation of Plaintiff's intellectual property, has the ability to control direct infringement but has chose to permit the infringement to continue for the purpose of his financial gain. Mr. Cohen conducts sufficient business in the State of Hawaii that he may be found in the District of Hawaii and has purposely availed himself of the benefits of the State of Hawaii and has more

12

than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Mr. Cohen has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

19.    Defendants Melvin Ponce , Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, Jacqueline Rio (the "Fleming-Logistics Employees") are all Hawaii citizens and have during the relevant times operated the Berry Freight Control System as direct infringers. Each of these individual defendants continues to derive personal financial gain from the operation of Mr. Berry's Freight Control System under Mr. Christensen's direction. Because these individuals have had direct access to copies of Mr. Berry's intellectual property, they remain a threat to Plaintiff and his rights as a copyright owner. Each of these defendants conducts sufficient business in the State of Hawaii that it they availed themselves of the benefits of the State of Hawaii and have more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By committing civil wrongs against a citizen of Hawaii each Graham Agent has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

20.    Jessie Gonzales, Luiz Rodrigues, Al Perez and Patrick Hirayama (hereinafter the "Graham Agents") are all California citizens and employees of

13

HEXT/HEST/and/or CalPac. Each of these defendants have used Mr. Berry's

Freight control system and the Web Pages without a license and are therefore

infringers.

21.    Defendants Guidance Software, Inc., Michael Gurzi, Alix Partners

and non-defendant RICO Person Michael Scott are named as participants in

certain criminal conduct directed against Mr. Berry and are principally named in

the RICO claim that Plaintiff seeks to add by this amendment. Upon information

and belief, Guidance Software, Inc. is a California corporation and directed its

agent Michael Gurzi, also a citizen of California to travel to Hawaii, commit

multiple counts of copyright infringement, then file a false declaration in the

Delaware Bankruptcy court on or about August 1, 2003, in Adv. Pro. No. 03-

54809. Further, these knowing violations of federal law were authorized by

Michael Scott, believed to be a Texas citizen to further the criminal infringement

of Mr. Berry's software. Alix Partners, LLC is a company doing business in the

United States of America and has principal places of business in several states and

is the party directly responsible for the infringement and conspiracy to infringe

caused by Michael Scott believe to be both agent and principal of Alix Partners,

LLC and his acts are imputed to Alix Partners, LLC through vicarious liability.

22.    Defendants Doe Individuals 2-350 and Doe Partnerships,

Corporations and Other Entities 2-20 are persons who may be liable to plaintiff for

that acts and omissions complained of herein, but whose names, identities and

capacities are presently unknown to plaintiff and his attorney. These additional

Doe defendants will be identified upon their discovery by plaintiff. Each user,

and entity that derives a benefit from the infringement including the customers of

each of the Defendants through the illegal use of the Berry Freight Control

System is a separate infringer and when their identities are made know to Plaintiff

will be made a party and serve as a separate basis for statutory damages should

such damages be elected by plaintiff. Each of these Doe Defendants are

knowingly engaged in intentional wrongful acts of infringement directed against a

citizen of the State of Hawaii and it would be just that they be made a defendant in

this proceeding.

23.    Plaintiff Wayne F. Berry (the "Plaintiff" and "Developer") is an

individual national domiciliary of the United States and is a resident and citizen of

the State of Hawaii and, as the software developer victim of Fleming, C&S',

Foodland, HEX, Graham, Schaul HEST , CALPAC, Guidance, Alix Partners and

others including the Doe Defendants' intentional, criminal and willful

infringement has standing to bring the instant action. All software that is the

subject of this Second Amended Verified Complaint was authored in the United

States of America.

24.    Upon information and belief, the majority of all acts conferring venue relevant to this proceeding occurred in the State of Hawaii. Each of the defendants are actively engaged in business activities in the State of Hawaii and/or have derived a direct financial benefit from the infringement that is the subject of this Complaint and may be found in the State of Hawaii.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

25.    On or about 1993, Plaintiff created an original work of authorship which was then fixed as a tangible medium of expression. (the "Freight Control System").

26.    This original work was first published in 1995.

27.    The work was an original work and contained substantial amounts of material created by Plaintiff's own skill, labor and judgment.

28.    All of the subject software work is copyrightable under the laws of the United States of America and was authored in the United States of America.

29.    On or about October 1999, Plaintiff complied with the statutory formalities for registering his copyright in "Freight Control System" by fully complying with Federal laws and regulations by depositing with the Copyright Office, two copies of the best version of the Freight Control System source code,

filing the application and paying the required fees.

30.     Shortly thereafter, Plaintiff received a filed registration for Freight Control System from the Copyright Office.   The date, class and registration number certificate received from the Registrar of Copyrights is as follows: "Freight Control System" dated October 19, 1999, Copyright Registration Number TX 5-079-445.   A true and correct copy of the Filed Registration is attached as Exhibit "A."

31.     All publications of the instant software have been with proper statutory notice.

32.     Freight Control System is a program Plaintiff wrote in Microsoft Access and Visual Basic using both the Visual Development Environment and hand-coding.   Freight Control System is primarily a database designed to control and monitor consolidation and containerization of freight.

33.     Freight Control System contains database tables, queries, screens and macros that handle Accounts Receivable, Accounts Payable, Job Costing, Logistic Scheduling and Real-Time Shipment Tracking. The principle unique feature of the database is the ability for a user of this system to control a large number of Purchase Orders and annotate shipping information to the records for billing and tracking purposes along with planning and scheduling efficiencies that translate

17

directly to lower freight costs. The user can then build containers, which contain these individual Purchase Orders. The user can enter costs for both individual Purchase Orders and for entire containers. The system will allocate container costs to the individual Purchase Orders.   Finally, the "Bill To" party can be invoiced for the shipment and a profitability derived from the billed amount less the allocated costs. By operating the Berry System, independent from Fleming's "Foods" billing system, Fleming is able to conceal the true cost of freight delivery from its end user customers including, but not limited to, the United States of America.

34.     During the period after 1997, both Dillon and Noa had access to Plaintiff's software.   Beginning in November 1999, both Dillon and Noa had direct access to Plaintiff's source code for his Freight Control System and cannot make a replacement program to operate in the freight logistics software market without infringing.

35.     Starting no later than October 1999, HEX began to operate the Berry Freight Control System under the claim that it was authorized under a license granted by Plaintiff to Fleming Companies, Inc. ("Fleming").

36.     Fleming is an adjudicated willful infringer based on the jury verdict finding that Fleming has created unlicensed derivative copies of the Freight Control System.

18

37.    Dillon and Noa and certain Doe Defendants, under the direction of Fleming's agents defendant Christensen, and non-defendants Lex Smith, Michael Scott and Damian Capozzola, starting on or about May 9, 2003 and concluding on or about July 7, 2003, together created an illegal copy and separate derivative copy of the Berry Freight Control System knowing that they were committing willful copyright infringement. The copy was taken from Fleming's location by Guidance Software, Inc., Fleming's agent. Under agreement with Fleming, Guidance Software, Inc. agreed to analyze the Berry software in violation of Plaintiff's rights as a developer. The continued possession of Plaintiff's copyrighted work is a threat to Plaintiff's property and grounds for an immediate injunction.

38.    Foodland has utilized Plaintiff's software to facilitate its direct store shipments. Foodland has notice of the claim of infringement being committed by its agents, including Fleming, HEX and HTC but continues to derive financial gain from this activity with full knowledge that its agents are engaged in infringement.

39.    Upon information and belief, HEX, HEST and/or CALPAC have obtained an illegal pirated copy of the Freight Control System and/or have been using a illegal unlicensed derivative of the Freight Control System. Shane Kelley, HEX, HEST and/or CALPAC's computer consultant admitted in a telephone

conversation with Wayne Berry that he had "seen his code." Shane Kelley

informed Mr. Berry that he would investigate the infringement and call him back

with the results unless his investigation showed serious infringement. Mr. Kelley

never called back.

40.    HEST, HEX and CALPAC have had access to Mr. Berry's original

work and have used an illegal derivative that is used to generate financial gain for

all defendants.

41.    Upon information and belief HEST, HEX and CALPAC continue to

use the Freight Control System and/or its derivative software to make profits

derived from the illegal use of a copyrighted work in violation of the Copyright

Act or, by possessing a copy, threaten the future use of such illegal software.

42.    Plaintiff has never authorized this use and has informed defendants

and their attorney that the use of the software constitutes infringement.

43.    On January 4, 2002, Defendant HEX answered Plaintiff Wayne Berry's

First Request for Answers to Interrogatories, in Wayne Berry v. Fleming Companies,

Inc., Civ. No. CV01-00446 SPK LEK. (the "Interrogatory Responses").

44.    In the Interrogatory Responses, HEX admitted, under oath, that, at the

direction of Fleming Companies, Inc., HEST uses the Berry Freight Control System

software to input information required by Fleming to comply with an oral contract

20

between Fleming and HEST.

45.    In a deposition, Fleming's Hawaii division president Ralph Stussi testified under oath that Fleming's contract was with HEX and had never heard of HEST.

46.    HEX, HEST, CALPAC, Shaul, Graham C & S, Fleming, Noa, Dillon, HTC , Christensen and Foodland have, and through future infringement will, all continue to derive revenue from the use of the Freight Control System.

47.    None of the defendants herein are licensed to use the Berry Freight Control System or any derivative.

48.    Neither HEX, HEST, CALPAC, Shaul and Graham nor any of their agents and/or bailees have any right to use the Freight Control System.

49.    Plaintiff has not given HEX, HEST, CALPAC Shaul, Graham, Fleming, C&S, Dillon, Foodland, Christensen and/or Noa permission to use his software and they are guilty of willful infringement.

50.    By letter dated April 9, 2003, Plaintiff demanded that HEX and HEST provide Plaintiff with satisfactory proof that they have stopped using his Freight Control System software.

51.    On May 1, 2003, defendants' attorney, Karen  Fine, Esq. wrote in response to the letter stating that all access to the Fleming system had been

21

terminated.

52.    Plaintiff alleges that C&S, Dillon, Guidance and the HEX affiliated Defendants have obtained a pirated copy of his software.

53.    Fleming, HEX and HEST's principal, has admitted that it has granted HEX permission to use Plaintiff's software. Fleming has been found a willful infringer and had no lawful right to grant such a license.

54.    HEX has admitted that HEST is using Plaintiff's software.

55.    This software contains trade secrets and the use by Defendants constitute infringement and Plaintiff continues to suffer irreparable harm.

56.    On March 6,  2003,  a jury found that Mark Dillon's unauthorized changes to the Berry Freight Control System constituted willful infringement and awarded Mr. Berry $98,500 in damages. That finding terminated any and all licenses to the Berry Freight Control System.

57.    After April 1, 2003, Fleming, C & S, Fleming, HTC, HEX/HEST/CALPAC, Mark Dillon, Teresa Noa, HTC, and Foodland have used the illegal derivative of Mr. Berry's software without any right. Christensen has authorized that use.

58.    On or about July 7, 2003, despite being aware that this conduct clearly constitutes willful infringement, Mark Dillon, under Christensen's authority and with

22

full access to Mr. Berry's source code, created another illegal unauthorized derivative of the Freight Control System for his own personal financial gain.

59.    Upon information and belief, both Noa and Dillon maintain copies of the Berry software on their home computers to facilitate their infringement.

60.    This act of infringement was directed by certain of Fleming's agents.

61.    In addition to this infringement, these Fleming agents directed a third party developer, Guidance Software, without any authority form Mr. Berry, to access Plaintiff's software, make an unauthorized copy of the system and transport it to California for the purpose of analyzing the software to facilitate further acts of criminal infringement.

62.    The July 7, 2003, derivative contained elements of Mr. Berry's software and performed the same functions as the Berry copyrighted software. Due to the knowledge obtained by Mr. Dillon and Ms. Noa of Mr. Berry's Freight Control System, and its functional similarity this constitutes an infringing derivative of the Freight Control System.

63.    From and after October 1, 1999 to at least  May 9, 2003, the non bankrupt Defendants have infringed upon Plaintiff's copyright as follows:

a.    Using software by remote access that places a copy of the Plaintiff's software on the computer of no less than ten users;

23

b.     Using the software after receiving notice of the infringement and demand to cease and desist, and

c.     Providing illegal copies to third-parties including employees, agents, software developers and technicians who are not yet identified to Plaintiff by who are all infringers and who will be named later.

d.     Using third-party application sharing technology to permit unlicenced users to use the Plaintiff's software in violation of his copyrights.

e.     Deriving profits from the illegal use of the software.

64.     From April 1, 2003, Fleming Companies, Inc. as debtor in possession, has committed numerous acts of Copyright infringement as set forth herein. Plaintiff seeks to liquidate his claim against Fleming in this proceeding but does not seek to execute any judgement, other than a permanent injunction against the bankrupt and is agents and affiliates.

65.     Defendants' activities constitute infringement of Plaintiff's copyright and Defendants have continued such conduct notwithstanding such notice.

66.     As to Defendants Christensen, Dillon and Noa, the continued use of the Berry Freight Control System after April 1, 2003, and the creation of the July 7, 2003 Derivative and the copy given to Guidance Software constitutes a violation of the owners exclusive rights and is willful infringement.

24

67.   As to the C & S Defendants, these defendants have used the Berry Freight Control System to operate an illegal freight logistics enterprise in violation of the copyright laws of the United States. Mr. Berry is entitled to all profits derived from this infringing use.

68.   The C & S Defendants, through certain agreements with Fleming, have entered into an agreement with Fleming and certain of the other defendants to operate the Berry Freight Control System, and the illegal derivatives. The C & S Defendants have committed certain overt acts in furtherance of the illegal agreement with Fleming including establishing C & S Logistics for the purpose of continuing the Fleming infringement after the completion of the sale of Fleming's assets to C & S Acquisition, LLC or its nominee.

69.   Each time C & S transfers wholesale groceries through the Berry Freight Control System, it commits another act of copyright infringement. Each C & S, HEX/HEST/CALPAC, Foodland and/or HTC employee that in any manner utilizes the Berry Freight Control System or the reports generated by the system, is a separate infringer and is liable for the full damages for each infringement.

70.   The knowledge of the infringement is imputed to the individual defendants by their principals. Should Plaintiff elect statutory damages, each such employee is liable for the full $150,000 of statutory damages, or such other amount

25

as the jury may determine is just. C & S, HEX/HEST/CALPAC and/or HTC are liable as a vicarious infringers for the total sum of all employee infringements. Plaintiff is informed and believes that over 1,000 C & S, HEX/HEST/CALPAC and/or HTC employees are direct infringers.

## COUNT I
## (DIRECT INFRINGEMENT)

71.  For each of the defendants and the Doe Defendants yet to be named, Plaintiff is entitled to actual damages and his lost profits plus any profits made by the infringers from the use of the Freight Control System software by any of the defendants as a direct infringer. These amounts will be determined at time of trial. Plaintiff reserves his right to claim, at a later date, the right to statutory damages based on each defendants' separate liability for infringement.

72.  Each time the Berry Freight Control System was used by the infringers, a copy of the software was created and this constitutes illegal copying.

73.  Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions, LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Guidance, Gurzi, each employee and/or agent of defendants named herein are a separate infringer and Plaintiff is entitled to full statutory damages, upon election, for the willful infringement of each of these individual users up to $150,000 for each user for each work infringed.

26

## COUNT II
### (CONTRIBUTORY AND VICARIOUS INFRINGEMENT )

74.    For Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions, LLC,

C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Schaul, Graham, Guidance,

and Alix Partners, LLC, each of the defendants and the Doe Defendants yet to be

named, Plaintiff claims the right to damages based on theories of contributory and/or

vicarious infringement.

75.    As to vicarious liability, each defendant that has the ability to control the

infringing use and is liable jointly and severally with the direct infringer for all

damages resulting from the direct infringement.

76.    Defendants Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions,

LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Schaul, Graham,

Guidance, and Alix Partners, LLC, are vicarious and contributory infringers. Other

officers, shareholders directors and principals are also liable as vicarious and

contributory infringers these Doe Defendants shall be identified as they are

discovered.

77.    As to contributory infringement each defendant who knowingly

contributes to another's infringement is liable for the infringement based on the direct

infringement by others and or Doe agents and employees as end-users. Defendants

knew or should have known of the infringement and directly and materially

27

contributed to the direct infringement.

78.    As to vicarious infringement each defendant had the right and ability to supervise infringing activity and also has a direct financial interest in such activities.

79.    As to each of these defendants, Plaintiff reserves, but does not yet elect, his right to statutory damages based on the infringement of each employee, customer and other user of the Freight Control System regarding defendants each as a separate infringer and a separate basis for joint statutory damages should Plaintiff elect statutory damages.

## COUNT III
## (CONSPIRACY TO INFRINGE)

80.    In or about early 2001, Foodland, through Roger Wall, Kam Wong and Edward Chun requested that Wayne Berry provide Foodland with a proposal to, as Mr. Chun stated, "stop the bleeding" regarding the admitted overcharges that were being passed on to the Hawaii consumer.

81.    In an attempt to market his software to Foodland and at Foodland's request, Mr. Berry produced a demonstration of how his computer software could provide Foodland with a means to monitor and quantify the overcharge and then facilitate the independent shipping of goods by Foodland using Fleming only as a warehouse and delivery service, for a modest fee. This would, as Mr. Chun stated, "stop the bleeding."

28

82. Mr. Berry continued to work on the Foodland proposal into the summer of 2001, and met with Foodland's president Able Porter to discuss the proposal.

83. Rather than license a legal copy of Mr. Berry's software, Foodland, chose to contact Fleming, disclose the Berry proposal and then enter into an agreement with Fleming for what Fleming claimed to be the free, albeit unlicensed, use of Mr. Berry's software.

84. On July 11, 2001, Foodland began to receive direct deliveries to its stores through the Berry Freight Control System. Despite knowing that it had no intention of paying Mr. Berry for his intellectual property that Foodland decided it could just as easily obtain for free, Foodland's management, including Roger Wall continued to induce lead Mr. Berry into thinking that it was still considering Mr. Berry's system when Foodland had already entered into the agreement with Fleming to infringe upon Mr. Berry's original work.

85. All of the use by Fleming on behalf of Foodland and by HEX, HEST, CALPAC, Foodland and HTC are overt acts by each of the defendants in regard to this conspiracy.

86. To facilitate the actors financial gain in regard to the conspiracy to infringe, Mark Dillon and Teresa Noa have together created at least one hundred unauthorized derivative copies in furtherance of the conspiracy. Though aware that

29

their acts constitute infringement, Dillon and Noa have agreed with C&S to continue to infringe and in return C&S agreed with Dillon and Noa to compensate them for the infringement. Upon information and belief this agreement was made before Dillon and Noa's employment by C&S.

87.    Mr. Dillon, in an act of intentional willful infringement for financial gain, copied the structure and original work of Plaintiff's Access Database by using MS Query. In his deposition, Mr. Dillon testified that he had changed some of the names in the relevant database components to make it look different from Mr. Berry's program.

88.    This creation of a new derivative is an act of infringement and done for the purpose of financial gain.

89.    Upon information and belief, Fleming also offered Foodland certain unearned rebates in the form of enhanced "team score" and by convincing Foodland that even though it was paying more than market price for the commodities it was buying the Fleming monopoly made it impossible for any Foodland competitor to receive a more favorable price. Foodland began to cause shipments of its food by through the Foodland/Fleming Copyright Infringement Conspiracy.

90.    On or about May 2003, Fleming terminated its workout firm Gleacher Partners, LLC and engaged the service of Alix Partners, LLC that had served the

same function for the Kmart bankruptcy. Kmart is a knowing user of Mr. Berry's original works and Alix Partners, LLC sought to protect both of its clients, Kmart and Fleming by assisting in the criminal infringement of Mr. Berry's original works. Alix Partners, LLC knew or was willfully blind to the wrongful conduct. The actions of Michael Scott are imputed to Alix Partners, LLC under the theory of vicarious liability.

91. The Declaration of Damian Capozzola filed in Delaware Bankruptcy Court on August 1, 2003, in ADV Proc. 03-54809 contained as Exhibit "R" a document signed on June 26, 2003 by Michael Scott, authorizing the payment to Guidance to perform the unlawful copying of Mr. Berry's original work and to later file false declaration in the bankruptcy court that were filed in the Capozzola declaration on August 1, 2003. The Declaration of Michael Gurzi that swore under penalty of perjury that he could verify that no Fleming employee had a copy of Mr. Berry's original work when Mark Dillon had told he might still have one.

92. Alix Partners, LLC is liable for the acts of its principal and agent whose commission of these wrongs were to the benefit of his principal.

93. Fleming, Foodland, HTC, HEX, HEST, CALPAC, Christensen, Dillon, Noa, Gurzi, Scott and C&S as co-conspirators are liable for all wrongs, including the wrongs of all Fleming subagents including the Fleming Employees and Graham

31

Agents and all damages for Fleming's infringement until the defendant withdraws from the conspiracy.

94. Should Mr. Berry elect statutory damages, each defendant will be liable for no more than $150,000 per member of the conspiracy, for each work infringed times three under the Clayton Act.

95. Fleming's liability is limited to the period from and after April 1, 2004 and plaintiff shall not seek to execute on any judgment without order of the Delaware Bankruptcy Court.

## COUNT IV
## (MISAPPROPRIATION OF TRADE SECRETS)

96. Plaintiff restates the previous paragraphs that are incorporated by this reference.

97. Fleming and C&S began to negotiate the sale of Fleming Wholesale operations to C&S sometime in the Spring of 2003.

98. Upon information and belief, C&S learned that the Hawaii Fleming division had a monopoly over both the Civilian and the Military Wholesale grocery market.

99. Further, due the efficiencies of Mr. Berry's Freight Control System and the use of practices such as product diversions, the large profits earned by the Fleming-Logistics Department became material inducement for the C&S to acquire

32

the Fleming Wholesale Business.

100.  To facilitate C&S ability to recreate the Fleming business model, C&S required the automation that was provide by the Berry Freight Control System and the trade secrets that were contained in the numerous other computer software programs developed by Mr. Berry and loaned, as an interim measure to Fleming while it was in the process of replacing these programs and the processes with ones to be supplied by Manugistics.

101.  In deposition testimony, Mark Dillon testified that certain Web Pages what were developed by Mr. Berry remained on the Fleming system and have been used by HEX/HEST/CALPAC.

102.  The Guidance Report contained a listing of certain files that evidence that no less than 30 of the other programs created by Mr. Berry remained on the Fleming server when it was sold to C&S.

103.  These programs were illegally transferred to C&S when its became the owner and operator of the Fleming-Logistics Department.

104.  This transfer was made by "improper means" including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

105.  This transfer constitutes "misappropriation" because C&S' attorney Mr.

33

Ziman and Fleming's attorney Mr. Liebeler and others knew that Mr. Berry had claims regarding his software, and appeared in the Delaware Bankruptcy Court on August 4, 2003, and misrepresented to the Bankruptcy Court that Mr. Berry's software was "not on the list" while knowing that they were intending to transfer Mr. Berry's trade secrets. These attorneys were under a duty of condor to the Bankruptcy court that makes any misstatement or attempt to deceive a misrepresentation. The Bankruptcy Court has entered findings that Fleming's counsel has committed repeated misrepresentations in regard to their conduct in the Delaware proceedings.

106. C&S, Guidance, Scott and Gurzi knew or had reason to know that the Berry trade secrets were acquired by improper means.

107. C&S, Guidance, Scott and Gurzi knew that the disclosure or use of Mr. Berry's trade secrets of was without his express consent.

108. C&S, Guidance, Scott and Gurzi knew that Fleming had used improper means to acquire knowledge of the trade secret or, at the time of disclosure or use, C&S knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to maintain its secrecy or limit its use.

109. Mr. Berry's methods, program devices, and techniques, as evidenced by the at least 30 additional programs, constitute Trade Secrets as defined by Chapter 482B of the Hawaii Revised Statutes and derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Mr. Berry has taken efforts that are reasonable under the circumstances to maintain the secrecy of his property.

110. Pursuant to Hawaii Rev. Stat. Plaintiff, is entitled to damages against C&S, Guidance, Scott and Gurzi and Fleming including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

111. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

112. C&S, Guidance, Scott and Gurzi , by participating in the fraud upon the Bankruptcy Court and evidenced by its hiring of Fleming's attorneys who had represented an adjudicated willful infringer, shows that its misappropriation was willful and malicious and therefore, Plaintiff shall seek an award of exemplary damages.

35

## COUNT V
## (VIOLATION OF THE SHERMAN ACT
## <u>AGAINST NON-DEBTOR DEFENDANTS</u>.)

113.    Plaintiff restates the preceding allegations that are incorporated by this reference.

114.    Starting in or about the Winter of 2000, defendant Foodland initiated contact with Plaintiff.  The stated purpose of the communication was to assess the amount of food overcharges that Foodland was paying Fleming and to "stop the bleeding."

115.    Plaintiff proposed a computer software system that would allow Foodland to cease to use Fleming as its sole source of wholesale supply and to begin to operate as a independent logistics entity to avoid the additional charges that Fleming, and the HEX related entities were passing on to Foodland.   These overcharges are estimated to be between 10 to 25 %.

116.    Foodland realized that Fleming's monopoly could permit the overcharges to be safely passed on the Hawaii consumers allowing Foodland to collect its percentage profit on a much higher total sales number figure.

117.    Foodland also owns Fleming's warehouse in Kapolei that allows Foodland to recover some of the overcharges through its lease rent.

118.    Recognizing that Fleming operates a monopoly in the market defined as

36

the Hawaii wholesale grocery market, encompassing all sales of groceries in the geographic territory of the state of Hawaii, Foodland agreed to continue to allow Fleming and the HEX entities to overcharge it, under the agreement that the Fleming monopoly including the HEX entities would not allow any Foodland competitor to receive a better price. By virtue of the "Team Score" facility in the Fleming/Foodland sales agreements, Foodland, and Fleming have agreed to a rebate scheme that would allow both parties to enjoy the benefits of the Fleming monopoly.

119.   To further enhance the Fleming monopoly, large mainland vendors have further caused Fleming to become the exclusive distributor of its products, thereby solidifying the Hawaii wholesale grocery monopoly.

120.   The Berry Freight Control System, is necessary to the monopoly that facilities the overcharges to all Fleming customers.  By creating false records that demonstrate that the military, Fleming's second largest customer, is being charged the same or less than Foodland, Fleming is able to continue its monopolistic activities, and succeed in effecting an approximate 25% overcharge of both the civilian and the military consumers in Hawaii.  In addition, the assertion of ownership over the July 7, 2003, Dillon Derivative is intended to further the Fleming monopoly and further deprive Mr. Berry of a market for his software.

121.   Additionally, the Berry Freight Control System is used to track

37

commercial bribery and illegal rebating between HTC, HEX/HEST/CALPAC Fleming and the Doe Vendors who utilized freight charges and subsidies to facilitate the maintenance of the Fleming monopoly further used to effect price fixing for civilian and military food commodities in Hawaii. Money is exchanged between a variety of actors ,some of which yet to be discovered, that together comprises a combination and/or conspiracy to restrain trade in regard to Mr. Berry's software market defined as the market for ocean freight software sales in the geographic area comprised by the state of Hawaii and Guam.

122.   Were these actors to pay and receive a license for the use of the software, that license would require payment based on volume of ocean containers moved through the system and would disclose the scope and extent of the Fleming monopoly.

123.   But for the conspiracy with Foodland, and the HEX defendants, Fleming would not require the illegal use of Mr. Berry's Freight Control System to continue to operate its Hawaii monopoly. By allowing the Fleming co-conspirator to use Mr. Berry's software without payment to Mr. Berry limits Mr. Berry's ability to develop and to provide his software to other competitors of Fleming thereby reducing competition in the civilian and military wholesale grocery market. This injury is traceable to the anti-competitive conduct complained of herein.

124.   All of the acts that are the subject of this complaint against Fleming or any of its agents, have been committed by Fleming after the filing of the Bankruptcy on April 1, 2003.

125.   All of these acts have been committed with the specific intent to maintain the Fleming Hawaii market wholesale grocery monopoly with the hope to sell the Hawaii division to a new monopolist that would continue the earlier illegal practices including the infringement of Mr. Berry's intellectual property rights.

126.   Alternatively, the conspiring defendants have attempted to create a monopoly and/or conspired to created a monopoly also in violation of the Sherman Act 18 U.S.C. § 2. Further, the use of Fleming and now C&S by mainland vendors effects a price fix over the wholesale and retail price of food in Hawaii and violates the Sherman Act, 18 U.S.C. § 1.

127.   Plaintiff has been injured in his business and property by the agreement between C & S, Fleming and Foodland to sell the Hawaii division and continue to use illegal pirated versions of his software.

128.   This agreement constitutes a restraint of trade and violates the laws of the United States and the State of Hawaii.

129.   But for this illegal agreement, the C & S Defendants would have no reason to violate the Plaintiff's exclusive rights.

39

130.    As a direct and proximate result of these acts, the Plaintiff has suffered

injury in amounts to be determined at time of trial.

131.    Pursuant to The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Section 4 of

the Clayton Act, 15 U.S.C. § 15, Plaintiff is entitled to recovery treble damages from

the non-debtor defendants for all damages proven.

<u>COUNT VI</u>
**(VIOLATIONS OF RICO AGAINST THE NON-BANKRUPTS)**

132.    Plaintiff re-alleges the preceding allegations that are incorporated by this

reference.

133.    The parties to the conspiracy to infringe are members of a Enterprise

engaged in interstate shipment of goods through a pattern of racketeering.   The

individual defendant infringers are individually liable or if lacking criminal intent

their acts were intentional as to their principal who directed it and therefore their

continued membership in the conspiracy threatens to cause the Enterprise to continue.

134.    Because Mr. Berry's freight control System is necessary to the success

of the Enterprise the members have conspired to infringe as set forth herein.

135.    Fleming has already been found by a jury to have committed the

predicate act of wilful infringement in the period of 1999 to 2001 and the doctrine of

collateral estoppel prevents the re-litigation of that issue.   Each time the C&S system

pirated version of the Berry software is used, another predicate offence occurs.

136. Fleming and C&S together along with the other defendants, conspired to create another illegal derivative of Plaintiff's Freight Control System in or about May 2003.

137. Based on RICO, Plaintiff names all defendants herein as RICO persons and seeks to impose RICO liability on all defendants except Fleming that is bankrupt. Fleming acts in furtherance of the conspiracy are imputed to the other conspirators.

**(Violations of 18 U.S.C. §1962(c))**

138. The RICO persons, including, but not limited to, Mark Dillon, Teresa Noa, Fleming, Gurzi, Guidance Software, LLC, Scott, C&S are persons employed by or associated with an enterprise engaged in interstate commerce and directly and/or indirectly conducted or participated in the conduct of that enterprise through a pattern of racketeering. These RICO Persons have engaged in activities affecting interstate or foreign commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of RICO §1962(c), 18 U.S.C. §1962(c) as set forth herein.

139. Each RICO Person is legally distinct and separate from the Enterprise, which is an association in fact of these RICO Persons. This Enterprise was formed sometime in 1999 and continues as of this writing.

41

### (Violations of 18 U.S.C. §1962(d))

140.    Defendant C&S  became a member of a conspiracy as alleged

herein and, with the other members of the conspiracy agreed to conduct or

participate in the affairs of the Enterprise through a pattern of racketeering

activity.

141.    Defendant C&S, knew that the object of the conspiracy was

conducted in violation of RICO 18 U.S.C. §1962 through repeated violations of 18

USC.

142.    C&S and its attorneys knew that Fleming was engaged in

copyright infringement but chose to allow the sale to proceed under the agreement

that Fleming would deliver the pirated copy of Mr. Berry's original work or an

illegal derivative.

143.    At that time, C&S  was aware of the existence of the Enterprise

and it agreed that the Enterprise would be conducted through a pattern of

racketeering activity and that to accomplish the goal and purpose of the Enterprise,

at least two predicate acts by the conspiracy were contemplated, specifically the

daily booting up of Mr. Berry's freight system making an illegal copy in violation

of the copyright laws of the United States and the creation of the Dillon

derivatives.   By these acts, C&S and all other non-bankrupt defendants have

42

violated RICO 18 U.S.C. §1962(d).  The agreement is also, in part, evidenced by

the asset purchase agreement and other documents related to the sale.

144.    All the money derived by C&S from infringement that is derived

from the infringement of Mr. Berry's intellectual property constitutes a violation

of 18 U.S.C. § 1956 that prohibits the laundering of monetary instruments

regarding funds derived from copyright infringement.

145.    Fleming had a finding of liability on a RICO predicate on March

6, 2003 and the most recent predicate offense occurred the last time the Dillon

derivative of Mr. Berry's system was used.   There were predicate acts too

numerous to be contained in a short plain statement.  At least from January 2000

to the present no less than 10,000 separate acts of criminal infringement related to

the illegal use of Mr. Berry's system have transpired.

146.    Each use of the Dillon derivatives constitutes a separate predicate

act of Copyright Infringement in violation of the Copyright Act 17 U.S.C. § 506(a)

and 18 U.S.C. § 2319.

147.    Additional predicate offenses shall be set forth in the RICO

statement, incorporated by this reference.

148.    Plaintiff has standing to proceed because it has been injured in its

business or property by reason of a violation of section 1962 of RICO and may sue

43

therefor in any appropriate United States district court and shall recover threefold the damages sustained and the cost of the suit, including reasonable attorneys' fees and the costs of bringing suit.

149.    Plaintiff also gives notice of his intent to seek costs and attorney's fees as provided by law for both willful and malicious trade secret misappropriation and for the violation of his copyrights.

## PRELIMINARY INJUNCTION

150.    Based on the threat of continued violation of the copyright laws, misappropriation of trade secrets by its unauthorized use and transfers of unauthorized copies to third parties through application sharing technology or otherwise, Plaintiff is suffering irreparable injury and, because HEX, HEST and CALPAC have no lawful right to use the Freight Control System. Plaintiff has a strong likelihood of success on the merits and seeks a preliminary injunction as follows:

a.        preliminary injunction against all defendants and anyone claiming any rights to use the software derived from Mr. Berry's original work,

b.        impoundment of the infringing software during the pendency of this litigation,

c.        preliminary injunction against infringing of the copyright,

44

d.       permanent injunction against the infringement of the copyright,

e.       seizure of all computer files derived from the infringement.

f.       a temporary and permanent injunction against all defendants, including Fleming, Christensen, Dillon, Noa, C&S, Guidance, ES3, Cohen and certain Doe Defendants to prohibit the creation of any additional freight control software including, but not limited to, derivatives of Mr. Berry's original work and to prohibit the use of any such infringing software.

g.       an order permanently prohibiting Noa and Dillon and certain Doe defendants for conducting any business related to the shipment of goods. temporary and permanent injunction against C&S and anyone claiming rights under it for misappropriation of Plaintiff's Trade Secrets including Mark Dillon and Teresa Noa and that Plaintiff or his agents or Court appointed agents be permitted to inspect the defendant's business premises during normal business hours to verify that defendant's have complied with the Court's injunction.

WHEREFORE PLAINTIFF PRAYS FOR:

A. A temporary and permanent injunction directed to Defendants, and any agent or bailee of Defendants, as set forth herein and in the accompanying Motion, from using any software derived in part from the source code of Plaintiff's software as evidenced by the registration of copyrights;

45

B.   An order authorizing Plaintiff and or the United States Marshall or his/her Deputy to enter upon Defendants' or their agents' and/or bailees' premises and to enter upon the defendant's property and take possession of all software and data derived from the software that relates in any way to the software that is the subject of this case;

C.   Damages for infringement of the copyright as provided by the Copyright Act without limitation against all non-bankrupt defendants and against all bankrupts from and after the date of their bankruptcy filing including actual damages and accounting for all gains and profits derived by non-bankrupt defendants through infringement of copyright including a detailed accounting of all non-bankrupt corporate and individual defendants' revenues produced from November 1, 1999 to the date of the order or the date that the infringement ceased, which ever is later;

D.   Damages, including exemplary damages, against all defendants, including, but not limited to, C&S, Guidance, Guidance, Gurzi, Noa and Dillon for misappropriation of Mr. Berry's trade secrets plus attorneys fees and costs,

E.   Delivery by Defendant of all copies of the offending software and all data created and the database associated with the software for destruction;

F.   Payment of the costs of the action and reasonable attorney's fees at rates

46

paid to the attorney for the opposing parties;

G. The trebling of all damages for violations of RICO and/or the Clayton Act;

H. Exemplary damages as provided by Hawaii Uniform Trade Secrets Act.

I. A liquidation of all damages for all acts by Fleming from April 1, 2004 to the date of trial with no execution thereon without further order of the United States Bankruptcy Court for the District of Delaware, and

J. Such other and further relief as may be just.

Dated: Honolulu, Hawaii, _____ JUN 1 8 2004 _____.

TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

47

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | VERIFICATION |
| vs. | ) | |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; H.E.S. | ) | |
| TRANSPORTATION SERVICES, | ) | |
| INC., a California corporation; | ) | |
| CALIFORNIA PACIFIC | ) | |
| CONSOLIDATORS, INC., a | ) | |
| California corporation; JEFFREY P. | ) | |
| GRAHAM and PETER SCHAUL, | ) | |
| California citizens; MARK DILLON | ) | |
| and TERESA NOA, BRIAN | ) | |
| CHRISTENSEN, Hawaii citizens; | ) | |
| FLEMING COMPANIES, INC., an | ) | |
| Oklahoma corporation; C & S | ) | |
| LOGISTICS OF HAWAII, LLC, a | ) | |
| Delaware LLC; C & S WHOLESALE | ) | |
| GROCERS, INC., a Vermont | ) | |
| corporation; | ) | |
| C & S ACQUISITIONS, LLC; | ) | |
| FOODLAND SUPER MARKET, | ) | |
| LIMITED, a Hawaii corporation; | ) | |
| HAWAII TRANSFER COMPANY, | ) | |
| LIMITED, a Hawaii Corporation, | ) | |
| RICHARD COHEN, a New Hampshire | ) | |
| citizen ES3, LLC, a Delaware Limited | ) | |
| Liability Company, MELVIN PONCE, | ) | |
| SONIA PURDY, JUSTIN | ) | |
| FUKUMOTO, AFREDDA | ) | |
| WAIOLAMA, JACQUELINE RIO, | ) | |

Hawaii citizens; JESSIE GONZALES, )
LUIZ RODRIGUES, AL PEREZ and )
PATRICK HIRAYAMA , California )
citizens; GUIDANCE SOFTWARE, )
LLC, a Delaware, LLC; MICHAEL )
GURZI, a California citizen; ALIX )
PARTNERS, LLC a Delaware, LLC; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
                                                    )
                        Defendants.        )
                                                    )
_____ )

## VERIFICATION

I, WAYNE BERRY, have read the foregoing Complaint; Exhibit "A", the

facts and the allegations stated herein are true and correct to the best of my

knowledge, information and belief. The document attached as Exhibit "A" is a

true and correct copy of my business records kept in the regular course of

business.

DATED: Honolulu, Hawaii, _____ **JUN 1 8 2004** _____.

_____
WAYNE BERRY

Subscribed and sworn to before me
this _18th_ day of _June_ _____
_____
Tane Sung
Notary Public, State of Hawaii
My commission expires: 3/18/2005

# CERTIFICATE OF REGISTRATION

 

**FORM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TX 5-079-445**

EFFECTIVE DATE OF REGISTRATION

**OCT. 19, 1999**
Month    Day    Year

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS

United States of America

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**1**

**TITLE OF THIS WORK ▼**
Freight Control System

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a** **NAME OF AUTHOR ▼**
Wayne Foster Berry

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1955    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1993 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ 11    Day ▶ 27    Year ▶ 95    USA ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Wayne Foster Berry
425 South Street, #2603 A
Honolulu, Hawaii 96813

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
OCT. 19 1999
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
OCT. 19 1999
FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

EXHIBIT "A"

EXAMINED BY _____   **FORM TX**

CHECKED BY

☐ CORRESPONDENCE
   Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is an. ther registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application
If your answer is "Yes," give: Previous Registration Number ▶        Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼        Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼
Wayne Foster Berry
425 South Street, #2603
Honolulu, Hawaii 96813

Area code and daytime telephone number ▶ 808-545-5817        Fax number ▶ 808-545-5837
Email ▶ WayneB@pxg.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Wayne Foster Berry        Date ▶ 9-27-99

       Handwritten signature (X) ▼
   X _____ Wayne Berry

Certificate will be mailed in window envelope to this address:

Name ▼
Wayne Foster Berry
Number/Street/Apt ▼
425 South Street, #2603 A
City/State/ZIP ▼
Honolulu, Hawaii 96813

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order As of July 1, payable to Register of Copyrights 1999,
3. Deposit material
   MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—200,000
WEB REV: June 1999        ☆ U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/49

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;   )

                           )

        Plaintiff,       )

                           )

    vs.                  )

                           )

HAWAIIAN EXPRESS SERVICE,   )
INC., a California corporation; H.E.S. )
TRANSPORTATION SERVICES,  )
INC., a California corporation;    )
CALIFORNIA PACIFIC        )
CONSOLIDATORS, INC., a      )
California corporation; JEFFREY P. )
GRAHAM and PETER SCHAUL,  )
California citizens; MARK DILLON )
and TERESA NOA, BRIAN     )
CHRISTENSEN, Hawaii citizens;  )
FLEMING COMPANIES, INC., an  )
Oklahoma corporation; C & S    )
LOGISTICS OF HAWAII, LLC, a  )
Delaware LLC; C & S WHOLESALE )
GROCERS, INC., a Vermont     )
corporation;  C & S ACQUISITIONS, )
LLC; FOODLAND SUPER      )
MARKET, LIMITED, a Hawaii   )
corporation; HAWAII TRANSFER )
COMPANY, LIMITED, a Hawaii  )
Corporation, RICHARD COHEN, a )
New Hampshire citizen ES3, LLC, a )
Delaware Limited Liability Company, )
MELVIN PONCE, SONIA PURDY, )
JUSTIN FUKUMOTO, AFREDDA )
WAIOLAMA, JACQUELINE RIO, )
Hawaii citizens; JESSIE GONZALES, )
LUIZ RODRIGUES, AL PEREZ and )

Civ. No. CV03 00385 SOM-LEK
(Copyright)

DEMAND FOR JURY TRIAL

PATRICK HIRAYAMA , California )
citizens; GUIDANCE SOFTWARE, )
LLC, a California, LLC; MICHAEL )
GURZI, a California citizen; ALIX )
PARTNERS, LLC, a Delaware LLC ; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
                                )
              Defendants.       )
_____  )

## DEMAND FOR JURY TRIAL

Plaintiff Wayne Berry hereby respectfully demands a trial by jury of all

issues triable thereto.

Dated: Honolulu, Hawaii, _____ JUN 1 8 2004 _____

TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

4

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

DISTRICT OF _____ Hawaii

### SUMMONS IN A CIVIL CASE

Wayne Berry

**V.**

CASE NO.: Civil. No. CV03-00385 SOM LEK

Hawaiian Express Service, Inc. et. al,

TO: (Name and address of defendant)

Above-Named Defendants

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Lynch Ichida Thompson Kim & Hirota
TIMOTHY J. HOGAN 5312-0
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813
Phone: 808-528-0100
Fax: 808-528-4997
Attorney for Wayne F Berry
Plaintiff(s)

Second Amended Verified
an answer to the complaint which is herewith served upon you, within     Twenty (20)   days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE     JUN 1 8 2004

.Y) DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;  )    Civ. No. CV03 00385 SOM-LEK
                                )    (Copyright)
            Plaintiff,          )
                                )    VERIFICATION
    vs.                         )
                                )
HAWAIIAN EXPRESS SERVICE,       )
INC., a California corporation; H.E.S. )
TRANSPORTATION SERVICES,        )
INC., a California corporation; )
CALIFORNIA PACIFIC              )
CONSOLIDATORS, INC., a          )
California corporation; JEFFREY P. )
GRAHAM and PETER SCHAUL,        )
California citizens; MARK DILLON )
and TERESA NOA, BRIAN           )
CHRISTENSEN, Hawaii citizens;   )
FLEMING COMPANIES, INC., an     )
Oklahoma corporation; C & S     )
LOGISTICS OF HAWAII, LLC, a     )
Delaware LLC; C & S WHOLESALE   )
GROCERS, INC., a Vermont        )
corporation;                    )
C & S ACQUISITIONS, LLC;        )
FOODLAND SUPER MARKET,          )
LIMITED, a Hawaii corporation;  )
HAWAII TRANSFER COMPANY,        )
LIMITED, a Hawaii Corporation,  )
RICHARD COHEN, a New Hampshire)
citizen ES3, LLC, a Delaware Limited )
Liability Company, MELVIN PONCE, )
SONIA PURDY, JUSTIN             )
FUKUMOTO, AFREDDA               )
WAIOLAMA, JACQUELINE RIO,       )

Hawaii citizens; JESSIE GONZALES, )
LUIZ RODRIGUES, AL PEREZ and   )
PATRICK HIRAYAMA , California   )
citizens; GUIDANCE SOFTWARE,   )
LLC, a Delaware, LLC; MICHAEL   )
GURZI, a California citizen; ALIX   )
PARTNERS, LLC a Delaware, LLC;   )
DOE INDIVIDUALS 2-350; DOE   )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20,   )
                               )
                    Defendants.   )
_____ )

## VERIFICATION

I, WAYNE BERRY, have read the foregoing Complaint; Exhibit "A", the

facts and the allegations stated herein are true and correct to the best of my

knowledge, information and belief.  The document attached as Exhibit "A" is a

true and correct copy  of my business records kept in the regular course of

business.

DATED: Honolulu, Hawaii, _____ **JUN 1 8 2004** _____ .

_____
WAYNE BERRY

Subscribed and sworn to before me
this 18th day of ___June___

_____
            Tae Sung
Notary Public, State of Hawaii
My commission expires: 3/18/2005