# Exhibit 10

## ADDENDUM TO END-USER LICENSE AGREEMENT

### ADDENDUM FOR FREIGHT CONTROL SYSTEM SOFTWARE

1. In exchange for Wayne Berry (LICENSOR) granting this EULA to Fleming Foods, Inc (LICENSEE), LICENSEE agrees to employ all former API employees of record date (September 1, 1999) beginning November 1, 1999 for a period of not less than 1 year and at their former or better pay scale and benefit package. This employment agreement shall not include Jack Borja. LICENSOR will not be in breach of this agreement if any of the "former API employees" quit or create a disciplinary condition that requires dismissal from LICENSOR's employ.

2. In exchange for LICENSOR granting LICENSEE this EULA, LICENSEE agrees to indemnify Jack Borja from any and all personal liabilities associated with the former API / Fleming Partnership, including but not limited to the 4 Trucks leased specifically to facilitate shipments to LICENSEE, the forklifts and ancillary equipment leased to facilitate shipments to LICENSEE, the computer specifically leased to facilitate shipments to LICENSEE and any legal actions taken to protect the API / Fleming Partnership. LICENSOR shall use the TRW credit reporting service to monitor the enforcement of this clause. If a bad credit report is made to TRW in connection with this former API / Fleming Partnership and cannot be remedied and removed within 60 days, LICENSEE will have violated this EULA.

3. LICENSOR will not be bound by any prior or past agreements that may restrict LICENSOR's legal remedies. Specifically, LICENSOR is not bound by any restrictions to any form of arbitration with the LICENSEE and may specifically pursue any and all legal remedies in the appropriate court including lawsuits and injunctive relief. Effective November 1, 1999, this agreement supercedes all prior written and oral agreements.

4. The SOFTWARE PRODUCT may only be used by LICENSEE in the State of Hawaii, within the LICENSEE's facility.

5. LICENSEE agrees that LICENSEE has been granted access to proprietary intellectual property and trade secrets contained in the SOFTWARE PRODUCT and may not replace this SOFTWARE PRODUCT with another custom system of comparable design or functionality without the burden of proving that the replacement custom software was developed without the

Page 4 of 5
October 29, 1999

Exhibit 10

assistance of LICENSEE and without violating this EULA. Furthermore, LICENSEE may not disclose, divulge or in any way make available to any other company or entity the proprietary intellectual property and trade secrets contained in the SOFTWARE PRODUCT.

6. LICENSEE may not use or create any additional I/O subsystems (Screens, Databases, Reports, "Glue Logic" or Integration Code) that are intended for use with or in conjunction with this SOFTWARE PRODUCT.

7. LICENSOR is under no obligation to support, modify or augment this SOFTWARE PRODUCT.

8. This SOFTWARE PRODUCT has operated for more that one year, essentially unchanged as to functionality and usage. Therefore, this SOFTWARE PRODUCT is made available to LICENSEE "as is and where is" without any other warranties expressed or implied.

9. All "Crystal Reports" used with this SOFTWARE PRODUCT must be compiled by LICENSEE. Only compiled versions of the reports, incorporated in the SOFTWARE PRODUCT, may be used by LICENSEE after December 15, 1999. LICENSEE is prohibited from making any new reports or functional and esthetic changes to any of the existing reports after September 1, 1999.

10. LICENSEE understands the original contract value of this software is $2 million dollars. Any damages sought by LICENSOR against LICENSEE will use this amount as a basis but not a limitation of LICENSEE's obligation to LICENSOR for using this SOFTWARE PRODUCT under the terms of this EULA.

_____Wayne Berry_____          _____12/29/99_____
LICENSOR: Wayne Berry                  Date