# Exhibit 22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

_____

WAYNE BERRY, a Hawaii
citizen,

              Plaintiff,

    vs.

HAWAIIAN EXPRESS SERVICE,
INC., a California
corporation, et al.,
              Defendants.

_____

CIVIL NO. CV03-00385 SOM LEK
(Copyright)

DEPOSITION OF PHILIP M. JOHNSON, PH.D.

Taken on behalf of Defendants,

at the Law Offices of Kobayashi, Sugita & Goda,

Suite 2600, 999 Bishop Street, Honolulu, Hawaii,

commencing at 9:12 a.m.,

on Thursday, May 19, 2005, pursuant to Notice.

BEFORE:        HEDY COLEMAN,  CSR #116, CRR, CM
                Notary Public, State of Hawaii
                Certified Shorthand Reporter

Ali'i Court Reporting
2355 Ala Wai Boulevard, Suite 306
Honolulu, Hawaii 96815
(808)926-1719

1

Exhibit 22

```
 1        APPEARANCES:

 2        For the Plaintiff:
                                TIMOTHY J. HOGAN, ESQ.
 3                              Lynch, Ichida, Thompson & Kim
                                1132 Bishop Street, Suite 1405
 4                              Honolulu, Hawaii 96813

 5

 6        For the Defendant Post-Confirmation Trust:

 7                              LEX R. SMITH, ESQ.
                                Kobayashi, Sugita & Goda
 8                              First Hawaiian Center, Suite 2600
                                999 Bishop Street
 9                              Honolulu, Hawaii 96813

10                                     and

11                              ERIC C. LIEBELER, ESQ.
                                DAMIAN D. CAPOZZOLA, ESQ.
12                              Kirkland & Ellis
                                777 South Figueroa Street
13                              Los Angeles, California 90017

14

15        For the Defendants Mark Dillon, Teresa Noa and Brian

16   Christensen, et al:

17                              LYLE HOSODA, ESQ.
                                RAINA P.B. MEAD, ESQ.
18                              Lyle Hosoda & Associates
                                345 Queen Street, Suite 804
19                              Honolulu, Hawaii 96813

20

          For the Defendants Hawaiian Express Service, Inc.,
21   H.E.S. Transportation Services, Inc.,et al.:

22                              ROY J. TJIOE, ESQ.
                                Goodsill Anderson Quinn & Stifel
23                              Alii Place, Suite 1800
                                1099 Alakea Street
24                              Honolulu, Hawaii 96813

25
                                                                2
```



```
 1        For the Defendant Guidance Software, Inc. and Michael

 2   Gurzi:

 3                           REX FUJICHAKU, ESQ.
                             Bronster Crabtree & Hoshibata
 4                           Suite 2300, Pauahi Tower
                             1001 Bishop Street
 5                           Honolulu, Hawaii 96813

 6

 7        Also present:     Wayne Berry

 8                          Martin Walker, Ph.D.

 9

10        Videographer:     Robert Whitman, CLVS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              3
```

1      A      Correct.

2      Q      Okay.  And how would you describe your area of

3  expertise, sir?

4      A      Computer science and software engineering.

5      Q      Do you have any other areas of expertise?

6      A      What do you mean by "expertise?"

7      Q      Well, you've been retained as an expert, right?

8      A      Right.

9      Q      And you are an expert in areas of your expertise,

10  am I right?

11     A      Yes.

12     Q      Okay.  In that sense of expertise, do you have any

13  other areas in which you're planning on offering expert

14  testimony in this case?

15     A      No.

16     Q      So the areas you're going to offer opinions are in

17  the areas of computer science and software engineering, and

18  that is all.  True?

19     A      True.

20                  (Whereupon, Exhibit 54 was

21                  marked for identification.)

22  BY MR. LIEBELER:

23     Q      I'd like to have marked as Exhibit 54, a document

24  entitled "Expert Witness Report, Philip Johnson, Ph. D."

25  What is Exhibit 54, sir?

                                                        10

1      A      That is the report that I provided in response to

2   a request by Timothy Hogan and Wayne Berry.

3      Q      And when did you actually provide that report?

4   Just because the face of it's not dated.

5      A      It was -- when did I send it?  Wait.  This one was

6   the first one.  I believe it was -- I'm thinking December.

7   I'm not exactly quite sure of the exact date.  I should have

8   dated it.

9      Q      That's fine.  And I understand as a general

10  proposition in the deposition, if you can give me an exact

11  answer, that's terrific; if you can't and have to estimate

12  it, that's just fine, too.

13          So, as I understand it, your testimony is

14  something of an estimate, you believe this was

15  provided in December of 2004, is that correct?

16     A      No.  I think it was -- no, I think it was near the

17  end -- near the -- near the end of this year -- near end of

18  last year, beginning of this year, so December or January of

19  2005 was when I actually submitted this.

20     Q      Okay.  So it's either the end of 2004, in

21  December, or the beginning of 2005, in January.  Is that

22  fair?

23     A      Yes.

24     Q      Okay.  Let's just mark all three of your reports

25  in this case first, before we get to the individuals, each

11

1  one.

2          Okay.  Let's mark as 55, the document that

3  I'm handing to the reporter. oh,good.  This one has

4  a date.

5          Can you identify Exhibit 55 for me,

6  please, Prof. Johnson.

7      A    This was another report that was requested by Mr.

8  Hogan and Mr. Berry.

9                  (Whereupon, Exhibit 55 was

10                 marked for identification.)

11 BY MR. LIEBELER:

12     Q    And in time, 55 followed 54, is that right?

13     A    Correct.

14                 (Whereupon, Exhibit 56 was

15                 marked for identification.)

16 BY MR. LIEBELER:

17     Q    And then let's mark as Exhibit 56, one additional

18 report.  And, Professor, identify 56 when you can.

19     A    This was a report that actually combines together

20 the Exhibits 55 and 54.

21     Q    So, 56 was essentially an unified report that I

22 understand refers to 54, but essentially contains or

23 references, at least all the opinions you have in this case,

24 is that right?

25     A    That's correct.

12

1    may be additions, new papers, and so forth, but, you know,

2    it's -- it's pretty accurate.

3         Q    Okay.  Have you ever worked in a company actually

4    doing freight logistics?

5         A    No.

6         Q    Have you ever written any freight logistics

7    software of any kind?

8         A    No.

9         Q    Do you have any experience at all in the area of

10   freight, or operating any kind of freight logistics

11   software?

12        A    Unh-unh.

13        Q    That's a no?

14        A    That's a no.

15        Q    Okay.  You -- you told me a little while back that

16   you were provided a copy of the Posner opinion as part of

17   the materials that were sent to you by either Mr. Berry or

18   Mr. Hogan, right?

19        A    Yes.

20        Q    I take it that you did read that case, did you

21   not?

22        A    Yes.

23        Q    Did you read any other cases?

24        A    Not that I can recall.

25        Q    And let me make sure that we're clear.  I'm asking

21

1    that question, not just with respect to to what you did for

2    opinion one, but for opinion two, or in any of the opinions

3    that you have in this case.  Is your answer still the same?

4        A    Yes, it is.

5        Q    And you understand from reading the Posner opinion

6    that Fleming has a right to its own data, is that right?

7        A    Correct.

8        Q    And you agree with that, am I right?

9        A    Yes.

10       Q    Let's turn now to Exhibit 55.  You have 55 in

11   front of you?

12       A    Yes.

13       Q    Well, actually, why don't we be efficient about

14   it, actually, and use 56.  Fifty-six is probably a better

15   way to go.

16       A    Okay.

17       Q    But let me check my premises on that.  If you read

18   56, it articulates two opinions, am I right?

19       A    Yes.

20       Q    And those are the only opinions you intend to

21   offer in this case, right?

22       A    Correct.

23       Q    And opinion number one is what we've walked

24   through on Exhibit 54?

25       A    Yes.

22

1    Q    And in your opinion, number one, as articulated on

2    56, it says, "For details, please see my first expert

3    witness report."

4         Do you see that?

5    A    Yeah.

6    Q    And the first expert witness report you're

7    referring to in 56 is in fact Exhibit 54?

8    A    Yes.

9    Q    And what you would call the details of the second

10   opinion are contained in Exhibit 56, is that correct?

11   A    Yes.

12   Q    And essentially, 56 is a compilation of 55 and 54,

13   kind of put together.  Is that fair?

14   A    Yes.

15   Q    So for purposes of examining you, 55 is

16   essentially irrelevant because I can use 56 for all the

17   purposes --

18   A    Correct.

19   Q    -- which I would otherwise use 55.  Am I right?

20   A    Yes.

21   Q    In that case we're not going to use 55 anymore.

22   Okay.

23        On 56, I think you say that the exhibits

24   you used to form the opinion are Exhibit 7 through

25   18 from Mr. Berry's affidavit, is that right?

23

1    A    Correct.

2    Q    Did you use any other documents to form opinion

3 number two in Exhibit 56?

4    A    No.

5    Q    That was it, am I right?

6    A    Correct.

7    Q    Let us then mark as exhibit -- are we 58?

8    THE REPORTER:  Yes.

9                    (Whereupon, Exhibit 58 was

10                    marked for identification.)

11 BY MR. LIEBELER:

12    Q    So Exhibit 58, a collection of documents that I

13 have put together last night, which are styled Exhibit 7 out

14 through Exhibit 18.  Take a look at those sufficient to

15 identify them, Professor, and let me know when you're done.

16    A    These are the queries that I mentioned.

17    Q    So Exhibit 58 is in fact a collection of exhibits

18 from Mr. Berry's affidavit that you styled as Exhibit 7 to

19 18 in your expert report?

20    A    Yes.

21    Q    Are Exhibits 7 through 18 written in any

22 particular language?

23    A    They look to me to be a form of SQL, which is a

24 language that you use to extract data from databases.

25    Q    And you are not an expert in SQL, am I right?

24

1  extract data into a file.  What do you mean by fair in that

2  context?

3      A    Yeah, yeah, I see.  Okay.  Right.  So, part of why

4  I'm pausing is there's kind of an evolution in my thinking

5  over time, so this is where I sat at this -- at this

6  juncture.

7      I guess -- I'm sorry, please repeat your question.

8      Q    Sure.  Let me back up one step to make sure the

9  record is clear.  When you wrote here "It is fair to extract

10  the data into a file," by "fair" you meant that would not be

11  a copyright violation, right?

12      A    That's what I was thinking the Posner case was

13  saying, yes.

14      Q    So you were shorthanding fair as something that it

15  would be permissible for Fleming to do --

16      A    Correct.

17      Q    -- in the context of this case, right?

18      A    No.  I guess I was saying that in the context of

19  the Posner case and the situation that they were talking

20  about.

21      Q    Got you.  Understood.  Would it also be fair to

22  extract the data into a spreadsheet?

23      A    Yeah.  That's -- that's a little different because

24  a spreadsheet has internal structure that a file doesn't.

25  So, generally, when you extract data into a spreadsheet,

41

1   you're preserving some sort of structure.

2        Q    Your e-mail address, I take it, is Johnson@Hawaii.

3   edu?

4        A    Correct.

5        Q    And so in this packet, if I see an e-mail from

6   Johnson@Hawaii.edu, that's you, right?

7        A    That's me.

8        Q    Let's mark as Exhibit 60, a copy of "Assessment

9   Technologies of Wisconsin, LLC, versus Wiredata.  And I've

10  got a slip opinion copy of it, I guess.

11       Just take a look at that sufficient to

12  identify it, Professor, and let me know when you're

13  done.

14       A    I think this is the Posner case.

15       Q    You've correctly anticipated my question.  Is that

16  the Posner case that you've referred to a number of times in

17  your testimony today?

18       A    I believe so.

19       Q    Would you agree with me, sir, that Mr. Berry knows

20  more about the structure of his database than you do?

21       A    Yes.

22       Q    That's an easy one, right?

23       A    That's an easy one.

24       Q    During your work on this case, did you ever

25  actually boot up a copy of Mr. Berry's 1993 FCS and use it?

42

1       A    No.

2       Q    Same question for the spreadsheets.

3       A    No, I did not.

4       MR. LIEBELER:  Okay.  I don't have any further

5   questions for you.

6       THE VIDEOGRAPHER:  Off the record?

7       MR. LIEBELER:  No.

8       MR. SMITH:  I'll just pick up.

9       MR. LIEBELER:  You need a mic.

10      THE VIDEOGRAPHER:  Can you sit where the mic is.

11      MR. SMITH:  All right.

12                         EXAMINATION

13  BY MR. SMITH:

14      Q    Professor, you gave some opinions in 2002 and 2003

15  regarding the database that Mr. Berry authored, right?

16      A    Correct.

17      Q    And you did some comparisons in connection with

18  that -- with that work?

19      A    In the previous case?

20      Q    Right?

21      A    Yes.

22      Q    And you weren't able to compare source code, is

23  that correct?

24      A    Oh, goodness.  I can't remember.

25      Q    Okay.  Well, the database was written in Microsoft

43

1  Access, right?

2      A    Right.  I thought I did do some kind of source

3  level comparison.  I can't -- I'm sorry, I can't remember

4  about that.

5      Q    Okay.  You did a structural analysis, correct?

6      A    That's correct.

7      A    Yeah.

8      Q    And that involved a comparison of graphical

9  objects rather than textural lines of code?

10     MR. HOGAN:  Is that a question, counsel?

11     MR. SMITH:  That is a question.

12     A    I can't -- I'm really sorry, I can't remember

13  about that prior case exactly how I did it.

14  BY MR. SMITH:

15     Q    Okay, fair enough.  So, as you sit here today, you

16  don't remember what you saw in that database from 2002?

17     A    You're asking me if I didn't see any of the source

18  code, and my recollection is I was looking at the source

19  code at least for par of it when I did that structural

20  comparison.

21     Q    When you did --

22     A    I'm sure I looked at source code.  I'm sure I did.

23     Q    Does Access have source code?

24     A    Well, yeah.  Oh, that's the difference, right.

25  Some -- some languages are -- like C-plus-plus have source

44

1                   C E R T I F I C A T E

2

3                   I, HEDY COLEMAN, CSR, in and for
   the State of Hawaii, do hereby certify:

4

5                   That I was acting as shorthand
   reporter in the foregoing matter on the 19th day of
   May, 2005;

6

7                   That the proceedings were taken
   down in machine shorthand by me and were thereafter
   reduced to typewriting by me; that the foregoing

8  represents, to the best of my ability, a correct
   transcript of the proceedings had in the foregoing

9  matter;

10

11                  I further certify that I am not
   counsel for any of the parties hereto, nor in any

12 way interested in the outcome of the cause named in
   the caption.

13

14

15

16

17

18

19 DATED: _May 26, 2005_____

20

21

22 _Hedy Coleman_____

23 HEDY COLEMAN, CSR #116
   Notary Public, State of Hawaii

24 My commission expires: 9-14-05

25

                ALI'I COURT REPORTING
                   (808)926-1719