# Exhibit 27

Ccl EL
orig'nA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

OCT 2 1 2005

FOR THE DISTRICT OF HAWAII

at __ o'clock and __ min __ M
SUE BEITIA, CLERK

WAYNE BERRY, a Hawaii
citizen,

        Plaintiff,

    vs.

HAWAII EXPRESS SERVICE, INC.,
a California corporation; et
al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. 03-00385 SOM/LEK

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT;
ORDER AFFIRMING MAGISTRATE
JUDGE'S ADOPTION OF DISCOVERY
MASTER'S ORDER REGARDING F-1
PROGRAM MATERIALS

ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT;
ORDER AFFIRMING MAGISTRATE JUDGE'S ADOPTION OF
DISCOVERY MASTER'S ORDER REGARDING F-1 PROGRAM MATERIALS

I.      INTRODUCTION.

      This court has previously found Defendant Post
Confirmation Trust[1] and Defendants Mark Dillon, Teresa Noa,
Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama,
and Jacqueline Rio (collectively, "Employees")[2] liable to
Plaintiff Wayne Berry for direct infringement from April 1, 2003,
through June 9, 2003.[3]  In the latest of a string of motions,

_____

      [1] As noted in this court's June 27, 2005, order, Post
Confirmation Trust represents the interests of Fleming Companies,
Inc., and is therefore referred to as "Fleming."

      [2] Employees and Fleming are collectively referred to as
"Defendants."

      [3] The court amends its earlier finding that direct
infringement commenced on March 7, 2003.  In a previous hearing,
the court had raised the issue of the commencement date, and
Defendants had relied on the March 7, 2003, date, which was less
advantageous to them than the alternative of April 1, 2003.
Defendants now point out that Berry's own Second Amended Verified

Exhibit 27

Defendants now move for summary judgment regarding damages related to the direct infringement claim.

Defendants argue that Berry is not entitled to an award for actual damages or profits under 17 U.S.C. § 504(b) because he cannot establish a causal connection between such damages or profits and the infringement. Alternatively, Defendants argue that an award under § 504(b) should be limited to $16,800 in actual damages. Fleming additionally asserts that Berry is not entitled to recover Fleming' profits because Fleming was not profitable during the infringement period. Employees, for their part, contend that, because they did not financially benefit from the infringement, they are not liable for any profits.

Defendants argue that, if Berry elects to seek statutory damages under § 504(c), he is limited to, at most, one award of $30,000. Fleming also moves for summary judgment as to Berry's claim for vicarious copyright infringement.

Because Berry establishes a genuine issue of material fact as to the causal connection between actual damages or profits and the infringement, the court denies Defendants' motions for summary judgment. The case will proceed to trial as scheduled regarding: (1) the causal connection between the infringement and Berry's alleged actual damages or Fleming's

Complaint uses the April 1 date, and the court now uses April 1, 2003, as the commencement date for such direct infringement by Defendants. See 2d Am. Verified Complaint ¶¶ 16, 57, 66.

2

alleged profits or benefits; (2) the amount, if any, of Berry's actual damages and Fleming's profits or benefits allegedly attributable to the infringement; and (3) the issue of whether Fleming is liable for vicarious copyright infringement. The court's reference to Fleming's (rather than Defendants') alleged profits or benefits is deliberate. Berry may not proceed with claims against Employees for profits or benefits. Any recovery Berry has against Employees under § 504(b), assuming Berry establishes the requisite causation, is limited to Berry's actual damages.

Also before this court is Berry's Statement of Appeal ("Appeal") from Magistrate Judge Leslie E. Kobayashi's order adopting the Discovery Master's Order Denying Plaintiff's Request for F-1 Program Materials ("Discovery Master's F-1 Order"). Berry contends that Fleming planned to use something called the "F-1" computer program as a replacement for Berry's software. Berry says that he needs the F-1 materials to establish a causal connection between actual damages or profits and the infringing conduct, as required under § 504(b). Because Berry does not establish that the magistrate judge clearly erred in adopting the Discovery Master's F-1 Order, the court affirms the magistrate judge.

3

A    I'd say impossible.  But, yeah, I can't
conceive of it.  I don't know how we
would carry on.

Ex. 7 (emphases added); Opp. to Fleming Mem. at 11; Opp. to
Employees Mem. at 23.

Dillon's testimony was that "spreadsheets" were
essential to Fleming's logistics operations.  As spreadsheets
were part of both the infringing software as well as
noninfringing replacement software, see Transcript of Proceedings
9/28/2005 at 105-09, Dillon's reference to "spreadsheets" was not
a statement that Fleming could not operate without the infringing
software.  Dillon's testimony does not, by itself, suggest a
causal link between Defendants' use of infringing software and
damages or profits.

2.   Ueno's Expert Report.

Next, Berry relies on Ueno's "opinion that the Berry
system was an integral part of the Fleming operations, such that
it could not have remained a viable business without it."  Opp.
to Fleming Mem. at 10-11 (citing Ex. B (attached to Fleming
Mem.)); Opp. to Employees Mem. at 8.  Berry appears to believe
that, because Ueno says that Berry's software was essential to
Fleming's existence, all actual damages and profits were causally
connected to Defendants' infringement.

17

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony. <u>United States v. Finley</u>, 301 F.3d 1000, 1007 (9th Cir. 2002). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has "charged trial judges with the responsibility of acting as gate-keepers to 'ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable.'" <u>Id.</u> at 1007-08 (citing <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993); <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999)). With respect to determining the reliability of an expert's opinion, the Ninth Circuit has stated that a "trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1017 (9th Cir. 2004) (citing <u>Mukhtar v. Cal. State Univ., Hayward</u>, 299 F.3d 1053, 1064 (9th Cir. 2002)). Expert testimony may not be based on unsupported speculation and

subjective beliefs. See <u>Guidroz-Brault v. Miss. Pac. R.R. Co.,</u> 254 F.3d 825, 829 (9th Cir. 2001).

In his March 21, 2005, report, Ueno opines that "Berry's freight control system" was a cornerstone of Fleming's logistics business.[4] Ex. E at 4 (attached to Fleming Mem.). Ueno's report explains his opinion as follows:

> <u>Berry's freight control system became a cornerstone of Fleming's logistics business in Hawaii.</u> It became an essential foundation block of Fleming's operations without which Fleming would be unable to handle the increased volume of containers. Mark Dillon of Fleming (and C&S) stated it would be impossible for Fleming to operate without it:
>
> > Q:  Is it fair to say, sir, if you're ordered to stop using the spreadsheets, that running the logistics operation out of Kapolei would become much more difficult?
> > A:  Much more –
> > Q:  Difficult.  Difficult, sir.
> > A:  I'd say impossible.  But, yeah, I can't conceive of it.  I don't know how we would carry on.

Ex. 7 at 4 (attached to Fleming Mem.) (emphasis added).

---

[4] It is unclear whether Ueno's opinion regarding "Berry's freight control system" refers to the copyrighted version of Berry's program or the infringing version. However, because Berry offers Ueno's opinion as evidence of a causal link between damages or profits and the infringement (<u>i.e.,</u> Defendant's use of the <u>infringing software</u>), Berry appears to be under the impression that Ueno's opinion concerns the infringing software.  Without deciding whether Ueno's opinion in fact refers to the infringing software, the court assumes, for purposes of the present motions, that it does.

19

Ueno's deposition testimony further explains the basis for his opinion:

> Q    Okay.  And what are the facts on which you based your opinion that the software is an integral part for the company to operate?
>
> A    Okay.  The first thing is that the software is feature rich.  Okay.  And I guess the second thing is that Fleming won't give it up.
>
> Q    What is the basis for your statement that Fleming won't give it up?
>
> A    Because as I understand it, it's still being used.
>
> Q    Other than your understanding that the software authored by Wayne Berry is still being used, do you have any other reason or basis for your statement that Fleming won't give it up?
>
> A    No.

Ex. C at 118-19 (attached to Fleming Mem.).  In sum, Ueno's opinion that Berry's system was integral to Fleming is based on Dillon's testimony, the "feature rich" nature of the software, and Fleming's alleged refusal to "give it up."  None of these is a legitimate basis for Ueno's opinion.

First, as noted above, Dillon's testimony referred to the use of "spreadsheets" in general, not to the infringing software in particular.  Dillon's testimony provided no basis for any opinion that the infringing software was integral to Fleming's survival.  See Fed. R. Evid. 702; see also Guidroz-Brault, 254 F.3d at 830-31 (concluding that "[the expert's] opinion was properly excluded because it was not sufficiently founded on facts").

20

Second, even assuming the accuracy of Ueno's description of Berry's software as "feature rich," that description does not necessarily establish that Berry's software was integral to Fleming's operations or necessary for Fleming's survival. Indeed, a feature rich software program could reasonably play an insignificant role in the operation of a company.

Third, Ueno opines that Berry's system was integral to Fleming because "Fleming won't give it up." Ex. C at 119 (attached to Fleming Mem.). At Ueno's deposition, Ueno stated that the basis for his belief that Fleming would not give up Berry's software was because "it's still being used." Ex. C at 119. However, this court has already found that Fleming and Employees stopped using any form of Berry's software as of June 9, 2003. Therefore, Ueno's assumption that Fleming was "still" using the software program at the time he issued his report (March 21, 2005) or was deposed (July 22, 2005) was incorrect, as a matter of law of the case.

Because Ueno's opinion that Berry's software was integral to Fleming's operations is unsupported by the facts or based on erroneous assumptions, Ueno's expert opinion does not, by itself, provide a basis for sending the damage issues to trial. See Fed. R. Evid. 702; see also Guidroz-Brault, 254 F.3d at 830-31.

21

The court leaves the stacking issue for another day. While the parties have briefed the issue of statutory damages, the court, having determined that Berry is entitled to a trial of his claims for actual damages or profits, views summary judgment on the issue of statutory damages, which have not been elected, as inappropriate.  This issue may be the subject of discussion when jury instructions are settled, but there is no reason they should be resolved in the context of a summary judgment motion, given the present posture of the case.

VI.    CONCLUSION.

Having determined that there are triable issues going to actual damages or profits, the court denies Defendants' motions for summary judgment.  The court does, however, conclude that, if Employees are liable under § 504(b), Berry's recovery against them may only be for actual damages, not their profits, as they had no profits.  This case will proceed to trial as scheduled.

The court affirms the magistrate judge's adoption of the Discovery Master's F-1 Order, but the court extends the time in which Berry must pay the sanction of $1200, as set forth in this order.[8]

---

[8] On October 18, 2005, Berry filed a Statement of Appeal Re: Magistrate Judge's Sua Sponte Adoption of Special Master's Order Regarding Production of Guidance Software Materials.  This appeal has been rendered moot by the magistrate judge's withdrawal of that adoption.  The Clerk of Court is

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 21, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, Inc., et al., Civ. No. 03-00385 SOM/LEK;
ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; ORDER AFFIRMING
MAGISTRATE JUDGE'S ADOPTION OF DISCOVERY MASTER'S ORDER REGARDING F-1 PROGRAM
MATERIALS.

directed to terminate the appeal, and Berry must return to the
magistrate judge for relief pending the magistrate judge's
adoption, rejection, or modification of the Discovery Master's
ruling on the Guidance software materials.

46