# Exhibit 29

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (this "Agreement") is made this seventh day of October, 1999, by and among:

A. ATLANTIC PACIFIC INTERNATIONAL, INC., a Hawaii corporation, whose address is 3049 Ualena Street, Suite 715, Honolulu, Hawaii 96819, hereinafter sometimes referred to as "API";

B. A&A CONSOLIDATORS, INC., a Hawaii corporation, whose address is 3049 Ualena Street, Suite 715, Honolulu, Hawaii 96819, hereinafter sometimes referred to as "A&A";

C. JACK BORJA and HEIDI BORJA, whose address is 889 Ikena Circle, Honolulu, Hawaii 96821, hereinafter sometimes referred to as the "Borjas"; and

D. FLEMING COMPANIES, INC., an Oklahoma corporation, with its principal place of business at 6301 Waterford, Oklahoma City, Oklahoma 73118, at its Hawaii division headquarters at 91-315 Hanua Street, Kapolei, Hawaii 96707, hereinafter referred to as "Fleming".

### WITNESSETH THAT:

WHEREAS, Fleming is the Holder of that certain Amended and Restated Promissory Note dated August 10, 1998 in the original amended amount of $1,295,000.00, made, executed and delivered by API and the Borjas, as Maker, together with any renewals, extensions and modifications thereof (the "Note");

WHEREAS, the principal amount of $1,295,000.00 due under the Note remains unpaid;

WHEREAS, the Note is secured by that certain Second Deed of Trust covering the property located at 4819 Cecelia Street, Cudahy, California 90201 and those certain ancillary personal property items related thereto (the "Cudahy Mortgage");

WHEREAS, Fleming owns the interest as Trustee (Mortgagee) in the Cudahy Mortgage;

WHEREAS, API and the Borjas desire to sell the property described in the Cudahy Mortgage (the "Cudahy Property"), which is the subject of a sales contract to be closed on or about September 30, 1999;

Exhibit 29

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

WHEREAS, API and the Borjas desire Fleming's release of all claims under or based on the Note and the Cudahy Mortgage so the Cudahy Property can be sold;

WHEREAS, Fleming shall receive the net proceeds pursuant to its Second Deed of Trust, after satisfaction of the First Deed of Trust, from the sale of the Cudahy Property (the "Sale Proceeds");

WHEREAS, in addition to the principal amount of $1,295,000.00 due under the Note which remains unpaid, Fleming also claims that API owes Fleming other amounts, including but not limited to $292,607.67 for various freight claims;

WHEREAS, API further owes open account balances to truckers or jobbers that have performed services on shipments which Fleming acted as the consignee;

WHEREAS, API claims that Fleming owes API $1,200,000.00 for freight invoice deductions;

WHEREAS, Fleming holds that certain continuing personal guaranty, dated January 22, 1998, made by Jack Borja and Heidi Borja in favor of Fleming ("the "Continuing Guaranty");

WHEREAS, Fleming has filed a Cross-claim against API and A&A, and a Third-Party Complaint against the Borjas in that certain case identified as Civil No. 98-00369 DAE (In Admiralty) filed in the United States District Court for the District of Hawaii (the "Federal District Court Litigation");

NOW, THEREFORE, in consideration of the promises and the mutual agreements herein set forth, the parties do hereby mutually agree that the following consideration is mutual, adequate and valuable consideration, each exchanged in favor of the other, and do hereby further agree as follows:

1. The matters set forth in the Recitals are incorporated by reference in, and made a substantive part of, this Agreement.

2. In consideration of the mutual promises and covenants herein:

    a. The Sale Proceeds shall be remitted to Fleming, and applied as follows:

        (1) First, to pay all or a portion of the open account balances owed to truckers or jobbers that have performed services on shipments which Fleming acted as the consignee, subject to the following:

            (a) API and/or its counsel will negotiate a full settlement with the trucker or jobber;

Document I.D. No.: 02.51414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

(b) Fleming shall receive a release, in form satisfactory to Fleming's counsel, fully releasing any and all claims the trucker or jobber may have against any party or in any way relating to services allegedly performed for the benefit of Fleming;

(c) Fleming will pay such amount directly to the trucker or jobber upon receipt of said documentation;

(d) The cumulative amount of all negotiated settlement amounts shall not exceed $80,000.00; and

(e) Payments on all the negotiated amounts be paid by June 30, 2000; and

(2) Second, to satisfy $292,607.67 of the open account balances due Fleming by API; and

(3) Any remaining monies will be applied to the balance owed Fleming on the Note; and

b. API and all of its past, present and future parent, subsidiary and affiliated corporations, divisions, predecessors, successors, insurers, officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns, as applicable, A&A and all of its past, present and future parent, subsidiary and affiliated corporations, divisions, predecessors, successors, insurers, officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns, as applicable, the Borjas and the Borjas on behalf of all of their respective present and future heirs, personal representatives, successors, assigns and agents, as applicable, and each of them, hereby release and forever discharge Fleming and all of its present and future parent, subsidiary and affiliated corporations, divisions, predecessors, successors, insurers, assigns, officers, directors, employees, attorneys, agents and representatives, and each of them (herein collectively the "Fleming Releasees"), from any and all claims, actions, demands, obligations, losses, causes of action, damages of whatever name or nature, penalties, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether based on contract, tort, statute, or other legal or equitable theory of recovery, whether known or unknown, in any manner alleged, which as of the date of this Agreement, they had, now have or claim to have, against the Fleming Releasees, with respect to, arising out of or connected in any way with:

(i) any course of business conducted between Fleming, API and/or the Borjas prior to the date of this Agreement, including but not limited to $1,200,000.00 that API claims is due and owed to API by Fleming for freight invoice deductions; and

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

    (ii) the Federal District Court Litigation,

including but not limited to all claims for legal fees and costs (the "API/Borjas Released and Settled Claims").

 3. With the exception of the Undisclosed Liabilities defined in paragraph 5 below, and in consideration of the mutual promises and covenants herein, Fleming, and Fleming on behalf of its successors, assigns and agents, as applicable, and each of them, hereby release and forever discharge API and all of its past, present and future parent, subsidiary and affiliated corporations, divisions, predecessors, successors, insurers, officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns, as applicable, A&A and all of its past, present and future parent, subsidiary and affiliated corporations, divisions, predecessors, successors, insurers, officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns, as applicable, and the Borjas and all of their respective present and future heirs, personal representatives, successors, assigns and agents, as applicable, and each of them (herein collectively the "Borja Releasees"), from any and all claims, actions, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether based on contract, tort, statute, or other legal or equitable theory of recovery, whether known or unknown, in any manner alleged, which as of the date of this Agreement, Fleming had, now has or claims to have, against the Borja Releasees, with respect to, arising out of or connected with any and all obligations owed to Fleming by the Borjas, including but limited to:

  a. Any and all claims Fleming may have or could have asserted against the Borjas, API and A&A as set forth in Fleming's Cross-Claim and Third-Party Complaint filed on June 17, 1998 in the Federal District Court Litigation, including but not limited to those claims set forth on Fleming's Cross-Claim; and

  b. Any and all claims Fleming may have against the Borjas based on the Note and/or the Personal Guaranty;

including but not limited to all claims for legal fees and costs (the "Fleming Released and Settled Claims").

 4. In consideration of the mutual promises and covenants herein, Fleming shall file a dismissal with prejudice of its Cross-claims against API and A&A and its Third-Party Complaint against the Borjas, both in the Federal District Court Litigation and file other documents necessary to release the other security agreements Fleming has on API, A&A and the Borjas' assets.

 5. API, A&A and the Borjas acknowledge and agree that Fleming is <u>not</u> releasing the Borja Releasees for any claims Fleming may have against the Borja Releasees for contribution and indemnity for liabilities or potential liabilities that API, A&A and the Borjas have not to date disclosed to Fleming ("Undisclosed Liabilities"). API, A&A and the Borjas

-4-

Document I.D. No.: 02S1414JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

have to date disclosed only the potential liabilities for freight costs for the shipment of Fleming's goods by Sea-Land Service, Inc. and Matson Navigation Company and the potential liabilities arising from the open account balances API owes to truckers or jobbers that have performed services on shipments which Fleming acted as the consignee. The Borjas and API acknowledge and agree to indemnify, forever hold harmless and defend the Fleming Releasees, jointly and severally, from any and all claims, demands, actions, or liability arising from Undisclosed Liabilities.

6. The parties hereto understand and acknowledge that the duties, covenants and warranties of the parties to this Agreement shall expressly survive this Agreement.

7. The parties hereto understand that in accepting the foregoing consideration, and executing this Agreement it is specifically agreed that this Agreement shall be a complete bar to the API/Borjas Released and Settled Claims and the Fleming Released and Settled Claims. Should any party to this Agreement initiate litigation regarding or concerning the API/Borjas Released and Settled Claims and/or the Fleming Released and Settled Claims, the party initiating such litigation agrees to indemnify, defend and hold harmless each of the other parties from any claims that may arise or result against the non-initiating party or parties.

8. The parties hereto represent and warrant: (i) that they own all right, title, and interest in and to all claims ever existing against any other party or parties they are releasing; and (ii) that they have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, their right, title or interest in or to any such claim. Each person signing this Agreement warrants and represents that he or she has authority to sign on behalf of himself or herself and/or of the entity he or she represents and that this Agreement has been validly authorized and constitutes a legally binding and enforceable obligation of each such person or entity.

9. Upon demand, the parties hereto shall deliver to each other good and sufficient instruments of release, conveyance and transfer as shall be effective to effectuate the terms and conditions found herein.

10. In consideration of the mutual promises and covenants herein, during the seven week period commencing on September 12, 1999 and running through October 29, 1999 (the "Shutdown Period"):

   a. Fleming shall pay API its normal billing for freight services.

   b. Fleming will proceed to and will eventually handle all pre-paid shipments internally, will pay the ocean freight charges directly to the applicable carriers, and will reimburse to API the normal profit API would have made on these pre-paid shipments. API shall in good faith provide Fleming with a reconciliation of all amounts for prepaid open ocean freight paid by Fleming, after September 12, 1999, and not reimbursed by API. For every payment from a vendor received and

-5-

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

deposited by API, after September 12, 1999, any part of which constitutes ocean freight payments made by Fleming, API agrees to use the proceeds from the payment to reimburse Fleming that amount of ocean freight charges directly applicable to each payment. For every payment from a vendor received and deposited by Fleming, after September 12, 1999, any part of which constitutes ocean freight payments made by Fleming, Fleming agrees to pay API that amount of the payment remaining after the ocean freight amounts paid by Fleming have been deducted therefrom.

c. Fleming and API shall in good faith reconcile API-Fleming receivables/Fleming-API payables with any agreed upon balances remitted to API after the deduction of any prepaid open ocean freight amounts not reimbursed to Fleming and any unpaid balance in Section 2.a.(2) above.

d. Fleming shall reimburse API for the actual payroll costs of API associates working on September 15 and 30, 1999, excluding the payroll costs of Jack Borja and any consulting fee or other compensation to any officer, director and/or consultant.

e. Fleming shall reimburse API for reasonably expected data communication costs and long distance charges for communications with California ports for September and October of 1999.

f. Fleming shall reimburse API for regularly scheduled lease payments made by API in September and October of 1999 for: (i) Truck leases for four vehicles totaling approximately $5,500 per month with 55 months of remaining lease term (the "Truck Leases"); (ii) Forklift leases for three units totaling approximately $1,500 per month with 36 months of remaining lease term (the "Forklift Leases"); and (iii) the Dell Computer Server lease (Lease No. 007464789-001) of approximately $509 per month with 32 months of remaining lease term (the "Dell Lease").

11. In consideration of the mutual promises and covenants herein, after the Shutdown Period ends:

a. With respect to the Truck Leases, Fleming will use commercially reasonable efforts to identify for API a party that will either accept assignment of the Truck Leases or agree to reimburse API for its monthly lease payments in consideration for its use of the property leased under the Truck Leases. If such a party cannot be found, Fleming will reimburse API for up to three additional regularly scheduled and consecutive lease payments, while continuing to use commercially reasonable efforts to identify for API a party that will accept assignment of the Truck Leases or will agree to reimburse API for its monthly lease payments in consideration for its use of the property leased under the Truck Leases. Fleming's obligations with respect to the Truck Leases shall be limited to and absolutely cease after the three additional regularly scheduled and consecutive lease payments.

-6-

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

  b. With respect to the Forklift leases, Fleming will use commercially reasonable efforts to identify for API a party that will accept assignment of the Forklift Leases. If such a party cannot be found, Fleming will reimburse API for up to three additional regularly scheduled and consecutive lease payments, while continuing to use commercially reasonable efforts to identify for API a party that will accept assignment of the Forklift Leases or will agree to reimburse API for its monthly lease payments in consideration for its use of the property leased under the Forklift Leases. Fleming's obligations with respect to the Forklift Leases shall be limited to and absolutely cease after the three additional regularly scheduled and consecutive lease payments.

  c. Fleming shall either assume or buy out the Dell Lease, effective November 1, 1999.

  d. At no time shall Fleming be deemed to have assumed API's liability under the Truck Leases or the Forklift Leases.

  12. Fleming, API, A&A and the Borjas acknowledge their intent to continue litigation against Plaintiff Sea-Land Service, Inc. (the "Plaintiff") in the Federal District Court Litigation. Fleming, API, A&A and the Borjas agree that each party will continue to be responsible for its and their own costs of litigation, including attorneys' fees and costs, except as provided in the Joint Privilege and Confidentiality Agreement. Fleming affirmatively states that it has not as of the date of its execution of this Agreement entered into any settlement agreement with Plaintiff. Should Fleming hereafter settle its issues with the Plaintiff, and if API, A&A and/or the Borjas continue in the litigation and ultimately prevail, API, A&A and the Borjas agree to promptly remit to Fleming fifty percent (50%) of any proceeds less attorneys' fees and litigation costs received by API and the Borjas. The amount remitted to Fleming shall not exceed $600,000.00. API, A&A and the Borjas agree and acknowledge that Fleming has no liability nor obligations to API, A&A and the Borjas if they do not prevail in the matter.

  13. API has executed this Agreement acknowledging the Borjas' equity and other interest in API; acknowledging that API will derive a benefit from this Agreement; acknowledging that API is entering into this Agreement and providing its release herein for the benefit of Fleming as an essential inducement to Fleming to enter into this Agreement; and that without API and entering into this Agreement, Fleming would not have entered into this Agreement with the Borjas.

  14. A&A and the Borjas specifically represent to Fleming that A&A does not presently own assets that have a total value exceeding $1,000.00, except for claims against various parties in the Federal District Court Litigation. A&A and the Borjas acknowledge that this representation regarding A&A's assets is a material representation upon which Fleming is relying in entering into this Agreement.

-7-

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

15. This Agreement is binding upon the parties hereto and each of them, as applicable, their respective directors, officers, shareholders, employees, agents, heirs, executors, administrators, personal representatives, successors and assigns.

16. The parties hereto admit that no party to this Agreement, nor anyone on behalf of any party to this Agreement has made any agreement or promise to do or omit to do any act or thing not herein mentioned or incorporated herein by reference, to induce this compromise, and that no statement of fact or opinion has been made by any party or any one acting on behalf of any party, to induce the execution of this Agreement, other than as expressly set forth herein, and that this Agreement is executed freely and upon the advice of counsel and that this Agreement is made by all parties to this Agreement with full knowledge of the facts and possibilities of the case and with full advice of counsel, and that the terms of this Agreement are contractual and not a mere recital. This Agreement contains all of the terms and agreements between the parties and supersedes and cancels each and every other prior conflicting agreement, promise and/or negotiation between them.

17. The parties hereto, each having reviewed this Agreement and being represented by counsel, further agree that for purposes of construction of any provision of this Agreement, no party shall be deemed to be the sole author of this document.

18. The parties hereto each have the right to seek the enforcement of the terms and conditions of this Agreement. In the event that such enforcement is necessary, the prevailing party is entitled to recover all costs and reasonable legal fees incurred in such enforcement.

19. The parties hereto agree that this Agreement and its contents are not to be construed as an admission of any claim, demand, wrongdoing, willful misconduct, liability, fault, or any act or omission of any kind whatsoever, by any party, but are to be construed strictly as a compromise and settlement of disputed claims among the parties hereto for the purpose of avoiding further controversies, litigation, and expenses.

20. This Agreement shall be governed by the laws of the State of Hawaii.

21. This Agreement shall not be altered, amended, modified, or otherwise changed, in any respect or particular whatsoever, except by a writing duly executed by all of the parties hereto.

22. It is mutually agreed that the parties and their respective counsel shall keep the terms and conditions of this Agreement confidential unless required to disclose them by an order of the court. The parties may also disclose the terms and conditions of this Agreement to their accountants if necessary for the preparation of tax returns.

23. Any claim between, or among, the parties hereto arising in any way from this Agreement shall be submitted to exclusive, final and binding arbitration before a single, neutral arbitrator selected by the alternative strike off method pursuant to Hawaii Revised Statutes

Document I.D. No.: 0251414JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

Chapter 658. Said arbitration shall be administered by, and conducted pursuant to the commercial arbitration rules of, Dispute Prevention and Resolution, Inc., 1001 Bishop Street, Suite 1155, Honolulu, Hawaii 96813. The arbitration shall be held in Honolulu, Hawaii. The arbitrator, in addition to deciding any claim arising from this Agreement, shall have the authority to award the prevailing party its, his and/or her attorneys' fees and costs, including the arbitrator's fees and costs and the administrative costs of the arbitration. It is agreed that the combined obligation as between the Borjas, API and/or A&A, for payment of all costs of arbitration, excluding attorney's fees, incurred by any arbitration initiated pursuant to this paragraph shall not exceed FIFTEEN THOUSAND AND NO/100 DOLLARS ($15,000.00). The parties also waive any claims for punitive damages against each other arising in any way from this Agreement.

24. The parties hereto agree that this Agreement shall not in any way affect, amend or modify the Joint Privilege and Confidentiality Agreement among Fleming, API and A&A.

25. The parties hereto agree that execution of this Agreement in counterparts and/or facsimile shall be acceptable.

[ Remainder of Page Left Blank Intentionally ]

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

IN WITNESS WHEREOF, the parties hereto have duly executed these presents on the day and year first above mentioned.

_____
JACK BORJA

_____
HEIDI LAM BORJA

"Borjas"

ATLANTIC PACIFIC INTERNATIONAL, INC.

By _____
Name: JACK BORJA
Office: CHAIRMAN

By _____
Name: HEIDI LAM BORJA
Office: SECRETARY

"API"

A&A CONSOLIDATORS, INC.

By _____
Name: JACK BORJA
Office: PRESIDENT

By _____
Name: HEIDI LAM BORJA
Office: SECRETARY

"A&A"

FLEMING COMPANIES, INC.

By _____
Name: E. Stephen Janis
Office: Exec. Vice President

"Fleming"

-10-

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

STATE OF HAWAII          )
                         ) SS:
CITY AND COUNTY OF HONOLULU  )

On this __9th__ day of __October__, ~~1998~~ 1999, before me personally appeared JACK BORJA and HEIDI LAM BORJA, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed said instrument as their free act and deed.

_Ellen G. Yamamoto_
Name of Notary:
Notary Public, State of Hawaii
My Commission expires: 2-3-2002

STATE OF HAWAII          )
                         ) SS:
CITY AND COUNTY OF HONOLULU  )

On this __9th__ day of __October__, ~~1998~~ 1999, before me appeared JACK BORJA and HEIDI LAM BORJA, to me personally known, who, being by me duly sworn did say that they are the Chief Executive Officer and Secretary of ATLANTIC PACIFIC INTERNATIONAL, INC., a Hawaii corporation; that said instrument was signed in the name and on behalf of said corporation by authority of its Board of Directors; and said officers acknowledged that said officers executed said instrument as the free act and deed of said corporation.

_Ellen G. Yamamoto_
Name of Notary:
Notary Public, State of Hawaii
My Commission expires: 2-3-2002

STATE OF HAWAII          )
                         ) SS:
CITY AND COUNTY OF HONOLULU  )

On this __9th__ day of __October__, ~~1998~~ 1999, before me appeared JACK BORJA and HEIDI LAM BORJA, to me personally known, who, being by me duly sworn did say that they are the Chief Executive Officer and Secretary of A&A CONSOLIDATORS, INC., a Hawaii corporation; that said instrument was signed in the name and on behalf of said corporation by authority of its Board of Directors; and said officers acknowledged that said officers executed said instrument as the free act and deed of said corporation.

_Ellen G. Yamamoto_
Name of Notary:
Notary Public, State of Hawaii
My Commission expires:

-11-

Document I.D. No.: 0251414.JAK
Date Last Edited: Thursday October 7, 1999 at 2:08pm

STATE OF ~~HAWAII~~ Oklahoma  )
                              ) SS:
CITY AND COUNTY OF ~~HONOLULU~~ Oklahoma )

On this _12th_ day of _October_, 1999, before me appeared _E. Stephen Davies_ to me personally known, who, being by me duly sworn, did say that he/she is the _Exec. Vice President_ of FLEMING COMPANIES, INC., an Oklahoma corporation; and that said instrument was signed in the name and on behalf of said corporation by authority of its Board of Directors; and said officer acknowledged that he/she executed said instrument as the free act and deed of said corporation.

_[signature]_
Name of Notary:
Notary Public, State of ~~Hawaii~~ Oklahoma
My Commission expires: _June 9 2001_

-12-

CIVIL NO. 01-00446 SPK LEK

DEFENDANT'S EXHIBIT  218

IN EVIDENCE - FOR IDENTIFICATION

REC'D_____, 2003

_____
CLERK