LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 02 2005

at 10 o'clock and 45 min. A. M.
WALTER A. Y. H. CHINN, CLERK

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | Civ. No. CV03 00385 SOM-LEK (Copyright) |
| Plaintiff, | |
| vs. | PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANT GUIDANCE SOFTWARE, INC. AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE |
| HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al. | |
| Defendants. | |

FILE-STAMPED COPY OF
FIRST PAGE TO
COMPLETE YOUR RECORD

JUN 06 2005

Exhibit 35

Proc. No. 03-54809 (MFW) (Bankr. Del.) the intended "first filed" case in Delaware where the report was actually first used. . . . . . 3

6.    Guidance and Mr. Gurzi's claim that Mark Dillon copied the files back but this contradicts Mr. Gurzi's report submitted to the Delaware Court under oath that he copied the files back. . . . . . 4

7.    Guidance's own documents show that Gurzi assisted and participated in the reinstallation of the very files they claim to have removed.    4

8.    Gurzi and Guidance have not addressed, and make no claim to fair use regarding the copies of his software that were copied on to the Guidance server . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.    Guidance's Fiction As To Why It Was Making Copies of the Berry Software. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.    Guidance, Gurzi and Dillon Cannot Agree On the Material Facts.    7

C.    Gurzi Makes No Claim That He Did Not Copy the Spreadsheets Back Nor Does He Claim That These Are Not Infringing Derivatives Copies of Mr. Berry's Work Transferred to C&S. . . . . . . . . . 12

D.    The Guidance File Listings are A Record of Guidance and Gurzi's Wrongful Infringing Conduct.    . . . . . . . . . . . . . . . . . . . 13

E.    Guidance Makes no Claim that Mr. Berry Has Not Made His Prima Facie Case of Infringement.    . . . . . . . . . . . . . . . . . . . . 17

F.    The Deletion of the 4.6 Gigabyte File Destroys any Claim to Fair Use.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

G.    The Record Shows that Guidance Didn't Just Miss A Couple of Files But Copied Hundreds if not Thousands of Berry Works In A Misappropriation of Mr. Berry's Trade Secrets.    . . . . . . . . . 21

iii

III.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.   Guidance's Pre-Wipe Image Was Done After The Relevant File Was Deleted Thus Making Any Fair Use Defense Absurd.  . . . . . . 22

    B.   Guidance Misses the Point as to the Post-Wipe Forensic Image, the Infringement Occurred when Guidance working with an adjudicated Willful Infringer Copied the Berry Works Back to be Sold To C&S. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    C.   Mr. Berry Made No Sherman Act Claim as To Guidance or Gurzi. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    D.   The False Affidavit and the Deletion of the Operative Database Are RICO Predicates and Violations of Sarbanes-Oxley. . . . . . . . . 28

    E.   The Doctrine of Fair Use Cannot Be Extended to Excuse Guidance In This Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

## CASES

*Jartech v. Clancy*, 666 F.2d 403 (9th Cir. 1982) . . . . . . . . . . . . . . . . 32, 33

*Religious Technology Center v. Wollersheim,* 971 F.2d 364 (9th Cir. 1992) . 23, 24

*Bond v. Blum*, 317 F.3d 385, 393 (4th Cir., 2003) . . . . . . . . . . . . . . . . 33

*Campbell v. Acuff-Rose Music*, 510 U.S. 569, 576 (U.S., 1994) . . . . . . . . 30

*Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) . . . . . . . . . 32

## STATUTES

18 U.S.C. § 152(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Section 802 of the Sarbanes-Oxley Act, 18 U.S.C. § 1519 . . . . . . . . . . . 12

18 U.S.C. § 1519. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 U.S.C. § 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

18 U.S.C. § 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

18 U.S.C. § 1961(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Copyright Act 17 U.S.C. § 107 . . . . . . . . . . . . . . . . . . . . . . . . . . 30

RICO Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 28

Sarbanes-Oxley Act . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 24, 25, 33

Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

The Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The Bankruptcy Code, 11 U.S.C. § 362(a) . . . . . . . . . . . . . . . . . . . . . 7

## RULES

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## OTHER AUTHORITIES

46 Baylor L. Rev. 1 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

PLAINTIFF WAYNE BERRY MEMORANDUM IN OPPOSITION
GUIDANCE SOFTWARE, INC. AND MICHAEL GURZI'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Comes now Plaintiff Wayne Berry ("Plaintiff"), by and through his

undersigned counsel and hereby respectfully submits his Memorandum in

Opposition to Guidance Software, Inc. and Michael Gurzi's Motion for Summary

Judgment (the "Motion).

I.    <u>FACTUAL ISSUES THAT REFUTE THE FAIR USE DEFENSE</u>.

The following facts show that the Court must deny the grant of summary

judgment in favor of Guidance Software, Inc. ("Guidance") and Mr. Gurzi:

1.   Rather than acting as a forensic expert tasked with preserving

evidence, Guidance's Mr. Gurzi deleted the relevant Berry database file prior to

creating the pre-wipe image and did not preserve this critical material evidence.

This fact is evidenced by Guidance's own business record Document No.

GSI0027 that is attached to the Declaration of Timothy J. Hogan (the "Hogan

Dec.") as Exhibit "A." This Guidance business record shows that Gurzi

searched for and located a massive 4.6 gigabyte copy of the Berry "FCS

Logistics Data.mdb" file. Rather than preserve it, as Guidance claims as the

basis for its Fair Use defense, the evidence shows that Gurzi deleted it as set

forth in the Declaration of Wayne Berry (the "Berry Dec.") at ¶¶ 11-25 . As

corroboration for this act of spoliation, the "pre-wipe" image of the Fleming-Logistics server contains evidence consistent with a 4.6 gigabyte deleted file. Berry Dec. ¶ 16-22. The Court, in making its earlier rulings, did not have the benefit of the proof of the spoliation that would have necessarily made any fair use defense inapplicable as to the pre-wipe image as well as to all subsequent acts of copying. These interlocutory findings should not prevent the Court from finding now that Guidance and Gurzi are liable for infringement, conspiracy and the predicate offence of Bankruptcy Fraud or, at a minimum, that genuine issues of material fact exist making the grant of summary judgment in favor of Guidance and Gurzi inappropriate.

2. The statements that were sworn to be true before the United States Bankruptcy Court in Delaware that no copies of Berry's software existed on the Fleming computers and that no Fleming employees had access to Berry software after Guidance and Gurzi left in July 2003 are now admitted to have been false statements made under oath in connection with a case under Title 11. Hogan Dec. Exhibit "B" at ¶ 18; *see also* Hogan Dec., Exhibit "G" at pg. 2 of 13, pp. at 7-9.

3. Any claim that the copying of the Berry materials back from the Guidance images had no effect on Mr. Berry's market is now proven false by the

2

admission of Guidance and Mr. Gurzi's principal, Fleming, through the PCT, that now boasts that Fleming "legally" transferred Mr. Berry's software to C&S. Guidance and Gurzi, by restoring the files delivered the copies to Mr. Berry's potential customer C&S, thus destroyed his potential for a licensed installation at C&S. Hogan Dec. Exhibit "C" and Guidance Software, Inc. and Michael Gurzi's Separate Concise Statement at ¶ 3.

    4.    With the proof of spoliation, the Court should find that the disk wiping engaged in by Guidance was in violation of the District Court's order against evidence destruction in the first infringement case. Hogan Dec. Exhibit "D" at p. 2. It also violated the automatic stay of the Bankruptcy Code. (*See* Hogan Dec. Exhibit "E") and is grounds for a claim of Bankruptcy fraud. This same conduct violates the Sarbanes-Oxley Act because it was done during the pendency of a formal SEC investigation and a Chapter 11 case. Hogan Dec. Exhibit "F" at pg. 2.

    5. There is an issue of fact that the purpose of the disk wiping and copying was not for the pending Hawaii litigation as advanced by Gurzi and Guidance but rather for *Fleming v. Wayne Berry*, Adv. Proc. No. 03-54809 (MFW) (Bankr. Del.) the intended "first filed" case in Delaware where the report was actually first used. Hogan Dec. Exhibit "G" that is an Exhibit to the Affidavit of Counsel

submitted in the report for the Delaware adversary proceeding on August 1,

2003. Hogan Dec. ¶ 8. The reasonable inference is that by getting Guidance to

do the copying, Fleming is able to plead innocence. Exhibit "H" that identifies

the work order for the July 2003 images as *"Fleming v. Berry"* not *"Berry v.*

*Fleming"* the stayed Hawaii District Court litigation.

      6.     Guidance and Mr. Gurzi's claim that Mark Dillon copied the files

back but this contradicts Mr. Gurzi's report submitted to the Delaware Court

under oath that he copied the files back. Hogan Dec. Exhibit "G" at pg. 9 of 13.

      7.     Guidance's own documents show that Gurzi assisted and participated

in the reinstallation of the very files they claim to have removed. Berry Dec., ¶¶

23-39. Hogan Dec. Exhibit "B" at ¶¶ 6-8 and Hogan Dec. Exhibit "G" at pg. 9

of 13. In any event, the Guidance Report admits that Gurzi, not Dillon copied

these files back on to the system. Gurzi and Guidance's present claim that

Dillon actually made the copies contradicts Gurzi, Guidance's agent's own prior

sworn statement. Hogan Dec. Exhibit "G" at pg. 9 of 13.

      8.     Gurzi and Guidance have not addressed, and make no claim to fair

use regarding the copies of his software that were copied on to the Guidance

server in Pasadena. Hogan Dec. Exhibits "J" to "L" evidence that Gurzi flew

back on July 8, 2003 and sometime on or before July 13, 2003 copied the Berry

4

works on to the Guidance server where they presumably remain today. *See* Berry Dec. ¶ 40.

II.    BACKGROUND.

Having now admitted that a sworn affidavit filed in the Delaware Bankruptcy proceeding of *In re Fleming Companies, Inc.*, Bk. No. 03-10945-MFW (Bankr. Del.) was untrue, Guidance Software, through its authorized agent Michael Gurzi, now asks the Court to excuse the conduct that is admitted to include the copying of Berry works, under the rubric of fair use. The fiction that pervades this Motion is evident within its own four corners and the Court must find that Guidance and Gurzi have not met their burden for summary judgment and that Mr. Berry's cross-Motion for Summary Judgment should be granted as to Guidance and Gurzi.

A.    Guidance's Fiction As To Why It Was Making Copies of the Berry Software.

In order to attempt to try to lodge itself within the fair use doctrine, Guidance now creates the fiction that the reason it was sent to Hawaii was to allow Fleming to comply with its requirements under the existing Hawaii litigation. This is simply false. The record and all reasonable inferences show that Guidance went to Hawaii to prepare a report to be used in a "first filed" case

5

for Fleming who was intending to trap Mr. Berry in new litigation in Delaware while his software was being transferred to a third party C&S. Hogan Dec. Exhibit "G." is Exhibit "QQ" to the Affidavit of Damian Capozzola filed in support of Motion for Immediate and Preliminary Injunctive Relief filed on August 1, 2003 in *Fleming Companies, Inc. v. Wayne Berry*, Adv. Proc. No. 03-54809 (MFW) (Bankr. Del.). This adversary proceeding was commenced just over two weeks after Gurzi left Hawaii having copied hundreds of copies of Berry's works ("Berry Technology") back on to the Fleming computers that Guidance admits in its Concise Statement were to be sold to C&S. *See* Guidance and Gurzi Separate and Concise Statement at ¶ 3. *See also* Hogan Dec. Exhibit "H" that is a copy of the Guidance worksheet for the work being done for the to-be-flied adversary case "*Fleming V. Wayne Berry*."

The purpose of this action was to obtain a first filed declaratory judgment that no copies of Berry Technology remained on the Fleming-Logistics servers based entirely on the evidence presented in Gurzi's now admitted false Guidance Report. *See* Hogan Dec. Exhibit "S" at ¶ 55. The Berry Technology that Guidance admits to copying and transporting to Pasadena was not copied for the purpose of stayed litigation pending in the District of Hawaii. The only place that the report generated as a result of these acts of copying was ever used by

6

Fleming was in Delaware in *Fleming Companies, Inc. v. Wayne Berry*.  Hogan

Dec. ¶ 20 and Exhibit "S."   Fair use clearly does not apply because the

Guidance-Gurzi theory requires the admission that they were engaged in

continuing the Hawaii litigation that had been stayed under the automatic stay of

the Bankruptcy Code, 11 U.S.C. § 362(a) and moreover, that defense cannot

apply because there was an order in the first infringement case prohibiting them

from wiping anything.   Hogan Dec. Exhibit "D."   That order did not say

destroy what you will and leave the rest behind.  It said do not destroy any

evidence and Guidance and Fleming violated that order.  As a matter of law if

not sound judicial policy and comity, fair use cannot be shown when it derives

from acts of contempt.  Finally, there is no issue of fact that this "wiping"

occurred during a formal SEC investigation and a pending Bankruptcy Case.

Hogan Dec. Exhibit "F".   It therefore, also violates Section 802 of the

Sarbanes-Oxley Act, 18 U.S.C., § 1519.

    B.   <u>Guidance, Gurzi and Dillon Cannot Agree On the Material Facts</u>.

    Unfortunately for Guidance and Gurzi they tied their entire motion to a fact

that their own sworn testimony proves false: that Mr. Dillon, not Guidance's

Gurzi, copied the files back.   That is not what Guidance's Mr. Gurzi told Judge

Walrath when he filed his report under penalty of perjury in *Fleming Companies,*

*Inc. v. Wayne Berry*, Adv. Proc. No. 03-54809 (Bankr. Del). Mr. Gurzi's
report (the "Guidance Report") states: "at his [Dillon's] request, <u>I was able to
recover the user folders from the first acquisition evidence file and restore it to
the server</u>, however, I watched as Mr. Dillon reviewed the files and deleted any
previous reports that were created prior to the transition from access database to
their current spreadsheets." Gurzi also admits that he "assisted Mr. Dillon by
installing the software along with him." *See*. Hogan Dec. at Exhibit "G" at p. 9
of 13 (emphasis added). *See also* Gurzi Dec., Hogan Dec. Exhibit "B" at ¶¶ 6-
8. Therefore, Mr. Gurzi's own report, submitted under oath, disputes what he
and Guidance now state in regard to the instant motion, that Mr. Dillon copied
the files back apparently without Gurzi's knowledge. *See* Guidance and Gurzi
Memorandum in Support of Motion for Summary Judgment at pg. 26 where
Guidance and Gurzi seek to blame Dillon for reinstalling the Berry Technology.

Guidance and Gurzi now cite to Mr. Dillon's Affidavit, the one Mr. Dillon
signed before he had to correct its misstatements in open court during the
preliminary injunction hearing, to put all the blame for this on Dillon. *See*
Hogan Dec., Exhibit "I" at p. 37 that is true and correct copy of the corrected
Dillon Affidavit. What Gurzi has not explained is how Dillon was able to copy
these files back onto his computer if Gurzi was performing his forensic function

8

of insuring that the disks were wiped and then reinstalled with only copies of

commercial shrink wrap software. Gurzi admits that he "supervised the

reinstallation of the system of software and user files." Hogan Dec., Exhibit "B"

at ¶ 6. The evidence shows that it is unlikely that the Dillon computer 151 was

ever wiped. Berry Dec. ¶¶ 41 & 42 and Exhibits "K" "V" "U" & "W".

Gurzi's admission that Dillon's machine contained the 16 files proves that Gurzi

did not perform duties that, in other circumstances could arguably permit a fair

use defense, but rather, as the reasonable inferences from the evidence show,

simply pretended so Fleming could deceive the Delaware Bankruptcy court to

obtain approval for its sale to C&S. Clearly the admission in Mr. Gurzi's

declaration that his report in Delaware was false should result in the Court's

denial of their summary judgment motion. *See* Hogan Dec. Exhibit "B" at ¶ 18.

As further proof of the entire Guidance scrubbing being, at best nothing

but artifice, Mr. Dillon, in his deposition, testified regarding the subject of his

having a copies of the Berry authored software at home:

> Q:        Now, have you told Guidance Software -- I
> believe his name is Michael Gurzi, G-u-r-z-z-I
> (sic), I believe. Have you told him you had
> previously had copies of Mr. Berry's software on
> your home computer when he came here to perform his
> work in July of this year?

9

A:               I don't think I did. I think he said
that his scope of work did not include my home
computer based on his conversation with the
discovery master.

Hogan Dec. Exhibit "N" Deposition of Mark Dillon taken on December 16,
2003 at 12:16 to 12:25 (Emphasis added).

Later Mr. Dillon was asked about what Gurzi had said:

Q:               You didn't. Did it ever occur to you
that they might be interested in getting software
that you had created while working at Fleming, but
had taken home with you?

A:               What he said is that his scope -- what
Mr. Gurzi said was that the scope of his mandate,
let's say, did not include my home computer.

Q:               So he was aware that you had a home
computer that -- he was aware you had a home
computer?

A:               Yes, he was aware that I had a home
computer. I -- well, I don't know if he was aware.
He simply said he assumed, I suppose, that I had a
home computer. I remember that he simply stated
that the scope of his work did not include my home
computer.

Hogan Dec. Exhibit "M" at 322:15 to 323:5 (emphasis added). Excerpts of the

Deposition of Mark Dillon, Volume II, taken on December 23, 2003.

Mr. Gurzi's response to Dillon's sworn testimony stating in his Declaration

that he "did not know that Mr. Dillon had any copies of Mr. Berry's files or any

10

derivatives . . . on his home computer." Hogan Dec. Exhibit "B" at ¶ 10. Mr.

Gurzi does not dispute that he had the above conversation with Mr. Dillon that

contradicts his sworn statement to the Delaware Bankruptcy Court, that stated

"Fleming hired Guidance Software to … [insure] that no Fleming employee

would have access to any such data" . . . Hogan Dec. Exhibit G" at pg. 2 of 13,

¶ 9. The clear inference is that Gurzi did not perform the kind of forensic tasks

that would give rise to a fair use defense. The issue of whether Gurzi

deliberately copied and/or facilitated the copying of the Berry software to remain

on the Fleming computer system with the intent that it be transferred to is an

issue of fact that must be tried. Even a cursory look at the "after" image would

show the hundreds of copies Gurzi put on the system. Berry Dec. ¶ 8. This

evidences Gurzi's failure to do anything to insure what he swore was true in his

Affidavit was in fact so and is directly relevant to the issue of whether Guidance

and Gurzi knowingly engaged in wrongful conduct intended to illegally distribute

copyrighted works negating the fair use defense. The conflicting sworn

testimony of Mr. Gurzi and Mr. Dillon create clear issues of fact that are

material to the issue of fair use and more than sufficient grounds for the Court to

deny the Guidance-Gurzi motion.

C.    Gurzi Makes No Claim That He Did Not Copy the Spreadsheets
      Back Nor Does He Claim That These Are Not Infringing Derivatives
      Copies of Mr. Berry's Work Transferred to C&S.

There is no claim that Gurzi did not knowingly copy the Dillon

Spreadsheet program back on to the computer system. Once again, Gurzi's

affidavit in Delaware swore that "no Fleming employee would have access to ...

any derivative [of the Berry Software]." Hogan Dec. Exhibit "G" at pg. 2 of 13.

What Guidance and Mr. Gurzi want the Court to do is essentially give

them what amounts to immunity for facilitating an adjudicated willful infringer's

means to continue the infringement. The Court should not create a rule that

allows some class of individuals to operate outside the law particularly where

their actions have not only violated the order of the District Court but are

arguably in violation of Titles 11 and 18. Guidance and Gurzi have entirely

failed to address the fact that all the actions that they committed were also in

violation of Section 802 of the Sarbanes-Oxley Act, 18 U.S.C. § 1519. It is

undisputed that Guidance engaged in its conduct deleting evidence during the

pendency of a formal SEC investigation and Bankruptcy case. Hogan Dec.

Exhibit "F." Guidance's own website admits that it knows this to be a criminal

act. Hogan Dec. Exhibit "T." These alleged forensic "experts" now wish to

have a special dispensation from federal law that this Court should not provide.

12

Guidance and Gurzi don't appear to address this issue in their moving papers. This Court should make a bright line pronouncement that under these circumstances, no fair use defense may apply because it would undermine the clear congressional intent in enacting the Sarbanes-Oxley Act.

> D.    The Guidance File Listings are A Record of Guidance and Gurzi's Wrongful Infringing Conduct.

The Declaration of Wayne Berry at ¶ 46 and Exhibit "X" to "T" evidences that numerous copies of Mr. Berry's works including the FCS Logistics Data.MDB and alleged spreadsheet derivative were copied by Gurzi and Dillon to eventually be delivered to Fleming-Logistics' purchaser, C&S. Guidance and Gurzi, Fleming's agents, admit that Guidance was hired, in part, to "ensure that Berry's copyrighted work would not remain on the Fleming computer system prior to its sale to C&S." *See* Defendants Guidance Software, Inc. and Michael Gurzi's Separate and Concise Statement at ¶ 3. There is no question that Guidance did nothing "to ensure that Berry's copyrighted work would not remain on the Fleming computer system prior to its sale to C&S" but, in contrast, created a false court record to facilitate the transfer. When asked in an Interrogatory to "state any and all facts . . . regarding how [Gurzi was] [sic] to identify Wayne Berry's software after, or while making copies of it in July

13

2003" Guidance and Gurzi responded, in part, " . . . assumes facts not in evidence, specifically that Guidance Software was 'to identify Wayne Berry's software.'" Hogan Dec. Exhibit "R" at Interrogatory No. 4. This conflicts with Mr. Gurzi's Declaration where he said he "performed a search and did not see any of Mr. Berry's files." Hogan Dec. Exhibit "B" at ¶ 9. But for Guidance's copying of these files, and the false affidavit, C&S would be using some other software and not copies of the spreadsheet derivative or would have been forced to license a copy from Mr. Berry as federal law requires.

The Berry Dec. ¶¶ 41 & 42 evidence that what Guidance's Gurzi did is allow Dillon's computer to escape the wiping that he claims to have performed. A comparison of the pre to post wipe images shows that the number of files remaining on all the systems in the "After" image is approximately 1/4 of the number of files contained in the "Before" image. Berry Dec. ¶ 42. In contrast, Dillon's computer only shows a 6% reduction (Berry Dec., ¶ 42) but more important, the Guidance records evidence that it was likely never wiped at all. Berry Dec. ¶ 41. This is because, Gurzi claims to have begun his "restore" on July 6, 2003 starting at 3:00 p.m. Hogan Dec., Exhibit "J." There should be no files with access of dates prior to that in the "After Image." Dillon's computer No. 151, however shows "last access" date and time in the "After" image of July

14

5, 2003 at 4:23 a.m.    *See* Berry Dec. ¶ 41.  The Guidance Software manual states that a virus scan can cause a "last access" notation in the Encase result. Hogan Dec. Exhibit "U." There is equally no reason that a virus scan should be performed during this period that the drives were allegedly wiped.

The small number of deleted files and evidence of the use of Dillon's computer during a time when it was alleged to have been wiped of data creates an issue of fact regarding the entire Guidance and Gurzi defense.  Berry Dec., ¶¶ 41-44.

The Guidance file listings show that the "User Files" that Mr. Dillon asked Gurzi to copy back were all copied back at the very end of a long night of restoring the wiped data on July 5-6, 2003.   Berry Dec. ¶¶ 26-39.  Gurzi concedes that the 16 files were not copied to the server with the User Files, but were kept by Dillon on his computer.    Hogan Dec. Exhibit "B" at ¶¶ 15 - 17. The 16 copies of the Berry Freight Control System, along with hundreds of other Berry Technology files were copied back on immediately after the alleged wiping. Berry Dec. ¶¶ 38 & 39.   The Guidance Report says that Gurzi assisted Dillon in re-installing software.  Hogan Dec. Exhibit "G" at pg. 5 & 9 of 13. Guidance's own file listings show that what Guidance's Gurzi actually did is participate in the reinstallation of Dillon's treasure trove of pirated Berry

15

Technology.   Guidance and Gurzi participated and facilitated this infringement and as a matter of law are both direct and contributory infringers and no "fair use" affirmative defense applies.

The most serious evidence of what Guidance-Gurzi and Dillon did on 4th of July Holiday 2003 is proven by the Guidance files listings.   The Guidance-Gurzi's time records show that the drive wipes occurred beginning on 7/5 at 10:00 a.m. and were completed on 7/5 at 22:00 or 10:00 p.m.  Hogan Dec. Exhibit "J."  A closer look at Dillon's computer's Encase activity evidences what actually happened.

The Pre-Wipe Image of Dillon's computer 151 had 90,981 files.  Berry Dec. ¶42 and Exhibit "W."    The After-Wipe Image of this machine No. 151 had 85,895 files.  Berry Dec ¶42 and Exhibit "V."  The key is that there should be no access dates on the after acquired image that show access between the wiping that was concluded at 10:00 pm on 7/5 and the image capture starting no earlier than 1500 or 3:00 pm on 7/6. Hogan Dec.  Exhibit "J."  The Guidance Filing listings show however, that Dillon and/or Gurzi accessed these files during a time that Gurzi's records show that the drive was completely wiped of all files. Berry Dec. ¶ 41.

This is evidence that Guidance's Gurzi only pretended to remove the Berry

16

materials, left Dillon with a fully operating suite of Berry Technology freight

system software and never did the actual "forensic" work he and Guidance

claims he did and both claim as the basis for the Fair Use defense.

   E.    Guidance Makes no Claim that Mr. Berry Has Not Made His Prima
         Facie Case of Infringement.

   As set forth in Mr. Berry's Motion for Summary Judgment Against all

Defendants, that is incorporated by this reference, Mr. Berry has made out his

prima facie case of infringement.  Fleming's PCT's admission that they have

somehow lawfully passed the ownership of Mr. Berry's copyrighted works to an

illegal unlicensed user C&S, Hogan Dec. Exhibit "C" admits that there is injury

to Mr. Berry based on Guidance's actions in July of 2003.  Berry Dec. ¶47.

There were millions of dollars that changed hands in the transaction.  The fact

that Guidance only received a small portion of that is irrelevant.  Guidance

knowingly participated in this infringement and it may not now claim that it

didn't get paid enough as its defense.

   F.    The Deletion of the 4.6 Gigabyte File Destroys any Claim to Fair
         Use.

   As set forth in the Declaration of Wayne Berry, the evidence is

overwhelming that Guidance's Mr. Gurzi traveled to Hawaii and deleted relevant

evidence from the Fleming-Logistics server prior to performing the "pre-wipe"

imaging. The evidence in the spreadsheet listing of files on the Guidance Images turned over in the spring of 2004 shows that an "unallocated cluster" of almost precisely the same size as the 4.6 gigabyte deleted copy of the Berry database was left on the drive and preserved by Gurzi. The small disparity in the file sizes can easily be accounted for by subsequent activity that wrote to the "unallocated cluster." Berry Dec. ¶ 43. The fact that the unallocated cluster is smaller than the deleted copy of the Berry database is consistent with this happening.

As set forth in the Berry Dec. ¶ 11 to 22 the Guidance Document Bates No. GSI0027 (Hogan Dec. Exhibit "A") memorializes Guidance-Gurzi's activities at Fleming-Logistics. First, at the top of the page is the password and logon ID for Mr. Gurzi. These notes show that Mr. Gurzi had difficulty with his logon because he did not distinguish between the letter "o" and a zero or "0". The document shows that his user logon was "MikeGurzi21" and his actual password was "C5oR5E0n". The notes go on to address what appears the use of Guidance Software's Encase forensic software to accomplish the task of searching for Mr. Berry's database that the notes show, and the Court may recall, was and is an "Access Database". The notes also show "API Freight Data Base" with a "Key Link" of "Job ID". The Court may recall that Job ID is one of the components of the Berry work that Professor Johnson found Fleming

18

copied when it created the spreadsheet derivative.

The Gurzi notes go on to identify the precise name of the two halves of Mr. Berry's split database: "FCS Logistics Screens.MDB" and FCS Logistics Data.MDB." Finally, at the bottom of this page of handwritten notes is the following:

> Searched 151 and Found Program, Based on Name & [sic] Key Link, in D:\Data
>
> 4,630,528 KB.

As the Berry Dec. ¶ 13 evidences, when Mr. Berry installed his programs in the fall of 1999 on the Fleming-Logistics' server he put them on the server in a mapped directory named "D:\Data". As evidenced by the Guidance Report filed in the Delaware Bankruptcy Adversary Proceeding, the server had a 40 gig. drive "D". Hogan Dec. Exhibit "G" at pg. 6 of 13. The notes of GSI0027 evidence that Gurzi sat on Dillon's machine 151 and, because it was connected to a network, he was able to see Drive "D" data as a "mapped" drive on machine 151. This is precisely how Mr. Berry had set up the network. *See* Berry Dec. ¶13 . The names of the "Found Program" were **FCS Logistics Data.MDB** and **FCS Logistics Screens.MDB** and are the name that Mr. Berry gave his copyrighted work that has been established in this case and not been disputed

19

throughout this proceeding or the prior one. Berry Dec. ¶ 12(f). Clearly, Mr. Gurzi found the relevant database files. What happened next is why Mr. Gurzi and Guidance cannot defend their conduct on the grounds of fair use and why at a minimum the jury should get the last say.

As the Berry Dec. evidences the pre-wipe image of the Fleming server No. 135, the computer that housed "D:\Data", does not contain any copies of Mr. Berry's database "FCS Logistics Data.MDB" Berry Dec. ¶ 22 & 44. Gurzi's notes shows that when he searched the server's drive D:\Data, he found a copy. The file that Mr. Gurzi found is 4.6 Gigabytes. Hogan Dec. Exhibit "A." That is a massive file that, based on Mr. Berry's personal knowledge of the Fleming-Logistics freight operations and the network he personally set up, evidences an existing freight logistics operation many times the size of what Fleming has claimed was operating in its freight logistics operation in Kapolei. This massive freight operation would be consistent with the scope of the Fleming-Logistics enterprise that Fleming has claimed is a figment of Mr. Berry's imagination. Berry Dec. ¶¶ 14-16 & 45.

As the Berry Dec. evidences, the file was deleted by Guidance's Gurzi, not preserved. The evidence of the deletion was preserved, however, as the 4.6 gigabyte "unallocated cluster" on the "Before" image. Berry Dec. ¶¶ 16- 22. In

any event, the Court should not entertain the granting of summary judgment based on the fair use defense where evidence exists of spoliation in connection with both a pending Chapter 11 case, a formal SEC investigation not to mention the order of the District Court prohibiting evidence destruction.   Moreover, the inference is that this critical file was only deleted from the server, but, because of its relationship to the ongoing business, it must have been copied to another system.  Mr. Berry remains firm that the inference is that this file is operating in Iowa to this day.

G.    The Record Shows that Guidance Didn't Just Miss A Couple of Files But Copied Hundreds if not Thousands of Berry Works In A Misappropriation of Mr. Berry's Trade Secrets.

As set forth in the Berry Dec., the number of additional Berry works that were copied back to the servers and work stations that under the terms of his EULA were to be protected from disclosure makes the grant of summary judgement on the trade secret misappropriation claim inappropriate.  Berry Dec. at ¶ 46 and Exhibit "X."

Mr. Berry is unable to identify more completely the files that are subject to this claim because he has not been allowed to access the C&S server or see a list of the files on the server.  The Server has been in the possession of the Discovery Master since March but as of this date, the Court's Master has yet to provide any

21

report regarding the software on that system. For that reason, Mr. Berry asks

that the Court, pursuant to Fed. R. Civ. P. 56(f) not rule against Mr. Berry on

summary judgment as to the status of these files related to Mr. Berry's trade

secret misappropriation claims or the presence and use of copies of the Berry

works related to infringement until the Court's own Special Master has issued his

report on the status of the C&S computers and Mr. Berry has had an opportunity

to review the files and respond. Hogan Dec. at ¶ 1 and Berry Dec. ¶ 46.

III.    ARGUMENT.

     A.    Guidance's Pre-Wipe Image Was Done After The Relevant File Was
           Deleted Thus Making Any Fair Use Defense Absurd.

As set forth in the Berry Dec., Guidance scrubbed the relevant 4.6

gigabyte file prior to making its "pre-wipe" image. There is no evidence that this

file survived what Guidance and Gurzi claim to be their acts of fair use, other

than the image of its deletion in the Guidance forensic images. Under these

circumstances, Guidance and Gurzi cannot claim that the first pre-wipe image

was done under a fair use defense for purposes of pending litigation. In

actuality, in the contexts of a Chapter 11 case, a formal SEC investigation and a

non-destruction order of the District Court, the Guidance and Gurzi conduct is

clearly evidence of serious misconduct and more than enough proof for the Court

to find the existence of both a common law conspiracy and RICO predicates.

The application of a fair use defense to this set of facts would torture existing law

to a level never imagined by any court addressing this defense.

Guidance relies primarily on *Religious Technology Center v. Wollersheim,*

971 F.2d 364, 367 (9th Cir. 1992) for the proposition that no claim of

infringement can attach to its conduct.  The court in *Religious Technology,* in

permitting the fair use defense in regard to the transfer of protected materials to a

trial expert made clear that the facts that surround Guidance and Gurzi's conduct

would not provide any fair use defense as follows:

> . . .the only specific factual allegation implicating the .
> . Greene defendants is . . . one of Wollersheim's
> attorneys, copied and transferred the stolen documents
> to Singer and Ofshe, Wollersheim's expert witnesses.
>
> Defendants' answer admitted Schlosser and O'Reilly
> provided the documents to the expert witnesses for the
> purpose of preparing their testimony in the state tort
> litigation. RTC <u>does not contend the Greene defendants</u>
> <u>used the documents for any other purpose</u>.  Moreover,
> RTC has not contested Leta Schlosser's assertion that
> the documents <u>were sealed, marked "Confidential"</u> and
> never offered into evidence.

*Religious Technology Center v. Wollersheim,* 971 F.2d 364, 367 (9th Cir. 1992)

(emphasis added).

In *Religious Technology,* the materials were only used by an expert and not

23

delivered to a third-party purchaser intent on infringement as in this case. The

cited case makes clear that, in light of Mr. Berry's allegations supported by

admissible proof, and taking all inferences in his favor, at a minimum, the issue

of fair use must be decided by the jury as a contested issue of fact.    In addition,

as to Mr. Berry's hundreds if not thousands of other works, no attempt was made

to protect them by Guidance and Gurzi from disclosure and transfer to C&S in

the Fleming sale. The best Guidance can say is it turned a "blind eye" to

Dillon's infringement. Guidance in its response to an interrogatory appears to

concede it was never tasked with identifying Mr. Berry's works.    The evidence

shows that Gurzi pretended to scrub Dillon's computer that continued to run with

nearly all the Berry Technology after Guidance as it did before Guidance.    The

*Religious Technology* case is simply not applicable to the Guidance and Gurzi's

conduct.    Moreover, if Guidance and Gurzi actually only permitted the copying

of off-the-shelf software and the user files that were listed in Exhibit "D" to the

Guidance Report as Gurzi and Guidance claimed, where did all the other files

come from? In addition, *Religious Technology* requires that the copies made in

actual litigation not in a secret case to be filed. The wiping was done in the face

of an order of the District court against destruction and the Sarbanes-Oxley Act

during a formal SEC investigation.    These facts that Guidance has failed to

24

address in its Motion make clear that none of the cases for a fair use defense apply to Guidance and Gurzi's conduct in this case in which Mr. Gurzi admits he falsely represented facts under oath. For the Court to allow Guidance and Gurzi to avoid any responsibility for their acts and for having made statements to the Bankruptcy Court that were patently false would be unjust. There is simply no question that Guidance made copies. There is no question that those copies facilitated infringement. Guidance's principal admits that it thinks found a way to legally distribute the Berry works to C&S. There is no question that Guidance continues to possess copies and there is no question that Guidance did not have Mr. Berry's permission nor the permission of any Court, two of which had jurisdiction over the materials, to justify making those copies. Guidance cannot now retroactively apply court permission to its acts simply because its principal also used a report in litigation. In addition, the inconsistencies in Guidance's own statement that conflict directly with Mr. Dillon as well as internally within its own report filed under oath make summary judgment absolutely inappropriate under the circumstances. Guidance committed infringement, did it to assist a known willful infringer, violated the Sarbanes-Oxley Act and now wishes to be able to get out of this case claiming that it has been brought before this Court on a frivolous claim.

25

Much has happened since the preliminary injunction hearing. Guidance now claims that Dillon copied the files back but this conflicts with Gurzi's own report attached to his sworn statement that he copied them. It now appears admitted that there were files copied back on to computers other than the server. Now Guidance and Mr. Gurzi claim that Mr. Dillon copied them. In Delaware in 2003, Guidance's Mr. Gurzi swore he copied them. Hogan Dec. Exhibit "G." at pg. 9 of 13. The number of issues of fact are beyond imagining. Finally, the evidence of the Guidance and Gurzi role in the spoliation of the critical file in the this case should be grounds alone to deny the motion. *See* Berry Dec. ¶¶ 11-22. The wiping and apparent destruction of the actual operating database by Guidance has yet to be rebutted. Under the circumstances the Court must deny the motion.

B.  Guidance Misses the Point as to the Post-Wipe Forensic Image, the Infringement Occurred when Guidance working with an adjudicated <u>Willful Infringer Copied the Berry Works Back to be Sold To C&S.</u>

Guidance and Gurzi's reliance on the effect of the post-wipe image misses the point. The copying back to the drives of the numerous copies of Berry's works makes the focus on the post-wipe image irrelevant. It is the copying of files that were later transferred to C&S that makes this conduct direct infringement. Gurzi reported to the Delaware Court that he "witnessed the installation of new software." Hogan Dec. Exhibit "G" at pg. 13 of 13. The

26

recopying of the Berry works is admitted by Gurzi and is just another act in a series of infringing acts. These files along with the Spread Sheet Derivative evidence that the Guidance copying was done with the effect of facilitating the transfer of this derivative to C&S.   In light of the clear act of spoliation, neither Guidance nor Gurzi should be give any benefit of a fair use defense. The sworn testimony in the Gurzi Affidavit makes clear that Mr. Gurzi copied the files back or at a minimum, participated in this infringement with Mr. Dillon.   If Gurzi didn't actually perform the re-installation of the Berry Technology, Guidance and Gurzi must concede that they gave Dillon access to the images and Encase, to copy what he chose back relying on a list he allegedly gave them. This "list" like the copy of the Berry Database, has apparently not been preserved.   Now Guidance wants the Court to accept that, despite having no apparent knowledge of how to operate Encase, Dillon single handed copied the thousands of files back on to the Fleming computers while Gurzi, the computer forensic expert and former law enforcement officer sat unwittingly by.  This directly contradicts what Guidance and Gurzi swore happened when presenting this fact to the Bankruptcy Court.

C.    Mr. Berry Made No Sherman Act Claim as To Guidance or Gurzi.

The Second Amended Verified Complaint speaks for itself.

D.    The False Affidavit and the Deletion of the Operative Database Are
      RICO Predicates and Violations of Sarbanes-Oxley.

The evidence of the deletion of the actual Berry database that was not

preserved in the forensic images and the admitted false affidavit filed in Delaware

are both evidence of violations of 18 U.S.C. § 152 as follows:

A person who—

(2) knowingly and fraudulently makes a false oath or account in or in
relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate,
verification, or statement under penalty of perjury as permitted under
section 1746 of title 28, in or in relation to any case under title 11;

(8) after the filing of a case under title 11 or in contemplation
thereof, knowingly and fraudulently conceals, destroys, mutilates,
falsifies, or makes a false entry in any recorded information
(including books, documents, records, and papers) relating to the
property or financial affairs of a debtor; . . .

                          . . .

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152 (Concealment of assets; false oaths and claims; bribery)

(emphasis added).

As set forth in the RICO Act, destroying Fleming's records during the

pendency of a Bankruptcy and filing a false affidavit in violation of this section of

the U.S. Criminal code are also a predicate acts in violation of RICO. *See* 18

28

U.S.C. § 1961(1)(D) defining as "racketeering activity" any offense involving

fraud connected with a case under Title 11 (except a case under section 157 of

title 18).

Similarly, the deletion of the relevant database file and the false affidavit

filed in Delaware, done in connection with either a formal SEC investigation or a

Chapter 11 Bankruptcy proceeding are violations of Section 802 of the Sarbanes-

Oxley Act as follows:

> Whoever knowingly alters, destroys, mutilates,
> conceals, covers up, falsifies, or makes a false entry in
> any record, document, or tangible object with the intent
> to impede, obstruct, or influence the investigation or
> proper administration of any matter within the
> jurisdiction of any department or agency of the United
> States or any case filed under title 11, or in relation to
> or contemplation of any such matter or case, shall be
> fined under this title, imprisoned not more than 20
> years, or both.

18 U.S.C. § 1519. (Destruction, alteration, or falsification of records in Federal

investigations and bankruptcy).

The Guidance internal document shows that Guidance and Gurzi knew the

name and identifying characteristics of the relevant file. Hogan Dec., Exhibit

"A." They also reasonably knew that by deleting it, they were destroying

evidence related to the financial affairs of the debtor because they had just done a

contract with the debtor to perform the act. They admit they had a known duty to preserve evidence. Mr. Berry offers that, based on this record, the Court may rightfully enter summary judgment on the issue of the violation of 18 U.S.C. § 152(8).

Because Mr. Berry can rely on the convictions of Lokilani and Marlene Lindsey, former API shareholders, as bankruptcy fraud related predicates committed by members of the Fleming-Logistics Enterprise in 1994, the expansive continuity of this enterprise is well beyond anything required under existing 9th Cir. authority.

E.    The Doctrine of Fair Use Cannot Be Extended to Excuse Guidance
      In This Case.

The United States Supreme Court, in addressing the statutory basis for the defense of fair use, wrote that Justice Story's description of the common law doctrine exists and is discernable in the Copyright Act 17 U.S.C. § 107 as follows:

> [L]ook to the nature and objects of the selections made, the quantity and value of the materials used, and the degree in which the use may prejudice the sale, or diminish the profits, or supersede the objects, of the original work.

*Campbell v. Acuff-Rose Music*, 510 U.S. 569, 576 (U.S., 1994).

30

The principal of fair use as set forth in the Copyright Act, § 107 is primarily intended to protect expression. The defense has been expanded to permit use in litigation. There is no policy that would be advanced by the conduct of a disk wipe done by Gurzi that deleted critical evidence or to allow Guidance and Gurzi to escape liability for direct and contributory infringement.

Had Guidance and Gurzi refused to copy, or sit by and act as facilitator while Gurzi and Dillon copied the Berry works back onto the server, then the only way C&S could have obtained copies of Mr. Berry's works would be from Mr. Berry. Guidance made this lawful means of acquiring intellectual property unnecessary for C&S that was able to buy computers loaded with misappropriated Berry Technology. Neither Guidance nor Gurzi claim this did not happen. Their defense is that, despite being hired to ensure that the Berry software was gone, they stood by and assisted Dillon copying it back on. They then filed an affidavit in the Delaware Court swearing the Gurzi completely removed it. They claim to have no knowledge of the claim of infringement until June 2004. Hogan Dec. Exhibit "B" at ¶ 17. This again, sworn statement is rebutted by Guidance's own records that included a copy of Mr. Berry's infringement warning sent to Guidance and Gurzi on July 24, 2003, before the Guidance Report was filed in the Bankruptcy Court. *See* Hogan Dec. Exhibit "Q" that is a copy of Guidance's

document No. GSI0237 evidencing that this sworn statement, like so many others, is false.

Guidance and Gurzi both concede that Fleming and one presumes Guidance and Gurzi all had an "uncompromising duty to preserve" relevant evidence for pending or probable litigation citing *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998). Mr. Berry cannot find that cited language in the opinion but the holding of that case is relevant to the instant case.

> We believe that plaintiff has produced enough circumstantial evidence to support the inference that the destroyed . . . files may have contained documents supporting (or potentially proving) his claim, and that the possibility that a jury would choose to draw such an inference, combined with plaintiff's circumstantial evidence, is enough to entitle plaintiff to a jury trial . . .

*Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir., 1998).

The direct and circumstantial evidence in this case shows that Guidance and Gurzi all breached the duty to preserve relevant evidence and the committed acts of spoliation makes the grant of summary judgment in their favor on this record totally inappropriate.

In its section dealing with the pre-wipe image, defendants Gurzi and Guidance site the 9th Circuit holding in *Jartech v. Clancy*, 666 F.2d 403 (9th Cir. 1982) as support for its defense of fair use. In *Jartech*, the court looked at

whether "the alleged infringers copy the material to use it for the same purpose that the copyright holder intended his audience to use or enjoy the work." *Jartech*, 666 F.2d at 406. In the present case, the "before-wipe" copy, in absence of the evidence of spoliation, violation of court orders and the Sarbanes-Oxley Act could be considered fair use because it would only be used in litigation and that is not the use Mr. Berry intends. In contrast, the copying back onto the Fleming-Logistics server that is evidenced by the "after-wipe" image, is clearly the kind of distribution of a protected work, or "intrinsic use," that *Jartech* holds makes the fair use defense unquestionably inapplicable. By supplying Mr. Berry's potential customer with a free, albeit, unlicensed suite of Berry Technology, Guidance effectively copied for the same purpose that Berry would, for the purpose of supplying users with Freight Control software.

Likewise, in *Bond v. Blum*, 317 F.3d 385, 393 (4th Cir. 2003), the Court of Appeals based its fair use holding on the fact that "[t]he undisputed facts show that the defendants introduced a copy of Bond's copyrighted manuscript into evidence in a state child custody proceeding to prove that Bond's household would not be a suitable place for the children of Bond's wife." *Blum*, 317 F.3d at 393. Had Guidance not violated a court order, destroyed evidence during a formal SEC investigation and copied the Berry works to be delivered to C&S or

33

had it not deleted the relevant file, a fair use defense may be appropriate.

Guidance and Gurzi cite a Baylor Law Review article for the proposition that their conduct was fair use. On the contrary, the author of this article would find infringement because the copies that Gurzi and Guidance claim were made in connection with the existing Hawaii litigation were, instead, used in regard to prosecution of the Delaware Adversary Proceeding rather than the stayed Hawaii litigation:

> The most common form of copying performed by attorneys in litigation is the copying of documents <u>to be used in a specific lawsuit.</u> This copying activity rarely creates a risk of copyright infringement if the copied documents are authored by a party to the lawsuit and are <u>only used in the context of the lawsuit,</u> because the copyright owner usually expressly or impliedly permits the documents to be copied for this purpose.

46 Baylor L. Rev. 1, 41-42 (1994) (emphasis added).

In the first case, Mr. Berry had impliedly consented to copying for the purpose of the first case, that was stayed by the Bankruptcy filing and his rights protected by the District Court's non-destruction order.   Kroll and Assoc. made images in that case that caused no infringement concerns at the time because they were done pursuant to court order and with notice to Mr. Berry.  There is no dispute that the Guidance Images (and Berry Technology copies) were created to

34

make a report to be used days after the copying in the to-be-filed Delaware Adversary Proceeding. This law review article, cited by Guidance and Gurzi, concludes that the instant conduct is infringement and outside the permissible limits of the fair use defense because the copies were used in a different case and Mr. Berry agrees.

Mr. Berry has set forth evidence and taking all of the inferences in Mr. Berry's favor, Guidance and Gurzi cannot be said to fall within the class of persons entitled to raise this defense under these facts.  Mr. Berry does not dispute that in certain circumstances the use of copyrighted materials in regard to litigation can give rise to a fair use defense.  The facts and inferences in this record strongly point to Guidance and Gurzi having been involved in a concerted action or, at a minimum, to facilitate the transfer, unlawfully, of protected works to C&S.  If the Court grants Mr. Berry all reasonable inferences, he has met his burden to defeat summary judgment.  If the Court does not grant Mr. Berry's Cross-Motion, Guidance and Mr. Gurzi will have their chance to prove their fair use defense to the allegations in the Second Amended Verified Complaint.  Mr. Berry respectfully represents that their time and place for explaining this conflicting factual record is at trial under the watchful eye of the trier of fact.

IV.    <u>CONCLUSION</u>.

Fleming claims that it has found a way to "legally" transfer the Berry

Technology to C&S.  The Court must find that the use of a forensic examiner to

facilitate an unlawful transfer of protected works is not a lawful means to

accomplish an unlawful end.   The Court should grant Mr. Berry's Motion, deny

the instant Motion and grant Mr. Berry the relief that he seeks in these

proceedings.

DATED:   Honolulu, Hawaii, _____ June 1, 2005 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
Wayne Berry