LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>          Plaintiff,<br><br>   vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al.<br><br><br><br>         Defendants.<br><br>_____ | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANT FLEMING PCT'S COUNTER-MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT AND REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS; CERTIFICATION PURSUANT TO L.R. 75(e); CERTIFICATE OF SERVICE<br>Hearing:<br>DATE:   June 20, 2005<br>TIME:   9:45 A.M.<br>JUDGE:   Hon. Susan Oki Mollway |

Exhibit 38

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    In Fleming-PCT's ("Fleming") introduction Fleming admits that it "used an
        immaterially *__modified version__* of Berry 1993.FCS." . . . . . . . . . . . . 1

    There is no inadvertent theft of trade secrets defense . . . . . . . . . . . . . . . 3

II. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   The EULA Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Fleming Admits Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   The Guidance Matter is Grounds to Enter Judgment Against Fleming.
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.   Affirmative Defense Cannnot Be Raised for the First Time in a
       Counter-Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Connection to a Mainframe is Not De Minimis . . . . . . . . . . . . . . . 8

    C.   Fleming and Waived the Fair Use Defense. . . . . . . . . . . . . . . . . . 9

    D.   Professor Johnson Used Direct Evidence of Infringement . . . . . . . 9

    E.   The Merger Defense Was Waived . . . . . . . . . . . . . . . . . . . . . . . . 10

    F.   Walker Used the Wrong Software . . . . . . . . . . . . . . . . . . . . . . . . 12

G.    The Rest of The Motion Does Not Defeat Summary Judgment.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. MicroSoft*, 35 F.3d 1425 (9th Cir. 1994) . . . . . . . 9, 10, 12

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (Cal. Ct. App., 1968) . . . . . . . . . 19

*Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068 (9th Cir., 2000) . . . . . . . . . . . . . . . . 10

*MAI Sys. Corp. V. Peak Computer*, 991 F.2d 511 (9th Cir. 1993) . . . . . . . . . . . 19

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (Cal. Ct. App., 1968) . . . . . 19

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971) . 11

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir., 2000) . . . . . . . . . . . 10

## STATUTES

17 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## RULES

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

## REGULATIONS

CFR Part 202-registration of Claims to Copyright, Sec. 202.20 ©) (vii) . . . . . . 15

## OTHER AUTHORITIES

Raymond T. Nimmer, *The Law of Computer Technology: Rights, Licenses, Liabilities*, § 1.104(3d Ed. 1997 and Supp. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 7

## I. INTRODUCTION.

In Fleming-PCT's ("Fleming") introduction Fleming admits that it "used an immaterially ***modified version*** of Berry 1993.FCS." It is an admission that they did not have licensed copy of software. As a matter of law, Mr. Berry is entitled to judgment on the April 1, 2003 to June 9, 2003 infringement claim. Walker admits at ¶ 40 of his report that Mr. Berry is correct that 7 fields existed in Original Logistics Data.mdb that were not present in his licensed work. "I confirmed that these fields were not present in either the licensed software or in the copyright filing." *See* Walker Report filed in support of the Counter Motion at ¶ 40.

As to the June 9, 2003 to August 23, 2003 period, based on the clear and unmistakable fact that Mr. Walker's report is based on irrelevant and likely retained infringing copies of Mr. Berry's work, the Walker report irrelevant and must be disregarded. As set forth in the Declarations of Wayne Berry ("Berry Dec.") and Declaration of Professor Phillip Johnson ("Johnson Dec.") attached to the Declaration of Timothy J. Hogan ("Hogan Dec.") as Exhibit "K" and "L" respectively, Walker did his alleged extraction filtration analysis with somebody's software but there is clear evidence that it is not Mr. Berry's true original work FCS Logistics Data.MDB.

As to Professor Johnson's review of relevant software, the relevant software was entitled "OriginalLogisticsData.mdb." Professor Johnson analyzed "direct" evidence of infringement in the Dillon queries related to OriginalLogisticsData.MDB. Walker performed no examination of this software at all. It is undisputed that this was the software that Mr. Dillon employed to create his Excel spreadsheet derivative system (the "Spreadsheet Derivative"). Professor Johnson did all that any legitimate expert would do is to use the admissible and valid direct evidence before him. Unlike Walker, who used the wrong version of the Berry software and ignored the direct evidence.

Regarding the "inadvertent July 7 reinstallation of certain electronic litigations files," Fleming raises an affirmative defense of "fair use doctrine" that was not raised in the answer. Hogan Dec. Exhibit "B".

In order for the Court to rule in favor of Fleming the Court must disregard the a final judgment that, although on appeal, is still final for purposes of collateral estoppel. As a matter of law, the EULA controls. Fleming litigated this issue at trial, filed pre and post trial and lost on this issue. Hogan Dec. Exhibits "F" to "H". Fleming's attempt to now extract a portion of the license cannot succeed lest this Court reverse a final judgment that has not been set aside. Hogan Dec. ¶ 11. The entire Walker report is based on this false assumption and is therefore

2

addendum, is the controlling license.  Under the doctrine of collateral estoppel, the Court must enforce the earlier final judgment.  *See* Hogan Dec.at Exhibits "F" to "H"; Berry Dec. Exhibit "20."

For the Walker report to have any basis in law or fact he must rely on the red herring of the "copyrightability" of the portions of the Berry work taken by Dillon and incorporated in his Spreadsheet Derivative.  Mr. Berry won on three issues of ownership of valid copyrights and one of the three claims of infringement.  The issue of "copyrightability" of Mr. Berry's works was necessary to the judgment and actually litigated.  It too is collateral estoppel in this proceeding. All of the assumptions of the Walker Report are invalid. In light of fact that he examined the wrong software, also entirely irrelevant.

B.    Fleming Admits Infringement.

Fleming concedes that it did not resort to the original version of FCS.  It is claiming a *de minimis* exception to Mr. Berry's license.  That is not the law.  Use beyond the scope of the license is infringement. The EULA prohibited all modification and reverse engineering.  *See* Berry Dec. Exhibit 20.  There is no issue of fact that Fleming did both.  The Court's earlier ruling held that if the employees were using a modified version of software, they would be infringers. There is no issue of fact  and the Court should enter summary judgment as to the

4

these claims.

In regard to the claim that these are *de minimis* changes that exist in both the pre-and post June 9, programs, one change that is cited by Walker in his report deserves special note. It is the "field scratch name" that Walker claims was an experimental field to connect it to the mainframe. He cites it in Exhibit "G" to his report. Mr. Berry has endured years claims of his fantasizing a connection to the Fleming mainframe. He was unable to prove this until Walker proved it for him. His claim that this was "experimental" is not supported by any evidence and is clearly not sufficient to defeat the clear inference that there was such a connection and each time any used it for work or experiment, infringing copies of the freight control system would be created contrary to the EULA and contrary to the Copyright Act. Connecting the Berry work to the rest of a $18 Billion-a-year company is hardly a de minimis change. The EULA limited uses only in Hawaii with 10 users. *See* Berry Dec. Exhibit "20" at pg. 1of 2 and 2 of 2 ¶1.b &c.

C.    The Guidance Matter is Grounds to Enter Judgment Against Fleming.

On p. 6 of the Memorandum in Support, Fleming makes the false statement that "after the initial wipe, and unknown to Gurzi and Dillon, Dillon unintentionally also had restored certain "user files" containing iterations of Berry's software that had been stored to preserve evidence in connection with

Berry's prepetition litigation proceedings." Mr. Berry's earlier declaration at ¶¶ 12 to 42 show what actually happened the night the files that were copied back. The files containing Mr. Berry's software were not in the "user files". *See* Hogan Dec. Exhibit "I" at ¶¶ 12 to 42.

        D.    Affirmative Defense Cannnot Be Raised for the First Time in a Counter-Motion.

As to the apparent claim that Mr. Berry has abandoned his copyright, the fact that Mr. Berry has continued to develop new and improved versions of his software does not remove any of his copyright protections that are good in this country for seventy years after he dies. Also, abandonment, like fair use and merger, is an affirmative defense not pled and must be disregarded. Hogan Dec. Exhibit "B."

III. ARGUMENT.

        A.    Fleming admits Infringement as to April 1, to June 9..

Contrary to its statements beginning in p. 11 of its Opposition and Cross-Motion memorandum, Fleming's Mr. Walker confirms they weren't using the original licensed software. The EULA prohibited any modifications. Only if the Court reverses Judge King's final judgement and rulings and ignores 9th Circuit law, can Fleming now claim that a tortured reading of part of the license

permitted them to make the changes they are making.  Any reading of what Fleming purports as the license also  makes it clear that the changes applied only to Crystal Reports, not the database.  There is not need to plow this ground again. The Court must enforce the findings of the jury and Judge King in the earlier case that found that the EULA, including its two addendum, the relevant license .  Mr. Berry's license prohibited any modification.  Fleming's own cited authority of Raymond T. Nimmer, *The Law of Computer Technology: Rights, Licenses, Liabilities*, § 1.104(3d Ed. 1997 and Supp. 2004) proves that where the contract specifically precludes modification, the making what are termed in the citation of "inconsequential modifications such as underlining, highlighting, cropping pages or the like" are in fact infringement.  There is simply no issue of fact that this Court needs to determine regarding whether Fleming and all of its employees were using illegal software from the period after the bankruptcy until June 9th, 2003.

As to Mr. Walker's statements that "the two databases are practically identical from both numerical perspective and from functional perspective" *see* Walker Dec. at ¶ 42, this is in fact not so.  First, as is set forth in the Declaration of Wayne Berry at ¶¶ 1-14 and Declaration of Professor Philip Johnson at ¶¶ 5, whatever software that Walker was accessing to make these determinations wasn't the software that Mr. Berry had licensed to Fleming nor was it the software

7

produced in discovery pursuant to the Court's order.  It was more than likely

another Dillon derivative.

In addition, Mr. Walker's analysis omitted two record pointers that

Professor Johnson identifies as part of Mr. Berry's database.  Johnson Dec. ¶¶ 11

& 12.  As  set forth in the Declaration of Wayne Berry, the number of tables and

fields identified on page 17 of Mr. Walker's Report don't match and the number of

tables in FCS Logistics Data.MDB. Berry Dec. ¶ 2(a) &(b) .  *See* Johnson Dec. at

¶ 5.

B.    Connection to a Mainframe is Not De Minimis.

Even if the Court were to permit the Walker report it admits that one of the

modifications, the field "scratch name"  connected the Berry system to  Fleming's

mainframe, consistent with creating an additional market the thousands of

additional licensed users of Mr. Berry's work.  Berry's work allowed only 10.

Berry Dec. Exhibit "20"  Attaching Mr. Berry's work to a massive multi-state

mainframe computer is in total violation of his license and his reserved rights as a

copyright owner and is more than a de minimis change.  The Court should enter

summary judgment for Mr. Berry.

Mr. Berry need not prove  they were using a derivative work to prove they

were using an unlicensed work.  First, in this case, they admit to be using a copy

8

of Mr. Berry's work Original Logistics Data.mdb. That is not the "original" work but one that Dillon claims he attempted to create as an original work. Walker confirms the attempt failed. Dillon's own declaration proves this was not the original Berry system. See Johnson Dec. ¶¶ 1-3 and Exhibit "A" The cases cited by Fleming in regard to this all deal with the issue of a derivative work that is relevant to whether or not a person has violated license for creating a derivative or whether one needs to register a derivative. That is simply not the case here. The question is whether it is licensed and clearly it is not.

C.     Fleming and Waived the Fair Use Defense.

At p. 16, Fleming addresses a fair use defense. Fleming and C&S failed to raise this in their Answer filed on July 16, 2004 when Fleming's attorneys filed Fleming's and C&S' Answer to Second Amended Complaint. Hogan Dec. Exhibit "B." The Court should not permit them to now raise it in a counter-motion for summary judgment. Mr. Berry requests the Court take judicial notice that these parties had been previously defaulted twice in this proceeding.

D.     Professor Johnson Used Direct Evidence of Infringement.

In p. 20 of the Memorandum, they chide Professor Johnson for not dissecting the competing databases or comparing element by element as they claim the law requires citing *Apple Computer, Inc. v. MicroSoft*, 35 F.3d 1425,

9

1443 (9th Cir. 1994).  Unlike *Apple*, in this case, there is a license that completely prohibited the reverse engineering and copying that Dillon performed.  Walker admits the pre-June 9 database is not identical.  As to the post-June 9 program, there is also  no question that Mr. Dillon sat at a computer with a copy of Mr. Berry's work and pushed a few buttons and out came his freight control system.  The idea that there is even a need to do an extraction filtration in a case of clear literal copying is not supported by Ninth Circuit law that generally doesn't even permit expert testimony in cases like this where there is "direct" evidence of infringement.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir., 2000) (circumstantial evidence addressed in absence of direct evidence).

     E.    The Merger Defense Was Waived.

     Admitting "access" and "similarity" these defendants now rely entirely on the affirmative defense of "Merger".  They and no other defendant preserved the Merger defense.  Hogan Dec. Exhibits "B" to "E."  The defense is improperly couched in terms of copyrightability contrary to clear 9th Circuit law.  *See Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068, 1082 (9th Cir., 2000) (Merger is defense not issue of copyrightability).  Fleming seeks to wrongly shifting the burden to Mr. Berry.

     The defense of Merger was not raised and is waived.  *See* Nimmer on

Copyrights, § 13.03[B][3] *(citing Herbert Rosenthal Jewelry Corp. v. Kalpakian,*

*446 F.2d 738* (9th Cir. 1971) (the merger doctrine is an affirmative defense to

infringement)).  See Hogan Dec. Exhibits "B"to"E". The Walker report claims that

Mr. Berry had the burden to provide the extraction related to the copyrightability

"thin" vs. "broad" protection related only to this waived defense.  Mr. Berry had

no such burden as a matter of law.

        Further, Walker makes no case that there is only one way to write a freight

control system that is a necessary predicate to a Merger defense.  In addition, as

set forth in the Declarations of Wayne Berry and Professor Phillip Johnson,

Walker did his extraction filtration analysis with somebody's software.  It isn't

clear however that it was Mr. Berry's software or even Mr. Dillon's and in fact is

likely to be another one of Dillon's derivatives illegally created and kept as one of

Mr. Dillon's treasure trove of Berry Technology works.  See Berry Dec. ¶¶ 1- 19,

Exhibits 1-18 and Johnson Dec. ¶¶ 3 -13 and Exhibit "B" to "L".

        As to Professor Johnson's need to review the relevant software, the relevant

software was a work which was entitled "original logistics data.mdb." It is

undisputed that this was the copy that Mr. Dillon employed to create his Excel

Spreadsheet Derivative.  Johnson Dec. ¶ 3. The direct evidence of this was

contained in the queries.  There has never been a production of that copy to date

11

although it is clearly being used in defense by Fleming it has not been disclosed.

Professor Johnson used the Dillon queries because they are direct evidence of

what Dillon did and are therefore best evidence.   Professor Johnson did all that

any legitimate expert would do, to use the admissible best evidence before him.

Unlike Walker who used another cooked up version of the Berry software to create

his report that is based on a clearly inappropriate and improper factual conclusions

and irrelevant circumstantial evidence not based on  Mr. Berry's

FCSlogisticsdata.mdb  program at all.

Finally, *Apple*  makes it clear that you don't have a Merger defense if the

software you copied was covered by a license that prohibited the conduct. *Apple*

at 1439.

> Analysis of Apple's infringement claims must start with
> an agreement signed in 1985 by Apple and Microsoft,
> which resolved a dispute about visual displays . . .

*Apple* at 1440.

In this case the EULA specifically prohibited the creation of any

derivatives. The Merger analysis of *Apple,* even if it wasn't waived, is simply not

relevant in the face of the EULA that prohibited Dillon from using the Berry

software to create a replacement in any form.

F.     Walker Used the Wrong Software.

12

The Walker report is essentially worthless because his report was based on the wrong software. The Dillon queries are, unlike an extraction filtration analysis "direct evidence" of infringement that the Court rarely sees. Moreover, the actual program from which Dillon copied the data and database structures to create the Dillon Spreadsheets was not produced and could not have been analyzed by Walker either, unless he has had access to an undisclosed copy of the Berry work which appears likely. The queries are the best and only direct evidence of what Dillon actually did and the only available evidence of Original Logistics Data.MDB, the actual program from which Mr. Dillon "extracted the data and structures" of Mr. Berry's database program. As the Court may recall, this was the "jury-rigged" copy of the Berry database that Mr. Dillon created that all the defendants claim was the "original" Berry work that he had to admit wasn't as he represented in the Preliminary Injunction Hearing causing him to change his sworn affidavit. It was not FCS 1993 or its operative file FCS logisticsdata.mdb that Walker examined in any event.

Walker must concede that he did not use the file that Dillon created the Spreadsheet Derivative from that is entitled "original logistics data.mdb". Professor Johnson used the only admissible relevant evidence available, the queries, that are direct evidence of what Dillon actually did when he extracted the

13

data and structures.   The Berry Dec.  and Johnson Dec. evidence that Walker used

an invalid alleged copy of the original Berry FCS 1993 software and fabricated

versions of the spreadsheets that cannot be authenticated.  *See*, Berry Dec. ¶¶ 2(a)

and Johnson Dec. ¶ 5 regarding FCS 1993 and why Walker was analyzing the

wrong software.  *See* Hogan Dec. Exhibit "A" and Johnson Dec. ¶¶ 6 - 10 and

Berry Dec. ¶ 2(a)& (b) and Exhibit "1" (regarding FCS 1993) and ¶ 2 c to ¶ 19 and

Exhibits 2 to 18 proving that the copies of the Spreadsheet Derivative that were

disclosed by the PCT are fraudulently modified from the one Dillon turned over in

December 2003, and don't even match Walker's report.

Walker didn't even mention the "queries.mdb" database that runs the Dillon

Derivative as a database. That's why Dillon had to copy the Berry record pointers.

The screen print in Hogan Dec. Exhibit "A" shows this was part of both

productions, the one in December 2003 and the one in April 2005, but the

"professional expert" ignored it.  The Hogan Dec. Exhibit "A", to even an

untrained eye, shows that Fleming & C&S  have shuffled the deck and committed

more obvious spoliation. But, just like in the past, they got caught.   More likely

than not the FCS that Walker claims to have analyzed  this is just another illegal

derivative that has slipped through the cracks of the Fleming-C&S Logistics

operations' Berry Technology inventory.  Berry Dec. ¶¶ 1- 2 and Johnson Dec. ¶¶

14

5.

G.    The Rest of The Motion Does Not Defeat Summary Judgment.

Making much about the fact that after a long day of depositions and putting a 500 plus page document in front of Mr. Berry and Professor Johnson and asking them to see if they can pick out a few words out of it during the time that they had, Fleming now makes much of that  Mr. Berry was unable to identify the protectable elements in his copyright filing because he couldn't identify them in his deposition he's lost them.  Walker has adopted the view that, in order to have copyright protection you must identify every element within your copyright registration in order to keep it protected.   Mr. Walker's belief that a copyright derives from the filed registration is proof that his is not a competent expert in this area. The copyright arises when the expression is first fixed in any tangible form. *See* 17 U.S.C. § 102.  The registration does not create the right, it just memorializes it. Mr. Berry's declaration set forth this proof. Berry Dec. ¶¶ 33 & 34.  In ¶ 33 Mr. Berry cites to page 394 of his deposit that is a brief partial listing called "relationships" that shows some of the relationships that they were seeking in their needle in the haystack inquiry. *See* Deposit, Fleming Concise Statement Exhibit "M" at very last page, pg. 394.  You only have to file the first and last 25 pages of a software deposit the rest can be kept out. *See* CFR Part 202-Registration of

Claims to Copyright, Sec. 202.20 [c] (vii). Obviously, Walker has never filed a software copyright registration.

One of the most bizarre parts of the Fleming submission is on the top of p. 26 where Fleming states ". . . in many cases Dillon went to great **artificial** lengths to get away from Berry's terminology, such as changing the element for information about the company at issue in a certain transaction from 'company id' to 'contact id'. Citing the Walker Report at internal exhibits "I" and "L". Mr. Walker, believes that, if you change the name of a file or an element in a piece of software, you now own the copyright to it. This bizarre but clearly close look at the level of expertise of Fleming's "expert" who used fake evidence supported with false statements clearly show that he is simply not competent to give testimony before this Court.

On p. 26 of the Fleming submissions, they again make the fair use arguments. This would have been an interesting defense had they preserved it but clearly they did not. Hogan Dec. Exhibit "B."

On p. 27, Fleming again states the fiction that is rebutted by Mr. Gurzi's own declaration and supported by the Declaration of Wayne Berry that the FCS files that were left on the system were the ones that were reinstalled with the "user files." Hogan Dec. Exhibit "I" at ¶¶ 12 to 42.

16

As to the claim that earlier interlocutory factual findings should be binding, this is not the law. It is clear now that Dillon misrepresented where he claimed that the files were hidden. Mr. Dillon appeared to be telling the truth but in fact it is obvious now that he isn't and wasn't.

Regarding contributory and vicarious infringement, the employees were not using licensed software and therefore Fleming is a vicarious and contributory infringer. The idea that Fleming was the only one who infringed is simply nonsense. Fleming's employees infringed, C&S infringed and if the jury finds that Guidance committed the acts that Berry has alleged, Guidance infringed. All those are attributable to all the direct infringers as well as to additional indirect infringers like Fleming and others.

As to the conspiracy count, Fleming makes the absurd statement only Fleming committed the infringements. As the only "dead" litigant before the Court, its not surprising that Fleming is willing to take a bullet in these proceedings. Fleming's own attorneys who are co-counsel with C&S' attorneys have admitted they found a legal way to transfer Mr. Berry's technology to C&S. The only thing they haven't said to any Court is precisely how they did it. Therefore, it is clear that there has been conspiratorial conduct between C&S and Fleming in order for C&S to obtain Mr. Berry's works. The indemnity agreement

17

creates a clear inference that they in fact were contracting to deliver Berry technology to C&S.

As to the trade secret misappropriation claim, Fleming ignores Mr. Berry's proof choosing to claim that Berry has somehow prohibited Fleming from producing documents entirely within its control. This is nonsense. Hogan Dec. ¶ ¶ 1 & 2. Mr. Berry has given a list to the Master as well as to the parties that details the total number of files that evidence his works, things he created, things he owns and things he never intended or gave permission to be transferred to C&S. Because C&S and Fleming through their attorneys have consistently destroyed evidence since July of 2003, Mr. Berry has been working to insure that no additional acts of spoliation occur.

Mr. Berry is his motion for summary judgment has set forth in detail specific examples and categories of trade secrets. There are so many that would not be possible to put every single element in a pleading. Mr. Berry has made his showing in the Motion which is incorporated by this reference. Mr. Berry's attorney hereby incorporates his Fed. R. Civ. P. 56(f) request to continue this should this Court find that it has been sufficient because the documents that are being withheld are completely within the control of Fleming. *See* Hogan Dec. at ¶¶ 1 and 2. The Master has just recently ordered them produced. It is very clear

18

in the Fleming filing that the last thing in the world they actually want is Mr. Berry

or his counsel seeing how many of the works are there.

As to the claim that by filing a copyright registration you waive your rights

to trade secrets, this is nonsense. As stated above, the Copyright Registration's

Office permits a party to not file all their trade secrets in regard to a software

copyright.

Fleming makes the absurd claim that *MAI Sys. Corp. V. Peak Computer*,

991 F.2d 511, 522 (9th Cir. 1993) creates a particularity pleading requirement is

essentially a miss cite and counsel should be admonished. The case relied upon in

*MaiSys*. specifically held that no such requirement exists. See *Diodes, Inc. v.*

*Franzen*, 260 Cal. App. 2d 244, 252 (Cal. Ct. App., 1968).

Mr. Berry has described his trade secrets in detail and has done it

appropriately in light of the spoliation in this case that is epic. The huge number

of misappropriated works makes this task daunting. He has more than adequately

identified his protected works but Fleming chose to ignore the Motion and failed

to address the seven examples from the mountains of stolen works. Should the

Court be inclined to accept any part of Fleming's position on this issue, under

56(f) Mr. Mr. Berry requests the opportunity to continue to identify these works

prior to having them transferred to C&S forever by the grant of summary

19

judgement.  Perhaps that is the secret way they intend to "legally" obtain illegal software.

Finally, Fleming makes the argument that Mr. Berry should be punished for his conduct in regard to discovery.  In light of spoliation and bold statements that you can format a hard disk when a federal judge wants to see it someone should have judgment entered against them for their conduct in this case but that someone is not Wayne Berry.

DATED:  Honolulu, Hawaii, ___June 19, 2005___.

_____
TIMOTHY J. HOGAN