LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; ) | Civ. No. CV03 00385 SOM-LEK |
| ) | (Copyright) |
| Plaintiff, ) | |
| ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. ) | **RICO STATEMENT;** |
| ) | **CERTIFICATE OF SERVICE** |
| HAWAIIAN EXPRESS SERVICE, ) | |
| INC., a California corporation; H.E.S. ) | |
| TRANSPORTATION SERVICES, ) | |
| INC., a California corporation; ) | |
| CALIFORNIA PACIFIC ) | |
| CONSOLIDATORS, INC., a ) | |
| California corporation; JEFFREY P. ) | |
| GRAHAM and PETER SCHAUL, ) | |
| California citizens; MARK DILLON ) | |
| and TERESA NOA, BRIAN ) | |
| CHRISTENSEN, Hawaii citizens; ) | |
| FLEMING COMPANIES, INC., an ) | |
| Oklahoma corporation; C & S ) | |
| LOGISTICS OF HAWAII, LLC, a ) | |
| Delaware LLC; C & S WHOLESALE ) | |
| GROCERS, INC., a Vermont ) | |
| corporation; ) | |

Exhibit 41

JUN 2 1 2004

C & S ACQUISITIONS, LLC;                    )
FOODLAND SUPER MARKET,              )
LIMITED, a Hawaii corporation;           )
HAWAII TRANSFER COMPANY,          )
LIMITED, a Hawaii Corporation,          )
RICHARD COHEN, a New Hampshire)
citizen ES3, LLC, a Delaware Limited  )
Liability Company, MELVIN PONCE, )
SONIA PURDY, JUSTIN                        )
FUKUMOTO, AFREDDA                        )
WAIOLAMA, JACQUELINE RIO,           )
Hawaii citizens; JESSIE GONZALES, )
LUIZ RODRIGUES, AL PEREZ and       )
PATRICK HIRAYAMA , California         )
citizens; GUIDANCE SOFTWARE,        )
LLC, a California, LLC; MICHAEL         )
GURZI, a California citizen; ALEX         )
PARTNERS, LLC, a Delaware LLC  ;  )
DOE INDIVIDUALS 2-350; DOE            )
PARTNERSHIPS, CORPORATIONS      )
and OTHER DOE ENTITIES 2-20,          )
                                                                )
                                                                )
                    Defendants.                        )
_____ )


## PLAINTIFF WAYNE BERRY'S RICO STATEMENT

**1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

The alleged conduct violates 18 U.S.C. § 1962 (c) & (d).

**2.    List the defendants and state the alleged misconduct and basis of liability of each defendant.**

All named defendants except for Fleming, that is bankrupt, are defendants under the RICO 18 U.S.C. § 1962(d) Conspiracy Claim. Fleming is named as co-conspirator RICO Person. The detailed facts describing the conspiracy are set forth in the Second Amended Verified Complaint that are incorporated by this reference.

An unincorporated entity commonly referred to as Fleming-Logistics nka C&S Logistics, is alleged to be a 18 U.S.C. § 1962 (c) enterprise that is employed to facilitate the commission of certain predicate acts, including, but not limited to, the ongoing infringement of Plaintiff's original work. This Enterprise possesses and launders the funds received from the use of Mr. Berry's intellectual property and is conducts the affairs of the enterprise by engaging in interstate commerce in Hawaii at the Fleming Kapolei facility and the neighbor islands, at the Hawaiian Express Service, Inc. ("HEX") consolidation points in Hayward and Lamirada California and in Wapello Iowa at the home of Teresa Noa, dba Earth-Logistics.

At each of these locations computers loaded with copies of Mr. Berry's software are creating illegal copies on a daily basis from January 2000 to the present as to the Fleming Kapolei and HEX consolidation points, and since August 2003 in Wapello Iowa. When the Fleming-Logistics business became subject of this law suit, the Enterprise transfered a copy of the software to Wapello, Iowa to

3

assist C&S that had agreed to the commission of at least two boot ups of Mr.
Berry's software, to continue to operate its business by conspiring with the
members of the Fleming-Logistics racketeering enterprise (the "Fleming-Logistics
Enterprise.")

In further response, The daily use of Mr. Berry's software from and after
January 2000 constitutes daily repeated acts of racketeering committed by the
members of this Fleming-Logistics Enterprise. Some of the RICO Defendants
were not members of the Fleming-Logistics Enterprise at its inception but have
joined thus insuring the ongoing continuity of the enterprise. Some are not fully
aware of the scope of the Enterprises predicate acts but all have agreed to the
commission of at least two predicate acts.

Defendant C&S Wholesale Grocers, Inc. C&S Acquisitions, LLC, C&S
Logistics of Hawaii, LLC, Richard Cohen and ES3, LLC (hereinafter the C&S
Defendants") sought to join the previously constituted Fleming centered enterprise
by the purchase of certain assets in the Fleming Bankruptcy that were used as a
subterfuge to disguise the true intent of the purchase, to obtain control of the Berry
software, to operate it in violation of the Federal criminal statutes and then to
extract large sums of money from overcharges and diversions in violation of the
ant-racketeering laws of the United States. These funds are then laundered as

4

profits derived from purported lawful activities but are, in fact, income derived from the commission of Specified Unlawful Acts ("SUA")s in violation of RICO.

To accomplish this, C&S Defendants agreed with Fleming to create a false declaration of Michael Gurzi to be filed in the United States Bankruptcy Court for the District of Delaware attesting that no Fleming employee possessed a copy of the software when Mark Dillon had told Gurzi that he might have one at home. Further, Gurzi knowingly and with intent to assist the Enterprise, copied no less than 16 unlawful copies of the Berry software back onto the Fleming Servers knowing that this act would be an overt act to assist in the infringement of Plaintiff's copyrights.

Each of the defendants know that the object of the conspiracy was conducted in violation of RICO 18 U.S.C. §1962 through repeated violations of 18 U.S.C. Each of the defendants have derived a financial benefit from the Fleming-Logistics Enterprise.

The C&S Defendants and their attorneys knew that Fleming was engaged in copyright infringement but chose to allow the sale to proceed under the agreement that Fleming would deliver the pirated copy of Mr. Berry's original work or an illegal derivative.  This agreement was an agreement to violate RICO and a violation of 18 U.S.C. § 1962(d).

At that time, C&S was aware of the existence of the Enterprise and it agreed that the Enterprise would be conducted through a pattern of racketeering activity. To accomplish the goal and purpose of the Enterprise, at least two predicate acts by the conspiracy were contemplated, specifically the transfer to C&S of at least ten illegal copies of the software and the daily booting up of Mr. Berry's freight system making an illegal copy in violation of the copyright laws of the United States and the creation of the Dillon derivatives. By these acts, C&S and all other non-bankrupt defendants have violated RICO 18 U.S.C. §1962(d).

The agreement is also, in part, evidenced by the asset purchase agreement and other documents related to the C&S purchase, the Gurzi declaration and the agreement with Guidance to assist in the infringement including, but not limited to, certain indemnity agreements that were created to facilitate the conspiracy and the ongoing infringement and the agreements related to the retention, by C&S of Fleming's counsel.

Foodland has utilized Plaintiff's software to facilitate its direct store shipments and stop-in-transit shipments. Foodland has notice of the claim of infringement being committed by its agents, including Fleming, HEX and HTC but continues to derive financial gain from this activity with full knowledge that its agents are engaged in infringement. Foodland agrees to the commission of the

6

daily boot ups of the Berry system and derives a financial benefit from the infringement.

Upon information and belief, HEX, HEST and/or CALPAC have obtained an illegal pirated copy of the Freight Control System and/or have been using a illegal unlicensed derivative of the Freight Control System.

Shane Kelley, HEX, HEST and/or CALPAC's computer consultant admitted in a telephone conversation with Wayne Berry that he had "seen his code." Shane Kelley informed Mr. Berry that he would investigate the infringement and call him back with the results unless his investigation showed serious infringement. Mr. Kelley never called back. On or about June 2003 Shane Kelley through his company and others Cygus Services, Inc. created another illegal derivative of Mr. Berry's system and transported over the internet to Mark Dillon and Teresa Noa.

HEST, HEX and CALPAC have had access to Mr. Berry's original work and have used an illegal derivative that is used to generate financial gain for all defendants.

Upon information and belief HEST, HEX and CALPAC continue to use the Freight Control System and/or its derivative software to make profits derived from the illegal use of a copyrighted work in violation of the Copyright Act or, by possessing a copy, threaten the future use of such illegal software.

In furtherance of the Enterprise and the common goal, on or about July 7, 2003, despite being aware that this conduct clearly constitutes willful infringement, Mark Dillon, under Christensen's authority and with full access to Mr. Berry's source code, allegedly created another illegal unauthorized derivative of the Freight Control System for his own personal financial gain in knowing violation of the Federal Criminal Copyright laws.

Both Noa and Dillon maintain copies of the Berry software on their home computers to facilitate their infringement.  Noa has created an entity known as EarthLogistics.com that is used to facilitate the conspiracy and further its illegal purpose.

This act of infringement was directed by certain of Fleming's agents but were done voluntarily.    In addition to this infringement, these Fleming agents directed a third party developer, Guidance Software, without any authority form Mr. Berry, to access Plaintiff's software, make an unauthorized copy of the system and transport it to California for the purpose of analyzing the software to facilitate further acts of criminal infringement.

The July 7, 2003, derivative contained elements of Mr. Berry's software and performed the same functions as the Berry copyrighted software. Due to the knowledge obtained by Mr. Dillon and Ms. Noa of Mr. Berry's Freight Control

System, and its functional similarity this constitutes an infringing derivative of the Freight Control System.

From and after January 2000 to the present, the non bankrupt Defendants have infringed upon Plaintiff's copyright as follows:

a.    Using software by remote access that places a copy of the Plaintiff's software on the computer of no less than ten users;

b.    Using the software after receiving notice of the infringement and demand to cease and desist, and

c.    Providing illegal copies to third-parties including employees, agents, software developers and technicians who are not yet identified to Plaintiff by who are all infringers and who will be named later.

### 3. List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

Discovery is ongoing.  Certain attorneys, and other agents of the parties to this RICO action have advised their clients to commit the acts that are complained of herein.  Companies under the ownership and control of these attorneys continue to have access to Plaintiff's software and plaintiff believes, but cannot yet prove, that they too are using his intellectual property in violation of Tile 18. US Code. The owners of the corporate defendants are not fully known to Plaintiff but are

9

known to the Defendants.

**4. List the alleged victims and state how each victim was allegedly injured.**

Wayne Berry is the principal victim of this conduct. His rights under the Copyright Act, 17 U.S.C. § 106 have been repeatedly violated. These rights include his right to make copies including derivatives and to license his software for money. Other victims include the consumers of the state of Hawaii, that, through the maintenance of a monopoly facilitated by this infringement have been overcharged no less than 15% on all consumable packaged goods for the past 10 years or more. Mr. Berry does not claim to represent the rights of these additional victims.

**5. Describe in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:**

> **a. List the alleged predicate acts and the specific statutes that were allegedly violated;**

1. Criminal Copyright Infringement. 18 U.S.C. § 2319 (relating to criminal infringement of a copyright) the number of these instances of violations of Title 18 are too numerous to be stated herein but include the daily booting up of computers that load, without any license, pirated copies of Mr. Berry's software each day the infringement continues. These predicate acts

10

continue as of this writing;

2. Bankruptcy Fraud 18 U.S.C. § 1961 (1)(D) and 18 U.S.C. §152(3) false declaration in connection with a bankruptcy case. The conspirators agreed with Michael Gurzi and Guidance Software, Inc. to falsely report to the Delaware Bankruptcy court that no employee had a copy of the software after Dillon had told Gurzi he might still have one;

**3. Money Laundering. 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity i.e. Copyright Infringement). The money derived from the use of the Berry system is money derived from an SUA.**

  b.  **Provide the date of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act;**

1.  As to the Criminal Copyright Infringement, each day from January 1, 2000 to the present and this is ongoing.  As to the separate defendants: As to Dillon, Noa, Christensen and other Fleming-Logistics Employees from January 1, 2000 to the present for Dillon, Noa, Christensen and Fleming-Logistics Employees and HEX defendants. This conduct is ongoing. From and after June or July 2003 for C&S Defendants. This conduct is ongoing.

From approximately July 2002 for Foodland.  This conduct is ongoing.

From January 2000 for HTC.

As to the other individual defendants from the date they first used a copy of the Berry software. These facts are known to these defendants but unknown to Plaintiff.

From approximately May 2004, for Guidance, Alex Partners, Gurzi. Agreement to commit violations of RICO. Agreed to infringe and to file false declaration filed on August 1, 2003. So long as Guidance remains in possession of the software and refuses to unconditionally return it to Plaintiff it remains ongoing.

For the C&S Defendants, each and every day that they have obtained a financial benefit from the illegal use of Plaintiff's software starting no later than mid-July 2003 and continuing unabated.

    **c.**    **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and substance of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

        Not Applicable

    **d.**    **State whether there has been a criminal conviction for violation of any predicate act;**

Two previous members of the Fleming-Logistics Enterprise have been convicted for conduct related to the ongoing RICO enterprise.

### e.     State whether Civil litigation has resulted in a judgment with regard to any predicate act;

Fleming has been adjudicated by jury verdict as a willful i.e. criminal infringer on March 6, 2003 for acts committed by Dillon and Noa. Fleming filed bankruptcy before final judgment was entered.

### f.     Describe how the predicate act forms a "pattern of racketeering activity;"

To continue to operate the Fleming-Logistics Enterprise, Mr. Berry's software had to be illegally transferred to C&S. The prior daily use of Mr. Berry's software constituted repeated predicate acts occurring over a period of three years. These acts were committed by members of an Enterprise that had engaged in numerous criminal acts including Bankruptcy fraud, mail fraud, and other SUA's. Upon discovery that the Berry system could be used to facilitate a number of these acts, and finding that Mr. Berry was the owner of the Copyrights, a scheme was developed by the members of the Enterprise to misappropriate Mr. Berry's software and apply it to the ongoing conduct of the Enterprise.

The software is used by the members of the enterprise and their principals

the identity is known to the members but currently unknown to the Plaintiff to facilitate various unlawful practices associated with the shipment of goods. These practices include, but are not necessarily limited to, the transportation of contraband cigarettes, mis-declaration of freight in violation of federal shipping laws and the predicate acts of mail and wire fraud that are related to such shipping mis-declaration.

Alex Partners, as the agent for Kmart, acted as a go-between regarding the mis-declaration of freight for shipment done by the enterprise. The number of shipments is too great to detail. The manner in which the Enterprise causes the mis-declaration, is to ship goods for Kmart under materially false shipping documents created through the unlawful infringing use of the Berry Freight Control System. By declaring Kmart hard and soft goods as "grocery" items, the Enterprises defrauds the ocean carriers in amounts exceeding $1,000 per ocean container shipped under this fraudulent scheme. A portion of the money obtained through this artifice is shared with Kmart, through the participation of Alex Partners, the Fleming-Kmart fraudulent billing scheme has committed acts of falsification of records relate to a bankrupt estate in violation of Title 18 to numerous to detail. The proof of these fraudulent transactions is contained in the records obtained by Guidance Software.

14

After failing to obtain ownership of the software and after receiving a jury finding of willful infringement, Fleming filed bankruptcy. As the major inducement for C&S to purchase Fleming's wholesale business, Fleming and Alex Partners on behalf of Kmart produced certain business records that detailed the profits being obtained from the ongoing use of the Berry system . C&S made its agreement to purchase conditioned upon the delivery of a illegal copy of the Berry freight system that is copied daily by at least ten separate members of the Enterprise each work day. These acts are knowing violations of RICO and Fleming and now C&S uses criminal intimidation and corruption to cause their agents and employees to continue the pattern of racketeering. The inability of the Fleming-Logistics Enterprise to make a lawful replacement for the software demonstrates that the likelihood of continued criminal wrongdoing that RICO is meant to prevent. Based on the past record of racketeering, the is more than a reasonable threat of future open ended continuity.

g.    **State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.**

Fleming learned that Mr. Berry's system could be used to disguise a number of bad acts including the transshipment of contraband, overcharging of US Government customers and the maintenance of a slush fund of

money that could be then used off books for various purposes including commercial bribery. The Berry system acts as the accounting ledger that the members of this Enterprise and other criminal enterprises control the payments to one another derived from the racketeering described in the Second Amended Verified Complaint and this RICO statement.

Kmarts use, through Alex Partners, permits Kmart to commit numerous acts of Racketeering through the mis-declaration of freight that violates RICO and the Patriot Act, as amended and applied through the CFR.

The acts alleged in the Second Amended Complaint include the illegal infringing use of the software, the commission of Bankruptcy fraud and the laundering of the money obtained from these acts. They are related in that they are all related to the ongoing operation of the enterprise.

In order to C&S to continue to the practices started by the Enterprise it is necessary the C&S and its principals maintain the ability to infringe upon the Plaintiff's original works.

**6. Describe in detail the alleged "enterprise" for each RICO claim. A description of the enterprise shall state the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; describe the structure, purpose, function and course of conduct of the enterprise; state whether any defendants are employees, officers or directors of the alleged enterprise; state whether any defendants are associated with the alleged enterprise; state whether you are alleging that the defendants are individuals or entities separate from the**

16

alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and if any defendants are alleged to be the enterprise itself, or members of the enterprise; explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

In regard to the 18 U.S.C. § 1962(c) claim:

In or about 1993, certain individuals, including Jack Borja and Lokilani Lindsey formed Atlantic Pacific International, Inc. ("API"). API was formed by these individuals to facilitate two principal criminal practices. The first was to facilitate false billing overcharges for food shipments into the state of Hawaii through repeated acts of mail and wire fraud. The second practice was to facilitate the trafficking of untaxed cigarettes.

By late 1995, Lokilani Lindsey began to distrust Jack Borja whom she and her sister Marlene believed was engaged in a fraud on them. In or about December 1995, Fleming and certain Hawaii PUC regulated trucking companies were engaged in both of these illegal practices, and transferred $200,000 to API for Jack Borja to use to buy the interests held by Lokelani and Marlene Lindsey to insure the continued flow of untaxed cigarettes and the false documentation that Fleming used to facilitate its overcharge scheme. These false documents consisted of false invoices that set forth freight charges that were used to establish Fleming's costs in certain cost-plus contracts. Later, approximately one half of this money

17

was transferred, secretly to Fleming, in fraud upon it customers.

In late 1994, Jack Borja approached Wayne Berry who had been his tenant and requested that Mr. Berry provide a proposal for automating the API logistics functions.    By late 1995, Mr. Berry had completed the installation of the Berry Freight Control System and put it on line in his home to be accessed by API.

During the time after November 1995, Jack Borja informed Mr. Berry of other business affiliations that he was developing including several related to the securitization of mortgage instruments in the Philippines.  These activities were funded by Fleming and included certain other violations of RICO.

In or about 1998, Mr. Berry was informed by a temporary API employee, Mauro Edwards, that he had overheard one of Jack Borja's relatives, who was an API employee,  discussing the shipment of machine guns with silencers in Fleming controlled ocean containers. Mr. Berry immediately contacted the Alcohol Tobacco and Firearms ("ATF") to report this information.

In a meeting with Tracy Elder and Jordon Lowe, who were identified as ATF special agents, Mr. Berry was asked if he knew anything about cigarette smuggling through Fleming.

Later, after being requested to produce certain corporate records in litigation, Mr. Berry discovered certain records of Fleming related companies that

appeared to be engaged in cigarette diversions or trafficking. These companies including UPAC (controlled by John Ault, Fleming's manager), and WC Distributing. Mr. Berry reported this to the ATF that immediately sent an investigator to review the records.

After further investigation, Mr. Berry discovered documents dating back to 1993 detailing the agreement by the Lindseys and Mr. Borja using the Fleming money to facilitate the trafficking of untaxed cigarettes. These documents were obtained by the United States pursuant to grand jury subpoena and, upon information and belief, were the government's principal evidence against Marlene and Lokelani Lindsey who were convicted of the predicate offenses of Money Laundering and Bankruptcy Fraud.

Further, after discovering that his intellectual property was being used by Fleming to commit the overcharges, quoting Mr. Berry, the Honolulu Advertiser ran a series of articles detailing the manner in which vendor allowances and credits that should have been passed on the consumer but were instead taken by Fleming.

Subsequently, Mr. Berry was approached by Foodland to assist in determining the extent of the food overcharges. After extensive review of Fleming and Foodland data, Mr. Berry discovered an additional overcharge

scheme that permitted Fleming to overcharge approximately 3%.

Mr. Berry provided Foodland with a detailed proposal showing how, with the use of his software, Foodland could begin to cut its costs by operating what are commonly known as Direct Store Shipments and Stop-in-Transit shipments. Rather than find a replacement for Fleming, and with full knowledge of Mr. Berry's claim that Fleming was an infringer, Foodland agreed to continue the overcharges in exchange for a portion of the proceeds to be passed back to it in the form of rebates known as the "Team Score." This Team Score is a devise the Fleming and Foodland use to facilitate violations of the Robinson-Pattman act to assist Fleming and Foodland in the maintenance of the monopoly that is the subject of the Sherman Act claims.

Mr. Berry's Freight Control System and the derivatives have been improperly used to facilitate the overcharges, cigarette trafficking and practices known as "diversions." Upon information and belief, C&S has been engaged in diversions in other markets. Upon information and belief, C&S has maintained to two California divisions that, in coordination with the Hawaii Division, can facilitate the Diversion practices.

Diversions allow a shipper to obtain a freight subsidy for a shipment intended to go a specific location to ease some of the costs to make pricing more

geographically uniform. This money that Congress has, in a sense of the Congress, stated should go to the consumer, is instead taken by the wholesaler and contrary to the sense of congress not passed on to the consumer.

Diversions are facilitated by Mr. Berry's system that permits the user to handle a large number of purchase orders and because of the secrecy imposed on the data, the customer is never apprised that the there was a subsidy for the shipment and the price to the Hawaii consumer remains high. The goods are shipped to one of the HEX/HEST cross-docking facilities and then, instead of going to Hawaii, diverted to other Mainland locations. The Berry Freight Control System tracks the freight allowance and the payment is made via wire transfer. The HEX/HEST employees that have used and continue to use the Berry Freight Control system have all been engaged in the diversion practices. Up until approximately 1999, Fleming maintained an office and a staff at the Kapolei facility to handle diversions.

Other affiliated Hawaii businesses have had similar histories to API including its connection to the Bishop Estate. These companies, upon information and belief, form a interconnected network and have persons associated with these companies that are attorneys related to these proceedings.

Among these companies, Alven Corporation aka Hawaii Logistics Service is an affiliate of North Shore Associates, Inc. that, upon information and belief has received funds from the Bishop Estate.  These entities share and/or shared common ownership and, upon information and belief, operate its business through a pattern of racketeering including the use of Mr. Berry's Freight Control System.

A present, and or, former, North Shore Associates, Inc. director is currently an attorney representing C&S in this case.  Upon information and belief, one of C&S' attorneys is also a Fleming employee and listed as such on the Bankruptcy schedules.

C&S has agreed with Fleming, Kmart,  HEX, HTC, ALVEN, their  agents and, through the employment of joint agents, Guidance, Alex Partners, and others, to continue to infringe on Mr. Berry's software to further its ability to traffic in contraband, conduct diversions and to facilitate the overcharges.  These overcharges are passed on to C&S customers.  The value of the overcharges discovered total over $30,000,000 as to Foodland for one year.  HTC operates as one of the trucking companies used to move the freight including the contraband and is paid from moneys derived from the SUA.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

22

The specific acts of racketeering are more particularly set forth in the Second Amended Verified Complaint and the previous answers that are all incorporated herein.

In further response, the pattern of commission of violations of RICO continues in regard to each of the RICO Defendants that utilize Plaintiff's software for their own purpose. The enterprise exits to facilitate the ongoing criminal use of Plaintiff's intellectual property and to permit the members of the enterprise earn money from the multiple commissions of predicates. But for the common purpose of the enterprise the members could not obtain the use of the software.

The pattern of racketeering remains separate from the enterprise. The single common purpose of the enterprise is the maintenance of use of the pirated copies of Plaintiff's software that are copied each time the computers are used. These copies constitute separate predicates and are too numerous to describe.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.**

Fleming and now C&S are outwardly legitimate wholesale enterprises. Fleming-Logistics was originally API and has changed ostensible ownership but

continues in regard to it criminal practices unabated despite the changes in ostensible ownership. The maintenance of the Government contract overcharges, the shipment of contraband are all facilitated by the illegal use of Mr. Berry's property in violation of Title 18 U.S.C.  Each time the system is loaded in a computer, that occurs over ten times a day, a criminal act of infringement occurs. These illegal acts are further compounded by the use of this system to create false freight charges that are transmitted to the United State of America as costs. The true costs are maintained in the data contained in the Berry freight control system, and that explains why the parties to the conspiracy refuse to turn over any of this data in discovery.  All government contractors doing business with the Defense Commissary Agency ("DeCA") are required to submit to extensive audits. Upon information and belief, Fleming and now C&S have concealed the Berry freight control system from the Government to hide the extent and nature of the fraud and overcharge.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

Hundreds of millions of dollars and maintenance of a monopoly over food consumed in Hawaii with the ability to extract monopoly profits.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

24

By violating Mr. Berry's rights as an owner of intellectual property, the Defendants impede the development of new innovative alternatives to the current logistics methods used to ship over $1 billion in goods yearly to Hawaii and Guam.   By conducting the overcharge and kickback schemes, the injury to commerce deprives the nation of an economically strong 50th state and is a causative factor in the economic stagnation that has existed in Hawaii for over the past 10 years.   Because these actors are able to stifle innovation and the attempt to create efficiencies in the economies of Hawaii, California, Alaska, Guam and Puerto Rico are adversely effected.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), state who received the income derived from the pattern of racketeering activity or though the collection of unlawful debt; and describe the use or investment of such income.**

N/A

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

N/A

**13. If the complaint alleges a violation of 18 U.S.C. I § 1962(c), state who is employed by or associated with the alleged enterprise, and state whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

The Enterprise is Fleming-Logistics kna C&S Logistics.   It consists of the



Fleming and Hex Employees, the C&S Defendants, HTC, Foodland and Gurzi.

All defendants are persons associated with the enterprise. This entity is an unincorporated association consisting of person affiliated with separate enterprises that together associate to conduct the affairs of Fleming-Logistics kna C&S Logistics.

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.**

The facts alleged in the Second Amended Complaint and in the previous responses herein are incorporated by this reference. In further response, in order to continue to reap the huge profits that the Fleming monopoly, the overcharges, cigarette trafficking and diversions could produce, the members of the Fleming-Logistics Enterprise agreed to continue the operation of the Enterprise even after the Fleming Bankruptcy. C&S, upon information and belief, has engaged in the practice of diversions and, after agreeing with Fleming to confidentiality, was provided with certain financial records including files derived from the Berry Freight System that demonstrated that the Fleming monopoly combined with the use of the Berry freight system could produce large amounts of profit with little or no effort. These files detailed the freight allowances that could be obtained by possessing Fleming's Hawaii distribution center. Based on that information, C&S

26



agreed to supply Fleming while it attempted to seek approval for the sale of its wholesale business to C&S. This agreement eventually culminated in the sale of Fleming's wholesale business to C&S.

Agreements that provided for royalties and indemnities that would extend for years after the sale are further evidence of the agreement.

Alex Partners has participated in the conduct of the enterprise on behalf of Kmart to facilitate the mis-declaration of freight and other acts set forth above. Guidance was used to assist the Enterprise in destroying the records ordered to be maintained under an SEC order and made numerous unauthorized copies of the Berry software. Other acts are detailed in the Second Amended Complaint.

As to the other defendants, each of these defendants has knowledge that the unauthorized use of the Berry software system constitutes an act of infringement but has agreed to the commission of overt acts and has committed over acts. Employment contacts, contracts of indemnity and promises by attorneys representing Fleming and C&S are all evidence of the agreement.

**15. Describe the alleged injury to business or property.**

Mr. Berry's rights provided by the Copyright Act, 17 U.S.C. § 106 have been violated thousands of times and that violation continues unabated.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

But for the violation of RICO, i.e. infringement, Mr. Berry would have an ability to license the defendants for the use of his software. As set forth in No 17 the damages are substantial. The conspiracy to infringe, that employed over $500,000 in attorney fees billed to the Fleming bankruptcy, chose not to lawfully proceed during the Fleming sale. Had the RICO persons not agreed to conspire and continue the Fleming-Logistics Enterprise, C&S would have had to pay Mr. Berry to use his system. Instead, they conspired to infringe. The Berry system, need not be used for unlawful purposes but can be used to facilitate legitimate costs savings. C&S through the ratification of all the past acts of the Enterprise has chosen to conduct is affairs as a RICO person in direct injury to Mr. Berry.

Other potential Berry customers who have been given free illegal use of the Berry software, including Foodland, HEX, HTC, HLS and the individual defendants.

**17. List the damage sustained by reason of the violation of § 1962, indicating the amount for which each defendant is allegedly liable.**

For unpaid licenses fees, Mr. Berry is entitled to $115 per container shipped though the use of his system. He is also entitled to all profits derived from the infringement. This system generates an average savings of $1,735 per container.

Based on the admissions in Fleming's bankruptcy, Fleming-Logistics kna C&S Logistics ships 500 containers per week. The cost to operate Fleming-Logistics kna C&S Logistics is approximately $1 million per year.

Based on these facts, the approximate damages for unpaid license fees alone equal $30 million per year. The profit from the unauthorized use of the software is approximately $86 million per year. All of these amounts are times three and applied to each and every defendant under RICO.

**18. List all other federal causes of action, if any, and provide the relevant statue numbers.**

Violation of the Copyright Act, 17 USC § 106 et seq, The Sherman Act, Title 15 U.S.C.§§ 1 and 2 and the Clayton Act, Title 15 U.S.C.

**19. List all pending state claims, if any.**

There are presently pending state law Trade Secret Misappropriation claims.

**20. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

The acts continue as of this writing and because of the amount of money generated by the Berry system, it will likely not be impeded through any civil remedy.

The improper acquisition of freight subsidies meant to ease the cost of living in Hawaii cause the state of Hawaii to remain economically stagnant and unable to compete with other geographic locations not subject to tax imposed by the Enterprise.

In addition, the manipulation of the food prices and the ability to hold the prices high for the participants of the Enterprise is a reason that Hawaii's development has been inhibited.  The participants in this Enterprise seek to hold themselves out as upstanding members of society, but to a person refuse to accept the simple fact that Copyright infringement for financial gain is a serious crime.

**21. If you cannot presently provide certain information requested above due to lack of discovery, set forth with specificity:**

**a. The facts  presently unknown but which you believe you can prove;**

The role of certain other trucking companies in the illegal use of the Berry Freight Control System and their connection to a larger Hawaii based RICO entity.

The role of Fleming's lenders and vendors in causing the infringement.

Whether the use of offshore credit cards through what Plaintiff believes is the Bank of Xiamen, China, is the manner that the Enterprise members launder the proceeds of their illegal conduct to the members.

The amount of freight charges made to the Military through the Freight and Logistics "roll ups" that area sent to DeCA will evidence the extent of the government overcharge.

The use of the system to import goods for C&S and Safeway and the extent to which Safeway is aware of the infringement.  The role of Fleming Foreign Sales, Corp. a non-debtor Barbados corporation in the Enterprise. Plaintiff believes that it is used to launder money, offshore.

The amount of revenue that is directly attributable to the infringement i.e. Mr. Berry's lost profits.  We have seen that the Enterprise charged Kmart approximately 4% for logistics services.  Mr. Berry's charge amounts to a fraction of this amount. The additional revenue that Fleming receives from Kmart, Foodland, the US Government and Safeway for logistics services is all by law Mr. Berry's. Discovery will be effected to obtain the amount of payments to the Enterprise by these entities.   Kmart has also produced documents to Plaintiff of other locations other than Guam and Hawaii that may have been billed through this system and discovery will have to proceed to identify these other markets to insure that the use of the software is enjoined.

The value placed on this system in the Fleming-C&S Sale. The scope of any and all indemnities and all communications between C&S, its attorneys and

31

Fleming.

### b. The nature of discovery you plan to undertake to develop such facts;

For reasons never made clear to Plaintiff, discovery is presently stayed as to the principal RICO defendants.

Until outstanding discovery is provided, Plaintiff cannot say with certainty what discovery will be required. Presently Plaintiff contemplates the subpoena of records from third parties regarding the use of the Fleming-Logistics kna C&S Logistics services for both west and eastbound shipments.

A Rule 30(b)(6) deposition of the Ocean carriers and Kmart to discover the extend of the other infringements. Discovery regarding the facts about the F1 project and how the stolen Berry software was used in it.

### c. Of whom you intend to take discovery;

Until discovery is recommenced, and outstanding discovery is provided, Plaintiff cannot say with certainty what discovery will be required. At a minimum, Teresa Noa will be deposed. 30(b)(6) representatives of most corporate defendants, Ron Griffin, the Fleming Exec. VP who had told the enterprise four options to deal with the infringement. The Enterprise apparently ignored him and he resigned shortly thereafter. The employees at C&S Logistics and HEX. Foodland and HTC 30(b)(6) and the ocean carriers.

**d. When you intend to commence and/or complete discovery.**

It has commenced but stayed by the Court as to the Principal RICO

defendants . It should take an additional six months if the defendants cooperate.

DATED: Honolulu, Hawaii, _____ JUN 1 8 2004 _____ .

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;⠀)

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

HAWAIIAN EXPRESS SERVICE,⠀)

INC., a California corporation; H.E.S. )

TRANSPORTATION SERVICES,⠀⠀)

INC., a California corporation;⠀⠀)

CALIFORNIA PACIFIC⠀⠀⠀⠀)

CONSOLIDATORS, INC., a⠀⠀⠀)

California corporation; JEFFREY P. )

GRAHAM and PETER SCHAUL,⠀)

California citizens; MARK DILLON )

and TERESA NOA, BRIAN⠀⠀⠀)

CHRISTENSEN, Hawaii citizens;⠀)

FLEMING COMPANIES, INC., an )

Oklahoma corporation; C & S⠀⠀)

LOGISTICS OF HAWAII, LLC, a⠀)

Delaware LLC; C & S WHOLESALE )

GROCERS, INC., a Vermont⠀⠀)

corporation;⠀⠀⠀⠀⠀⠀⠀⠀)

C & S ACQUISITIONS, LLC;⠀⠀)

FOODLAND SUPER MARKET,⠀)

LIMITED, a Hawaii corporation;⠀)

HAWAII TRANSFER COMPANY,⠀)

LIMITED, a Hawaii Corporation,⠀)

RICHARD COHEN, a New Hampshire)

citizen ES3, LLC, a Delaware Limited )

Liability Company, MELVIN PONCE, )

SONIA PURDY, JUSTIN⠀⠀⠀)

FUKUMOTO, AFREDDA⠀⠀⠀)

WAIOLAMA, JACQUELINE RIO,⠀)

Hawaii citizens; JESSIE GONZALES, )

Civ. No. CV03 00385 SOM-LEK
(Copyright)

CERTIFICATE OF SERVICE

LUIZ RODRIGUES, AL PEREZ and )
PATRICK HIRAYAMA , California )
citizens; GUIDANCE SOFTWARE, )
LLC, a California, LLC; MICHAEL )
GURZI, a California citizen; ALEX )
PARTNERS, LLC, a Delaware LLC ; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
                                )
                                )
                                )
                 Defendants.    )
_____ )

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing document were

duly served upon the following parties via first class mail, postage prepaid, on

JUN 1 8 2004

LEX R. SMITH, ESQ.
Kobayashi Sugita & Goda
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Attorneys for Defendant
Fleming Companies, Inc.
C&S Wholesale Grocers, Inc.,
C&S Logistics of Hawaii, LLC and
C&S Acquisitions, LLC

2

ROY J. TJIOE, ESQ.
EMILY REBER PORTER, ESQ.
Goodsill Anderson Quinn & Stifel
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii 96813
Attorney for Defendants
Hawaiian Express Service, Inc.,
H.E.S. Transportation Services, Inc.,
California Pacific Consolidators, Inc.,
Jeffrey P. Graham and Peter Schaul

KAREN L.S. FINE, ESQ.
Nordman Cormany Hair & Compton
1000 Town Center Drive, Sixth Floor
Oxnard, California 93036
Attorney for Defendants
Hawaiian Express Service, Inc.,
H.E.S. Transportation Services, Inc.,
California Pacific Consolidators, Inc.,
Jeffrey P. Graham and Peter Schaul

ANDREW V. BEAMAN, ESQ.
Chun Kerr Dodd Beaman & Wong, LLLC
Topa Financial Center, Fort Street Tower
745 Fort Street, Floor 9
Honolulu, Hawaii 96813
Attorney for Foodland Super Market, Limited

LYLE HOSODA, ESQ.
345 Queen Street, Suite 804
Honolulu, Hawaii 96813
Attorney for Defendants Mark Dillon,
Brian Christensen and Teresa Noa

3

WESLEY H. H. CHING, ESQ.
Fukunaga, Matayoshi, Hershey & Ching, LLC
1200 Davies Pacific Enter
841 Bishop Street
Honolulu, Hawaii 96813
Attorney for Hawaii Transfer Company, Limited

DATED: Honolulu, Hawaii, _____ JUN 1 8 2004 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

4