LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;

        Plaintiff,

vs.

HAWAIIAN EXPRESS SERVICE,
INC., a California corporation; et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. CV03 00385 SOM-LEK
(Copyright)

**PLAINTIFF WAYNE BERRY'S
MEMORANDUM IN OPPOSITION
TO HAWAII TRANSFER
COMPANY, LTD.'S MOTION FOR
SUMMARY JUDGMENT FILED
ON OCTOBER 2, 2004;
CERTIFICATION PURSUANT TO
L.R. 7.5(e);  CERTIFICATE OF
SERVICE**

Exhibit 42

DEC 2 0 2004

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    HTC IS OUTSIDE OF THE PLEADINGS AND MR. BERRY DOES NOT CONSENT TO LITIGATE ISSUES THAT AROSE IN MAY 2004. . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    HTC's CONCISE STATEMENT ONLY CONTAINS FIVE MATERIAL PARAGRAPHS, FOR THE PURPOSE OF THE MOTION MR. BERRY ADMITS TWO OF THEM. . . . . . 2

    C.    MR. BERRY IS NOT ABLE TO PRODUCE EVIDENCE TO MEET THE MOTION. . . . . . . . . . . . . . . . . . . . . 5

    D.    THE RICO IS PROPERLY ALLEGED AND THE FACTS SHOW IT TO BE MORE THAN AN ALLEGATION. . . 6

    E.    HTC WAS AND IS USING THE BERRY SYSTEM. . . . . 10

    F.    ALMOST ALL OF HTC UNDISPUTED FACTS ARE IRRELEVANT AND IMMATERIAL TO THE ALLEGATIONS IN THE SECOND AMENDED VERIFIED COMPLAINT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    G.    HTC Admits Being an Unlicenced User of the Berry System. 17

    H.    SHERMAN ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.    There is An Issue of Fact that HTC was and/or is a User of the System and Direct Infringer . . . . . . . . . . . . . . . . . . . 19

    B.    HTC is Clearly a Willful Contributory Infringer. . . . . . . . . 20

    C.    HTC' Evidences the Willfulness that Proves Criminal Infringement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    D.    The Issue of Willfulness is an Issue of Fact to be Tried to the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# TABLE OF AUTHORITIES

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir., 1991) . . . 1, 23

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir., 2004) . . . . . . . . . . . . . . . . 21

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir., 2004) . . . . . . . . . . . . . . . . 21

*Hearst Corp. v. Stark*, 639 F. Supp. 970, 979-980 (D. Cal., 1986) . . . . . . . . . . 24

*Hearst Corp. v. Stark*, 639 F. Supp. 970, 979-980 (D. Cal., 1986) . . . . . . . 21, 24

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir., 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir., 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021, 17 U.S.P.Q.2D (BNA) 1753 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021, 17 U.S.P.Q.2D (BNA) 1753 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

## STATUTES

18 U.S.C. § 1961(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

The Copyright Act, 17 U.S.C. § 506(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

RULES

Fed. R. Civ. P. 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

OTHER AUTHORITIES

Donald E. deKeiffer: DIVERSION, (deKeiffer & Horgan copyright 2000) . . . . 12

v

PLAINTIFF WAYNE BERRY'S MEMORANDUM IN
OPPOSITION TO HAWAII TRANSFER COMPANY, LTD.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel and hereby submits his opposition to Hawaii Transfer Company, Ltd.'s Motion for Summary Judgment (the "Motion").

I.    <u>INTRODUCTION</u>.

Plaintiff incorporates by this reference his Opposition to Motion for Summary Judgment filed by Mark Dillon Teresa Noa and Brian Christensen on the issue of direct infringement and the Opposition to Foodland Super Market, Ltd.'s Motion for Summary Judgment on the issue of Sherman Act Violations.

II.    <u>BACKGROUND</u>.

A.    HTC IS OUTSIDE OF THE PLEADINGS AND MR. BERRY DOES NOT CONSENT TO LITIGATE ISSUES THAT AROSE IN MAY 2004.

Hawaii Transfer Company, Ltd.'s ("HTC")  Motion attempts to litigate matters that are not within the pleadings of this case.  With the exception of paragraphs 1, 2, 4, 13 and 14 of HTC"s in its Concise Statement, none of the remaining evidence that is presented in support of Hawaii Transfer's Motion is relevant to any claim or defense within the pleadings of this case and must either be stricken on the grounds that it is immaterial pursuant to Fed. R. Civ. P. 12(f) or

1

simply disregarded as outside of the pleadings.  Mr. Berry does not consent to litigate matters not within the pleadings and objects to any Rule 15 Motion to conform the pleadings.  These issues relate to an alleged newly created freight control system that HTC claims to have created in May 2004 during the pendency of this copyright infringement action.

In addition, discovery has been stymied for a number of reasons that precludes the granting of summary judgment pursuant to Fed. R. Civ. P. 56(f) against Mr. Berry. Hogan Dec. ¶¶ 1-6 and Exhibit A.

B.      HTC's CONCISE STATEMENT ONLY CONTAINS FIVE MATERIAL PARAGRAPHS, FOR THE PURPOSE OF THE MOTION MR. BERRY ADMITS TWO OF THEM.

Mr. Berry admits, for the purpose of the instant Motion, paragraphs 1 and 2 of the HTC Concise Statement.  That leaves only paragraphs 4, 13 and 14.  Mr. Berry offers his filed Copyright Registration as evidence of his ownership in FCS and its copyright-ability. Berry Dec. Exhibit "K." His EULA evidences that HTC was not a licenced user of his system.  Berry Dec. Exhibit "A" and ¶¶ 9 & 10.

In regard to paragraph 4 of the HTC Concise Statement, the claim that HTC now tracks detention with its new software is simply not relevant to past infringement.  The proof of use of the Berry Detention Tracking system by HTC an unlicenced user is evidenced  by the Hogan Dec. Exhibit "E" that is an excerpt

2

for a document filed by HTC in the Fleming Bankruptcy and a page from its Exhibit "B" that is page 17 of the January 9, 2000 contract between Fleming and HTC that shows the agreement to use the Berry system. *See* Berry Dec. ¶¶ 11-13 and Exhibits "C" and "D" that establish HTC as unlicenced user of the Berry system at least up to July 2003.

Moreover, HTC's entire proof that it created an in-house detention tracking system is rebutted by Hogan Dec. ¶ 11 and Exhibit "F". This email is an admission of a co-conspirator that a person from C&S named James Kleban created the system for HTC. Brian Christensen, attempted to rehabilitate HTC regarding this evidence in is deposition when he admitted that Kleban is associated with C&S and created a system for HTC but denied its was a computer system. Hogan Dec. Exhibit "P" at p. 28:1 to 31:18 claiming that this system is a wall full of pockets containing cards that track the detention. The problem for HTC, and its co-conspirators is the subsequent deposition of Alfreda Wiaolama, the Fleming-C&S employee who works most closely with HTC refuted Mr. Christensen's spin on the Kleban System and created a clear issue of fact. Hogan Dec. Exhibit "Q" at p. 8:3 to 9:17.

In addition, even if the May 2004 detention system is non-infringing, this has nothing to do with HTC's liability for infringement going back to January

2000 when it entered into an agreement (I.E. conspiracy) with Fleming to use infringing software.

In regard to paragraph 13, Mr. Berry has produced evidence that HTC and Fleming agreed to HTC acting as an unlicenced user of Mr. Berry's system. HTC uses the Berry system not just to route Fleming-C&S trucks but the system is admitted by HTC to create HTC's invoices for HTC's customers. Hogan Dec. Exhibit "I" at No. 9. There is genuine evidence that HTC is on the Fleming network as an unlicenced user of Mr. Berry's software. There are clearly genuine issues of material fact as to paragraph 13 of HTC's concise statement.

As to paragraph 14 of the HTC concise statement, Mr. Berry denies this paragraph. HTC's admission to have engaged in the development of a Freight Tracking System, that performs the same functions as Mr. Berry's Freight Control System, evidence that Mr. Berry is HTC competitor because Mr. Berry's FCS system performs the same functions and is therefore a competing product. Berry Dec. ¶¶ 11-13.

Were the Court to consider the proof regarding the May 2004, HTC detention and demurrage system, that is related to paragraphs 5 to 12 of the HTC concise statement, then Mr. Berry has produced an email that raises an issue of fact as to each of these alleged issues of fact of the alleged independent creation

4

defense. Simply stated, HTC' co-conspirator rebuts its assertion that HTC created this system. Teresa Noa admits that it was Jim Kleban, who created it in January 2004.

Finally, HTC admits in sworn answers to interrogatories that it is using the Fleming Logistics software to create its "invoices." Hogan Dec. Exhibit "I" at No. 9. Berry Dec. ¶¶ 11-13 and Exhibits "C" and "D" that establish HTC as unlicenced user of the Berry system at least up to July 2003.

### C.    MR. BERRY IS NOT ABLE TO PRODUCE EVIDENCE TO MEET THE MOTION.

Mr. Berry also hereby incorporates his Ex Parte Motion to Continue hearings filed on November 1, 2004 and the Fed. R. 56(f) declaration filed in support by this reference as grounds for the Court to defer ruling on the instant motion pending more complete discovery. In addition to the arguments set forth in that Motion and supporting declaration, Mr. Berry further notes that discovery as to the principal RICO participants has been stayed from March 2004 to October 1, 2004 and that the fact that a discovery master has just been appointed has further delayed discovery through no fault of Mr. Berry.   Hogan Dec. ¶¶ 1- 5.

The instant Movant has not produced any of the alleged reports that it claims to receive from Fleming. HTC has resisted production of any documents

on the grounds that its trucking dispatch reports constitute trade secrets. The court has just recently appointed a discovery master who has yet to hold his initial conference. *Id*. The Courts should just deny the Motion because there are clearly issues of fact regarding each issue raised by HTC as undisputed.

### D.    THE RICO IS PROPERLY ALLEGED AND THE FACTS SHOW IT TO BE MORE THAN AN ALLEGATION.

HTC, producing no evidence to support its argument, asserts under Fed. R. Civ. P. 12(b)(6) that Mr. Berry has failed to allege an appropriate RICO enterprise. Quite the contrary. Mr. Berry has alleged one of the most vibrant and ongoing racketeering enterprises in the history of the State of Hawaii. This enterprise, as set forth in Mr. Berry's declaration in ¶¶ 18-42 and as alleged by the Second Verified Complaint, and RICO statement the conduct of an enterprise engaged in numerous predicate acts, including mail and wire fraud, the smuggling of untaxed cigarettes and, as to Mr. Berry's specific RICO injury, clear acts of criminal copyright infringement. The existence of the HTC invoices on the Fleming computer system, is also strong circumstantial evidence of the false invoicing scheme making out additional mail and wire fraud predicate acts. Just who these RICO persons are invoicing is not yet fully clear. Why is HTC having Fleming invoice HTC's customers? Mr. Berry produces the evidence of the

Fleming false invoicing scheme that evidences very clearly why HTC has

Fleming-C&S create its invoices.  Berry Dec. Exhibits "I" and "J."

To the extent that Mr. Berry has not been able to fully identify each of the

participants and relate each to the structure of the enterprise, Mr. Berry has been

blocked from conducting discovery regarding the principal participants of this

Enterprise and should be permitted now that the case has recommenced, to

conduct that discovery as part of his case.

In any event, Mr. Berry has uncovered the link between this Hawaii based

Racketeering Enterprise operating as the Fleming Logistics Enterprise and the

Providence Rhode Island Patriarcha Crime Family though DiSilva Transportation,

Inc. and its subsidiary Webster Trucking and its principal Thomas DiSilva that are

closely associated with C&S and James Kleban.

Attached to the Berry Dec. as Exhibit "L" is a graphic depiction of the

RICO and the participants that have been identified to date.   C&S, as set forth in

the Berry Dec. Exhibits "M" to "T" has apparent connections with the New

England Patriarcha crime family through C&S' New England trucking companies.

These RICO persons have been charged and convicted in a variety of racketeering

crimes.

Attached to the Berry Dec. as Exhibit "M" is an excerpt from C&S' in-

house new magazine for the current month that links both C&S and James Kleban

to the Patriarcha New England Crime Family though a convicted RICO person

Thomas DiSilva. Berry Exhibit "N" is a document obtained from the Vermont

Department of Labor and Industry that establishes that Webster Trucking is a

subcontractor of C&S. Berry Exhibit "O" is an excerpt from the DiSilva

Transportation Website that lists Webster Trucking as a DiSilva subsidiary.

Berry Dec. Exhibit "P" is news release from the U.S. Department of Justice

discussing the indictment of DiSilva Transportation, Inc. and its principal along

with George Cashman on a variety of Racketeering predicates. Berry Dec. Exhibit

"Q" page 2 is the admission of Thomas DiSilva that he is a principal of DiSilva

Transportation, Inc. Berry Dec. Exhibit "R" is the Judgement of Conviction of

Thomas DiSilva on Mail Fraud and other SUA counts.

Berry Dec. Exhibit "S" is the Judgement of Conviction in the same Criminal

proceeding, of Teamsters Union boss, George Cashman on Mail Fraud, Extortion

and other SUA counts. Berry Dec. Exhibit "T" is the report of Union Corruption

Update, that links George Cashman to the Patriarca organized crime family.

Discovery is ongoing.

As to HTC's RICO argument, the HTC memorandum erroneously claims

that criminal infringement is not a RICO predicate. Congress has amended RICO

and determined that the organized infringement of copyrights like this case pose a significant enough threat to the American economy to include it as a predicate act under the RICO statute. HTC's citing of cases that are prior to this amendment are clearly overruled by statute and the Court should disregard the arguments regarding the RICO entirely based on this erroneous understanding of the current state of federal law.

Noteworthy is the fact that HTC doesn't produce any evidence to deny being engaged in cigarette smuggling enterprise, false invoicing, overcharges or the monopoly conduct that is identified in the Second Amended Verified Complaint and RICO Statement.

As Mr. Berry's Declaration shows, the use of his system to track the contraband is the reason that the RICO participants won't stop infringing. Berry Dec. ¶ 18-26. HTC does not state that it has never used a freight control system at Fleming only that it hasn't seen one with Mr. Berry's name on it. The evidence shows that HTC has been using the Berry system to operate its business. It creates its work schedules but moreover it creates the invoices that it creates for its customers. Mr. Berry never licensed HTC to use his system for creating its customer invoices. Berry Dec. ¶ 16 and HTC is an infringer. It is a willful infringer because it did not stop when it received Mr. Berry's infringement

warning.  Berry Dec. Exhibits "E" and "F."  *See* Berry Dec. Exhibit "B"

evidencing the use by HTC in April 2003.

### E.    HTC WAS AND IS USING THE BERRY SYSTEM.

As to the use of the Berry system, HTC has not, as of this writing, been able

to produce one of the alleged paper reports that it is using.  The evidence supports

the inference that there are no paper reports.   The email from HTC's counsel

attached to the Hogan Aff. at Exhibit "A" evidences counsel's frustration in his

clients inability to produce these documents.   These documents are likely

destroyed or never created to prevent outside  auditors from finding them.  Mr.

Berry stands firm that no such documents exists and that the evidence of the

"paperless" world of this Enterprise is contained in the Berry Dec. Exhibit "B"

that is a list of the electronic HTC files used in the Berry system that were resident

on the Fleming system in July 2003.  HTC cannot deny being a Berry Freight

Control System unlicenced user.

The evidence shows that HTC's employees are on the Fleming network

working electronically through the use of the Berry system.  Hogan Dec. Exhibit

"B" is proof that HTC's Transportation Manager, Wendell Wei is a user of the

Fleming network.   Hogan Exhibit "C" evidences that HTC's Nate Herring is now

on the C&S network.  Hogan Dec. Exhibit "L" and "M" both confirm this fact.

Hogan Dec. Exhibits "M" and "N" are emails from Teresa Noa establishing that unless you are on the Fleming-C&S network, you can't access your email at all. These HTC employees are located at Fleming use Fleming-C&S e-mail addresses and are therefore can't deny being on the network.

In addition, HTC's invoices are on the Fleming system in electronic form. Berry Dec. Exhibit "B."  There is no logical reason for Fleming to be creating the HTC invoices except that HTC and Fleming are sharing the same computer system.  Why would the "customer" be creating the "vendor's" invoices?  In any event, it clear from the Guidance records that HTC's invoicing is being done with the Berry system. Berry Dec. Exhibit "B."  As a contributory infringer and/or vicarious co-conspirator infringer, HTC is liable.  Moreover, as Berry Dec., Exhibit "G" evidences, the reason that HTC has Fleming-C&S use of the Berry System to create its invoices is directly related to the RICO.  These false invoices establish a continuing pattern of unlawful conduct that has satisfied the continuity requirements for RICO.  The presence of the New England Mob at C&S points clearly to the need to deny this motion and allow Mr. Berry to proceed with his private prosecution of these offenders.

The Berry Dec. Exhibit "B" second and third page shows the total number of HTC related reports resident on the Fleming systems as of July 2003.  HTC is

far from the "see-no-evil" trucking company that it claims to be.  HTC, like the

Patriarcha influenced C&S mainland trucking companies is an active participant in

a 18 U.S.C. § 1962(c) RICO enterprise. Mr. Berry has established that his software

is used to facilitate the practice of "diversion." Berry Dec. ¶ ¶ 31 -33.   The

Washington D.C. law firm of deKeiffer & Horgan maintain an informative web

site regarding this practice in particular regarding international shipments.  In an

article copyrighted 2000, deKeiffer details how this practice threatens legitimate

U.S. Business. Though admittedly directed at international applications, in the

post-9/11 and mad cow era, not knowing where hundreds if not thousands of

ocean containers full of food came from because organized crime has found a new

racket, is something that should trouble the Court.   The article Donald E.

deKeiffer: DIVERSION, (deKeiffer & Horgan copyright 2000) can be accessed

via pdf at **http://www.dhlaw.de/eng/04_publi/documents/diversion.2000.PDF**

. In his conclusion, Mr. deKeiffer states that this practice provides, "organized

crime a simple method for laundering money."

   As to the alleged detention system,  the HTC Fleming Contract, assumed by

C&S in the Bankruptcy states that HTC and Fleming are jointly responsible for

tracking detention and demurrage.  Hogan Dec. Exhibit "E."  The Berry system

performs that function. Berry Dec. ¶ 11. For the dispatch activities that HTC

12

performs, Fleming put HTC on the network in 2002, to use the Berry Freight

Control System to allow them to input data directly in the Berry database. Hogan

Dec. Exhibit "G." By Contract HTC has agreed to use the Berry system for the

tracking of detention and demurrage.   Hogan Dec. Exhibit "E."   HTC is not a

licensed user of the Berry system and is an infringer. Berry Dec. ¶¶ 7, 9 = 13.

Apparently aware that conceding this use of the Berry system had exposed it

to infringement claims by Mr. Berry, HTC and Fleming-C&S began to create a

replacement system for HTC to give it the defense to ongoing infringement once

again causing this Court not to enter an injunction because the criminal infringers

say they've stopped.  In emails from Fleming-Logistics' personnel, the real creator

of the HTC system is revealed and it is not who HTC claims created it in its

Concise statement and supporting Declarations in support of its Concise Statement

¶¶ 3 -12.  In  Hogan Dec. Exhibit "F"  Fleming-C&S, HTC co-conspirator,  admits

that the creator of the alleged HTC detention and demurrage fright tracking system

is not Garrett Kunimura as sworn in the HTC supporting declarations, but Jim

Kleban.  Hogan Dec. Exhibit "F" at page 2.  As Berry Dec. Exhibit "M" evidences,

C&S has just announced that Mr. Kleban is done with his assignment and is not

apparently going to work for the Patriarcha influenced trucking company.

This email talks about the need to make changes to the database to speed it

13

up especially for "dial up" users. Hogan Dec. Exhibit "G" is an email dated November 2, 2002, evidencing the Fleming-HTC plan to put HTC live on the Berry system, the same one the jury found to be an illegal derivative. The email discusses that fact that HTC was running "dial up" in the trailer at the Fleming facility. Hogan Dec. Exhibit "G."

F.    ALMOST ALL OF HTC UNDISPUTED FACTS ARE IRRELEVANT AND IMMATERIAL TO THE ALLEGATIONS IN THE SECOND AMENDED VERIFIED COMPLAINT.

Because the alleged newly created HTC freight system was, according to HTC, created after the filing of complaint (HTC Concise Statement at ¶¶ 3, 5-12 ) it is outside the current pleadings. Mr. Berry objects and does not consent to litigate this new system and does not consent to a Rule 15 amendment. This was not disclosed until June 2004, and by the Court's own order, Mr. Berry had less than three months to conduct discovery on this system. By that same order, Mr. Berry's ability to conduct discovery related to the Fleming-C&S role in this was limited to **zero days** prior to the filing of the instant motion.

As to whether or not Mr. Berry would be prejudiced should the Court decide to go forward in allowing HTC to argue that a freight system created in May of 2004 is to be litigated, the following facts argue against any such finding:

First, the Court lacks the subject matter jurisdiction to determine issues of

14

ownership and infringement over that system because HTC has failed to comply with the statutory requirement of submitting its filed registration. Had HTC given this Court subject matter jurisdiction by filing a counterclaim after first filing its registration, it would have also been required to file as Mr. Berry did, a copy of the deposit, which would show what it is that HTC is running. HTC did not do this and the Court lacks subject matter jurisdiction over this alleged non-infringing system.

Second, HTC has also produced no admissible evidence whatsoever that they, in fact, are not running a copy of Mr. Berry's software. They have the initial burden on summary judgement. If HTC is attempting to defend this case by making the claim the this software is not a Berry derivative, but they have produced no admissible **best** evidence to support that finding. The burden a trial is Mr. Berry's but for summary judgement, the initial burden is on HTC. HTC failed to present any admissible testimony regarding the comparison of this system. That burden was HTC's but it didn't meet it.

If the Court were inclined to consider this evidence of the new system, the email raises an issue of fact regarding HTC's claim to have created the system in house in May, 2004. This email, attached to the Hogan Dec. as Exhibit "F page 2" shows that the container tracking detention software was written by Jim Kleban

15

for HTC sometime before January 21, 2004 and not as HTC claims by Garrett Kunimura in May 2004. See HTC Concise Statement ¶¶ 3-12. Mr. Christensen confirms that Kleban was creating a system, and Ms Wiolama rebuts Mr Christensen's absurd spin that the system is a bunch of cards on the wall. So, even if the Court were inclined to consider these matters outside of the pleadings and allow the lack of proof to shift any burden to Mr. Berry, there is clearly an issue of fact to try to the jury regarding the facts set forth in HTC's concise statement ¶¶ 3-12 that makes summary judgment improper.

Further, the HTC's claim that Teresa Noa was never "directly contacted" about the development is irrelevant. *See* Declaration of Wendell Wei filed in support to HTC's motion at ¶ 13. The Declaration of Wendell Wei said nothing about FLEMING'S involvement, Dillon's involvement or, more significantly, JIM KLEBAN'S involvement in it. By the Noa email, the reason should be apparent, because Fleming-C&S and HTC were jointly engaged in this development through Jim Kleban. Hogan Dec. Exhibit "F."

If the Court is inclined to consider the HTC affidavits on this issue Mr. Berry objects on several grounds including best evidence. The only thing that would be sufficient evidence of proving what HTC is running would be for HTC to provide a deposit and a copy of the software for the Court and Mr. Berry's

16

expert to review.  They have the initial burden on Summary Judgment and HTC has not met that burden and therefore their Motion should be denied.

G.    HTC Admits Being an Unlicenced User of the Berry System.

In its Defendant Hawaii Transfer Company, Limited's Response to Plaintiff's Wayne Berry's First Request for Answer to Interrogatories, HTC admits that it is operating its business with reports generated by the Berry system.  Hogan Dec. Exhibit "I."  This admits that HTC operates its business through the daily boot up of illegal software.   As clear evidence of the direct infringement is that admission that HTC is using the Berry system to produce HTC's invoices.  Mr. Berry never licensed HTC to use his system to generate its invoices.  Berry Dec. ¶ 7-10.

H.    SHERMAN ACT.

HTC makes one stab at Mr. Berry's Sherman Act allegations claiming that Mr. Berry lacks standing to pursue a claim under the Sherman Act.  They cite to no testimony and point to no evidence whatsoever.   Were the Court to convert the motion to a 12(b)(6) motion, attached to the Hogan Dec. as Exhibit "H" is an excerpt from the Complaint alleging some of the many  facts related to antitrust standing.  Also, Foodland has admitted in its Motion that Mr. Berry was Fleming's competitor.  The Motion is essentially now converted from a motion for summary

17

judgment to a 12(b)(6) motion and the Court should deny the Motion on the grounds that the allegations in the complaint must all be taken as true. More than sufficient allegations in the Second Amended Complaint to make out an antitrust injury. In fact, HTC's antitrust argument appears to be nothing but filler.

As to the standing issue, HTC claims to have created its own original work for tracking detention and demurrage. *See* HTC Concise Statement at ¶¶ 3-12. Mr. Berry's system also tracks detention and demurrage. Berry Dec. at ¶ 11 and its Exhibits "C" and "D." Mr. Berry and HTC are clearly competitors in the market for detention and demurrage tracking software and Mr. Berry has standing.

As to the principal Section 2 claim the fact is not one defendant has been able to come up with a plausible argument that the relevant geographic market for full line wholesale groceries should not be the State of Hawaii. Mr. Berry incorporates his Sherman Act related Opposition to Foodland's Motion. Foodland in its motion admits that Mr. Berry was attempting to compete with Fleming in the wholesale grocery market. HTC admits that it competes with Mr. Berry in the Detention and Demurrage Freight Tracking Software market.

As the issue of monopoly and the merits of this claim, most telling is that not one defendant can point to a single horizontal competitor in the market for Fleming and its monopolist successor, C&S. That speaks volumes. In any event,

18

though Mr. Berry bares the burden at trial, this Defendant must make an initial showing to shifted the burden to Mr. Berry. No such burden shifting has transpired and the motion should be denied. In any event , Mr. Berry's Opposition the Foodland's Motion establishes this claim.

III.    ARGUMENT.

    A.    There is An Issue of Fact that HTC was and/or is a User of the System and Direct Infringer

HTC can't produce the reports it claims to get from Fleming. The Court must infer, as Mr. Berry has alleged, that HTC obtains the information it admits is necessary to operate its business by logging onto the Berry system. The Berry Dec. clearly evidences the screens and reports created from the Berry system that are used by HTC in operations at Fleming. Hogan Dec. Exhibit "G" clearly evidences the illegal agreement to permit an unlicenced user, HTC, to log on to the Berry system. HTC has produced no evidence to shift the burden on the running of a Berry Freight Control Database Derivative at the Fleming and now C&S facility. Mr. Berry has produced evidence to show that HTC personal are on the Fleming and now C&S network, that they have agreed to the joint use of the Berry detention and demurrage program, and that there is a clear issue of fact to rebut their claim to have independently created the alleged detention and demurrage

19

system. Hogan Dec. Exhibits "B" to "E." HTC has personnel located in the Fleming facilities with email addresses on the network. The evidence clearly shows they are a Berry Freight System user and have been since 2002. Moreover, they had the burden to produce evidence that shows no issue of fact that they use paper reports and don't boot up the system. HTC has not been able to produce a single report. The only evidence presented are the conclussory declarations in support of ¶ 13 of the concise statement. HTC can't produce a single one of these reports even though they are used daily. The reason is clear, they aren't using paper reports but simply logging on to the Berry system and have been since 2002.

Because Mr. Berry is entitled to all reasonable inferences, and because HTC bares the initial burden in a motion for summary judgment, the naked conclussory allegation in support of ¶ 13 do not, as a matter of law, shift the burden to Mr. Berry. In any event, Mr. Berry has produced sufficient evidence to be entitled to let the jury decide the issues in this case.

B.    <u>HTC is Clearly a Willful Contributory Infringer.</u>

Even if the Court were not to give Mr. Berry the benefit of all inferences regarding HTC's direct infringement, there is no issue of fact that HTC is contributory infringer and Liable under RICO.

[A] plaintiff who claims copyright infringement must show: (1)

20

ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act. 17 U.S.C. § 501(a) (2003);  We recognize three doctrines of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement. To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act.  **One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a 'contributory' [copyright] infringer."  We have interpreted the knowledge requirement for contributory copyright infringement to include both those with actual knowledge and those who have reason to know of direct infringement.**  A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and "has the right and ability to supervise" the infringing activity.

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir., 2004) (citations omitted) (emphasis added).

In this case, HTC was sent an infringement warning letter on September 30, 2002.  Its attorneys acknowledged that receipt.  Berry Dec. Exhibits "E" and "F."  HTC materially contributed to the infringement by operating its business with the pirated derivative of the Berry system.  Hogan Dec. Exhibits "E" and "I" at No. 9, Berry Dec. ¶¶ 7-13 and Exhibits "A" to "E."   Having been put on notice of the Fleming infringement, as a matter of law, HTC is a willful contributory infringer.

C.    HTC' Evidences the Willfulness that Proves Criminal Infringement.

To establish the RICO predicate under 18 U.S.C. § 1961(1)(b) plaintiff must

21

prove willful infringement for financial gain.

> (a) Whoever violates section 506 (a) (relating to criminal offenses) of title 17 shall be punished as provided in subsections (b) and (c) of this section and such penalties shall be in addition to any other provisions of title 17 or any other law.

18 U.S.C. § 2319. Criminal infringement of a copyright

The Copyright Act, establishes that the elements of the RICO predicate as follows:

> (a) Criminal Infringement. - Any person who infringes a copyright willfully either -
>
> (1) for purposes of commercial advantage or private financial gain . . .

The Copyright Act, 17 U.S.C. § 506(a).

HTC got a copyright infringement warning letter and as set forth in the Berry Dec. Exhibits "B" and "C" continued to participate in the infringing activity. The Hogan Dec. Exhibit "E" evidences that this use of illegal unlicenced works was for "commercial advantage" or "private financial gain."

Moreover, the defense of innocent infringement is the Defendants' burden.

> To refute evidence of willful infringement, Pausa must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief. See 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[B], at 14-40.3 (1989). The December letter was unambiguous in its statement of

22

> intent to terminate the licenses if payment was not received within thirty days. Pausa, a corporation engaged in the business of manufacturing and distributing copyrighted works, does not claim ignorance as to its legal obligations. Fox's conduct following Pausa's receipt of that letter cannot reasonably be construed as a withdrawal of its intent to terminate the licenses. We find that Pausa's conduct in ignoring the revocation was unreasonable, and that its further use of the plaintiffs' copyrighted works thereafter was willful as a matter of law within the meaning of section 504(c)(2).

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir., 1990) (emphasis added).

In this case, like *Pausa*, HTC got the letter but continued to materially contribute to the Fleming infringement.

> While not necessarily an essential element, evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness . . . .

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir., 1991) *citing Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021, 17 U.S.P.Q.2D (BNA) 1753 (7th Cir. 1991).

D.    <u>The Issue of Willfulness is an Issue of Fact to be Tried to the Jury.</u>

It is well settled that the issue of willfulness is an issue of fact that must be tried to the jury.

> In *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981), the Ninth Circuit noted that it is not necessary that an infringer have actual knowledge that his conduct constitutes a

23

copyright infringement. The court stated "it is only necessary that a copyright defendant have knowledge of the infringing activity." Id. (emphasis in original). Regardless of the standard applied, however, "a copyright defendant's "innocence" does not absolve him of liability; it only affects the remedies available." Id.

The determination of willfulness under the applicable standards is generally a question of fact for the jury. The question now before this court is therefore whether there are such undisputed facts in the record as to make this issue now appropriate for summary judgment.

*Hearst Corp. v. Stark*, 639 F. Supp. 970, 979-980 (D. Cal., 1986) (emphasis added).

The Defendants, therefore, the burden of this defense at trial. They have put forth no evidence to support the reasonableness of innocent infringement defense and the motion must be denied.

Further, there exist clear issues of material fact as to whether HTC is a direct infringer and therefor the motion must be denied.

IV. <u>CONCLUSION</u>.

For the reason's stated, the Motion should be denied.


DATED: Honolulu, Hawaii, _____ DEC 2 0 2004 _____.


_____
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY


24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;    )    Civ. No. CV03 00385 SOM-LEK
                                  )    (Copyright)
            Plaintiff,            )
                                  )    CERTIFICATION PURSUANT TO
    vs.                           )    L.R. 7.5(e)
                                  )
HAWAIIAN EXPRESS SERVICE,         )
INC., a California corporation; et al.,  )
                                  )
            Defendants.           )
_____ )


## CERTIFICATION PURSUANT TO L.R. 7.5(e)

Attached hereto is Plaintiff Wayne Berry's Memorandum in Opposition to

Hawaii Transfer Company, Ltd.'s Motion for Summary Judgment. The

Memorandum contains 5,494 therefore no more than 9,000 words as set forth in

the word and line count of Wordperfect as used in preparation of the document.

DATED: Honolulu, Hawaii, _____ DEC 20 2004 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff