LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

**FILED IN THE**
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 0 9 2005

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

Attorney for Plaintiff WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>    Plaintiff,<br><br>    vs.<br><br>HAWAIIAN EXPRESS SERVICE,<br>INC., a California corporation; et al.,<br><br><br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>PLAINTIFF WAYNE BERRY'S<br>MEMORANDUM IN OPPOSITION<br>TO DEFENDANTS C&S LOGISTICS<br>OF HAWAII, LLC, C&S<br>WHOLESALE GROCERS, INC., C&S<br>ACQUISITION, LLC, ES3, LLC AND<br>RICHARD COHEN'S<br>MEMORANDUM IN SUPPORT OF<br>COUNTER-MOTION FOR<br>SUMMARY JUDGMENT ON ALL<br>CLAIMS AND REPLY TO THE<br>OPPOSITION REGARDING<br>PLAINTIFF WAYNE BERRY'S<br>MOTION FOR SUMMARY<br>JUDGMENT AGAINST ALL<br>DEFENDANTS; CERTIFICATION<br>PURSUANT TO L.R. 75(e);<br>CERTIFICATE OF SERVICE<br><br>Hearing:<br>DATE:   June 20, 2005<br>TIME:    9:45 A.M.<br>JUDGE:  Hon. Susan Oki Mollway |

**FILE-STAMPED COPY OF
FIRST PAGE TO
COMPLETE YOUR RECORD**

Exhibit 43

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  Walker Report Ignored Direct Evidence of Infringement. . . . . . . . . . 2

B.  Walker Examined the Wrong Software. . . . . . . . . . . . . . . . . . . . . . . 2

C.  The Defendants Didn't Address the Specific Trade Secrets in the
    Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D.  Mr. Walker Ignores the Collateral Estoppel of the First Case that
    Requires the Court to Enforce the EULA. . . . . . . . . . . . . . . . . . . . . 5

E.  Mr. Walker Ignored Two Tables of Record Pointers that Are Part of
    Berry's Structure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

F.  Extraction-Filtration is not Best Evidence of Infringement . . . . . . . . 7

G.  The Defense of Merger is Irrelevant and was Waived in the Answer
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A.  Fleming Already Lost the Copyrightability and EULA Fight. . . . . 13

B.  The Defendants all Admit Access and Similarity . . . . . . . . . . . . . . 14

C.  The Defendants Admit that They Formatted the C&S Hard Drive
    Right After this Court Asked to have the Court's Expert Examine it.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

D.   C&S Will Still be A monopoly. .......................... 17

E.   The C&S Logistics Department is Continuity for Fleming RICO. ................................................... 17

F.   Mr. Cohen Has Been Using the Berry Software. .............. 18

G.   C&S Failed to Rebut the Ueno Report ...................... 19

IV.   CONCLUSION. ............................................ 19

TABLE OF AUTHORITIES

CASES

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 640 (9th Cir. 1994) . . . . . . 5, 6

*Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068 (9th Cir. 2000) . . . . . . . . . . . . . . . . . 10

*Assessment Technologies of WI, LLC v. Wire Data, Inc.*, 350 F.3d 640 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 15

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971) . . 9

*Swirsky v. Carey*, 376 F.3d 841(9th Cir., 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir., 2000) . . . . . . . . . . 11

STATUTES

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

RULES

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

OTHER AUTHORITIES

Nimmer on Copyrights § 13.03[B][3] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ninth Circuit Model Civil Jury Instructions - Further Comments Further Comments to Instruction 20.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I.  INTRODUCTION.

In what has become all too familiar, C&S has now adopted the Fleming mantra regarding Mr. Berry.  Falsely representing that Mr. Berry contacted the Alcohol, Tobacco & Firearms and Internal Revenue Service in regard to Fleming's malfeasance when the facts show otherwise, C&S shows what kind corporate citizen its going to be for the people of the State of Hawaii and why a claim under RICO should stick.

## II.   BACKGROUND.

C&S, like Fleming, states that, although Mr. Berry won on ownership and copyrightability of his three works and infringement as to one, he somehow lost the earlier litigation.  That is not what the Court ruled.  Simply because  Mr. Berry received a statutory damage award in that case is hardly grounds to say that Mr. Berry was a loser.

Claiming that the things that Mr. Dillon copied were "facts" C&S now concedes that Mr. Dillon was sitting with a copy of Mr. Berry's works in front of him when he created his new original work.  Clearly no one is disputing that it is legal to extract your data from licensed computer software. What is impermissible is to sit down and make a copy of a database by using a query engine to simply "extract" the original work and put it into the infringing work.   That is what Fleming did and C&S is using that infringing software.

A.    Walker Report Ignored Direct Evidence of Infringement.

Mr. Walker's report does not even address the direct evidence that was contained in the Dillon queries nor does he even appear to mention queries.mdb database that is running underneath all these new and improved versions of software that Mr. Dillon made in an afternoon while sitting with Mr. Berry's works in front of him.

B.    Walker Examined the Wrong Software.

The Walker report is essentially worthless because his report was based on the wrong software.   The Dillon queries are, unlike an extraction filtration analysis "direct evidence" of infringement that the Court rarely sees.   Moreover, the actual program from which Dillon copied the data and database structures to create the Dillon Spreadsheets was not produced and could not have been analyzed by Mr. Walker either, unless he has had access to an undisclosed copy of the Berry work. The queries are the best and only direct evidence of what Dillon actually did and the only available evidence of Original Logistics Data.MDB, the actual program from which Mr. Dillon "extracted the data and structures" of Mr. Berry's database program.  As the Court may recall, this was the "jury-rigged" copy of the Berry database that Mr. Dillon created that all the defendants claim was the "original" Berry work that he had to admit wasn't as he represented in the

2

Preliminary Injunction Hearing causing him to change his sworn affidavit

Mr. Walker must concede that he did not use the file that Dillon created the

Spreadsheet Derivative from that is entitled "original logistics data.mdb".

Professor Johnson used the only admissible relevant evidence available, the

queries, that are direct evidence of what Dillon actually did when he extracted the

data and structures.   Mr. Walker, as the Declarations of Wayne Berry and

Professor Johnson attached to the Hogan Dec. as Exhibits "K" and "L"

respectively attest, used an invalid alleged copy of the original Berry FCS 1993

software and cooked up versions of the spreadsheets that cannot be authenticated.

*See*, Berry Dec. ¶¶ 2(a) and Johnson Dec. ¶ 5 regarding FCS 1993 and why Walker

was analyzing the wrong software.   *See* Hogan Dec. Exhibit "A" and Johnson Dec.

¶¶ 6 - 10 and Berry Dec. ¶ 2(a)& (b) and Exhibit "1" (regarding FCS 1993) and ¶ 2

c to ¶ 19 and Exhibits 2 to 18 proving that the copies of the Spreadsheet

Derivative that were disclosed by the PCT are fraudulently modified from the one

Dillon turned over in December 2003, and don't even match Walker's report.

Walker didn't even mention the "queries.mdb" database that runs the Dillon

Derivative as a database. That's why Dillon had to copy the Berry record pointers.

The screen print in Hogan Dec. Exhibit "A" shows this was part of both

productions, the one in December 2003 and the one in April 2005, but the

3

"professional expert" ignored it. The Hogan Dec. Exhibit "A", to even an

untrained eye, the file sizes and dates show that Fleming & C&S have shuffled the

deck and committed more obvious spoliation. But, just like in the past, they got

caught.   More likely than not the FCS that Walker claims to have analyzed  this is

just another illegal derivative that has slipped through the cracks of the Fleming-

C&S Logistics operations' Berry Technology inventory.  Berry Dec. ¶¶ 1- 2 and

Johnson Dec. ¶¶ 5.

      C.    The Defendants Didn't Address the Specific Trade Secrets in the
            Motion.

In regard to the trade secret claim being frivolous, neither C&S nor Fleming

or any of the Defendants have addressed the specific showing in the motion for

summary judgment regarding the categories of voluminous trade secrets that were

misappropriated that are now apparently deemed conceded.  Mr. Berry has made a

clear showing but these defendants chose to ignore it.   The Court may enter

summary judgment against all these Defendants related to these trade secret claims

for failing to even address the trade secrets that were set forth in the motion for

summary judgment.  To the extent that the Court accepts the Defendant's

argument that Mr. Berry has failed to adequately identify his works, Plaintiff

requests pursuant to Fed. R. Civ. P. 56(f), that the Court to permit the programs to

be produced pursuant to the Master's order. *See* Hogan Dec. at ¶¶ 1 & 2.

Interestingly, at p. 11, C&S states that "moreover, even if any of the files on the C&S Logistics' computers did contain a 'trade secret' there is no evidence that such trade secret was ever "misappropriated". If, in fact, they have Mr. Berry's trade secrets, how did they appropriate them? Simply stated, if they didn't misappropriate it, how did they get it? Perhaps this is referring back to the letter to the Master where the PCT's attorney said that they found a legal way to commit an illegal act.

D.    Mr. Walker Ignores the Collateral Estoppel of the First Case that Requires the Court to Enforce the EULA.

As to the post June 9, 2003 system, C&S seeks to bunker itself behind the claim that all that Dillon did is copy "facts" into the spreadsheet. This is simply not the case. Even Mr. Walker's report, that is based on the wrong software, doesn't claim that there was nothing copied, he simply states that the ones that he identified were not given protection relying on the erroneous view that *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 640 (9th Cir. 1994) is on point. That case makes clear that any copying that violates the license is infringement. The only way that Walker's report can be sustained, assuming it overcomes the fact that he was looking at the wrong software, is to throw out the Berry EULA.

5

Because Fleming created the program and the EULA makes this act infringement under *Apple Computer*, C&S cannot claim to have received anything but an infringing derivative of Berry's work.

*Apple* is also not relevant because the reason the court was affirmed regarding the extraction filtration analysis is because there was license that permitted the creation of certain derivatives. The court was therefore faced with having to separate the wheat from the chaff. In this case, the Berry's EULA forbad the reverse engineering and or derivative creation entirely. Berry Dec. Exhibit "20". So, all of what Mr. Berry had was protected "wheat" and there simply is no thinly protected "chaff" as in *Apple*.

     E.     Mr. Walker Ignored Two Tables of Record Pointers that Are Part of Berry's Structure.

Assuming that the Court permits the report to stand, and wrongly applies *Apple Computer*, Mr. Walker failed to address three of the Berry tables in his report. Of the three that he omitted from the ones that he claims that he's identified are two that clearly contain the protected elements that Mr. Walker could not address because, had he addressed them, the Court would be required to enter summary judgment for Mr. Berry. As set forth in the Johnson Dec. at ¶¶ 11 & 12 two of these elements are record pointer elements of the Berry database

6

related to Mr. Berry's choices in regard to his freight control system. They therefore are copyrightable and protected. These elements were copied in the Dillon spreadsheets and constitute infringement. Johnson Report, Exhibit "B" to the Johnson Dec. and ¶¶ 2 - 4.

   F.  Extraction-Filtration is not Best Evidence of Infringement.

   C&S claims that Professor Johnson was required to do a full extraction filtration in regard to the analysis of the infringement in this case. That is simply not so. This is a case where there is "direct" evidence of infringement in the form of the Dillon queries. Professor Johnson makes it clear that this was all he needed to arrive at this opinion. Johnson Dec. ¶¶ 1 to 4. Mr. Walker, in contrast, did not even address the "direct evidence" of infringement choosing instead to look to circumstantial evidence and ignoring this obvious "best evidence."

   First, this is a case in which the alleged infringer admits he sat in front of a computer with a copy of the original Berry work when he made his spreadsheet system. There is no question there was access and no question that copying of some form occurred because all the defendants admit it. The Walker Report, by turning to the "Merger" defense, also necessarily admits the Dillon system is similar. That is grounds for the Court to enter summary judgment as a matter of law.

With nowhere else to turn in face of the proof of access and similarity, the Defendants for the first time raise the "Merger" defense. Rather than conceding this is a waived affirmative defense, the Defendants argue, in the face of clear 9th Circuit authority, that the Merger required extraction and filtration relating to the "copyrightability" of Mr. Berry's work. First, this is not necessary because there is direct evidence of copying. *See* Johnson Dec at Exhibit "B" and ¶¶ 1-2 and 4. Second, in regard to what Professor Johnson should have done in this case, the fact is the "original logistics data.mdb" has not been produced and Mr. Walker did his analysis of what he erroneously claims was the Berry system FCS1993. *See* Johnson Dec. ¶ 3. Berry Dec. ¶¶ 1 to 19, and Hogan Dec. Exhibit "A." Professor Johnson is certain of his conclusion that Dillon extracted both data and structure when he ran the queries against Mr. Berry's work. Johnson Dec. ¶ 4 and Exhibit "B."

In regard to *Assessment Technologies of WI, LLC v. Wire Data, Inc.*, 350 F.3d 640 (7th Cir. 2003), Judge Posner made it very clear that if you copy the "nifty way" that a programmer has organized his data in a database you are an infringer. That is all the Professor's report establishes and that is precisely what Dillon did, however he accomplished it, he cannot claim to have added anything original into the creation of these spreadsheet programs. Their admission to

8

access and substantial similarity should end the inquiry.

*Wire Data* is on all fours with this case and stands for the proposition that, had they done what Professor Johnson had claimed would be a simple task of "normalizing the data" they could have extracted it into a flat file and then sit back and organize it according to their own choices rather than the choices that Mr. Berry made. That is what infringement is about. Dillon added nothing of his own. In fact, C&S admits at p. 19 of its materials that "the only thing the copyright could possibly protect is the way the data is organized." This is an admission that Mr. Dillon committed infringement. The way the data was organized is what makes this infringement and the way that Dillon organized it was simply to copy Mr. Berry's structure and that clearly is infringement.

    G.    The Defense of Merger is Irrelevant and was Waived in the Answer.

As to the post August 23, 2003 period, C&S like Fleming, for the first time in this case raises the affirmative defense of "Merger." This defense was not raised in the answer and is waived. Hogan Dec. Exhibit "B"; *See* Nimmer on Copyrights § 13.03[B][3] *(citing Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971) (The allegedly infringing party bears the burden of proof on issues relating to merger, as the merger doctrine is an affirmative defense to infringement)). Further, in split between circuits the 9th Circuit holds that

9

merger is related to a defense not to the issue of copyrightability. *See Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068, 1082 (9th Cir. 2000). The Walker report claims that Mr. Berry had the burden to provide the extraction related to the copyrightability "thin" vs. "broad" protection related only this waived defense. He had no such burden as a matter of 9th Circuit law.

Further, Walker makes no case that there is only one way to write a freight control system that is a necessary predicate to a Merger defense. Surely Mr. Walker could have come up with one of the hundreds of freight systems to show that they are all just like Mr. Berry's. In addition, as set forth in the Declarations of Wayne Berry and Professor Phillip Johnson, Mr. Walker did his extraction filtration analysis with somebody's software. It isn't clear however that it was Mr. Berry's software and, in fact, is likely to be another one of Dillon's derivatives illegally created and kept as one of Mr. Dillon's treasure trove of Berry Technology works. *See* Johnson Dec. At ¶¶ 5 and 6-10 and Berry Dec. ¶¶ 2 - 19 and Hogan Dec. Exhibit "A."

As to Professor Johnson's need to review the relevant software, the relevant software was a work which was entitled "original logistics data.mdb." It is undisputed that this was the copy that Mr. Dillon employed to create his Excel Spreadsheet Derivative. There has never been a production of that copy to date

10

although it is clearly being used in defense by Fleming it has not been disclosed.

Professor Johnson used the Dillon queries because they are direct evidence of

infringement.  Professor Johnson did all that any legitimate expert would do is to

use the admissible and valid evidence before him.  Unlike Mr. Walker who used

another cooked up version of the Berry software to create his report that is based

on a clearly inappropriate and improper circumstantial proof.

> The element of copying is rarely the subject of direct
> evidence . . . Where a high degree of access is shown, we
> require a lower standard of proof of substantial
> similarity. For the purposes of summary judgment, Carey
> conceded that she had a high degree of access
> [Plaintiff's] burden of proof of substantial similarity is
> thus commensurately lowered.

*Swirsky v. Carey*, 376 F.3d 841, 844-845 (9th Cir., 2004) (emphasis added)

(citations omitted.)

> Absent direct evidence of copying, proof of infringement
> involves fact-based showings that the defendant had
> "access" to the plaintiff's work and that the two works
> are "substantially similar".

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir., 2000) (emphasis

added).

Thus, the Court of appeals would more than likely disregard Walker's report

as based on an unwarranted circumstantial analysis of the evidence while ignoring

11

the direct evidence contained in the source code. Johnson Dec. ¶¶ 2 & 4.

Going back to one of Fleming's favorite areas is that Mr. Berry is claiming a copyright in sequential numbers. That is simply not true and misstates the record in this case. Mr. Berry organized his freight database in a specific way based on choices he made. Clearly a person could come up with similar choices and not infringe. What you can't do is simply copy Berry and then say "I bet you I could have come up with these if I had done it myself" when, in fact, all you've done is copy it. That is what the Copyright Act protects. It protects acts of copying and that is what the Johnson Report evidences C&S engages in when it operates the freight control system that is resident within the Dillon spreadsheets.

At p. 21, C&S makes the outrageous statement that by changing the name of the fields that Mr. Berry had created they somehow had washed themselves from the infringement of having taken the columns and the relationships in the first place. This is absolutely absurd and the idea that by simply changing the name of a title of a novel one can become the owner of the copyright is something that the Court should make a very clear pronouncement that this is simply not the law. Had someone sat down and created a freight control system and came up with a table name that Mr. Berry used based on some external factor, clearly they would be able to argue that it was simply happenstance that they had that name. That is

12

not the case in which Mr. Dillon sat down with Mr. Berry's software and copied it

but as he copied it he made the program change the name so it wouldn't look quite

as infringing. That, they claim is an original work. That is simply nothing but

pure unadulterated infringement.

III.   ARGUMENT.

A.   Fleming Already Lost the Copyrightability and EULA Fight.

Whatever C&S got regarding Mr. Berry and his original work

FCSlogisticsdata.mdb, it derived from Fleming. Fleming has already lost on the

issues of copyrightability and the EULA and these issues are collateral estoppel.

C&S does no claim to independently created the Spreadsheet system. It concedes

Fleming did this. Fleming is and was bound by the Berry EULA because it

litigated the issue and lost. Hogan Dec. Exhibits "F" to "H". The EULA controls

the rights related to the creation of the C&S work. Berry Dec. Exhibit "20." In

addition, C&S concedes at p. 24 of its materials that Fleming committed

infringement. "When Mr. Dillon created the spreadsheets, he copied only a small

fraction of the fields in the database Mr. Berry created.  Berry's database

organizes data in 65 tables and 1,334 fields. The structure of the spreadsheets is

obviously dramatically different as they contain only 13 worksheets and 260

columns." (Emphasis added). Thus, they claim that spreadsheets had to copy his

13

entire "structure" to be infringing.  This is obviously wrong.  The spreadsheets contain some of the elements contained in the database Berry created.  But the above is a judicial admission by C&S that Fleming copied and committed infringement regarding the software C&S admits it is using.   The Court can stop and move on. This statement that C&S copied a "small subset" of the works and columns contained in the database Mr. Berry created is an admission they are infringers.  The Walker report should be disregarded and the Court should enter summary judgment.  The fact that Mr. Walker claims that there is some shuffling of the deck that makes it less visible is hardly going to relieve C&S of its admission that, in fact, it is engaged in infringing use of Berry's work.

B.    The Defendants all Admit Access and Similarity.

The most important fact is the that the Merger argument necessarily admits similarity. There no question that Dillon had access and actually used the Berry software to create his program.  The admission of similarity in the Walker Report that is bound up in the waived Merger defense admits that under the "inverse ratio rule" summary judgment is mandatory.

> "Inverse Ratio Rule": In the Ninth Circuit, the question of access and substantial similarity are "inextricably linked." This circuit applies an "inverse ratio rule" in which a lower standard of proof of substantial similarity is needed for a finding of infringement when a high degree of access has been shown. . .

14

*See* Ninth Circuit Model Civil Jury Instructions - Further Comments Further Comments to Instruction 20.3 (citations omitted).

There cannot be a higher degree of access than having a copy of the software on your computer when you run your queries against it. In light of the admission of similarity, the Court must grant Mr. Berry's Motion.

As to the claim that MS Access® will automatically create a copy of Mr. Berry's work, there has been nothing to actually demonstrate that. The fact that a rudimentary database is easy to make does not change that it is an original literary expression and is protected by the Copyright Act as set forth in *Wire Data, see supra*.

Finally, as set forth in the Declarations of Wayne Berry and Phillip Johnson, Ph.D., Mr. Walker didn't use a copy of Mr. Berry's works when he did his report. Johnson Dec. ¶¶ 5 -10.   Berry Dec. ¶¶ 2 - 19.

> C.    The Defendants Admit that They Formatted the C&S Hard Drive Right After this Court Asked to have the Court's Expert Examine it.

As to spoliation, in what is almost unimaginably telling look inside the Fleming/C&S thinking, they claim that Mr. Berry not wanting them to have his unlicensed software on their computers while also not wanting to have them destroy evidence is somehow inconsistent. This is absurd. That's what the law

15

requires.  Mr. Berry has a right to know what they did with his software and how much money they derived from its unlicensed use.  He has a right then to have it removed appropriately with a "court order."   Fleming and C&S have not even remotely addressed the evidence that Mr. Berry set forth regarding the scrubbing of the computers after this Court issued its directive that a master go in and examine the computers.  This is un-rebutted and deemed admitted.  C&S also hasn't even attempted to rebut the proof related to damages or evidence of trade secret misappropriations that are set forth in the Plaintiff's Motion.  These issues are also conceded.  See Hogan Dec. Exhibit "I" at ¶¶ 1-43.

Once again, C&S through Fleming's counsel is again harping on the NTI issue.  As stated before, Mr. Berry's counsel did not threaten NTI with a lawsuit.  He simply informed NTI that there was a lawsuit pending and that Berry did not consent to the copying.  That is simply a statement of fact, it is not a threat.

Question Mr. Capozzola:     Did you interpret Mr. Hogan's call as a threat?

Answer Mr. Anderson:     No.

*See* Deposition of Michael Anderson taken in Fleming Companies, Inc., Bk. No. 03-10945 (MFW) (Bankr.Del.) at pg. 17:2 to 4.  C&S Concise Statement Exhibit "I" at pg. 17.  The NTI personnel thanked Mr. Hogan and their lawyers breathed a

16

sound sigh of relief that they had too not fallen into the Sarbanes-Oxley nightmare

that Guidance apparently went in with eyes wide shut. Hogan Dec. ¶ 13.

D.    C&S Will Still be A monopoly.

As to the antitrust allegations, clearly C&S is now feeling a little bit of the

heat being the only full line grocery wholesaler on Oahu. Mr. Berry is a person

who can provide software that can bypass C&S and essentially operate in

competition with C&S. Berry Dec. At ¶¶ 22 & 23.   Maybe Mr. Berry will not be

allowed to bring this claim since the Court does not believe he has standing. The

fact is, C&S is still a monopoly.

E.    The C&S Logistics Department is Continuity for Fleming RICO.

As to the allegations that there are no RICO claims, criminal copyright

infringement is a RICO predicate as is destruction a debtor's financial records and

perjury in a bankruptcy proceeding. Each day the software is used  separate

predicates occur. This has extended over a period of over two years. There is

sufficient continuity. The Fleming and now C&S Logistics Department has

clearly been organized as a RICO with activities going back into the 90's. The

principal members are all defendants in this case. Therefore the Court should not

grant the Motion in that regard leaving the ability to recovery treble damages for

the jury to decide.

As to ES3, it and C&S share the same network facilities and officers. The inference is that copies of Mr. Berry's works are being transmitted through that network through the preserved alleged experimental field "scratch name" that links to a mainframe.   A year ago ES3 was advertising for computer programers to assist with its software.  Now it is seeking programers to program in Access and Excel.  Berry Dec. ¶¶ 26-28 and Exhibits "23" and "24".   The clear inference is that ES3 and C&S have new "Berry Technology" insured by the PCT litigation trust and are infringers.

F.    Mr. Cohen Has Been Using the Berry Software.

As to Mr. Cohen, the deposition of Mark Dillon identified Mr. Cohen as someone teaching the employees how to use the mainframe computer system. *See* Deposition Transcript of the Deposition of Mark Dillon taken on December 16, 2003 at pg. 110:13 to 111:8.   Hogan Dec. Exhibit "J."  In light of the admission that Mr. Dillon created a mainframe connection that was extracted into the spreadsheets, the inferences is that Mr. Cohen has been a user of the Berry system because he is showing his employees how to use the mainframe. Why else would Dillon copy this field into his new infringing work if he didn't want to preserve it for his new boss, Mr. Cohen.  In any event Mr. Cohen has permitted the use of the Dillon spreadsheets and has the ability and responsibility to stop it. He is a clear

18

contributory and vicarious infringer as a matter of law.

G.    C&S Failed to Rebut the Ueno Report.

The damage computation of Thomas Ueno, CPA is unchallenged. In light of

the concession that the hard dive of the server was formatted, the Court should

adopt Mr. Ueno's highest estimate to arrive at the license and lost profits.

IV.    CONCLUSION.

For the reasons stated, the Court should deny the counter-motion and grant

Mr. Berry's motion in all respects.

DATED:  Honolulu, Hawaii, _____ June 9 2001 .

_____

TIMOTHY J. HOGAN
Attorney for Plaintiff

19