LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **STATEMENT OF APPEAL OF** |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| HAWAIIAN EXPRESS SERVICE, | ) | **REQUEST FOR F-1 PROGRAM** |
| INC., a California corporation; et al. | ) | **MATERIALS FILED BY** |
| | ) | **DISCOVERY MASTER CLYDE** |
| | ) | **WM. MATSUI, ESQ. ON AUGUST** |
| | ) | **29, 2005; DECLARATION OF** |
| | ) | **TIMOTHY J. HOGAN; EXHIBITS** |
| | ) | **"1"- "4"; CERTIFICATE OF** |
| | ) | **SERVICE** |
| | ) | |
| | ) | Non-Hearing Unless Ordered |
| | ) | Judge: Susan Oki Mollway |
| Defendants. | ) | |
| | ) | Trial Date: January 24, 2006 |

Exhibit 44

SEP 09 2005

**PLAINTIFF WAYNE BERRY'S STATEMENT OF APPEAL
OF ORDER DENYING PLAINTIFF'S REQUEST FOR F-1
PROGRAM MATERIALS FILED BY DISCOVERY MASTER
CLYDE WM. MATSUI, ESQ. ON AUGUST 29, 2005**

Comes now Wayne Berry, by and through his undersigned counsel, and

hereby respectfully appeals the Order Denying Plaintiff's Request for F-1 Program

Materials filed by the Discovery Master Clyde W.M. Matsui, Esq. on August 29,

2005 (the "Order").   This Statement of Appeal is brought pursuant to 28 U.S.C. §

636(b)(1)(A) and L.R. 74.1.   A copy of Mr. Berry's August 30, 2005 submission

of the Master's Order is attached to the Declaration of Timothy J. Hogan (the

"Hogan Dec.") as Exhibit "1."  Mr. Berry notes that the Magistrate Judge has not

yet adopted the Master's order that the Master *sua sponte* filed on August 29,

2005, and this Statement of Appeal is filed as a protective measure.

I.    INTRODUCTION.

    A.    Grounds for the Appeal.

The Discovery Master's Order denied Mr. Berry's request to compel the

Post-Confirmation Trust ("PCT") to produce Fleming Companies, Inc.'s

("Fleming's") F-1 Program materials despite Mr. Berry producing evidence that

Mr. Berry's Access Freight Control system was the subject of certain of the F-1

Program documents.   This Order is being appealed on the grounds that it has

2

denied Mr. Berry the relief sought that is relevant and clearly necessary to permit

him a fair opportunity prosecute his claim to damages in this case and to respond

the pending motions for summary judgment.  In addition, Mr. Berry appeals the

Master's Order on the grounds that the Master granted a request for sanctions

based on the same clearly erroneous findings that supported the denial of the letter

brief Motion.  All of the support that the Discovery Master's Order claims was

missing from Mr. Berry's submissions, and therefor grounds for both denying the

request for the F-1 materials and the granting of sanctions, was provided by Mr.

Berry in his supporting papers.  The Master's Order is therefore based on clearly

erroneous findings and contrary to law.   Therefore, the Master's order  should be

reconsidered the requested materials ordered produced and the Order, regarding

sanctions, vacated in its entirety.

II.    BACKGROUND.

As set forth in the Hogan Dec. Exhibit "2", which is a true and correct copy

of Mr. Berry's letter brief dated August 12, 2005 submitted to the Discovery

Master regarding the request for the F-1 program materials, Mr. Berry established

that, in the Spring of 2001 Fleming engaged the services of Ernst & Young

through its subsidiary "CAP Gemini," to create a company wide automation

system that was referred to as the Fleming "F-1" project.

Mr. Berry first began to seek these materials in late 2003.  *See* Hogan Dec.

Exhibit "2" at its own Exhibit "B" that is an excerpt of Mr. Berry's November 3, 2003 Third Request for Production of Documents directed to Fleming.   Fleming resisted the discovery.  In email dated May 25, 2005, part of an email thread addressing outstanding discovery, the PCT's counsel, in support for the PCT's refusal to produce the requested materials, wrote the "the F-1 project was an effort to replace Fleming's existing hardware and software with "best of breed" replacements in each of the functional areas of the company, and to allow the functional systems . . . to talk to each other through the use of a "middleware" system that would link them together.  The Berry system was never contemplated to be one of these systems...." *See* Hogan Dec. Exhibit "2" at its Exhibit "A" page 2 of 6 (emphasis added).   It is well established in this case that Fleming continued to use the Berry system un-interrupted from October 1999 to June 9, 2003.   The teleconference notes created by Ernst & Young evidence that the Berry Access Database freight control system was to be replaced, but that "the functionality of this DB must be matched or improved in the F-1 solution."  Hogan Dec. Exhibit "A" at page 2 and 3 of 6 (emphasis added).  It is established in this case that Fleming never replaced Mr. Berry's work and continued to use infringing versions of Mr. Berry's FCS up to June 9, 2003.  Why Fleming chose not to replace the Berry system, whose functionality it's consultant admits "must be matched or improved" is directly relevant to the issue of the causal link between indirect

4

profits generated from the Berry Freight Control System's use by Fleming's Hawaii division.  The decision to keep the Berry system, despite the admission that it involved, "licensing issues" is directly relevant to the issue of damages.  Mr. Berry's damage Expert, Mr. Ueno's opinion regarding the importance of the Berry system to the Fleming operation should be considered by the Court and therefore is still clearly relevant to the issues remaining case.  The inclusion of the Berry Access database in the F-1 Program as evidenced by the Teleconference Notes of Fleming's IT consultant Ernst & Young shows the importance of this system to Fleming's Hawaii operations and supports Mr. Ueno's opinion that the Berry system was an integral part of the overall operation.  *See* Hogan Dec. Exhibit 2 at its Exhibit "F" at pg. 115:23 to 116:24.  That causal connection is exactly what Mr. Berry need show to be entitled to indirect profits as set forth in the Court's June 27, 2005 Order regarding summary judgment.  By denying this request, Mr. Berry is severely prejudiced in his need to show a causal connection between Fleming's Hawaii based revenues and its use of an unlicensed derivative copy of his Freight Control System.  Being related to a claim or defense, under Fed. R. Civ. P. 26, the materials are relevant and should have been produced.  In addition, the F-1 Materials that as set forth in Hogan Dec. Exhibit "2" are also relevant to the right to seek a permanent injunction that was part of the basis for the request set forth in the Letter Brief as they show an intent to copy and/or reverse engineer

5

Mr. Berry's system in violation of his exclusive rights.   Ernst & Young is still

actively engaged in Fleming related matters and they would be covered by any

permanent injunction as Fleming's agent.   That additional grounds was not even

addressed by or acknowledged in the Master's Order.

    A.    The Master Set Forth Four Things That He Claimed Mr. Berry
          Failed to Show, All of Which were Addressed by the Materials
          <u>Presented to the Master.</u>

The Order at No. 2 establishes that its was entered "without prejudice, and

that Plaintiff will be permitted to renew his request, with additional information

tending to show ..." four categories of information.   Mr. Berry respectfully submits

that all of the information was supplied to the Master who did not consider it in

reaching his decision that was therefore based on clearly erroneous factual

findings.   Mr. Berry will address each of the four categories and show that the

Master's decisions was clearly erroneous.

    1.    <u>That the F-1 Project was Operational.</u>

This factor was clearly and undisputedly established by Exhibit "A" to the

the Reply filed by Mr. Berry on August 17, 2005 (Hogan Dec. Exhibit 4 at its

Exhibit "A", ¶ 109) in response to the PCT erroneous claim in its opposing letter

brief dated August 14, 2005 that F-1 was never operational.   *See* Hogan Dec.

Exhibit "3."   It appears that the Master did not even read the Reply (Hogan Dec.,

Exhibit "4") or consider this evidence that shows that Fleming's own agent, AP

Services, LLP, admitted under oath that Fleming operated the F-1 Project up until May 2003, well within the period that is relevant to the damage claim that the Court has established as March 7, 2003 to June 9, 2003. *See* Hogan Dec. Exhibit "4" at Exhibit "A" at ¶ 109.  This finding was clearly erroneous.

      2.    <u>That It Was Used by Fleming during the Relevant Time Period.</u>

As set forth in section "1" above, the evidence attached to the Reply clearly establishes that the F-1 was operating F-1 up to May 2003. The relevant time is March 7, 2003 to June 9, 2003. The finding that May 2003 is not "during" the period of March 7, 2003 and June 9, 2003 is clearly erroneous. *See* Hogan Dec. Exhibit 4 at its Exhibit "A" at paragraph 109.

      3.    <u>That the Berry Freight Control System Was Incorporated Into the F-1 Project.</u>

The Ernst & Young teleconference notes are part of the F-1 materials related to the F-1 Project and was covered by the Berry document request. *See* Hogan Dec., Exhibit "2" at its Exhibits "C" and "D".  This evidence contains obvious reference to the Berry Access database.  To the extent that the Berry system was discussed or addressed in the F-1 materials it was "incorporated" in the project at least as it related to its planning.  These requested documents are relevant even if, as Fleming claims, it was never "incorporated" the actual copy of the Berry system in the F-1 system companywide.  In addition, if F-1 was to allow the systems to

"talk" to each other, how did Fleming's Hawaii division's Berry freight system

"talk" to the rest of the company if not through the F-1 program?    The project was

moving to incorporate Berry's works or at a minimum replace his work because it

was critical to the Fleming operations.  Fleming claims that it never did that.  The

F-1 materials must necessarily contain some basis for Fleming choosing  not to

replace the Berry system.  Even if it was not incorporated in the system, as Fleming

states, it was being considered and the evidence is in the F-1 project materials that

Mr. Berry has produced to the Master.  The reason that Fleming chose to use

Berry's system, with what is admitted and proven to be "licensing issues," rather

than the Manugistics and SAP development is directly related to the issue of

causation.   That evidence is relevant and discoverable and the Master should not

have blocked relevant discovery in this case.

As Hogan Dec. Exhibit 2 at its Exhibit "E" shows SAP, that was identified in

the CAP Gemini Teleconference notes was part of the F-1 program.  *See* Hogan

Dec., Exhibit 2 at Exhibits "C" and "D".  Mr. Berry produced evidence of the

existence of SAP materials on the Fleming Logistics computers.  Hogan Dec.,

Exhibit "E".  This is circumstantial evidence of the implementation of the F-1

program at the Fleming logistics operations in Hawaii that ran Mr. Berry's system

during the relevant period.   Mr. Berry more than met his obligation to show the

materials are relevant to claim or defense. The Master's requirement that Mr. Berry

8

first produce evidence proving a fact not even necessary to the issue of relevance is contrary to law.   Logical relevance is defined by the Fed. R. Evid. as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Therefore, Mr. Berry burden under Fed. R. Civ. P. 26 is to show that this evidence has "any tendency" to prove or disprove that any portion of Fleming's profits were indirectly caused by the use of his system.  The evidence of the Teleconference Notes shows that the Fleming IT consultants believed that the system was so important to the Hawaii division's future that its functionality "must" be duplicated by F-1.  The reasonable inference is that is because it made it more profitable.  The F-1 program materials must contain some evidence of why Fleming chose to retain the use of Mr. Berry's system with its "licensing issues" rather than, as the Teleconference notes show, permit the replacement to be developed.  Even if all that these materials show is that Fleming found it cheaper to run Berry's database than allow a replacement to be made, that would be relevant to profits because of the cost avoided by such a decision that could have been used for other needs.  The Master should not block relevant discovery and should have ordered the production.

4.    How the F-1 Project is Relevant to the Issue of Damages
For the Period of April 1, 2003 - June 9, 2003.

As set forth in Mr. Berry's letter brief, Mr. Ueno, Mr. Berry's damage

expert's report is based on the opinion that the Berry system was an "integral part"

of the Fleming operations. *See* Hogan Dec. Exhibit "2" at its Exhibit "F" at ¶¶

115:22 to 117:21.   The PCT in its pending Summary Judgment Motion on

Damages has claimed that Mr. Ueno's report should be disregarded, in part because

it is based on an alleged false premise, that there is a causal connection between the

Fleming Hawaii division's gross receipts and Mr. Berry's work.  These materials

are reasonably calculated to  show whether Mr. Ueno's opinion is correct.  The

Master, in denying this request on the failure to show relevance, has based his

ruling on a clearly erroneous finding and is  contrary to law related to discovery.

B.    The Master's Ordering of Sanctions Against Mr. Berry Was
Based on the Clearly Erroneous Findings and Contrary to Law.

First, as an initial matter, Mr. Berry does not concede that Discovery Master

should do anything but recommend to the Magistrate or the District Court that a

sanction should issue.

Second, as set forth above, the only basis for the Master's Sanction Order,

was because the Master erroneously found that the Plaintiff had failed to set forth

certain support that was apparently ignored by the Master.  Because the factual

premise for the sanction was clearly erroneous the Court should vacate the order

10

granting sanctions.

Third, the Master's order has a clear *in terrorem* effect on the ability to conduct discovery. The Master's function is to decide discovery issues. There is no evidence that the request was a violation of Rule 11 or that it was not based on a good faith belief that it sough discoverable materials and was objectively reasonable. Over a year and a half had passed since Mr. Berry first requested this information that was being withheld based on the false premise that the system had "nothing to do with Mr. Berry." The Ernst & Young Teleconference notes put the lie to this claim. Counsel and parties should not have to guess whether a perfectly legitimate request for relevant material will engender the wrath of a Discovery Master when the whole purpose for the Master is to field such disputes. Where the Court has delegated its authority to non-judicial actors, the Court must maintain a gate keeper watch on the conduct of such proceedings.

For the reasons stated the Master's Order should be reconsidered and the findings reversed on the grounds that they are clearly erroneous and contrary to law. The sanction, based on the same erroneous findings should be vacated in its entirety.

Should the Court decide to affirm the Master as far as the sanction is concerned Mr. Berry requests that the Court enter a final partial judgment and permit Mr. Berry to appeal this issue to the Court of Appeals.

DATED: Honolulu, Hawaii, _____ SEP 9 2005 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **DECLARATION OF TIMOTHY J.** |
| vs. | ) | **HOGAN; EXHIBITS "1"- "4"** |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF TIMOTHY J. HOGAN

I, TIMOTHY J. HOGAN, am an attorney licensed to practice before all the courts of the State of Hawaii and I make this declaration under the penalty of perjury. All the statements herein are true and correct to the best of my knowledge, information and belief. If called upon to testify regarding the matters herein, I am competent and willing to do so.

1. Attached hereto as Exhibit "1" is a true and correct copy of Plaintiff Wayne Berry's Submission of the Order Denying Plaintiff's Request For F-1 Program materials filed by Clyde Wm. Matsui the Discovery Master on August 29, 2005m, filed on August 30, 2005.

2. Attached hereto as Exhibit "2" is a true and correct copy of a letter to Clyde W. Matsui from Timothy J. Hogan dated August 12, 2005, with attached

Exhibits "A" to "F".

3.  Attached hereto as Exhibit "3" is a true and correct copy of a letter to Clyde W. Matsui from Damian D. Capozzola dated August 16, 2005, with attached exhibit.

4.  Attached hereto as Exhibit "4" is a true and correct copy of a letter to Clyde W. Matsui from Timothy J. Hogan dated August 17, 2005, with attached Exhibit "A".

I hereby declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

DATED:  Honolulu, Hawaii, _____ SEP   9 2005 .

TIMOTHY J. HOGAN

2

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 3 0 2005

at ___ o'clock and ___ min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | Civ. No. CV03 00385 SOM-LEK (Copyright) |
| Plaintiff, | |
| vs. | PLAINTIFF WAYNE BERRY'S SUBMISSION OF ORDER DENYING PLAINTIFF'S REQUEST FOR F-1 PROGRAM MATERIALS; DECLARATION OF TIMOTHY J. HOGAN; EXHIBIT "A"; CERTIFICATE OF SERVICE |
| HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al. | |
| Defendants. | Non-Hearing Magistrate Judge: Honorable Leslie Kobayashi |

# EXHIBIT "1"

)
_____ )

## PLAINTIFF WAYNE BERRY'S  SUBMISSION OF ORDER DENYING PLAINTIFF'S REQUEST FOR F-1 PROGRAM MATERIALS

Comes now Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel and hereby respectfully submits the Discovery Master's Order Denying Plaintiff's Request for F-1 Program Materials (the "Order").

Mr. Berry respectfully advises the Court that, pursuant to paragraph 3 of the Order Appointing Special Master Re: Discovery, filed on November 19, 2004, the Plaintiff shall seek to appeal the Order.  A copy of the Order is attached to the Declaration of Timothy J. Hogan as Exhibit "A."

DATED:  Honolulu, Hawaii, _____ AUG 3 0 2005 _____.


TIMOTHY J. HOGAN
Attorney for Plaintiff
Wayne Berry

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | Civ. No. CV03 00385 SOM-LEK |
| | (Copyright) |
| Plaintiff, | |
| | **DECLARATION OF TIMOTHY J.** |
| vs. | **HOGAN; EXHIBIT "A"** |
| | |
| HAWAIIAN EXPRESS SERVICE, | |
| INC., a California corporation; et al., | |
| | |
| | |
| Defendants. | |

## DECLARATION OF TIMOTHY J. HOGAN

I, TIMOTHY J. HOGAN, am an attorney licensed to practice before all the courts of the State of Hawaii and I make this declaration under the penalty of perjury. All the statements herein are true and correct to the best of my knowledge, information and belief. If called upon to testify regarding the matters herein, I am competent and willing to do so.

Attached hereto as Exhibit "A" is a true and correct copy of the Plaintiff Wayne Berry's Submission of Order Denying Plaintiff's Request for F-1 Program Materials (the "Order"). Plaintiff intends to appeal the Order.

DATED:  Honolulu, Hawaii, _____ AUG 3 0 2005 _____ .

_____

TIMOTHY J. HOGAN

2

Of Counsel:
MATSUI CHUNG SUMIDA & TSUCHIYAMA
A Law Corporation

CLYDE WM. MATSUI  1329-0
Suite 1400 Mauka Tower
737 Bishop Street
Honolulu, Hawaii  96813
Telephone No.: 536-3711
Facsimile No.: 599-2979
E-Mail: info@triallawhawaii.com

DISCOVERY MASTER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 9 2005

at _____ o'clock and _0 5_ min. _P_ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM LEK |
| | )      (Copyright) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| HAWAIIAN EXPRESS SERVICE, | ) ORDER DENYING PLAINTIFF'S |
| INC., a California corporation; H.E.S. | ) REQUEST FOR F-1 PROGRAM |
| TRANSPORTATION SERVICES, INC., | ) MATERIALS |
| a California corporation; CALIFORNIA | ) |
| PACIFIC CONSOLIDATORS, INC., a | ) |
| California corporation; JEFFREY P. | ) |
| GRAHAM and PETER SCHAUL, | ) |
| California citizens; MARK DILLON and | ) |
| TERESA NOA, BRIAN | ) |
| CHRISTENSEN, Hawaii citizens; | ) |
| FLEMING COMPANIES, INC., an | ) |
| Oklahoma corporation; C&S | ) |
| LOGISTICS OF HAWAII, LLC, a | ) |
| Delaware LLC; C&S WHOLESALE | ) |
| GROCERS, INC., a Vermont | ) |
| corporation; C&S ACQUISITIONS, | ) |

**EXHIBIT "A"**

LLC; FOODLAND SUPER MARKET, )
LIMITED, a Hawaii corporation; )
HAWAII TRANSFER COMPANY, )
LIMITED, a Hawaii corporation; )
RICHARD COHEN, a New Hampshire )
citizen, ES3, LLC, Delaware Limited )
Liability Company, MELVIN PONCE, )
SONIA PURDY, JUSTIN FUKUMOTO,)
AFREDDA WAIOLAMA, )
JACQUELINE RIO, Hawaii citizens; )
JESSIE GONZALES, )
(CAPTION CONTINUED) )
LUIZ RODRIGUES, AL PEREZ, )
PATRICK HIRAYAMA, California )
citizens; GUIDANCE SOFTWARE, )
LLC, a California LLC; MICHAEL )
GURZI, a California citizen; ALIX )
PARTNERS, LLC a Delaware LLC; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
)
Defendants. )
)

---

## ORDER DENYING PLAINTIFF'S
## REQUEST FOR F-1 PROGRAM MATERIALS

Plaintiff WANYE BERRY submitted a request for the production of

Fleming Companies' F-1 Program Materials, as "Confidential", dated August 12,

2005; and

Defendant FLEMING COMPANIES, INC.'s Post Confirmation Trust

("PCT") submitted a letter in opposition to Plaintiff's request, dated August 16,

2005; and

2

Plaintiff submitted a reply letter dated August 17, 2005; and

Plaintiff and PCT requested sanctions against the other; and

No other party submitted a position regarding this issue; and

Having reviewed the memoranda presented; now, therefore, good

cause appearing,

It is hereby ORDERED, ADJUDGED AND DECREED that:

1. Plaintiff's request is denied because the request does not appear to be reasonably calculated to lead to the discovery of admissible evidence relevant to the issue of damages for the period April 1, 2003 - June 9, 2003.

2. This denial is without prejudice, and Plaintiff will be permitted to renew his request, with additional information tending to show (1) that the F-1 project was operational, (2) that it was used by Fleming during the relevant time period, (3) that the Berry Freight Control System was incorporated into the F-1 project, and (4) how the F-1 project is relevant to the issue of damages for the period April 1, 2003 – June 9, 2003.

3. Plaintiff's request for sanctions is denied.

4. The PCT's request for sanctions is granted. Plaintiff shall, no later than September 15, 2005, reimburse the PCT $1,200.00 for the fees incurred by the PCT in addressing Plaintiff's request, which did not sufficiently include the information noted in Order No. 2, above. Such information is necessary to address Plaintiff's request. A request absent such necessary information, therefore, resulted in a waste of time and effort.

DATED: HONOLULU, HAWAII, August 29, 2005.

CLYDE Wm. MATSUI
Discovery Master

3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| vs. | ) | |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing document were

duly served upon the following parties via hand delivery and/or first class mail,

postage prepaid, to their last known addresses on _____ **AUG 3 0 2005** ___:

LEX R. SMITH, ESQ.                                 Hand Delivered
ANNE E. LOPEZ, ESQ.
Kobayashi Sugita & Goda
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Attorneys for Defendant
Fleming Companies, Inc.
C&S Wholesale Grocers, Inc.,
C&S Logistics of Hawaii, LLC,
C&S Acquisitions, LLC, ES3, LLC
and RICHARD COHEN

LYLE HOSODA, ESQ.                          Hand Delivered
345 Queen Street, Suite 804
Honolulu, Hawaii 96813
Attorney for Defendants Mark Dillon,
Brian Christensen and Teresa Noa
Melvin Ponce, Alfredda Waiolama,
Jacqueline Rio, and Justin Fukumoto

ERIC C. LIEBELER, ESQ.                     First Class Mail,
DAMIAN CAPOZZOLA, ESQ.                     Postage Prepaid
MELISSA M. DULAC, ESQ.
R. OLIVIA SAMAD, ESQ.
Kirkland & Ellis
777 South Figueroa Street
Los Angeles, CA 90017
Attorneys for Defendant Fleming Companies, Inc.

SHELDON S. TOLL, ESQ.                      First Class Mail,
2000 Town Center, Suite 2550              Postage Prepaid
Southfield, MI 48075
Attorney for Defendant
ALIX PARTNERS, LLC

REX FUJICHAKU, ESQ.                        Hand Delivered
Bronster Crabtree & Hoshibata
1001 Bishop Street, Suite 2300
Pauahi Tower
Honolulu, Hawaii 96813
Attorneys for Defendants
GUIDANCE SOFTWARE, LLC
and MICHAEL GURZI

WESLEY H. H. CHING, ESQ.                   Hand Delivered
Fukunaga, Matayoshi, Hershey & Ching, LLC
1200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813

2

Attorney for Defendant
Hawaii Transfer Company, Limited

CLYDE MATSUI, ESQ.                                    Hand Delivered
Matsui Chung Sumida & Tsuchiyama
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 1400
Honolulu, Hawaii 96813
Discovery Master

DATED: Honolulu, Hawaii, _____AUG 3 0 2005_____.

_____

TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
ANN C. KEMP
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813
TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997

*Counsel*
TIMOTHY J. HOGAN
——————
*Of Counsel*
GREG TURNBULL, Psy.D

August 12, 2005

Clyde W. Matsui, Esq.
Matsui Chung Sumida & Tsuchiyama
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 1400
Honolulu, Hawaii 96813

VIA FAX  599-2979
And Email

Re:  **Wayne Berry v. Hawaiian Express Service, et al.,**
     **Civ. No. CV03-00385 SOM-LEK**

Dear Mr. Matsui:

I am writing regarding discovery that has been outstanding for well over a year. The attached email thread (Exhibit "A") describes the request for the Fleming "F-1" materials that remain directly relevant to the issue of causation regarding Mr. Berry's damages. Exhibit "B" is an excerpt of Mr. Berry's Third Document Request made in November 2003. Its Exhibit A-1 is a copy of Kirkland & Ellis' time records showing that they possess materials responsive to the request. Fleming has resisted production on the grounds of relevancy. I request that the Master promptly rule on this issue so that Mr. Berry can address upcoming motions deadline that is set for August 24, 2005. We have cooperated with Fleming in its request to expedite these matters and I request that they reciprocate.

To summarize, in the spring of 2001, Fleming engaged the services of Ernst & Young through it subsidiary CAP Gemini to create a company wide automation system that was referred to as "F-1". Attached as Exhibits "C" and "D" are copies of conference call notes of Ernst & Young that were produced by Guidance Software in the After Images. I have printed the pdf files' internal notation evidencing the author. The email thread, Exhibit "A" at page at page 2 is a red line comparison of the two versions of these notes. Exhibit "C" appears to be the "Revised" version.    I recently discovered that these were not deleted when I scrubbed all but a few of the Guidance After files from my computer on July 20, 2005 as I had so informed Fleming and the Master. These files clearly evidence that Fleming was going to reverse engineer and/or copy Mr. Berry's FCS 1993. Relevant to the present case, this system was to become a integral part of the Fleming F-1 solution. We have evidence in the Guidance file listings that SAP was running in the Fleming Hawaii freight operations. *See* Exhibit "E."

Mr. Ueno, our damage expert, has testified that the Berry system was an "integral part" of the Fleming operations, making the causal link that would entitle Mr. Berry to significant damages. *See* Exhibit "F."

# EXHIBIT "2"

Clyde W. Matsui, Esq.
August 12, 2005
Page 2


These materials remain clearly relevant to the issues of damages and injunction that are still remaining.  We request that you order them produced immediately under the Confidential classification.  They have been produced to the SEC and we would like to have the ability to verify that we obtained the correct records by sharing our copy with the SEC.  I also request an appropriate sanction for the withholding of this evidence.


Very truly yours,

LYNCH ICHIDA THOMPSON KIM & HIROTA

Timothy J. Hogan


TJH:llk

Enclosures: Exhibits "A" to "F"

cc       Counsel (via e-mail only).

## Timothy J. Hogan

| | |
|---|---|
| **From:** | Damian Capozzola [dcapozzola@kirkland.com] |
| **Sent:** | Friday, August 12, 2005 9:16 AM |
| **To:** | Timothy J. Hogan |
| **Cc:** | Eric Liebeler; lrs@ksglaw.com; act@ksglaw.com; lex@gte.net |
| **Subject:** | RE: Outstanding Discovery from 2003 and 2004 - Highly Confidential-Attorney's Eyes Only |

Mr. Hogan,

    Given the current posture of the case we believe that nothing about the F-1 project is reasonably calculated to lead to the discovery of evidence admissible on any remaining live issue.  We thus do not agree to voluntarily produce the materials. 

    Thank you for your attention to these matters.

–Damian Capozzola

**Damian D. Capozzola | KIRKLAND & ELLIS LLP**
777 South Figueroa St., Floor 37  | Los Angeles, CA 90017
213.680.8653 PHONE | 213.448.2709 MOBILE | 213.680.8500 FACSIMILE

dcapozzola@kirkland.com | www.kirkland.com/dcapozzola

| | |
|---|---|
| "Timothy J. Hogan" <tjh@lolo.com> | To "Damian Capozzola" <dcapozzola@kirkland.com> |
| | cc "Eric Liebeler" <eliebeler@kirkland.com>, "Lex Smith" <lex@gte.net> |
| 08/11/2005 04:01 PM | Subject RE: Outstanding Discovery from 2003 and 2004 - Highly Confidential-Attorney's Eyes Only |

Documents in the After Files -Highly Confidential-Attorney's Eyes Only

Counsel:

In a review of materials on my system I have come across the attached files that were obtained in the Guidance After files that had been inadvertently missed when I deleted the other After files.  Because these might not be construed to be within the class of files I retained per my letter of June 20, 2005, I am advising you that I have found them.  They show the F-1 program was directly focused on Mr. Berry's system that, by this time, was already an illegal unlicensed derivative.  We have previously identified the following contributors to the F-1 project:

- SAP
- Manugistics
- EXE



8/12/2005

- E3
- TCI

I have also identified specific SAP materials in the Guidance Before lists and the attached file shows Manugistics' role in the Fleming freight operations.

I request that you produce the F-1 materials immediately.

Here is the redline of these Ernst & Young created documents showing the F-1 relation to Mr. Berry's work:

• The Hawaii division ~~has~~uses a MS Access ~~DB~~data base that generates many of the reports and sets the timetable for ~~placing~~receiving orders. It keeps track of ~~things like tariffs~~costs of a shipment including in haul charges, ocean freight and truckers charges

o PO number, product description, item, arrival date is entered into the DB from EDI information out of FOODS using a ~~custom program~~special interface.

• Any updates ~~to the tariff tables~~for changing tariffs must be made by hand

• The functionality of this DB must be ~~reproduced~~matched or improved in the F1 solution

o ~~There may be~~Cannot copy some pieces of existing system due to licensing issues ~~to consider~~

Please advise me immediately if you will voluntarilty produce the materials.

Thank you,

Timothy J. Hogan
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. (808) 528-0100
Fax. (808) 528-4997
Email tjh@loio.com

NOTICE: This email is only for use by the intended recipient. If received in error any use, disclosure or copying is prohibited. Any inadvertent receipt shall not be a waiver of any privilege or work product protection. Please contact the sender at tjh@loio.com or at (808) 528-0100.

**From:** Damian Capozzola [mailto:dcapozzola@kirkland.com]
**Sent:** Saturday, May 28, 2005 12:21 PM
**To:** Timothy J. Hogan
**Cc:** Eric Liebeler; Lex Smith
**Subject:** RE: Outstanding Discovery from 2003 and 2004

1. After some investigation I understand that the F-1 project was an effort to replace Fleming's existing hardware

8/12/2005

and software with "best of breed" replacements in each of the functional areas of the company, and to allow the functional systems (such things as purchasing, inventory management, accounts receivable, etc.,) to talk to each other through the use of a "middleware" system that would link them together. The Berry system was never contemplated to be one of these systems; in fact it is my understanding that you and Mr. Berry have repeatedly made the point that the Berry system was supposed to be phased out. Accordingly, we believe that discovery on this topic is not reasonably calculated to lead to the discovery of admissible evidence and that, even were that not the case, any such connection to admissible evidence is so thin that the burden or expense of such discovery outweighs its likely benefit.

2. We believe the Order speaks for itself and these issues have already been decided.

3. After our summary judgment papers are in we will give this discovery issue our full attention. We believe the issue can wait until then given that the indemnity has no bearing on the matters the parties are briefing on summary judgment.

Thank you for your attention to these matters.

—Damian Capozzola

"Timothy J. Hogan" <tjh@lolo.com>

05/25/2005 04:34 PM

To "Damian Capozzola" <dcapozzola@kirkland.com>

cc "Eric Liebeler" <eliebeler@kirkland.com>, "Lex Smith" <lex@gte.net>

Subject RE: Outstanding Discovery from 2003 and 2004

Mr. Capozzola:

1. F-1 was an initiative to modernize the Fleming IT. It was widely touted to be dealing with both inbound and outbound freight. Berry's system was designed for inbound but could be used for both. I've attached the excerpt from your firm's time records to assist you in your search for the records. If you require more, please advise me immediately.

2. We don't believe that the order meant to prevent our discovery of other sources of proof that have already been created and shared with numerous third-parties. These records can corroborate or refute your showing when you attempt to meet your burden in regard to profits etc. In any event they will also contain disclosure regarding the ongoing Berry litigation and matters unrelated to financials and are relevant and discoverable. Will you produce them?

3. Please advise me when you will produce these long overdue documents. If any are being withheld on privilege please provide a log. I reserve the right to seek additional documents. Please advise me when you will produce these long overdue documents. If any are being withheld on privilege please provide a log.

Thank you,

Tim Hogan

8/12/2005

Timothy J. Hogan
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. (808) 528-0100
Fax. (808) 528-4997
Email tjh@loio.com

NOTICE: This email is only for use by the intended recipient. If received in error any use, disclosure or copying is prohibited. Any inadvertent receipt shall not be a waiver of any privilege or work product protection. Please contact the sender at tjh@loio.com or at (808) 528-0100.

**From:** Damian Capozzola [mailto:dcapozzola@kirkland.com]
**Sent:** Wednesday, May 25, 2005 10:28 AM
**To:** Timothy J. Hogan
**Cc:** Eric Liebeler; Lex Smith
**Subject:** Re: Outstanding Discovery from 2003 and 2004

Mr. Hogan:

With regard to Topic 1, can you please remind me what you understand the F-1 Project to be and your basis for that understanding?

With regard to Topic 2, the Master has already ruled that you are (or, more precisely, your expert is) only entitled to documents bearing on the Hawaii division for the period April 1, 2003 to the present. See attached Order, paragraph 1. The PCT already sent Mr. Ueno the financials for the Hawaii division covering April 1, 2003-August 23, 2003. I understand that C&S is gathering documents but you should deal with Mr. Smith in that regard.

With regard to Topic 3, my recollection is that when we met and conferred on this issue a little while ago we had reduced these requests to communications between Fleming and C&S concerning the indemnity and/or specifically referencing the Berry software. We are gathering relevant materials on these subjects.

—Damian Capozzola

"Timothy J. Hogan" <tjh@loio.com>

05/24/2005 10:50 AM

To "Damian Capozzola" <dcapozzola@kirkland.com>

cc "Eric Liebeler" <eliebeler@kirkland.com>, "Lex Smith" <lex@gte.net>

Subject Outstanding Discovery from 2003 and 2004

8/12/2005

Dear Mr. Capozzola:

I have still not heard your possition on the following long outstanding
discovery:

1.                              F-1 Project materials.  See Berry Third Request No's 1
and 2.

2.                              Financials Produced to potential bidders for Fleming
Wholesale business.  See Berry Second Request No.s 3, 14,
18 and 19.

4.                              C&S Correspondence related to Berry. See Berry Second
request No.s 15, 17, 20 and 22.

If you are not going to produce this material immediately please advise
me of your basis for witholding it so that I may present the matter to
the Discovery Master without delay.

Tim Hogan

_____
Timothy J. Hogan
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii  96813
Tel. (808) 528-0100
Fax. (808) 528-4997
Email  tjh@loio.com

NOTICE:  This email is only for use by the intended recipient. If
received in error any use, disclosure or copying is prohibited. Any
inadvertent receipt shall not be a waiver of any privilege or work
product protection. Please contact the sender at tjh@loio.com or at
(808) 528-0100.

******************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
******************************************************

******************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may

8/12/2005

constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
********************************************************

[attachment "4-17-01 Hawaii Conference Call Notes.pdf" deleted by Damian Capozzola/Los Angeles/Kirkland-Ellis] [attachment "4-17-01 Hawaii Conference Call Notes Rev.pdf" deleted by Damian Capozzola/Los Angeles/Kirkland-Ellis] [attachment "Billing Printing by Report Number.pdf" deleted by Damian Capozzola/Los Angeles/Kirkland-Ellis]

********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.

Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
********************************************************

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) ) | Civ. No. CV03 00385 SOM-LEK (Copyright) |
| Plaintiff | ) ) | |
| | ) | PLAINTIFF WAYNE BERRY'S |
| vs. | ) ) | THIRD REQUEST FOR PRODUCTION OF DOCUMENTS |
| HAWAIIAN EXPRESS SERVICE, | ) | AND THINGS TO DEFENDANT |
| INC., a California corporation; | ) | FLEMING COMPANIES, INC.; |
| H.E.S. TRANSPORTATION | ) | EXHIBIT "A" |
| SERVICES, INC., a California | ) | |
| corporation; CALIFORNIA | ) | |
| PACIFIC CONSOLIDATORS, INC., | ) | |
| a California corporation; JEFFREY | ) | |
| P. GRAHAM and PETER SCHAUL, | ) | |
| California citizens; MARK DILLON | ) | |
| and TERESA NOA, BRIAN | ) | |
| CHRISTENSEN, Hawaii citizens; | ) | |
| FLEMING COMPANIES, INC.; an | ) | |
| Oklahoma corporation; C & S | ) | |
| LOGISTICS OF HAWAII, LLC. | ) | |
| a Delaware LLC; | ) | |
| C & S WHOLESALE | ) | |
| GROCERS, INC., a Vermont | ) | |

"B"

DATED: Honolulu, Hawaii, _____ NOV 3 2003 _____.


_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

## EXHIBIT "A"

1.    A complete and un-redacted copy of the "F1 project files." These documents were identified in the Kirkland & Ellis, LLP Summary of the Sixth Monthly Application of Kirkland & Ellis, LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Interim Period of September 1 Through September 30, 2003.  This document was filed in the docket of the jointly administered bankruptcy case of <u>In re Fleming Companies, Inc.</u> , Bk. No. 03-10945 (Bankr. Del) at its Exhibit A and Docket No. 4185-4 regarding the time entries dated 9/8/03 for Andrew R. Running set forth in the attached page "A-1" that is an excerpt of these time entries.

2.    Any and all documents related to the Securities and Exchange Commission in any way related to the F1 Project and the issue of copyright infringement.

3.    Any and all documents related to the indemnity clause that was contained in the Fleming C&S Asset Purchase Agreement as follows:

12.4 Infringement.

> 2. (a) Notwithstanding anything in this Agreement to the contrary, Sellers shall have no obligation to defend, indemnify or hold harmless Purchaser or any of its Affiliates from damages, costs or expenses resulting from any obligation, suit or proceeding based upon any claim that any activity subsequent to the Closing Date engaged in by Purchaser, a customer of Purchaser's or anyone claiming under Purchaser constitutes direct or contributory infringement, misuse or misappropriation of or inducement to infringe any Third Party Intellectual Property.

> (b) Purchaser shall defend, indemnify and hold harmless Sellers and any of its Affiliates from and against any and all Indemnifiable Losses resulting from any obligation, proceeding or suit based upon any claim alleging or asserting direct or contributory infringement, misuse or

1

The Fleming Company
Legal Services for the Period Ending September 30, 2003
October 23, 2003

| Date | Hours | Name | Description |
|------|-------|------|-------------|
| | | | Berger (.2) re integration and objection issues associated with C&S sale. |
| 9/08/03 | 2.50 | Andrew R Running | Review F1 project files forwarded by C. Birchette to assess potential claims against professional services provider. |
| 9/09/03 | .80 | James R Strohl | Create evidence binder re claims objections. |
| 9/09/03 | .40 | Eva H Davis | Telephone conferences and emails with S. Michel (.2) and D. Berger (.2) re integration and objection issues associated with C&S sale. |
| 9/09/03 | 4.70 | Andrew R Running | Review additional Project F1 documents forwarded by C. Birchette to assess potential claim against professional services provider (4.5); draft e-mail to G. Richards re same (.2). |
| 9/09/03 | .50 | Sydne J Michel | Review and analyze trustee objection to Application of Morgan Stanley for Allowance and Payment of Administrative Expense Claim. |
| 9/15/03 | 1.40 | Steven R Kotarba | Respond to correspondence re bar date and work with K&E team to draft response to same. |
| 9/15/03 | .80 | Andrew J Groesch | Respond to creditor inquiries re bar dates and administrative expenses. |
| 9/16/03 | 4.30 | Xiaojie Wang | Research re late claims against the bankruptcy debtor after the bar date (3.0); office conference with N. Keller re same (1.3). |
| 9/17/03 | 1.00 | Denise Wymore | Respond to creditor inquiries re claims. |
| 9/18/03 | .20 | Shirley S Cho | Review and return correspondence of D. Capozzola re setoff. |
| 9/28/03 | .60 | Richard L Wynne | Revise set off memorandum. |

EXHIBIT A-1

### Hawaii Informational Conference Call Notes

- Currently, Hawaii outsources it's store deliveries to HTC.
- CSX and Matson Navigation are the ocean carriers that Hawaii uses for its ocean freight inbound. The mix is approx 20% and 80% respectively.
- Full container pricing is determined by tariffs and freight classification
- If there is not enough product for a full container, a consolidator is used; there are some direct shipments from vendors as well (who pay the freight)
- In 1999, the Hawaii division took control of its own consolidation
- The Hawaii division touches 90% of its inbound
    - That may just be picking up the product in Honolulu
- The majority of the inbound deliveries are picked up at the dock (The charge for this is included in the freight quote or billed directed to the vendor). It is treated much like a backhaul.
- The Hawaii division uses a MS Access data base that generates many of the reports and sets the timetable for receiving orders. It keeps track of costs of a shipment including in haul charges, ocean freight and truckers charges
    - PO number, product description, item, arrival date is entered into the DB from EDI information out of FOODS using a special interface.
- Any updates for changing tariffs must be made by hand
- The functionality of this DB must be matched or improved in the F1 solution
    - Cannot copy some pieces of existing system due to licensing issues
- Consolidation is done on West Coast by Hawaiian Express, but directed by the Hawaii DC
    - No other business is currently mixed with the Fleming items but this could be a market in the future.
- Buyers need to be able to prioritize containers coming off the ship in the new system. This is because it can take up to five days to get off-loading, delivered from the pier and received in the warehouse, due to number of containers arriving at once.
- It can take as many as ten days from the time the consolidator receives the product until it is unloaded at the DC (ordinary time on the water is 5 days)
- Hawaii has about 5 container ships arriving every week with differing volumes of containers depending on time of the week and the ocean carrier.
- 20 – 30% of Hawaii's business is military
    - Separate item codes are required for the same product for some vendors
    - Some military customers place orders for items that are picked in cases for military and eaches for some retail customers from the same slot.
- Hawaii's exchange business requires one invoice per delivery. This needs to be discussed with the SAP & OTC team. Invoices will not be printed off of EXE
- 70% of Hawaii's business goes to Oahu with 30% going to neighboring islands and Guam
- Occasionally, pallets are consolidated and sent back to the West Coast



- Approximately 75% of the inbound loads come in on pallets and the division stacks it to the proper tie-high during the backhaul process; the balance comes in floor loaded or slip sheeted(mostly paper items) because the vendor is paying the freight and wants to cube out the container
- Occasionally, military items and candy is letdown and put into a temporary pick slot because of insufficient number of pick slots
- Hawaii has 22,000 – 23,000 SKUs
- Hawaii has a problem with shortages from vendors. Often, receivers don't know there are shorts until the product is received. There is often a long lead time until buyers are able to get the product to the warehouse. This is adversely affecting service level
  - o Some vendors communicate shorts with an email, some do not. Ordinarily, if the order comes through a consolidator the division will be notified of shortages. We need to have better visibility of inbound deliveries
- Hawaii has some cross-dock to other islands
  - o Fleming charges a per case fee for this service
  - o It is suggested that an item code be created that has the charge in it
- Next Steps
  - o Hawaii DC will have their BRN to the F1 team by the end of the week. The D & L team will dissect it and set up a call within the next two weeks to discuss any clarifications that may be needed.
  - o In the meantime these minutes will be reviewed by all for accuracy
  - o Ralph Stussi has expressed an interest in having some members of the F1 team to Hawaii for a site visit. It is important to understand what the system is handling and where improvements can be made. This would be the Hawaii PSC and possibly the West Coast consolidation facility.



Hawaii Informational Conference Call Notes

- Currently, Hawaii outsources it's store deliveries to HTC. CSX and Matson Navigation are the ocean carriers that Hawaii uses for its ocean freight inbound. The mix is approx 20% and 80% respectively.
- Full container pricing is determined by tariff and freight classification
- If there is not enough product for a full container, a consolidator is used; there are some direct shipments from vendors as well (who pay the freight)
- In 1999, the Hawaii division took control of its own consolidation
- The Hawaii division touches 90% of its inbound
  - That may just be picking up the product in Honolulu
- The majority of the inbound deliveries are picked up at the dock (The charge for this is included in the freight quote or billed directed to the vendor). It is treated much like a backhaul.
- The Hawaii division uses a MS Access data base that generates many of the reports and sets the timetable for receiving orders. It keeps track of costs of shipment including in haul charges, ocean freight and truckers charges.
  - PO number, product description, item, arrival date is entered into the DB from EDI information out of FOODS using a special interface.
- Any updates for changing tariffs must be made by hand
- The functionality of this DB must be matched or improved in the FI solution
  - Cannot copy some pieces of existing system due to licensing issues
- Consolidation is done on West Coast by Hawaiian Express, but directed by the Hawaii DC
  - No other business is currently mixed with the Fleming items but this could be a market in the future.
- Buyers need to be able to prioritize containers coming off the ship in the new system. This is because it can take up to five days to get off-loading, delivered from the pier and received in the warehouse, due to number of containers arriving at once.
- It can take as many as ten days from the time the consolidator receives the product until it is unloaded at the DC (ordinary time on the water is 5 days)
- Hawaii has about 5 container ships arriving every week with differing

### Hawaii Informational Conference Call Notes

- Currently, Hawaii is outsourcing its transportation
  - CSX and Matson Navigation are the ocean carriers that Hawaii uses for its ocean freight inbound
- Full container pricing is determined by tariffs and freight classification
- If there is not enough product for a full container, a consolidator is used; there are some direct shipments from vendors as well (who pay the freight)
- In 1999, the Hawaii division took control of its own consolidation
- The Hawaii division touches 90% of its inbound
  - That may just be picking up the product in Honolulu
- The majority of the freight is picked up at the dock (the drey is the division's responsibility). It is treated much like a backhaul.
- The Hawaii division has a MS Access DB that generates many of the reports and sets the timetable for placing orders. It keeps track of things like tariffs, ocean freight and truckers charges
  - PO number, product description, item, arrival date is entered into the DB using a custom program
- Any updates to the tariff tables must be made by hand
- The functionality of this DB must be reproduced in the F1 solution
  - There may be some licensing issues to consider
- Consolidation is done on West Coast by Hawaiian Express, but directed by the Hawaii DC
  - No other business is mixed with the Fleming items
- Buyers need to be able to prioritize containers coming off the ship in the new system. This is because it can take up to five days to get product slotted
- It can take as many as ten days from the time the consolidator receives the product until it is unloaded at the DC (ordinary time on the water is 5 days)
- The Hawaii DC receives about five inbound ships a week
- 20 – 30% of f Hawaii's business is military
  - Separate item codes are required for the same product for some vendors
  - Some military customers place orders that contain the same item which can be picked in cases or picked in eaches out of the same slot
- Hawaii's exchange business requires one invoice per delivery. This needs to be discussed with the SAP & OTC team. Invoices will not be printed off of EXE
- 70% of Hawaii's business goes to Oahu with 30% going to neighboring islands
- Occasionally, pallets are consolidated and sent back to the West Coast
- Approximately 75% of the inbound loads come in on pallets and the division stacks it to the proper tie-high; the balance comes in floor loaded (mostly paper) because the vendor is paying the freight and wants to cube out the container
- Occasionally, military items and candy is letdown and put into a temporary pick slot because of insufficient number of pick slots
- Hawaii has 22,000 – 23,000 SKUs



- Hawaii has a problem with shortages from vendors. Often, receivers don't know there are shorts until the product is received. There is often a long lead time until buyers are able to get the product to the warehouse. This is adversely affecting service level
    - Some vendors communicate shorts with an email, some do not. Ordinarily, if the order comes through a consolidator the division will be notified of shortages. We need to have better visibility of inbound deliveries
- Hawaii has some cross-dock to other islands
    - Fleming charges a per case fee for this service
    - It is suggested that an item code be created that has the charge in it
- Next Steps
    - Hawaii DC will have their BRN to the F1 team by the end of the week. The D & L team will dissect it and set up a call within the next two weeks to discuss any clarifications that may be needed.
    - In the meantime these minutes will be reviewed by all for accuracy
    - Ralph Stussi has expressed an interest in having some members of the F1 team to Hawaii for a sight visit. This would include a visit by the team to the DC, the West Coast consolidator, and the port.



Hawaii Informational Conference Call Notes

- Currently, Hawaii is outsourcing its transportation
  - CSX and Matson Navigation are the ocean carriers that Hawaii uses for its ocean freight inbound
- Full container pricing is determined by tariffs and freight classification
- If there is not enough product for a full container, a consolidator is used; there are some direct shipments from vendors as well (who pay the freight)
- In 1999, the Hawaii division took control of its own consolidation
- The Hawaii division touches 90% of its inbound
  - That may just be picking up the product in Honolulu
- The majority of the freight is picked up at the dock (the drey is the division's responsibility). It is treated much like a backhaul.
- The Hawaii division has a MS Access DB that generates many of the reports and sets the timetable for placing orders. It keeps track of things like tariffs, ocean freight and truckers charges
  - PO number, product description, item, arrival date is entered into the DB using a custom program
- Any updates to the tariff tables must be made by hand
- The functionality of this DB must be reproduced in the F1 solution
  - There may be some licensing issues to consider
- Consolidation is done on West Coast by Hawaiian Express, but directed by the Hawaii DC
  - No other business is mixed with the Fleming items
- Buyers need to be able to prioritize containers coming off the ship in the new system. This is because it can take up to five days to get product slotted
- It can take as many as ten days from the time the consolidator receives the product until it is unloaded at the DC (ordinary time on the water is 5 days)
- The Hawaii DC receives about five inbound ships a week
- 20 – 30% of Hawaii's business is military
  - Separate item codes are required for the same product for some vendors
  - Some military customers place orders that contain the same item which

| Name | Last Written | Physical Size | Full Path |
|---|---|---|---|

"E"

**Ueno, Thomas**                                    7/22/2005

1          IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF HAWAII

2

3

4      WAYNE BERRY, a Hawaii      :

       citizen,                   :

5                                 :

                                  :

6      Plaintiff,                 :   CIVIL      CV03-00385·

                                  :   NO.:       SOM LEK

7           vs.                   :

                                  :

8                                 :

       HAWAIIAN EXPRESS           :

9      SERVICE, INC., a           :

       California corporation;    :

10     et al.,                    :

                                  :

11                                :

       Defendants.                :

12     ------------------------->

13

14

15   Deposition noticed by:  Lex Smith, Esq.

16

17

            VIDEOTAPED DEPOSITION OF THOMAS UENO

18

19

20   Taken on behalf of Defendant at the Law Offices of

     Kobayashi, Sugita & Goda, 999 Bishop Street, Suite

21   2600, Honolulu, Hawaii, commencing at 9:00 a.m. on July

     22, 2005.

22

23

24

25     REPORTED BY:   LYNANN NICELY, RPR/RMR/CSR #354



**Page 1**

Ueno, Thomas                                    7/22/2005

1    Berry?

2        MR. HOGAN:  Objection; vague as to the term sale.

3    A    I don't think so.

4    Q    Okay.  Your report assumes that Fleming sold other

5    products -- hard goods I think you called them.

6    A    That's right.

7    Q    And your report assumes that they made -- that

8    17 percent of their sales were profits, correct?

9    A    Seventeen percent of gross sales is equal to gross

10   profits, correct.

11   Q    And you did not do any analysis to determine the

12   role, if any, that the software played in generating

13   the profits that you calculated.

14   A    I did.

15   Q    What analysis did you do?

16   A    Okay.  I gained an understanding from Mr. Berry as

17   to the role or the function that software was

18   performing for the company.

19   Q    What did Mr. Berry tell you the software did?

20   A    That it is a logistics system or freight control

21   system, I guess, and --

22   Q    I want to withdraw that question.

23       What is the relationship that you determined the

24   software has to the profits that you opined on

25   beginning at page six of your report?

Page 115

**Ueno, Thomas**

1  A    That the software has an integral function within

2  the company's operations.

3  Q    Okay.  And is there any portion of the profit of

4  the company that you opined on here that is not

5  attributable to the software authored by Wayne Berry?

6  A    I think all of the items that we've considered to

7  be lost gross profits are attributable, okay, to what

8  Mr. Berry's system can do.

9  Q    So your opinion is that a hundred percent of the

10  profit made from selling hard goods is attributable to

11  the software that Wayne Berry created?

12  A    Well, I can answer that yes and I can give you a

13  reason for that.

14  Q    Okay.  Go ahead, what's the reason?  I take it

15  your answer is yes?

16  A    Yes.

17  Q    What's the reason?

18  A    The reason is that Mr. Berry's system, the freight

19  control system, is an integral part of the operations

20  of the company, it's a necessary part for the company

21  to operate with.  As necessary as the company needs

22  management, as the company needs, for example,

23  financing.  And without any one of these components,

24  the company stops.

25  Q    Okay.

**Ueno, Thomas**                                    7/22/2005

1  A    Okay.  And so this function was critical to the

2  operations of the company.  And I'm not saying that,

3  you know, by itself, okay, it made all the profits by

4  itself.  But without it, you couldn't make any profits.

5  Without management you can't make any profits.  Without

6  financing you can't make any profits.  They're integral

7  and essential components of the business.  It's not

8  something that you allocate things to.  Each one, okay,

9  is critical to the company's operations.

10  Q    Did you make any effort to apportion the profit

11  among the software and the other factors that you

12  identified such as management and financing?

13  A    I think I just did.

14  Q    You just said -- I think you just said you didn't,

15  didn't you?

16  A    I said I did and that's why I said that a hundred

17  percent of it, okay, can be attributable to Mr. Berry's

18  software as much as I said that because it's such a

19  critical function in the company.  If you pull that

20  out, there is -- the company doesn't operate.  Okay.

21  So that makes it critical.

22       So when you're saying that if, you know, can I

23  attribute the gross profits to that software.  If you

24  pull the software out, there will be no gross profits.

25  So that's why I attributed it, okay, to that function.

**Page 117**

1                    C E R T I F I C A T E

2        I, LYNANN NICELY, C.S.R., do hereby certify:

3        That I was acting as shorthand reporter in the
   foregoing matter on July 22, 2005;
4
         That the witness, whose testimony is contained
5   herein, prior to being examined and pursuant to
   stipulation was by me duly sworn or affirmed, that the
6   proceedings were taken by me in machine shorthand and
   were thereafter reduced to print under my supervision
7   by means of computer-assisted transcription; that the
   foregoing represents, to my best ability, a true and
8   accurate transcript of the proceedings had in the
   foregoing matter;
9
         That, if applicable, the witness was notified
10   through counsel, by mail, or by telephone to appear and
   sign; that if the deposition is not signed, either the
11   reading and signing were waived by the witness and all
   parties, or the witness failed to appear and the
12   original has been sealed unsigned;

13        That pursuant to HRCP 30(f)(1) the original will
   be forward to noticing counsel for retention.
14
         I further certify that I am not attorney for any
15   of the parties hereto, nor in any way interested in the
   outcome of the cause named in the caption.  Dated on
16   07/22/2005.

17
                        _____
18                      LYNANN NICELY, RPR
                        Notary Public, State of Hawaii
19                      My commission expires:  1/24/06

20

21

22

23

24

25

CARNAZZO COURT REPORTING COMPANY, LTD.    (808) 532-0222