LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **TRIAL BRIEF; CERTIFICATE OF** |
| | ) | **SERVICE** |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | **TRIAL:** |
| | ) | |
| | ) | Date: January 24, 2006 |
| | ) | Judge: Honorable Susan Oki-Mollway |
| _____ | ) | |

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Mr. Berry is Entitled to Actual Damages and Profits. . . . . . . . . . . . 1

    B.    Fleming Cannot Deny that It Owes No Less than $2 Million
        in Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Thomas Ueno is Qualified to Testify and his Opinions are Based On
        the Factual Reality of the Transaction. . . . . . . . . . . . . . . . . . . . . . . . 3

    D.    Apportionment Applies When There Are Other Factors Besides
        the Copyrighted Work to Consider. . . . . . . . . . . . . . . . . . . . . . . . . . 3

    E.    Mr. Berry has Made a Sufficient Causal Connection to Have
        the Jury Decide the Issue of Lost Profits. . . . . . . . . . . . . . . . . . . . . . 5

    F.    Fleming is Liable as A Vicarious Infringer and the Issue Should
        Not Go To the Jury that Should Be instructed as a Matter of Law. . . 7

    G.    The Proof of Hawaiian Express Unlicensed Use Will Be
        Simple and Short. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    H.    Statutory Damages Fleming Would Be Liable For Its Own $30,000
        Maximum and the Separate Damages Attributable to its Employees.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    Congress Made the Burdens Clear Regarding Profits. . . . . . . . . . . . 10

    J.    Mr. Berry is Entitled to a Jury Instruction on the Issue of Statutory
        Damages for Each User of the Illegal Software. . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

<u>CASES</u>

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186  (9th Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998)  . . . . . . . . . . 5

*MAI Sys. Corp. v. Peak Computer*, 99 F.2d 511(9th Cir. 1993) . . . . . . . . . . . . . . . 1

*SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989)  . . . . . . . . . . . . . . . . . . . 2

*United States v. LeCoe*, 936 F.2d 398 (9th Cir. 1991)  . . . . . . . . . . . . . . . . . . . . . 4

*United States v. One Sentinel Arms Striker-12 Shotgun Serial No. 001725*, 416 F.3d 977 (9th Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>STATUTES</u>

The Copyright Act, 17 U.S.C. § 504(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Copyright Act, 17 U.S.C. § 504(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>OTHER AUTHORITIES</u>

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §  14.03[D][1], at 14-58 (2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[F][C] 14-104-5 (2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright.* § 14.03[C][1] (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §  14.03[D][1], at

14-58 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[F][C] 14-104-5 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright.* § 14.03[C][1] (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; ) | Civ. No. CV03 00385 SOM-LEK |
| ) | (Copyright) |
| Plaintiff, ) | |
| ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. ) | **TRIAL BRIEF** |
| ) | |
| HAWAIIAN EXPRESS SERVICE, ) | |
| INC., a California corporation; et al. ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____ ) | |

## **PLAINTIFF WAYNE BERRY'S TRIAL BRIEF**

## **DISCUSSION**

A.    Mr. Berry is Entitled to Actual Damages and Profits.

In order to prevail on a claim of copyright infringement, Mr. Berry must prove ownership of a copyright and copying of protectable expression  beyond the scope of a license."  This Court has already determined that Mr. Berry has prevailed on his claim of copyright infringement.

Each act of the infringement was the daily booting up of a copy of Mr. Berry's software on each of the computers.  As a matter of well settled law, the

daily creation of infringing copies of software loaded into the relevant computers' RAM are the separate multiple acts of copyright infringement and are what gives Mr. Berry the right to infringement damages. *See MAI Sys. Corp. v. Peak Computer*, 99 F.2d 511, 519 (9th Cir. 1993), *citing, SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (court of appeals held that the loading of into RAM of unlicensed software each day when the system is turned on, constitutes a copyright violation).

These continuous acts of infringement are not to be confused with the statutory damage limitation of a single right to damages per infringer regardless of the number of infringing acts if limited to a single copyrighted work.

> B.    Fleming Cannot Deny that It Owes No Less than $2 Million in Damages.

Fleming can produce no license to defend its use. It bears the burden as to this affirmative defense but has produced nothing to defend its daily use of the unlicensed derivative. The Berry EULA was never rejected by Fleming. The evidence at trial will be that Fleming requested an addendum and Mr. Berry accommodated it. The simple fact is that the only way that Fleming could reject the EULA was to stop running the software. It admits it never did that.

2

C.     Thomas Ueno is Qualified to Testify and his Opinions are Based On the Factual Reality of the Transaction.

Mr. Ueno's Report was written by a person who is not only an expert competent in the area of  damage calculations, but also by a person with extensive hands on experience in the area software development who has developed software as a project manager for a Big 8 accounting firm.  Mr. Ueno's  determination of the value of the license was based on the economic realities of the transaction, which must be considered in such cases.  Mr. Ueno properly set forth a reasonable license fee that is a measure of damages recognized by the 9th Circuit Court of Appeals. The license fee is not established for some claimed portion of the software that Fleming infringed, but for the fact that as a matter of law, Fleming had used an un-licensed derivative.  This was a single work not a collection of works that can be divided to lower Fleming's damages.  It is a copyrighted work that had not been licensed.

D.     Apportionment Applies When There Are Other Factors Besides the  Copyrighted Work to Consider.

Fleming may attempt to apportion its damages based on the fiction that only one field was changed.   The facts show that Berry's real original database consisted of 69 tables and hundreds of fields.  The Dillon derivative that is the subject of this case had 88 tables.

3

The Copyright Act, 17 U.S.C. § 504(b) places the burden squarely on the defendant to show, "the elements of profit to factors other than the copyrighted work." The statute does not allow for apportionment and makes it clear that the jury does not perform a dissection of the work to lower the damages.

> In determining the scope of a statute, a court must look first to the statute's language and structure. If the statute's language is unambiguous, its plain language controls except in rare and exceptional circumstances.

*United States v. One Sentinel Arms Striker-12 Shotgun Serial No. 001725*, 416 F.3d 977 (9th Cir. 2005) (*citing United States v. LeCoe*, 936 F.2d 398, 402-03 (9th Cir. 1991).

*Nimmer* provides an example where a literary work is used to write a screen play that is incorporated in a film that, as a separate copy-writable work derives profit not only from the infringing story but also from the film's actors' performances, the music, etc.. *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03[D][1], at 14-58 (2005). In this case, the use of Berry's work generated profits and those profits are not due to other copyrighted works, but only to Berry's work that, as a matter of law, was unlicensed. The apportionment that must be done is for the DEFENDANTS to show what portions of the profits came from factors other than the copyrighted work. Fleming seeks to reverse a Congressionally mandated burden of proof by placing this novel hybrid

4

of profit apportionment as a burden born by the Plaintiff, contrary to law.

      E.     Mr. Berry has Made a Sufficient Causal Connection to Have the Jury Decide the Issue of Lost Profits.

As to the lost profits, the Court had earlier ruled that these were indirect profits and therefore, in order to obtain the profits, Mr. Berry must show a minimum causal link between the infringing use of his software and the profits that Fleming obtained.   Once that minimum burden is met, the jury is tasked with the chore of determining the amount of profits due the Plaintiff.  *See Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340 (1998).

> The Defendant may not claim the absence of profits merely because the profits attributable to the infringing items were not sufficient to offset the losses sustained by the Defendant from other aspects of his business.

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright.* § 14.03[C][1] (2005).

Based on the well-settled law in this area, the entire Kinrich Report regarding profits is simply a waste of the Court's time.  Contrary to Mr. Kinrich and the PCT,  Fleming specifically tracked the net profit that was generated by the direct use of Mr. Berry's system in a complex reporting mechanism apparently originally created by Mr. Berry to track API's profit from the use of the system. Based on this proof, Fleming concedes no less than $2 million in annual net profit

5

derived directly from the use of the Berry system.  During the relevant period Fleming, more likely than not, derived $396,533 in bottom line profits from the use of the Berry FCS. Mr. Kinrich made no attempt to meet the PCT's burden to show any deductible amounts from this profit figure.

Next, as to the causal relation between Fleming's profit, the Court has already ruled that causation is shown by the fact that there is no dispute that Fleming only used Mr. Berry's work during the relevant time and only had his work to perform these business functions.  There is no reason to even have this issue go to the jury and the Court should rule as a matter of law based on the finding in the October 21, 2005 Order.

In addition Mr. Berry will offer evidence apparently ignored by Mr. Kindrich, that sets forth the annual net profit of the Logistics Department operating Mr. Berry's work at over $2 million.  Mr. Dillon and Ms Noa both admit that, but for the freight control software, they could not operate the logistics department and would be out of jobs.  Ms. Noa admitted to Mr. Berry even before the infringement that, if Fleming couldn't use FCS it would have to switch to "prepaid" shipments. The Noa Profit-Loss report created by Ms. Noa three years after she made her plea to Mr. Berry proves the net effect to Fleming's profitability if it was forced to stop using the Berry FCS and revert to unprofitable "prepaid" shipping.   This shows

the clear causal link between the Fleming-Logistics Department's profit and the use of the Berry work.  Moreover, its supports Mr. Ueno's report's conclusions regarding the critical function that the Berry software played in Fleming's overall operations.  A reasonable juror could conclude that Fleming's continued use of FCS in light of all the headaches it had engendered showed that Fleming could not profitably operate without the Berry system.

F.    Fleming is Liable as A Vicarious Infringer and the Issue Should Not Go To the Jury that Should Be instructed as a Matter of Law.

As to the issue of Fleming's vicarious infringement, the Court has already ruled that Fleming and its employee's used the software in the operation of Fleming business.   Its liability for the Hawaiian Express Defendants like the Fleming employees is to be established at trial.

The idea that Fleming has a financial interest in the operation of its wholesale business appears to be the obvious conclusion.    Therefore, Fleming derived direct financial benefit from the use of the infringing product.   Fleming's failure to comprehend that it was engaged in infringement is irrelevant and is consistent with the Ninth Circuit instruction.   Its employees used the software that has already been determined was producing income and profit for Fleming and that income and profit in addition to the avoidance cost of replacement and/or paying Mr. Berry his cure amount is sufficient for the Court to find Fleming a vicarious

7

infringer as a matter of law in these proceedings.  There being no issue of fact, Mr.

Berry encourages the Court to rule as a matter of law that Fleming was a vicarious

infringer.

G.    The Proof of Hawaiian Express Unlicensed Use Will Be
      Simple and Short.

The emails that were held back by Fleming in the Guidance materials clearly

show HEX operating the Berry database at Fleming's direction for its financial

gain.  That operation and the right to control is shown by emails that document

when Fleming finally locked out Hawaiian Express out of the Berry database.

Fleming will not be able to produce evidence that it was not a vicarious infringer

and the Court should rule as a matter of law that the Hawaiian Express' unlicensed

use was infringement and that the amount of damages is all that need be put to the

jury.  In addition, Fleming clear violation of Mr. Berry's license and the law and its

over two years of concealment in this case, can't be excused by a claim of

inadvertence.  As to Hawaiian Express vicarious infringement, Mr. Berry is

entitled to go to the jury, if he elects, on willful infringement statutory damages of

up to $150,000 per unlicensed user.

Fleming's attorney seemed surprised that his claim was still alive.  It is

apparently based on the misunderstanding of the effect of its stipulation regarding

the Hawaiian Express good faith settlement that specifically reserved these claims

that have never been adjudicated.

    H.    Statutory Damages Fleming Would Be Liable For Its Own $30,000
            Maximum and the Separate Damages Attributable to its Employees.

The Ninth Circuit has made abundantly clear, these are divisible injuries and
each of the Defendants is separately liable for a maximum statutory damage of
$30,000.  *See Columbia Pictures Television, Inc. v. Krypton Broad. of
Birmingham, Inc.*, 259 F.3d 1186, 1194-95 (9th Cir. 2001) *cert denied* 534 U.S.
1127 (2002).   *Krypton* establishes that Fleming is liable for each of the
infringements of its employees under the theory of vicarious liability. Fleming
disclaims any joint and several responsibility for its employee's infringement in its
section on vicarious liability and it is estopped from now claiming to be joint and
several.  What evidence is Fleming going to put forward: the use of this Logistics
Software did not confer a financial benefit on Fleming and they had no way to
control their own employees?

Fleming can be jointly liable with each of its employees, individually, while
each of its employees are severally liable for their own infringement.  *See*  4
Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[F][C] 14-
104-5 (2005) (*citing Krypton supra*).

    I.    Congress Made the Burdens Clear Regarding Profits.

On the issue of lost profits, Congress has established Plaintiff's Burden on

the issue of infringer's profits as follows:

> The copyright owner is entitled to recover the actual
> damages suffered by him or her as a result of the
> infringement, and any profits of the infringer that are
> attributable to the infringement and are not taken into
> account in computing the actual damages. In establishing
> the infringer's profits, the copyright owner is required to
> present proof only of the infringer's gross revenue, and
> the infringer is required to prove his or her deductible
> expenses and the elements of profit attributable to factors
> other than the copyrighted work.

17 U.S.C.§ 504(b).

The Comments to Ninth Circuit Model Jury Instructions make it clear that

Fleming's choice not to produce evidence to rebut Plaintiff's initial and only

burden of showing of "gross revenues" will have serious consequences at trial:

> Any doubt as to the correctness of the profit calculation
> should ... be resolved in favor of the plaintiff."

*Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 881 n. 4 (9th Cir.) (Requirement that profits not be used in actual damage calculation "is designed to prevent a plaintiff from recovering twice for the same damages."), *cert. denied*, 506 U.S. 1001 (1992).

In the Ninth Circuit, the calculation of actual damages under the 1909 Copyright Act differs from that under the 1976 Copyright Act. Prior to 1985, the Ninth Circuit interpreted the 1909 Copyright Act as allowing recovery of only the higher of actual damages or infringer profits. This differed from other circuits, where recovery of both actual damages and the infringer's profits was allowed. However, in the 1976 Copyright Act, Congress resolved these differing interpretations. *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 512 n. 5 (9th Cir.1985) ("Under the current [1976] Copyright Act ... a prevailing plaintiff is entitled to recover both actual damages and the infringer's profits.") (*citing Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1023 (9th Cir.1985)), *cert. denied*, 474 U.S. 1059 (1986).

11

A jury instruction on defendant's profits must adequately convey the burden of proof on attribution of profit. The copyright owner is required to present proof "only of the infringer's gross revenue, and the infringer is required to prove ... deductible expenses" and "what percentage of the infringer's profits" were not attributable to copying the infringed work.

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir.2000).

Where defendant's profits are derived from both infringing and non-infringing activities, not all of defendant's profits can be attributed to the infringement. Accordingly, the profits should be apportioned.

*See Cream Records v. Joseph Schlitz Brewing Co.*, 754 F.2d 826, 828–29 (9th Cir.1985). However, the benefit of the doubt in apportioning profits is given to the plaintiff. *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir.1989). Precision is not required, as long as a reasonable and just apportionment of profits is reached. *See Frank Music Corp.*, 772 F.2d at 518. In the final analysis, "where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff." *Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1012 (9th Cir.1994). Comment to Ninth Circuit Model Jury Instructions, 20.24 Copyright—Damages—Defendant's Profits (17 U.S.C. § 504(B) (emphasis added).

Fleming bears the burden of proof  to produce evidence of what part of its

gross revenues are not attributed to its infringement.  Fleming has refused to

respond to repeated requests for documents and information related to its profits.

The new mandatory disclosure rules make this an affirmative duty if it relates to a

"claim or defense."  Fed. R. Civ. P. 26.  Fleming has filed a Motion in Limine in

effect admitting that it doesn't not intend to produce evidence to rebut this

showing.   Fleming's expert ignored over 92% of the costs during the relevant time

in the erroneous belief that they had nothing to do with the Berry system. Quite the

contrary, freight allowances that are earned when the Berry system permits

shipping by Fleming were hidden in the costs of goods sold as the evidence at trial

will show in the emails that Fleming is attempting, in desperation, to keep from the

jury.

       J.      Mr. Berry is Entitled to a Jury Instruction on the Issue of Statutory
              Damages for Each User of the Illegal Software.

The Court must also allow the jury to consider an award of "statutory

damages."  *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355

(1998).  Because statutory damages serve both compensatory and punitive

purposes, plaintiff can recover statutory damages whether or not there is adequate

evidence of the actual damage suffered by plaintiff or the profits reaped by the

defendant.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)

(The trier of fact must be guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like" restrained only by the qualification it be within the prescribed maximum or minimum.). " Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). When an injury can be shown, but neither profits nor damages can be proven, statutory profits are mandatory. *See Russell v. Price*, 612 F.2d 1123 (9th Cir.1979); *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir.1978).

The "multiplier" effect of the statutory damages is necessary to deter this type of commercial infringement. Assume that a company buys a single copy of Microsoft Windows XP Pro®, retail price of $200 and makes a thousand illegal copies for its employees to use. Fleming would argue that this would be a "singe work" infringement and the maximum damages would be limited to $150,000. In light of the purpose of the Copyright Act that is to protect expression not infringers, each unlincensed user should have to pay a license fee to the Plaintiff.

14

In *Columbia Pictures Television, Plaintiff-Appellee, v. Krypton Broadcasting of Birmingham, Inc. ("Feltner I")*, 106 F.3d 284, 295 (9th Cir. 1997) *reversed on other grounds*, *Feltner v. Columbia Pictures TV*, 523 U.S. 340, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998), the court of appeals held that a statutory damage award may have a multiplier effect where each of the illegal uses has a separate economic life. In *Feltner*, the court allowed each airing of the relevant television shows to be considered as a separate basis for awarding statutory damages.

> While Feltner correctly states the proper test to apply in analyzing whether each episode is a separate work, *see Gamma Audio*, 11 F.3d at 1117 (focusing on whether each television episode "has an independent economic value and is, in itself, viable"); *Walt Disney Co. v. Powell*, 283 U.S. App. D.C. 111, 897 F.2d 565, 569 (D.C.Cir. 1990) (stating that "separate copyrights are not distinct unless they can 'live their own copyright life'") (*quoting Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1105 (2d Cir.), cert. denied, 429 U.S. 848, 50 L. Ed. 2d 121, 97 S. Ct. 135 (1976)), the facts upon which Feltner bases his argument - that the episodes are licensed as a series - were addressed and rejected in Gamma Audio.

*Feltner I*, 106 F.3d at 295 (citations in original).

After this case was reversed by the Supreme Court on the 7th Amendment issue, the Ninth Circuit Court of Appeals once again affirmed the multiplier in *Columbia Pictures Industries, Inc., v. Krypton Broadcasting of Birmingham, Inc.*

*("Feltner II")*, 259 F.3d 1186, 1193-4 (9th Cir. 2001).

> Feltner next argues that the district court erred in granting Columbia's motion in limine to reaffirm the district court's prior ruling that each episode aired by Feltner is a separate "work" for purposes of computing statutory damages. Copyright Act § 504(c)(1) permits the copyright owner to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1) (2001) (emphasis added). In addition, § 504(c)(1) states that "all the parts of a compilation or derivative work constitutes one work." Id. (emphasis added). Thus, under the Copyright Act, "each work infringed may form the basis of one award." Columbia Pictures, 106 F.3d at 294 (emphasis added).

> Although the Copyright Act does not define the term "work," every circuit to address the issue has held that "separate copyrights are not distinct works unless they can 'live their own copyright life. 'As applied to episodes of a television series, this test requires us to determine whether each episode "has an independent economic value and is, in itself, viable." Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1117 (1st Cir. 1993) (citing Walt Disney, 897 F.2d at 569). <u>We adopted this test for what constitutes a "work" in a prior appeal of this case. Columbia Pictures, 106 F.3d at 295.</u>

*Feltner II*, 259 F.3d at 1193-4 (emphasis added) (citations omitted).

This resounding reaffirmance of the *Feltner* multiplier is appropriate where a commercial infringer uses illegal copies to make money. This is precisely what

16

Fleming did in this case.   Each time Fleming made a "copy" of one of its illegal

derivatives by displaying it on the screen of a computer of one of its employees or

HEX defendants that had a separate economic value to Fleming and the direct

infringer and therefore must form the basis of a separate award of statutory

damages.

     DATED:  Honolulu, Hawai'i, January 10, 2006.

              /s/ Timothy J. Hogan_____
              TIMOTHY J. HOGAN
              Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;   )   Civ. No. CV03 00385 SOM-LEK
                                 )   (Copyright)
               Plaintiff,        )
                                 )   **CERTIFICATE OF SERVICE**
        vs.                      )
                                 )
HAWAIIAN EXPRESS SERVICE,        )
INC., a California corporation; et al.  )
                                 )
               Defendants.       )
_____  )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the dates and by the methods of service noted below,

a true and correct copy of Plaintiff Wayne Berry's Trial Brief was served on the

following at their last known addresses:

<u>Served Electronically through CM/ECF on January 10, 2006</u>:

Rex Y. Fujichaku rfujichaku@bchlaw.net, jennifer@bchlaw.net

Lyle S. Hosoda lsh@hosodalaw.com

Raina P. Mead rpbm@hosodalaw.com

Ann C. Teranishi act@ksglaw.com

Thomas H.Y.P. Yee thy@ksglaw.com

DATED: Honolulu, Hawai'i, January 10, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY