# EXHIBIT "G"

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Fleming Companies, Inc., et al., | ) | Case No. 03-10945 (MFW) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |
| | ) | Responses Due:  July 19, 2004, 4:00 p.m. Eastern |
| | | Hearing Date:   July 26, 2004, at 9:30 a.m. |

### AFFIDAVIT OF DAMIAN CAPOZZOLA IN SUPPORT OF FLEMING'S MOTION FOR ORDER ESTIMATING ADMINISTRATIVE CLAIM FILED BY WAYNE BERRY AND FLEMING'S OBJECTION TO CLAIM FILED BY WAYNE BERRY (CLAIM NO. 18428)

I, Damian D. Capozzola, declare as follows:

1. I am an attorney licensed to practice in California and admitted *pro hac vice* to this Court, and I am a partner with the law firm of Kirkland & Ellis LLP. I have represented the Debtors in connection with matters raised by Wayne Berry since approximately May 1, 2003. Except as to those matters stated herein as based upon information and belief, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so. I make this affidavit in support of Fleming's Motion for

---

[1] The Debtors are the following entities: Core-Mark International, Inc.; Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favor Concepts, Ltd.; Fleming Foods Management Co., O.K., Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Services, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc. (collectively, the "Debtors," sometimes referred to here collectively in the singular as "Fleming").



EXHIBIT "G"

Order Estimating Administrative Claim Filed by Wayne Berry and Fleming's Objection to Claim Filed by Wayne Berry (Claim No. 18428).

2. Attached as Exhibit A are true and correct copies of license materials regarding the End-User License Agreement between Wayne Berry and Fleming Foods, Inc. for the Freight Control System Software.

3. Attached as Exhibit B is a true and correct copy of a letter from Tim Hogan, counsel for Wayne Berry, to Karen L.S. Fine, Lex R. Smith, and Roy J. Tijoe, dated October 24, 2002.

4. Attached as Exhibit C is a true and correct copy of an e-mail to Damian Capozzola from Tim Hogan re "Berry Admin Claim," dated June 7, 2004.

5. Attached as Exhibit D is a true and correct copy of a special verdict form in *Berry v. Fleming Cos., Inc. et al.*, Civil No. 01-00446 SPK LEK (D. Haw.) (the "Prior Litigation"), dated March 6, 2003.

6. Attached as Exhibit E is a true and correct copy of a Supplemental Declaration of Mark Dillon, dated August 1, 2003.

7. Attached as Exhibit F is a true and correct copy of a redacted e-mail to Damian Capozzola from Tim Hogan re "Berry Freight Control Software-Confidential Evid. R. 408 S Communication," dated May 2, 2003.

8. Attached as Exhibit G is a true and correct copy of a letter from Tim Hogan to Damian Capozzola, dated May 13, 2003, and a true and correct copy of the response from Damian Capozzola to Tim Hogan, dated May 14, 2003.

9. Attached as Exhibit H is a true and correct copy of the Declaration of Mark Dillon, dated July 25, 2003.

41.     On August 1, 2003 Fleming filed papers seeking an injunction against Berry's harassment and a complaint seeking declaratory relief that Fleming was not infringing on Berry's software. After these papers were filed and served on Berry, the offending behavior promptly abated, at least temporarily.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of June, 2004, at Los Angeles, California.

*Damian Capozzola*

STATE OF California    )
COUNTY OF Los Angeles  )

Subscribed, sworn to, and acknowledged before me by Damian D. Capozzola, the settlor, on June, 2004.

*Annette Zaragoza*
Notary Public

[Notary seal: ANNETTE ZARAGOZA, Commission # 1277624, Notary Public - California, Los Angeles County, My Comm. Expires Oct 17, 2004]

My commission expires: October 17, 2004

7

## Index of Exhibits

| | |
|---|---|
| Exhibit A | End-User License Agreement between Wayne Berry and Fleming Foods, Inc. for the Freight Control System Software owned by Mr. Berry, dated 10/29/99 |
| Exhibit B | 10/24/02 letter from T. Hogan to K. Fine, L. Smith and R. Tjioe |
| Exhibit C | 6/7/04 email from T. Hogan to D. Capozzola |
| Exhibit D | 3/06/02 Special Verdict Form |
| Exhibit E | 8/01/03 Mark Dillon Supplemental Declaration |
| Exhibit F | 5/2/03 email to D. Capozzola from T. Hogan |
| Exhibit G | 5/13/03 letter to D. Capozzola from T. Hogan |
| Exhibit H | 7/25/03 Declaration of Mark Dillon |
| Exhibit I | 7/22/03 Affidavit of Michael D. Gurzi |
| Exhibit J | 7/22/03 Original Complaint of Berry filed in the Hawaii litigation |
| Exhibit K | 8/13/03 Berry's First Amended Complaint in the Hawaii litigation. |
| Exhibit L | Berry's Statement of Appeal from Amended Rule 16 Scheduling Order filed on 5/07/04. |
| Exhibit M | 8/23/03 Indemnification letter |
| Exhibit N | 5/19/03 letter to D. Capozzola from T. Hogan |
| Exhibit O | 5/20/03 letter to D. Capozzola from T. Hogan |
| Exhibit P | 6/09/04 Administrative Claim filed by Berry |
| Exhibit Q | Ex. 3(c) to the filed Amended Disclosure Statement |
| Exhibit R | 5/28/04 Berry Motion for Preliminary Injunction |
| Exhibit S | 7/22/03 Guidance Software Report |
| Exhibit T | OCP paperwork re New Technologies, Inc. (or NTI) |
| Exhibit U | Retention Agreement with NTI |
| Exhibit V | 6/18/04 Berry Second Amended Complaint |
| Exhibit W | 6/22/04 email to Damian Capozzola from NTI technician |
| Exhibit X | 6/22/04 letter to T. Hogan from D. Capozzola |
| Exhibit Y | 6/21/04 letter to T. Hogan from D. Capozzola |
| Exhibit Z | Administrative Bar Date Order |
| Exhibit AA | Mertle John Affidavit of Service |
| Exhibit BB | Affidavit of Publication |
| Exhibit CC | Berry's Limited Objection to Plan and Disclosure Statement |
| Exhibit DD | 11/25/03 Hearing Transcript Excepts |
| Exhibit EE | Berry's Memorandum in Support of Motion to Dismiss |

Exhibits A - MM are voluminous.

They are available upon request to the Debtors' counsel

Case 1:03-cv-00385-DAE-LEK     Document 736-8     Filed 01/10/2006     Page 6 of 14

# Exhibit A

## Fleming

MEMORANDUM

Date: November 24, 1999

To: Wayne Berry

From: Ralph Stussi

Subject: License agreement for freight control system

I am in receipt of the end user license agreement and addendum you have prepared dated October 29, 1999. I had not seen this document until Monday evening November 22, 1999, and must say it not acceptable to Fleming Companies, Inc. Let me go through our understanding in all this.

We understand that you will grant us a no charge user license for the software you have developed for API and that you wish to market it commercially. We only intend to use this software to support our local freight operation and will not sell or issue copies to other businesses. We do not intend to transfer copies of this software to other company locations beyond Hawaii. To this end, we understand that copyright laws and international copyright treaties, as well as other intellectual property laws and treaties protect the software product. We understand that this product is licensed, not sold and that all title and intellectual property rights in and to the software product and any copies we make are owned by you. We also understand that there are no warranties expressed or implied and that the product is made available to us "as is" with any revisions up to and including work performed through October 29, 1999. If you become aware of any situations were files or programs are transferred to unauthorized users, please advise me and I will pursue this immediately. I will also advise my associates of this.

We must have the ability to change and modify reports that come out of the system. The database that exists has so much information that can be used, new reports and information will be constantly evolving from the operation as it has in the past. There is a big question about the Crystal report writing software and the reports that are written from the database with this software. You have advised me that we can use the Crystal software to modify and develop reports, but that you cannot be responsible for the accuracy of the data in these reports.

A00449

The long-term goal of our operation is to interface with our company's total inbound logistics system. This will be done utilizing software licensed by our company from another provider. We are still in the process of obtaining information about how it will work with an ocean freight situation versus mainland backhauls. If it will accommodate what we are doing, we will schedule a conversion and once all is up and running we would plan on removing your inbound freight software at that time.

With regard to the TSI EDI interface, I admit that I do not totally understand what is technically happening here. Our intention is to work with our corporate staff people to develop a download that will allow the current P.O. and other file information that is being transferred using TSI EDI and Kleinschmidt to download directly from our mainframe. This project is being worked on and should be completed by the first of January 2000. I believe this is all part of the transition we have agreed to work through. At that time we would be able to cancel the Kleinschmidt agreement and would no longer need the TSI EDI interface. If this interface cannot be accomplish we would plan to discuss further with you the purchase of the TSI EDI interface for the system or a suitable, less expensive alternative.

In another area, the information contained in the database includes confidential Fleming information. This information must be kept and should not be shared with outside, unauthorized parties without first obtaining our written approval. Currently we understand and approve the sharing that has taken place in order to prepare our anti-trust case with Sea Land.

If this understanding is acceptable to the parties, please acknowledge below.

Acknowledged:

_[signature]_ 11/26/99
Wayne Berry

Acknowledged:

_[signature]_ 11/26/99
Ralph Stussi

A00450

# END-USER LICENSE AGREEMENT

## LICENSE FOR FREIGHT CONTROL SYSTEM SOFTWARE

**LICENSEE:**

Ralph Stussi
Fleming Foods, Inc.
91-315 Hanua Street
Kapolei, Hawaii 96707

**LICENSOR:**

Wayne Berry
P.O. Box 549
Haleiwa, Hawaii 96712

IMPORTANT-READ CAREFULLY: This End-User License Agreement ("EULA") is a legal agreement between you (Fleming Foods, Inc.) and Wayne Berry for the software product identified above, which includes computer software and may include associated media, printed materials, and "online" or electronic documentation ("SOFTWARE PRODUCT"). An amendment or addendum to this EULA may accompany the SOFTWARE PRODUCT. BY INSTALLING, COPYING, OR OTHERWISE USING THE SOFTWARE PRODUCT, YOU AGREE TO BE BOUND BY THE TERMS OF THIS EULA.

The SOFTWARE PRODUCT is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties. The SOFTWARE PRODUCT is licensed, not sold.

1. GRANT OF LICENSE. This EULA grants you the following rights provided that you comply with all terms and conditions of this EULA:

    a. Types of Software. The SOFTWARE PRODUCT contains some or all of the following types of software: Server Software, Client Software, Screens, Reports, Database and "Glue Logic" or Integration Code.
    b. Server Software and Database. At any given time, you may install one copy on a single computer.



EXHIBIT "A"

Page 1 of 5
October 29, 1999

   c.    Client Software, Screens, Reports, "Glue Logic" or Integration Code. At any given time, you may install up to one copy on up to ten (10) separate computers.

   f.    This EULA is not transferable to anyone other than Fleming Foods, Inc.

   g.    Additional Software. Any software provided to you by Wayne Berry which updates or supplements the original SOFTWARE PRODUCT is part of the SOFTWARE PRODUCT and is governed by this EULA, unless other terms of use are provided with such updates or supplements. Any software provided to you along with the SOFTWARE PRODUCT that is associated with a separate end-user license agreement is licensed to you under the terms of that license agreement, except if this EULA specifically sets forth the terms of use for such software then the terms set forth in this EULA shall apply.

   h.    Reservation of Rights. All rights not expressly granted are reserved by Wayne Berry.

2. DESCRIPTION OF OTHER RIGHTS AND LIMITATIONS. For SOFTWARE PRODUCT.

   a.    Software Transfer. You may transfer the SOFTWARE PRODUCT to another computer, provided that it is removed from the computer from which it is transferred.

   b.    Rental. You may not rent, lease, or lend the SOFTWARE PRODUCT.

   c.    Notice to Users. You shall inform all users of the SOFTWARE PRODUCT of the terms and conditions of this EULA.

   d.    Limitation on Modifications, Reverse Engineering, Decompilation, and Disassembly. You may not modify, reverse engineer, decompile, or disassemble the SOFTWARE PRODUCT.

   e.    Performance or Benchmark Testing. You may not disclose the results of any benchmark test of the SOFTWARE PRODUCT.

   f.    Termination. Without prejudice to any other rights, Wayne Berry may terminate this EULA if you fail to comply with the terms and conditions of this EULA. In such event, you must destroy all copies of the SOFTWARE PRODUCT and all of its component parts.

   g.    Consent to Use of Data. With respect to technical information and data you provide to Wayne Berry as part of any (if any) support services related to the SOFTWARE PRODUCT ("Support Services"), you agree that Wayne Berry (and his affiliates and agents) may collect, process and use such information for its



      business purposes, including but not limited to product support and development.

  h.  Application Sharing Technology. The SOFTWARE PRODUCT may contain technology that enables applications to be shared between two or more computers, even if an application is installed on only one of the computers. You may not use this technology.

3.  INTELLECTUAL PROPERTY RIGHTS. All title and intellectual property rights in and to the SOFTWARE PRODUCT (including but not limited to any database designs, report designs, custom code, functional designs, images, photographs, animations, video, audio, music, text, and "applets" incorporated into the SOFTWARE PRODUCT), and any copies you are permitted to make herein are owned by Wayne Berry. You may not copy any printed materials accompanying the SOFTWARE PRODUCT.

4.  ENTIRE AGREEMENT. This EULA (including any addendum or amendment to this EULA which is included with the SOFTWARE PRODUCT) are the entire agreement between you and Wayne Berry relating to the SOFTWARE PRODUCT and the Support Services (if any) and they supersede all prior or contemporaneous oral or written communications, proposals and representations with respect to the SOFTWARE PRODUCT or any other subject matter covered by this EULA.

**LIMITED WARRANTY**

THERE ARE NO WARRANTIES EXPRESSED OR IMPLIED. THE SOFTWARE PRODUCT IS MADE AVAILABLE UNDER THIS EULA "AS IS" WITH ANY REVISIONS UP TO AND INCLUDING WORK PERFORMED BY WAYNE BERRY AS OF OCTOBER 29, 1999.

_____      10/29/99
LICENSOR: Wayne Berry                  Date

## ADDENDUM TO END-USER LICENSE AGREEMENT

## ADDENDUM FOR FREIGHT CONTROL SYSTEM SOFTWARE

1. In exchange for Wayne Berry (LICENSOR) granting this EULA to Fleming Foods, Inc (LICENSEE), LICENSEE agrees to employ all former API employees of record date (September 1, 1999) beginning November 1, 1999 for a period of not less than 1 year and at their former or better pay scale and benefit package. This employment agreement shall not include Jack Borja. LICENSOR will not be in breach of this agreement if any of the "former API employees" quit or create a disciplinary condition that requires dismissal from LICENSOR's employ.
2. In exchange for LICENSOR granting LICENSEE this EULA, LICENSEE agrees to indemnify Jack Borja from any and all personal liabilities associated with the former API / Fleming Partnership, including but not limited to the 4 Trucks leased specifically to facilitate shipments to LICENSEE, the forklifts and ancillary equipment leased to facilitate shipments to LICENSEE, the computer specifically leased to facilitate shipments to LICENSEE and any legal actions taken to protect the API / Fleming Partnership. LICENSOR shall use the TRW credit reporting service to monitor the enforcement of this clause. If a bad credit report is made to TRW in connection with this former API / Fleming Partnership and cannot be remedied and removed within 60 days, LICENSEE will have violated this EULA.
3. LICENSOR will not be bound by any prior or past agreements that may restrict LICENSOR's legal remedies. Specifically, LICENSOR is not bound by any restrictions to any form of arbitration with the LICENSEE and may specifically pursue any and all legal remedies in the appropriate court including lawsuits and injunctive relief. Effective November 1, 1999, this agreement supercedes all prior written and oral agreements.
4. The SOFTWARE PRODUCT may only be used by LICENSEE in the State of Hawaii, within the LICENSEE's facility.
5. LICENSEE agrees that LICENSEE has been granted access to proprietary intellectual property and trade secrets contained in the SOFTWARE PRODUCT and may not replace this SOFTWARE PRODUCT with another custom system of comparable design or functionality without the burden of proving that the replacement custom software was developed without the

Page 4 of 5
October 29, 1999

assistance of LICENSEE and without violating this EULA. Furthermore, LICENSEE may not disclose, divulge or in any way make available to any other company or entity the proprietary intellectual property and trade secrets contained in the SOFTWARE PRODUCT.

6. LICENSEE may not use or create any additional I/O subsystems (Screens, Databases, Reports, "Glue Logic" or Integration Code) that are intended for use with or in conjunction with this SOFTWARE PRODUCT.

7. LICENSOR is under no obligation to support, modify or augment this SOFTWARE PRODUCT.

8. This SOFTWARE PRODUCT has operated for more that one year, essentially unchanged as to functionality and usage. Therefore, this SOFTWARE PRODUCT is made available to LICENSEE "as is and where is" without any other warranties expressed or implied.

9. All "Crystal Reports" used with this SOFTWARE PRODUCT must be compiled by LICENSEE. Only compiled versions of the reports, incorporated in the SOFTWARE PRODUCT, may be used by LICENSEE after December 15, 1999. LICENSEE is prohibited from making any new reports or functional and esthetic changes to any of the existing reports after September 1, 1999.

10. LICENSEE understands the original contract value of this software is $2 million dollars. Any damages sought by LICENSOR against LICENSEE will use this amount as a basis but not a limitation of LICENSEE's obligation to LICENSOR for using this SOFTWARE PRODUCT under the terms of this EULA.

_____          12/25/99
LICENSOR: Wayne Berry                    Date