LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **MEMORANDUM IN OPPOSITION** |
| | ) | **TO DEFENDANT PCT'S MOTION** |
| HAWAIIAN EXPRESS SERVICE, | ) | **IN LIMINE NO. 2 (TO EXCLUDE** |
| INC., a California corporation; et al. | ) | **THOMAS UENO); CERTIFICATE** |
| | ) | **OF SERVICE** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | HEARING: |
| | ) | DATE:  January 20, 2006 |
| | ) | TIME:   2:00 P.M. |
| | ) | JUDGE: Honorable Susan Mollway |
| Defendants. | ) | |
| | ) | TRIAL DATE: January 24, 2006 |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN
OPPOSITION TO DEFENDANT PCT'S MOTION
IN LIMINE NO. 2 (TO EXCLUDE THOMAS UENO)**

COMES NOW Plaintiff Wayne Berry, by and through his undersigned

counsel and hereby submits his memorandum in opposition to Defendant PCT's

Motion in Limine No. 2 (To Exclude Thomas Ueno) (the "Motion").

## I. INTRODUCTION.

As has been clear from the beginning, Fleming did not expect to be going to

trial on damages and did very little to explore the underlying basis for the damages

and now seeks to block the proof it ignored from reaching the jury.  The Court

should deny the motion.

## II. DISCUSSION.

The timely submitted[1] Ueno Expert Report set forth a clear basis for the

damages that are sought and the inability of counsel to conduct a proper deposition

cannot be placed on Mr. Ueno who is simply there to answer questions posed by

counsel that generally fell into a battle or semantics.  What the motion evidences is

that Fleming has failed to present any evidence of a competing reasonable license

fee to rebut Mr. Ueno.  In addition, the Fleming motions makes no claim that Mr.

---

[1]    The Court should recall the Fleming missed the expert report cut off
that was set forth in the Amended Rule 16 Order but given dispensation.

Ueno is not competent to give his opinion as to the Fleming gross revenues and the effect of the Berry system on them.  In addition, the fact that Mr. Kinrich omitted addressing the basis for over 92% of Fleming's alleged deductible expense and his failure to even discuss the freight profit-loss accounting that Fleming maintained regarding the logistics-department, should doom Fleming that had a history of hiding its profits derived from the Berry system in its costs of goods sold.   This failure could be fatal at trial and Fleming needs to do anything it can to avoid the consequences of its own omission and past deceptions.

        As to the "new" opinion, Mr. Ueno's supplemental opinion was reserved in regard to his earlier opinion and was created after the receipt of documents that had been withheld by Fleming under a claim of attorney-client privilege[2] and lowers Mr. Ueno's potential range of damages estimates, not raise them.  Fleming wishes to keep these out and stick with the earlier ones.   Based on the Fleming obstruction the Court should rule that the 500 container per week number in the Ueno report will be stated to the jury as an appropriate sanction for Fleming's delay and obstruction.

_____

        [2]        The Court should be fully familiar with Fleming's absurd claim that despite giving its materials to its trial experts they remain covered by the privilege. Absurd though it may be it was still an effective obstructionist technique and Fleming should not be rewarded for its indefensible conduct.

Mr. Ueno's Report and CV demonstrate his expertise as a highly qualified forensic accountant and damage expert.  Fleming does not attack his report on that basis.  He has set forth the actual amounts of profits that Fleming obtained during the relevant period.  Nowhere in the Fleming motions does Fleming attack Mr. Ueno's expertise in this regard.  It is clearly well within Mr. Ueno's expertise as a forensic accountant to read the Fleming financials, compare them with the C&S pro forma and come out with an opinion as to the gross revenue applying generally accepted accounting principals.  Fleming makes no claim that Mr. Ueno did not follow GAP.  The same holds true for his ability to point to the Kinrich omissions as to the 92% of gross revenue and the fact that the Fleming financials Kinrich reviews are not the same ones given to Mr. Ueno permitting the jury to infer that Fleming cooked its books that by its own litigation against its management and outside accountants is an admitted fact.   Fleming has made no claim that Mr. Ueno is not competent to give testimony regarding any of  these issues.

Fleming's only claims are that Mr. Ueno is not competent to give an opinion as to the reasonable license fee and the causal connection between the use of Berry's system and the Fleming gross revenue.   That is Mr. Berry's burden in this

case in regard to the expert opinion, if any, regarding the proof of his damages.[3]

Mr. Ueno's actual real world experience more than qualify him under current law. It's unfortunate that the camera was not on the Fleming attorney in the Ueno video deposition so that the Court could see the disturbed agitated demeanor when the attorney went through the list of things Mr. Ueno isn't an expert in coming, at last, to the relevant area in this case business software. Mr. Ueno testified that he is an expert on the creation of business software, an expertise that is both relevant to his opinion regarding reasonable license fee and profits. This expertise is clearly lacking from Fleming's own experts' qualifications. *See* Excerpt of the Ueno Deposition at p. 98:21 to 104:25., Declaration of Timothy J. Hogan Filed in Support of Plaintiff Wayne Berry's Oppositions to the Fleming-pct's Motions in Limine Nos. 1 Through 9 (the "Hogan Dec.") Exhibit "N".   Simply stated, as to Mr. Ueno's qualifications to give his opinion regarding the value of this work to Fleming's business, unlike Mr. Kinrich, is actually based on personal business software development experience.

Fleming's attempt to go back and restate bullet points from a deposition

---

[3]     Fleming repeats a mantra that profits and causation can only be proven by an expert but provide no authority for this position that is logically absurd. Mr. Berry can give evidence as to the profits that the system made during API use. Fleming has claimed from the beginning that the system was used during the relevant period "exactly as it had been used by API.

rather than asking the Court to actually read the Ueno report and consider his CV is evidence of the PCT's panic in this case.  The fact is that the evidence that the Ueno report puts forth as a foundation for Mr. Ueno to testify at trial sufficient for him to give an opinion regarding the effect of the Berry system on the Fleming operations. His opinion will be supported at trial through the foundation provided by Mr. Berry who will testify how his system worked for Fleming during the time it used it, legally, by Fleming.   Mr. Berry will testify at trial and Mr. Ueno will be able to give his opinion based on that testimony and any evidence that will be presented in this case all of which was disclosed in his report.  His report is proper  and he should be allowed to testify regarding his report at trial.

    As to the claim that Mr. Ueno's reasonable license fee is based on a number of flawed assumptions and facts, first, the PCT's Kinrich did no analysis.  Second, Mr. Ueno did not simply give his opinion but applied the factual realities of his opinion to the actual historical data related to the Fleming use of the Berry system. *See* Hogan Dec. Exhibit "A" at Attachment A, at Pages 4 and 9.   This control was clearly scientifically appropriate and results in almost the same license fee is his alternate approach that was based on the actual amount that Fleming paid (or gave up) for the use divided by its reasonable expected use.  It is clearly a valid generally accepted form of valuation that was properly vetted by comparison to  actual

historical Fleming-API financial data.   This number was almost exactly what

Fleming acknowledged as the fee during the API period.  *See* Ueno Report, at

Attachment A at Pages 4 & 9.   The Fleming argument may go to the weight of his

testimony not to its admissibility.[4]

It is worth noting that Fleming didn't even bother to present an opinion

regarding a competing reasonable license fee choosing to stick to its claim that all

Mr. Berry should get is paid for a couple of hours of his time that it would take to

make the infringing changes.  Fleming disregards the Ninth Circuit's own Model

Jury Instructions, Further Comments that makes it clear that a reasonable license fee

is a proper way to address Mr. Berry's damages especially in light of the limited

market for this software that Fleming, by its adjudicated infringement, must admits

it destroyed.

Mr. Ueno will testify from his own experience regarding the critical functions

performed by the Berry system the actual savings generated from this system that

Fleming admits, under oath, was used the same way that API had used it.  The

historical savings is almost exactly the same number that Mr. Ueno arrives at

---

[4]        The PCT admits that Mr. Ueno's reasonable license was based on a fair market valuation consistent with the Ueno Deposition. *See* Deposition of Thomas Ueno, Hogan Dec. Exhibit "N" at pg. 54:18 to 54:25.

though his alleged "flawed" methodology.   Fleming admitted to Mr. Berry during the period after it obtained the independent use of his system that the "savings" was the fair way to determine the license fee.  Hogan Dec. Exhibit B.  Based on this factual background the Ueno report is valid and will be helpful to the jury.

As to the profits, unlike Fleming's experts, Mr. Ueno is an expert in business software development and is competent to give testimony to support his report that Fleming's business was critically dependant upon the Berry system during the relevant period.  The Court has already ruled that there is no disputed fact that Fleming only had the Berry FCS during the relevant period and only used the Berry FCS during the relevant period.  The fact that Mr. Ueno agrees is hardly grounds to disqualify him.

As to the "feature rich"[5] bullet point, the Ueno Report sets forth the various critical business functions that the Berry system provide to Fleming.  Hogan Dec. Exhibit "A" at Attachment A, page 2.  It isn't that someone else couldn't have replaced it, it is that, during the relevant period, no one else had created a replacement.  Mr. Ueno's testimony based on his expertise in this area will be helpful to the jury and should be permitted.

---

[5]     Even Fleming admits that the absurd time consuming exchange about the definition of fair market in the software infringement context is simply much ado about nothing.

## III.    ARGUMENT.

The PCT, in what appears to be a bullet point cut and paste from other cases, has cited _Daubert v Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579 (1993), claiming it appears that forensic accounting is not valid discipline.  This position is absurd and the Court should simply disregard Fleming's absurd argument.

As to the ability of Mr. Ueno to testify regarding the effect of such software on the gross revenues of the enterprise, his personal expertise and hands on experience in this field make him the only expert that the jury will hear on this issue.

To support his reasonable fee Mr. Ueno deduces from the factual realities of the API Fleming deal and bring his own considerable business experience to court.

> At this point, Rule 702 has superseded _Dauber_t, but the standard of review that was established for _Daubert_ challenges is still appropriate. Under that standard, we review de novo the question whether the district court properly applied the legal framework, and we review decisions to admit or exclude expert testimony under the rule for abuse of discretion. _See United States v. Allen_, 269 F.3d 842, 845 (7th Cir. 2001).
>
> Expert testimony is admissible if offered by "a witness qualified as an expert by knowledge, skill, experience, training, or education," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. _Daubert_ laid

9

the foundation for this rule, which was designed to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (internal quotation marks omitted).

In applying the rule, we have recognized that "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, **Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience**." Id. (internal quotation marks and citations omitted);, 526 U.S. 137, 156, 143 L. Ed. 2d 238, 119 S. Ct. *see Kumho Tire Co. v. Carmichael* 1167 (1999). "**Thus, a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.**" *Smith*, 215 F.3d at 718; *see also United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (**observing that the Advisory Committee notes to Rule 702 specifically provide that "in certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony**").

*United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (citations in the original) (emphasis added).

Clearly, Mr. Ueno's personal experience qualifies him to testify regarding the effect this software had on Fleming's business.

As to the reasonable license fee, the undisputed evidence is that Fleming agreed the savings the system generates would be a way to determine a license fee. Hogan Dec. Exhibit "B."   Mr. Berry will put forward evidence regarding the

amount of savings historically obtained by API using his system. This approach supports Mr. Ueno's methodology almost to the penny regarding the reasonable license fee per container. Fleming was the one who proposed such an arrangement and by its own admission, the Berry system created savings that by any other name are profits. Mr. Ueno should be permitted to testify regarding all matters contained in his report.

## III.    CONCLUSION.

For the reasons stated the motion should be denied and allow the jury to decide.

DATED:  Honolulu, Hawaiʻi, January 10, 2006.


/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| vs. | ) | |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the dates and by the methods of service noted below, a true and correct copy of Plaintiff Wayne Berry's Memorandum in Opposition to Defendant PCT's Motion in Limine No. 2 (To Exclude Thomas Ueno) was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF on January 10, 2006</u>:

Rex Y. Fujichaku rfujichaku@bchlaw.net, jennifer@bchlaw.net

Lyle S. Hosoda lsh@hosodalaw.com

Raina P. Mead rpbm@hosodalaw.com

Ann C. Teranishi act@ksglaw.com

Thomas H.Y.P. Yee thy@ksglaw.com

DATED: Honolulu, Hawai'i, January 10, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY