KOBAYASHI SUGITA & GODA

BERT T. KOBAYASHI, JR.   659-0
LEX R. SMITH            3485-0
THOMAS H. YEE           7344-0
SUITE 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 539-8700
Fax No. (808) 539-8799
Email: lrs@ksg.law.com

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA  90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: eliebeler@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
|  | ) (Copyright) |
|  | ) |
| Plaintiff, | ) **DEFENDANT PCT'S RESPONSE TO** |
|  | ) **PLAINTIFF WAYNE BERRY'S** |
|  | ) **MOTION IN LIMINE TO EXCLUDE** |
| vs. | ) **EVIDENCE OF DEDUCTIBLE** |
|  | ) **EXPENSES AND BARRING ANY** |
|  | ) **TESTIMONY FROM THE PCT'S** |
| HAWAIIAN EXPRESS SERVICE, | ) **EXPERTS; DECLARATION OF** |

1

| | |
|---|---|
| INC., et al.,<br><br>　　　　　　　　　　Defendants. | ) **DAMIAN D. CAPOZZOLA IN**<br>) **SUPPORT OF DEFENDANT PCT'S**<br>) **RESPONSE TO PLAINTIFF WAYNE**<br>) **BERRY'S MOTION IN LIMINE TO**<br>) **EXCLUDE EVIDENCE OF**<br>) **DEDUCTIBLE EXPENSES AND**<br>) **BARRING ANY TESTIMONY FROM**<br>) **THE PCT'S EXPERTS; EXHIBITS**<br>) **"A" – "G"**<br>)<br>) Judge:　　Hon. Susan O. Mollway<br>) Trial Date:　January 24, 2006<br>)<br>) Hearing Date: January 20, 2006<br>) Hearing Time: 2:00 p.m.<br>)<br>) |

### DEFENDANT PCT'S RESPONSE TO PLAINTIFF WAYNE BERRY'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEDUCTIBLE EXPENSES AND BARRING ANY TESTIMONY FROM THE PCT'S EXPERTS

Berry's motion reveals his obsession with reaping a gigantic windfall by basing his profits damages primarily on the underlying fifty million dollars that it cost Fleming[1] to acquire the goods it subsequently sold to generate fifty-four million dollars worth of gross revenue between April 1 and June 9, 2003. Indeed, his fixation with this issue is so strong that he spends much of it repeating an

---

[1] For linguistic convenience we will use "Fleming" and the "PCT" throughout our briefing, and the terms are interchangeable unless context requires. Fleming Companies, Inc. filed Chapter 11 bankruptcy on April 1, 2003. As part of Fleming's reorganization plan, the Post-Confirmation Trust (PCT) was created to handle a number of rights and obligations relating to Fleming.

2

erroneous point he has already argued in his other motion against Fleming's economic damages expert, Jeffrey Kinrich: that Kinrich's report ignored the cost of goods and therefore the Court should preclude Kinrich from testifying about it.

Kinrich's report is consistent with the standard internal accounting practices Fleming employed here, which do not have a separate line item for cost of goods because the point is so patently obvious. Had Berry bothered to depose Mr. Kinrich, he would have learned that, if he had not already done so from reading Kinrich's September 28, 2005 supplemental report that expanded on these issues.

Berry's other issues pertaining to Mr. Kinrich are equally meritless. First, Kinrich reviewed the same materials Fleming sent (twice) to Berry's expert, Thomas Ueno. Second, Fleming has no obligation to rebut Berry's unsupportable and nonsensical assertion that Fleming has circulated separate sets of financial information to Kinrich and Ueno, but in any event Fleming has already spelled out its position in this regard in previous court papers. Third, Kinrich has never even seen, let alone reviewed, the Guidance materials. Had Berry bothered to depose Mr. Kinrich, he would have learned that, too, and he is more than welcome to explore the topic on cross-examination at trial if he wishes.

Finally, Berry's disjointed argument about Walker is simply irrelevant to deductible expenses. Fleming will not offer testimony from Walker bearing directly on deductible expenses in any material way. Moreover, Berry has

received all materials on which Walker relied, undercutting his uncited proposition that the Court must choose between barring Walker's testimony or declaring a privilege waiver. The Court should reject Berry's attempt to exponentially expand his damage claims in this manner.

### A. The Court Should Permit Kinrich To Address Deductible Expenses, Including Costs of Goods.

Exhibit 5 to Kinrich's June 16, 2005 report summarizes Fleming's financial data during the relevant April 1 to June 9, 2003 time period. Capozzola Decl. Ex. A (Kinrich Report). It clearly shows that Fleming recorded $54.4 million in net sales and a gross margin for all operations of $4.6 million. Berry's theory is that this represents an unexplained gap of almost fifty million dollars that Kinrich should not be able to address at trial. Capozzola Decl. Ex. B (Fleming's Trial Exhibit 231) -- a Powerpoint presentation that corresponds to anticipated testimony from Kinrich -- demonstrates that Fleming indeed intends to have Kinrich reference the subtraction of cost of goods in his analysis. Capozzola Decl. Ex. B at Slides 8-9 ("Fleming Hawaii Lost Money During the Infringement Period"); *see also* Kinrich September 28, 2005 Supplemental Report (Capozzola Decl. Ex. G at ¶¶ 35-37) (expanding on these issues). The Court should allow this testimony.

First and foremost, as Fleming was a wholesaler, Fleming had to acquire goods from vendors before it could sell them to retailers. The inherent cost of the goods is obviously something that Fleming needed to pass through to its

4

customers. And as Kinrich will testify, it is a common internal accounting practice for a wholesale distributor not to have a separate line item showing the subtraction of the product cost in evaluating profits or losses, precisely because the point is so obvious and management is more concerned about the other issues. Capozzola Decl. Ex. G at ¶¶ 35-37. Relatedly, if the Court has any concerns about this issue, before Kinrich testifies Brian Christensen (formerly Fleming's Hawaii Division President) would testify that indeed Fleming followed that practice, making Kinrich's corroborating testimony on that point academic.

Second, Berry's allegation that Fleming's cost of goods masked hidden freight allowances from Fleming's customers is a red herring here, where the goal is to determine what if any profit at Fleming between April 1 and June 9, 2003 stemmed from the use of Berry's software. Even if freight allowance profit were hidden from customers, Fleming would not hide profit from itself, and Berry's software played no role in setting prices or components of prices. The numbers would flow through to Fleming's income statement and become part of Kinrich's profits analysis just the same. If anything, the numbers in Fleming's balance sheets (and Kinrich Exhibit 5) were favorable to Fleming and are now thus favorable to Berry, as the "complex fraudulent conspiracy" Berry is so fond of pointing to involved <u>overreporting</u> of profits. Hogan Decl. Ex. C at ¶¶ 41-42.

Third, Berry raises baseless concerns about Kinrich reviewing materials to

5

which Ueno did not have access. Kinrich's report lists the materials on which he relied. Capozzola Decl. Ex. A at internal Ex. 2. Prominent among these are the PCT-B financial documents credited at Kinrich Ex. 5, while the Guidance materials are nowhere to be found. If Berry had legitimate concerns about the veracity of Kinrich's list of materials, Berry could have deposed Kinrich. He chose not to do so. Meanwhile, Berry's own expert actually rejected Fleming's attempt to ship him the PCT-B financial documents, forcing Fleming to ship the documents to him a second time to avoid the very argument that Berry now makes (i.e., that Fleming's expert had access to materials unavailable to Berry's expert). Capozzola Decl. Ex. C. And as Fleming has explained this in previous court papers (Capozzola Decl. Ex. D), Berry's uncited position that Fleming had some sort of obligation to rebut this allegation is factually incorrect in any event.

      The bottom line is that all of the reasons Berry offers against Kinrich discussing cost of goods are meritless. The Court should reject them and allow Kinrich to testify in that regard.

      **B.**    **Berry's Contentions Regarding Marty Walker And Privilege Waiver Issues Are Both Irrelevant And Incorrect.**

      In the second half of his motion Berry launches into a lengthy diatribe on the Guidance materials and privilege waiver issues that he has recycled from previous unsuccessful motions. Berry does not coherently explain how these concepts are related to deductible expenses, but presumably his theory is that Fleming should

6

not be allowed to introduce through Martin Walker evidence from the Guidance materials pertaining to deductible expenses if that material has not been produced to him.

Assuming that is his position, Fleming agrees: Marty Walker's testimony about deductible expenses will be at most tangential, if there is any at all, and in any event Walker's testimony will be based entirely on materials that Berry has. Capozzola Decl. Exs. E, F (Walker reports' listings of materials relied on and correspondence showing such materials either came from or were produced to Berry). But against this background, Berry's uncited proposition that the Court must choose between barring Walker's testimony or declaring a blanket privilege waiver as to all materials conveyed to Walker (whether he relied on them or not, or even whether he looked at them or not) is a false and useless dichotomy.

Moreover, Berry's underlying premise is incorrect: there has been no privilege waiver in this matter. This Court has not made such a finding, nor has Magistrate Kobayashi or Master Matsui. Nor should anyone make such a finding. There can be no waiver in this case because Fleming's experts never actually reviewed any privileged materials; they were expressly instructed against this. *See* Hogan Decl. Ex. D, p. 2 (noting that Fleming's counsel "specifically instructed Dr. Walker to disregard any attorney-client materials and focus exclusively on the technical issues relevant to his analysis."); *see also Vaughan Furniture Co. v.*

*Featureline Mfg. Co.*, 156 F.R.D. 123, 128 (M.D.N.C. 1994) (waiver only applies to documents reviewed and relevant to formulation of opinion); *Baxter Diagnostics Inc. v. AVL Scientific Corp.*, No. CV 91-4178-RG, 1993 WL 360674 at *1 (C.D. Cal., Aug. 6, 1993) (finding that an expert "considers" information within the meaning of Fed. R. Civ. P. 26(a)(2)(B) only when the expert (1) relies on the information in formulating the opinion or (2) actually reviews the information, but ultimately rejects it in formulating the opinion).

None of Berry's cases apply to the present situation, in which by baselessly claiming rights in hundreds of thousands of files Berry forced Fleming to enlist the help of its technical expert to figure out what he had claimed, and in which the expert was specifically instructed <u>not</u> to inspect anything that might be privileged. Hogan Decl. Ex. D.

Courts prefer to uphold the attorney-client privilege, and under these circumstances the Court should not find waiver here even if the issue were squarely before the Court. *See e.g. In re Lott,* 424 F.3d 446, 453-54 (6th Cir. 2005) (waivers of attorney-client privilege are narrowly construed and while the sword stays sheathed, the privilege stands); *CP Kelco U.S. Inc. V. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del 2003) (finding no waiver of privilege where it is not used as a sword and a shield and where party gains no offensive advantage from disclosing privileged information to an expert witness); *Amway Corp. v. Procter*

*& Gamble Co.*, No. 98CV726, 2001 WL 1877268 *1 (W.D. Mich. 2001, Apr. 17, 2001). In *Amway*, the court declined to find waiver of privilege as to documents received but never viewed by defendant's expert witnesses. The court reasoned that in such case, the plaintiff's right to effectively cross-examine the expert witness was in no way affected. *Id.* As in *Amway*, so it is here.

In any event, Marty Walker's review of certain Guidance materials has no material bearing on deductible expenses or any of the financial analysis that properly resides in Jeff Kinrich's domain.

For all of the foregoing reasons, Fleming respectfully requests that the Court deny Berry's *in limine* motion in its entirety.

Dated: Honolulu, Hawaii, January 10, 2006.

KOBAYASHI, SUGITA & GODA  /s/ *Thomas H. Yee*
BERT T. KOBAYASHI, JR.
LEX R. SMITH
THOMAS H. YEE
Attorneys for Defendant
THE POST CONFIRMATION TRUST
FOR THE FLEMING COMPANIES, INC.

and

KIRKLAND & ELLIS LLP
Eric C. Liebler (CA Bar No. 149504)
Damian D. Capozzola (CA Bar No. 228611)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 680-8400

9

Facsimilie: (213) 680-8500

Co-Counsel for the Post Confirmation Trust for Fleming Companies, Inc.