# EXHIBIT E

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


Berry v. HEX, et. al.


Case No. CV03 00385 SOM-LEK


**Rule 26(a)(2)(B) EXPERT REPORT OF MARTIN G. WALKER, PH.D**


**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, I, Martin G. Walker, Ph.D., provide the following expert report:

1.  I have been retained as an expert consultant by the Post-Confirmation Trust for Fleming Companies, Inc. regarding copyright infringement and other matters alleged by Plaintiff Wayne Berry ("Berry") in the Second Amended Verified Complaint (the "Complaint"), a true and correct copy of which is attached as Exhibit A. This report is based on my personal knowledge and experience as well as my investigation in this matter, and reflects my expert opinions on certain issues to which I may testify.

**I.   DATABASE SOFTWARE.**

2.  The software at issue in this case relates generally to the field of database applications. Database software is one of the oldest forms of software, and remains one of the most pervasive applications of computer systems. As is well known, one of the tasks that computers are particularly well suited for is collection and management of data. The computer systems responsible for managing the data, organizing the data, and presenting data in such a way as to be meaningful and understandable to humans are often called database systems. These systems can be huge and complex (for instance, the census data for the US), or much more modest (for instance in individual's address book). In fact a substantial fraction of all software systems implement some form of database systems.

**II.   OVERVIEW OF EXPERIENCE WITH DATABASE SOFTWARE.**

3.  After formal programming training at MIT and Stanford University, I began writing commercial software in the mid 1970s. I have continued to program throughout my technical career, creating data capture programs (i.e. loading databases and processing data from databases) when I was with Knowledge Networks in 2001. I have continued to write data analysis programs in association with my consulting practice, writing my most recent data analysis program in April, 2005. As a result, I have nearly thirty years of experience in the design of large software projects. Most of these projects involved management of large amounts of data in circumstances where the organization of the data was extremely complex. For instance, I have over twenty-five years of experience in the fields of electronic design automation ("EDA")

Santa Clara Superior Court, Case No. CV 778635, *Silvaco Data Systems v. Antonau et al*, Case No. 1-00-CV-79016; *Circuit Semantics Inc. v. Silvaco Data Systems and Ivan Pesic*, AAA Case No. 74 Y 117 01071 03 LMT; *Silvaco Data Systems v. Circuit Semantics, Inc.*, Case No. 1-04-017359.

## VII. COMPENSATION AND MATERIALS REVIEWED.

14. I am being compensated in this matter at the rate of $300 per hour with the exception of travel time for which my compensation is reduced by fifty percent. My compensation is not dependent upon the outcome of this case. I considered the materials contained in PCT-B MW 0001-0470, 0473-0548, 0550-0561, 0565-2490, and materials specifically referenced in this report to the extent not included in the numbered materials.

## VIII. SUMMARY OF MY ASSIGNMENT.

15. I was asked to compare the Berry Freight Control System, registered with the Copyright Office by Wayne Berry on October 19th, 1999, and referenced in the Complaint (the "Berry Database"), with various versions of software used by the Defendants after April 1, 2003. In particular, I was asked to determine if, in my opinion as an expert in the field of database design, there was any evidence of copyright infringement. I was asked to review two versions of the software used by Defendants: the databases used by the Defendants after April, 2003, through approximately June 9, 2003 (which I will refer to as the "Dual Databases"), and the system used by Defendants after June 9, 2003 (the "2003 Excel Spreadsheets").

16. I was also asked to analyze and comment on Berry's claims of misappropriation of trade secrets, as described in paragraphs 96-112 of the Complaint. Finally, I was asked to comment on Berry's claims of spoliation of evidence.

## IX. SUMMARY OF OPINIONS.

17. I understand that the Plaintiff alleges that the Dual Databases are an unlicensed derivative work and therefore infringe his copyright. I examined these allegedly infringing Dual Databases and determined that one is practically identical to the licensed software. In particular I found 1334 out of 1341 fields (99.5%) to be identical. Further, the few different fields add so little to the mix of protectable material that it is my opinion that the first of the Dual Databases

does not represent an unlicensed derivative work. The second Dual Database was authored entirely by Fleming, contains no content authored by Berry, and does not infringe any Berry copyright.

18.  I have reviewed each of the alleged infringing elements of the 2003 Excel Spreadsheets. As explained in greater detail below, I performed this extrinsic analysis by considering each element identified by Berry as having been copied by Defendants. Next, I identified the subset of those elements subject to copyright protection. Finally I compared the remaining protectable content with the claimed infringing content in the 2003 Excel Spreadsheets. I found that Berry had identified only very limited copyrightable content, and of this content, none of it was copied in the 2003 Excel Spreadsheets. Thus it is my opinion that the 2003 Excel Spreadsheets do not constitute an unlicensed derived work.

19.  I also reviewed the allegations of Misappropriation of Trade Secrets. I found that Berry did not identify any information with sufficient particularity to distinguish it from matters of general knowledge, nor did Berry identify any information with independent economic value from not being generally known, and therefore Berry did not identify any trade secrets. Thus it is my opinion that the defendants could not have misappropriated trade secrets (since there are no identified trade secrets to misappropriate).

20.  Finally, I reviewed Berry's claims regarding spoliation of evidence and found them to be lacking in foundation and otherwise incorrect.

## X.  INTRODUCTION TO DATABASE DESIGN.

21.  This section presents a brief overview of concepts and terms associated with database design. Particular attention is given to copyrightability of various aspects of a database.

22.  Briefly, a database is an organized collection of information. The data are organized into *fields, records,* and *tables.* A field contains a single piece of information. A record contains data for a collection of fields. Tables are a collection of records. A database then contains one or more tables. Tables and the fields within tables are assigned names so that the data can be more easily referenced.

23.  Confusingly, the term "database" not only refers to the data (as I have used the

- that the server (if the file was on the server) was the same server on which Berry had installed his software 5 years earlier;

- that the listing in the Guidance image has anything to do with the notation. The only evidence Berry cites is file size. And most importantly, the file sizes are different. Berry bases his entire theory on the fact that he found an unallocated cluster that matched the size of the file that Gurzi supposedly found. But the size of the cluster cited by Berry is 4.719Gbytes, and the size noted in the notation is 4.630Gbytes. These sizes are obviously different.

97. In summary it is my opinion, based on the specific issues cited above as well as numerous other issues in the report itself, that the Berry Declaration Re Spoliation contains unfounded speculation and unsupported expert opinion and should be disregarded in its entirety.

XVI. CONCLUSION.

98. My principal conclusions in this matter can be summarized as follows:

- That the Dual Databases, used prior to June 9, 2003, are not unlicensed derivatives of the Berry FCS 93 database;

- That the 2003 Excel Spreadsheets, used as of and after June 9, 2003, do not constitute an unlicensed derived work;

- That Berry has not identified any trade secrets; and

- That the Berry Declaration Re Spoliation should be disregarded as inappropriate expert testimony.

Dated: May 31, 2005

_____
MARTIN G. WALKER, PH.D.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

Berry v. Hex, et. al.

Case No. CV03 00385 SOM-LEK

**SUPPLEMENTAL EXPERT REPORT OF MARTIN G. WALKER, PH.D**

**HIGHLY CONFIDENTIAL -- ATTORNEYS EYES ONLY**

I, Martin G. Walker, Ph.D., provide the following supplemental expert report:

1. I have been retained as an expert consultant by the Post-Confirmation Trust for Fleming Companies, Inc. I have been asked to review certain declarations and memoranda in opposition to Defendant's motions and, if possible, render opinions relating to these papers.

2. I have reviewed the Declaration of Wayne Berry, dated June 7, 2005, the Declaration of Wayne Berry dated May 31, 2005, the Declaration of Philip Johnson, dated June 7, 2005, and Plaintiff Wayne Berry's Memorandum in Opposition to Defendant Fleming-PCT Counter-Motion for Summary Judgment, in addition to the materials identified in my Expert Report dated May 31, 2005.

## I. SUMMARY OF FINDINGS.

3. As an initial matter, Berry and his expert, Dr. Johnson, devote much of their declaration to speculation as to which versions of the various programs at issue in this matter I examined. Based on faulty analysis that I will discuss in greater detail below, they come to the conclusion that I based my opinions on some versions of these software programs that I never saw, and were not even disclosed as materials that I relied on. Berry and Johnson are simply wrong. I based my opinions on the appropriate software as I carefully disclosed in my expert report.

4. As I will detail further below, the alleged discrepancies identified by Berry and Johnson can be mostly explained by a simple observation: software changes over time. For instance, Berry and Johnson make much of the fact that the version of Berry's database that I examined contains 1334 fields, whereas they claim that the database that Berry claims that he installed at Fleming contains 1356 fields. In fact (as I stated in my report), I based my analysis on the version of Berry's database represented in his copyright registration dated Oct 19, 1999 and attached to Berry's Second Amended Verified Complaint as Exh. C. Thus the discrepancy in the number of fields does not indicate that I examined a "likely retained infringing copy" as Berry speculates, but rather indicates that Berry provided two different copies of his database: the version that he filed with the copyright office and the version he produced electronically. (Attached as Exhibit A to this report is a true and correct photo-static image of the disk produced

    spoliation based on forensic analysis;

- Berry's argument appears to rest on correlation between Gurzi's time records and the last accessed times of various files. But I know that last accessed time on the Microsoft NTFS is stored in so-called UTC ("Coordinated Universal Time"), which is 11 hours ahead of local time in Hawaii. Berry does not mention any corrections for this time difference, or even if he was aware of this correction.
- Berry does not discuss other actions that might modify last access times and thus make his analysis unreliable. For instance a keyword search often can modify the last access time for a file.

47.    For at least the reasons cited above, and including the fact that this new theory of spoliation has been presented without adequate expert foundation, it is my opinion that Berry's declaration in this regard is unreliable at best and should be disregarded.

Dated: June 14, 2005

                                                 MARTIN G. WALKER, PH.D.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

Berry v. HEX, et. al.

Case No. CV03 00385 SOM-LEK

**Rule 26(A)(2) SECOND SUPPLEMENTAL EXPERT REPORT OF MARTIN G. WALKER, PH.D**

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

I, Martin G. Walker, Ph.D., provide the following supplemental expert report:

1. I have been retained as an expert consultant by the Post-Confirmation Trust for Fleming Companies, Inc. I have been asked to review certain declarations and memoranda regarding Plaintiff Wayne Berry's July 12, 2005 Motion for Reconsideration and, if possible, render opinions relating to these papers. This supplemental report is based on my investigation in this matter to date and on my personal knowledge and experience, which are detailed in my previous reports and which I incorporate by reference, although for the convenience of the Court and counsel I will again attach my current resume as Exhibit A. This supplemental report reflects my expert opinions on certain issues to which I could testify if asked.

## I. EXECUTIVE SUMMARY.

2. Berry's Motion principally relies on allegations that Defendants operated two databases (FCS Logistics Data.mdb and FHL Data.mdb) after April 1, 2003, and Berry contends this conflicts with the evidence on which the Court based its previous order re summary judgment. As proof of these allegations, Berry provides seven examples (Exhibits A through G of the Declaration of Tim Hogan and the identical Exhibits A through G attached to the Declaration of Professor Philip Johnson).

3. I have reviewed the material listed in Paragraph 5. For the reasons detailed below, it is my opinion that Berry has presented no evidence that either of the databases were operational during the time periods that Berry claims. Instead, as detailed below, I found that Berry's allegations are based on inadequate forensic analysis of various files, invalid assumptions, and/or faulty reasoning, and that the evidence Berry presents is actually consistent with the premises on which the Court based its June 27, 2005 Order.

4. Further, to the extent that Berry implies that the operation of the databases in question may have continued after July 5, 2003 (i.e., after Guidance Software completed its project), Berry is simply and demonstrably wrong. Berry may not reasonably dispute that Guidance Software permanently removed these databases because the operational images of these databases do not appear in the images Guidance Software made of Fleming's computer systems upon completion of the project. None of Berry's evidence casts doubt on this conclusion.

II. **MATERIALS REVIEWED.**

5. In addition to the materials identified in my previous reports, I have considered the following material: Plaintiff Wayne Berry's Motion for Reconsideration, the Declarations of Professor Philip Johnson and Timothy Hogan attached thereto, materials specifically referenced in this report to the extent not included in the above materials. In addition, I reviewed the following material produced by Guidance:

- "Before File Metadata" including the complete list of files included in the "Before Images" (explained in more detail in section IV below);
- "After File Metadata" including the complete list of files included in the "After Images" (explained in more detail in section IV below);
- Files from the "Before Images" designated by Berry as "Suspect Files"; and
- Files from the "After Images" designated by Berry as "Suspect Files".

To the extent I relied on these Guidance-produced files from either the "Before Images" or from the "After Images," they have been included on the CD attached to this supplemental report as Exhibit B.

III. **SUMMARY OF MY ASSIGNMENT.**

6. I was asked to review and analyze the allegations made in Berry's Motion for Reconsideration as purportedly supported by the Hogan and Johnson Declarations and their exhibits. I was also asked to opine on the reliability and veracity of these allegations, to the extent I could do so.

IV. **FACTUAL BACKGROUND**

7. I understand that Fleming retained Guidance Software to perform the following tasks:

- image the hard drives of certain computers used by Defendants (I will refer to these images as the "Before Images");
- "scrub" these drives so that no traces of any Berry intellectual property was left;
- reinstall generic software and reload specific user files onto these drives;

creation dates of last written dates of these files. But merely opening a report does not provide evidence that underlying database was used for operational purposes.

46. Berry then makes the unsupported argument that these Crystal Report files "evidence the use of the Access database 'FHL Data.mdb' to operate Fleming's freight logistics business." Although Berry cites to Dr. Johnson's declaration to support this statement, Dr. Johnson never opines that any evidence he reviewed supports any conclusion regarding operation of the database. Indeed Dr. Johnson never uses the term "operate" at all.

47. Thus it is my opinion that there is no support for Berry's contention regarding operation of the "FHL Data.mdb" database, and indeed all evidence cited is consistent with the testimony of Mr. Dillon regarding the "FHL Data.mdb" database.

## XIII. CONCLUSION

48. My principal conclusions in this matter therefore can be summarized as follows:

- That the Berry "FCS Logistics Data.mdb" database was not operated after March 28, 2003;
- That the "FHL Data.mdb" database was not used for operational purposes and certainly not used after March 28, 2003;
- That the operational versions of the databases at issues were never loaded onto the Defendants' servers at the conclusion of the Guidance Software project in July 2003; and
- That Berry has presented no contrary evidence to any of the conclusions stated above or to otherwise justify reconsideration of the Court's previous ruling.

Dated: July 22, 2005

_____
MARTIN G. WALKER, PH.D.

# EXHIBIT B



# Exhibit B - CD Containing Files Considered by Walker

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


Berry v. HEX, et. al.


Case No.  CV03 00385 SOM-LEK


**Rule 26(A)(2) FOURTH SUPPLEMENTAL EXPERT REPORT OF MARTIN G. WALKER, PH.D**

I, Martin G. Walker, Ph.D., provide the following supplemental expert report:

1. I have been retained as an expert consultant by the Post-Confirmation Trust for Fleming Companies, Inc. I have been asked to review certain declarations and memoranda in regarding Plaintiff Wayne Berry's Motion for Order to Show Cause re Guidance Software, and, if possible, render opinions relating to these papers. This report is based on my personal knowledge and experience as well as my investigation in this matter, and reflects my expert opinions on certain issues to which I could testify if asked.

I. **SUMMARY OF FINDINGS.**

2. I found that Berry's arguments are completely unsupported by any facts. In particular, I found that there is no 4.6 gigabyte cluster, that there is no evidence that there ever was a 4.6 gigabyte Access database, and that Guidance properly produced all recoverable database files requested by Berry.

II. **MATERIALS REVIEWED.**

3. In addition to material reviewed detailed in previous expert reports, I reviewed Berry's Motion for Order to Show Cause Why Guidance Software, Inc. Shall not Be Held in Contempt and accompanying Declarations of Hogan and Berry. I also reviewed a copy of the files from the "Before Images" as produced to Defendants, as well as the list of "Suspect Files" created by Berry.

III. **SUMMARY OF MY ASSIGNMENT.**

4. I was asked to review and analyze the allegations made in Berry's Motion to Show Cause and allegedly supported by the Declarations of Berry and Hogan. To the extent possible I was asked to provide any opinions regarding the reliability and veracity of these allegations.

IV. **BACKGROUND**

Bits and Bytes

5. As most everyone knows, today's computer systems are based on digital processors which work with binary data. Binary data are represented by ones and zeros. Thus the smallest unit of data (which can have a value of either one or zero) is a single binary digit, or bit. Further, since time immemorial (or at least since the 1950s) characters have been encoded in a

files which were on Berry's list were not able to be produced for a one or more of five reasons. The other document is a list of the files that were unable to be produced. I reviewed the second document and found that there are apparently 141 Access database files on this list. As a result, Guidance has accounted for more files than Berry claims were missing. Thus Guidance already provided the information that Berry demanded they produce. I am not able to accomplish a more detailed reconciliation unless Berry produces the data that he claims supports his Exhibit I.

### VIII. CONCLUSION

38.  My principal conclusions in this matter can be summarized as follows:

- That the 4.6 gigabyte cluster is not a database and never was a database;
- That the file is merely a collection of unrelated clusters; and
- That Guidance produced all database files requested by Berry that were actually files on the Before Images;

Dated: November 10, 2005

_____
MARTIN G. WALKER, PH.D.