

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                          )     Chapter 11
                                   )
Fleming Companies, Inc. et al ,     )     Case No. 03-10945 (MFW)
                                   )
         Debtors.                )     (Jointly Administered)
                                   )
                                   )     Related to Proof of
                                   )     Claim No. 18704
                                   )
                                   )
                                   )
                                   )
_____ )

### WAYNE BERRY'S RESPONSES TO FIRST
### SET OF INTERROGATORIES PROPOUNDED
### TO WAYNE BERRY RE: CLAIM NO. 18704

COMES NOW Plaintiff Wayne Berry and submits his responses to First Set

of Interrogatories Propounded to Wayne Berry Re: Claim No. 18704 as follows:

### GENERAL OBJECTIONS

Plaintiff generally objects to First Set of Interrogatories to Wayne Berry to

the extent that:

The Interrogatories impose burdens or obligations greater than those

imposed by Rules 26 and 33 of the Federal Rules of Civil Procedure; the

Interrogatories seek information that are protected by the attorney-client privilege

and/or work product immunity doctrine; the Interrogatories seek information not



relevant to any claim or defense in this proceeding; the Definitions and instructions in the Interrogatories change or are inconsistent with the customary meaning of words; the Interrogatories are seeking information that is equally available to Defendants including, but not limited to, information available on the Fleming Companies, Inc. Bankruptcy Pacer site or in US District Court files available to the public; the Interrogatories, in whole or in part, are overly broad, vague, ambiguous, confusing, complex, unintelligible, oppressive, or duplicative.

These interrogatories are propounded in violation of this Court's earlier orders that directed that the Berry claims be liquidated in the Hawaii Infringement Litigation.

In addition, the requests seek confidential proprietary information that should be protected under 11 U.S.C. § 107(b) and Fed. R. Bankr. P. 9018 and Fed. R. Civ. P. 26(c).

Discovery is ongoing and Plaintiff reserves the right to supplement its responses to the request at any time prior to the hearing or trial in this matter.

Timothy J. Hogan

# INTERROGATORIES

## INTERROGATORY NO. 1

DESCRIBE in detail every reason why YOU contend that YOU are due "actual damages of at least $2,990,000 for unpaid license fee for one year's use of Original Logistics Data.mdb and Auxiliary Logistics Data.mdb[,and] unlicenced derivatives of FCS Logistics Data.mdb."

Answer:

Fleming used no less than two illegal derivatives of my software to operate its business after the filing of the Bankruptcy. Because Fleming chose not to cure the infringement and the license violations prior to confirmation, it is liable for the unpaid license fees from the infringing use of my software.

As to how the amounts were calculated, Fleming is a monopoly in Hawaii and as such Fleming's sales are a closely guarded secret. One way of determining Fleming's actual monthly sales is from the schedules filed by Fleming in the bankruptcy. From a review of the schedules that reflect payments made to creditors during the 90 days prior to Fleming's bankruptcy, I found payments made to the State of Hawaii for General Excise Tax ("GET") in the amount of $383,488 for each month. Fleming is a wholesaler and the wholesale GET in Hawaii is .5% (½%). This would evidences that Fleming's gross sales are approximately $76,697,600 per month or $920,371,200 per year.

Fleming has admitted, under oath, in the first Copyright Lawsuit, that Fleming shipped at least 200 (120 admitted in declarations plus 80 additional admitted at trial) ocean containers per week. I believe that 505 containers per week rather than Fleming's admitted 200 containers per week is closer to reality. I arrive at 505 containers per week by dividing Fleming's gross sales (based on Fleming's GET Tax payments) by an estimated average cargo value of $35,000 per container. The number of containers comes out to about 505 per week.

To further corroborate the 505 containers per week, I have received additional discovery in the Hawaii litigation. One of Teresa Noa's emails (document

D1440) admits that Horizon constitutes 10% and Matson constitutes 90% of the business. I took samplings of data provided by Fleming in the first infringement lawsuit and found that Fleming ships about 30 to 40 containers per week though Horizon. My analysis of documents produced by Horizon in the current lawsuit suggests that this number is 40 to 50 per week. Based on this additional evidence, Fleming and now C&S's weekly container volume appears to be somewhere in the 300 to 400 per week range. So my estimation of 505 per week is well within the ballpark.

During the four year period from November 1995 to October 1999, API performed logistics work on an average of 66 Fleming ocean containers per week (these historical documents and calculations were produced in the first copyright infringement lawsuit). The 66 containers per week constituted approximately one third of the entire volume of containers inbound to the Fleming facility at Kapolei, Hawaii which was approximately 200 containers per week on average during the years 1995 to 1999. By using my FCS1993 software, API was able to reduce the cost of shipping by an average of $1,763 per container over that four year period, when compared to existing market rates of freight forwarders and pre-paid vendor shipments from the West Coast of the Continental United States ("CONUS") to Hawaii. API shared this savings with Fleming on a 50/50 basis. The average value of the commodity per container during this period of time was approximately $35,000. Fleming reported the higher "freight forwarder" rates to their customers as the actual cost of freight for products Fleming sold to them, thereby retaining all the savings generated by FCS1993 as pure profit. Therefore, the income attributable to the copyrighted work was about $1,763 per container or $1,763 / $35,000 = 5%. That makes a reasonable license fee for the use of the FCS 1993 based on the amount that was previously set by API and Fleming for its licensed use.

This license fee is also consistent with industry norms. For example, Fleming and now C&S continue to service the logistics needs of Kmart. The Fleming (C&S) / Kmart contract contains several revenue sources for Fleming (C&S). One of these revenue centers is a "logistics fee" for choreographing the shipment of Kmart products using my software. The "logistic fee" schedule in the contract ranges from 3% to 4% of the value of the commodity within the container. This is almost identical to the profits generated by Fleming and API. Fleming and now C&S use my FCS1993 software to earn this profit.

The two examples of profit attributable to the copyrighted work roughly coincide with one another. Therefore, using the historical figure of $1,763 per container is more than fair and supported by both the API and the Kmart models. The "deductible expenses" or costs associated with operating my FCS1993 software in order to achieve this license fee are approximately $1,000,000 per year based on the following:

| | | | | |
|---|---|---|---|---|
| Employee Payroll | 14 | $ 50,000 | $ | 700,000 |
| Rent | | | $ | 25,000 |
| Utilities | | | $ | 12,000 |
| Insurance | | | $ | 12,000 |
| Computer Equipment | | | $ | 1,000 |
| Computer Software | | | $ | - |
| Other ? | | | $ | 250,000 |
| | | Total | $ | 1,000,000 |

So if we take $1,763 of profit attributable to the copyrighted work and multiply it by Fleming's and now C&S's 350 containers per week (average of 300 to 400) or 18,200 containers per year, the gross equals $ 32,086,600. **Subtracting the cost of the operation or "deductible expenses" of $1,000,000, that leaves $ 31,086,600 of income attributable to the use copyrighted work. ($ 31,086,600 divided by 52 weeks equals $ 617,050 per week or $1,724.54 net per container)**

Because of the time constraints imposed to file this Administrative Claim by the last Administrative Claims Bar Date combined with the ongoing "gamesmanship" of the PCT and their attorneys, I chose the lowest estimate I could calculate ($2,990,000 rounded) to establish a "floor" for unpaid license fees that I could refine and amend upward as new discovery and other information became available. This calculation was based the following criteria:

1 License Fee of $1,724.54 per container
2 Fleming's admitted use of FCS1993 until at least the week of July 6, 2003
3 Fleming's admitted weekly container volume of at least 120 per week

Item 1 of Exhibit A to Claim 18704 states:

"1. Actual damages of **at least** $2,990,000 for unpaid license fee for one year's use of Original Logistics Data.mdb and Auxiliary Logistics Data.mdb unlicenced derivatives of FCS Logistics Data.mdb. **Additional "actual damages" accrue** to this number each and every day until unlicenced use of

3

Berry's software stops."

Since this portion of the claim was only for "at least" a calculated amount (which establishes a floor to the number) and continued to accrue until unlicenced use stops (which leaves an open ended liability that accrues against the PCT and the reorganized debtor on a daily basis due to indemnity of C&S for use of "Berry Technology"), I intend to amend this portion of the claim to bring the damages forward to December 31, 2004. Therefore, the new unpaid license fee is now calculated to be:

- April 1, 2003 to December 31, 2004 is 91.43 weeks.
- Weekly damages is $ 617,050 per week ($1,724.54 net per container)
- **Lost License Fee Damage through December 31, 2004 is now $ 56,416,881.50.**

This number may again need to be amended upward or downward depending on the actual number of containers per week handled by Fleming (C&S). Discovery is ongoing.

INTERROGATORY NO. 2

DESCRIBE in detail how YOU calculated "actual damages of at least $2,990,000 for unpaid license fee for one year's use of Original Logistics Data.mdb and Auxiliary Logistics Data.mdb[,and] unlicenced derivatives of FCS Logistics Data.mdb."

Answer:

*See* answer to No. 1 above.

INTERROGATORY NO. 3

IDENTIFY all persons who have knowledge of any unpaid license fee YOU

4

contend YOU are due from FLEMING.

**Answer:**

Objection. Vague and ambiguous. Fleming has indemnified and conspired with various other infringers to facilitate the ongoing infringement. Therefore the term "Fleming" is vague and ambiguous.

FLEMING, the PCT and their counsel continue to actively assist C&S and others in the infringement of Mr. Berry's intellectual property. In addition, Mr. Berry is informed and believes that certain entities were concealed unscheduled assets of the debtors. These entities, that are subsidiaries and/or affiliates of the former Debtors, continue to do business and, upon information and belief, continue, with others, to illegally possess and operate Berry Technology. Discovery is ongoing.

Timothy J. Hogan

Not waiving the above objections, and incorporating the general objections, Fleming and agents including but not limited to comptroller and logistics department employees and its attorneys.
C&S and agents including but not limited to comptroller and logistics department employees and its attorneys.
Brian Christensen
Andrew Chun
James Payne
Fleming and C&S's attorneys at Kirkland & Ellis
Horizon Lines
Matson Navigation
Wayne Berry
Lex Smith
Jon Kobayashi, a Fleming Employee
State of Hawaii
Anyone else reading the public information available on BMC related to this claim.

## INTERROGATORY NO. 4

IDENTIFY all DOCUMENTS that support or refute YOUR contention that YOU are due "actual damages of at least $2,990,000 for unpaid license fee for one year's use of Original Logistics Data.mdb and Auxiliary Logistics Data.mdb [,and] unlicenced derivatives of FCS Logistics Data.mdb."

Answer:

Specifically, documents referred to in the above answers.
Generally, discovery produced in the First Copyright Infringement Lawsuit, the Second Copyright Infringement Lawsuit and the Fleming Bankruptcy.
Remaining Documents are in possession of PCT and other parties.
Fleming Tax records
Ocean Carrier Documents
Trucking related records
DeCA Electronic Freight Rollups.
Foodland EDI.

## INTERROGATORY NO. 5

IDENTIFY, by file name, all derivatives of YOUR SOFTWARE YOU contend FLEMING created.

Answer:

Objection. Vague and ambiguous. Fleming has indemnified and conspired with various other infringers to facilitate the ongoing infringement. Therefore the term "Fleming" is vague and ambiguous.

FLEMING, the PCT and their counsel continue to actively assist C&S and others in the infringement of Mr. Berry's intellectual property. In addition, Mr. Berry is informed and believes that certain entities were concealed unscheduled assets of the debtors. These entities, that are subsidiaries and/or affiliates of the former Debtors, continue to do business and, upon information

6

and belief, continue, with others, to illegally possess and operate Berry Technology. Discovery is ongoing.   In addition, Fleming has, through Guidance Software, Inc., committed criminal destruction of evidence a violation of Hawaii state law.

_____

Timothy J. Hogan

Not waiving the above objections, and incorporating the general objections, it is currently impossible to identify "all" derivatives of my software that I contend Fleming created by file name.  File names are simple to alter. That file name alteration does not in any way affect my ownership of the intellectual property contained in that file or in any derivatives.  While I can list some obvious suspect derivative file names that I have discovered on the Guidance CD, upon actual inspection and operation of the file regardless of it's name, I can determine which are and which aren't my property.  Upon the entry of a stipulated non-destruction order, that will bind the PCT , the Committee and their agents to an admission of criminal destruction of evidence that may used in Hawaii and federal criminal proceedings  should there be any attempt to remove or obfuscate the files on the C&S computers, Mr. Berry will provide the list.   Please provide a draft of the stipulation.

## INTERROGATORY NO. 6

IDENTIFY all copyrights YOU own and which YOU contend FLEMING infringed.

Answer:

Objection: Vague and ambiguous. Fleming has indemnified and conspired with various  other infringers to facilitate the ongoing infringement. Therefore the term "Fleming" is vague and ambiguous.

_____
Timothy J. Hogan

Not waiving the above objection, and incorporating the general objections, I own the copyrights to any and all original expressions that I have ever created. Fleming and its co-conspirators have infringed on every one of my original expressions in their possession. I will further supplement this interrogatory when I have been given access to the C&S system.

## INTERROGATORY NO. 7

IDENTIFY all DOCUMENTS that support or refute your contention that FLEMING created approximately 2,018 derivative works in violation of YOUR copyright rights.

Answer:

Objection: Vague and ambiguous. Fleming has indemnified and conspired with various other infringers to facilitate the ongoing infringement. Therefore the term "Fleming" is vague and ambiguous.

_____
Timothy J. Hogan

Not waiving the above objection, and incorporating the general objections,

The Guidance CD.
The C&S Computers System
Transcripts of Hearings
The actual original files in my possession.

## INTERROGATORY NO. 8

IDENTIFY all payments YOU received from FLEMING since April 1, 2003.

Answer:

None.

## INTERROGATORY NO. 9

IDENTIFY all payments YOU receive(d) from Y. HATA & CO., LTD since April 1, 2003.

Answer:

Objection: Irrelevant. Also, request seeks proprietary confidential commercial information to assist C&S in it monopolistic conduct and is intended to harass and annoy and cause injury to Mr. Berry and Y. Hata. Also, PCT counsel represents C&S through their association with Kobayashi Sugita & Goda and should be disqualified.

Timothy J. Hogan

Not waiving the objection and incorporating the general objections, I received a payment from Y. Hata for each month since approximately May 2003.

## INTERROGATORY NO. 10

For all responses to FLEMING's concurrently served Requests for Admissions which are other than unqualified admissions, state all facts bearing on YOUR response.

9

Answer:

Objection: The word "bearing" is vague ambiguous and over broad.

Timothy J. Hogan

    Not waiving the above objection and incorporating the general objections, all facts ascertained in the First Infringement Lawsuit, the Second Infringement Lawsuit and the Fleming Bankruptcy and discovery. *See* above.

INTERROGATORY NO. 11

    For all responses to FLEMING'S concurrently served Requests for Admissions which are other than unqualified admissions, identify all documents bearing on YOUR response.

    Objection: The word "bearing" is vague ambiguous and over broad.

Timothy J. Hogan

    Not waiving the above objection and incorporating the general objections, all documents produced in discovery in the First Infringement Lawsuit, the Second Infringement Lawsuit and documents produced in the Fleming Bankruptcy.

## INTERROGATORY NO. 12

For all responses to FLEMING's concurrently served Requests for Admissions which are other than unqualified admissions, identify all persons with knowledge of facts bearing on YOUR response.

Objection: The word "bearing" is ~~vague~~ ambiguous and over broad.

_____

Timothy J. Hogan

Answer:

Not waiving the above objection, and incorporating the general objections,

Wayne Berry
Fleming and its agents
C&S and its agents
Fleming and C&S's attorneys at Kirkland & Ellis
Anyone else reading the public information available on BMC related to this claim.

11

## VERIFICATION

STATE OF HAWAII                          )
                                         ) SS:
CITY AND COUNTY OF HONOLULU              )

_____Wayne Berry_____, being first duly sworn upon oath, deposes and says:

that he has read the foregoing answers to interrogatories, knows the contents thereof and that the same are true to the best of his/her knowledge and belief.

_____Wayne Berry_____

Subscribed and sworn to before me
this 7th day of January, 2005.

_____

Print Name: __Jane Sung__
Notary Public, State of Hawaii
commission expires: 3/18/2005

12