LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **REPLY TO DEFENDANT PCT'S** |
| | ) | **OPPOSITION TO WAYNE** |
| HAWAIIAN EXPRESS SERVICE, | ) | **BERRY'S MOTION FOR** |
| INC., a California corporation; et al. | ) | **PERMANENT INJUNCTION** |
| | ) | |
| | ) | Hearing: |
| | ) | DATE:  January 30, 2006 |
| | ) | TIME:   2:00 P.M. |
| | ) | JUDGE: Honorable Susan Mollway |
| | ) | |
| | ) | TRIAL DATE: January 24, 2006 |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S REPLY
TO DEFENDANT PCT'S OPPOSITION TO
WAYNE BERRY'S MOTION FOR PERMANENT INJUNCTION**

## I. INTRODUCTION.

COMES NOW Plaintiff Wayne Berry, by and through his undersigned counsel and hereby respectfully submits his reply to Defendant PCT's Opposition to Wayne Berry's Motion for Permanent Injunction (the "Opposition"). This Reply is supported Declaration of Timothy J. Hogan in Support of Reply to Memoranda in Opposition to Motion for Entry of Permanent Injunction and Order Directing Return, Destruction, or Other Reasonable Disposition of All Copies of Freight Control System; Exhibits "A" Through "I" (the "Hogan Dec.") and the Declaration of Wayne Berry; Exhibits "A" and "B" both filed separately and incorporated herein.

## II. DISCUSSION.

### A. Reports of Fleming's Demise are Greatly Exaggerated.

The PCT makes three fundamental erroneous claims in its Opposition. The first is that Fleming died. It is not simply, as the PCT now admits, that the allegedly dead wholesaler continued to be held out for over two years as selling *re-*

*pasteurized* milk in the State of Hawaii.[1] The big error is based on the effect of the Fleming Bankruptcy on its continued, albeit, transformed existence. Fleming *reorganized*, it didn't *liquidate*, and, like a corporate vampire, is poised to rise again.

As set forth in the Fleming Plan of Reorganization (the "Plan"), the Delaware Bankruptcy Court ordered a *substantive consolidation* of the numerous debtor estates. *See* Hogan Dec. at ¶ 3 and Exhibit "C" at internal page 22 and pdf physical page of 3 of 4. At definition paragraph 153 the Plan defines the "Reorganized Debtors" to include "Core-Mark Newco" and its related entities. Next, the Plan provides that, as part of the substantive consolidation, all of Fleming's assets would be vested in Core-Mark Newco or one of its subsidiaries. Whether Fleming lives or died at the moment of Plan confirmation really doesn't matter in the current case. When this case started, Fleming was the liable party. After Plan confirmation, both the PCT and Core-Mark are liable for Mr. Berry's claims against Fleming for acts

---

[1] Clearly not directly relevant to this case but worth mentioning is that, Plaintiff is informed and believes, contrary the inferences in the Christensen Declaration, nearly all milk sold in Honolulu is pasturized on the mainland, then shipped in large tanks to be re-pasturized by Deans Foods fka Meadow Gold Dairy and placed in a variety of packing for its customers, A small amount of "Farm Fresh" milk is produced on Oahu with more available on the Big Island. As a side note, Deans Foods was one of the parties cited by the SEC in the Fleming Cease and Desist Order for a variety of unlawful practices related to Fleming.

transpiring after April 1, 2003.

Ordinarily, a reorganized debtor emerges from bankruptcy with a "fresh start" having been born into the commercial world free of the baggage of the pre-petition creditors. Not so with Fleming and its new host Core-Mark at least as to one special creditor who had been victimized by Fleming's wrongdoing. Mr. Berry has the distinct honor of being the only Fleming creditor to pass through to the other side and, like *Van Helsing,* continues to lawfully pursue Fleming even in its altered state by order of the United States Bankruptcy Court for the District of Delaware. *See* Order Granting Motion of Wayne Berry for an Order Granting Relief from the Automatic Stay or, in the Alternative, Relief from the Discharge and Permanent Injunction Provisions of Debtors' and Official Committee of Unsecured Creditors' Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and Its Filing Subsidiaries Under Chapter 11 of the United States Bankruptcy Code. filed in the in *In re Fleming Companies, Inc*. Bk. No. 03-10945 (MFW) (Bankr. Del.) on July 27, 2004 Hogan Dec. ¶ 4 and Exhibit "D."

Core-Mark continues to do business. Core-Mark is the reorganized debtor and Fleming by any other name at least as to Mr. Berry. Core-Mark continues to do business with Fleming's assets operating in the food distribution wholesale business and all legal rights and legal responsibilities that were addressed in the

plan as to Mr. Berry are now Core-Mark's. If Fleming's agents have a *wild* copy of the Berry FCS or the hundreds of Dillon derivatives, as a matter of law, this contraband is now in Core-Mark's constructive, if not actual, possession. Because the PCT's counsel are, upon information and belief, also Core-Mark's counsel, the injunction should be effective if entered against Fleming and its agents. In any event, Mr. Berry's *silver bullet* (Hogan Exhibit "D") makes the holder of the illegal software, entirely immaterial.

In addition, Core-Mark has, since the filing of the Fleming Bankruptcy case, apparently come into the possession of what it claims to be a new *internally developed* logistics system that it books at being worth $6 million. *See* Hogan Dec. Exhibit "H" at pdf page 9 of 15. The obvious fear is that Core-Mark actually has a copy of the Berry FCS. That need not be proven for Mr. Berry to be given the absolute right to an injunction because Fleming's new host is clearly a direct horizontal competitor in the food wholesale freight logistics software development market and represents an admitted ongoing threat to Mr. Berry by its agents continued possession of the Berry works. Mr. Berry begs the Court to put an end to this absurd comic opera once and for all and enforce the law as Congress clearly intends.

B.  **The Protective Order Can't Protect Mr. Berry.**

The next factual and legal misstatement that the PCT makes in its attempt to avoid the necessities of injunctive relief in this case is to say that, somehow, the Protective Order will protect Mr. Berry's rights in regard to the intellectual property that is the subject of this case.  That is patently false.

The Protective Order deals with materials that were turned over during "discovery" and after the entry of the Protective Order.  *See* Excerpt of the Protective Order, Hogan Dec. ¶ 7 and Exhibit "G" at ¶¶ 2.6 and 2.14.  None of the materials that were obtained by Fleming through the creation of derivatives and the maintenance of those derivatives on the systems and backups nor the Guidance images are covered by the Protective Order.  This constitutes hundreds of copies.  The copies that were delivered to C&S and all of the backups in Guidance' possession and any taken by Fleming agents for Core-Mark or for whatever reason simply are not covered by the Protective Order, the PCT's misstatement notwithstanding.

Noteworthy however, is the PCT's clear and unequivocal admission that Mr. Berry is entitled to protection in the form of a *court order*.  By the simple fact that the Protective Order can't suffice, the PCT concedes that Mr. Berry is entitled to

some form of injunctive relief.

There is very strong evidence in this case that illegal copies of Mr. Berry's software were removed from the Fleming facilities and transferred to third parties. The reason that Mr. Berry makes this statement is that during the period of time that Fleming was attempting to produce an expert report, it was able to come up with a copy of Mr. Berry's software that it claimed it had gotten in the original litigation. However, that software was not Mr. Berry's original software turned over in regard to the original litigation.   It was a copy obtained from some other source.  Mr. Berry believes the PCT knows where this software came from and that the PCT has been withholding copies of Mr. Berry's software that were obtained by people who are now Core-Mark's agents (a Berry competitor) and that have very strong likelihood had been delivered to Core-Mark as Fleming's new reorganized entity.

As to Mr. Berry's right to an injunction, the burden is on Fleming to prove that it is not threatening Mr. Berry's rights in the future.  The fact is that Fleming will continue to infringe and Mr. Berry will continue to have to burden the courts, plus his own wallet, with having to protect his software copyrights.  The Court should not put him in this position and should enforce the law and grant the injunction.

### C.  There is Already an Injunction and the World Still Turns.

Finally, there is already an injunction entered in this case. It will make very little difference to the overall operation of C&S if the injunction were entered because C&S' freight forwarder has already agreed to an injunction. Fleming is the one who is attempting to walk out the door with a copy of Mr. Berry's software and the Court should not permit it. The return of all Berry FCS copies and derivatives must be ordered and that the Court, in failing to do so, will send a signal to this group of twice adjudicated infringers that they are free to do it again. Mr. Berry should not suffer this and be forced into litigation again and again.

### D.  The PCT Has Not Claimed Any Prejudice from an Injunction.

The PCT claims that because Fleming is out of business it can't infringe. As set forth above that is simply untrue. In any event, Fleming concedes that there is no harm to the PCT in granting the injunction. In contrast, Mr. Berry has set forth the real and likely result of additional copying of his works even if not in the possession of the infringers. *See* Hogan Dec. Exhibit "I" and Berry Dec. Exhibits "A" and "B."

The Court should exercise the Court's discretion and order the return and enjoin any further use or reverse engineering of any of the Berry works that are the subject of his copyright infringement claim.

DATED: Honolulu, DATED: Honolulu, HawaiʻI, January 19, 2006.

        /s/ Timothy J. Hogan
        TIMOTHY J. HOGAN
        Attorney for Plaintiff WAYNE BERRY