LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **REPLY TO DEFENDANTS BRIAN** |
| | ) | **CHRISTENSEN, MARK DILLON,** |
| HAWAIIAN EXPRESS SERVICE, | ) | **TERESA NOA, MELVIN PONCE,** |
| INC., a California corporation; et al. | ) | **SONIA PURDY, JUSTIN** |
| | ) | **FUKUMOTO, ALFREDDA** |
| | ) | **WAIOLAMA, AND JACQUELINE** |
| | ) | **RIO'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO PLAINTIFF** |
| | ) | **WAYNE BERRY'S MOTION FOR** |
| | ) | **ISSUANCE OF PERMANENT** |
| | ) | **INJUNCTION AND ORDER** |
| | ) | **DIRECTING RETURN,** |
| | ) | **DESTRUCTION OR OTHER** |
| | ) | **REASONABLE DISPOSITION OF** |
| Defendants. | ) | **ALL COPIES OF FREIGHT** |
| | ) | **CONTROL SYSTEM** |
| | ) | |
| | ) | |
| | ) | Hearing: |

|  | ) | DATE:  January 30, 2006 |
|--|---|-------------------------|
|  | ) | TIME:   2:00 P.M. |
|  | ) | JUDGE: Honorable Susan Mollway |
|  | ) | |
|  | ) | TRIAL DATE: January 24, 2006 |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S REPLY TO
DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON,
TERESA NOA, MELVIN PONCE, SONIA PURDY, JUST
FUKUMOTO, ALFREDDA WAIOLAMA AND JACQUELINE
RIO'S OPPOSITION TO WAYNE BERRY'S MOTION FOR
ISSUANCE OF PERMANENT INJUNCTION AND ORDER
DIRECTING RETURN, DESTRUCTION OR OTHER
REASONABLE DISPOSITION OF ALL COPIES OF
FREIGHT CONTROL SYSTEM**

## I.    INTRODUCTION.

COMES NOW Plaintiff Wayne Berry, by and through his undersigned

counsel and hereby submits his reply to Defendants Brian Christensen, Mark

Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda

Waiolama and Jacqueline Rio's Opposition to Wayne Berry's Motion for Issuance

of Permanent Injunction and Order Directing Return, Destruction or Other

Reasonable Disposition of All Copies of Freight Control System (the "Employees'

Opposition").

This Reply is supported Declaration of Timothy J. Hogan in Support of

Reply to Memoranda in Opposition to Motion for Entry of Permanent Injunction

and Order Directing Return, Destruction, or Other Reasonable Disposition of All

Copies of Freight Control System; Exhibits "A" Through "I" (the "Hogan Dec.")

and the Declaration of Wayne Berry; Exhibits "A" and "B" both filed separately

and incorporated herein by this reference.

## II.     DISCUSSION.

The Employees' Opposition is based on the erroneous premise that because

these Employees have not been found liable as C&S employees they somehow

should be immune from any order of the Court enjoining further use and/or

possession of FCS Logistics Data.mdb ("FCS") and/or any of the Berry FCS

derivatives that are the subject of this case.  These Defendants have not, however,

cited any authority for this position.  It is clear that these Defendants are infringers

as a matter of law.  There is no issue of  likelihood of success on the merits to soften

Mr. Berry's right to an injunction.   All of these Defendants have had lengthy direct

access to computers that contain copies of Mr. Berry's work.  Mr. Dillon has

conceded in earlier parts of the proceeding that he had copies of works on his home

computer and in his car.  The fact that he can access from C&S misses the point.

The fact is that he can access it at home,  car or from his memory is what Mr. Berry

is rightfully concerned about.  Dillon has never claimed to have done away with his

home copies of the Berry works that remain un-accounted for.  His ability to

recreate the infringing work from memory has not been denied.

Dillon has had multiple copies of Mr. Berry's works in his possession. Because he is an adjudicated infringer the law provides that he should no longer have them. That is all the Motion seeks. Federal law makes it clear that Mr. Berry is entitled to, at a minimum, the return of any of these works.

As to an injunction for creation of additional derivatives, Mr. Berry has now suffered Mr. Dillon's creation of what may be over 100 illegal derivatives of his FCS software. He should not have to wait to see if the 101st derivative is to be made. The burden is on Mr. Dillon to prove that he won't infringe again. He has provided no evidence whatsoever that he won't infringe in the future other than his promise. He impliedly promised he wouldn't infringe the previous 100 times but did. His promises are not enough because he remains under the delusion that the derivative portions of the Berry FCS that he created are his property, Mr. Berry remains at risk. These unauthorized derivatives are, as a matter of well settled law, Mr. Berry's works and remain available to these infringers. The Berry Declaration and its Exhibits A and B detail numerous Berry FCS derivatives that remained on the C&S computers and were not addressed by any of the Dillon Affidavits that the Court has accepted as true even when Dillon admits to their falsity.

It is worth noting that the Affidavit of Mark Dillon attached as Exhibit A to

the declaration of Lyle S. Hosoda filed in opposition to the instant motion, is the

September 13, 2004 variant of this affidavit that was modified at the Preliminary

Injunction Hearing when Mr. Dillon's clearly faulty memory was at last able to

recall that the "Original" system wasn't exactly as it had been represented.  The

Court noted this in its findings denying the Motion for Preliminary Injunction at

paragraph E on page 6 and 7.  A true and correct copy of that Order is attached to

the Hogan Dec. as Exhibit "A."  This admittedly false affidavit was corrected at the

hearing on the Motion for Preliminary Injunction and refilled, as corrected,  on

September 30, 2004.   In that same part of the Court's Order, the Court clearly

shows it reliance on Mr. Dillon's testimony where he testified that he removed the

Y2K change and left only the "field Scratch name added to the company name

table, and possibly two label changes on other fields." *Id.*   Based in large part on

this testimony the Court denied the Motion for Preliminary Injunction.  The facts

are clear that the true original Berry system had 69 Tables.  That fact is not in

dispute because even their expert agrees with that.  The Dillon derivative Original

Logistics Data.mdb had 88 tables as was established in regard to the Motions for

Summary Judgment on Damages.  *See* Hogan Dec. Exhibits E & F that were earlier

filed as Exhibits 13 and 14 to the Declaration of Timothy J. Hogan filed on in

regard to Mr. Berry's Opposition to the PCT Motion for Partial Summary Judgment

on Damages.   While the Court found in ruling on the Motion for Reconsideration that the simple linkage to the Berry system was not necessarily making an infringing copy, the fact that Dillon was still working with the prohibited work after he claims to have completed his spreadsheets and ceased to have any need for it, makes Mr. Berry's fear of continued infringement more than mere speculation.

Dillon's right to continued possession is non-existent as a matter of law. The number of Berry FCS derivatives that were transferred to C&S were simply too large for Dillon not to have a specific recollection of when and how they were deleted. The Declaration of Wayne Berry; Exhibit "A" evidences the FCS copies and derivatives that remained on the Fleming computers when the were sold to C&S.  All of these files are derived from FCS and protected by Mr. Berry's copyright as set forth in the Berry Declaration Exhibit "B."

The supporting proof for the Employee Opposition simply says that Dillon can't remember what he did with the infringing software but he's pretty sure he deleted it because of his desire to avoid any contact with Mr. Berry's copyrighted works.   If that were true he should welcome an injunction.  The problem is that Dillon has demonstrated he has no desire to actually investigate what constitutes Mr. Berry's work and continues to rely on the  defense of inadvertent infringement.

 If Mr. Dillon uses Mr. Berry's software to create additional derivatives or in

6

any way violate his exclusive rights, such use would be, as a matter of law, a felony.

It is also not necessary that Mr. Berry prove continued access to have a legitimate right to an injunction. It is well settled that infringement can lie from the copy of the work resident in the infringer's own mind.

> <u>Subconscious copying</u> has been accepted since Learned Hand embraced it in a 1924 music infringement case: "<u>Everything registers somewhere in our memories</u>, and no one can tell what may evoke it . . . . Once it appears that another has in fact used the copyright as the source of this production, he has invaded the author's rights. <u>It is no excuse that in so doing his memory has played him a trick.</u>

<u>*Three Boys Music Corp. v. Bolton*</u>, 212 F.3d 477, 482-483 (9th Cir. 2000) (citations omitted) (emphasis added).

The Court should enter the order, at a minimum as to Mr. Dillon and Noa, to enjoin them from ever reproducing any portion of Mr. Berry's work, including, but not limited to, any derivatives, or using them for any purpose anywhere and at any time. The fact that the possession of a copy is not necessary for these defendants to infringe and this fact is proven by an email dated August 5, 2003, well after Guidance had completed its work over the July 4th weekend, and after C&S took over. In this email Dillon and Noa discuss the reconstitution of what even they admit was a copyrighted component of FCS, Mr. Berry's Z Tables. Hogan Dec.

Exhibit "I" and Berry Dec. Exhibits "A" and "B." This email is a good example of

why Mr. Berry need not show possession of the works by these adjudicated

infringers. Even assuming that their planning was to recreate the Z Tables from

memory and not just pull out one of the dozens of copies of Z Table derivatives that

were transferred to C&S (Berry Dec. Exhibit "A"), the fact is that they have had

sufficient access to the Berry FCS to recreate portions from memory. This type of

copying is clearly recognized as infringement. The possession the Berry works is

not a condition precedent to the threat of future infringement as a matter of law in

this circuit. These infringing developers continue to threaten Mr. Berry's lawful

monopoly and must be enjoined.

   These Defendants have the burden to prove that there is no risk to Mr. Berry,

not Mr. Berry. The Court of Appeals has set a burden for Fleming and its

employees to meet that cannot be met to overcome the Plaintiff's right to an

injunction.

> In this case, the district court refused to grant an injunction because
> the plaintiffs had not introduced any specific evidence to
> demonstrate that the defendants would infringe in the future. The
> court was correct in noting that cessation of the unlawful conduct
> can moot such a dispute, but it failed to recognize that "the reform of
> the defendant must be irrefutably demonstrated and total." The
> defendants had willfully violated [Plaintiff's] trademark rights. The
> defendants refused to stop violating those rights until [Plaintiff]
> brought suit in federal district court. We should not require
> [Plaintiff] also to introduce concrete evidence that the defendants are

likely to infringe again. If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark. Accordingly, we reverse the district court's refusal to grant permanent injunctive relief.

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-6 (9th Cir. 1986). (emphasis added) (citations omitted).

The Court is asked to take notice that on March 6, 2003, a Jury found Fleming a willful infringer for the nearly 100 derivatives of FCS that Mr. Dillon created on Fleming's behalf for its financial gain. A true and correct copy of an excerpt of the jury verdict is attached to the Hogan Dec. as Exhibit "B." The final judgement was submitted earlier as Exhibit 2 to the Declaration of Timothy J. Hogan Exhibits 1 to 17 filed in support of the instant motion. In this case, Mr. Dillon has been found himself to be an infringer escaping the tag of "willful infringer" by claiming, falsely, that he only changed one field in one table. By not enjoining the defendants, in particular, Mark Dillon and Teresa Noa, the Court will be sending the message that it is permissible to infringe, but more important, that false testimony is rewarded. For those reasons the Motions should be granted in all respects.

9

DATED:  Honolulu, DATED:  Honolulu, HawaiʻI, January 19, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY