```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3                                    )
      WAYNE BERRY,                    )  CV 01-00446 SPK-LEK
 4                                    )
              Plaintiff,              )  Honolulu, Hawaii
 5          vs.                       )  March 5, 2003
                                      )  9:00 A.M.
 6    FLEMING COMPANIES, INC.,        )
      et al.,                         )  Settling of Instructions
 7                                    )
              Defendants.             )
 8    _____)

 9
                  PARTIAL TRANSCRIPT OF JURY TRIAL
10            BEFORE THE HONORABLE SAMUEL P. KING
                  UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:          TIMOTHY J. HOGAN, ESQ.
                                  Lynch Ichida Thompson Kim
14                                 & Hirota
                                  First Hawaiian Tower
15                                1132 Bishop St., Ste. 1405
                                  Honolulu, HI 96813
16
      For the Defendant           LEX R. SMITH, ESQ.
17    Fleming Companies, Inc.:    ANN C. TERANISHI, ESQ.
                                  Kobayashi Sugita & Goda
18                                First Hawaiian Center
                                  999 Bishop St., Ste. 2600
19                                Honolulu, HI 96813

20    Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                  United States District Court
21                                300 Ala Moana Blvd. Ste. C285
                                  Honolulu, HI 96850
22                                (808) 534-0667

23

24
      Proceedings recorded by machine shorthand, transcript
25    produced with computer-aided transcription (CAT).
```

Exhbit B

1    WEDNESDAY, MARCH 5, 2003            9:39 O'CLOCK A.M.

2        (In open court without the jury:)

3        THE CLERK:  Civil 01-00446 SPK, Wayne Berry

4    versus Fleming Companies.  This hearing has been called

5    for Objections to the Jury Instructions.

6        Counsel, your appearances for the record,

7    please.

8        MR. HOGAN:  Timothy Hogan on behalf of the

9    plaintiff Wayne Berry, who is also present.

10       MR. SMITH:  Lex Smith and Ann Teranishi for

11   Fleming.  Ralph Sussi is also present from Fleming

12   Companies.

13       THE COURT:  We have a proposed special verdict

14   form, and the insertion of the exhibit numbers, that's not

15   objectionable.  221, 222, 223.

16       MR. HOGAN:  That's acceptable, Your Honor.

17       THE COURT:  Now we come to the word "purchased"

18   in paragraph 2 of each of the A, B, C verdict forms,

19   referring to different software systems.  And I've changed

20   the word "purchased" to "had" in each case.  You want to

21   be heard about that?

22       MR. HOGAN:  Yes.  I think probably just on the

23   issue -- I understand the court is inclined to go this

24   way.  Because the use of "had" gives it a past tense, Your

25   Honor, that at least we're talking about current use.  And

Exhbit B

1  I believe that they have to have it; so I think it should

2  be "has."

3          And that's relevant, Your Honor, on the issue of

4  rescindment.  If it was rescinded, which we will attempt

5  to argue to the jury, they don't have one, but they did --

6  they had one once.  So for that purpose I think that, if

7  we can just agree that it goes to "has," then we're not

8  knocking out rescission as one of the things we can argue

9  to the jury effectively.

10          THE COURT:  That it "has"?

11          MR. HOGAN:  "Has," Your Honor.  So if it lost

12  it, it no longer has it.

13          THE COURT:  Have?

14          MR. HOGAN:  But something that would make it not

15  past tense that would essentially say -- the jury could be

16  confused thinking, well, they had one during the period of

17  time that the EULA was alive.

18          THE COURT:  Want to change "had" to "has"?

19          MR. SMITH:  No objection, Your Honor.

20          THE COURT:  Okay.  We'll make it "has" in each

21  case.

22          Now, in -- also as to each section of the

23  verdict form relating to software, I've stricken what was

24  question number 4, "Was the infringement of the freight

25  control software copyright willful?  Yes.  No.  Go to the

Exhbit B

1   next question."  I've stricken that.

2           And again, "Was the infringement of the Crystal

3   Reports software copyright willful?  Yes.  No.  Go to the

4   next question."  I've stricken that.

5           And again, "Was the infringement of the

6   FlemingPO.exe software copyright willful?  Yes.  No.  Go

7   to the next question."  I've stricken that.

8           MR. HOGAN:  Your Honor, if I may be heard.

9   First, we elected statutory damages on the belief that

10  we'd get to the jury on willfulness.  We're already here.

11  I just want to put on --

12          THE COURT:  You can change your mind now if you

13  want to.

14          MR. HOGAN:  Let's address the instruction, Your

15  Honor, at least as to the language, if I may.  Let me try

16  to appeal to you to reconsider your decision on the issue

17  of willfulness, if I may first, Your Honor, if the court

18  will permit me.

19          The instruction that the court -- it was number

20  49 and 51, which makes it the third from the last --

21  adopted language that we had placed in our second set of

22  instructions that basically gives to the jury the decision

23  of whether something was willful.  If you recall the

24  case -- the Feltner case, Your Honor, that the Supreme

25  Court ruled that issues of statutory damages are jury

Exhbit B

1    issues, Your Honor.  And I believe the issue of

2    willfulness, if there's any evidence at all, should go to

3    the jury.

4            The language says, "An infringement was willful

5    when the defendant engages in acts that infringe the

6    copyright and knew that those actions may infringe the

7    copyright."

8            Part of our case, Your Honor, is Mr. Dillon

9    taking source code, despite his testimony, and creating an

10   illegal derivative.  Nothing could be more willful than

11   that.  If he took source code and copied it, Your Honor --

12   and his testimony was that he didn't, but our expert says

13   he did.  And because of that, Your Honor, there is no way

14   to look at that other than as a willful infringement.

15           THE COURT:  Which instruction is that again?

16           MR. HOGAN:  That would be the actual -- the one

17   that you were going to bifurcate, Your Honor.  It's on 49

18   and 51, which I believe would put it third from the

19   last.

20           THE COURT:  Yeah.

21           MR. HOGAN:  That's the instruction that the

22   court had prepared that was, I believe, consistent with

23   the Ninth Circuit model instructions.  And it really comes

24   down to whether they knew it may infringe, not that it

25   did.  I believe the Ninth Circuit has made it clear that

Exhbit B

1    in issues of willfulness close calls go to the plaintiff.

2    And at least as to FlemingPO.exe, Your Honor, there's

3    clear evidence that a jury could find a willful

4    infringement.  There is no license that would cure that.

5            As to the other two claims of infringement under

6    our statutory request, Your Honor, the first as to freight

7    control system, it's clear that Mr. Berry had thought he

8    was going to be the one to make the changes.  There's no

9    document in the record that says that they could change

10   the freight database; although, they're going to argue it

11   was implied.  But at least a reasonable juror could say,

12   "No, no, no.  Mr. Berry was to do that, and you infringed

13   it.  And when you did that, you did it knowing that it

14   might infringe his copyright."

15           We have the letter -- exhibit 16, Your Honor.

16   That's on the FlemingPO.  Their own employees are telling

17   them it's infringement back before it started.

18           THE COURT:  Well, that's when he manufactured a

19   license that nobody had agreed to.

20           MR. HOGAN:  Well, I understand that, but if --

21   even if it was onerous, at least they were aware that

22   there were things out there that were going to cause

23   infringement.  They did it anyway.

24           THE COURT:  Did he claim that, yes.

25           MR. HOGAN:  But as to FlemingPO.exe, Your Honor,

1    the creation of that derivative has no non-willful

2    explanation.  I would say the same thing as to the Crystal

3    Reports.  If they went in and changed -- it seems like a

4    trivial thing, but in the case like this it's 150,000

5    trivial thing that they went in and changed it.  We

6    know -- we're outside the jury.  We know why they did it,

7    Your Honor.  We know why.  They did it because they were

8    taking the money from the invoices.  Now, the jury doesn't

9    get to hear that, but can we say that that wasn't willful?

10          THE COURT:  Because they were doing what?

11          MR. HOGAN:  They changed -- they went in and

12   took API's receivables.  They changed the name.

13          MR. SMITH:  Counsel is now arguing the subject

14   that the court has already ordered us to arbitration on

15   and that the plaintiff has refused to go to arbitration

16   on, Your Honor.

17          MR. HOGAN:  The point I'm trying to make, Your

18   Honor, is it's one thing that if one takes a piece of

19   computer software, thinks it's okay to make a backup copy,

20   and then finds out it's not.  That would be an innocence

21   infringement.  Or if a company finds out that they've got

22   Mr. Berry's software and we write them a letter and say

23   please stop using it and they stop, it's still

24   infringement but it's innocent.

25          They fought tooth and nail, Your Honor, to keep

Exhbit B

1  that software, knowing that they might be infringers.  And

2  I think the jury gets to decide that.  Feltner says it's a

3  jury issue, Your Honor, and it never used to be.

4          THE COURT:  How could it be willful when they

5  were using it with permission all the time?

6          MR. HOGAN:  Your Honor, had they made no

7  changes --

8          THE COURT:  Before they had the asset purchase

9  agreement.

10         MR. HOGAN:  Well, API had used it, Your Honor.

11  API had --

12         THE COURT:  For Fleming.

13         MR. HOGAN:  Well, but it was not Fleming's

14  people, Your Honor.  They actually were parking API people

15  at Fleming running it.

16         THE COURT:  So what does that --

17         MR. HOGAN:  Well, no one has alleged -- had

18  Fleming made no changes there would be no case here, Your

19  Honor.  That's all it's about.  They knew they were going

20  to take a chance on infringing --

21         THE COURT:  Well, you heard what the changes

22  were.  There were a lot of reports that had no material in

23  them; so they just dropped them.  That was one of them.

24         MR. HOGAN:  But the evidence is that that is one

25  of the exclusive rights of ownership, Your Honor.  Whether

Exhbit B

```
 1    we like it or not copyrights are unique; it's a monopoly

 2    that the owner and the author gets.

 3         THE COURT:  That's fine.  You can argue that.

 4    But to say that it's willful --

 5         MR. HOGAN:  I guess the question -- I can't pose

 6    it to the court, but I have to pose to myself, Your

 7    Honor -- is when would it be willful?  When can you in a

 8    commercial setting where they've taken -- there's only one

 9    copy of this out there.

10         THE COURT:  No, no, no -- well, one copy, yes.

11    Which he installed on their equipment.

12         MR. HOGAN:  He let them borrow a copy.  They

13    didn't buy it.  He said, "Use it.  Get through the

14    holidays."

15         THE COURT:  That's your argument.

16         MR. HOGAN:  That's my argument, Your Honor.

17         THE COURT:  But their argument is they did.

18         MR. HOGAN:  Their argument is, Your Honor,

19    they're asserting the rights of ownership, the right to

20    make a derivative under --

21         THE COURT:  They only did that after he came up

22    with this license idea.

23         MR. HOGAN:  Well, Your Honor, again it's not a

24    question whether they knew for sure it was infringement.

25    It's not proving as if it were a Title 18 violation, Your
```

1    Honor.  We're talking about a civil case where the jury

2    instruction says it might be -- it might be infringement.

3    It doesn't --

4              THE COURT:  No, no, no, no, no, no, no.

5              MR. HOGAN:  May infringe.

6              THE COURT:  Willful is not might be.

7              MR. HOGAN:  It says whether those action may

8    infringe.  They don't have to have the scienter of an evil

9    act.  They just have to have a heads up, Your Honor.  The

10   instruction makes it clear.

11             And this is where the small developer making one

12   piece of software -- the easy one is, Your Honor, they

13   take a copy of Windows, they make a thousand copies and

14   sell them at the swap meet.  That's easy.  Everybody knows

15   that's infringement.

16             MR. SMITH:  It's willful.

17             MR. HOGAN:  It's willful.  But when they make

18   numerous copies -- they've said a hundred copies, Your

19   Honor, of the same work were made.  Dillon testified to

20   that.  He made a hundred separate copies, saved them on

21   the hard drive.  That's a hundred copies.  He didn't

22   distribute them to anybody.  He kept them for Fleming to

23   run a multimillion dollar business and didn't give a dime

24   to the owner of the software.  Got to be willful, Your

25   Honor.  It wasn't a mistake.  Mr. Dillon knew what he was

Exhbit B

1    doing.  And I believe, Your Honor, the jury should make

2    this determination.  There's evidence to support it.

3    It's critical to Mr. Berry's case.

4              THE COURT:  What's the evidence?

5              MR. HOGAN:  All right.  On FlemingPO it's

6    clear that he made -- we have an expert that said he

7    cheated.  He said he was -- he committed --

8              THE COURT:  I don't remember him saying that.

9              MR. HOGAN:  He said it was a substantially

10   similar program and that it was plagiarism.  That it

11   was -- a copy of Mr. Berry's software was embedded in Mr.

12   Dillon's code.

13             That claim, Your Honor, isn't -- Fleming isn't

14   saying we made these changes under the license.  They're

15   not saying that.  They're saying this is not Mr. Berry's

16   software at all.

17             THE COURT:  It would be a lot better if you let

18   them argue their own case.  You just argue your case.

19             MR. HOGAN:  All right, Your Honor.  So that's as

20   to FlemingPO.  Clearly evidence of importing code from one

21   program to another.  I've proven access and similarity,

22   and there's got to be willfulness, Your Honor.  He knew he

23   was doing it.

24             As to the freight control system, we talked

25   about that.  They knew Mr. Berry had reserved the right --

Exhbit B

1   they never obtained a written license from him to make all

2   these changes.  He gave them the cost of making changes.

3           THE COURT:  They thought they'd bought it.

4           MR. HOGAN:  Your Honor, they thought a lot of

5   things.  They started off as owners.  There's been

6   evidence saying that we're not an owner.  It goes around

7   and around, Your Honor.  The jury should make the

8   determination.

9           I think the jury could say that this whole thing

10  it shows that they were trying to grab his software from

11  day one.  If it included an act of infringement, wouldn't

12  that have been willful?  I mean how is it that that

13  little -- all the stuff got out with all this, Your Honor,

14  the documents?

15          THE COURT:  It's amazing how we can view the

16  same case in different ways.

17          MR. HOGAN:  Exactly, Your Honor.

18          THE COURT:  It looks like Fleming bailed out

19  API, and so they wound up with one of API's employees

20  suing them for having bailed them out.  Willful.

21          MR. HOGAN:  But it's infringement, Your Honor.

22  We're not talking about a criminal violation.  We're

23  talking about whether or not somebody had a reasonable

24  cause to believe it might --

25          THE COURT:  What's your definition of "willful"?

Exhbit B

1          MR. HOGAN:  It says:  knew that those actions

2    may infringe the copyright.

3          MR. SMITH:  The Ninth Circuit Peer International

4    versus Pausa Records, Inc., 909 Federal 2d 1332.  It

5    defines "willfulness" as, quote, knowledge that the

6    defendant's conduct constituted an act of infringement,

7    end quote.  And we took that off the Ninth Circuit's

8    webpage.

9          There just isn't evidence of willfulness here,

10   Judge.  There's evidence that Fleming relied on its

11   license.  That's the opposite of willfulness.  Willfulness

12   implies that you're doing something --

13         THE COURT:  I'll let Mr. Hogan go to the jury on

14   willfulness.

15         MR. SMITH:  On all --

16         THE COURT:  Yeah.

17         MR. SMITH:  Okay.  Thank you, Your Honor.

18         THE COURT:  We've heard your arguments both

19   ways.  So reverse all that stuff about taking willful out.

20   Reinstate -- the verdict form (nodding).

21         MR. SMITH:  And, Your Honor, that would be over

22   objection of the defendant.

23         THE COURT:  I should imagine so.

24         MR. SMITH:  Okay.  And I gather the instruction

25   on "willfulness" will go back in also.

Exhbit B

1          THE COURT:  That's the verdict form as submitted

2     with the insertion of the numbers of the exhibits 221,

3     222, and 223.

4          MR. SMITH:  And I need to place an objection on

5     the record regarding the instruction on "willfulness,"

6     precisely the subject the court and Mr. Hogan were

7     discussing.  The instruction on "willfulness" says

8     knowledge that it may infringe --

9          THE COURT:  Submit one.

10         MR. SMITH:  -- and that is not the

11    appropriate -- we will, Your Honor.

12         THE COURT:  And so we'll put back in that

13    willful one, which is the second to the last:  "Mr. Berry

14    contends that the defendant willfully infringed the three

15    copyrights.  If Mr. Berry proves by a preponderance of the

16    evidence willful infringement, you may, but are not

17    required to, increase the statutory damages for

18    infringement of that work to a sum as high as 150,000.

19         "An infringement was willful when the defendant

20    engages in acts that infringe the copyright and knew that

21    those actions may infringe the copyright."

22         MR. SMITH:  And our objection is to the word

23    "may," Your Honor.  That ought to be at least -- if not

24    "will" infringe the copyright, at least "were likely to"

25    infringe the copyright.

Exhbit B

1          THE COURT:  And knew that those actions infringe

2   the copyright?

3          MR. SMITH:  That's right, Your Honor.  That

4   would be the definition of "willful."

5          MR. HOGAN:  I think -- I haven't got the Ninth

6   Circuit's.  I can pull them out of my stuff, Your Honor.

7   But I think the Ninth Circuit's model instruction has the

8   "may" language in it, Your Honor.  That's not something I

9   drafted.

10          THE COURT:  You just showed it to me a little

11   while ago, didn't you.

12          MR. SMITH:  I think that's correct, Your Honor.

13   I think that language is in the Ninth Circuit's pattern

14   instruction.  But the case the Ninth Circuit cites right

15   after that pattern instruction says "knowledge that the

16   defendant's conduct constituted an act of infringement."

17   I think it needs to be more than merely "may" in order to

18   establish willfulness.

19          (Court reviewing model instruction.)

20          THE COURT:  I think we'll just leave it alone.

21   You can argue.  It just gets more complicated.

22          Now, were there any other instructions that

23   somebody wanted to object to?

24          MR. SMITH:  Your Honor, we had submitted

25   proposed instructions on joint authorship.  It's our

Exhbit B

1    position those instructions should be given to the jurors

2    because a significant portion of this work, if not all of

3    it, was done while Mr. Berry was an employee of API, and

4    that would make API a joint author together with Mr. Berry

5    for anything he had done before that.

6            THE COURT:  How is that separate from your

7    argument that he was an employee?

8            MR. SMITH:  It's part of the argument that he

9    was an employee, Your Honor.  Even if he created -- even

10   if the jury believes his testimony that he created these

11   products prior to the time he became an employee, he

12   worked on them -- his own testimony establishes he worked

13   on them as an employee extensively, and, therefore, API

14   would be viewed as a joint author together with Mr.

15   Berry.

16           THE COURT:  Well, isn't there an instruction as

17   to ownership?

18           MR. SMITH:  There is a work-for-hire

19   instruction, Your Honor.

20           THE COURT:  Yeah.

21           MR. SMITH:  So that that would -- you're

22   correct.  And that would leave the possibility that the

23   jury could conclude that he worked from 1996 to '99 -- all

24   of that work was work for hire -- but that he had created

25   something prior to that time before he was an employee.

Exhbit B

1    So that the way to address that is by joint authorship,

2    Your Honor.

3              THE COURT:  I'll leave that to argument.

4              MR. HOGAN:  No instruction, then, Your Honor.

5              THE COURT:  Anything else?

6              MR. HOGAN:  We had the 117 one we had been

7    discussing, Your Honor.  I don't think we put that on the

8    record.

9              THE COURT:  Go ahead.

10             MR. HOGAN:  Your Honor, the defendant has --

11   there is an instruction, and it's in number 46 and 47 out

12   of pages 51.  The first 46 begins with, "It is not

13   copyright infringement for the owner of a copy."

14             Your Honor, these two instructions deal with the

15   117 defense.  First, I'd say to Your Honor it's not raised

16   as an affirmative defense in the answer.  There's been no

17   testimony -- credible testimony of any kind that would

18   support this that it was necessary to make these changes.

19   We had discussed, Your Honor, at least the first

20   instruction carries with it the burden of proof and is

21   consistent, I think, with the statutory language.

22             The second one is taken out of a Second Circuit

23   case, Your Honor, in which there was -- at least before

24   the court where there had been agreement that they could

25   make changes.  That case dealt with where there had been

Exhbit B

1    an agreement to make changes.  Not in this case, Your

2    Honor, where that's a contentious issue, obviously.

3         I'd say if the court is going to put in a 117

4    defense, it would be over objection because it wasn't

5    raised as an affirmative defense.  The case is closed for

6    the defendant to amend.  And, secondly, Your Honor, it is

7    going to be so confusing to the jury as to what this all

8    means because, frankly, we sit here and, you know, like

9    minds differ as to what the statute means and we don't

10   understand what it means.  How is the jury ever going to

11   be able to fathom this 117 defense?

12        It's noteworthy, Your Honor, there is no model

13   instruction in the Ninth Circuit.  We're going into

14   unchartered waters on this one, Your Honor.

15        THE COURT:  It makes a good case for the Ninth

16   Circuit.

17        MR. HOGAN:  I understand that the court would

18   never back away from that, Your Honor, but I'm saying that

19   it should be a better case than this, one in which it was

20   raised as a defense and in which maybe an expert or two

21   had a chance to chime in on it.  We haven't had any of

22   that, Your Honor, and I think it just makes mischief.  At

23   least if one's going to get in, I would say the first one

24   is the least offensive because at least it tracks the

25   statutory language, Your Honor.

Exhbit B

1          MR. SMITH:  Once again referring to Aymes versus

2    Bonelli, United States Court of Appeals for the Second

3    Circuit.  Contrary to counsel's representation, in that

4    case the author of the software was trying to do exactly

5    what Mr. Berry is doing here:  he was trying to sue the

6    party that he wrote the software for, claiming they made

7    changes that he wanted to make himself.

8          And in that case the Second Circuit said

9    copyright laws should reflect the fact that transactions

10   involving computer programs are entered into with full

11   awareness that users will modify their copies to suit

12   their own needs.  This right of adaptation includes the

13   right to add features to the program that were not present

14   at the time of rightful acquisition.

15         This is all cited in connection to the basis for

16   17 U.S. Code Section 117.  That's the reason we submitted

17   these instructions.  We believe we're entitled to them.

18   We propose adding to the second instruction the one that

19   begins, "The owner of a copy has software -- of software

20   has the right to make modifications."  We propose adding a

21   sentence that says, "The party relying on this defense

22   bears the burden of proving by a preponderance of the

23   evidence that it is the owner of a copy of the software."

24         MR. HOGAN:  If I may, Your Honor, the essential

25   step language -- first, there's another problem.  The My

Exhbit B

1    System case says you can't be an owner of a copy and a

2    licensee at the same time.  It's a Ninth Circuit case,

3    Your Honor.  It's been cited numerous times in these

4    proceedings.

5            It create a quandary for us.  Are we going to

6    have another instruction that says, if Fleming argues they

7    have a license, they can't argue they own a copy?

8            This instruction, Your Honor, is simply -- the

9    easy way to fall back is it's not in the answer, Your

10   Honor.  It is a new defense not properly before the court.

11   It creates havoc when -- does anyone in this room actually

12   know for sure what that statute means, Your Honor?  We

13   haven't -- it hasn't been put before the Ninth Circuit.

14   This Aymes versus Bonelli case --

15            THE COURT:  Which instruction is it again?  I'm

16   trying to find it.

17            MR. HOGAN:  In the stack we have, Your Honor, it

18   was 46 and 47 of 51.

19            MR. SMITH:  Fifth from the end, Your Honor, by

20   my count.  It begins with --

21            THE COURT:  Okay.  Go ahead.

22            MR. SMITH:  It begins with, "The owner of a copy

23   of software."

24            THE COURT:  Yeah, that's what I thought I was

25   reading.  And then you're going to put a burden of proof

Exhbit B

1    on it.

2         MR. SMITH:  That's right.

3         THE COURT:  I thought we argued that one

4    already.

5         MR. HOGAN:  Not on the record, Your Honor.  That

6    was in our informal pre-argument, Your Honor.

7         I guess the second one is -- if we're going to

8    put a 117 instruction, Your Honor, at least let's put the

9    one in that contains the statutory language.  We're going

10   out creating a new instruction.  Let's give Congress a

11   shot at it.  They didn't make up the second one, your

12   Honor.

13        THE COURT:  What is the statutory language that

14   you're holding out for?

15        MR. HOGAN:  The statute, Your Honor, I believe

16   was in -- I created an alternative instruction that I

17   believe tracked the statute.  Although, admittedly, I

18   wrote it.  That would not obviously --

19        MR. SMITH:  The statute says, Your Honor, that

20   the changes made need to be an essential step in the

21   utilization of the program.  The case law says what this

22   instruction says, which is it includes the right to add

23   features to the software that were not present at the time

24   of rightful acquisition.

25        MR. HOGAN:  Your Honor, I'll read my proposed

Exhbit B

1   117 defense instruction:  "If you find that Fleming did

2   not have a license and was an owner of a lawfully obtained

3   copy of plaintiff's software and you find that each and

4   every one of the changes that Fleming made to plaintiff's

5   software were necessary to allow the software to run on

6   its machine, you may find that Fleming was authorized to

7   make any such necessary changes.  Any unnecessary changes

8   you find -- any unnecessary changes you must find were

9   willful infringement.

10          "Fleming bears the burden of proof by a

11  preponderance of the evidence to show that it owned a

12  lawful copy of plaintiff's software and that each and

13  every change it made was necessary to allow the software

14  to run on it's -- and it's a typo -- on its machine.  If

15  Fleming admits it made changes to plaintiff's software and

16  these changes were not all necessary to allow the software

17  to run on its machine, then you must find that Fleming was

18  a willful infringer."

19          MR. SMITH:  Judge, that's not what the case law

20  interpreting the statute says.

21          THE COURT:  Well, I'll deny that plaintiff's

22  proposed instruction number 8 that you just read, and I'll

23  stick by my ruling on instruction number 117 -- number --

24          MR. SMITH:  It's 47 on the fax copy, Your Honor.

25  Thank you, Your Honor.  And we will add the sentence --

Exhbit B

```
 1            THE COURT:  With the addition of that burden of

 2    proof, which you have given to Emily.

 3            MR. SMITH:  We will provide it to the court

 4    staff.

 5            THE COURT:  Any others?

 6            MR. HOGAN:  No, Your Honor.

 7            MR. SMITH:  Nothing else, Your Honor.

 8            THE COURT:  How much time do you want to --

 9            MR. SMITH:  Judge, we do have a typographical

10    error on page 41 of the faxed instructions.

11            It says, "A breach of contract may be total or

12    partial.  If the breach is total, the injury party has a

13    right," and it should be "the injured party."  And I think

14    that probably was an error that was on the form we

15    submitted.

16            THE COURT:  You got that?

17            LAW CLERK:  Yes.

18            THE COURT:  Any problem with that?

19            MR. HOGAN:  No, Your Honor.  That's fine.  No

20    problem, Your Honor.

21            THE COURT:  The "injury" party should be

22    "injured" party.

23            MR. SMITH:  That's right, Your Honor.

24            THE COURT:  So how much time you want to rest

25    before you start your argument?
```

Exhbit B

```
 1              MR. HOGAN:  Couple minutes, Your Honor.

 2              THE COURT:  10:30?

 3              MR. HOGAN:  That would be fine, Your Honor.

 4              THE COURT:  So we'll recess until 10:30.  You

 5    might tell the jurors to prepare for argument.

 6              Now let me ask you again.  I have a notice of

 7    election of statutory damages.

 8              MR. HOGAN:  Yes, Your Honor.

 9              THE COURT:  You're going to stick with it.

10              MR. HOGAN:  We're sticking with it, Your

11    Honor.

12              THE COURT:  Okay.  It's filed, and you can hang

13    on to it, Leslie.

14              THE CLERK:  Thank you, Your Honor.

15              THE COURT:  Let me say that I'm following that

16    New York case -- what was the New York case again?  Which

17    attempted to make some sense out of the Supreme Court's

18    decision.  We find down here at the trial level that

19    appellate courts come out with fine language which leaves

20    us the problem of applying it to real situations.

21              Alexander versus Chesapeake, Potomac, and

22    Tidewater Books, Inc., 60 F. Supp. 2d 544.  That's the one

23    that said "With respect to the selection that under the

24    Copyright Act the plaintiff may elect to receive statutory

25    or actual damages, Alexander did not elect statutory
```

Exhbit B

1    damages before the case was submitted to the jury.

2    Therefore, only actual damages are available to Alexander,

3    which he now requests in the form of an award of Modrak's

4    profits from the infringement pursuant to the Copyright

5    Act.  This section of the Copyright Act provides that a

6    copyright owner is entitled to recover the actual damages

7    suffered by him, et cetera, et cetera.

8            "This section further provides that in

9    establishing the infringer's profits, so forth, so on.

10           Where's the election coming in?  Where did they

11   say that they had to do it before --

12           LAW CLERK:  Just the blurb that you just read.

13           THE COURT:  Near the end?

14      (Court and law clerk conferring.)

15           THE COURT:  Anyway, the election has to be made

16   before going to the jury.

17           THE COURT:  You want me to instruct before

18   closing argument or after?

19           MR. HOGAN:  I would prefer before, Your Honor.

20           MR. SMITH:  I guess I'd prefer after, but I

21   won't object if the court's inclined to do it before.

22   Either way is fine, Your Honor.

23           THE COURT:  I'll do it after because we have to

24   do a little literary work on it.

25           Okay.  We'll recess till 10:30, at which time

# Exhbit B

1    we'll call the jury.

2        (Short break in proceedings.)

3            THE COURT:  Go ahead.

4            MR. HOGAN:  Your Honor, Timothy Hogan on behalf

5    of the plaintiff moves for a judgment as a matter of law

6    on the issue of copyright ownership of the subject

7    software.  Specifically, Your Honor, there's been no

8    evidence presented to rebut Mr. Berry's prima facie

9    showing that he created the software in 1993 for

10   FlemingPO.exe and the freight control system.

11           I'd also move for a directed verdict on the

12   Section 117 defense.

13           THE COURT:  Judgment as a matter of law.

14           MR. HOGAN:  Judgment as a matter of law as to

15   the section 117 defense that there's been no issue to

16   support the defense -- there's been no evidence to support

17   the defense.

18           THE COURT:  Both denied.

19           MR. HOGAN:  Thank you, Your Honor.

20           THE COURT:  Both denied.

21           MR. HOGAN:  Thank you.

22       (Court recessed at 10:15 A.M., until 10:51 A.M.)

23       (Partial transcription concluded.)

24

25

Exhbit B

```
 1              COURT REPORTER'S CERTIFICATE

 2          I, Debra Kekuna Chun, Official Court Reporter,

 3   United States District Court, District of Hawaii, do

 4   hereby certify that the foregoing is a correct transcript

 5   from the record of proceedings in the above-entitled

 6   matter.

 7          DATED at Honolulu, Hawaii, May 26, 2005.

 8

 9

10                         DEBRA KEKUNA CHUN

11                         RPR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhbit B