# EXHIBIT "A"

295901
KOBAYASHI, SUGITA & GODA

BERT T. KOBAYASHI, JR. 659-0
LEX R. SMITH           3485-0
ANN C. TERANISHI       7318-0
SUITE 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax No. (808) 539-8799

Attorneys for Defendant
FLEMING COMPANIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, | CIVIL NO. CV 01 00446 SPK LEK |
| Plaintiff, | DECLARATION OF MARK DILLON |
| vs. | |
| FLEMING COMPANIES, INC., aka FLEMING FOODS, INC., aka FLEMING, DOE INDIVIDUALS 1-50 AND DOE PARTNERSHIPS, CORPORATIONS AND OTHER ENTITIES 1-20, | |
| Defendants. | |

**DECLARATION OF MARK DILLON**

## DECLARATION OF MARK DILLON

Mark Dillon, declares as follows:

1. I am a resident of the City and County of Honolulu. I have personal knowledge of all matters discussed herein except where otherwise indicated.

2. I have been employed by Fleming Companies, Inc. ("Fleming") since October 1, 1999. My position with Fleming is LAN Administrator.

3. Prior to my employment with Fleming, I was employed by Atlantic Pacific International Inc. ("API").

4. I was hired by API in 1997. The persons who interviewed and hired me were Wayne Berry and Jack Borja.

5. During the time I was employed by API, I became thoroughly familiar with the software that was installed on the computers owned by API. I am able to identify from personal knowledge which of API's computers had various software operating on them and the way that the software was used.

6. My employment switched from API to Fleming at the same time that Fleming purchased many of API's assets including API's computers. I have been continuously employed by Fleming since that date and I am thoroughly familiar with the computers and software used by Fleming in connection with its freight operations in shipping products to Hawaii.

7. Using Mr. Berry's terminology, the software written by him which is used by Fleming consists of two programs: "Freight Control System" and "Prepaid Vendor Invoice Definition For Crystal Reports." These programs are hereinafter referred to as the "Berry-Authored Programs."

8. In early 2000, Fleming ceased using another program authored by Mr. Berry called "FlemingPO.exe" because it was not Y2K compliant. All statements in this

declaration regarding the Berry-Authored Programs are also true for FlemingPO.exe through the time that Fleming ceased using it.

9. During the time before API's 1999 sale of assets to Fleming, the following accurately describes the use of the Berry-Authored Programs

a. the Berry-Authored Programs were installed and run **only** on a single local area network consisting of no more than 10 computers all of which were located in Kapolei, Hawaii. This installation was performed by Mr. Berry himself when API first moved some of its employees into the Fleming facility in Kapolei, and again in August of 1999, when he installed a new server on that network. The Kapolei network could be accessed by two computers in California, one located at the freight consolidation terminal in the Los Angeles area where Fleming's shipments were consolidated and the other located at a comparable facility in the San Francisco area. Thus, while the computers in California did not have any copies of any Berry-Authored Programs on them, the terminal employees in California were able perform the following activities related to the Berry-Authored Programs.

  i. <u>Crystal Reports Viewer</u>. Using a program called Crystal Reports Viewer (which is available free to the public and which was not authored by Mr. Berry) the two computers in California could view over the internet reports that had been generated in Hawaii on the Kapolei network using the Berry-Authored Programs. Once the report was viewed on the screen in California, the report could also be printed in California. The

reports viewed on the computer screen and printed in California were simply static documents, previously created by Fleming employees in Kapolei using the Berry-Authored Programs on the network in Kapolei. There were basically two types of reports described as follows:

- A. <u>Receiving Checklist</u>. This is a checklist of the items that were ordered pursuant to a particular purchase order number. The printout of this checklist was used by the personnel at the Terminal in California to confirm whether or not the shipment received at the Terminal contained the quantity of items which Fleming had ordered. An example of this type of report is attached hereto as Exhibit "A."

- B. <u>Pallet Tags</u>. This is a single page which is printed out at the California Terminal and attached to the pallet containing the corresponding products. A sample is attached hereto as Exhibit "B." The purpose of this document is simply to identify the shipment for handling at the California Terminal, as well as when it arrives in Kapolei.

ii. <u>Input of Data Into The Kapolei Network Using PCAnywhere</u>. PCAnywhere is an off-the-shelf software package marketed by Symantec Corporation. Symantec advertises that "PCAnywhere is the world's leading remote control software." As the advertising implies, PCAnywhere makes it possible to

operate a computer, such as one on the Kapolei network, from a separate computer located somewhere else. In order to do this, PCAnywhere's software must be installed on both computers (the computer in California is called the "Remote" and the computer in Hawaii is called the "Host").

Mr. Wayne Berry had the "Host" PCAnywhere software installed on two computers on the Kapolei network and the "Remote" PCAnywhere software installed on the computers located at both of the California Terminals. The personnel at the California terminals used the PCAnywhere software to connect to the two host computers in Kapolei and enter data into the "Freight Control System" database there. When the data was entered from California into the PCAnywhere hosts in Kapolei, the "Freight Control System" database running on the server for the Kapolei network received the data.

The type of data entered from California via PCAnywhere is 1) the appointment date and time for delivery of purchase order to their facility, 2) bill of lading case, cube and weight, 3) case, cube and weight actually received, 4) notes regarding any discrepancies between purchase order, bill of lading and received case, cube and weight. This information is used by Fleming to ascertain that purchase order deliveries are being scheduled appropriately, and to advise the Fleming buyer for a given purchase order of any shortages or overages to the order.

10. Prior to Fleming's 1999 purchase of API's assets, the two terminals in California that serviced Fleming's shipments (and that contained the computers that communicated with the Kapolei network) were operated by API.

11. In 1999, Fleming bought most of the assets of API and hired certain API employees. Fleming's purchase included all of API's computers including the two computers that were located at the two California Terminals.

12. It is my understanding that following Fleming's 1999 purchase of API's assets, API ceased doing business.

13. After Fleming purchased API's computers, the two computers that had been at API's California terminals were moved to terminals in the Los Angeles and San Francisco areas operated by a freight forwarder named "Hawaiian Express", but the computers and the employees who operated them remained Fleming computers and Fleming employees. Exactly the same software remained on these computers as had been installed on them by API. No Berry-Authored Programs were copied to either of these computers as part of the new arrangement.

14. Following their relocation to Hawaiian Express, the two computers in California continued to be used in the same way and for the same purposes as they were used during the time that API handled Fleming's freight consolidation. There has been no change from the activities described in paragraph 9 hereinabove, with only the possible exception described in the next paragraph, none of the Berry-Authored Programs have ever been copied to these computers in California. They are used only to enter data into the network in Kapolei and to obtain and print the reports generated on the Kapolei network

15. During the time that *API* was handling freight logistics for Fleming, there were occasions when a report file generated by Crystal Reports in Kapolei (i.e. the

computer file containing the output like that reflected on Exhibits "A" and "B" attached) was sent by e-mail or other means to California. On account of the manner in which Crystal Reports files are constructed, some code with which the report is created is contained in the file even though the file's only purpose is to display the information reflected on Exhibits "A" and "B." Therefore, because the report file contains some of the code written by Mr. Berry, strictly speaking, a copy of a part of the Berry-Authored Programs was on one of the computers in California when this happened. I am not sure but I believe the same thing may have been done on rare occasion during the period shortly after Fleming took over from API: that is, the report files for the two Crystal Reports used by the terminals as described in paragraph 9 above may have been emailed to Roger Perez as a Fleming employee. This was done on account of Mr. Perez being unable to access those same reports over the Internet. I understood that such emails were appropriate since we were doing exactly the same thing API had done when they were handling Fleming's logistics. Outside of that emergency, no part of the Berry-Authored Programs have ever been copied to these computers in California.

16. It is also true that <u>reports,</u> such as Exhibits "A" and "B" attached hereto, generated by Berry-Authored Programs (i.e. data regarding Fleming's shipments – not the programs themselves) were and still are viewed and printed at Hawaiian Express's terminals in California, just as they were viewed and printed at API's terminals in California before Fleming bought API's assets. During this process the Berry-Authored Programs remain only on the network in Kapolei and are not copied to any other location.

17. Mr. Roger Perez was a **Fleming** employee from October 1, 1999 through July 22, 2000. Thus, any use which he made of the computers in California was done

by a Fleming employee, not by Hawaiian Express as alleged in his declaration. Mr. Perez was **never** employed by Hawaiian Express.

18. No part of the Berry-Authored Programs has ever been copied to any "Fleming mainframe" computer. The incident described in paragraph 22 of Mr. Roger Perez's declaration involved just the opposite situation. I was working on a system for transferring data **from** Fleming's mainframe to the Freight Control System database in Kapolei. This had been done up to that time by Mr. Berry's FlemingPO.exe, but a Y2K incompatibility required us to develop a replacement.

19. The declaration of Mr. Perez does not distinguish the Berry-Authored Programs from other software, not authored by Mr. Berry, that was and is used as part of Fleming's freight operation. For example, paragraph 19 of Mr. Perez's declaration refers to:

> "Mr. Berry's software (the crystal reports), a software developer's tool to generate management and operational reports in Hawaiian Express terminal located at La Mirada in California"

The description of Crystal Reports is accurate but Crystal Reports report development tool was not written by Mr. Berry. This is an off-the-shelf software package that anyone can purchase. Furthermore, the "Crystal Reports" software that was utilized by the computers in California was the "Crystal Reports Viewer" that is made available free for and used in the fashion described earlier in this declaration. Likewise, in the same paragraph, the software mentioned by Mr. Perez as used to access the network in Kapolei in order to input data from the terminals is also an off-the-shelf software package, PCAnywhere, also described earlier in this declaration.

19. Other than the emergency noted in paragraph 15, none of the Berry-Authored Programs as described in the complaint and in this declaration have ever

been copied to either of the computers located at the Hawaiian Express terminals in California.

The Foregoing is true under penalty of perjury.

_____ 8/24/01
MARK DILLON