# EXHIBIT "F"

1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF HAWAII

 3    _____
                                  )
 4    WAYNE BERRY,                )
                                  )
 5            Plaintiff,          )  CIVIL NO. 01-00446SPK-LEK
                                  )
 6        vs.                     )
                                  )
 7    FLEMING COMPANIES, INC.,    )
      aka FLEMING FOODS, INC.,    )
 8    aka FLEMING, DOE            )
      INDIVIDUALS 1-50 and        )
 9    DOE PARTNERSHIPS,           )
      CORPORATIONS and OTHER      )
10    ENTITIES 1-20,              )
                                  )
11            Defendants.         )
      _____)

12

13                TRANSCRIPT OF PROCEEDINGS

14

15        The above-entitled matter came on for Jury

16    Trial commencing at 9:05 a.m. on Tuesday, February 25,

17    2003, Honolulu, Hawaii,

18

19    BEFORE:  HONORABLE SAMUEL P. KING

20            United States District Judge

21            District of Hawaii

22

23

24    REPORTED BY:  LISA J. GROULX, COURT REPORTER

25            Notary Public, State of Hawaii
```

2

```
 1

 2                        A P P E A R A N C E S

 3

 4

 5

 6   FOR PLAINTIFF:   TIMOTHY J. HOGAN, ESQ.

 7                    WESLEY W. ICHIDA, ESQ.

 8                    LYNCH ICHIDA THOMPSON KIM & HIROTA

 9                    1132 Bishop Street, Suite 1405

10                    Honolulu, Hawaii  96813

11                    (808) 528-0100

12

13

14   FOR DEFENDANTS:  LEX R. SMITH, ESQ.

15                    ANN TERANISHI, ESQ.

16                    Kobayashi, Sugita & Goda

17                    First Hawaiian Center

18                    999 Bishop Street, Suite 2600

19                    Honolulu, Hawaii  96813

20                    (808) 539-8700

21

22

23

24   ALSO PRESENT:   Ralph Stussi

25
```

LISA GROULX & ASSOCIATES
(808) 225-5701

3

```
 1                          I N D E X

 2

 3

 4    PLAINTIFF'S WITNESSES:                           PAGES

 5

 6    ROGER WALL

 7          Direct examination by Mr. Hogan

 8

 9    WAYNE BERRY

10          Direct examination (resumed) by Mr. Hogan

11

12

13

14
      EXHIBITS:                        MARKED      RECEIVED
15
           Plaintiff's Exhibit 83                    28
16         Plaintiff's Exhibit 85                    34
           Plaintiff's Exhibit 86                    37
17         Plaintiff's Exhibit 87                    39
           Plaintiff's Exhibit 90 - 96               67
18         Plaintiff's Exhibit 58                    81
           Plaintiff's Exhibit 47                    87
19         Plaintiff's Exhibit 59                    96
           Plaintiff's Exhibit 60                   115
20         Plaintiff's Exhibit 61                   126
           Plaintiff's Exhibit 62                   132
21         Plaintiff's Exhibit 52                   134
           Plaintiff's Exhibit 16                   140
22
           Defendant's Exhibit 280                  129
23

24

25
```

1    they weren't damaged or the dates weren't bad, because

2    most of it was food items, and move it across and put

3    it in ocean containers and then truck those ocean

4    containers down to Sealand or Matson's container yard

5    to be loaded on ships.

6             My software basically set it up so that our

7    terminals on the mainland were able to come through

8    the Internet and access my system to produce receiving

9    reports, they produced tags to put on the pallets so

10   the products could be identified, and then we also

11   immediately identified shortages which were input to

12   my system so that, like in this case, Fleming's buyers

13   could be notified right away.  If it was a pallet full

14   of frozen fish and they ordered 100 cases and only 90

15   showed up, that gave all of our customers, including

16   Fleming, lead time to say, okay, I need to start

17   another order coming in.

18        Q.   Now at the time that this function was being

19   done -- and did you use the term "pre receiving"?

20        A.   Yes.

21        Q.   When the pre serving was done, was it API

22   employees that would do that?

23        A.   Yes.

24        Q.   At any time did you allow anyone other than

25   API employees to use the system to do pre receiving?

```
 1       A.    Never.

 2       Q.    At any time have you ever authorized anyone,

 3  other than Fleming employees, to do pre receiving

 4  currently on the mainland?

 5       A.    No.  Never.

 6       Q.    What is your understanding of who is doing

 7  pre receiving now on the mainland?

 8       A.    It's my understanding that Fleming has

 9  allowed Hawaiian Express to use my system to do pre

10  receiving on the mainland.

11       Q.    Did you ever authorize Fleming to allow

12  another company to use your system?

13       A.    No.  I specifically restricted that and I was

14  promised by Fleming that they would not do that.

15       Q.    In your experience as a computer programmer,

16  computer consultant, would a company like Hawaiian

17  Express be a potential customer for you?

18       A.    A potential customer, yes.

19       Q.    Has Hawaiian Express ever expressed a need to

20  license your software to you?

21       A.    No.

22       Q.    Do you have any understanding of why that is?

23             MR. SMITH:  Objection, Your Honor.  It

24  calls --

25             THE COURT:  I'll sustain that objection.
```