LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **MOTION  FOR** |
| | ) | **RECONSIDERATION OR IN THE** |
| HAWAIIAN EXPRESS SERVICE, | ) | **ALTERNATIVE RULE 60(b)** |
| INC., a California corporation; et al. | ) | **RELIEF FOR FRAUD ON THE** |
| | ) | **COURT; MEMORANDUM IN** |
| Defendants. | ) | **SUPPORT OF PLAINTIFF** |
| | ) | **WAYNE BERRY'S MOTION** |
| | ) | **RECONSIDERATION OR IN THE** |
| | ) | **ALTERNATIVE FOR RULE 60(b)** |
| | ) | **RELIEF FOR FRAUD ON THE** |
| | ) | **COURT; CERTIFICATE OF** |
| _____ | ) | **SERVICE** |

### PLAINTIFF WAYNE BERRY'S MOTION FOR RECONSIDERATION  OR IN THE ALTERNATIVE RULE 60(b) RELIEF FOR FRAUD ON THE COURT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby respectfully moves this Court for an order vacating all orders related to findings of inadvertence and/or lack of willfulness related to Fleming Companies, Inc. ("Fleming") and Mark Dillon.  In regard to C&S Wholesale Grocers, Inc. ("C&S") Plaintiff moves for an order vacating all findings related to C&S and requests that C&S and its related defendants be dismissed without prejudice.  In addition, Mr. Berry request that the Court consider whether disciplinary sanctions are appropriate under the circumstance.       This motion is brought on the grounds that the Court's order granting summary judgment on the issue of inadvertence related to Fleming and Dillon and related to C&S' liability was obtained through fraud on the court committed by the relevant parties and their attorneys.  In this Motion, Mr. Berry seeks to have C&S dismissed without prejudice to not delay the trial but to prevent C&S from profiting from the fraud.  Mr. Berry can then re-file against C&S on these issue as well as its ongoing use of Mr. Berry's other works.

As to Fleming and Mark Dillon, Mr. Berry seeks only that the Court reverse any findings that relate to the issue of willfulness and inadvertence, strike their

affirmative defense of innocent infringement as a sanction for their conduct and rule as a matter of law, Fleming and Dillon are willful infringers.   Should Mr. Berry elect statutory damages, Mr. Berry believes that the Jury should be instructed that, as to Dillon and Fleming, the Court has ruled that they are willful infringers. This should have no impact at all on the trial as contemplated.

This motion is brought as a motion for reconsideration under LR 60.1(a) and alternatively under Rule 60(b) because, upon entry of final judgment, Rule 60(b) relief would be appropriate under the circumstances.

This motion is supported by the memorandum of law and declaration of counsel filed in support and incorporates by reference all the docket of this case.

DATED: Honolulu, Hawai'i, February 10, 2006.


/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| HAWAIIAN EXPRESS SERVICE, | ) | **MOTION RECONSIDERATION** |
| INC., a California corporation; et al. | ) | **OR IN THE ALTERNATIVE FOR** |
| | ) | **RULE 60(b) RELIEF FOR FRAUD** |
| Defendants. | ) | **ON THE COURT** |
| | ) | |
| _____ | ) | |

## Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **i**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **iv**

**I.    GENERAL FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**II.**    **FACTUAL SUPPORT FOR THE RELIEF SOUGHT.** . . . . . . . . . . . . . **3**

    **A.**    **The Infringement Was Determined Without Seeing the Software.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    **B.**    **Mr. Berry was Diligent in Seeking the Relevant Software.** . . . . . **4**

    **C.**    **Fleming Claimed to No Have the Software and Got 56(f) Relief.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

    **D.**    **Fleming and C&S Attorneys Had the Software All Along.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

    **E.**    **The Proof of Fraud is Easily by Clear and Convincing Evidence.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    **F.**    **C&S Was Engaged in the Fraud and Cannot Benefit.** . . . . . . . . . **7**

    **G.**    **Mr. Berry Has Suffered Extreme Prejudice.** . . . . . . . . . . . . . . . . **8**

    **H.**    **Additional Withheld Evidence Shows Criminal Infringement** . . **9**

    **I.**    **The Actual Number of Infringing Modifications Is over 3,000.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

    **J.**    **The Relief Won't Prejudice the Other Defendants.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**III.**    **ARGUMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    **A.**    **Reconsideration is Appropriate Where Evidence Has Been Withheld.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    **B.**    **Dillon Falsely Testified that Only Guidance Had a Copy.** . . . . . **12**

    **C.**    **The Fraud Is Clear and Proven by Evidence**

That Is Not Disputed.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.     Mr. Berry can Meet the High Standard for  Rule 60(b)  Relief of
       Proof by Clear and Convincing Evidence.   . . . . . . . . . . . . . . . . 14

E.     Rule 60(b) Applies in Cases of  Extrinsic Fraud. . . . . . . . . . . . . 14

F.     The Court of Appeals Holds that the Relief Be
       Granted Under These Facts.   . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

G.     The Evidence of Criminal Infringement Is Compelling
       And Makes any Such Continued Finding of Innocence
       Unconscionable.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

H.     The Court May Disqualify Counsel. . . . . . . . . . . . . . . . . . . . . . . 18

IV.   <u>CONCLUSION</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# Table of Authorities

## CASES

*United States v. Engstrom*, 16 F.3d 1006 (9th Cir.1994) . . . . . . . . . . . . . . . . . **18**

*Yagman v. Republic Insurance*, 987 F.2d 622, 628 (9th Cir. 1993) . . . . . . . . . **18**

*Bank of Haw. v. Kunimoto*, 91 Haw. 372, 394 (Haw. 1999) . . . . . . . . . . . . **18, 19**

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995 . . . . **16-18**

*Standing Committee on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

## STATUTES

18 U.S.C. § 2319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

17 U.S.C. § 117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

17 U.S.C. § 506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

18 U.S.C. §§ 1961(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

## RULES

Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5, 6, 13-15**

Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13, 14**

**MEMORANDUM IN SUPPORT OF
PLAINTIFF WAYNE BERRY'S MOTION FOR
RECONSIDERATION OR IN THE ALTERNATIVE
RULE 60(b) RELIEF FOR FRAUD ON THE COURT**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned

counsel and hereby respectfully submits his Memorandum in Support of Plaintiff

Wayne Berry's Motion for Reconsideration Or In The Alternative Rule 60(b)

Relief For Fraud on the Court ("Motion").

**I.     GENERAL FACTUAL BACKGROUND.**

The Court is familiar with the facts in this case but will be restated briefly to

make it a clear record with regard to these matters.

On March 6, 2003, a jury of the United States District Court for the District

of Hawaii, entered a finding of willful infringement against Fleming Companies,

Inc., for its unauthorized, unlawful modification of the Berry freight control

system, FCS Logistics Data.mdb ("FCS").  The Court is requested to take judicial

notice of the record of the case *Wayne Berry v. Fleming Companies, Inc.*, Civ. No.

01-00446 SPK-LEK (U.S.D.C. Hawaii) in particular the finding of willful

infringement.  Willful infringement for financial gain is a RICO predicate offense.

*See* 18 U.S.C. §§ 1961(1)(B) and 18 U.S.C. § 2319 (relating to criminal

infringement of a copyright under 17 U.S.C. § 506(a)).   The making of ten or more

copies of an unlicensed work constitutes criminal infringement.

1

Rather than cease operating with the Berry system immediately upon the finding of willful infringement, Fleming continued for a period of more than three weeks knowingly operating with the infringing Berry system.

Then, on April 1, 2003, in an apparently coordinated effort, Fleming claimed to have created a new non-infringing version of Mr. Berry's software and simultaneously filed a voluntary Chapter 11 bankruptcy petition, staying all the Berry infringement proceedings and preventing Mr. Berry from obtaining an injunction. Fleming continued, from that date, using a copy of what it claimed was the original Berry FCS. The Court has already ruled that the software that Mr. Dillon made, entitled "Original Logistics Data.mdb," the software that was allegedly used by Fleming and its employees after April 1, 2003, was, as a matter of law, another infringing derivative copy of Mr. Berry's software. In reliance upon the Affidavit of Mark Dillon filed on September 30, 2004, that claimed Dillon left a few insignificant modifications by accident, and the Expert Report of Martin Walker, Ph.D that supported that claim, the Court made the factual determination that Dillon accidently left a few changes in his new derivative thus making the infringement inadvertent and not willful as a matter of law.

The evidence that has come forth finally after the production of the Guidance Software materials, makes it abundantly clear that these findings were

2

based on evidence that was fraudulently presented to the Court and that must be vacated.

Up until Monday, February 6, 2006, Plaintiff was led to believe that the defendants and the plaintiff had the same access to the evidence in this case. The irrefutable evidence is that Fleming's attorney's have engaged in concealment that warrants the relief sought. In addition, the evidence that was produced on January 26, 2006, makes it abundantly clear that Fleming and Dillon have engaged in criminal infringement that would make any trial where they could claim to have been acting inadvertently equivalent to an old U.S.S.R. "show trial."

## II.   FACTUAL SUPPORT FOR THE RELIEF SOUGHT.

### A.   The Infringement Was Determined Without Seeing the Software.

As the Court may recall, to respond to the Fleming-C&S Motions for Summary Judgment, Mr. Berry's expert was required to look only through the keyhole of the Dillon queries. Rather than having a copy of the actual software Fleming was running from April 1, 2003 to June 9, 2003, Professor Johnson had only this series of cryptic written computer commands. An exemplar of the queries is attached to the Declaration of Timothy J. Hogan (the "Hogan Dec.") as Exhibit 1. With only this evidence to discern what differences there were between the software Fleming-C&S and the employees claimed was operating after April 1,

3

2003 called "Original Logistics Data.mdb" and the true Berry FCS Logistics

Data.mdb database, Professor Johnson was limited to the 365 fields that were

represented by the queries.   Both Mr. Berry and Fleming's expert Martin Walker

agree that the total number of fields in the Berry FCS database exceeded thirteen

hundred.  Hogan Dec. Exhibit 2.  Both Mr. Berry and Fleming's expert Martin

Walker agree that the total number fields is less than 366.  Hogan Dec. Exhibit 3.

That means that Mr. Berry's expert had access to less than 27% of the fields

relevant to his inquiry.  All during this time Fleming and the C&S attorneys

claimed that they did not have a copy of the relevant software and they too were

forced to deal only with the queries that could only provide a glimpse of the scope

of the Fleming infringement.

**B.     Mr. Berry was Diligent in Seeking the Relevant Software.**

Well in advance of the expert report cutoff, Mr. Berry had sought all copies

of the relevant software.  Fleming said it would produce it as set forth in its

response to Plaintiff's Second Request for Production of Documents.  Hogan Dec.

Exhibit 4.  A few weeks later, Mark Dillon testified under oath that a copy of the

system that Fleming was operating in the relevant period wasn't retained and that if

Plaintiff wanted to obtain a copy only Guidance could provide it.  Hogan Dec.

Exhibit 4 at pg. 260:12 to 260:19 and 352:14 to 352:25.

**C.     Fleming Claimed to No Have the Software and Got 56(f) Relief.**

After Mr. Berry met his expert cutoff and moved within the time set for summary judgment,  Fleming, Dillon and C&S all claimed to need more time to respond to Mr. Berry's Motion for Summary Judgment on the grounds that the defendants did not have a copy of the relevant software that, as Dillon had testified, had to be obtained from Guidance.   An excerpt from Fleming - PCT's Memorandum in Support of Rule 56(f) Motion in which the Employee Defendants and C&S Defendants all joined is attached to the Hogan Dec. Exhibit 6.   In this pleading, the defendants all represent that: "With regard to the pre-June 9, 2003 copyright claims, by comparing the 1993 FCS against the version Fleming was running prior to June 9, 2003 (which will have to be obtained from Guidance), Fleming's expert may establish that the modifications were de minimis."  Hogan Dec. Exhibit 6.

**D.     Fleming and C&S Attorneys Had the Software All Along.**

In an email obtained from the Guidance materials, Damian Capozzola, attorney for Fleming-PCT and co-counsel with C&S' concurrent attorney, Lex Smith, admits that Fleming's counsel had, in May 2003, obtained without court order or the copyright owner's permission, a copy of Mr. Berry's work Original Logistics Data.mdb, the software that, by their own admission,  was necessary for

the experts to consider.   Hogan Dec. Exhibit 7.   The fact was confirmed by Mr.

Capozzola in an email where he claimed that he had to obtain the software from

storage in Kirkland & Ellis' Chicago office.  Hogan Dec. Exhibit 8.  Despite

numerous requests for some proof that the copy that was delivered on February 7,

2006 was actually shipped from Chicago, Mr. Capozzola and Mr. Smith have both

refused to provide the shipping documents.  Hogan Dec. ¶13.

Despite having earlier responded to discovery asserting that Fleming would

produce all copies of freight system software in its possession, and representing to

the Court that Rule 56(f) relief was necessary because the defendants did not have

Original Logistics Data.mdb, the PCT, C&S and Dillon withheld it until it was

discovered by Mr. Berry's counsel reviewing the long withheld Guidance materials

and finally produced on Tuesday,  February 7, 2003.

### E.    The Proof of Fraud is Easily by Clear and Convincing Evidence.

There is no dispute that the Fleming-PCT and C&S attorneys, did not turn

this evidence over in discovery when requested.  There is no dispute that, by their

own admission, this is the actual software relevant to this case.   There is no

dispute that the Defendants had the copy of Original Logistics Data.mdb when the

Fleming-C&S attorneys moved under Rule 56(f) to seek more time to respond to

Plaintiff's motion and specifically set forth as a basis for that relief the need to

obtain this exact software from the Guidance computer images.

There is no disputing that the Fleming-PCT-C&S attorneys submitted the expert report of Martin Walker and filed a cross-motion for summary judgement that permitted Plaintiff a week to respond. While Walker was claiming that the real Berry FCS Logistics Data.mdb and Original Logistics Data.mdb were nearly identical and that the elements of the spreadsheets didn't infringe Mr. Berry's copyright in FCS or the derivative Original Logistics Data.mdb, Damian Capozzola on behalf of the PCT and its soon-to-be indemnified purchaser C&S, sat quietly with a copy of the real file that proved Walker's report a total fraud. It is undisputed that, contrary to Walker, the Berry system had 69 tables and iterations of the Original Logistics Data.mdb had 88.[1]   Through their maneuvering these parties and their counsel engaged in a scheme to defeat Mr. Berry in summary judgment by fraudulently withholding evidence.    The fraud was successful when the Court gave more time and then  granted summary judgment for C&S on all claims and for Dillon and Fleming on the issue of willfulness and on the issue of inadvertence.

**F.    C&S Was Engaged in the Fraud and Cannot Benefit.**

C&S has escaped liability because the same software that was to be analyzed

---

[1]  One iteration of the Original Logistics Data.mdb program had 97 tables.

to determine what, if any, similarities there were between the Berry system and the system that had been created by Dillon was Original Logistics Data.mdb, the only software Dillon claims he had to create the spreadsheets that was not turned over and was hidden until this week by Mr. Capozzola and his local counsel concurrently representing C&S.

The number of times subsequent to this acquisition in May 2003 that Mr. Capozzola, his co-counsel and Mark Dillon have put forth sworn testimony denying that they possessed such software in proceedings in both Delaware and Hawaii are too numerous to list. Leave it to suffice that Mr. Capozzola cannot deny the fact that he has concealed this from two federal judges including this Court.

**G.    Mr. Berry Has Suffered Extreme Prejudice.**

The prejudice to Mr. Berry is clear but not even necessary to the finding that the orders should be set aside. By withholding the software and falsely claiming to not have it, the PCT bought precious time for Walker to contrive his report that falsely claimed the de minimis modifications based on the review of the Dillon queries. While the PCT, by its own admission, withheld the actual software from Walker and the Plaintiff's expert, Walker's report was submitted claiming facts that were clearly untrue. Had Mr. Berry and Walker had the real software, then

there is no way that Walker could have claimed that a 69 table database is

essentially identical to an 88 table database a fact that has not been disputed by the

defendants who cannot dispute they put forth evidence that there was only one

additional table.  This would have necessarily defeated Fleming and Dillon on

willfulness and inadvertence.  In addition, by only reviewing the queries, Walker

was able to produce a contrived view of the C&S spreadsheet system based on the

queries produce by Dillon whose earlier actions resulted in an adjudication of

willful infringement.  Had the actual evidence been produced, had Dillon testified

truthfully, had the attorneys not concealed the evidence, Mr. Berry would have

been able to respond with an actual copy of the software that was copied and not

the queries that Dillon provided.  This is clear prejudice.  For what it's worth, the

Court can now mark on the calendar that the actual copy of the Berry database was

produced in this litigation on Monday, February 6, 2006.  This is nearly three years

from the date that Capozzola obtained it.

    **H.**    **Additional Withheld Evidence Shows Criminal Infringement**.

As to additional evidence produced finally in the Guidance discovery

obtained on January 25 & 26, 2006, first, additional evidence that has not been

produced continues to be disclosed and will be addressed in motions in limine. In

regard to what was produced, in the unallocated clusters that were withheld from

Dillon's machine 136, Mr. Berry's counsel has found no less than 10 copies of Mr.

Berry's FCS Logistics Data.mdb that appear from their presence in the unallocated

clusters to have been deleted on or about the time Guidance did its "forensic" work

in a manner that would not leave a copy in the Windows Recycler.   Hogan Dec. ¶

9 and Exhibit 9.   These obfuscated copies of the Berry FCS are compelling

evidence of  criminal infringement.  This is because,  Fleming admits it did not

have a copy of the original FCS. The pages attached to Hogan Dec. Exhibit 10

show the individual copies of  FCS with Mr. Berry's name but the Fleming

Logistics splash screen logo that was one of the adjudicated infringements.   These

are as a matter of collateral estoppel, ten unlicensed copies of the Berry work.  As a

matter of Federal copyright law, Fleming and Dillon did not have any right to

make these ten copies.  *See* 17 U.S.C. § 117 (Fleming must be an owner of a copy

to have the right to make a backup copy).  Fleming was found to have not been an

owner of a copy when the jury flatly rejected its Section 117 defense and found it a

willful infringer.  By making these 10 copies the elements of the crime of criminal

infringement are established.

As to the FCS software Original Logistics Data.mdb that the Court has

found to be created as an act of  infringement, the Hogan Dec. Exhibit 10

evidences that over ten copies of this software was modified and therefore copied

10

in the period after March 31, 2003. As a matter of law, Fleming had not lawful

right to modify this and save a copy. This copying constitutes criminal

infringement for financial gain. To now allow Fleming, an adjudicated willful

infringer, that concealed these copies without right and to allow Fleming and its

infringement developer Dillon to have this finding of innocence in these civil

proceedings shocks the conscious and jeopardies criminal prosecutions for piracy

should the Court adhere to the earlier findings on this record.

## I.     The Actual Number of Infringing Modifications Is over 3,000.

Finally, Mr. Berry's counsel has obtained a commercial software package

that makes reports of differences between two Microsoft Access databases. As set

forth in the Hogan Dec. ¶ 11 and its Exhibit 11, after running this software to

compare what, if any, differences exist between  the actual copy of the Berry FCS

Logistics Data.mdb that was licensed to Fleming and the Original Logistics

Data.mdb that Mr. Capozzola kept from disclosure in Chicago, the resulting

number of unauthorized infringing changes far exceeds 3,000. Based on the fraud,

this Court ruled this to be inadvertent. That cannot stand.

## J.     The Relief Won't Prejudice the Other Defendants.

Mr. Berry does not seek a finding of willful infringement against the other

Employee Defendants, although he respectfully preserves his right to have the

11

entire case reversed on appeal.  He does believe that to go forward, any mention of

inadvertence in this case or any claim that Fleming was somehow mistakenly led to

infringe is simply absurd, insults this Court's equity and integrity and must be

revisited on the grounds that the attorneys  engaged in this fraudulent conduct. The

Court must grant the relief as requested.

## III.   ARGUMENT.

### A.    Reconsideration is Appropriate Where Evidence Has Been Withheld.

In the Fall of 2003, in Mr. Berry's Second Request for Production of

Documents to Defendant Fleming, Mr. Berry sought a copy of all the freight

systems that were operating at Fleming at any relevant period. In their response

submitted in November 13, 2003, Fleming did not object to the production and

stated that it would produce copies of the software under a protective order.  Hogan

Dec.  Exhibit "4."

### B.    Dillon Falsely Testified that Only Guidance Had a Copy.

On December 23, 2003, in the Deposition of Mark Dillon, Mr. Dillon was

questioned about whether a copy of Original Logistics Data.mdb was retained, and

swore, under oath, that no copies of the Original Logistics Data.mdb were retained

and that only Guidance had a copy.  Hogan Dec. Exhibit 4 at pg. 260:12 to 260:19

and 352:14 to 352:25.

Subsequently, Mr. Berry moved for summary judgment.  Fleming's lawyers moved to block Mr. Berry seeking a Rule 56(f) determination in part on the grounds that they had not obtained a copy of the Original Logistics Data.mdb from Guidance.  *See* Hogan Dec., Exhibit " 6".   The Court, granted additional time for Fleming to prepare its responses and with counter-motions Fleming and C&S  was able to achieve summary judgment on its behalf regarding the lack of willfulness and inadvertence in regard to its own conduct and the conduct of Mark Dillon and the employees.  In addition, C&S based on the claim that the spreadsheets did not infringe, was granted summary judgment as to all claims.

### C.    The Fraud Is Clear and Proven by Evidence
### That Is Not Disputed.

First, Mr. Capozzola admits that he had obtained a copy of the Original Logistics Data.mdb from Dillon in May 2003.  His email to Mr. Berry's counsel proves that he had it during all relevant periods of this case, but more to the point had it in his possession when he and the C&S concurrent counsel represented to this Court the need for Rule 56(f) relief on the grounds that Fleming and C&S DID NOT have the file.   The facts are not in dispute. Mr. Berry has proven the factual predicate for the  fraud on the court well beyond the clear and convincing standard that is applied to Rule 60(b) motions.

### D.    Mr. Berry can Meet the High Standard for  Rule 60(b)

13

## Relief of Proof by Clear and Convincing Evidence.

In this case, the clear and convincing evidence is admitted by Mr.

Capozzola.  He admits that he took a copy from Dillon on or about May 9, 2003.

There is no question that it was not produced by the Fleming-C&S attorneys

because in their own Rule 56(f) Motion they falsely claim to need a copy in order

to meet Mr. Berry's motion for summary judgment.    There is clear and

convincing evidence that when Mr. Dillon testified that "we did not retain a copy

of that software," and that only Guidance had a copy, Mr. Dillon was testifying

falsely under oath.  Even if you give Dillon the benefit of all doubt,  Fleming and

C&S's attorneys made no attempt to correct Mr. Dillon's clearly inaccurate

testimony.  Their failure to produce it and continued concealment until caught,

proves the state of mind required for fraud because they there is no dispute that

Fleming and C&S got more time after they filed the fraudulent Rule 56(f) motion

saying they didn't have Original Logistics Data.mdb.  There is no dispute that they

got more time and no dispute that all the while Damian Capozzola had a copy

when the false representation was made.

## E.    Rule 60(b) Applies in Cases of  Extrinsic Fraud.

Rule 60 (b) is applied when an officer of the court engages in fraud or other

wrongful conduct that threatens the administration of our courts.  In this case, at

14

least two attorneys were in a position to correct the fraud and sat silent or actively engaged in the fraud.

First, Mr. Capozzola admits that he had the software that the Fleming-C&S team claimed it needed to meet the summary judgment motion. Second, Mr. Smith sat in the Dillon deposition and heard Mr. Dillon testify that "we" didn't have a copy of Original Logistics Data.mdb. This was just a few weeks after he had his associate who sign a response to document requests that represented that all such materials would be produced. He had been told specifically in May 2003 by Damian Capozzola that Dillon had transferred the copy of the Berry system to Capozzola. Hogan Dec. Exhibit 7. As an officer of the Court he had the absolute duty to disclose the existence of this evidence. Mr. Smith's firm then filed the Rule 56(f) motion that misrepresented to the Court that Fleming-C&S did not have a copy of the software that was sitting, by Mr. Capozzola's own admission, in a file in his Chicago office. Mr. Smith, who had been copied on all the e-mails, knew about this when the Rule 56(f) motion was filed. Despite agreeing to turn over copies of freight software, he failed in his obligation and cannot deny his role in this fraud. Because regardless of how you view it, both Fleming and C&S's attorneys were active participants, both of these parties along with Dillon must be held to account.

### F.    The Court of Appeals Holds that the Relief Be Granted Under These Facts.

In *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128  (9th Cir. 1995), the

Court of Appeals addressed  facts similar to the instant case as follows:

> . . .Thompson's argument misses the point. The issue here
> is not whether Sparks would have prevailed had the
> original video been produced. As we noted in
> *Intermagnetics*, "the inquiry as to whether a judgment
> should be set aside for fraud upon the court under Rule
> 60(b) **focuses not so much in terms of whether the
> alleged fraud prejudiced the opposing party but more
> in terms of whether the alleged fraud harms the
> integrity of the judicial process.**" *Intermagnetics*, 926
> F.2d at 917 (*citing Hazel-Atlas*, 322 U.S. at 264). **By
> failing to disclose the original video,
> mischaracterizing the results of the drop-tests, and
> failing to correct the false impression created by
> French's testimony, Bartlett undermined the judicial
> process**. As the district court noted, Bartlett, as a licensed
> attorney, "is aware of the necessity for compliance with
> the rules of discovery and the rules of professional
> responsibility. He is aware of the damage failure to abide
> by these rules can wreck in the specific case at hand and
> the larger framework of confidence in the adversary trial
> system." Moreover, Thompson is in no position to
> dispute the effectiveness of the scheme in helping to
> obtain a favorable jury verdict. *See Hazel-Atlas* at 246-47
> (holding that party who presented fraudulent evidence
> cannot disclaim its effectiveness after the fact).

*Pumphrey*, 62 F.3d at 1132-1133 (citations in the original) (emphasis added).

This case is on all fours with the 9th Circuit rule. There is no question that

discovery rules were violated.  No question that material evidence was withheld.

16

No question that all of this was accomplished with the active participation of officers of the Court. As the Court of the Appeals held, these defendants are "in no position to dispute the effectiveness of the scheme..." _Pumphrey_ at 1133.

Moreover, Mr. Berry has shown the clear prejudice that this has engendered. Even so, the Court of Appeals holds this is not relevant to the Court's inquiry where fraud applies. The denial of this motion would only foster more such conduct in future litigation. The adversarial system is at stake and the Court must act to set the matter right.

**G.    The Evidence of Criminal Infringement Is Compelling And Makes any Such Continued Finding of Innocence Unconscionable.**

As set forth above in the Hogan Dec. Exhibit 11, Fleming continued to modify the FCS software even after it filed bankruptcy. It matters not whether it "used" it. It clearly modified it and saved a copy. The number of copies exceeded 10 and therefore, there is no way that Fleming and Dillon could escape prosecution for criminal infringement under these facts. To allow this fraudulently obtained a finding of innocence to stand in the face of this record, to now be paraded in front of the jury that is going to be told it was just an inadvertent mistake, would shock the conscious of any law-abiding person. Mr. Berry has been the victim of this criminal conduct from 2000. He should not be subjected to a show trial to protect

17

these infringers and thereby limit the damages that Mr. Berry is would be entitled

to in a fair hearing.

### H.    <u>The Court May Disqualify Counsel</u>.

The rules regarding the conduct of concealing evidence are well settled.

> Any court which has the power to admit attorneys to
> practice may also sanction them for unprofessional
> conduct. That power encompasses the authority to
> suspend an attorney admitted pro hac vice from further
> practice before the court.

*Bank of Haw. v. Kunimoto*, 91 Haw. 372, 394 (Haw. 1999) (*citing  Standing*

*Committee on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984); *Yagman v.*

*Republic Insurance*, 987 F.2d 622, 628 (9th Cir. 1993) and *United States v.*

*Engstrom*, 16 F.3d 1006 (9th Cir.1994).

Hawaii courts consider the conduct that is the subject of this motion grounds

for discipline for both local and pro hac vice counsel.

> HRPC Rule 3.4 provides that "[a] lawyer shall not...
> unlawfully obstruct another party's access to evidence or
> unlawfully alter, destroy or conceal a document or other
> material having potential evidentiary value. A lawyer
> shall not counsel or assist another person to do any such
> act[.]" Therefore, because an attorney of record, whether
> a licensed member of the Hawaii bar or an attorney
> permitted to appear pro hac vice, is charged with (1)
> possessing the requisite knowledge, thoroughness, and
> preparation to provide competent representation, (2)

18

> acting with reasonable diligence and promptness, and (3) not obstructing another party's access to evidence or unlawfully altering, destroying or concealing a document or other material having potential evidentiary value or assisting another person to do so, it is elementary that an attorney of record must be familiar with the facts and pleadings in the case.

*Kunimoto*, 91 Haw. at 392.

The Court has power to impose disciplinary sanctions over counsel who participate in such conduct.   If the PCT claims that it would be prejudiced if its Counsel were barred from these proceedings, then it has only its counsel to blame, not Mr. Berry.  Mr. Berry's counsel has brought the matter to the Court's attention as is his obligation and leaves it to the Court's discretion on how to address this issue.

## IV.    <u>CONCLUSION.</u>

For these reasons, the Court must grant the Motion and reverse the findings of willfulness and allow this case to go forward to the jury simply on the issues that are to be tried of copyright infringement.  Should Mr. Berry elect statutory damages, the Court should instruct the jury that Fleming and Dillon are willful infringers.

As to C&S, it is well settled that equity requires that C&S cannot benefit from the fraud. In order to not prejudice Mr. Berry any further, Mr. Berry asks that

19

the Court vacate all findings related to C&S defenses and dismiss C&S without prejudice.

DATED: Honolulu, Hawai'i, February 10, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| vs. | ) | |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, | ) | |
| INC., a California corporation; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the dates and by the methods of service noted below, a true and correct copy of the Notice of Non-Hearing Motion; Plaintiff Wayne Berry's Motion for Reconsideration of Or In the Alternative Rule 60(b) Relief For Fraud on the Court; Memorandum in Support of Plaintiff Wayne Berry's Motion For Reconsideration Of Or in the Alternative Rule 60(b) Relief For Fraud On the Court; Declaration of Timothy J. Hogan; Exhibits "1" to "11"; was served on the following at their last known addresses:

<u>Served Electronically on  February 10, 2006</u>:

Damian Capozzola dcapozzola@kirkland.com

Lyle S. Hosoda lsh@hosodalaw.com

Eric C. Liebeler eliebeler@kirkland.com

Raina P. Mead rpbm@hosodalaw.com

R. Olivia Samad osamad@kirkland.com

Thomas H.Y.P. Yee thy@ksglaw.com, bls@ksglaw.com

DATED: Honolulu, Hawai'i, February 10, 2006.


/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

2