KOBAYASHI, SUGITA & GODA

LEX R. SMITH             3485-0
THOMAS H. YEE            7344-0
SUITE 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 539-8700
Fax No. (808) 539-8799
Email: lrs@ksg.law.com

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA  90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: eliebeler@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE,<br>INC., et al.,<br><br>Defendants. | ) CIVIL NO. CV03-00385 SOM-LEK<br>) (Copyright)<br>)<br>) **PCT'S OPPOSITION TO**<br>) **PLAINTIFF WAYNE BERRY'S**<br>) **MOTION FOR**<br>) **RECONSIDERATION OR IN THE**<br>) **ALTERNATIVE RULE 60(B)**<br>) **RELIEF FOR FRAUD ON THE**<br>) **COURT; DECLARATION OF**<br>) **DAMIAN D. CAPOZOLA IN** |

**SUPPORT OF PCT'S OPPOSITION TO PLAINTIFF WAYNE BERRY;S MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RULE 60(B) RELIEF FOR FRAUD ON THE COURT; EXHIBITS "A"-"H"; DECLARATION OF MARTIN G. WALKER IN SUPPORT OF REPOSE OF PCT TO PLAINTIFF WAYNE BERRY'S MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RULE 60(B) RELIEF FOR FRAUD ON THE COURT**

Judge:          Hon. Susan O. Mollway
Trial Date:     February 28, 2006

1

# TABLE OF CONTENTS

I.    The Motion To Reconsider The Court's Ruling On Summary
      Judgment That The Infringement Was Inadvertent Should Be Denied............... 2

      A.    The Motion Is Time-Barred......................................................... 2

      B.    The "New" Evidence Is Not New............................................... 8

      C.    Berry's Counsel Submits An Inaccurate And Misleading
            Affidavit.................................................................................... 10

II.   The Motion To Reconsider The Court's Order Granting Summary
      Judgment to C & S Should Be Denied ............................................... 12

III.  Berry's Miscellaneous Accusations Of Wrongdoing And Vague
      Requests For Sanctions Should Be Denied........................................ 13

      A.    The PCT Moved For 56(f) Relief Because Berry Stalled For
            Months Before Producing The Licensed Version Of The 1993
            Freight Control System And The 2003 Version, Not Because
            Of Issues Pertaining To The Guidance Production. ............................. 13

      B.    Berry's Claim That Unallocated Clusters Contain Ten Copies
            of Berry's FCS Is Wrong......................................................... 15

IV.   Conclusion:  The Court Should Deny The Motion And Sanction
      Berry............................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Roberston*,
　882 F.2d 421 (9th Cir. 1989) ......................................................... 4

*Ashford v. Steuart*,
　657 F.2d 1053 (9th Cir. 1981) ........................................................ 3

*England v. Doyle*,
　281 F.2d 304 (9th Cir. 1960) .................................................... 4, 5, 6

*Levander v. Prober*,
　180 F.3d 1114 (9th Cir. 1999) .................................................... 4, 6

*Smith v. Sentry Ins.*,
　752 F.Supp. 1058 (N.D. Ga. 1990) ................................................. 3

## Rules

Federal Rule of Civil Procedure 60 ........................................ 2, 3, 10, 16

## Treatises

7 James Wm. Moore et al. Moore's Federal Practice ¶ 60.33, at 515 (2d ed. 1978) 4

Plaintiff Wayne Berry requests that the Court reconsider its summary judgment ruling entered on January 26, 2005, that Mark Dillon did not willfully infringe Plaintiff's copyright during the period April 1, 2003 to June 9, 2003.  As discussed in Section I, Berry's request more than a year later to reverse this ruling is time-barred.  The "new" evidence cited by Berry is neither new nor material to the Court's ruling.  His false and scurrilous attack on Mark Dillon's integrity is distasteful, if not sanctionable.

Plaintiff also requests reconsideration of the Court's June 27, 2005 ruling granting C & S summary judgment on claims relating to alleged infringement occurring after June 9, 2003, when no party was using the copyrighted software at issue.  In addition, Plaintiff asks the Court to dismiss Plaintiff's claims against C & S without prejudice to allow Plaintiff to file suit in a different court at some future date.  As discussed in Section II, these requests are devoid of merit. Plaintiff fails to identify any material fact relevant to the Court's ruling that was decided incorrectly or that should be reconsidered in light of "new" evidence.  The "new" evidence has nothing to do with software in use after June 9, 2003 and nothing to do with software used by C & S.  In fact, the "new" evidence is a snapshot of a database from a period before C & S purchased the Hawaii division of Fleming with Bankruptcy Court approval.  No support exists or is offered for the request for dismissal without prejudice.

In addition, Plaintiff seeks unspecified sanctions for alleged "fraud on the court."  The only fraud on this Court is Plaintiff's counsel's pretending to be a forensic data expert and creating false evidence in support of his untimely motion.

In Section III, the amalgam of threats, insults and complaints that make up the remainder of the supporting papers are addressed where it seems appropriate.

I. **The Motion To Reconsider The Court's Ruling On Summary Judgment That The Infringement Was Inadvertent Should Be Denied.**

A. **The Motion Is Time-Barred.**

Plaintiff Berry deliberately fails to identify the Court ruling he is seeking reconsideration of. In an Order dated and entered on January 25, 2005, the Court ruled that any infringement by Mark Dillon during the period April 1, 2003 through June 9, 2003, was inadvertent. *See* Order Granting Defendant Foodland's Motion for Summary Judgment; Granting Defendant Hawaii Transfer Company's Motion for Summary Judgment; and Granting in Part, Denying in Part Defendants Dillon, Noa, and Christensen's Motion for Summary Judgment, filed January 26, 2005, at 32-34 ("Any infringement was therefore inadvertent, and not willful.") Under Rule 60(b) a motion seeking relief from an order either on the basis of newly discovered evidence or fraud "***shall*** be made within a reasonable time," and, in any event, "***not more than one year after the judgment, order, or proceeding was entered or taken.***" Fed. R. Civ. Proc. 60(b).

Plaintiff filed this motion on February 10, 2006, more than a year after the Court's order. As the Advisory Committee Notes to Subdivision (b) make clear, "there is a limit upon the time within which resort to a motion is permitted, and this time limit may not be enlarged under Rule 6(b)."[1] The court should summarily

_____

[1] LR 60.1 does not alter the time limits provided for in Fed. R. Civ. Proc. 60 with respect to motions seeking relief based on new evidence or fraud. LR 1.3 provides

deny the request as untimely. *See Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (denying Rule 60 motion in the interest of finality because "[a]ccording to the rule, such motions must be brought within a 'reasonable time' and in any event not longer than one year after the judgment was entered").

The present motion rests on the argument that Berry obtained "new" evidence recently and that he didn't discover this evidence sooner because it was withheld from production and wasn't disclosed in a deposition. While these claims are false, what is undeniably true is that a motion seeking to revisit an order entered over a year ago based on "new" evidence is time-barred. As to fraud, Berry must realize his claim is time-barred if, as he alleges, a document was withheld or a witness failed to fully respond to a deposition question. A motion based on allegations of fraud between the parties is barred after a year because public policy favors finality. *See, e.g., Smith v. Sentry Ins.,* 752 F.Supp. 1058, 1062 (N.D. Ga. 1990) (denying plaintiff's 60(b)(3) motion seeking relief from orders granting summary judgment on the basis of fraud where more than one year had elapsed between entry of original summary judgment orders and filing of motion). Berry characterizes his allegations as a "fraud on the court" in the hopes of falling within an exception to the one year rule. Using this phrase, however, is not enough to circumvent the one year limit and overcome the public policy

---

that the local rules "supplement the Federal Rules of Civil Procedure" and "shall be construed so as to be consistent with those rules."

favoring finality.[2]

The burden is on the moving party "to establish fraud by clear and convincing evidence." *England v. Doyle*, 281 F.2d 304, 310 (9th Cir. 1960). "To constitute fraud on the court, the alleged misconduct must "harm[] the integrity of the judicial process." *Levander v. Prober (in re Levander)* , 180 F.3d 1114, 1119 (9th Cir. 1999) *quoting Alexander v. Roberston*, 882 F.2d 421, 424 (9th Cir. 1989). The Ninth Circuit applies Professor Moore's definition:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

*Levander*, 180 F. 3d at 1119, quoting 7 James Wm. Moore et al. Moore's Federal Practice ¶ 60.33, at 515 (2d ed. 1978).

Because Berry seeks to set aside the ruling on Dillon's summary judgment motion, Berry must show by clear and convincing evidence that Dillon engaged in "an unconscionable plan or scheme . . . designed to improperly influence the court

---

[2] In discussing this case law, the PCT does not intend to suggest that Berry's fraud claims are at all worthy or as serious as the conduct which courts have held does not rise to the level of a "fraud on the court."

in its decision." *England*, 281 F.2d at 309.[3]  To meet this burden, Berry proffers nothing.

First, Berry claims that Fleming had a copy of the file OriginalLogisticsData.mdb that was sent to storage in May 2003, before this lawsuit was filed, and did not produce the disc until asked to do so this month. Dillon is not even alleged to have sent this copy, let alone to have custody or control of it.  Not surprisingly, Dillon has no recollection of sending the disc to anyone.  *See* Opposition of Defendants Mark Dillon et al., filed concurrently, and attached Declaration of Mark Dillon.

Having failed to link Dillon to the "new" evidence, Berry launches an utterly false and misleading attack on Dillon's integrity by mischaracterizing deposition testimony.  It is worth setting out the testimony cited by Berry in full to understand how wrong Berry's claim of fraud by Dillon is.  In December **2003**, seven months after the disc at issue was sent to storage and more than a year before the Court ruled on Dillon's summary judgment motion, Berry posed the following question:

22    Q.  Do you know whether a copy

23    of that [OriginalLogisticsData.mdb] exists anywhere that we can get our hands

24    on it?

25    A.  Guidance software.

---

[3] Berry does not challenge the Court's ruling that any infringement by Theresa Noa or the other employees was inadvertent.  If the ruling with respect to Mark Dillon stands, there is no basis for a finding that Fleming acted willfully when its employees did not.

1    Q.  And you believe there is a copy of that

2    on the Guidance images?

3    A.  Yes, I do.

Hogan Decl. Exh. 5, p. 3-4, lns. 22-25; 1-3.  Since Berry asked where "a copy"

exists that Berry "can get our hands on," it is not surprising that the truthful and

accurate answer was Guidance software.  As discussed in Section 2, below, Dillon

was right and Berry received a copy of the OriginalLogisticsData.mdb file as early

as July 2005.  *See* Walker Report 5th Supplement, Exh. A ; see also Capozzola

Decl. ¶  3.[4]

Berry cannot even argue that the response was misleading by omission,

since he quite obviously was looking to find a copy, not all copies.  At worst, Berry

is complaining that Dillon should have been more forthcoming.  But, "non-

disclosure by itself does not constitute fraud on the court.  *See England v. Doyle*,

281 F.2d 304, 310 (9th Cir. 1960) (failure to produce evidence, without more, does

not constitute fraud on the court)." *Levander*, 180 F.3d at 1119.  Indeed, "perjury

by a party or witness, by itself, is not normally fraud on the court." *Id*. (citations

omitted).  That is because a party has the opportunity, as Berry did here, to

challenge the testimony or pursue the discovery.

The other testimony cited by Berry is also true and Berry offers no evidence

to suggest it is not:

---

[4]  The Fifth Supplemental Report of Dr. Martin G. Walker is attached as Exhibit A
to his concurrently submitted declaration.  Unless specifically referenced, all other
"Ex." notations are to the concurrently submitted Declaration of Damian D.
Capozzola.

16    Q.  And you didn't keep a copy of that

17    subsequent to the time that Guidance did its

18    work at your office?

19    A.  We did not.

Hogan Decl. Exh. 5, p. 2, lns. 16-19.  Guidance did its work over the July 4, 2003

weekend, as Berry's counsel knew, almost six months before Dillon was deposed.

The purpose of that work by Guidance was to remove such files.  In fact, a review

of the After image made by Guidance confirms that the

"OriginalLogisticsData.mdb" database Dillon was asked about was removed.

Walker Supp. Report, ¶ 29.  Characterizing this truthful testimony as perjurious

and a fraud is sanctionable conduct by Berry.  Berry's mischaracterization of this

testimony is deliberately misleading.  Berry claims that Dillon testified "that only

Guidance had a copy."  Berry Motion at p. 12.  Dillon was never asked if only

Guidance had a copy and never testified that Guidance was the "only" place Berry

could obtain a copy.  There is no evidence whatsoever that Dillon's testimony was

inaccurate, let alone evidence to suggest it was so deliberately misleading as to be

fraudulent.

In the Court's order granting summary judgment, the facts cited and relied

upon by the Court are unchallenged.  Dillon tried, albeit unsuccessfully, to remove

the infringing changes in an effort to get back to the licensed version of the

software.  *See* Order, dated January 26, 2005 at 32-34.  Berry's argument that

"new" evidence consisting of a storage copy of the file OriginalLogisticsData.mdb

was needed to respond to Dillon's motion is belied by Berry's failure to seek Rule

56(f) discovery to examine the Guidance software, which he knew by December 2003, based on Dillon's testimony, contained the OriginalLogisticsData.mdb files he now claims were concealed.  It is further belied by Berry's failure to examine the OriginalLogisticsData.mdb files produced as early as July 2005 and raise any issue about the January 2005 ruling.

### B.     The "New" Evidence Is Not New.

Berry's motion is premised on the false claim that he recently discovered "new" evidence--a CD sent to storage by Fleming counsel in May 2003, that contains one of the "snapshots" of the database from the period April 1 to June 9, 2003.  The file Berry claims is "new" evidence is named "OriginalLogisticsData.mdb" with a file size of 89,987,072 bytes and a file created date of May 9, 2003 (hereinafter "Storage Copy").  As discussed in the attached report of Dr. Martin G. Walker, a comparison of this Storage Copy with the snapshots of the database previously produced to Berry confirms that there is no new evidence.

The Court is familiar with the "before" images of the Fleming computers created by Guidance.  Dr. Walker was able to identify on the before images a snapshot of a database that (1) had the same file name as the "new" evidence, "OriginalLogisticsData.mdb," (2) was identical in size, and (3) had an identical file created date of May 9, 2003 (hereinafter "Previously Produced" database). Dr. Walker then examined the copyrighted elements of the software to determine if the structure of the Storage Copy and the Previously Produced database were

identical.  He examined the tables, tablenames, and fields in every table, as well as the relations between the tables and "determined that these two databases did indeed have identical structure."  Walker Report 5th Supplement, ¶ 11.  Dr. Walker next confirmed that "these databases contained identical data." *Id*.  He concluded, therefore, "that the two databases were identical." *Id*.  Dr. Walker then confirmed the date the file was originally produced to the Plaintiff was September 2005. *Id*. at ¶ 12.

Counsel for the PCT notified Berry's counsel that the databases were identical in structure, size and content.  Berry's counsel was requested to identify any differences between the Storage Copy and previously produced databases, but he refused to do so.  In seeking reconsideration of the Court's summary judgment ruling, Berry's counsel makes no argument that the Storage Copy is different from the previously produced database and provides no explanation for why he couldn't have conducted whatever analysis he wished before February 2006.  In fact, the May 2003 e-mail referencing the freight software has been in Berry's possession since at least September 2005.[5]  Walker Fifth Supp. Report ¶ 13.  Yet, Berry never

---

[5]  Berry's counsel declares under oath that the e-mail alerting him to the existence of the storage copy is something he "obtained from the Guidance images ordered produced from the PCT."  Hogan Decl. ¶ 7.  He is deliberately vague about <u>when</u> he obtained it, improperly suggesting the e-mail first surfaced in the materials provided after the Court continued the trial on January 24, 2006.  The e-mail exists on the images in Berry's possession since September, 2005.  Walker Report ¶ 13. Berry sat on this e-mail for four months before dropping it like a bag of marbles in the trial preparation path of counsel for the PCT.

requested a copy of the CD referenced in the e-mail until February 2006.[6]  Instead

of comparing the Storage Copy to the versions of the database already produced to

determine if his grievance was real or imagined, Berry instead fired off his Rule 60

motion apparently indifferent to the accuracy of his allegations.

### C.     Berry's Counsel Submits An Inaccurate And Misleading Affidavit.

Berry's counsel,  apparently unable to find a real expert to approve his

methodology, anointed himself a forensic data expert and has provided this Court

with a declaration expressing his "expert" opinions and analysis.  The result is an

inaccurate and misleading affidavit that clearly does not meet the requirements for

expert opinion testimony.  While ignoring the fact that the Storage Copy was

nothing new, Berry's lawyer decided to create the impression that the Storage

Copy was very different from the 1993 FCS software by manipulating the data.

Hogan Decl. ¶ 11.  He found differences.  This is no surprise.  Indeed, it would

have been shocking if he had <u>not</u> found differences given that the whole basis for

the Court's granting Berry's motion on direct infringement was that there were

differences between the database Fleming was using during the period and the

original, licensed FCS.  The mere fact that Berry's counsel found differences

proves nothing new.

---

[6]  When Berry's counsel brought this e-mail to the attention of defense counsel,
PCT counsel tracked the CD to a storage facility in Chicago, had it pulled back,
and forwarded a copy to Berry.  Capozzola Decl. ¶ 4.  PCT counsel simply forgot
about this e-mail, assuming, correctly, that the database at issue would be on the
Guidance before image cd which was in fact produced to Berry.

But what should shock the Court about Berry's comparison is the manner in which it was conducted and the false conclusions offered in support of this motion. Berry's *counsel* conducted the analysis (Hogan Decl. ¶ 11), but he is wholly unqualified to be playing forensic expert. The deficiencies in his analysis prove the very point. In trying to perform his analysis he first converted one of his comparison databases into a new file format, in the process manipulating the metadata and thereby creating thousands of false "differences" between the Storage Copy and the 1993 FCS. *See* Walker Report ¶¶ 14-20. Mr. Hogan used these false indications of differences which he created to opine that there was evidence of thousands of "infringing changes" that were previously unknown. This is simply false. It is not even clear that Mr. Hogan was comparing the files he said he was, since the names he provided of the files are different from that on the cd sent to him. *Id.* Among the "differences" counted by Mr. Hogan as "infringing" changes are additional data entries that result from the difference in time, not from any changes to the copyrighted software. *Id.* The methodology resulted in so many false positives of "differences", and is so unreliable, the results cannot be accepted as anything other than "nonsense." *Id.* By submitting this unfounded and inaccurate "analysis" as support for the claim of wrongdoing, Berry clearly hoped to confuse the Court, make misleading and false charges of wrongdoing and create extra work for defendants on the eve of trial. He certainly succeeded in achieving the last two goals.

## II.  The Motion To Reconsider The Court's Order Granting Summary Judgment to C & S Should Be Denied

The Court's June 27, 2005 ruling granted summary judgment to C & S because the Excel spreadsheets used by C & S were not derivatives of Berry's FCS software.  The "new" evidence Berry cites and claims was withheld is not new, as discussed above.  More importantly, it is a snapshot of OriginalLogisticsData.mdb, not a version of the Excel spreadsheets used after June 9, 2003.  Nothing about this document bears on the Court's ruling regarding Excel spreadsheets used at the later date.  C & S did not purchase the Hawaii division of Fleming until August 2003, months after the switch was made to Excel spreadsheets and months after the Storage Copy was sent to Chicago.

Berry's critique of Dr. Walker is without merit and has nothing to do with the "new" evidence Berry cites.  Dr. Walker conducted his analysis of the Excel spreadsheets used after June 9 by evaluating Berry's 1993 copyright filing against the 2003 spreadsheets.  Ex. C (May 31, 2005 Walker report at ¶¶ 57-58).  In his zeal Berry represents to the Court that Walker's spreadsheet analysis came from "only reviewing the queries," Mot. at 9, but this is flat wrong:  Walker analyzed the actual spreadsheets themselves, which the defendants produced to Berry in December, 2003.  Capozzola Decl. ¶¶ 5-6.  Berry's motion is entirely devoid of any logical reason why issues concerning a Storage Copy of OriginalLogisticsData.mdb should cause the Court to even revisit its ruling that the Excel spreadsheets were not derivate, let alone change it.

Berry's request for reconsideration is wholly unsupported.  Its request for a

dismissal without prejudice to allow it to file suit against C & S in a different court at a later time is unusual to say the least and wholly without support or citation to law.

## III.    Berry's Miscellaneous Accusations Of Wrongdoing And Vague Requests For Sanctions Should Be Denied.

In a hodgepodge of invective seemingly untethered to the motions and reality, Berry hurls a series of accusations at PCT counsel and its expert.  While not particularly relevant, we will address some of his arguments.

### A.    The PCT Moved For 56(f) Relief Because Berry Stalled For Months Before Producing The Licensed Version Of The 1993 Freight Control System And The 2003 Version, Not Because Of Issues Pertaining To The Guidance Production.

Berry's motion (at p. 5) takes out of context one line from the PCT's April 27, 2005 motion under Rule 56(f) to continue the response date to Berry's summary judgment motion and tries to make it appear as though the basis for the PCT's request was to obtain the Guidance images.  This characterization is inaccurate.  As one can see from quickly reviewing the entire motion (Capozzola Decl. Ex. Ex. E), the true basis for the PCT's motion was that for six months Berry had refused to produce the 1993 FCS -- the very basis of his lawsuit -- and the 2003 FCS.  Then two days *after* moving for summary judgment, he produced only the 1993 FCS.  Capozzola Decl. Ex. E, p. 3.  Berry's behavior left the PCT with only three weeks to analyze the 1993 FCS it had been seeking for six months and respond to summary judgment on all counts.  This was the primary impetus for the ultimately successful 56(f) motion, and would have provided a stand-alone basis

for relief with or without issues pertaining to the images held by Guidance Software.

Ultimately, neither Berry nor the PCT relied on the Guidance images in connection with the summary judgment motion. Berry's claim of prejudice or advantage to PCT as a result of the short delay obtained by PCT to respond is unfounded. Certainly Berry's winning motion for judgment on its infringement claim during the April 1 to June 9, 2003 timeframe was unaffected by the presence or absence of the OriginalLogisticsData.mdb files. Berry never requested additional time to review the Guidance images containing these files, although he was aware of their existence since at least December of 2003, when told about them by Dillon in discovery. Interestingly, Berry did attempt to argue that he needed the Guidance images to respond to Guidance's motion for summary judgment, but the Court rejected that argument as failing to meet the requirements of Rule 56(f). June 27 Order at p. 24-25 (allowing Berry to move for reconsideration within 10 days of receiving the Guidance images).

Similarly, PCT's response to Berry's motion had nothing to do with the OriginalLogisticsData.mdb files. At the time Dr. Walker performed his analysis, nobody had access to the Guidance images. Capozzola Decl. ¶ 8. Dr. Walker only had access to, and therefore analyzed, the same materials that Berry and his expert had access to: the Dillon queries. Capozzola Decl. ¶ 9. The Dillon queries are strings of code Dillon wrote to extract data from the infringing Berry database into the noninfringing Excel spreadsheets. Walker Report ¶ 10. In this sense the Dillon queries provide a "shadow image," at least in part, of how the infringing Berry

14

database was structured.  Walker Report ¶ 10.  But Dr. Walker's report is unambiguous:  he assumed the validity of Berry's analysis of the Dillon queries and compared that analysis against the original, licensed Berry FCS.  Capozzola Decl. Ex. F.  Ex. C (May 31, 2005 Walker report) at ¶¶ 40-42.

Corroborating Dr. Walker's methodology, Berry's own expert, Dr. Philip Johnson, had done exactly the same thing.  Capozzola Decl. Ex. G.  (Johnson report).  And the Court should recall that Berry's counsel admitted in open court that he did not even intend to call Dr. Johnson in his case in chief because liability had already been established.  Capozzola Decl. ¶ 12 and Ex. H.  Berry has already won on the issue of underlying liability.  His rambling critiques of the methodology that resulted in his obtaining a judgment of infringement seems, and is, pointless.  Neither Berry nor Dr. Johnson has ever suggested that they needed or used the images of OriginalLogisticsData.mdb in order to determine infringement.  Dr. Johnson has never supplemented his report or provided any additional analysis based on the OriginalLogisticsData.mdb files produced to Berry in 2005.

### B.    Berry's Claim That Unallocated Clusters Contain Ten Copies of Berry's FCS Is Wrong.

Berry's counsel again assumes the role of forensic data expert, arguing that ten screen shots attached to his declaration show that ten copies of Berry's FCS were made and deleted sometime close to the date Guidance made its images.  As discussed in Dr. Walker's report, there is no analysis supporting Hogan's claim about the date these "copies" were allegedly deleted.  Walker Fifth Supp. Report ¶¶ 21-24.  Moreover, by definition, the unallocated clusters in the Guidance images

were areas of the computer that were not being used or accessed.  Berry's counsel is wrong when he claims that ten copies were made or existed.  None of the identified screen shots consist of complete copies of the FCS.  *Id*.  Walker Report ¶ 21.  The presence of fragments of the database in the unallocated clusters does not even indicate that the files were deleted at some point, since the fragments can result from "defragging" the drive on a computer.  In the end, Berry uses this information simply to threaten criminal prosecution--a matter this Court is no doubt relieved is not before it.  In fact, criminal charges related to these latest allegations don't exist anywhere but in the mind of Mr. Berry.  Such accusations certainly have nothing to do with reconsidering prior summary judgment rulings in this case.

## IV.    Conclusion:  The Court Should Deny The Motion And Sanction Berry.

Other than for clerical mistakes, motions made under Rule 60 must be made "within a reasonable time" and in any event not later than a year after entry of the order.  F.R.C.P. 60(b).  Since at least September Berry has had in his possession (a) a file  identical in structure and date to the file counsel sent to storage, (b) versions of the  software used in the April 1 to June 9 timeframe with which he could have done the same analysis he did for this motion, and (c) the e-mail from the PCT's counsel that Berry now points to as his basis for bringing this motion just two weeks before trial.  In doing so, he has forced the PCT's counsel to spend ten hours[7] reviewing and responding to a motion that is factually incorrect on all

---

[7]  Capozzola Decl. ¶ 13.

counts, is affirmatively misleading, and baselessly attacks the character of the PCT's counsel and Mark Dillon.  The Court should not tolerate such overt gamesmanship and should sanction Berry for filing this motion.

Dated:  Honolulu, Hawaii, February 17, 2006



KOBAYASHI, SUGITA & GODA
Lex R. Smith 659-0
Thomas H. Yee 734-4
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:  808 539 8700
Facsimile:  808 539 8799

            and

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Co-Counsel for the Post Confirmation Trust for Fleming Companies, Inc.