# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., a California corporation; H.E.S. TRANSPORTATION SERVICES, INC., a California corporation; CALIFORNIA PACIFIC CONSOLIDATORS, INC., a California corporation; JEFFREY P. GRAHAM and PETER SCHAUL, California citizens; MARK DILLON and TERESA NOA, BRIAN CHRISTENSEN, Hawaii citizens; FLEMING COMPANIES, INC., an Oklahoma corporation; C&S LOGISTICS OF HAWAII, LLC, a Delaware LLC; C&S WHOLESALE GROCERS, INC., a Vermont corporation; C&S ACQUISITIONS, LLC; FOODLAND SUPER MARKET, LIMITED, a Hawaii corporation; HAWAII TRANSFER COMPANY, LIMITED, a Hawaii corporation; RICHARD COHEN, a New Hampshire citizen, ES3, LLC, Delaware Limited Liability Company, MELVIN PONCE, SONIA PURDY, JUSTIN FUKUMOTO, AFREDDA WAIOLAMA, JACQUELINE RIO, Hawaii citizens; JESSIE GONZALES, LUIZ RODRIGUES, AL PEREZ and PATRICK HIRAYAMA, California (CAPTION CONTINUED) | ) | CIVIL NO. CV03-00385 SOM LEK<br>(Copyright)<br><br>MEMORANDUM IN SUPPORT<br><br>Trial Date: September 20, 2005<br>Judge: Hon. Susan Oki Mollway |

citizens; GUIDANCE SOFTWARE, LLC, a California LLC; MICHAEL GURZI, a California citizen; ALIX PARTNERS, LLC a Delaware LLC; DOE INDIVIDUALS 2-350; DOE PARTNERSHIPS, CORPORATIONS and OTHER DOE ENTITIES 2-20,

Defendants.

## MEMORANDUM IN SUPPORT

Plaintiff accuses Defendants of infringing his database, which he calls Freight Control Software ("FCS" for short). Last November Fleming[1] asked Plaintiff to produce his software, both the 1993 version at the heart of the liability issues as well as the current version for comparative purposes relevant to damages analysis. Plaintiff refused, instead raising a series of makeweight objections about confidentiality and protective order issues. Plaintiff then chastised Fleming for demanding the software at all and suggested that Fleming should simply use the software that was produced in the previous litigation. But when Fleming agreed to

---

[1] Fleming's liabilities in this lawsuit have been assumed by the Post-Confirmation Trust, a trust created by the Debtors' Amended and Official Committee of Unsecured Creditors' Third and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and its Filing Subsidiaries under Chapter 11 of the United States Bankruptcy Code and the Post-Confirmation Trust Agreement dated August 19, 2004. The PCT is responsible for and has the power to administer certain post-confirmation responsibilities under the Plan.

do so, Plaintiff reversed course and insisted Fleming couldn't do so. Even in the face of an April 12 order from the Discovery Master to produce both versions of his software, Plaintiff still refused.

On April 20 Plaintiff moved for summary judgment against all Defendants on all counts. Apparently only then did he realize that he was unlikely to win summary judgment without allowing the Defendants to inspect the 1993 Freight Control Software at the center of his copyright claims or, for that matter, specifically identifying any of the "no less than 30" programs allegedly comprising his trade secret claim. Then, after stonewalling Defendants for months, Berry produced the 1993 FCS two days <u>after</u> moving for summary judgment. Then the following day -- after having the source material for over a year -- he sent a list of "suspect files" bearing on his trade secret claims, and presumably his infringement claims as well.

The list contained quite a few more than thirty files. In fact, the list contained the names of **over 23,000** files. Exs. A (write-up entitled "File Name Identification"), B (326 page list entitled "Suspect File Listing").[2] Berry concedes that "I suspect that the majority of the 23,242 records are not my Intellectual Property but they were scooped up as part of the collection criteria I [used]." Ex.

---

2 All "Ex." citations are to the exhibits to the concurrently-submitted Supporting Declaration of Damian D. Capozzola.

A, p. 2. He then proposes that Defendants direct their attention to the roughly 400 files contained in the first seven pages of his 326 page report "that are most likely my Intellectual Property" and otherwise hunt and peck through the 7,300 or so records of the 23,000 that contain keywords making them "prime suspects for further examination." Ex. A, p. 2.

As for the current version of Berry's program, "2003 FCS," Berry has simply refused to produce it. Berry has previously testified that the new version is "radically different in many ways and much improved" from 1993 FCS. But now that he understands how that reality may adversely impact his damages in the present case, he is doing everything he can to keep 2003 FCS shrouded in mystery. In the meantime, Berry is actually using the 2003 FCS every day to manage freight for Y. Hata, another company here in Hawai'i to whom he has licensed that software.

Because of Berry's refusal to produce these items, Plaintiff's May 31 hearing date and the current briefing schedule is procedurally unworkable. Plaintiff's actions have materially prejudiced Fleming's ability to respond to Plaintiff's summary judgment motion. Fleming therefore invokes F.R.C.P. 56(f) and asks the Court to continue the briefing and hearing dates to dates coordinated with the recent and forthcoming case schedule adjustments from Magistrate Kobayashi and Special Master Matsui and with Fleming's own contemplated

summary judgment motion. Fleming further requests that briefing and hearing on this motion be expedited so Fleming can have resolution on this issue with ample time to spare before its current response date of May 9.

## ARGUMENT

### A. Rule 56(f) Authorizes The Requested Relief.

Where the non-moving party cannot adequately respond to a summary judgment motion, the court may deny the motion or continue the hearing to allow additional discovery or make such other order as is just. F.R.C.P. 56(f). The non-moving party may invoke Rule 56(f) to make a stand-alone request for continuance prior to responding substantively. *Burlington N. Santa Fe Railroad Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773-774 (9th Cir. 2002); W. Schwarzer et al., *Federal Civil Procedure Before Trial*, ¶ 14:112 (2005) (party opposing summary judgment may file a motion for a continuance of the summary judgment hearing pending completion of the additional discovery). The party moving for the continuance must establish a likelihood that controverting evidence may exist as to a material fact, the reasons why such evidence currently can not be presented, and how such evidence will be developed. *Id.* at ¶ 14:114.

**B. Plaintiff Has Prevented Defendants From Developing Evidence Necessary To Oppose Material Aspects Of Plaintiff's Motion, So The Briefing Schedule Must Be Revised.**

**1. Plaintiff did not cooperate in discovery.**

Plaintiff alleges that the Defendants, and Fleming in particular, have infringed his copyrights in his 1993 Freight Control System in two principal ways. First, during the period from April 1, 2003 to June 9, 2003, he contends that Fleming used an infringing derivative of his software when it reverted to what it thought was the original version that it had a license to use. Second, he contends that the Excel spreadsheet based system Fleming implemented as of June 9, 2003 and C&S uses today incorporates copyrightable aspects of his software and thus is also an infringing derivative of his software. Berry's trade secret claim, for its part, alleges that Fleming illegally transferred to C&S numerous programs created by Mr. Berry.

Over five months ago Fleming propounded discovery on Berry seeking an electronic copy of the 1993 FCS and the 2003 FCS. Berry responded with a long list of objections and did not produce the software. Ex. C. Negotiations proved fruitless and Fleming moved to compel on February 4, 2005. Ex. D. Berry implied there was no need for Fleming to have the old software again because it should have a copy from the prepetition case, but when Fleming agreed to use that copy Berry claimed Fleming had no right to do so. Exs. E, F. As for the current

version of the software, Plaintiff contends it is not possible for Berry to produce it; in reality, it should be a simple task to simply copy Plaintiff's drive and allow Fleming's expert to inspect that. *See* Supporting Declaration of Martin G. Walker, ¶ 5.

On April 12 the Discovery Master finally ordered Berry to produce the 1993 FCS as well as the 2003 FCS, which Fleming needs to examine to construct its damages analysis given Berry's previous testimony that 2003 FCS is "radically different in many ways and much improved" over 1993 FCS. Ex. M (Berry deposition) at pp. 29:14-29:18, Ex. N (April 12 Order). Berry chose instead to prolong his game of keep-away, refusing to produce **any** of the software pending his appeal of the order to Magistrate Kobayashi and now to this Court. Berry had similarly refused to specifically identify the files that he claimed had been improperly transferred to C&S, instead referring Fleming to a Declaration from Mr. Berry describing "categories" of such material and to material Berry had provided exclusively to the Discovery Master. Exs. G (Berry discovery responses, Nos. 13, 18), H (excerpt from Berry affidavit).

Discovery Master Matsui and Magistrate Judge Kobayashi clearly understood how Plaintiff's actions prejudiced Defendants and their impact on the case management schedule as it currently existed, and the deadlines began to unravel. In particular, Magistrate Judge Kobayashi determined that the Defendants

would need more time to complete their expert reports and that the dispositive motion deadline may need to slip as well. Ex. I (April 15, 2005 Minutes). At her direction, the parties submitted proposed schedules to Discovery Master Matsui on April 19. Fleming and Berry submitted their respective proposals, and Discovery Master Matsui convened a conference on Friday, April 22. Ex. J.

With the handwriting now clearly on the wall, on the eve of that discovery conference (and after business had closed in Los Angeles) Berry for the first time unequivocally agreed to produce the 1993 FCS to Fleming for review by its expert, and immediately shared this news with the Discovery Master. Exs. K, L (Hogan e-mails 4/21/05, 6:59 and 7:24 pm). At the discovery conference Fleming raised other outstanding discovery due from Berry, including his failure to identify the files he had issues with. Discovery Master Matsui ordered the parties to further meet and confer on this and bring a motion if necessary. The next day Berry produced his list of over 23,000 files. Exs. A, B.

**2. Fleming needs ample time to review the materials.**

Fleming needs to have its expert analyze 1993 FCS in detail, as this analysis bears on controverting evidence concerning the copyright infringement and trade secret claims. With regard to the pre-June 9, 2003 copyright claims, by comparing the 1993 FCS against the version Fleming was running prior to June 9, 2003 (which will have to be obtained from Guidance), Fleming's expert may be able to

establish that the modifications were de minimis. If so, Berry's copyright claim would fail. It is a fundamental legal maxim that *de minimis non curat lex* -- the law cares not for small things. This principle applies to copyright law with full force: "trivial changes and inconsequential modifications" do not create derivative works, because to qualify as a derivative work "the changes must be such that the work itself has been recast, transformed, or adapted and new expression created." R. Nimmer, *The Law of Computer Technology*, § 1.104 (Derivative Works and Personal Modifications) (2004). The Ninth Circuit follows this view. *See, e.g.*, *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 721 (9th Cir. 1984) (derivative work has been created at "that point at which the contribution of independent expression to an existing work effectively creates a new work for a different market . . ." (internal quotes omitted)).

Similarly, Fleming's expert needs to review 1993 FCS and compare it to the spreadsheets Fleming used after June 9, 2003. Fleming's expert will be looking to see what if any elements of FCS were transported into the spreadsheets and, if so, whether any of such elements demonstrate original expression. These opinions may provide Fleming with the factual predicates necessary to argue that the spreadsheets do not constitute infringing derivatives. *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 347-349 (1991) (no copyright in data); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.

1994) (only original expression of idea can be copyrighted).

As to trade secrets, assuming for the sake of argument that Berry has satisfied his obligation to specifically identify the trade secrets at issue,[3] Fleming's expert now apparently needs to examine over 23,000 files to determine whether they can possibly qualify as trade secrets instead of being, for example, things generally known in the industry or otherwise irrelevant to the case. *Compare* Haw. Rev. Stat. § 482B-2 (definition of "trade secret" excludes things generally known). To the extent these files do not currently exist on the C&S systems it will be necessary to obtain them from Guidance.

Finally, and similarly, Fleming may also move for summary judgment or adjudication on certain issues pertaining to damages. Plaintiff's "hide the ball" routine on 2003 FCS has prevented Fleming from developing the evidence and arguments it needs in this regard. The Court should not reward Plaintiff's dilatory tactics.

In sum, if Berry had provided 1993 FCS back in December, when he should have, Fleming could have been analyzing 1993 FCS against the post-June 9, 2003 spreadsheets and against the pre-June 9, 2003 changes already in the record as well as preparing for the comparison with whatever may be obtained from Guidance.

3 *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) ("a plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing they exist").

But under the circumstances, it is entirely unrealistic to think that Fleming's expert can fully and intelligently analyze the software in time for Fleming to incorporate the results into Fleming's summary judgment opposition. The trade secret problem is even more compelling. Berry has had the Guidance "after image" for more than a year. Only in the last few days has he claimed that 23,000 files contain "evidence of [Berry's] work," even as he acknowledges that most of them are likely not his intellectual property. Exs. A (at pp. 1-2), B. It is obvious that there is no way Fleming's expert can analyze 23,000 files, or even 7,700 files, in time for that analysis to support a response due on May 9. Walker Decl. ¶¶ 3-4. Fleming's expert, once given ample time, will review the materials and offer opinions that Fleming may incorporate into its case. Walker Decl. ¶ 2; Capozzola Decl. ¶ 14.

* * * * *

Fleming therefore asks the Court to exercise its inherent power to control its calendar and continue the briefing and hearing on this matter to consolidate them with the summary judgment motion that Fleming intends to bring after its expert has had time to analyze the applicable materials. This Court has already asked Magistrate Judge Kobayashi to consider moving the dispositive motions cutoff. Fleming has asked for a July 1, 2005 cutoff for dispositive motions. This should be the date for Fleming to submit its opposition papers to the present motion as

well. Berry should then have fifteen days to submit his reply on his motion and opposition to Fleming's motion, and Fleming should have nine days to submit its reply in support of its motion, all in advance of a consolidated hearing date more than thirty days before trial in compliance with Local Rule 7.3. Finally, given the tight time constraints otherwise applicable to Fleming's response to Berry's summary judgment, Fleming is concurrently applying ex parte for an order shortening time on the proceedings for this motion. Plaintiff does not oppose shortening time as Fleming has proposed.

DATED: Honolulu, Hawaii, April 27, 2005.

KOBAYASHI, SUGITA & GODA

LEX R. SMITH
ANN C. TERANISHI
ANNE E. LOPEZ

Attorneys for Defendant
FLEMING COMPANIES, INC.
(POST-CONFIRMATION TRUST)

KIRKLAND & ELLIS LLP

ERIC C. LIEBELER
DAMIAN CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant
FLEMING COMPANIES, INC.
(POST-CONFIRMATION TRUST)