IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) **DECLARATION OF MARTIN G.** |
| vs. | ) **WALKER IN SUPPORT OF** |
| | ) **RESPONSE OF PCT TO PLAINTIFF** |
| | ) **WAYNE BERRY'S MOTION** |
| HAWAIIAN EXPRESS SERVICE, | ) **RECONSIDERATION OR IN THE** |
| INC., et al., | ) **ALTERNATIVE RULE 60(b)** |
| | ) **RELIEF FOR FRAUD ON THE** |
| Defendants. | ) **COURT** |
| | ) |

Hearing Date and Time:  February 24, 2006

Judge:  Honorable Susan Oki Mollway

Trial Date:   February 28, 2006

## DECLARATION OF MARTIN G. WALKER

I, Martin G. Walker, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief:

1.      I graduated in 1973 from the Massachusetts Institute of Technology with a Bachelor of Science Degree in Electrical Engineering.  I then attended Stanford University where I received a Masters Degree in Electrical Engineering in 1976 and a Doctorate in Electrical Engineering in 1979.  After various experiences in the business world I am now a technology consultant and expert witness with more than twenty-five years of high-level experience in areas such as computer software and internet applications.  Focuses of my practice include intellectual property litigation support, computer forensics, and trade secret theft.

2.      I have been retained by the Post-Confirmation Trust for Fleming Companies, Inc. to examine certain software and related documents and, if possible, render opinions on certain topics in the above-entitled action.

3.      Attached as Exhibit A to this Declaration is a true and correct copy of my February 17, 2006 supplemental report in this matter, which responds to various assertions made by Berry in his February 10, 2006 Motion for Reconsideration or in the Alternative Rule 60(b) Relief for Fraud on the Court.  It contains a true and correct statement of my supplemental opinions based on the materials reviewed and my understanding of the case to that point.

Executed at Palo Alto, California on February 17, 2006.

Martin G. Walker

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

Berry v. HEX, et. al.

Case No.  CV03 00385 SOM-LEK

**Rule 26(A)(2) FIFTH SUPPLEMENTAL EXPERT REPORT OF
MARTIN G. WALKER, PH.D**

I, Martin G. Walker, Ph.D., provide the following supplemental expert report:

1.      I have been retained as an expert consultant by the Post-Confirmation Trust for Fleming Companies, Inc.  I have been asked to review certain documents, electronic files, declarations and memoranda regarding Plaintiff Wayne Berry's Motion for Reconsideration or in the Alternative Rule 60(b) Relief for Fraud on the Court, and, if possible, render opinions relating to these papers.  This report is based on my personal knowledge and experience as well as my investigation in this matter, and reflects my expert opinions on certain issues to which I could testify if asked.

## I.      SUMMARY OF FINDINGS.

2.      I found that the facts do not support Berry's arguments, which are based on incompetent forensic analysis.

3.      I received a copy of a database retrieved from storage sent to Berry.  I will refer to this database as the "Stored Copy Database."  I compared it to an electronic snapshot of the database produced by the PCT to Berry in September, 2005 on the "Before" images.  I noted that the snapshot was last written on May 22, 2003.  Thus I will refer to this database as the "May 22, 2003 Database."  I compared the copyrighted elements of these databases as well as the data contained in the databases (which are not copyrighted). I found that these databases were identical in that they had the identical structure, identical copyrightable elements and contained identical data.

4.      I found Berry's purported "analysis" of the differences between the two databases to be badly flawed.  If Berry had wanted to demonstrate that the Stored Copy Database represented new information, he should have compared the copyrightable structure to the May 22, 2003 Database.  Had he done that, he would have determined that the databases were identical. Instead, Berry's lawyer compared the Stored Copy Database to the 1993 FCS database that was known to be different.  Not surprisingly, Berry's lawyer found differences between the databases. The analysis performed by Berry's lawyer caused thousands of false positive for "differences" between the two databases to appear.  In addition, Berry's lawyer counted as "differences" additions of data which have nothing to do with any copyrighted elements of the database.  No

forensic data expert would draws the conclusions put forth by Berry based on the analyses put forward by Berry's lawyer.

5.    Finally, I could find no analysis that exclusively depended on the additional files produced in January, 2006. The only reference to these files made by Berry is to the unallocated cluster file produced in January. Berry claimed that there are 10 copies of the database in the unallocated cluster. Berry is wrong. There are only fragments of databases, not complete databases. Further, there is no evidence as to when or how these fragments were created. Further, these fragments were found in the unallocated clusters, which by definition are not active files. Thus Berry has not presented evidence of actual infringement.

## II.    MATERIALS REVIEWED.

6.    In addition to the material detailed in previous expert reports, I reviewed Berry's Motion for Reconsideration or in the Alternative Rule 60(b) Relief for Fraud on the Court (the "Motion for Reconsideration"), accompanying Declaration of Hogan (the "Hogan Declaration") , a CD containing a copy of an Access database that I understand had been in off-site storage (the "Stored Copy Database"), and various computer programs referenced in the Hogan Declaration. I also reviewed a copy of the files from the "Before Images" as produced to Defendants, a hard drive produced by Berry that Berry represented contained the files from the Guidance "Before Images" that Berry received in September, 2005 (the "September 2005 Before Image"), and the list of "Suspect Files" created by Berry.

## III.    SUMMARY OF MY ASSIGNMENT.

7.    I was asked to review and analyze the allegations made in Berry's Motion for Reconsideration and allegedly supported by the Hogan Declaration. To the extent possible I was asked to provide any opinions regarding the reliability and veracity of these allegations.

## IV.    BACKGROUND

8.    One can think of a database as a collection of Excel worksheets. Each worksheet is called a "table." The columns are called "fields." Data are stored in rows. The copyrighted elements are the structure of the database. "Structure" refers to the name and organization of the tables and the relations, if any, among the tables. For the purposes of comparing databases, then,

it makes sense to compare the structure of the databases. Further, since Berry has alleged that the databases may have been used after June 9th, it also made sense to compare databases based on the data that is contained in the tables. Two databases are identical if they both have the same structure and the same data.

9.      The Original Logistics Data database, which was being used in the April, 2003 to June, 2003 timeframe, by its very nature changes over time. Specifically, data are added to the database during normal activities. For example, information regarding new orders and shipment dates can be added. It is possible to freeze-frame the database my making a copy of the database. Such a copy is often referred to as a "snapshot." For instance you can make a snapshot of a database on one day, and a second snapshot a few days later. Details between these two snapshots may change, but the structure of the database (and therefore the copyrightable content) will stay the same.

## V.    THE STORAGE-COPY DATABASE

10.     On February 7, 2006, I received a CD containing a file named "ORIGINAL LOGISTICS DATA.MDB." I term this file the "Storage-Copy Database". I was asked to examine this file and determine if it had been previously produced to Berry in this matter. I first created a list of previously produced snapshots of the Original Logistics Data Database. This list is attached a Exhibit A to this Declaration. It shows that 23 snapshots of this database were provided to Berry. In examining the Stored Copy Database, I determined that the file size was 89,987,072 bytes. I further determined that the file was last written on May 9, 2003. I reviewed files from the previously produced "Before" images looking for an Access database file that matched these criteria. I found a file with a matching name, and matching file size. The file created date on both files was May 9th 2003, although the "last written" date on the previously produced file was May 22, 2003. I then analyzed the Storage Copy Databases and the previously produced database in detail to determine if the copyrighted structural elements and the data contained in these databases were identical.

11.     As mentioned above, the first issue I investigated was to determine if the *structure*

of the two databases were identical. Thus I examined the tables, table names, fields, and field names in every table, as well as the relations among the tables. I determined that these two databases did indeed have identical structure. Next I confirmed that these databases contained identical *data*. I analyzed each table by counting the number of records in each table, and noting the first and last records in each table.[1] Using this methodology, I found that both of the databases in question had identical data. Thus, I concluded that the two databases were identical.

12.     I next determined when the PCT had produced this file to Berry. I examined the files on the September Before Image. I confirmed that the May 22, 2003 Database was included in the files that were produced to Berry in September, 2005. Further, in an email sent to Berry's counsel, he was informed that the previously produced database was identical in structure and in data to the storage copy and had been in his possession since September, 2005. Mr. Berry's counsel was asked to identify any difference in copyrighted elements or data and I have seen no such identification in correspondence. I have reviewed the Berry Motion for Reconsideration as well as the attached Declaration of Hogan, and I can find no such analysis. Indeed I could not identify any relevant aspect of the database analysis presented in Berry's Motion for Reconsideration that relied specifically on the Storage Copy database.

13.     Additionally, I was asked if I could determine when the email attached as Exhibit 7 to the Hogan Declaration was produced by the PCT. I confirmed that the referenced email was in a file called "Inbox.dbx" that was included in the Before image produced to Berry in September, 2005.

## VI.    BERRY'S ALLEGED DATABASE ANALYSIS

14.     Exhibit 11 of the Hogan Declaration supposedly contains a comparison of two databases. Berry's lawyer conducted this analysis and argues that it supports the statement that "the resulting number of unauthorized infringing changes far exceeds 3,000." Berry's lawyer is

---

[1] This sampling methodology is does not examine every intermediate record for change, but is reasonable and valid for these purposes. First, the general practice was to add records, not delete records, thus my methodology would have detected any normal changes to the database. Second, the underlying data are not really at issue in this matter, only the use of the database and the structure of the database. Thus my methodology detects any of these differences and thus is appropriate for this purpose.

wrong. In fact, the vast majority of the alleged "unauthorized infringing changes" identified by Berry's lawyer are, in fact, artifacts of his attorney's improper analysis. Most of the rest of the changes are merely evidence that data was being loaded into the database. The remaining few changes are consistent with the previous conclusion of the Court that there were differences between the original 1993 FCS which Fleming had a license to use and the version used in the April-June time period which Mr. Dillon had tried but failed to return to the licensed version.

15.    A proper analysis of the databases at issue would involve an expert carefully studying these databases, identifying the *structure* of the underlying databases and then comparing them. Based on the description of the "analysis" in the Hogan Declaration, Berry's attorney attempted to short-circuit this analysis through the use of an automated tool operated by a lay user, namely Berry's lawyer. Since proper analysis of the databases at issue can be a difficult task, it is not surprising that an inexperienced user was not able to properly perform this analysis. It is not even surprising that the output of the tool produced such nonsense. This section will detail some of the errors made by Berry and the resulting impact on his erroneous conclusions.

16.    However, as an initial matter, I should note that Berry's counsel did not compare the Storage Copy database with previously produced snapshots. If someone wanted to determine if a database had previously been produced or was different from what had previously been produced, such an analysis would be essential before drawing any conclusion about whether information had been disclosed or withheld. Instead, Berry's lawyer attempted to compare Storage Copy Database with the electronic version of the Berry 1993 FCS database. It is undisputed that there are differences between these databases. It is unsurprising that any tool would note such differences since Fleming did not successfully return to the original version as it tried.

17.    I examined the fatally flawed methodology used by Berry's lawyer to perform the comparison he did. As a threshold issue, I note that Berry's lawyer identified one database as "Converted to 2000\ORIGINAL LOGISTICS DATA CONVERTED FROM

CAPOZZOLA.mdb." I have found no evidence that this file was provided to Berry by the PCT. The name of the file provided by the PCT is "ORIGINAL LOGISTICS DATA.MDB." The file provided by the PCT is in Access 97 format. Thus it appears that Berry's lawyer did not even compare the file produced by the PCT, but rather compared a different file. Although Berry's lawyer did not so state, it appears likely that he converted the file to Access 2000 format in order to facilitate his comparison. According to the Hogan Declaration, the program used to perform the comparison is "Total Access Detective." Berry's lawyer further identified the program as "Total Access Detective 2003." According to the manufacturer of Total Access Detective, you must use Total Access Detective 97 to compare Access 97 databases. Thus Berry's lawyer had to convert the Storage Copy Database into Access 2000 format, with disastrous results. As will be detailed below, this conversion appears to have introduced the vast majority of the changes reported in Exhibit 11 to the Hogan Declaration.

18.     As best as can be gleaned from the Hogan Declaration, the following procedure was used to compare the database files:

- The file provided by the PCT was converted to Access 2000 format;

- The files were loaded into Total Access Detective;

- Total Access Detective produced a report; and

- Berry's attorney attached the report to his declaration without any analysis or consistency checking.

19.     I have examined the report attached as Exhibit 11 to the Hogan declaration. I found that the report contains thousands of false positives. That is the report lists thousands of possible differences between the two databases that are simply explained as artifacts of the process. In particular, the conversion process mentioned above introduced numerous errors. Consider for instance the first page of the detailed report (on page 4 of Exhibit 11). There are 9 differences listed under "Object Type Forms." The last updated time stamps merely indicate that Berry's Attorney converted the database on February 6, 2006. Thus these are reported as

differences although they are completely unrelated to differences in the copyrightable elements of the databases. Similarly the DateCreated entries merely reflect that the database was saved on May 9, 2003, which is the date of the snapshot of the stored database, and is also unrelated to any copyrightable element. There are pages of discrepancies that reflect queries, which are also completely unrelated to alleged unlicensed usage by Fleming. In fact, due to the thousands of false positives, I am unable to determine if there are *any* examples in this report of actual differences in copyrightable elements.

20. Berry's attorney comments is his declaration that Total Access Detective "operates almost as easily as a WordPerfect document compare." This statement illustrates the naïveté of his approach to the task of database comparison. Although a real expert might start with a tool such as Total Access Detective, he or she would examine the results carefully before relying on them to form an opinion and including them in an expert declaration. I would expect that an expert performing an industry accepted analysis would have inspected the output of this program, and realized that there were thousands of false positives that would make reliable conclusions problematic. At this point, an expert would disregard the output of Total Access Detective as not being appropriate for this task and turn to another method to evaluate the differences between the databases.

## VII.  THERE ARE NO COMPLETE COPIES OF FCS LOGISTICS DATA IN THE UNALLOCATED SPACE OF THE 136 DRIVE

21. Unallocated clusters are a collection of the sectors of a disk drive that are not allocated to any current active file. I understand that the 136 computer was used by Mr. Dillon to maintain the operational database, and that he commonly performed such tasks as creating scripts to import and export data from the database, and trying to recreate the original FCS database. It is also likely that Mr. Dillon would have performed other routine maintenance such as defragmenting his disk drive. These operations would create copies of Access database header information in the unallocated space of the drive. As such it is entirely unsurprising that there would be remaining fragments of such databases in the unallocated space. Mr. Berry's attorney was able to use a forensic, WinHex, to detect these fragments. However, much of the forensic

conclusions that Berry's attorney reaches regarding these issues are simply wrong.

22.     First, Berry's attorney claims to have "found no less than 10 copies of Mr. Berry's FCS Logsitics Data.mdb." I used WinHex to extract file fragments from the same unallocated clusters. I found that there are no complete copies of any database in the files created by the WinHex forensic recovery tool and identified by Mr. Berry's attorney in Exhibit 9. In fact I could not find even one of these database fragments that had any data! That Mr. Berry's attorney claims to have found such copies is another example of an inexpert analysis by Mr. Berry's attorney.

23.     Next Mr. Berry's attorney argues that these databases were "deleted on or about the time the Guidance did its 'forensic' work." Based on my experience, assigning dates to fragments in the unallocated space requires sophisticated, subtle, and time consuming analysis, since the normal file metadata (i.e. "File Created," "Last Written," etc) is not maintained for such file fragments. I am not surprised that I found no evidence of such analyses in the Hogan Declaration, because it requires a high level of expertise to perform. But without such analysis, it is impossible to determine when these fragments were created. These fragments could have been created at any time after this computer was placed in operation months or even years before the disks were imaged by Guidance in July, 2003.

24.     Finally, Berry makes more argument unsupported even by the unreliable Hogan Declaration that these fragments were created "in a manner that would not leave a copy in the Windows Recycler." I am aware of multiple means that these fragments could appear in the unallocated space without being left in the recycler[2]. For instance it is possible that merely running a disk defragmentation could create multiple copies of database fragments. Any competent expert performing an industry accepted analysis would need to carefully examine the drive before leaping to conclusions regarding these fragments.

VIII.    FILES IN EXHIBIT 10 WERE PRODUCED IN SEPTEMBER, 2003

---

[2] In fact the fragments would not be in the unallocated space at all if they were in the recycler since files in the recycler are still active files.

25.     I have examined the list of files included in Exhibit 10 to the Hogan declaration. I compared these files to the list of file produced by the PCT in September, 2005. All of these files were produced September, 2005. Further I note Berry argues that Exhibit 10 "evidences that over ten copies of this software [Original Logistics Data.mdb] was modified and therefore copied in the period after March 31, 2003." In point of fact, there are no copies of Original Logistics Data.mdb listed in Exhibit 10, so I fail to see how Exhibit 10 supports Berry's argument.

26.     Mr. Berry's attorney made several errors in compiling this list of files. First, he did not verify that the files on his list were actually changed on the date indicated in the "Date Modified" column.[3] I also examined the content of files listed in Exhibit 10. I found that that 13 of the files listed were not actual files, but links to other files. Mr. Berry's attorney apparently forgot to exclude such files from his analysis. In addition, none of the files with the term "Screens" in the file name contain identified copyrightable elements. In summary Mr. Berry's attorney did not present evidence that any of these files were modified after March 31, 2003.

## IX.    BERRY MISREADS FINDINGS IN MY EXPERT REPORT

27.     Berry argues that I claimed "that the real Berry FCS Logistics Data.mdb and Original Logistics Data.mdb were nearly identical." Berry is wrong. I note that Berry didn't provide a citation to my report to support his argument. Here is the relevant paragraph:

> 41. I next investigated the substance and magnitude of these modifications. First of all, it is important to note that the Berry 1993 FCS contains 1334 fields. The seven additional fields identified by Berry thus represent an insignificant extension: on a numerical basis, 7 differences out of 1334 total fields yields the conclusion that the databases are 99.5% identical. Further, I understand the function of these added fields is merely ancillary to the operation of the database.

28.     Thus it is clear that I was pointing out that Berry had only identified 7 infringing elements. I did not opine that the databases were identical, only that the 7 identified fields were "an insignificant extension."

---

[3] There are many actions that might cause the "Date Modified" to not reflect the last time changes were made to a file. As a simple example, merely opening certain files, then quitting out of the application may yield the message of the form: "Do you want to save?" Selecting yes will set the Date Modified to the current date, but it does not indicate that any changes were made. Proper expert analysis involves independent determination of the last date changes were made to a file. This step can be time consuming and requires a level of expertise in excess of a casual user such as Mr. Berry's lawyer.

## X.  THERE ARE NO COPIES OF ORIGINAL LOGISTICS DATA ON THE 'AFTER' IMAGE

29.    I reviewed the contents of the "after images" produced by Guidance.  I found no copies of the "Original Logistics Data.mdb" database on after image.

## XI.   CONCLUSION

30.    My principal conclusions in this report can be summarized as follows:

- the Stored Copy database is duplicative of other databases produced by the PCT;

- Berry has not identified any differences between copyrightable elements of the Stored Copy database and the May 22, 2003 database;

- there are no complete copies of any database in the unallocated clusters; and

- I am unable to identify any argument that stands on material produced to Berry after September, 2003.

Dated: February 17, 2006

_Martin G Walker_

MARTIN G. WALKER, PH.D.

# Snapshots of "Original Logistics Data" produced to Berry

The following snapshots were produced to Berry on the 'before' images in September, 2005:

```
1.  Suspect Files - Before Exported/Computer 02 FHL 142/FCS Logistics Data Original.mdb
2.  Suspect Files - Before Exported/Fleming Computer 07 FHL 136/FCS Logistics Data
    Original.mdb
3.  Suspect Files - Before Exported/Server FHL•D/FCS Logistics Data Original.mdb
4.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - COMPACTED
    AGAIN.MDB
5.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - COMPACTED.MDB
6.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompacted 2.MDB
7.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompacted.MDB
8.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompacted1.MDB
9.  Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompacted2.MDB
10. Suspect Files - Before Exported/Server FHL•D/Original Logistics Data - Precompacted3.mdb
11. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompacted4.MDB
12. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA - Precompated.MDB
13. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA 033103.MDB
14. Suspect Files - Before Exported/Server FHL•D/Original Logistics Data Interrupted
    Split.mdb
15. Suspect Files - Before Exported/Server FHL•D/Original Logistics Data x.mdb
16. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA.MDB
17. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA.MDB.ORG
18. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA1.MDB
19. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA2.MDB
20. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA3.MDB
21. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA4.MDB
22. Suspect Files - Before Exported/Server FHL•D/ORIGINAL LOGISTICS DATA5.MDB
```

The following snapshot was produced to Berry on a CD attached as Exhibit B to my Second Supplemental Expert Report dated July 22, 2005:

```
23. ORIGINAL LOGISTICS DATA.MDB
```

# Walker Decl Exhibit A