KOBAYASHI, SUGITA & GODA
LEX R. SMITH                    3485-0
THOMAS H. YEE                  7344-0
SUITE 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 539-8700
Fax No. (808) 539-8799
Email: lrs@ksg.law.com

KIRKLAND & ELLIS LLP
Eric C. Liebeler (CA Bar No. 149504)
Damian Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA  90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: eliebeler@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., et al.,<br><br>Defendants. | CIVIL NO. CV03-00385 SOM-LEK<br>(Copyright)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT PCT'S MOTION IN LIMINE TO EXCLUDE THOMAS UENO**<br><br>Judge:          Hon. Susan O. Mollway<br>Trial Date:     February 28, 2006<br>Hearing Date:  February 24, 2006 |

i

# TABLE OF CONTENTS

I.     Introduction ..................................................................................................1

II.    Procedural Foundation for the Motion.............................................................2

III.   Ueno's Supplemental Report Supersedes His Previous Report and Therefore
       Limits His Testimony on License Fees and Profits. .......................................6

IV.    Ueno's Supplemental Report on Charges to Third Parties Stands on an
       Improper Methodology which Ueno Applies Incorrectly...............................6

A.     The Court Has a Duty as a Gatekeeper to Prevent Jury Confusion and
       Determine Reliability of Expert Testimony. .......................................7

B.     Federal Rule of Evidence 702 Requires That Expert Testimony Stand on
       Reliable Application of Scientific Principles to Sufficient Facts or
       Data.....................................................................................................9

C.     Ueno's Opinions Do Not Meet the Standards of F.R.E. 702........................10

D.     Ueno's Method is Flawed in Execution and Premise. ...................................12

E.     Ueno's License Fee Calculation is Unreasonable.........................................14

F.     Mr. Ueno's Opinions Will Confuse the Jury. ...............................................16

V.     Conclusion.................................................................................................17

# TABLE OF AUTHORITIES

## Cases

Adams Apple Distr. Co. v. Papeleras Reunidas, S.A.,
  773 F.2d 925 (7th Cir. 1985) ..................................................................................10

Agent Orange Prod. Liab. Litig.,
  611 F. Supp. 1223 (E.D.N.Y. 1985) ....................................................................15

Argus Inc. v. Eastman Kodak Co.,
  612 F. Supp. 904 (S.D.N.Y. 1985) .........................................................................8

Cabrera v. Cordis Corp.,
  134 F.3d 1418 (9th Cir. 1998) ................................................................................10

Daubert v. Merrell Dow Pharm., Inc.,
  43 F.3d 1311 (9th Cir. 1995) ......................................................................... 7, 14

Daubert v. Merrell Dow Pharm., Inc.,
  509 U.S. 579 (1993) ................................................................................. passim

Domingo ex rel. Domingo v. T. K. M.D.,
  289 F.3d 600 (9th Cir. 2002) ....................................................................................8

Guidroz-Brault v. Missouri Pac. R.R.,
  254 F.3d 825 (9th Cir. 2001) ................................................................................10

Hangarter v. Provident Life & Accident Ins. Co.,
  373 F.3d 998 (9th Cir. 2004) ....................................................................................8

Jack v. Glaxo Wellcome, Inc.,
  239 F. Supp. 2d 1308 (N.D. Ga. 2002) ...............................................................14

Kumho Tire Co. v. Carmichael,
  526 U.S. 137 (1999) ................................................................................................10

McGlinchy v. Shell Chem. Co.,
  845 F.2d 802 (9th Cir. 1988) ................................................................................16

Mukhtar v. California State Univ., Hayward,
  299 F.3d 1053 (9th Cir. 2002) ..................................................................................7

Oiness v. Walgreen Co.,
  88 F.3d 1025 (Fed. Cir. 1996) ................................................................................16

Paoli R.R. Yard PCB Litig.,
  35 F.3d 717 (3d Cir. 1994) ....................................................................................14

Real Estate Value Co. v. USAir, Inc.,
    979 F. Supp. 731 (N.D. Ill. 1997)..........................................................................16

Rebel Oil Co., Inc. v. Atlantic Richfield Co.,
    146 F.3d 1088 (9th Cir. 1998).............................................................................13

Shaw by Strain v. Strackhouse,
    920 F.2d 1135 (3d Cir. 1990)..............................................................................11

Tyger Constr. Co. v. Pensacola Constr. Co.,
    29 F.3d 137 (4th Cir. 1994).................................................................................10

United States v. Alatorre,
    222 F.3d 1098 (9th Cir. 2000)...............................................................................8

United States v. City of Miami, Fla.,
    115 F.3d 870 (11th Cir. 1997).............................................................................10

United States v. Kiewit Const. Co.,
    No. A99459CVJWS, 2005 WL 1277953 (D. Alaska, Jan. 3, 2005).....................3

United States v. Williams,
    95 F.3d 723 (8th Cir. 1996).................................................................................10

## Other Authorities

4 M. Nimmer and D. Nimmer, Nimmer on Copyright § 14.02[A], 14-12 (2005)..15

## Rules

Fed. R. Evid. 702 ................................................................................. 9, 10

Fed. R. Evid. 702 Adv. Comm. Notes ........................................... 10, 14

Fed. R. Civ. Proc. 26 ……...…………………………………………….6

## I.    Introduction

Wayne Berry mischaracterized Tom Ueno's December 27, 2005

supplemental report as a trial exhibit.  He did so to distract attention from the fact

that Berry and Ueno had been sitting on its underlying data for three months before

disclosing Ueno's supplemental opinions to the defendants only one week before

motions in limine were due.  Thus, as part of its larger motion in limine against all

of Ueno's opinions the PCT objected to Ueno's supplemental report on procedural

grounds only.  The Court denied that motion but ordered Berry to make Ueno

available for a deposition, a deposition which should have happened months

before.

Had Berry produced Ueno's supplemental opinions on a timely basis and

allowed the PCT sufficient opportunity to review the materials and depose Ueno in

advance of the motion in limine deadline, the PCT could and would have made

these additional in limine arguments:

(1)    to the extent Ueno's supplemental report and deposition testimony

supersede aspects of his original report concerning license fees and profits,

the Court should prohibit Ueno from testifying about those aspects; and,

(2)    the Court must exercise its function as a gatekeeper under Daubert and

prevent Ueno from suggesting to the jury damage numbers expressed in his

supplemental report that are wrong -- mathematically, methodologically, and

1

materially wrong -- concerning amounts allegedly charged to third parties

for shipping goods from the mainland to Hawaii.  Allowing these figures to

go to the jury would constitute reversible error.

For these reasons the PCT requests that the Court issue an in limine ruling limiting

Ueno's testimony to license fee and profit opinions expressed in his supplemental

report and prohibiting Ueno from offering supplemental opinions concerning

shipping that are simply devoid of factual foundation.

## II.    Procedural Foundation for the Motion

Ueno's original March 21, 2005 report articulated two summary positions:

(1)    that Fleming owed Berry a license fee ranging from $2,004,891 to

$302,252,571 premised on a "per container" license fee of $1,772 per

container; and

(2)    that Fleming's estimated gross profit margin was "$269 million based on

C&S' pro forma revenues less the industry average cost of goods sold of 83

percent."

Ex. A (Ueno Original Report) at p. 1.

The PCT analyzed this report and deposed Ueno about it on July 22, 2005;

Fleming's attacks on Ueno's positions caused the Court to have "particular

concerns about the admissibility of Ueno's opinion."  Ex. B (10/21/05 Order at

34).  Fearing that the Court would act on its warning, Ueno significantly modified

his opinions in a supplemental report dated and submitted on December 27, 2005.

Ex. C (supplemental report); Ex. H (Ueno deposition transcript at 4:14-4:17).  The

primary basis of his supplemental report was an Excel spreadsheet called Logistics

Data Org.xls.  Ex. C at Att. A, p. 1.  The PCT had produced this spreadsheet to

Berry along with the rest of the Guidance images in mid-September, 2005.  Ex. D

(transmittal letter); Ex. E (picture of Excel icon for Logistics Data Org.xls

submitted at Berry's trial exhibt no. 63).

Calling Ueno's supplemental report a trial exhibit — as Berry did — is

nonsense.  An expert report is not a trial exhibit, or at least may not be offered into

evidence by the party sponsoring the expert.  United States v. Kiewit Const. Co.,

No. A99459CVJWS, 2005 WL 1277953 at *10 (D. Alaska, Jan. 3, 2005) (denying

admission of expert report as a trial exhibit and stating that neither the report at

issue "nor that of any other expert will be admitted in evidence (unless the parties

stipulate to admission)" because "such reports are hearsay").  The only rational

explanation is that Berry feared a damages trial without any expert opinion on

damages given the Court's language in the October 21, 2005 summary judgment

order.  So he asked Ueno to supplement his report with new and drastically

modified opinions based ostensibly on materials received in September, and

withheld the new opinions until one week before motions in limine were due on

January 3, 2006.

Without adequate time to substantively analyze Ueno's new report, especially given the contemporaneous crush of analyzing Berry's other ninety-two trial exhibits and preparing its other motions in limine, the PCT objected to Ueno's supplemental report primarily on procedural grounds.  Ex. F (excerpt from end of previous Ueno MIL).  The Court denied the motion but granted the PCT a deposition of Ueno.  Ex. G (1/20/06 transcript at 35:17-36:25).  When Ueno appeared for his deposition on January 23, 2006 he provided on CD various materials bearing on his expert report.  Ex. H at 6:5-6:16, 52:17-52:23; Ex. I (photostatic copy of CDs).  The PCT obviously did not have time to analyze the materials provided on CD for the purposes of conducting the deposition. Nonetheless, the PCT did what it could under the circumstances to inquire about Ueno's modifications to the opinions previously articulated in his original report:

(1)     the $1,772 per container license fee generated damages to Berry no greater than $2,707,616 (a reduction from his original report of roughly $300 million); and,

(2)     the appropriate net sales figure with which to start calculating recoverable profit is $55 million, a number Ueno he simply accepts from Kinrich, as he must since he never reviewed the supporting financial information that the PCT provided to him twice.  Using this figure yields a reduction of $214 million from his original report.

4

Ex. A (Ueno original report), Ex. C at Attachment A, 1-2 (Ueno supplemental report); Ex. H at 32:6-36:12 (Ueno deposition testimony re not reviewing financial information); Ex. I (correspondence showing financial information was provided to Ueno twice).  Ueno also stated in his supplemental report that Fleming invoiced third parties $2,761,697 during the period in question.  Ueno attributes $1,592,755 of this amount to freight forwarding charges, and the balance ($1,168,942) to shipping allowances.

The balance of this memorandum demonstrates two broad points.  First, having reduced the scope of his license fees and profits opinions by as much as $514 million in his supplemental report, the Court must not allow Ueno to pierce his supplemental report and reach back to the much larger figures expressed in his original report.  The Court should instead cap Ueno's testimony on license fee damages at $2,761,697 and on lost profits at $55 million.  (The PCT of course continues to contend and will prove at trial that even these "reduced" numbers likewise have no basis in reality and that Berry's proper damages, if any, are in the low five figure range).

Second, the procedural background shows that Ueno made material changes and additions to his opinions based on material in Berry's possession since September, and that the PCT did not have a reasonable opportunity to take discovery about the new opinions.  The continuance has allowed the PCT to do so.

5

The concurrently filed report from Jeff Kinrich demonstrates that had the PCT been allowed to do so, the PCT could have demonstrated that Ueno's supplemented opinions are not based on any reliable evidence. His theories and mathematical applications are demonstrably wrong. No reasonable juror could base a verdict on Ueno's calculations, and the Court should not allow the jury to consider them.

### III.    Ueno's Supplemental Report Supersedes His Previous Report and Therefore Limits His Testimony on License Fees and Profits.

In his March 21, 2005 report, Ueno relied upon completely irrelevant financial data. That data was outside the relevant time period and for a different business entity. Ex. A (Ueno Original Report) at Attachment A, 7. His supplemental report uses data from an excel spreadsheet that is at least related to shipments in the correct period of time and from Fleming. Furthermore, in Ueno's newer report he opines about license fee damages at $2,761,697 and on lost profits at $55 million. Ex. C. Because the underlying data in his old report is completely irrelevant, and because his latest opinions supercede his old opinions, the Court should limit Ueno to his new analysis. Fed. R. Civ. Proc. 26(a)(2), 26(e)(1).

### IV.    Ueno's Supplemental Report on Charges to Third Parties Stands on an Improper Methodology which Ueno Applies Incorrectly.

After deposing Wayne Berry's expert, Thomas Ueno, and reviewing the disc

of data he provided at his January 23, 2006 deposition, the PCT has found

numerous errors that make Mr. Ueno's supplemental report unreliable under

Daubert. Mr. Ueno's analysis of the data is wrong in every respect. He is wrong

about the number of containers processed by Mr. Berry's software, the revenue

from freight forwarding invoices to the third parties, and the amounts invoiced to

Kmart and Foodland. He is even incorrect in applying his own methodology. This

Court must do its job in preventing this junk analysis from hitting the jury box.

His opinions are unreliable, and will only confuse the jury.

### A.    The Court Has a Duty as a Gatekeeper to Prevent Jury Confusion and Determine Reliability of Expert Testimony.

The Ninth Circuit **requires** district courts to serve as gatekeepers of reliable

expert testimony and considers it an abuse of discretion not to create a record

suitable for review of its admissibility decision. See Mukhtar v. California State

Univ., Hayward, 299 F.3d 1053, 1064-66 (9th Cir. 2002) (finding reversible error

in admission of expert testimony because "some reliability determination must be

apparent from the record" before the appellate court can uphold the district court's

decision to admit expert testimony). Relatedly, the Ninth Circuit also requires trial

courts to hold a hearing if the opponent to expert testimony shows that the

proposed expert used unsound methods or protocols. Daubert v. Merrell Dow

Pharm., Inc., 43 F.3d 1311, 1319 n.10 (9th Cir. 1995) ("[W]here the opposing

party . . . raises a material dispute as to the admissibility of expert scientific evidence, the district court must hold an in limine hearing . . . to consider the conflicting evidence and make findings about the soundness and reliability of the methodology employed by the scientific experts"); see also United States v. Alatorre, 222 F.3d 1098, 1101-05 (9th Cir. 2000) (stating "that holding such hearings—or at least ensuring an opportunity for voir dire outside the presence of the jury—may be appropriate in certain cases").

The trial court has broad discretion to exclude proposed opinions not conforming to federal standards.  Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (broad discretion both in exercising gate keeping function and in determining how reliability is to be measured); Domingo ex rel. Domingo v. T. K. M.D., 289 F.3d 600, 607 (9th Cir. 2002) (expert testimony properly excluded and summary judgment granted where proposed testimony was not based on objective and verifiable evidence). Indeed, "[i]t is the obligation of a Court to exclude, in limine, exhibits and damage theories which are based on speculation and guesswork, and are not 'sufficiently probative.'"  Argus Inc. v. Eastman Kodak Co., 612 F. Supp. 904, 923 (S.D.N.Y. 1985).

In this case, every number in Mr. Ueno's late-filed supplemental report is wrong, and every error is overstated in his client's favor. Many of his numbers are irrelevant, outside the relevant time period, and are misleading.  In analyzing the

8

approximately 15,000 pages of supporting data he cited, he relied on the wrong

materials and even failed to apply his own methodology consistently. These errors

result in a report that is so wrong and misleading that the PCT requests a

foundational hearing outside the presence of the jury to exclude, in limine, his

opinions if Mr. Ueno chooses not to withdraw the report himself.

> **B.    Federal Rule of Evidence 702 Requires That Expert Testimony Stand on Reliable Application of Scientific Principles to Sufficient Facts or Data.**

An expert's opinions must be relevant, reliable, and must not be unduly

prejudicial. Federal Rule of Evidence 702 states that:

> **If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.**

Cases interpreting this Rule have uniformly held that the evidence "assist the trier

of fact," or in other words, that it be relevant. Daubert v. Merrell Dow Pharm.,

Inc., 509 U.S. 579, 591 (1993).

The rule also demands that the evidence be reliable. See id. at 590.

Rule 702 requires that expert testimony relate to scientific, technical, or other

specialized knowledge, which does not include unsupported speculation and

subjective beliefs. See id.; Guidroz-Brault v. Missouri Pac. R.R., 254 F.3d 825,

830-31 (9th Cir. 2001).  An expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field, and the opinion must be grounded on more than subjective belief or unsupported speculation.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Cabrera v. Cordis Corp., 134 F.3d 1418 1421 (9th Cir. 1998).  Damages calculations cannot be based upon "conjecture or speculation."  Adams Apple Distr. Co. v. Papeleras Reunidas, S.A., 773 F.2d 925, 930 (7th Cir. 1985).

### C.    Ueno's Opinions Do Not Meet the Standards of F.R.E. 702.

Ueno's supplemental opinions are fraught with both factual and methodological errors.  This Court should bar his opinions because Berry has not shown by a preponderance of the evidence that his expert's opinions rest on valid reasoning and methodology.  See Daubert, 509 U.S. at 592 n.10; Fed. R. Evid. 702 Adv. Comm. Notes; United States v. Williams, 95 F.3d 723, 729 (8th Cir. 1996).

The threshold problem is Ueno's flawed assumptions and facts regarding the number of containers, the freight forwarding revenues from third party invoices, and the amounts invoiced to Kmart and Foodland.  Opinions founded on unsupported and erroneous assumptions carry no weight.  See e.g. United States v. City of Miami, Fla., 115 F.3d 870, 873 (11th Cir. 1997) (finding it proper to exclude opinions derived from erroneous data); Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994); Shaw by Strain v. Strackhouse,

920 F.2d 1135, 1142 (3d Cir. 1990) (affirming exclusion of expert opinion founded

on assumption contrary to facts in record). Because none of these facts are correct

or supported by the record or data that Ueno supposedly relied upon, his report

must be excluded.

Mr. Ueno incorrectly calculated the number of containers with "sail by"

dates between April 1, 2003 and June 9, 2003. He comes to the number 1528 by

erroneously including numbers outside this time period by ignoring the "sail by"

date. Kinrich Report (Ex. J), ¶ 7, 17. Instead, as a proxy, he used invoice numbers

above a certain range, starting with the first invoice number with a sail by date in

the relevant time period. This error caused him to include thousands of records

with "sail by" dates that are not in the damage period as ruled by the Court. This is

an error he repeats throughout his report. He admitted at his January 23 deposition

that of the approximately 1500 items in the spreadsheet that needed to be checked,

he did not check more than six. Ex. H (Ueno Dep. 1/23/06, 44:3-23). At best, the

Berry software processed 1480 containers, not his stated 1528. Kinrich Report

(Ex. J), ¶ 7, 17. Furthermore, an additional 541 of the containers had no revenue

associated with them and therefore should also be excluded. Kinrich Report (Ex.

J), ¶ 18.

Mr. Ueno overstates the amounts he claims Fleming invoiced to third

parties. His number is five times greater than the amount reflected in the excel

spreadsheet he relied upon.  Kinrich Report (Ex. J), ¶ 9.  As with the containers,

Mr. Ueno erroneously included product that contained "sail by" dates outside the

relevant time period, thereby inflating his number.  Kinrich Report (Ex. J), ¶ 21.

Instead of $2,761,697, the amount correctly using Ueno's methodology is only

$480,691.  Kinrich Report (Ex. J), ¶ 22.

These amounts are further overstated because Mr. Ueno ignores the costs

associated with Fleming's invoices in the excel file he analyzed.  See Ex. H (Ueno

Dep. 1/23/06, 48:21-24, 49:4-15) (admitting there are costs associated with the

sales numbers, but that he made no effort to ascertain them).  Fleming had at least

$427,005 in costs servicing third parties.  Kinrich Report (Ex. J), ¶ 23.   Thus, the

total revenue less direct shipping costs were only $53,686, without even

accounting for operational costs.  Kinrich Report (Ex. J), ¶ 24.

 Finally, Mr. Ueno also overstates the containers shipped for Foodland and

Kmart.  Kinrich Report (Ex. J), ¶ 26-27.

In sum, Mr. Ueno's report is replete with errors, all inflated in his favor, that

make his report unreliable and unusable.

### D.    Ueno's Method is Flawed in Execution and Premise.

Mr. Ueno's methodology is also flawed because it fails to establish a causal

nexus between infringement and profit and assumes that the software was an

integral part entitling Berry to all profits from the division.  Even if this assumption were legally supportable, Mr. Ueno failed to follow his stated methodology:

First, if Ueno had followed his stated method, instead of finding 1528 containers processed by Berry's software, he'd have found 1480 containers, of which only 939 containers were associated with revenue.  Kinrich Report (Ex. J), ¶¶ 7, 17-18.

Second, if Ueno had followed his stated methods, instead of $2,761,697 of revenue from third parties, he would have found $480,691.  Kinrich Report (Ex. J), ¶¶ 8, 21-22.  If he did not ignore associated data showing the direct costs associated with these shipments, he would have come to only $53,686.  Kinrich Report (Ex. J), ¶¶ 22-24.

Third, if he had correctly applied his own stated methodology, he would not have found that Fleming shipped 304 containers for Kmart and 386 containers for Foodland in the relevant time period, but 219 and 361, respectively.  Kinrich Report (Ex. J), ¶ 10, 12, 26, 27.  Whatever Ueno was following, it was not his own stated methodology.

But under Daubert, the test for the admission of expert testimony "is not the correctness of the expert's conclusions but the soundness of his methodology." Rebel Oil Co., Inc. v. Atlantic Richfield Co., 146 F.3d 1088, 1097 (9th Cir. 1998). Mr. Ueno instead offers a methodology, but then fails to follow it in **every**

calculation.   He "neither explain[ed] the methodology [he] followed to reach [his]

conclusions nor point[ed] to any external source to validate that methodology."

Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995).  In sum:

> **his analysis is based, at least in significant part, on his own ipse**
> **dixit. Such opinions are generally not admissible under the rules**
> **of evidence or Daubert.**

Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, (N.D. Ga. 2002). Ueno's

analysis must be excluded because "[a]ny step that renders the analysis

unreliable . . . renders the expert's testimony inadmissible." Fed. R. Evid. 702

Adv. Comm. Notes; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir.

1994), cert. denied, 513 U.S. 1190 (1995).  This provides yet another reason for the

Court to exclude Ueno's supplemental opinions on shipping charges to third

parties.

### E.    Ueno's License Fee Calculation is Unreasonable.

Ueno's relies upon his earlier "reasonable license fee" calculation in his new

supplemental report.  He states that Berry is owed $2,707,616 by multiplying his

earlier derived $1772 license fee per container with the 1528 containers he believes

that the Berry software processed.  As explained above, the number of containers is

incorrect.  The license fee analysis is also incorrect for two reasons.

First, the "reasonable license fee" Ueno calculated as a measure of Berry's

actual damages ignores the **fair market value** standard the law requires.  Polar

Bear, 384 F.3d at 707-708; Mackie, 296 F.3d at 916-17; 4 M. Nimmer and D.

Nimmer, Nimmer on Copyright § 14.02[A], 14-12 (2005) ("Actual damages

represent the extent to which infringement has injured or destroyed the market

value of the copyrighted work at the time of the infringement.").

Second, even on these faulty premises, Mr. Ueno's calculation of that so-

called "reasonable" fee of $1772 per container is grossly inflated for a product that

Wayne Berry admits he licensed to Fleming for free.  Ueno gets to the $1772 fee

by creatively dividing an unrelated payment to API by a made-up fixed time period

for the Fleming-Berry license.  But, Ueno's per container fee exceeds the amount

that can be charged for freight.

In fact, using the excel spreadsheet Ueno himself used for his supplemental

report, the net revenue per container is only $231 per container.  See Kinrich

Report (Ex. J), ¶ 25, Ex. 5.  The total gross revenue per container is only $1338,

still less than Ueno's proposed per container license fee.  Id.  It is patently

unreasonable to assume that Fleming or any rational economic actor would spend

1.32 times its gross revenue per container or 7.68 times its net revenue per

container on a license fee.  Thus, all opinions that rest on Ueno's "reasonable

license fee" analysis rests on facts that are "so lacking in probative force that no

reasonable expert could rely on them."  See In re Agent Orange Prod. Liab. Litig.,

611 F. Supp. 1223, 1246 (E.D.N.Y. 1985) (excluding proposed testimony because

it was based on self-serving and unverified checklists filled out by the plaintiffs and inapposite general studies and literature).

### F.    Mr. Ueno's Opinions Will Confuse the Jury.

The Court should not subject the jury to Ueno's opinions because his calculations "rest on unsupported assumptions and unsound extrapolation." See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 807 (9th Cir. 1988) (upholding exclusion of expert's damages testimony); Real Estate Value Co. v. USAir, Inc., 979 F. Supp. 731, 744 (N.D. Ill. 1997) (finding expert's "opinions regarding lost profits on supermarket promotions will not assist the trier of fact because they are based on unsupported facts"). In Oiness v. Walgreen Co., 88 F.3d 1025, 1029-30 (Fed. Cir. 1996), the court rejected an expert's damages analysis because it relied on unsupported assumptions that were "fraught with speculation." The court concluded that the expert "offered no sound economic reasoning to support his assumption" and that his "projections lacked evidentiary support." Id. at 1032. Consequently, the court overturned the jury's lost profits award because the expert's analysis "invite[d] the jury to engage in rapt speculation." Id. at 1029. As in Oiness, Ueno's broad range of damages and flawed method invites the jury to engage in rapt speculation. The Court should exclude even relevant and qualified expert opinion if its probative value is outweighed by the risk of prejudice, confusion, or waste of time.

## V.     Conclusion

Ueno's supplemental analysis supersedes his first analysis and at least purports to examine financial information from the relevant time period as it applies to license fees and recoverable profits.  The Court should limit him on these issues to the views expressed in his supplemental report.  The balance of his report, concerning alleged shipping charges, is full of errors and is completely unreliable.  It will accomplish nothing other than to bewilder the jury.  For these and all of the foregoing reasons, the PCT seeks an in limine ruling limiting Ueno's testimony to license fee and profit opinions expressed in his supplemental report and prohibiting Ueno from offering supplemental opinions concerning shipping that have no factual basis.  In the event the Court is inclined to deny any part of this motion, the PCT requests evidentiary hearings outside of the presence of the jury to take testimony from Ueno on these matters.

*///*

///

///

///

///

///

///

///

17

Dated:  Honolulu, Hawaii, February 17, 2006

/s/ Thomas H. Yee
_____

KOBAYASHI, SUGITA & GODA
Lex R. Smith (659-0)
Thomas H. Yee (7344-0)
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:    (808) 539-8700
Facsimile:    (808) 539-8799

and

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Co-Counsel for the Post Confirmation Trust for
Fleming Companies, Inc.