LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;  )<br>  )<br>             Plaintiff,   )<br>  )<br>   vs.   )<br>  )<br>  )<br>HAWAIIAN EXPRESS SERVICE,   )<br>INC., a California corporation; et al.   )<br>  )<br>             Defendants.   )<br>  )<br>  )<br>  )<br>  )<br>_____   ) | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**PLAINTIFF WAYNE BERRY'S SINGLE REPLY TO OPPOSITIONS FILED BY DEFENDANTS REGARDING MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RULE 60(b) RELIEF FOR FRAUD ON THE COURT** |

**PLAINTIFF WAYNE BERRY'S SINGLE  REPLY TO OPPOSITIONS FILED BY DEFENDANTS REGARDING MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RULE 60(b) RELIEF FOR FRAUD ON THE COURT**

**I.     INTRODUCTION.**

The Court has indicated that Mr. Berry may file a reply regarding the oppositions to Motion for  Reconsideration or in the Alternative Rule 60(b) Relief for Fraud on the Court (the "Motion").  For brevity, Mr. Berry respectfully requests leave to file a single Reply to address the three Oppositions filed by the Employee Defendants, Fleming-PCT and the C&S defendants.

**II.    DISCUSSION.**

    **A.     The Claim that the Motion is Not Timely is Just Wrong.**

All defendants make the erroneous claim the Motion was untimely. The Motion was filed as a motion for reconsideration under LR 60.1 that has no specific time limit for such motions brought for newly discovered evidence.  As to the argument that the alternative Rule 60(b) relief is not timely sought, Rule 60(b) motions are brought for relief from <u>final</u> judgments and orders.  By rule Mr. Berry could seek Rule 60(b) relief on these facts some time in 2007 assuming a final judgment enters this year.  His motion makes clear that Mr. Berry saw no reason to wait to bring this matter to the Court until after final judgment.

B.     **The PCT Doesn't' Deny the Fraud**.

The PCT claims that after the Court ruled on inadvertence and lack of willfulness, software was produced that would have shown previously granted relief to have been unsupported. The PCT never addresses the damage done resulting from its withholding of this evidence in the first place. The purpose of the Rule 60(b) motion for fraud is not to only address a prejudice to an opponent but more importantly, to address the prejudice to the Court and the adversarial system. The PCT does not deny that it sought relief, in part,[1] on the grounds that it did not have a copy of software it freely admits it had all along. That is where the Rule 60(b) inquiry should end.

C.     **Mr. Smith and Mr. Dillon Both Claim No Recollection**.

As to Mr. Smith, as set forth in the Declaration of Timothy J. Hogan (the "Hogan Dec.") Exhibit "1", filed concurrently with this Reply, Mr. Smith was not only told by Mr. Capozzola <u>once</u> that he (Capozzola) had the Berry works but five days later Mr. Capozzola told Mr. Smith <u>again</u> in an entirely different email. In a reply email Mr. Smith acknowledges the receipt of Mr. Capozzola's second disclosure of his receipt of the Berry software, by stating, "Thanks Damien." Mr.

---

[1] In its Opposition, the PCT inexplicably seeks vindication on the grounds that it had other grounds to seek Rule 56(f) relief, but admits that its false claim to not have the software did result in the relief its sought.

Smith's declaration is disproved by the factual record contained in the Guidance materials.

As to Mr. Dillon's claim that he was not the one who gave the files to Mr. Capozzola, this email, also proves, once again, why the Court's reliance upon Mr. Dillon's veracity was misplaced and why he should be adjudicated as a willful infringer and immediately enjoined.

### D. The Defense Seeks to Blame the Messenger.

In regard to the claim that Counsel should have discovered the subject email earlier, the Hogan Dec. ¶¶ 1 to 5 set forth the circumstances surrounding the Guidance materials. First, these files were originally produced in such a manner that they could not be readily accessed. The PCT and C&S's attorney cannot deny that this fact was communicated them as set forth in Hogan Dec. Exhibit "2" that is a copy of a letter from Lex Smith responding to the problems incurred in trying to access the files he had personally redacted.

Moreover, the full un-redacted copies minus the files on the privilege log were not received until January 26, 2006. Only then was counsel able to review the files as they were produced to the PCT and its expert and only then was the subject email discovered. Hogan Dec. ¶ 5.

### E. The Guidance Materials Disclose an Even Greater Fraud at Work and the Kind of Scheme that Rule 60(b) is Meant to <u>Address.</u>

In preparation for this Reply and to see if there was any email in which Mr. Smith acknowledged receipt of Mr. Capozzola's disclosure of his possession of the Berry works as set forth above, Mr. Berry's counsel, for the first time, discovered an email that evidences that the claim to have only had a copy of the Berry work dating from June 2000 (with the infringing changes) was false.  The Court will recall that this stated fact was the entire predicate for the claim that Fleming was forced to use a copy of the infringing work in its alleged effort to revert to the original licensed version of FCS.  In the Hogan Dec. ¶¶ 6 & 7 and Exhibit "1., at page 1, within this email thread, Mark Dillon clearly states that certain backup tapes contain "<u>files from the original installation of Windows and Mr. Berry's software on the logistics server</u>."  Mr. Smith responds to Mr. Dillon and admits that he was going to Los Angeles to meet with "the computer guy" to discuss the issues raised by Mr. Dillon.  Among those "issues" is the fact that the real original Berry work was retained on a tape drives. Despite numerous requests Guidance has refused to produce the tapes to Plaintiff.  ¶ 7.  Mr. Berry notes that he has brought the evidence of Guidance's complicity within the ten days that the Court earlier set.

5

### F.     Walker Now Admits that His Report was False.

In his original report, Martin Walker claimed that the six or seven modifications were de minimis. Hogan Dec. Exhibit "3" . This representation was part of the Court's basis for finding that the infringement was inadvertent and not willful. This claim Walker now admits was simply false.

In his most recent report filed in support of the oppositions to this Motion, Mr. Walker now freely admits that the "Original" work that he had represented was almost exactly like the actual Berry FCS was in fact full of infringing modifications. See excerpt from the Fifth Supplemental Walker Report, Hogan Dec., Exhibit "4" at ¶ 16. He does not dispute the numerous objects that appear in one version and not in another and attempts again to mislead the court by saying that the data caused date changes. He does not claim any expertise in Access programming and not surprisingly does not even attempt to explain how the date changes could magically create tables, forms, screens and queries (Objects) that require programming changes. These obvious modifications are evidenced in the file comparison that was Exhibit 11 to the Hogan Declaration filed in support of the Motion, at page 1 of 223 that shows 23 objects in the Capozzola-Smith copy that are not in the real original FCS and 13 objects that were in FCS are not in the Capozzola-Smith copy.

### G. The Copy that Walker and Kirkland & Ellis Claim is Identical Could Not Logically be the One from Chicago.

Though not necessary to the Court's ruling on the 60(b) fraud, the evidence is compelling that the copy that the PCT-C&S attorneys produced on February 7, 2006 was likely just a copy that the defense took from the Guidance images, changed the dates and produced to Plaintiff.

The PCT-C&S attorneys admit in the Declaration of Damian Capozzola, Exhibit B filed in Opposition to the Motion, that on Friday February 3, 2006 the PCT's counsel had not been able to locate the box containing untold works of Mr. Berry[2], despite the significant efforts of several members of the Kirkland & Ellis Chicago staff. A copy of this email is attached to the Hogan Dec. As to Exhibit 4. As this email shows, the Kirkland & Ellis staff finally gave up and went home for the weekend, the evening of Friday February 3, 2006. Contrary to Mr. Capozzola's declaration, Mr. Smith, not Mr. Capozzola miraculously produced a copy of this MIA Berry software the early afternoon of Tuesday February 7, 2006. Hogan Dec. ¶ 10. Almost simultaneously the PCT demanded that the Plaintiff admit this file was identical to one of the Guidance files that they had miraculously been able to

---

[2] This email shows that the Berry works were stored separately in a box at Kirkland & Ellis. Mr. Smith and Mr. Capozzola only produced a single CD. Their apparent withholding of the entire contents of the box is additional grounds for the Court to grant the Motion.

cull from the over 800 databases on the Guidance image drive and make the comparison apparently while the disk was in flight on its way from Chicago! Hogan Dec. Exhibit "5."

    First, it was not 100% identical. The one that Mr. Smith produced when opened produces a screen showing the original FCS splash screen identifying it as API software.   The one that was on the Guidance images produces an error. Not the same.  Hogan Dec. ¶ 10.   But when Mr. Berry's counsel converted the file on the Guidance disk  from Access version  1997 to the 2002 2003 version and then converted it back to the 1997 version, it worked just like the one that Mr. Smith turned over.  Hogan Dec. ¶ 11.

    More importantly, just how did the PCT determine that this file was "identical" to the one that was on the Guidance images in so short a time?  The answer they provide is that they are the same size with the same data but with different dates.   Hogan Dec. Exhibit 5.  They didn't even know which building the file might be in when Kirkland & Ellis Chicago gave up on Friday as set forth in the Capozzola email, his Declaration's Exhibit B.  Hogan Dec. Exhibit "4."  Despite these seemingly impossible challenges they not only got it to Mr. Smith on Tuesday, meaning that it had to go out via courier on Monday,  but also were able to perform the forensics comparing the structure, form and data in flight to learn

that it was exactly the same as the one of over 800 database files on the Guidance disk.  The proof that this is simply a scam is that, the one that Mr. Capozzola claims he was able to get from Chicago to Hawaii without any proof of shipping that was created on May 9, 2003, has the exact same data as the file operating on May 22, 2003 as admitted by Walker in his Fifth Supplement Report, an excerpt of which is attached to the Hogan Dec. as Exhibit "6." Therefore, for this scheme to work, the Court must accept that between May 9, 2003 and May 22, 2003, the people of the state of Hawaii went hungry because not a single container of food was shipped for almost two weeks in May 2003.

Suspecting another (or clearly an ongoing)  fraud, Mr. Berry's counsel, on repeated occasions, demanded the proof of shipping of the copy from Chicago to Hawaii.  These defendants and their attorneys were given a chance to produce this in response to the Motion.  The fact of their failure to produce proof the file came from Chicago in light of the accusation of creation of false evidence may be taken as an adoptive admission that the file was contrived from the Guidance image files.  Their failure to produce any evidence that this actually came from Chicago should close this sad chapter in this case.   By examining the Chicago staff any investigator will be able to prove this additional fraud to conceal this evidence and submit false declarations.  As to where the actual box full of Berry works ended

9

up, Mr. Berry is quite confident that copies of these works are running on Core-Mark, Fleming's successor's, brand new, in-house developed, logistics system.

### H. No Defendant Disputes that Dillon Made Ten Infringing Copies of the Berry FCS in the Relevant Period and that Constitutes Criminal Infringement.

As to Walker's attempt to divert the court regarding the fact that copies of Berry's works appear only as "fragments" in the empty space on the unallocated clusters that were withheld until January 26, 2006, this additional fact is not necessary to the Court's ruling other than to prove Walker lacks the skill of an untrained attorney to retrieve this evidence and should refrain from calling himself a computer forensic expert.

What none of the Defendants disputes is that Dillon created ten copies of the actual adjudicated infringing FCS Logistics Data.mdb in the relevant period of April 1, 2003 to June 9, 2003 as set forth in the Hogan Dec. Exhibit "10" filed in support of the Motion. This proves willful infringement of the highest degree and no defendant denies it. The Court should grant the motion and enter a finding of willful infringement as to Dillon and the Fleming PCT.

### I. The PCT Obviously Misses the Point so it Never Denies the Fraud.

If both parties are denied the use of the relevant evidence, then there would arguably be no grounds to seek a reconsideration. The fact would be that under the rules that govern litigation, no foul had been committed and you don't get a do over just because you didn't like the outcome. What the PCT and C&S fail to address in their oppositions is that its attorneys broke the rules by withholding evidence. The PCT does not deny it. Mr. Smith, on behalf of C&S apparently claims no recollection. The second email makes his memory lapse difficult if not impossible to accept.

While the defense could arguably withhold evidence from its expert it had no right to withhold it from Plaintiff. As set forth in the Capozzola email attached to the Declaration of Timothy J. Hogan filed in support of the Motion at Exhibit 7, the PCT still claims that it had no obligation to turn the file over. It's attempt to soften the clear fraud on the Court regarding the rule 56(f) request falls far short of a defense to the clear and convincing proof that it knew it had the file, and represented it didn't to this Court to obtain the Rule 56(f) relief. This fraud is proven by clear and convincing evidence. As to the PCT's Kirkland & Ellis counsel, there is no question that counsel engaged in conduct requiring Rule 60(b) relief and the firm's disqualification.

11

### J. **Mr. Smith and Mark Dillon Take a Different Tack the PCT.**

First, Dillon claims that there isn't proof that he gave the file to Mr. Capozzola. As the Hogan Dec. Exhibit "1" shows, that false claim is just another reason to reverse the earlier findings that Mr. Dillon testified truthfully in the hearing on the Preliminary Injunction Motion and enter a TRO in the interim.

As to Mr. Smith, claiming no recollection of the May 12, 2003 email, Mr. Smith is now stuck, because Mr. Capozzola didn't just tell him in <u>one</u> email about the software but just days later Mr. Capozzola told him <u>again in a second entirely different email</u>. Regarding this second email, Mr. Smith responded, "Thanks Damian". Hogan Dec. Exhibit "1" at pages 1 and 2 of 6. This evidence would be sufficient proof to sustain probable cause for perjury in light of the declaration that was filed on February 17, 2006. This is especially true in light of the proof that, despite a case based entirely on a stated sworn fact that Fleming only had the June 2000 version of the Berry software after the verdict, the email attached to the Hogan Dec. as Exhibit "1" proves these material and repeated representations to have been knowingly false.

Even with his attempts to cloud the facts, Walker now admits everyone knew (except the Court) that the copy Fleming had claimed was the "Original" Berry system, the so-called Original Logistics Data.mdb that Fleming admits it was

using from April 1, 2003 to June 9, 2003, was chuck full of infringements. The Court need not waste any more time on this issue and should rule that the very limited relief sought by Mr. Berry in this motion is warranted.

Because Mr. Capozzola has done what he often does and asked for monetary sanctions, Mr. Berry requests that before proceeding with trial the PCT and C&S be required to pay all attorneys fees and costs incurred from and after the Rule 56(f) request, prior to allowing them to proceed and that all other requested relief be granted.

In addition, because the misappropriation of Mr. Berry's works was concealed in this and in the Delaware Bankruptcy case, Mr. Berry asks that he have process from this Court directing the Deputy United States Marshall in Chicago to seize the files of Kirkland & Ellis until such time as the Berry works are actually produced.

Mr. Berry also asks that the Court reconsider and vacate any in limine rulings that limit Mr. Berry's proof in regard to willful infringement and Fleming bad acts and accounting fraud.

Finally, Because the PCT now admits that it had a box of Berry works and it cannot deny that it never sought to protect its use and possession of these works through disclosure and a claim of fair use, Mr. Berry believes that justice requires

13

that there be no limitation as to the date the infringement ceased because by Fleming's failure to disclose its unlawful possession of these works, no such claim can justly be made. That Mr. Berry is entitled to immediate injunctive relief is stating the obvious.

## III. CONCLUSION.

For the reasons stated the Motion should be granted.

Dated: Honolulu, Hawaii, February 19, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY
