LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S WAYNE BERRY'S** |
| vs. | ) | **SUPPLEMENTAL** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR ISSUANCE OF** |
| HAWAIIAN EXPRESS SERVICE, | ) | **PERMANENT INJUNCTION AND** |
| INC., a California corporation; et al., | ) | **ORDER DIRECTING RETURN,** |
| | ) | **DESTRUCTION OR OTHER** |
| Defendants. | ) | **REASONABLE DISPOSITION OF** |
| | ) | **ALL COPIES OF FREIGHT** |
| | ) | **CONTROL SYSTEM** |
| | ) | |
| | ) | HEARING |
| | ) | Date:     March 6, 2006 |
| | ) | Time:     9:00 a.m. |
| | ) | Judge:    Hon. Susan Oki Mollway |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ISSUANCE OF PERMANENT INJUNCTION AND ORDER DIRECTING RETURN, OF FREIGHT CONTROL SYSTEM DESTRUCTION OR OTHER REASONABLE DISPOSITION OF ALL COPIES**

**I.   INTRODUCTION.**

Plaintiff Wayne Berry respectfully submits this Supplemental Memorandum in Support of His Motion for Issuance of Permanent Injunction and Order Directing Return, Destruction or Other Reasonable Disposition of All Copies of Freight Control System.

**II.   FACTUAL BACKGROUND.**

    **A.   The Concealment of Material Evidence Alone Is Grounds to Grant the Injunction.**

The materials that have been submitted in regard to Plaintiff Wayne Berry's Motion for Reconsideration Or In the Alternative Rule 60(b) Relief For Fraud On the Court, prove that the PCT has concealed a copy of Mr. Berry's software throughout this case. Despite this, the PCT and its attorneys have, on numerous occasions, put sworn statements before various courts, including this Court, that no such copies existed. In addition, evidence has surfaced that Fleming had a copy of the real original FCS Logistics Data.mdb all along. Rather than revert to the original version, as it claims was its intention, it deliberately chose to use a copy it knew was an unlicensed infringing derivative.

Mark Dillon compounded this falsehood in his various declarations and affidavits. The fact of this concealment and calculated willful infringement is no longer subject to dispute. The fact that a copy or copies of the Berry works have been actively concealed throughout this proceeding is irrefutable proof of the necessity for an injunction regarding these copyrighted materials. The PCT cannot deny that Mr. Berry's rights are not jeopardized by its agents' conduct. By their admitted failure to abide by discovery rules and by their desire to conceal material evidence in regard to their client's infringemen,t the PCT's agents have established the absolute necessity of injunctive relief. Plaintiff's Motion for Reconsideration or in the Alternative Rule 60(b) Relief for Fraud on the Court is incorporated by this reference.

    **B.**    **The Pervasive 'Scoff-law' Culture of Fleming Has Carried Over to C&S.**

In the e-mail attached to the Hogan Declaration at Exhibit "1" dated July 1, 2003, on the eve of the C&S take over, Brian Christensen, the then President of Fleming Hawaii division and soon-to-be President of the C&S Hawaii division, discusses copyright law with Teresa Noa, one of the adjudicated infringing users of Mr. Berry's software and contrary to this Court's later rulings and contrary to the law related to copyrights generally, makes it clear that these individuals do not believe there is any copyright in any database and that they

are free to do anything they wish with any such work. This look inside the Fleming-C&S thinking shows that these bitter infringers will not be deterred short of an injunction. Mr. Christensen states that the "new owners" would never stop them from using something "that works". The implication is that they will continue even if it violates the law. The Court has more than good cause to enter an injunction against Fleming binding upon C&S, the "new owner" to use Mr. Christensen's terminology, as a person in active concert with the infringers.

### C.   There is Compelling Evidence that Dillon Kept a Copy of FCS and It Is Running at C&S.

In April 2003, during the relevant period, Jackie Rio, created a "Handbook" that described in great detail her daily functions related to the Berry database and other job related activities. In Part "F" of her multi-part Handbook[1], Ms. Rio describes the automated function at C&S for "container costing" as follows:

> To begin the automated Container Costing, you will need to access the Logistics Database.
>
> On the Fleming Logistics Data Base Main Switchboard:

---

[1] The creation of this "Handbook" and the others just like it that serves as a user manual for the Berry FCS are clear acts of infringement. Mr. Berry seeks a disposition order regarding all such materials.

> 1. Click on Container Costing
> 2. Type in the Vessel Name* (or from drop down list select the correct vessel).
> 3. Type in the Voyage # *
> 4. And type in a Status # (Whatever the next status number is). The status # consist of two things: The first two digit "02" is for the year, and the next two digit is a sequence # assigned to a particular billing cycle.
> 5. **Click on Begin Costing**

Hogan Dec. Exhibit "2" (emphasis added).

Long <u>after</u> Dillon and C&S claim to be free of any Berry technology, Ms. Rio, in her deposition, describes the very same automated function on December 6, 2004 as follows:

> you have any understanding of what you understand Jackie's automated costing forms to mean?
>
> A.   Automated costing means -- well, it's a separate -- it's a separate -- <u>it's a program that will input the cost automatically</u>.
>
> Q.   What do you understand about how it operates? What do you need to do to make it function? I understand you're not a computer programmer, but just as the operator, what do you do to make it work?
>
> A.   What do I do with it?
>
> Q.   Right. When you say it's automated costing, is it totally automated where you don't have any involvement at all in what it does?

A.  Well, I -- what I do in this case is that I -- okay.  Let's say I were to input the cost of all containers coming in on a vessel.

Q.  Okay.

A.  Then I would tell that program to say, okay, I want to put -- I want the cost for all of these containers.

Q.  Based on what vessel so you can pull the vessel up?

A.  Yes.

Q.  Say give me all the containers and then run the cost out?

A.  Yes.

Q.  Is C&S presently using something that does that function for you today?

A.  Yes.

Q.  I'd like you to refer to Exhibit 39.  Does it look like that?

A.  Yes.

Q.  It's a straight spread sheet?

A.  It's a straight spread sheet.

Q.  That does the automated costing?

A.   Yes.

Q.   Can you explain to me what you do to get it to do exactly what you just said, which is to give it a given vessel and pull out all the containers on that vessel?  What do you do to make it give you that information?

A.   Just like I explained earlier, I said, okay, I put the vessel name and then the vessel is given a voyage number.  So I put the vessel name, the voyage number, and then I click on a button that will start the costing procedure.

Q.   If you would turn yourself to Exhibit 39 again.  It may be helpful just to leave them out.  Can you point to Exhibit 39 and show me where on -- again, this is just a representation, but where would that button be located on this screen?

A.   Oh, it's not on Excel.  It's on a separate one.  That program, that cost, that's the costing, it's a separate program.

Q.   From the Excel spread sheet?

A.   Yes, from the Excel spread sheet.

Q.   Where is that program on your computer?

A.   I don't know.

Q.   So you have Excel running and you have another program that allows you to run the costing whatever report?

A.   Yes.

Q. And you don't know what that program is?

A. No, I don't.

Q. Based on your experience, how long have you used Excel in your life?

A. Maybe five years.

Q. Do you have any reason to believe that that program is Excel?

MR. HOSODA: Lacks foundation, vague and ambiguous.

MR. SMITH: Calls for speculation.

MR. HOSODA: Calls for speculation.

BY MR. HOGAN:

Q. You can answer, if you can.

A. I don't know exactly what program it uses.

Q. Who would know what that program is? If you had to ask somebody if you were at work and wanted to get the information of where that computer program came from, who would you ask?

A. I would ask Mark.

Q. Mark Dillon?

A. Mark Dillon, yes.

Q. Is it your understanding that Mark Dillon was the one, to your understanding, that put that

>program on your computer?
>
>A.   Yes.
>
>Q.   But when you open that program, ma'am, you understand when you open Excel, it shows a splash screen or an opening screen that says Excel and goes into whatever worksheet you're in?
>
>A.   Yes.
>
>Q.   <u>Does this program that you just described open Excel when you open it?</u>
>
>A.   <u>No</u>.
>
>Q.   Does it open any Microsoft programs when it opens?
>
>A.   I don't know what program it's running under.
>
>Q.   It doesn't have a Microsoft label on it that says Microsoft Access or Excel or anything like that?
>
>A.   No.

Deposition of Jacqueline Rio, taken in Wayne Berry v. Hawaiian Express Service, Inc. et al. CV 03-00385 SOM-LEK, on December 6, 2005 at page 19:11 to page 23:14, Hogan Dec. Exhibit "3."

    This is evidence could support a jury finding that Mark Dillon, C&S'

agent continues to operate a copy of the Berry database or one of his hundreds of infringing derivatives, surreptitiously hidden from the Court and the other innocent employees in C&S' operations in Kapolei. It matters not whether C&S is a party, C&S is in active concert with Fleming and its former infringing employee Mark Dillon and can be bound by an injunction.

>    D.    **Other Anecdotal Evidence Strongly Suggests the Ongoing Use of FCS by the Infringers Working at C&S.**

The Court may recall that the Dillon Spreadsheets were alleged to have been created from data extracted from the Berry FCS and then put into MS Excel Spreadsheets. In some instances, Mr. Dillon modified the names that Mr. Berry had given his database elements. The principal logical reference of the Berry FCS was the **"Job ID."** This, Mr. Dillon swore was not used in his spreadsheets as follows:

> Q   Now, did Mr. Berry's database have a field called "Job No"?
>
> A   "Job No"?  I don't believe so.
>
> Q   Did it have one that was called "Job Number"?
>
> A   No.
>
> Q   "Job ID"?

A    Yes.

Q    Do you have a

A    No.

Q    Do you have one that equates to "Job ID"?

A    Yes.

MR. HOSODA:  The question is vague and ambiguous as to what "equates" means.

Q    (By Mr. Hogan) Do you understand the question, sir?

A    Yes, I understand.

Q    Okay.  And do you have a column in your spreadsheets that equates to "Job ID"?

MR. HOSODA:  Same objection.

Q    (By Mr. Hogan) If you understand the question, you can answer it, sir.

MR. HOSODA:  I haven't instructed him not to.

THE WITNESS:  Let's go on.  My counsel's instructed me not to answer.

MR. HOSODA:  No, I said I have not instructed you not to answer.

THE WITNESS:  Oh, okay.  We have a field called "Order ID."  Now, understanding -- I presume where you're going with this is that we're

>duplicating Mr. Berry's database. To have an ID
>column in any table is standard for the industry,
>for the IT industry. So if you have a spreadsheet
>of purchase orders, you'll have an order ID. If
>you have a database table of container data, you
>will have a container ID. It's just
>industry-standard stuff.
>
>Q  (By Mr. Hogan) When you created your
>column that you called job -- I'm sorry. What was
>the answer, sir? Order ID?
>
>A  Order ID.

Deposition of Mark Dillon taken in this case on December 16, 2003 at page 50:16 to page 52:5, Hogan Dec. Exhibit "4."

In emails generated by Teresa Noa and Mark Dillon and other C&S employees, long after C&S took over and long after all claimed vestiges of Mr. Berry's technology were allegedly removed, Mr. Dillon and Ms. Noa continue to refer to "Job ID" that was in Berry's FCS that Mr. Dillon's testimony proves was <u>not</u> in his spreadsheets. *See* Hogan Dec. Exhibit "5." The most compelling instance of this echo of Berry Technology is Ms. Noa's very meticulous description of fields that she needed for a report. Hogan Dec. Exhibit "5" page 1 of 10. Ms. Noa is requesting the specific field "Job ID" by name. This is compelling evidence that Dillon is using a copy of Mr. Berry's work on behalf of his employer C&S.

The existence of evidence of using Dillon's Order ID terminology in other emails indicates that the authors know the difference and chose to term in their emails to identify Mr. Berry's work that is clearly still operating at C&S. *See* Hogan Dec. Exhibit "6".

### E.  An Injunction Must Issue Under the Record of This Case.

In light of the concealment that has been exposed in this case, the continuation of Fleming as Core-Mark and evidence that Dillon still has copies of the Berry FCS that he uses for his development work, Mr. Berry asks that the Court enter an injunction immediately against all of the Defendants that will implicate C&S as a person in active concert, barring all from the possession, use or facilitating use of all Mr. Berry's software including the use or creation of any derivatives of his software and let these infringers and their new employer C&S take the risk of dire consequences that will befall them should they continue to operate a multi-billion dollar business, at a minimum, through willful blindness to the ongoing infringement.

### III.  CONCLUSION.

For those reasons, Mr. Berry begs this Court to provide Mr. Berry the necessary equitable remedies for infringement specifically outlined by Congress in the Copyright Act and prayed for in the Motion.

DATED: Honolulu, Hawai'i, February 21, 2006.

                                    /s/ Timothy J. Hogan
                                    TIMOTHY J. HOGAN
                                    Attorney for Plaintiff WAYNE BERRY