# EXHIBIT A

```
                                                                    1

 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF HAWAII

 3

 4   WAYNE BERRY, A HAWAII CITIZEN,   ) CIVIL NO. 03-00385SOM
                                      )
 5                  Plaintiff,        )
                                      )
 6        vs.                         )
                                      )
 7   HAWAII EXPRESS SERVICE, INC.,    )
     a CALIFORNIA CORPORATION, et al.,)  - VOLUME 1 -
 8                                    )
                    Defendants.       )
 9   _____)

10

11             INSTANT ROUGH TRANSCRIPT OF PROCEEDINGS

12         The above-entitled matter came on for hearing on

13   Tuesday, January 24, 2006, at 9:02 a.m., at Honolulu, Hawaii,

14   BEFORE:          THE HONORABLE SUSAN OKI MOLLWAY
                      United States District Judge
15
     REPORTED BY:     STEPHEN B. PLATT, RMR, CRR
16                    Official U.S. District Court Reporter

17   APPEARANCES:     TIMOTHY J. HOGAN, ESQ.
                      Lynch Ichida Thompson Kim & Hirota
18                    1132 Bishop Street, Suite 1405
                      Honolulu, Hawaii  96813
19

20                          Attorney for the Plaintiff

21                    ERIC C. LIEBELER, ESQ.
                      DAMIAN D. CAPOZZOLA, ESQ.
22                    Kirkland & Ellis, LLP
                      777 South Figueroa Street
23                    Los Angeles, California  90017

24                          Attorneys for Defendant
                                Post-Confirmation Trust
25
```

2

```
 1      APPEARANCES (Continued):
 2
 3
 4
                        LEX R. SMITH, ESQ.
 5                      THOMAS H. YEE, ESQ.
                        Kobayashi, Sugita & Goda
 6                      999 Bishop Street
                        First Hawaian Center, Suite 2600
 7                      Honolulu, Hawaii   96813

 8                                    Attorneys for the Defendant
                                         Post-Confirmation Trust
 9

10                      LYLE S. HOSODA, ESQ.
                        RAINA P.B. MEAD, ESQ.
11                      345 Queen Street, Suite 804
                        Honolulu, Hawaii   96813
12
                                      Attorneys for Defendants
13                                       Mark Dillon,
                                         Brian Christensen,
14                                       Teresa Noa, Melvin Ponce,
                                         Alfredda Waiolama,
15                                       Jacqueline Rio and
                                         Justin Fukumoto
16
17
18
19
20
21
22
23
24
25
```

1    in the Post Confirmation Trust.

2            MR. SMITH:  Lex Smith, local counsel for the trust.

3            MR. HOSODA:  Good morning.

4            Lyle Hosoda and Raina immediate appearing on behalf

5    of -- Alfredda -- (incomprehensible) -- Melvin Ponce and

6    Justin Fukumoto, who are also in the courtroom this morning.

7            THE COURT:  Okay, we have used up the whole

8    transcript just to list the parties...

9            Okay, thank you very much; you can all be seated.

10           I know you folks need me to talk to you about the --

11   vicarious liability issues.  Did the parties have other

12   matters to also discuss?

13           MR. HOGAN:  Yes, Your Honor.

14           In my first motion in limine -- I need to update the

15   court --

16           THE COURT:  I saw what was filed.  I thank you all.

17   I could see that all of you were very busy yesterday and last

18   night.  I looked at that last night.  It appeared there were

19   close to 3,000 files that you didn't get.

20           MR. HOGAN:  Yes, Your Honor.  I put on the screen,

21   if I could direct Your Honor --

22           THE COURT:  Okay, but it's way too small.

23           MR. HOGAN:  I understand that, Your Honor, but if I

24   can I would like to direct the court to one area that's of

25   importance.

1    I will make a representation, Your Honor:  I got
2  these files yesterday afternoon.  I got two full boxes of
3  documents served on me at 5:00, that purport to be something
4  to do with these.  I went to one of the clusters that was
5  supposedly -- in past declarations of Mr. Walker, containing
6  nothing.
7    I ran a simple off-the-shelf forensic package
8  against it, and I pulled out, of one cluster, Your Honor -- if
9  I may... 33 data bases that were withheld in discovery.
10    These data bases, Your Honor, contain evidence that
11  was never produced in this case; has Mr. Berry's name in it,
12  and is related not only to liability issues but also to
13  financial issues:  K-Mart, connection to the ocean carriers.
14    This is the mother load.  I got it yesterday, after
15  about, say, 7:00 in the evening.
16    I haven't had a chance to look at more than two or
17  three of them.  The first one I opened was an active data
18  base.  The second one bombed out.  And I went down about four
19  or five of them this morning, because it burned all night.
20    And most of them -- I would say almost all of them,
21  are active data bases in one of the 13 clusters, that were
22  withheld.
23    It's all relevant evidence.  It's Mr. Berry's
24  intellectual property that has been withheld, and there is
25  absolutely no basis, whatsoever, in the affidavits filed, for

1   this stuff to have not been given.

2          The most important thing, Your Honor, is the
3   guidance material they have turned over to me -- yesterday,
4   has had all the meta data taken out of it again.

5          So the material Mr. Walker got is not what I got.

6          This has been going on since July. They have
7   claimed attorney-client privilege.

8          I would ask the court to at least rule where I am in
9   this case in regard to this discovery.

10          THE COURT: I don't understand.

11          I thought, now, he had everything that Dr. Walker
12   got?

13          MR. SMITH: Your Honor, that's correct, except for a
14   very small list of attorney-client privilege files that I have
15   pulled. What Mr. Hogan, I think, is saying now is that -- I
16   think that he is suggesting that we stripped data out of the
17   file that we produced to him --

18          THE COURT: Can you pull the mike closer.

19          MR. SMITH: I apologize.

20          I am quite sure that's not true. Dr. Walker is in
21   the courtroom, and can tell you --

22          THE COURT: Okay, well, you know, I understand that
23   you folks are really upset about this, that there was a
24   disclosure of documents recently, and Mr. Smith is saying this
25   was an inadvertent withholding, and so forth.

1     MR. HOGAN:  At least according THO their e-mail,
2  Your Honor, they did it after I warned them.
3         That data, I presume, is the full meta data that
4  would be likely after disk that I got the first time that
5  tells you everywhere -- what computer it came out of, it's
6  everything you need to try to prove a case.
7     THE COURT:  Okay, but I understand Mr. Smith to be
8  saying that's not so.  That what he said to Dr. Walker -- that
9  what Mr. Capozzola sent to Dr. Walker is now what you have.
10 Is that what you are saying?  It's not with more meta data
11 that went to Dr. Walker.
12    MR. HOGAN:  If so then guidance violated the order
13 to produce it.  I don't know.  Why can't I just look at the
14 drive, to see?  It's because, Your Honor.
15        You know what's never been stated in regard to this?
16 Why did they delete the unallocated clusters?  Clearly they
17 have -- (inaudible) -- why take those up?  Well, it's because,
18 as Mr. Berry has put in the record numerous times, that it
19 contains evidence of gigantic deletions.
20        If you were to go into your drive, Your Honor, on
21 your computer, and find something with, like, two gig GA bites
22 of data in a folder, and say I want to delete this folder, a
23 little thing would pop up saying, if you do, you won't be able
24 to recover it.
25        Mr. Berry has put in evidence, in his first

```
 1   declaration regarding exfoliation**** that in fact when you do
 2   that with a large amount of data, you are going to get that
 3   report and it's only going to be held in these unallocated
 4   places.
 5           It's never really erased.
 6           MR. SMITH:  This has been litigated and re-litigate
 7   D --
 8           THE COURT:  I am not going to get into whatever you
 9   are grumbling about guidance -- because right now I am in this
10   jury trial on your damages.
11           So what my concern is, is that you have a chance to
12   look at these recently produced materials to determine if they
13   have anything to do with your -- first your case-in-chief,
14   because that's the immediate thing, on damages.
15           And do you have reason to think that your
16   case-in-chief, on damages, is affected by these files?
17           MR. HOGAN:  Yes, absolutely, Your Honor.  And it's
18   because, if you look -- this is one of the files I pulled
19   out -- last night.
20           If you look at it, it says Wayne Berry, FCS.  The
21   screen with the data base, and there's 33 of these.  They have
22   K-Mart materials in 'em.  There's financial records in here.
23   Things that would have been relevant to us, to be able to
24   prove our case, that have been turned over at 5:00 the night
25   before trial, in boxes of documents, and expect me to be able
```

```
 1  to -- in a six-hour trial, to be able to deal with this.
 2          THE COURT:  Okay, but you didn't have had a chance
 3  to look at what's actually in there?
 4          MR. HOGAN:  I have gone through, Your Honor, and --
 5  I apologize, this is -- if you will look at that screen,
 6  Your Honor, those are the 33 that came out of unallocated
 7  cluster one.
 8          One of 13 that was in the files.
 9          THE COURT:  Okay, you are going by the file name.
10  You don't know what's in those files?
11          MR. HOGAN:  Well, Your Honor, if you look at the
12  icon all of those, my HEx recovery program identified as
13  Microsoft access data bases -- they are all -- and I am not --
14  I will pick one from random here, and try to open it.
15          Let's pick this one -- or someone else can, so they
16  don't think I am sandbagging them -- for some reason I'm not
17  getting it...
18          But these are all access data bases, Your Honor.
19  They are access data bases that were not turned over.  Access
20  data base is what this case is about.  And access data base is
21  where all the financial records were kept .
22          And what I am saying is, Your Honor, there are
23  hundreds of E mails.  I can only state to Your Honor, the
24  office of the court, there was one D B X file.  Those are
25  where the e-mail is hidden.  It couldn't possibly hold the
```

1   We may have to -- since I let everybody else go home, I may
2   have to excuse the jury, and we may have to pick a new jury.
3           Luckily, it's not a criminal trial; I don't have to
4   worry about double jeopardy.
5           MR. LIEBELER: Right.
6           Your Honor, there's no way to keep that jury for a
7   month, held over --
8           THE COURT: Yeah, you can. Sure you can. You take
9   a break; if they are all available, they could come back the
10  week of February 22nd.
11          I'm delighted not to have to bring in another panel
12  of 40. I just don't know that they are available. But
13  there's no legal problem with my keeping this jury.
14          There may be a practical problem about their
15  personal lives.
16          MR. HOGAN: That would be fine with me, Your Honor.
17          THE COURT: Okay, well, let's see what's happening
18  here.
19          (Discussion off the record between counsel.)
20          MR. SMITH: Your Honor, Mr. Hogan's discussion about
21  the vacation of the master's order -- the reason --
22          THE COURT: I know, I know.
23          MR. SMITH: -- isn't really our fault.
24          THE COURT: I know.
25          And I know that's your position. He may have a

1  different position. I frankly, at this point, am not imputing
2  anything bad on anybody, right now.
3       But if there is something that has to be done about
4  it, I don't see why it can't be done later, okay?
5       But, right now, I've got these people who are going
6  to come back from lunch -- which none of us will have... but,
7  in any event, I just want to know if I can proceed with those
8  eight people now.
9       And, in noting that Mr. Hogan wants a continuance,
10 and calculating when that continuance would be if I granted
11 it, I do not mean to suggest that I am making a ruling that
12 there is fault that should be assessed against you, or anyone
13 else -- Mr. Smith.
14      But I am trying to address the practical problem of
15 letting him look at materials that he's concerned may affect
16 his case-in-chief, and which, maybe through no fault of yours,
17 did, as a matter of fact, get turned over to him late. And so
18 that's what I am looking at.
19      What is the position, knowing that, at this point,
20 there is no ruling of fault, or sanctions, or anything like
21 that, what is your position --
22      MR. SMITH: We would prefer to see the trial go
23 forward now, Your Honor, without postponement. On the other
24 hand, we do understand the court's --
25      THE COURT: But what happens if I go forward, and in

1  the course of it, you know, he's opening up these documents,
2  and he comes up and says, you know, I was seeking -- whatever
3  it was -- $20 million; now I'm seeking $20 billion, because I
4  found documents X, Y and Z that I didn't have before, and they
5  show, you know, Fleming made so much money in this 70-day
6  period?
7      I mean, I don't know, but -- what do I do with this
8  if that happens?  I am trying to avoid -- I mean, the worse
9  thing for me is for us all to spend time and then to have a
10 mistrial, okay?  Because that's more expensive for you folks,
11 if you ask me.  And it's certainly more use of my time.
12     So, if we are -- I would rather have a continuance
13 than have a mistrial.
14     (Discussion off the record among defense counsel.)
15     MR. HOGAN:  I have stated the plaintiff's position,
16 Your Honor.
17     MR. HOSODA:  Your Honor, on behalf of the employees,
18 I understand the court's concern, however, we would voice an
19 objection to continuing the trial.  Obviously there's
20 prejudice.  We have the entire logistics department down here.
21 They will be out of work for a week.  We have two employees
22 that are not even employed with CNS anymore that are sitting
23 here for trial -- just for the court to consider.
24     THE COURT:  I know it's disrupted their lives.
25     MR. HOSODA:  And we weren't involved in this.

1        THE COURT:  I know.  But I still don't know how to
2   try the case against them without giving him a chance to
3   figure out what to do with this information.
4        Do you want to be heard, too?  Mr. Liebeler?
5        MR. LIEBELER:  I understand the problems.  We would
6   prefer the trial to go forward --
7        THE COURT:  Me, too.
8        MR. LIEBELER:  -- but I understand the issues that
9   the court has raised.  So -- I would prefer the trial go
10  forward, to get it over with; but, I understand the court's
11  position.
12       THE COURT:  I would actually prefer it a lot, too.
13       Okay, I am going to go off the record to figure out
14  what's going on with my calendar.
15       (Discussion off the record.)
16       THE COURT:  Okay, right now, I know I have estimated
17  that we could go in a month.  That's because I'm kind of
18  relying on what the attorneys in the criminal case that's
19  trailing yours have told me.
20       Of course -- and then I'm looking ahead to what else
21  is on my calendar.
22       To me, it's safer to start this trial on February
23  28, because there's always the danger that that criminal case
24  will slop over somewhat, and -- you know, you're going to come
25  from the mainland, and you're going to have all your employees

1        Okay, then, I thank you very much. I really do
2   apologize for this upheaval in the schedule. It's actually
3   kind of a shock for all of us, too, to do this.
4        But I thank you all, and I am going to excuse you
5   until 9:00 -- if you can report to Room 267 on Tuesday,
6   February 28th, I'll say by 8:45, okay then our plan is that
7   you would come back; I would give you some preliminary jury
8   instructions. We would have opening statements, and then
9   proceed with the evidence on the 28th.
10       Okay, so if there's nothing further, I am going to
11  excuse you and send you back --
12       Can they just leave, or do they have to report to --
13       THE CLERK: I think they should go to the jury
14  lounge.
15       THE COURT: Okay, you probably have to go to
16  Room 267. We are going to notify the jury pool clerk that you
17  are having a long break, okay?
18       Thank you very much.
19       THE CLERK: All rise.
20       (The jury was excused at 1:36 p.m.)
21       (The following proceedings were held in
22       open court, outside the presence of the jury:)
23       THE COURT: Okay, you can be seated.
24       And I'm going to put on the record our schedule:
25       Today, defendants will make available to Mr. Hogan,

1  plaintiff's counsel, a copy of the materials that were turned
2  over to Dr. Walker -- a complete copy.
3         This will include some materials that had previously
4  been withheld on the claim of attorney-client privilege.
5         In viewing these, Mr. Hogan has agreed that he will
6  not claim simply as a result of viewing these materials today,
7  that there has been any attorney-client privilege waiver by
8  virtue of his viewing of those materials today.
9         Am I correct?
10        MR. HOGAN:  That is correct, Your Honor.
11        MR. LIEBELER:  That's correct, Your Honor.
12        THE COURT:  Okay.
13        Thereafter, Mr. Hogan is to complete his review of
14 those materials -- of the recently produced materials, no
15 later than -- did I say February 7th?  I think that's what I
16 said -- February 7th.
17        His expert, Mr. Ueno may amend his expert report in
18 light of the newly produced materials.  Any changes occasioned
19 by the newly produced materials should be reflected in
20 amendments or supplements to the earlier report, that should
21 be given to defense counsel no later than -- I'll say 3:00
22 p.m., on Friday, February 10th.
23        Mr. Ueno is to be available to be deposed no later
24 than February 15 -- you know, I'm going to shrink that a
25 little bit.  I'll say February 14th.

1           And then, if defense's experts want to amend or
2    supplement their earlier expert reports, because of the
3    changes in Mr. Ueno's report, then those amendments or
4    supplements are to be given, in writing, to Mr. Hogan, no
5    later than 3:00 p.m., on February 17th.
6           And any defense expert who does change his report
7    because of plaintiff's expert's changes has to be available to
8    be deposed -- I'm going to change some of the deadlines a
9    little bit from what we discussed off the record, because I'm
10   thinking that you folks aren't going to pay any attention to
11   holidays; you're just going to work day and night on all your
12   cases, all the time.... so February 21, okay?  February 20 is
13   a holiday, which is a little glitch, but you folks don't
14   observe holidays coming up for trial, so February 21 is the
15   deadline for depositions of defense experts, to the extent
16   opinions have been adjusted because of changes in plaintiff's
17   expert's reports.
18          Okay, now, I have a couple other things, we need to
19   reschedule motions, and some conferences we may have.
20          You know, earlier today, I did make a ruling on the
21   HEx issue.  And let me ask Mr. Hogan this:
22          What, if any, direct financial benefit would you
23   claim if you were allowed to bring in evidence of the HEx use,
24   and Fleming's vicarious liability part -- what, if any, direct
25   benefit, financial benefit, would you say Fleming enjoyed