IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION |
| vs. | ) ) | |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al. | ) ) ) | |
| Defendants. | ) ) ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

I.      INTRODUCTION.

In the order filed on January 26, 2005, this court concluded that Defendant Mark Dillon inadvertently infringed on Plaintiff Wayne Berry's copyright in the 1993 Freight Control System when Dillon used an altered version of Berry's software between April 1, 2003, and June 9, 2003.[1]  In the order filed on June 27, 2005, this court concluded that Fleming also inadvertently infringed on Berry's copyright during that same period of time.  In that order, the court also granted summary judgment to Defendants C&S Logistics of Hawaii, LLC; C&S Wholesale Grocers, Inc.; C&S Acquisitions, LLC; ES3, LLC; and

_____

[1] In its order of January 26, this court ruled that Dillon's infringing behavior commenced on March 7, 2003. However, this court amended that finding to state that Dillon's infringement began on April 1, 2003.

Richard Cohen (collectively, "C&S") as to all claims asserted by Berry.

Berry now moves for reconsideration of the orders filed on January 26 and June 27, 2005.  Berry argues that newly produced evidence, including a copy of the infringing software program, establishes that the infringement by Dillon and Fleming was willful, not inadvertent.  Berry does not explain how the new evidence establishes willful infringement, but appears to be alleging that alleged misconduct in discovery constituted fraud, and that reconsideration is an appropriate sanction.  Berry argues that the new evidence shows that Dillon, Fleming, and C&S committed fraud on the court when:  (1) Dillon allegedly testified falsely under oath; (2) counsel for Fleming and C&S obtained Rule 56(f) relief based on intentional misrepresentations to the court; (3) Fleming intentionally concealed evidence; and (4) Fleming's and Dillon's infringement was criminal.  Berry requests that this court:  (1) vacate its findings that the infringement by Dillon and Fleming was inadvertent and enter a finding that their infringement was willful; and (2) vacate all findings related to C&S's defenses and dismiss C&S without prejudice, so that Berry may sue C&S anew.  Berry also asks the court to consider disqualifying counsel for Fleming and C&S.  The court denies Berry's motion for reconsideration.

2

II.      <u>LEGAL STANDARD.</u>

In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals.  First, it must demonstrate some reason that the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  <u>See</u> <u>Na Mamo O 'Aha 'Ino v. Galiher</u>, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999); <u>Donaldson v. Liberty Mut. Ins. Co.</u>, 947 F. Supp. 429, 430 (D. Haw. 1996). Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  <u>See</u> <u>Mustafa v. Clark County Sch. Dist.,</u> 157 F.3d 1169, 1178-79 (9th Cir. 1998).  The District of Hawaii has implemented these standards in Local Rule 60.1, which states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>      (a) Discovery of new material facts not previously available;
>      (b) Intervening change in law;
>      (c) Manifest error of law or fact.
>      Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed.

Disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based

on evidence and legal arguments that could have been presented at the time of the challenged decision.  Hawaii Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).[2]

---

[2] Berry also brings this motion under Rule 60(b) of the Federal Rules of Civil Procedure, which states that

> the court may relieve a party or a party's
> legal representative from a final judgment,
> order, or proceeding for the following
> reasons:  (1) mistake, inadvertence,
> surprise, or excusable neglect; (2) newly
> discovered evidence which by due diligence
> could not have been discovered in time to
> move for a new trial under Rule 59(b); (3)
> fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation,
> or other misconduct of an adverse party; (4)
> the judgment is void; (5) the judgment has
> been satisfied, released, or discharged, or a
> prior judgment upon which it is based has
> been reversed or otherwise vacated, or it is
> no longer equitable that the judgment should
> have prospective application; or (6) any
> other reason justifying relief from the
> operation of the judgment.

Fed. R. Civ. P. 60(b).  This rule concerns final rulings, which are not in issue here.  In any event, "[m]otions for relief under Fed. R. Civ. P. 60(b) are addressed to the sound discretion of the trial court."  Thompson v. Housing Auth. of Los Angeles, 782 F.2d 829, 832 (9th Cir. 1986).

III.    <u>ANALYSIS.</u>

    A.    The Court Denies Berry's Request to Vacate Its
          Findings That Direct Infringement by Fleming and
          <u>Dillon Was Inadvertent.</u>

Berry argues that newly discovered evidence establishes that Dillon and Fleming willfully infringed on Berry's copyright, contrary to this court's earlier findings that their infringement was inadvertent. Berry does not articulate how the new evidence establishes that wilful infringement. Rather, he argues that Dillon, Fleming, and C&S worked together to conceal evidence and commit fraud on the court and that such actions warrant the requested relief. Specifically, Berry contends that: (1) Dillon provided false deposition testimony when asked where copies of the infringing software could be found; (2) counsel for Fleming and C&S obtained Rule 56(f) relief by intentionally deceiving the court; (3) Fleming intentionally withheld evidence; and (4) Fleming's and Dillon's infringement was criminal. The court rejects Berry's contentions.

    1.    Berry Does Not Establish That Dillon
          <u>Testified Falsely.</u>

Berry asserts that, because Fleming recently produced a copy of the infringing software, Dillon must have testified falsely when he "swore, under oath, that no copies of the Original Logistics Data.mdb were retained and that only Guidance [Software] had a copy." Motion at 12. Berry says that several email threads show that Dillon in fact had a copy of the program

5

in May 2003.  Motion at 13.  Thus, Berry contends that "Dillon falsely testified that only Guidance had a copy."  Motion at 12. The evidence Berry provides for the court does not support this contention.

Dillon was deposed by Berry on December 23, 2003, and testified as follows:

> Q [by Hogan, Berry's counsel]  So what about
>    the program that's called
>    "OriginalLogisticsData.mdb," do you have
>    a copy of that?
>
> A    No.  That's Mr. Berry's software.
>
> Q    And you didn't keep a copy of that
>    subsequent to the time that Guidance did
>    its work at your office?
>
> A    We did not.
>
> . . . .
>
> Q    I just want to make sure we're talking
>    about the same thing.  Do you know
>    whether a copy of that exists anywhere
>    that we can get our hands on it?
>
> A    Guidance software.

Ex. 5 (attached to Motion) at 2-3.

Berry points to emails between Damien Capozzola, Fleming's mainland counsel, and Lex Smith, Fleming's Hawaii counsel, see Ex. 1 (attached to Reply), indicating that Dillon gave Capozzola a copy of the Original Logistics Data.mdb program in May 2003.  Berry contends the emails establish that Dillon answered the deposition questions above falsely.  However, even

if Dillon gave Capozzola such a copy in May 2003, Berry does not show that <u>Dillon</u> had a copy of the program on December 23, 2003, the day he testified.  Perhaps Dillon gave Capozzola the only copy he had.  Giving Capozzola a copy of the program in May 2003 does not establish that Dillon lied when he said he did not have a copy of the program in December 2003.

Dillon did answer that "we" did not keep a copy of the infringing software after Guidance completed its work for Fleming.  Berry argues that, because Dillon gave Capozzola a copy of the program in May 2003, Dillon lied in saying "we" did not keep a copy.  However, Guidance was not hired by Fleming to remove software created by Berry from Fleming's computer system until July 2003.  <u>See</u> 1/27/2005 Order at 21.  Therefore, even assuming Dillon gave Capozzola a copy of the program in May 2003, that does not establish that Dillon kept a copy of the program after Guidance subsequently finished its work for Fleming.  Moreover, Dillon says that, by using the word "we" in response to Berry's question, he was referring to "the users of the Logistics network who were charged with infringement," not the attorneys involved in this case.  Declaration of Mark Dillon 2/17/2006 ("Dillon Decl.") ¶ 4.  Berry simply fails to establish that Dillon lied in this regard.

In the third question above, Berry's counsel asked Dillon where he could find a copy of the infringing software

program.  Dillon said that "the logical place for a party in this
lawsuit to obtain a copy from [was] the certified forensics lab
that had secured all such copies, Guidance Software."  Dillon
Decl. ¶ 3.  Thus, Dillon replied that a copy could be found at
"Guidance [S]oftware."  Ex. 5 (attached to Motion) at 3.  Berry
interprets this as a false statement by Dillon that "only
Guidance had a copy."  Motion at 12.  Berry misconstrues his own
attorney's question.  Berry's counsel did not ask where all
copies could be found; he asked only where "a" copy could be
found "that we can get our hands on."  That Capozzola also had a
copy does not establish that Dillon falsely answered the third
question.  Berry does not establish that Dillon provided false
deposition testimony.[3]

> 2.  Berry Does Not Establish That Fleming
>     and C&S Committed Fraud on the Court by
>     <u>Seeking Rule 56(f) Relief.</u>

        Berry argues that Fleming and C&S committed fraud on
the court "when [Capozzola] and the C&S concurrent counsel
represented to this Court the need for Rule 56(f) relief on the
grounds that Fleming and C&S DID NOT have the file."  Motion
at 13.  Berry complains that Fleming and C&S had the infringing
software and so had no basis for Rule 56(f) relief.  Berry says

---

        [3] Berry additionally argues that "Fleming and C&S's
attorneys made no attempt to correct Mr. Dillon's clearly
inaccurate testimony."  Motion at 14.  Because Berry does not
show false testimony by Dillon, Berry does not show wrongdoing by
counsel in connection with Dillon's deposition testimony.

that "there is no dispute that Fleming and C&S got more time
after they filed the fraudulent Rule 56(f) motion saying they
didn't have Original Logistics Data.mdb."  Motion at 14.  The
court rejects Berry's contention that the record establishes
fraud.

> As the Ninth Circuit says:
>
> > Simply put, not all fraud is fraud on
> > the court.  To constitute fraud on the court,
> > the alleged misconduct must "harm the
> > integrity of the judicial process."
> > Alexander v. Robertson, 882 F.2d 421, 424
> > (9th Cir. 1989).  To determine whether there
> > has been fraud on the court, this circuit and
> > others apply Professor Moore's definition:
> >
> > > "Fraud upon the court" should, we believe,
> > > embrace only that species of fraud which does
> > > or attempts to, defile the court itself, or
> > > is a fraud perpetrated by officers of the
> > > court so that the judicial machinery can not
> > > perform in the usual manner its impartial
> > > task of adjudging cases that are presented
> > > for adjudication.
> >
> > Gumport v. China International Trust and Inv.
> > Corp. (In re Intermagnetics America, Inc.),
> > 926 F.2d 912, 916 (9th Cir. 1991) (quoting 7
> > James Wm. Moore et al., Moore's Federal
> > Practice ¶ 60.33, at 515 (2d ed. 1978)).

In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999).  Fraud on
the court requires a "grave miscarriage of justice" and must be
proven by clear and convincing evidence.  Applying v. State Farm
Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003) (citation
omitted); see also Casey v. Alberton's Inc., 362 F.3d 1254, 1260
(9th Cir. 2004).

Berry's argument concerns the motion for summary
judgment he filed against all Defendants on April 20, 2005.  Two
days later, Berry produced his 1993 FCS software program to
Fleming.  Ex. E (attached to Fleming Opp.) at 3.  To oppose
Berry's motion for summary judgment, Fleming wanted its expert to
compare the 1993 FCS against the Original Logistics Data.mdb and
the Excel spreadsheets.  <u>Id.</u> at 6-12.  Fleming lodged a motion
under Rule 56(f) of the Federal Rules of Civil Procedure ("Rule
56(f) motion"), asking the court to continue the briefing and
hearing dates for Berry's summary judgment motion.  <u>Id.</u> at 4,
6-12.  In its Rule 56(f) motion, Fleming explained:

> Fleming needs to have its expert analyze 1993
> FCS in detail, as this analysis bears on
> controverting evidence concerning the
> copyright infringement and trade secret
> claims.  With regard to the pre-June 9, 2003
> copyright claims, by comparing the 1993 FCS
> against the version Fleming was running prior
> to June 9, 2003 <u>(which will have to be
> obtained from Guidance)</u>, Fleming's expert may
> be able to establish that the modifications
> were de minimis.

<u>Id.</u> at 8-9.  The court subsequently continued the briefing and
hearing dates.

Berry points to the underscored language above as
evidence that Fleming's counsel, Smith, "misrepresented to the
Court that Fleming-C&S did not have a copy of the software that
was sitting, by Mr. Capozzola's own admission, in a file in his
Chicago office."  Motion at 15.  Berry claims that Smith knew

that Capozzola had a copy of the program at the time the Rule
56(f) motion was lodged and that, therefore, "both Fleming and
C&S's attorneys were active participants" in a conspiracy to
trick the court into continuing the briefing and hearing dates.
Motion at 15.

        In its Rule 56(f) motion, Fleming said that Berry had
produced the 1993 FCS <u>after</u> moving for summary judgment and that
Fleming's expert needed time to review it before Fleming could
oppose Berry's motion.  <u>See</u> Fleming Opp. at 13-14; Ex. E
(attached to Fleming Opp.).  Fleming did not, as Berry urges,
seek Rule 56(f) relief because it had to retrieve a copy of the
infringing software from Guidance.  Berry misconstrues the Rule
56(f) motion in arguing that Fleming sought "Rule 56(f) relief on
the grounds that Fleming and C&S DID NOT have the file."  Motion
at 13.

        Furthermore, Smith says that, "[d]uring the entire time
I have represented Fleming in this case, I had no recollection
whatsoever that a copy of the database had been provided to Mr.
Capozzola."  Declaration of Lex R. Smith 2/17/2006 ("Lex Decl.")
¶ 5.  Berry argues that Smith had to have known that Capozzola
had a copy of the program and points to email threads showing
that, in May 2003, Capozzola informed Smith that he had a copy of
the program.  2/19/2006 Hogan Decl. ¶¶ 6-7; Ex. 1 (attached to
Reply) at 2.  While Smith acknowledges the email threads, he

states that he forgot that Capozzola had a copy.  Lex Decl.
¶¶ 4-5.  Smith learned of Capozzola's copy nearly two years
before he lodged the Rule 56(f) motion.  Given the volume of
writings in this action, Smith's statement that he forgot about
that copy is plausible.

        To the extent that Berry believes Capozzola committed
fraud on the court when Berry says Capozzola "represented to this
Court the need for Rule 56(f) relief on the grounds that Fleming
and C&S DID NOT have the file," Motion at 13, the court notes
that Capozzola made no such representation.

        Finally, Berry does not show how Smith's or Capozzola's
actions "harm the integrity of the judicial process" or "defile
the court itself" such that "the judicial machinery can not
perform in the usual manner."  Levander, 180 F.3d at 1119.  Berry
does not establish a "grave miscarriage of justice," and the
court is unpersuaded that the Rule 56(f) motion provides grounds
for reconsideration of earlier rulings.

              3.   Berry Does Not Establish That Fleming
                   Intentionally Withheld Evidence.

        Berry argues that "irrefutable evidence" shows that
Fleming's attorneys' "have engaged in concealment" of the
recently produced copy of the infringing software.  Motion at 3.
Berry says that, although he previously sought all copies of the
infringing software from Fleming and "Fleming said it would
produce it," Berry never received such evidence from Fleming.

                                12

Motion at 4.  Now that Berry has learned that Capozzola had a
copy of the infringing software since May 2003, Berry contends
that Fleming's "failure to produce it and continued concealment
until caught, proves the state of mind required for fraud."
Motion at 14.  The court is unpersuaded that Berry has shown
fraudulent and intentional withholding of infringing software by
Fleming or its counsel.

Rule 26(a)(1) of the Federal Rules of Civil Procedure
provides that "a party must, without awaiting a discovery
request, provide to other parties:  . . . (B) a copy of, or a
description by category and location of, all documents, data
compilations, and tangible things that are in the possession,
custody, or control of the party and that the disclosing party
may use to support its claims or defenses."  A party who has made
a disclosure under Rule 26(a) or responded to a request for
discovery "is under a duty to supplement at appropriate intervals
its disclosures under [Rule 26(a)] if the party learns that in
some material respect the information disclosed is incomplete or
incorrect and if the additional or corrective information has not
otherwise been made known to the other parties during the
discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  If
a party fails to disclose information required under Rule 26(a)
or 26(e)(1) "without substantial justification," any other party
may move to compel disclosure and for appropriate sanctions.

13

Fed. R. Civ. P. 37(a)(2)(A), 37(c)(1).  The decision to impose sanctions under Rule 37 is left to the district court's discretion.  <u>Forro Precision, Inc. v. Int'l Bus. Machs. Corp.</u>, 673 F.2d 1045, 1053 (9th Cir. 1982).

Fleming's obligation to produce materials arose not only under Rule 26 but also under Rule 34 of the Federal Rules of Civil Procedure, as Berry, in late 2003, expressly requested that Fleming produce "[a]ny and all copies of software that contains any of the software written by Wayne Berry."  Ex. 4 (attached to Motion) at 1; Declaration of Timothy J. Hogan 2/10/2006 ("2/10/2006 Hogan Decl.") ¶ 4; Smith Decl. ¶ 10.  In response to Berry's request, Smith stated:  "<u>Subject to an appropriate protective order</u>, Fleming will produce to an expert witness copies of the software described in this request."  Ex. 4 (attached to Motion) at 1; Smith Decl. ¶ 10.  However, before the Discovery Master entered the protective order on April 12, 2005, Berry had amended his complaint to include Guidance as a defendant in this case on June 18, 2004.  <u>See</u> 2d Am. Verified Complaint at 14; Smith Decl. ¶ 10.  At the hearing on this motion, Berry's counsel stated that, after Guidance became a party, he sought to obtain the software from Guidance.

According to Smith, his "understanding has always been that the only copies of the database used between April and June 2003 were on the before image taken by Guidance."  Smith Decl.

14

¶ 5.  Apparently, Smith did not recall having been told that Capozzola had a copy of the software.  Smith provided Berry with a list of all filenames on the Guidance before images, which Smith believed contained the only copies of the infringing software.  Smith Decl. ¶¶ 5, 11-13.  There is no evidence that Capozzola, for his part, deliberately kept the copy of the software he had from Berry.  Upon realizing that its production had been incomplete, Fleming immediately produced the storage copy to Berry, pursuant to its duty to supplement under Rule 26(e)(1).

Moreover, the court is not convinced that the recently produced software program is new evidence that was not already produced to Berry.  In its opposition memorandum, Fleming argues that "a comparison of this Storage Copy with the snapshots of the database previously produced to Berry [in September 2005] confirms that there is no new evidence."  Fleming Opp. at 8.  At the hearing on this matter, the court asked Berry whether the newly produced software was included in evidence produced to him in September 2005.  Berry said that he did not know.  He acknowledged receiving before and after images in September 2005, but said that he had some difficulty opening those files.  Fleming explained that it had offered to "have an expert review [the files] and take any steps necessary to assure that the files are readable," but that Berry never returned the files to

15

Fleming.  <u>See</u> Ex. 2 (attached to Reply).  Because Berry does not
know whether the allegedly new evidence was previously produced
to him, Berry does not establish that reconsideration is
warranted.[4]

            4.     Criminal Infringement Is Irrelevant to This
                <u>Action.</u>

      Berry argues that the recently produced copy of the
infringing software shows that Dillon and Fleming criminally
infringed his copyright when Dillon made at least ten copies of
Berry's software program.  Motion at 10-11.  Berry contends that
he found "ten unlicensed copies of the Berry work" produced by
Fleming and Dillon.  Motion at 10.  Berry asserts that, "[b]y
making these 10 copies the elements of the crime of criminal
infringement are established."  Motion at 10.  The court refuses
to entertain Berry's argument that Dillon's and Fleming's actions
were criminal.  <u>See</u> <u>Kelly v. L.L. Cool J.</u>, 145 F.R.D. 32, 39
(S.D.N.Y. 1992) ("[T]here is no private cause of action under the
criminal provisions of the copyright law.  In addition, the

---

    [4] Berry arguably has a basis for seeking discovery
sanctions for possible negligence by Fleming's counsel in failing
to turn over all discoverable documents in a timely fashion.
Such sanctions might take the form of Berry's reasonable fees and
costs resulting solely from the untimeliness of the production.
The court does not here find negligence as a basis for any such
sanction, as the court sees no need to make a determination as to
that issue on the eve of trial, especially as Berry has not based
his present motion on negligence and cannot even say that
materials produced in September 2005 failed to include the
material he now focuses on.

criminal claims add nothing to the plaintiff's case because conduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506(a)."); see also 17 U.S.C. § 506(a) (noting that criminal infringement requires wilful action).

Because each of Berry's foregoing arguments fails, the court denies Berry's request to vacate its findings that Dillon and Fleming inadvertently infringed Berry's copyright in 1993 FCS.

B.   The Court Denies Berry's Request to Dismiss C&S Without Prejudice.

Berry asks this court to "vacate all findings related to C&S defenses and dismiss C&S without prejudice."  Motion at 20.  Berry argues:

> C&S has escaped liability because the same software that was to be analyzed to determine what, if any, similarities there were between the Berry system and the system that had been created by Dillon was Original Logistics Data.mdb, the only software Dillon claims he had to create the spreadsheets that was not turned over and was hidden until last week by Mr. Capozzola and his local counsel currently representing C&S.

Motion at 8.

Berry does not tie his arguments to specific findings by this court, instead making a broad request that this court vacate "all findings related to C&S defenses."  Motion at 20.

17

Berry's motion, however, goes only to his claim for direct infringement.

This court previously concluded that, after June 9, 2003, Fleming used noninfringing Microsoft Excel spreadsheets to track freight. 6/27/2005 Order at 27. C&S purchased Fleming in August 2003 and used the Excel spreadsheets to track freight. Because the court concluded that "Berry raises no material issues of fact regarding his claim that the Excel spreadsheets are [an infringing] derivative of FCS," the court granted summary judgment in favor of C&S.[5]

Berry does not establish that Fleming was using the infringing software after June 9, 2003, and that C&S subsequently purchased Fleming and used infringing software. As he does not explain how the May 2003 copy of the infringing software relates to the Excel spreadsheets and makes them infringing copies of the 1993 FCS, Berry does not show how this court erred in granting summary judgment to C&S. Accordingly, the court denies Berry's

---

[5] Specifically, this court stated:

Berry's only claim against C&S for direct infringement arises out of Berry's allegation that the Excel spreadsheets used by C&S are actually an [infringing derivative of 1993 FCS]. As explained earlier, however, no material issues of fact exist with respect to whether the Excel spreadsheets are an [infringing] FCS derivative.

6/27/2005 Order at 27.

requests to vacate all findings related to C&S defenses and to dismiss C&S without prejudice.

IV.       CONCLUSION.

In light of the foregoing, the court denies Berry's motion for reconsideration.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 27, 2006.


_____
Susan Oki Mollway
United States District Judge

_____

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

**Berry v. Hawaiian Express Service, Inc., et al.**, Civ. No. 03-00385 SOM/LEK; ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION.