KOBAYASHI, SUGITA & GODA
LEX R. SMITH                  3485-0
THOMAS H. YEE                 7344-0
SUITE 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii  96813
Telephone: (808) 539-8700
Fax No. (808) 539-8799
Email: lrs@ksg.law.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA  90017
Telephone No. (213) 680-8400
Facsimile No. (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 28 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) SUPPLEMENTAL TRIAL BRIEF |
| | ) |
| vs. | ) Judge:        Hon. Susan O. Mollway |
| | ) Trial Date:   February 28, 2006 |
| | ) Hearing Date: February 24, 2006 |
| HAWAIIAN EXPRESS SERVICE, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

TABLE OF CONTENTS

Page

I. INTRODUCTION…………………………………………………..2

II. DISCUSSION

A. PLAINTIFF'S DAMAGES CANNOT BE MEASURED BY THE EULA BECAUSE NO COURT HAS EVER HELD THAT FLEMING WAS BOUND BY – NOR LIABLE FOR – DAMAGES UNDER THE EULA ................................................... 5

B. THE DOCTRINE OF COLLATERAL ESTOPPEL BARS PLAINTIFF FROM CLAIMING REMEDIES UNDER THE EULA ................................................................................................ 6

    1. THE ISSUE OF WHETHER THE EULA WAS ENFORCEABLE AGAINST FLEMING WAS ACTUALLY LITIGATED IN 2003 ........................................ 7

    2. THE JURY NECESSARILY FOUND THE EULA UNENFORCEABLE WHEN IT FOUND THAT FLEMING STILL HAS A LICENSE TO USE THE SOFTWARE ................................................................................ 9

C. ENFORCEMENT OF THE EULA IS BARRED BY THE STATUTE OF FRAUDS ................................................................ 11

D. THE PAROL EVIDENCE RULE BARS ADMISSIBILITY OF THE EULA AS EVIDENCE OF THE PARTIES' INTENT ............ 13

E. EVEN IF THE EULA WERE ENFORCEABLE, ITS ATTEMPT TO SET A "FLOOR" ON THE PLAINTIFF'S RECOVERY IS UNENFORCEABLE AND INADMISSABLE ..... 14

III. CONCLUSION………………………………………………...18

# TABLE OF AUTHORITIES

**Federal Cases**

Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005)..........................6-7

Levi Strauss & Co. v. Blue Bell, Inc.,
    778 F.2d 1352, 1357 (9th Cir. 1985)......................................7

Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992)....7

S.O.S., Inc. v Payday, Inc., 886 F.2d 1081, 1088 (9th Cir. 1987)..........14

Interstate Markings, Inc. v. Mingus Constructors, Inc.,
    941 F.2d 1010, 1014 (9th Cir. 1991)......................................15

In re Bubble Up Delaware, 684 F.2d 1259, 1262-63 (9th Cir. 1982)........15

**State Cases**

In re Oahu Cabinets, Ltd., 12 B.R. 160, 165 (Bankr. D. Hawaii 1981)....15

In re Holiday Mart, 9 B.R. 99, 107 (Bankr. D. Hawaii 1981)..............15

McIntosh v. Murphy, 52 Hawaii 112, 469 P.2d 177 (Haw. 1970).........12

Pancakes of Hawaii, Inc. v. Pomare Properties Corp.,
    85 Hawai'i 300, 310, 944 P.2d 97, 107 (App. 1997)..................13

Glockner v. Town, 42 Hawaii 485 (Hawaii Terr. 1958)....................13

Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,
    74 Hawaii 85, 120, 839 P.2d 10, 29 n. 11 (Hawaii 1992)............15

**Federal Statutes**

17 U.S.C. § 504..........................................................16

**Misc.**

Black's Law Dictionary 1079 (4th Ed. 1968)................................17

22 Am.Jur.2d Damages § 489.............................................17

## SUPPLEMENTAL TRIAL BRIEF

I. **INTRODUCTION**

In the case that went to trial in 2003, the plaintiff claimed that the terms of Fleming's software license were governed by a document plaintiff calls a "EULA[1]." The EULA was Exhibit "53" in the 2003 trial and a copy is attached hereto as Exhibit "A."

The following are the facts respecting the EULA: (1) Plaintiff copied the language of the EULA off of a shrinkwrap license from pre-packaged software[2]; (2) Fleming never signed the EULA; and (3) when Fleming's division president received the EULA he immediately wrote to Mr. Berry saying "I must say it is not acceptable to Fleming Companies Inc."

The document which Fleming wrote, stating "I must say it is not acceptable to Fleming Companies Inc." set forth the license terms and was **signed by both Fleming and Wayne Berry**. (Exhibit "B" attached hereto). In the 2003 trial, Fleming claimed Exhibit "B" was its license, while Wayne Berry claimed the EULA was the license and Exhibit "B" was a mere addendum.

---

[1] "End User License Agreement."
[2] Trial Transcript, Feb. 25, 2003, Page 124, Lines 2-7, attached as Exhibit "C".

2

At the close of the plaintiff's case in 2003, Fleming moved for judgment as a matter of law that the only enforceable license was the memorandum dated November 24, 1999 which Wayne Berry and Fleming signed (the "Memo Agreement"). The trial court deferred the motion. Following the verdict, Fleming renewed its motion and more than a year and a half later -- after the stay in Fleming's bankruptcy was lifted – the Court denied the motion because "[t]he Court, however, agrees with Berry's opposition that the jury's finding that Fleming has a license was the more relevant inquiry." Accordingly, the 2003 verdict (and post-trial motion) determined that Fleming had a license without an express determination of which document sets forth the provisions of the license.

In the instant case, the plaintiff again apparently seeks to use the "EULA" as a measure of his damages.[3] This effort is impermissible for the following reasons:

1. Although the Court in this case granted plaintiff partial summary judgment holding that certain defendants infringed Berry's copyright for a seventy day period in 2003, the Court never held that Fleming was bound by

---

[3] Part 10 states "LICENSEE understands the original contract value of this software is $2 million dollars. Any damages sought by LICENSOR against LICENSEE will use this amount as a basis but not a limitation of LICENSEE's obligation to LICENSOR for using this SOFTWARE PRODUCT under the terms of this EULA.

3

the EULA and never held that Fleming breached the EULA. The Court merely held that Fleming infringed by using a version of the software that was not identical to the original. Because Court's partial summary judgment ruling did not hold that the EULA was breached, the EULA cannot serve as a measure of damages.

2. Well recognized principles of collateral estoppel confirm that the 2003 jury necessarily found the EULA not enforceable against Fleming. Collateral estoppel therefore precludes the plaintiff from claiming that the EULA is enforceable in this case. In short, if the EULA were enforceable, the jury would have held that the plaintiff terminated it in accordance with its terms. Since the jury expressly rejected plaintiff's claim that Fleming's license was terminated, the jury necessarily determined the EULA unenforceable against Fleming.

3. The statute of frauds (Haw. Rev. Stat. § 656-1) makes the EULA unenforceable against Fleming, as (a) a contract that is not to be performed within one year must be signed by the party it is sought to be enforced against; (b) the EULA expressly contemplates a performance period of greater than a year; and (c) the EULA was never signed by Fleming.

4. The parol evidence rule also prohibits the EULA from being presented as evidence of the parties' intent. Where the Memo Agreement

4

embodies the parties' agreement within its four corners, and in particular, where the Memo Agreement expressly rejects the EULA, it is clear that the EULA contains no evidence of the parties intent, and should not be admitted for this purpose.

5. Even if the EULA were enforceable against Fleming, the EULA's provision purporting to set a floor of $2 million on plaintiff's recovery is inadmissible and unenforceable. It is not an enforceable liquidated damages clause. Moreover, it does not and cannot alter the Copyright Act provisions respecting the amount the plaintiff may recover for the brief infringement that is the subject of the Court's partial summary judgment.

II. **DISCUSSION**

    A. **PLAINTIFF'S DAMAGES CANNOT BE MEASURED BY THE EULA BECAUSE NO COURT HAS EVER HELD THAT FLEMING WAS BOUND BY – NOR LIABLE FOR – DAMAGES UNDER THE EULA**

This case is going to trial on damages only, because the Court has granted partial summary judgment holding Fleming and certain employees liable for copyright infringement during a seventy day period in 2003. The Court has never held that Fleming was bound by the EULA, nor has the Court held that the amount of Fleming's liability is measured by the EULA's provisions.

5

Because no court has ever held Fleming bound by the EULA, the plaintiff is precluded from attempting to measure his damages under the terms of the EULA in this trial. Because the Court's rulings only address remedies under the Copyright Act (see e.g. the Court's October 21, 2005 Order Denying Defendants' Motions for Summary Judgment; Affirming Magistrate Judge's Adoption of Discovery Master's Order Regarding F-1 Materials) those are the only remedies that can properly be submitted at trial.

### B. THE DOCTRINE OF COLLATERAL ESTOPPEL BARS PLAINTIFF FROM CLAIMING REMEDIES UNDER THE EULA

It is fundamental law of the Ninth Circuit that "the doctrine of collateral estoppel (or issue preclusion) prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005). In the 2003 trial, the parties litigated the issue of whether the EULA was binding on Fleming. When the jury expressly found that Fleming "has" a license to use the software, it necessarily found the EULA was not binding. Had the EULA been enforceable, the jury would have found that it was terminated.

Two elements are necessary in order for collateral estoppel to apply: (1) that the issue was actually litigated; and (2) that the issue was necessarily

6

decided. Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005). Both issues are readily satisfied in this case. "Under the doctrine of collateral estoppel, judgment in a prior suit between parties precludes relitigation by the parties of issues actually litigated and necessary to the outcome of the first action." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1357 (9th Cir. 1985); Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992).

### 1. THE ISSUE OF WHETHER THE EULA WAS ENFORCEABLE AGAINST FLEMING WAS ACTUALLY LITIGATED IN 2003

In the 2003 trial, Berry claimed the EULA was controlling, while Fleming claimed the document signed by both Fleming and Mr. Berry[4] was the sole license binding on Fleming. The issue as it was litigated in the 2003 trial is summarized in the following exchanges between the plaintiff and Judge Samuel King:

> THE COURT: One thing that confuses me. The first line by Mr. Stussi: I am in receipt of the end user license agreement and addendum you have prepared dated October 29, 1999.
> THE WITNESS: That's the first one.
> THE COURT: I have not seen this document on Monday evening and must say it's not acceptable to Fleming Companies, Inc.
> THE WITNESS: Yes.
> THE COURT: So they rejected it, the original.

---

[4] Exhibit "B" attached hereto, which expressly rejects the EULA with the statement "I must say it is unacceptable to Fleming Companies Inc."

7

THE WITNESS: No. He asked for changes which were incorporated in this addendum.

THE COURT: Where does he say he wanted changes?

THE WITNESS: Down at the bottom, in paragraph three he says we must have the ability to change and modify reports that come out of the system.

THE COURT: Okay. Go ahead.

Trial Transcript February 27, 2003 pages 85-86, attached as Exhibit "D".

A: I never rescinded that [EULA], no.

Q: Prior to that time, you never rescinded it?

A: No.

THE COURT: Did they ever agree to it?

THE WITNESS: By using the software they agreed to it, yes.

THE COURT: So who drew it up, by the way?

THE WITNESS: I did.

THE COURT: You got it off the usual end user licensing agreement off the boxes that you buy?

THE WITNESS: Of several boxes, yes.

THE COURT: But on those, it goes down to the point where it says you have to accept before you can use the program and if you don't say I accept then you can't get the program.

THE WITNESS: That is in the installation of the software itself.

THE COURT: Right.

THE WITNESS: I had installed the software at Fleming.

THE COURT: Right. You didn't have an end user licensing agreement when it was first installed.

THE WITNESS: Shrink wrap licenses can be on the box itself. There's a lot of software –

THE COURT: Do you think that this bound them after you had already installed it and they had already used it?

THE WITNESS: Yes, it did.

8

> THE COURT: That's what you say.

Trial Transcript, March 4, 2003, pages 100 through 102, attached as Exhibit "E".

### 2. THE JURY NECESSARILY FOUND THE EULA UNENFORCEABLE WHEN IT FOUND THAT FLEMING STILL HAS A LICENSE TO USE THE SOFTWARE

The EULA expressly entitles Wayne Berry to terminate it if the licensee deviates from its terms. Specifically, the EULA provides:

> f. Termination. Without prejudice to any other rights, Wayne Berry may terminate this EULA if you fail to comply with the terms and conditions of this EULA.

The jury verdict found that Fleming had made "unauthorized changes" to the database the FCS. Under the EULA's Section "f", if the EULA had applied, "unauthorized changes" would have necessarily entitled the plaintiff to terminate the EULA. But the jury specifically rejected the plaintiff's claim that he had terminated the EULA, necessarily confirming that the EULA was never binding on Fleming.

The issue of whether Berry could terminate Fleming's license was clearly and specifically presented to the jury, with the jury rejecting Berry's claim and with it, necessarily, the claim that the EULA applied.

9

Attached hereto as Exhibit "F" is a copy of Exhibit 137 which was admitted into evidence in the 2003 trial. On March 4, 2003 Wayne Berry testified to the jury regarding Exhibit 137 as follows:

> Q: . . .at any time did you rescind or intend to rescind all of Fleming's licenses to use the software?
> A:   Yes.
> …
> Q:   And did you in fact rescind it in this letter? [referring to Exhibit 137]
> A: Yes, I did.
> …
> Q: But was it your intention to rescind it?
> A: Yes.

March 4, 2003 Trial Transcript Pages 103-104 (Exhibit "E" attached hereto).

At the plaintiff's request, the issue of whether or not Fleming's license was still in existence on the date of the verdict was expressly included in the jury verdict form. Although a previous draft of the verdict form asked whether Fleming "had" a license to use the software, plaintiff's counsel Timothy Hogan requested that the jury be asked whether Fleming "has" a license to use the software. Mr. Hogan expressly stated that the Plaintiff wanted this change in order for the jury to determine whether the license had terminated prior to the date of the verdict:

> MR. HOGAN:  . . . Because the use of "had" gives it a past tense, Your Honor, that at least we're talking about

10

> current use. And I believe that they have to have it; so I think it should be "has."
>
> And that's relevant, Your Honor, on the issue of rescindment [sic]. If it was rescinded, which we will attempt to argue to the jury, they don't have one, but they did – they had one once. So for that purpose I think that, if we can just agree that it goes to "has," then we're not knocking out rescission as one of the things we can argue to the jury effectively.
>
> THE COURT: That it "has"?

March 5, 2003 Transcript of Proceedings, Pages 2-3 (Exhibit "G" attached hereto).

Indeed, on March 6, 2003 the jury returned its verdict establishing that as of that date Fleming still "has" a license to use the database, necessarily rejecting Berry's claim that the EULA was binding. A copy of the verdict is attached as Exhibit "H".

For the foregoing reasons, the doctrine of collateral estoppel precludes the plaintiff from attempting to rely on the EULA as a measure of recovery against Fleming.

### C.  ENFORCEMENT OF THE EULA IS BARRED BY THE STATUTE OF FRAUDS.

The EULA is unenforceable under the express terms of the Hawaii statute of frauds, Haw. Rev. Stat. § 656-1, which states that "[n]o action shall be brought and maintained . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise,

11

contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith . . ." Paragraph 1 of the Addendum to End-User License Agreement states that "[i]n exchange for Wayne Berry (LICENSOR) granting this EULA to Fleming Foods, Inc. (LICENSEE). LICENSEE agrees to employ all former API employees of record date (September 1, 1999) beginning November 1, 1999 for a period of **not less than 1 year** . . ." (emphasis added). Neither the EULA nor the Addendum are signed by Fleming.

A promise not to be performed within one year means a promise not performable within one year. McIntosh v. Murphy, 52 Hawaii 112, 469 P.2d 177 (Haw. 1970) (citing Restatement of Contracts § 198 (1932). On its face, therefore, the EULA falls squarely within the ambit of the statute of frauds, and is unenforceable because it lacks the signature of a Fleming representative.

There remain exceptions to the statute of frauds, premised primarily on the idea that a court has the equitable power to avoid the unjust application of the statute, particularly where to do so would promote fraud. See id. at 180. This, however, is not such a case. There is a written agreement that expressly rejects the EULA and was subsequently signed by

12

both parties. See Exhibit "B". Under basic concepts of contract interpretation, a court need not look any further than the four corners of the November 24, 1999 memorandum agreement for the embodiment of the parties' agreement.

### D. THE PAROL EVIDENCE RULE BARS ADMISSIBILITY OF THE EULA AS EVIDENCE OF THE PARTIES' INTENT.

As noted above, the President of Fleming expressly rejected the EULA, and in the same Memo Agreement set forth the license terms that were agreed to by both Fleming and Berry. The Memo Agreement embodies the parties' entire agreement within its four corners. To the extent, therefore, that Plaintiff offers the EULA to show the parties' intent, it is clearly inadmissible parol evidence. See Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 85 Hawai'i 300, 310, 944 P.2d 97, 107 (App. 1997) ("[t]he parol evidence rule applies when there is a single final memorial of the understanding of the parties; when that takes place, all prior and contemporaneous negotiations are excluded and are superseded by such written memorial").

Neither can the Memo Agreement and the EULA be read together as forming a single agreement. See Glockner v. Town, 42 Hawaii 485 (Hawaii Terr. 1958)(for separate writings to be considered together, their relation or

13

connection to each other must appear on their face; the writings must contain either an express reference to each other or internal evidence of their unity, relation, or connection sufficient to make parol evidence of their relationship unnecessary). Quite apart from containing an express reference to show "unity, relation, or connection" between the Memo Agreement and the EULA, the Memo Agreement **expressly rejects** the EULA.

The Memo Agreement clearly and unambiguously rejects the EULA. There could be no clearer indication that the EULA contains no evidence of the parties' intent.

### E. EVEN IF THE EULA WERE ENFORCEABLE, ITS ATTEMPT TO SET A "FLOOR" ON THE PLAINTIFF'S RECOVERY IS UNENFORCEABLE AND INADMISSABLE

Copyright licenses are governed by State contract law. When interpreting a copyright license, federal courts rely on "state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy." S.O.S., Inc. v Payday, Inc., 886 F.2d 1081, 1088 (9th Cir. 1987) (citing Gilliam v. American Broad. Cos., 538 F.2d 14, 20 (2d Cir. 1976)).

Hawaii courts have recognized the long-settled rule of Hadley v. Baxendale, 9 Exch. 941 (1854), that a plaintiff to a contract action must prove the amount damages and can only recover the amount that is fairly and

14

reasonably foreseeable at the time the parties entered into the contract.[5] Therefore, a contract provision that attempts to define in advance the amount of damages the plaintiff will recover, without proof, is unenforceable. The only exception to this rule, is the narrow allowance for enforcement of a "liquidated damages clauses" where actual damages would be difficult to ascertain and the parties agree on a specific reasonable estimate of the actual damages. See Interstate Markings, Inc. v. Mingus Constructors, Inc., 941 F.2d 1010, 1014 (9th Cir. 1991); In re Bubble Up Delaware, 684 F.2d 1259, 1262-63(9th Cir. 1982); In re Oahu Cabinets, Ltd., 12 B.R. 160, 165 (Bankr. D. Hawaii 1981)(emphasis added), see also, In re Holiday Mart, 9 B.R. 99, 107 (Bankr. D. Hawaii 1981). Even assuming, then, that the EULA were generally enforceable, the EULA's damage provision is improper and inadmissible.

The EULA's damage provision is not an enforceable liquidated damages clause. Damages in this case are no more difficult to ascertain than

---

[5] See Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Hawaii 85, 120, 839 P.2d 10, 29 n. 11 (Hawaii 1992)(applying the Hadley rule: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may *fairly and reasonably be considered either arising naturally*; i.e., according to the usual course of things, from such breach of contract itself, *or such as may reasonably be supposed to have been in the contemplation of both parties at the same time they made the contract as the probable result of the breach*")(italics in original)(quoting Jones v. Johnson, 41 Hawaii 389).

15

in any case governed by the Copyright Act. Since there is no showing that the damages are "difficult to ascertain", the EULA's damages provision is not enforceable. Moreover, the clause **does not** even contain a specific amount of damages as a reasonable estimate. Rather, the EULA merely purports to set a floor at $2 million[6]. This is clearly not within Hawaii's definition of an enforceable liquidated damages clause.

Actual damages would have been difficult to ascertain in this case. Statutory law defines the amount of a plaintiff's recovery. 17 U.S.C. § 504.

Second, the stated $2 million amount bears no reasonable relationship to Plaintiff's actual damages. It is simply untrue that the "value of [the] software is $2 million dollars," where Plaintiff had previously offered to sell it to Fleming for $300,000.00. See Exhibit "I". Moreover, Fleming ultimately paid nothing for the software, as reflected in the Memo

---

[6] The EULA states in pertinent part:

> LICENSEE understands the original contract value of this software is $2 million dollars. **Any damages sought by LICENSOR against LICENSEE will use this amount as a basis but not a limitation of LICENSEE's obligation** to LICENSOR for using this SOFTWARE PRODUCT under the terms of this EULA.

Exhibit "A" at 5 (emphasis added).

Agreement. See Exhibit "B". Plaintiff's figure therefore overstates his damages by at least $1.7 million.[7]

Finally, the very language of this provision is too vague and nonspecific to even meet the definition of a "liquidated" damage agreement. A "liquidated" damage is "[a]scertained; determined; fixed; settled; made clear or manifest." Black's Law Dictionary 1079 (4th Ed. 1968); see also, 22 Am.Jur.2d Damages § 489:

> "Liquidated damages" are damages the amount of which has been made **certain and fixed** either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof . . . The term applies when a **specific sum of money** has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by either party for a breach of the contract by the other. **The sum must be stipulated and agreed upon by the parties at the time they enter their contract** . . .

In contrast:

> . . . **"unliquidated damages"** are damages that have been established by a verdict or award but **cannot be determined by a fixed formula** so they are left to the discretion of the judge or jury. In general, **damages are unliquidated where they are an uncertain quantity**, depending on no fixed standard, referred to the wise discretion of a jury, and can never be made certain except by accord or verdict.

Id. (emphasis added).

Any damages contemplated by this vague language are far from "liquidated." There is no indication from this that the parties have agreed on

---

[7] This is, of course, one reason why Fleming refused to sign the EULA.

17

a reasonable amount of damages. Neither does the EULA provide a formula or means to calculate a reasonable amount of damages. To the contrary, that the "value" of the software is a "basis" for the measure of damage, indicates that $2 million is to be considered a starting point, and that damages for breach could be more or less than $2 million. That the "value" of the software is "not a limitation," only clarifies that it should not be considered a **ceiling** on damages. It does not follow, however, that this language sets the **floor** at $2 million.

### III. CONCLUSION

For the foregoing reasons, Defendant PCT respectfully requests that the Court prohibit use of the EULA as a measure of damages.

DATED: Honolulu, Hawaii, February 28, 2006.

_____
KOBAYASHI, SUGITA & GODA
LEX R. SMITH (659-0)
THOMAS H. YEE (7344-0)

KIRKLAND & ELLIS LLP
MICHAEL E. BAUMANN
DAMIAN D. CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant PCT