IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) ) ) | CIVIL NO. CV03-00385 SOM-LEK (Copyright) |
| Plaintiff, | ) ) ) ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PCT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS FOR PROFITS AND DAMAGES** |
| vs. HAWAIIAN EXPRESS SERVICE, INC., et al., | ) ) ) ) | |
| Defendants. | ) ) ) | Judge:        Hon. Susan O. Mollway Trial Date:  February 28, 2006 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PCT'S MOTION FOR JUDGMENT AS A MATTER OF LAW <u>ON ALL CLAIMS FOR PROFITS AND DAMAGES</u>**

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................. 1

II.   There is No Legally Sufficient Basis for a Jury to Find For the
      Plaintiff. ...................................................................................... 1

III.  The PCT is Entitled to JMOL Because Berry's Evidence Does Not
      Prove Damages from Infringement ............................................. 2

      A.    The Correct Legal Standard for Damages from Infringement. ................ 3

      B.    Berry's Evidence Fails to Connect Infringement to Profits ...................... 4

            1.    Mere Use of Infringing Work is not Enough to Establish
                  Damages .............................................................................. 4

            2.    Damages Must Be Related to Profits from Relevant
                  Business Units Involved in the Infringement ................................. 5

            3.    Berry Must Show a Greater Causal Connection to
                  Recover Indirect Profits. ......................................................... 8

            4.    Deductible Expenses And Apportionment .................................... 10

            5.    Berry's Expert Failed to Show the Connection Between
                  Fleming's Infringing Use and Its Profits ....................................... 11

      C.    Ueno's Fails to Establish Actual Damages Based on his
            "Reasonable License Fee." .................................................................... 14

      D.    The Jury Lacks the Requisite Expertise to Find Infringement
            without Proper Expert Testimony ........................................................ 18

IV.   Conclusion ................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

## Cases

American Home Assurance Co. v. Sunshine Supermarket, Inc.,
753 F.2d 321 (3d Cir. 1985) ................................................................. 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986).............................................................................. 2

Andreas v. Volkswagen of America, Inc.,
336 F.3d 789 (8th Cir. 2003) ............................................................ 3, 9

Arthur Rutenberg Homes, Inc. v. Maloney,
891 F.Supp. 1560 (M.D. Fla 1995)...................................................... 12

Avins v. White,
627 F.2d 637 (3d Cir. 1980) ................................................................ 19

Bonner v. Dawson,
404 F.3d 290 (4th Cir. 2005) ........................................................ 3, 9, 12

Bouchat v. Baltimore Ravens Football Club, Inc.,
346 F.3d 514 (4th Cir. 2003) ............................................................ 4, 5

Cream Records, Inc. v. Jos. Schlitz Brewing Co.,
754 F.2d 826 (9th Cir. 1985) ........................................................ 5, 8, 11

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
772 F.2d 505 (9th Cir. 1985) ........................................................ 8, 10, 11

In re Letterman Bros. Energy Sec. Litig.,
799 F.2d 967 (5th Cir. 1986) ............................................................... 2

James v. Milwaukee County,
956 F.2d 696 (7th Cir. 1992) ............................................................... 2

John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,
322 F.3d 26 (1st Cir. 2003).................................................................. 12

Johnson v. Campbell,
332 F.3d 199 (3d Cir. 2003) ................................................................. 2

ii

# TABLE OF AUTHORITIES (cont'd.)

**Page**

Mackie v. Rieser,
   296 F.3d 909 (9th Cir. 2002) ................................................................. 3

On Davis v. The Gap, Inc.,
   246 F.3d 152 (2d Cir. 2001) ...................................................... 3, 4, 6, 9

Polar Bear Prods., Inc. v. Timex Corp.,
   384 F.3d 700 (9th Cir. 2004) ...................................................... passim

Sheldon v. Metro-Goldwyn Pictures Corp.,
   309 U.S. 390 (1940) .............................................................................. 12

Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,
   No. CV-71-2262-MML, 1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983) .......... 10

Taylor v. Meirick,
   712 F.2d 1112 (7th Cir. 1983) ............................................................... 7

United States v. Mussare,
   405 F.3d 161 (3d Cir. 2005) ................................................................. 13

Weisgram v. Marley Co.,
   528 U.S. 440 (2000) ............................................................................... 1

Wilburn v. Maritrans GP, Inc.,
   139 F.3d 350 (3d Cir. 1998) ......................................................... 19, 20

**Statutes**

17 U.S.C. § 504(b) .......................................................................... 3, 4, 10

**Rules**

Federal Rules of Civil Procedure 50(a) ................................................. 1

Federal Rules of Civil Procedure 50(a)(1) ........................................... 1

Federal Rules of Evidence 702 ............................................................. 12

## TABLE OF AUTHORITIES (cont'd.)

**Page**

**Treatises**

9A Wright & Miller, Federal Practice & Procedure § 2524 (3d ed. 1995)............... 2

## I.    Introduction

The plaintiff has rested his case and there is no evidence in the record to support any claim of profits or damages resulting from the infringement of plaintiff's work.  Accordingly, the PCT is entitled to judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

## II.    There is No Legally Sufficient Basis for a Jury to Find For the Plaintiff.

Judgment as a matter of law is proper where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).[1]  Rule 50(a) allows this Court to remove issues from the jury's consideration and enter judgment as a matter of law "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (citing *Federal*

---

[1] Specifically, Rule 50(a) provides:

(1)    If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2)    Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.  Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment.

Fed. R. Civ. P. 50(a).

*Practice and Procedure* § 2521, p. 240).

Judgment as a matter of law is proper where the evidence allows only one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). "[T]he question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2524 (3d ed. 1995); *accord Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). A "mere scintilla of evidence" is insufficient to prevent entry of judgment. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992). The court's decision to grant JMOL is not an issue of discretion; it is a conclusion of law based on a finding that there is insufficient evidence to create a fact question for the jury. *In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986).

## III.    The PCT is Entitled to JMOL Because Berry's Evidence Does Not Prove Damages from Infringement.

Due to the plaintiff's inability to establish any causal connection between the alleged infringement and actual damages or any alleged revenue, there has been no legally sufficient evidence of profits introduced in the record. Fleming should receive judgment as a matter of law on this issue and the jury should not be allowed to consider any claim of "profits." *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th

Cir. 2002) (finding no evidence in support of causal link between Symphony's infringing use of Reiser's sculpture in multi-page brochure and profits from subscription to the symphony).

In addition, the plaintiff fails to establish a causal connection to actual damages as a result of Fleming's use of non-licensed aspects of the Berry software.

**A.     The Correct Legal Standard for Damages from Infringement.**

17 U.S.C. § 504(b) establishes a two step framework for recovery of profits. First, the copyright claimant must show a causal nexus between the infringement and gross revenue.  Second, once the plaintiff shows the nexus, the infringer bears the burden of apportioning the profits that were not the result of the infringement. *Polar Bear*, 384 F.3d at 711.

The Ninth Circuit has conclusively ruled that a copyright owner must "demonstrat[e] some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply." *Polar Bear*, 384 F.3d at 712, *Mackie*, 296 F.3d at 915; *see also Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-61 (2d Cir. 2001); *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003). This is despite the language of the statute that suggests that a copyright owner "need only provide the company's overall gross revenue, without regard to the infringement." The Ninth Circuit states that this "would make little practical or

legal sense." *Polar Bear*, 384 F.3d at 711; *see also* 17 U.S.C. § 504(b).

The causation element is a logical parameter to the range of gross profits a plaintiff may seek and obviates "a good deal of mischief in claiming profits beyond what might be attributable to the infringement." *Polar Bear*, 384 F.3d at 711 (internal citations omitted); *see also On Davis*, 246 F.3d at 160. Thus, the revenue stream for profits must bear **a legally significant relationship to the infringement**. *Polar Bear*, 384 F.3d at 711 (emphasis added).

**B.    Berry's Evidence Fails to Connect Infringement to Profits**

**1.    Mere Use of Infringing Work is not Enough to Establish Damages**

Fleming's use of Berry's software does not, by itself, entitle Berry to Fleming's profits. *Polar Bear*, 384 F.3d at 713 (finding that use of copyrighted film footage and minimal causal link was insufficient to support an award for indirect profits). The Court may exclude as a matter of law from jury's inquiry those portions of Fleming's revenues that have no conceivable connection to infringement or for which the plaintiff has offered no more than mere speculation as to existence of causal connection to infringement. *See Polar Bear*, 384 F.3d at 716 (finding the jury should not have considered profits from brand premium calculation because the plaintiff failed to demonstrate a nonspeculative causal link between its work and the infringement); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) (ruling that a football team revenues,

which were not attributable to use of an artist's work in the team logo, could not be included in the calculation of defendants' profits).

Courts deny recovery to copyright holders where the infringer's profits are only remotely or speculatively linked to the infringement, where there is "no conceivable connection" or where it is unclear how much, if anything, the defendant earned from the infringement. *Bouchat*, 346 F.3d at 520. The profits must relate to the particular business entities or profit statements that are related to the infringement. If profits are indirect and not from the actual sale of the copyrighted work, the indirect profits must be causally related in a legally significant way.

### 2. Damages Must Be Related to Profits from Relevant Business Units Involved in the Infringement.

Because it would go against basic tort law principles to allow a copyright owner to claim all of an infringer's revenue even though the infringement may have increased the revenues by only a small amount, courts require the copyright owner to limit his claim to revenue reasonably attributable to the infringement. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 828 (9th Cir. 1985). Thus, Berry must do more "initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Polar Bear*, 384 F.3d at 711 (citing Seventh Circuit *Taylor v. Meirick* and Second Circuit *On Davis v. The Gap* cases with approval).

Similarly, in *On Davis v. The Gap, Inc.*, the plaintiff's proof of defendant's profits was not limited to the defendant's particular lines of business and the particular subsidiary involved in the infringement. 246 F.3d 152, 160 (2d Cir. 2001) (cited with approval in *Polar Bear*, 384 F.3d at 711, n.8). The plaintiff, an eyeglass designer, failed to show causal connection between the infringing use of its eyeglasses in a Gap ad and the Gap's profits from that infringing use. *Id.* at 159-60. The plaintiff showed an increase of $146 million in net sales for Gap's corporate parent following the use of the ad. *Id.* The Court found the evidence not reasonably related to the precise infringement at issue "[b]ecause the ad infringed only with respect to Gap label stores and eyewear, . . . it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." *Id.* "The statutory term, 'infringer's gross revenue' should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement." *Id.* at 160.

Like The Gap whose use of eyeglasses in an ad was not sufficiently connected to the overall profits of the company, Fleming's profits are not reasonably related to the precise infringement caused by its use of the largely licensed Berry software. The plaintiff in a copyright action against a company with multiple divisions and products cannot merely offer a gross revenue number

and sit back. *See Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983)

(remanding for new trial on damages under § 504(b) from infringing maps). The

*Taylor* court reasoned, "If General Motors were to steal your copyright and put it

in a sales brochure, you could not just put a copy of General Motors' corporate

income tax return in the record and rest your case for an award of infringer's

profits." *Id.* The same is true here.

Instead, all Mr. Ueno has done is claim that the Berry software is critical to

nearly the entire business. *See* March 1, 2006 Instant Rough Trial Transcript,

119:7-120:10 (stating, "the system virtually is involved in all of the areas,

including the controllership function, except for -- but it is not involved in the

human resources side.); *see also* Ueno Dep. Transcript at 117:16-24 ("a hundred

percent of it, okay, can be attributable to Mr. Berry's software . . . If you pull that

out, there is -- the company doesn't operate. . . . If you pull the software out, there

will be no gross profits."). Mr. Ueno admitted that he does even know how the

Fleming Hawaii division used the software, *Id.* at 137: 16-21, and that his source

for this information was merely what Berry told him. 138: 23-25. Berry's expert

testified repeatedly that Berry's software was responsible for one hundred percent

of those results and that there was no other way to slice them.

Relatedly, Ueno's report itself says Berry's freight control system was a

such a "cornerstone" and "essential foundation block" of Fleming's operations that

"it would be impossible for Fleming to operate without it" Berry had a burden to show Fleming's profits were related to the infringement, and specifically the infringing aspects of the largely licensed software. Failing that, the PCT is entitled to judgment as a matter of law.

### 3. Berry Must Show a Greater Causal Connection to Recover Indirect Profits.

A copyright owner may include revenue that is an indirect result of the copyright infringement, but the Ninth Circuit requires that the plaintiff must meet a **higher** burden of establishing a causal nexus. "[C]ausation in indirect profit claims is often more attenuated than claims for actual damages or direct profits. It is therefore particularly important for the plaintiff in indirect profit action to demonstrate the alleged causal link between the infringement and profits sought." *Polar Bear,* 384 F.3d at 711, n.7; *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516-517 (9th Cir. 1985) (allowing claim for indirect profits under Copyright Act of 1909); *Cream Records*, 754 F.2d at 828-29 (allowing claim for indirect profits for use of copyrighted material in commercial to sell product).

Because Berry seeks profits for the *use* of his software instead of for its *sale*, he must establish a higher causal burden required for indirect profits. *Compare Polar Bear*, 384 F.3d at 712-16 (vacating a jury's indirect profit award because of the plaintiff's failure to establish the required casual nexus between all three of

defendant's revenue streams), *Andreas*, 336 F.3d at 796-99 (reinstating a jury's

verdict awarding a percentage of profits derived from sales related to

advertisements because the plaintiff had introduced a large amount of

circumstantial evidence evidencing the requisite nexus between infringement and

profits), *and On Davis*, 246 F.3d at 159-61 (affirming the district court's grant of

summary judgment based on infringer's profits in favor of defendant because

plaintiff had only submitted the defendant's gross revenues rather than defendant's

gross revenues attributable to "the gross revenues of the Gap label stores, and

perhaps also limited to eyewear or accessories"), *with Bonner*, 404 F.3d at 294

(holding that proof that "[t]he building generating the funds was designed based

upon [a valid] copyright," satisfies the "requirement of a 'causal connection'

between the infringement and the profit stream").

In *Polar Bear*, Timex used the plaintiff's kayaking film footage over its

express prohibition to promote and sell Expedition watches. *Polar Bear*, 384 F.3d

at 704-05. The plaintiff won $2.4 million in actual damages and indirect profits.

*Id.* The Ninth Circuit found that evidence of the causal connection to revenues

based on a brand premium theory was "woefully insufficient" and stretches the

causation rubber band to its breaking point. *Id.* at 714. The plaintiff failed to show

how its film footage was causally linked to all the revenues from the sales of all

Expedition watches. *Id.* The district court erred by allowing the jury to consider

the claim because the plaintiff could not demonstrate a nonspeculative causal link.
*Id.* at 716.

Berry, like Polar Bear, has a burden to show how Fleming's overall profits were indirectly related to his 1993 FCS. Specifically, because Fleming had a license to use his software, he needs to show how Fleming's profits were related to the infringing aspects of his software. His evidence is insufficient to show relation to the software at all, let alone the unauthorized modifications. Recovering indirect profits is only allowed if the amount of profit indirectly attributable to the infringing use can be ascertained. *Frank Music,* 772 F.2d at 517; *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, No. CV-71-2262-MML, 1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983). Berry has not offered a nonspeculative causal link and therefore, the jury should not be allowed to consider his claim to indirect profits. Berry cannot, as a matter of law, recover any profits from Fleming because they cannot be ascertained.

### 4.    Deductible Expenses And Apportionment

The burden of showing deductible expenses shifts to Fleming if and only if Berry meets his initial burden of showing a causal connection between profits and infringement. *Polar Bear*, 384 F.3d at 712.

In this case, even if Berry showed a causal connection to indirect profits, apportionment would be necessary because Fleming's profits are not entirely due

to the 1993 FCS and derivatives. *Cream Records*, 754 F.2d at 828-29. Fleming can deduct expenses and the portion of the profit not attributable to the FCS software. 17 U.S.C. § 504(b); *See Frank Music,* 772 F.2d at 505, 517 (9th Cir. 1985) (portion of overhead can be deducted where infringement not willful, conscious, or deliberate). Whatever profit remains must then be pro-rated according to the percentage contribution of the FCS software to Fleming's profits. *See Frank Music,* 772 F.2d at 517-19 (holding that reasonable apportionment of both direct and indirect profits, after deductions for cost, was required). The court will not adopt an unreasonable calculation even absent certain proof from the infringer as to the portion attributable to the infringement. *Cream Records*, 754 F.2d at 828.

### 5.    Berry's Expert Failed to Show the Connection Between Fleming's Infringing Use and Its Profits.

Berry's expert, Mr. Ueno made conclusory statements about Fleming's profits without ever examining the underlying software. His testimony does not tie profits to infringing elements of the software and therefore, cannot cure the deficiencies in Berry's case-in-chief. It cannot be disputed that the jury itself lacks the expertise necessary to apportion Fleming's profits based on the alleged infringing features of the software. Indeed, Berry explicitly acknowledged this lack of necessary expertise by presenting Mr. Ueno's expert testimony to guide the jury.

Expert testimony is needed to causally link the infringer's profits with the infringement. *See, e.g., Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 409 (1940) (explaining that there is "no greater difficulty in the admission and use of expert testimony" in cases of apportioning infringer's profits than in property rights valuation cases, especially when "such testimony often forms the sole basis for the decision"); *Polar Bear*, 384 F.3d at 709, 712-13 (discussing expert testimony regarding actual damages and the causal link between infringement and profits); *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 48 (1st Cir. 2003) (allowing architect expert testimony regarding damages). Expert testimony is also needed to compare the individual elements of contested works. *See, e.g., Bonner*, 404 F.3d at 292 (mentioning expert testimony regarding substantial similarity); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F.Supp. 1560, 1564 (M.D. Fla 1995) (discussing expert witness's comparison of the similarities between contested works). Indeed, Mr. Ueno would not have been *permitted* to provide his opinion testimony if profits from infringement were an issue within the competency of the jurors to understand without expert testimony. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject

-12-

involved in the dispute." Fed. R. Evid. 702, Advisory Committee Notes, 1972

Proposed Rules.

By proffering Mr. Ueno as an expert, Berry acknowledged that the subject of

his opinion—the alleged profits Fleming earned from infringing software—

required scientific, technical or other specialized knowledge under Rule 702. *See*

Fed. R. Evid. 702 ("[i]f scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a

witness qualified as an expert by knowledge, skill, experience, training, or

education may testify thereto in the form of an opinion or otherwise . . ."). The

Court appears to have agreed that expert guidance on the subject was needed,

because it permitted Mr. Ueno to testify despite the PCT's motion to preclude his

testimony.[2]

Although expert testimony was required to prove damages from

infringement in this case, Mr. Ueno's testimony of Fleming's profits, untethered to

---

[2] It is well-settled that "a pre-trial motion in limine relieves a defendant of [its] need to make contemporaneous objections in order to preserve an issue on appeal." *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005); *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324-25 (3d Cir. 1985) ("[I]f an issue is fully briefed and the trial court is able to make a definitive ruling, then the motion in limine provides a useful tool for eliminating unnecessary trial interruptions. . . . Under these circumstances, requiring an objection when the evidence was introduced at trial would have been in the nature of a formal exception and, thus, unnecessary under Rule 46."). Here, of course, the PCT moved *in limine* prior to trial to exclude Ueno's testimony.

the infringing aspects of the software, did nothing to assist the jury in determining whether the plaintiff could recover damages causally connected to the infringement. Quite the opposite – Mr. Ueno's error ridden report and testimony could only confuse and mislead the jury regarding the proper way to determine the damages from infringement. Thus, Berry failed to sustain its burden, and judgment as a matter of law must be granted in the PCT's favor.

### C.  Ueno's Fails to Establish Actual Damages Based on his "Reasonable License Fee."

Ueno's "reasonable license fee" is derived entirely from Fleming's forgiveness of a promissory note to the Borjas – a Note which has absolutely no bearing on the value of Plaintiff's software.

```
 8  A.   The way we arrived at the reasonable license fee of
 9  $1,772, which is the licensing fee that we used for 2003, is,
10  we went back to a period in 1999, and -- the last quarter in
11  1999, from October, 1999, to about the early part of January,
12  2000.
13       And, in that period, there was an amount that
14  Fleming had given up.  And this is a note -- that Fleming had
15  given up in exchange for -- what we say was in exchange for
16  the use of the software.
17       The note was a note from -- that Fleming held, and
18  the makers of the note was API and the Borjas, Jack and Heidi
```

-14-

19  Borja.

20        The note amount was for $1,295,000.  And so since

21  they gave up that note, and they received nothing in return

22  for the -- they gave up the principal of that note.  And in

23  return for that, what we did was we computed then the number

24  of containers that were processed using the software in that

25  period.

March 1, 2006 Instant Rough Trial Transcript, 100:8-25.  Mr. Ueno would have

this Court believe that Fleming's release of the Note was consideration for Mr.

Berry granting Fleming a license for the use of his software, and is therefore a

valid measure of the software's value.  However, the Note had no relationship to

Mr. Berry.  Mr. Ueno admits that Mr. Berry was not obligated under the note:

23  Q.  But you did know that Mr. Berry was not obligated under

24  the note.  You at least knew that, right?

25  A.  I knew that Mr. Berry was not obligated under that note.

March 1, 2006 Instant Rough Trial Transcript, 154:23-25.  If he was not obligated

under the Note, its release could not have benefited Mr. Berry.  It is therefore not

as if he accepted the release as consideration in lieu of payment.

    Mr. Ueno also admits that Mr. Borja did not own the software, and that Mr.

Berry was the copyright owner:

19  Q.  Well, Mr. Berry's business partner -- was it your

20   assumption that Mr. Berry's business partner owned the

21   database at issue here?

22   A.   No, he did not.

23   Q.   Okay.

24        Were you calculating damages for Mr. Berry's

25   business partner?

1   A.   I'm not calculating damages for Mr. Berry's business

2   partner.  I'm calculating damages for the owner of the

3   copyright, which is Mr. Berry.

March 1, 2006 Instant Rough Trial Transcript, 156:19-25, 157: 1-3.  If one

assumes that the "reasonable license fee" should be based on what Fleming agreed

to pay for the license, one need look no farther than the November 24, 1999

memorandum agreement signed by Wayne Berry, granting Fleming a "no charge

user license."

Just like a profits-based remedy, a showing of actual damages must be

connected to the infringement.  The PCT has extensively briefed this Court in its

motions in limine as to the precise problems with the license fee.  His trial

testimony has confirmed the infirmities in the plaintiff's case and therefore, the

PCT seeks judgment as a matter of law that Berry has suffered no actual damages.

His software was licensed for free, never sold to anyone, replaced by a radically

-16-

different and much improved version.  It s hard to imagine what damages he could.

   In his trial testimony on March 1, 2006, Mr. Ueno concedes that his measure
of damages was not a correct proxy for the market value of Berry's software.

   17   Q.   -- (talking over witness.)  You think you are arriving at

   18   a reasonable license fee.  Did you believe that a reasonable

   19   license fee is what a willing buyer would sell to a willing

   20   seller for?

   21   A.   Is a reasonable license fee between a willing buyer and a

   22   willing seller?

   23   Q.   Yes.

   24   A.   I believe it is.

March 1, 2006 Instant Rough Trial Transcript, 135:17-24.

   Mr. Ueno's calculation of that so-called "reasonable license fee" ignores the
"market value" standard the law requires.  *Polar Bear*, 384 F.3d at 707-708;
*Mackie*, 296 F.3d at 916-17; 4 M. Nimmer and D. Nimmer, *Nimmer on Copyright*
§ 14.02[A], 14-12 (2005) ("Actual damages represent the extent to which
infringement has injured or destroyed the market value of the copyrighted work at
the time of the infringement.").  The Ninth Circuit requires the plaintiff to calculate
the loss in the **fair market value** of the infringed product.  Mr. Berry has failed to
meet this burden.

**D.    The Jury Lacks the Requisite Expertise to Find Infringement without Proper Expert Testimony**

The jurors may only reach a verdict on damages caused by the infringement based upon the testimony they hear—the analysis by Berry's expert that ignored the actual infringing FCS software and thus was based upon an incorrect legal standard.  Alternatively, Berry may argue that the jurors themselves can use their own discretion in determining profits related to the infringement, even though they lack the expertise to do so without expert guidance.  In either case, Berry has offered **no** evidence upon which a jury properly could find a verdict for the plaintiff.

When there is no basis in law for the jury to reach a verdict for the plaintiff, the PCT is entitled to judgment as a matter of law.  In *Polar Bear*, the Ninth Circuit determined that the plaintiff satisfied its burden of causal connection in two of three revenue streams—trade show sales and Mountain Dew promotion— through the use of expert testimony.  *Polar Bear*, 384 F.3d at 713.  However, because the jury based part of its $2.1 million indirect profits award on an impermissible third revenue stream (brand premium theory), the Ninth Circuit found that the causal evidence was insufficient as a matter of law, the district court erred by putting the evidence before the jury and finally, vacated the entire award. *Id.* at 715-16.

Similarly, in *Wilburn*, the jury was presented with various theories of negligence under the Jones Act. *Wilburn v. Maritrans GP, Inc.,* 139 F.3d 350, 361 (3d Cir. 1998). The court determined that certain of the theories were "beyond the common knowledge possessed by the members of the jury." *Id.* And yet those theories were not supported by expert testimony or even lay opinion testimony by those with experience in the relevant area. *Id.* When the jury reached a verdict of negligence, it was impossible to determine upon which of the theories of negligence the jury based its determination. And because some of the theories were unsupported by the evidence (for lack of proper opinion testimony), the court granted a new trial. *Id.*; *see also Avins v. White,* 627 F.2d 637, 646 (3d Cir. 1980) (after finding two out of three of the statements presented to the jury legally unsupportable under defamation laws, setting aside general verdict because "there is the distinct possibility that if we affirm the jury's verdict, we may do so on the basis of non-defamatory statements").

In this case, the jury can reach its verdict in only one of two different ways: (1) relying upon testimony of Mr. Ueno based on profits analysis that did not show how profits were causally related to the infringing elements of the software, *i.e.,* based on an incorrect legal standard, or (2) by attempting to follow the model Ninth circuit jury instructions, which tell them how to determine damages, *i.e.,*

based on the correct legal standard, but a task which was beyond their expertise to accomplish.

The first approach is legally unsupportable because it does not causally link profits to infringing aspects of the software. *See Polar Bear*, 384 F.3d at 713. A verdict rendered on an incorrect legal standard cannot stand. *See Wilburn*, 139 F.3d at 361 ("[w]here … one theory of liability is not … legally sound, the verdict cannot stand …"). With regard to approach number two, it is undisputed it would have required expert testimony, but, similar to *Wilburn*, no such expert assistance was provided at trial. Mr. Ueno's testimony lacked ***any*** correlation to the factual determinations between profits and infringement the jury needed to make.

Each possible infringement analysis on which the jury could base its verdict is either legally incorrect or incompetent. Therefore, the PCT is entitled to judgment as a matter of law.

## IV. Conclusion

Given the undisputed facts and the relevant law, Fleming respectfully asks that this Court enter judgment as a matter of law against Mr. Berry as to all claims for profits, actual damages, and/or diminution in value of the disputed software.

DATED: Honolulu, Hawaii, March ⟨2⟩, 2006.


KOBAYASHI, SUGITA & GODA

_____
LEX R. SMITH (659-0)
THOMAS H. YEE (7344-0)

KIRKLAND & ELLIS LLP
MICHAEL E. BAUMANN
DAMIAN D. CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant PCT