CHUN, KERR, DODD, BEAMAN & WONG,
  A Limited Liability Law Partnership

LEROY E. COLOMBE     #3662-0
ANNE E. LOPEZ        #7609-0
745 Fort Street, 9th Floor
Honolulu, HI 96813
Telephone: 528-8200
Facsimile: 536-5869
Email: lcolombe@chunkerr.com
       alopez@chunkerr.com

Attorneys for Defendant
FOODLAND SUPER MARKET, LIMITED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) CASE NO. 03-CV-00385 SOM/LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| vs. | ) |
| | ) DECLARATION OF LEROY E. |
| HAWAIIAN EXPRESS SERVICE, | ) COLOMBE IN SUPPORT OF |
| INC., a California | ) DEFENDANT FOODLAND SUPER |
| corporation; et al., | ) MARKET, LIMITED'S MOTION FOR |
| | ) ATTORNEYS' FEES AND RELATED |
| Defendants. | ) NON-TAXABLE COSTS; EXHIBITS |
| | ) "A" TO "D" |
| | ) |
| | ) |

DECLARATION OF LEROY E. COLOMBE IN SUPPORT OF
DEFENDANT FOODLAND SUPER MARKET, LIMITED'S MOTION
FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS

  1. I am LEROY E. COLOMBE.  I am an attorney licensed to practice in the State of Hawaii and before this Court and I make this declaration upon personal knowledge.

  2. I am a member of the law firm of Chun, Kerr, Dodd, Beaman & Wong, a Limited Liability Law Partnership, attorneys for

Defendant FOODLAND SUPER MARKET, LIMITED ("Foodland") in the present case. I am fully familiar with the facts of this matter.

3. I was admitted to practice before the Hawaii Supreme Court and before this Court in 1984. I have over twenty years of experience in commercial and real estate litigation. I have received Martindale-Hubbell's highest Peer Review Rating.

4. Iver N. Larson was employed by this firm as an associate during the period from May 2003 through May 2005. He was admitted to practice before the Hawaii Supreme Court and before this Court in 2003.

5. Laura E. Warfield is employed by this firm as a litigation paralegal. She has over twenty years of experience as a litigation paralegal in New York City and Honolulu. Both state and federal courts have awarded fees for her services, at the firm's customary rates, on multiple occasions.

6. The chart contained in **Ex.A** contains a true and correct copy of the services actually performed and invoiced that were necessary to Foodland's success in this lawsuit.

7. The necessary services referenced above include, but are not limited to:

    a. reviewing, analyzing, and responding to the First Amended Complaint in this matter;

    b. participating in mediation efforts, as well as direct settlement discussions with Plaintiff's attorney, both of which were ultimately fruitless;

    c. reviewing and responding to a motion to file a Second Amended Complaint, which attached a proposed draft Second Amended Complaint that was 42 pages long, with 185 paragraphs of factual allegations, much of which was impertinent, scandalous, and ultimately not allowed by the Court;

    d. reviewing and responding to a revised Second Amended Complaint in the form allowed by this Court;

    e. conducting discovery of Plaintiff's vague and scattershot allegations which lumped Foodland in with other Defendants without specifying which Defendants allegedly committed which acts;

    f. responding to overly broad, unduly burdensome, and (in some cases) irrelevant discovery requests by Plaintiff;

    g. reviewing a massive amount of correspondence and pleadings, as is evidenced by the fact that my firm's files on this case, <u>for pleadings alone</u>, beginning with the First Amended Complaint through this Court's order granting summary judgment, take up nineteen file folders and include 389 documents;

    h. attending several depositions, including the lengthy deposition of Mark Dillon;

    i. reviewing, responding (where appropriate), and attending conferences concerning many different matters, including Plaintiff's Motion for Preliminary Injunction and

motions concerning appointment of a Discovery Master, as well as conferences with the Discovery Master;

  j. fending off Plaintiff's attempt to make use of inadvertently-disclosed privileged documents, including ultimately obtaining a ruling of the Court protecting the privilege;

  k. preparing and arguing a successful motion for summary judgment which, based on the nature of the claims in the Second Amended Complaint, required research and briefing of issues on each of the five counts brought against Foodland.

  8. The hourly rates shown in **Ex.A** are the rates customarily charged by the firm at the time the indicated services were rendered.

  9. I am generally familiar with the hourly rates for attorneys and paralegals charged by other law firms in the community for similar legal services. The rates charged by this firm are well within the normal range of legal fees charged in Honolulu, as shown by **Ex.B** attached hereto, which is a table showing rates charged by Honolulu attorneys, as reported in the *Book of Lists* published by *Pacific Business News* for the years 2003 through 2006.

  10. Not only is my regular hourly rate within the range of those charged for similar legal services by similar law firms, but, beginning in September 2004, I reduced that hourly

101755.3    4

rate for this particular client and representation from $265 to $225.

      11.    Attached hereto as ***Ex.C*** and made a part hereof is a table showing the non-taxable costs incurred by Foodland herein, along with true and correct copies of invoices from outside vendors therefor.  These costs were necessarily incurred in defending Foodland in this lawsuit.

      12.    Attached hereto as ***Ex.D*** is a true and exact copy of Defendant Foodland Super Market, Limited's Response to Plaintiff Wayne Berry's First Request for Answers to Interrogatories to Defendant Foodland Super Market, Limited of December 1, 2003.

      I, LEROY E. COLOMBE, do declare under penalty of law that the foregoing is true and correct.

      DATED: Honolulu, Hawaii, March 23, 2006.

                                      /s/ Leroy E. Colombe
                                      LEROY E. COLOMBE