ANDREW V. BEAMAN      #2914-0
LEROY E. COLOMBE      #3662-0
CHUN, KERR, DODD, BEAMAN & WONG,
  A Limited Liability Law Company
745 Fort Street, 9th Floor
Honolulu, HI 96813
Telephone: 528-8200
Facsimile: 536-5869
Email: abeaman@ckdbw.com
       lcolombe@ckdbw.com

Attorneys for Defendant
FOODLAND SUPER MARKET, LIMITED


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen, <br><br>          Plaintiff, <br><br>     vs. <br><br> HAWAIIAN EXPRESS SERVICE, INC., a California corporation; H.E.S. TRANSPORTATION SERVICES, INC., a California corporation; CALIFORNIA PACIFIC CONSOLIDATORS, INC., a California corporation; JEFFREY P. GRAHAM and PETER SCHAUL, California citizens; MARK DILLON and TERESA NOA, BRIAN CHRISTENSEN, Hawaii citizens; FLEMING COMPANIES, INC., an Oklahoma corporation; C & S LOGISTICS OF HAWAII, LLC, a Delaware LLC; C & S WHOLESALE GROCERS, INC., a Vermont corporation; C & S ACQUISITIONS, LLC; FOODLAND SUPER MARKET, LIMITED, a Hawaii corporation; HAWAII TRANSFER COMPANY, LIMITED, a Hawaii corporation, DOE INDIVIDUALS 1-350; DOE PARTNERSHIPS, CORPORATIONS and OTHER ENTITIES 1-20, <br><br>          Defendants. | CASE NO. 003-CV-00385SOM/LEK (Copyright) <br><br> DEFENDANT FOODLAND SUPER MARKET, LIMITED'S RESPONSE TO PLAINTIFF WAYNE BERRY'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO DEFENDANT FOODLAND SUPER MARKET, LIMITED |

**EXHIBIT D**

**DEFENDANT FOODLAND SUPER MARKET, LIMITED'S RESPONSE TO PLAINTIFF WAYNE BERRY'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO DEFENDANT FOODLAND SUPER MARKET, LIMITED**

Defendant FOODLAND SUPER MARKET, LIMITED ("Foodland"), hereby submits its response to Plaintiff Wayne Berry's First Request for Answers to Interrogatories to Defendant Foodland Super Market, Limited served herein on or about October 30, 2003 (the "Request").

GENERAL RESPONSES AND OBJECTIONS

As a general response to the interrogatories included in the Request, Foodland responds and objects as follows:

1. Foodland objects to the Request to the extent it seeks information not within the present possession, custody or control of Foodland, or already in the possession of Plaintiff or his counsel.

2. Foodland objects to the Request to the extent that it seeks information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of evidence admissible herein.

3. Foodland objects to the Request to the extent that it requests the production of privileged information or information not subject to discovery, such as attorney-client communications, work product, information relating to trial preparation or joint defense, and information from non-testifying experts.

4.   Foodland objects to the Request to the extent that it seeks confidential business information which may be covered by the Hawaii Uniform Trade Secrets Act (H.R.S. Chap. 428B).

5.   Foodland objects to the Request to the extent that it is unreasonably burdensome, oppressive, or vexatious.

6.   Foodland objects to the Request to the extent that it is vague, ambiguous, of uncertain meaning, or unintelligible.

7.   Foodland objects to the definitions and instructions set forth in the request to the extent that they exceed the requirements of Rules 26 and 33 of the Federal Rules of Civil Procedure.

Foodland has not completed its investigation of the facts underlying this case, or its discovery or trial preparation herein. Therefore the following responses are given without prejudice to Foodland's right to obtain and to use any subsequently discovered information or documents.

Without waiving these objections, Foodland responds to the Request as follows, incorporating by reference the above objections and statement into each and every applicable individual response.

DATED:   Honolulu, Hawaii, December 1, 2003

_____
ANDREW V. BEAMAN
LEROY E. COLOMBE
CHUN, KERR, DODD, BEAMAN & WONG,
   A Limited Liability Law Company

Attorneys for Defendant
FOODLAND SUPER MARKET, LIMITED

79949.1                              3

## INTERROGATORIES

1. Identify any and all "Freight Control Software" (as defined above) plus each and every person that has knowledge of these software(s) or access to this software, that you presently use and/or have used since January 1, 1997 to the present, that is related in any way to transportation of Foodland goods. Your answer should include, but not be limited to, all software developers, vendors, customers, auditors and persons who have used, seen, discussed or dealt in any way with any such freight control software. Additionally, identify any and all licenses, if any, under which you claim any right to use the software or any and all filed copyright registrations regarding such software.

OBJECTION:    Defendant FOODLAND SUPER MARKET, LIMITED ("Foodland") objects to Plaintiff's definition of "Freight Control Software," which renders this interrogatory unreasonably broad, vague and ambiguous, of uncertain meaning and unintelligible.

ANSWER:    Foodland does not own or have access to any "Freight Control Software." Foodland's wholesaler, C&S Wholesale Grocers, Inc. ("C&S"), is responsible for coordinating the shipment and delivery of goods sold to us; the same was true for C&S's predecessor, Fleming Companies, Inc. Freight costs incurred by C&S on Foodland's behalf are added into C&S's quoted sell price to Foodland, except for the cost of products shipped to the neighbor islands by Young Brothers, which are billed separately. In addition, Foodland purchases products directly from manufacturers and consigns the products to C&S for shipment and distribution to Foodland stores. Typically these additional products will be shipped in containers which contain substantial amounts of C&S products.

79949.1

2. State the total amount of gross revenue received in each of the past three years from food sales in the state of Hawaii by island.

OBJECTION: Foodland objects to this interrogatory as it seeks confidential business information which is irrelevant to the matters at issue herein, is overly broad, unduly burdensome, oppressive and vexatious, and is not reasonably calculated to lead to the discovery of evidence admissible herein.

3. If you claim that any of these revenues were not derived through the infringement of Mr. Berry's copyright, please state in detail the total amount of cost deductions from the above gross revenue figures for the past three years.

OBJECTION: Foodland objects to this interrogatory as it assumes facts not in evidence, is overly broad, unduly burdensome, oppressive and vexatious, seeks confidential business information which is irrelevant to the matters at issue herein, and is not reasonably calculated to lead to the discovery of evidence admissible herein.

4.   State the total amount of gross revenue received in each of the past three calendar years from food sales in the state of Hawaii by island for food not purchased through Fleming either as a wholesaler, warehouser and/or freight forwarder. Your answer should include each and every non-Fleming wholesaler, warehouse and/or freight forwarder that you have used in the past three calendar years and state the amount paid by year to each such entity and describe how Foodland tracked its shipments from these other freight forwarders.

OBJECTION:   Foodland objects to this interrogatory as it is overly broad, unduly burdensome, oppressive and vexatious, seeks confidential business information which is irrelevant to the matters at issue herein and which may be covered by the Hawaii Uniform Trade Secrets Act (H.R.S. Chap. 428B), and is not reasonably calculated to lead to the discovery of evidence admissible herein.

5.   Describe in detail, how direct store deliveries are processed including, but not limited to, the manner that ocean transport and trucking are booked, the manner in which payments to truckers are recorded and tracked and the manner in which freight invoices are presented and audited for the period of 2002 to the present and identify all documents related direct store delivery and the manner that ocean transport and trucking are booked, the manner in which payments to truckers are recorded and tracked and the manner in which freight invoices are presented and audited for the period of 2002 to the present.

OBJECTION:   Foodland objects to this interrogatory as it is overly broad, unduly burdensome, oppressive and vexatious, seeks confidential business information which is irrelevant to the matters at issue herein and which may be covered by the Hawaii Uniform Trade Secrets Act (H.R.S. Chap. 428B), and is not reasonably calculated to lead to the discovery of evidence admissible herein.

79949.1                                    3

6. Describe in detail each and every thing that Foodland officers and/or directors did, including Foodland's attorneys, to respond to Mr. Berry's certified letter claiming infringement related to Foodlands investigation of the claim of infringement. Identify all documents related to these efforts.

ANSWER: Foodland confirmed with the following persons that Foodland was not utilizing, and had not utilized, "Mr. Berry's freight control system" (as described in Timothy Hogan's July 25, 2003 letter) to conduct direct store shipments: Foodland's President, Abel Porter; Foodland's Vice President of Sales & Marketing, Joe Detro; Foodland's Directory of Grocery Operations, Beau Oshiro; Foodland's Controller, Kam Wong; and Foodland's freight consultant, Dean Ota. Foodland's attorney, Edward Chun, responded to Mr. Hogan with a letter dated August 11, 2003.

There are no non-privileged documents in Foodland's possession, custody or control except for the July 25, 2003 and August 11, 2003 letters.

7. Describe in detail, any and all evidence and legal support you have for claiming that Wayne Berry is not the owner of the "Freight Control Software" that is the subject of this case.

OBJECTION: Foodland objects to this interrogatory as premature as Foodland is not in possession of information sufficient to enable it to respond to this interrogatory at this time.

8. Describe in detail, the ownership interest of any Foodland shareholder, officer and/or director in Golden State Foods, Corporation and/or McDonald's Corporation including, but not limited to, the ownership by percentage and the total amount of income/compensation received for the last five calendar years for each such person.

OBJECTION: Foodland objects to this interrogatory as it is overly broad, unduly burdensome, oppressive and vexatious, seeks confidential business information which is irrelevant to the matters at issue herein and which may be covered by the Hawaii Uniform Trade Secrets Act (H.R.S. Chap. 428B), and is not reasonably calculated to lead to the discovery of evidence admissible herein.

9. Describe in detail, why Foodland chose not to change wholesalers when it learned that Fleming had been engaged in overcharging.

OBJECTION: Foodland objects to this interrogatory as it assumes facts not in evidence, seeks information which is irrelevant to the matters at issue herein, is not reasonably calculated to lead to the discovery of evidence admissible herein, and appears to have been propounded merely to harass and to intimidate Foodland.

10. Describe in detail, what Foodland did to investigate the claim of overcharging in the fall of 2000 specifically what its officers and directors did to insure that Foodland was not passing illegally inflated prices on to consumers. This will include, but not be limited to what Jenai Wall did to verify that her statements in a full page Honolulu Advertiser advertisement regarding the overcharges was true and not misleading to consumers.

OBJECTION: Foodland objects to this interrogatory as it assumes facts not in evidence, seeks information which is irrelevant to the matters at issue herein, is not reasonably calculated to lead to the discovery of evidence admissible herein, and appears to have been propounded merely to harass and to intimidate Foodland.

11. Describe in detail, what all communication between Foodland and its agents and attorney and Fleming and its agents and attorneys regarding food overcharges. Identify all documents related to such communications.

OBJECTION: Foodland objects to this interrogatory as it is of uncertain meaning and unintelligible, assumes facts not in evidence, seeks information which is irrelevant to the matters at issue herein, is not reasonably calculated to lead to the discovery of evidence admissible herein, and appears to have been propounded merely to harass and to intimidate Foodland.

12. Identify each and every Foodland employee that uses any and all paper generated by Fleming-Logistics and/or C&S of Hawaii Logistics all documents related to such communications.

OBJECTION: Foodland objects to this interrogatory as it is overly broad, unduly burdensome, oppressive and vexatious, of uncertain meaning and unintelligible.