398162

**KOBAYASHI, SUGITA & GODA**
LEX R. SMITH          3485-0
THOMAS H. YEE          7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone No. (808) 539-8700
Facsimile No.   (808) 539-8799
Email: lrs@ksglaw.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>                    Plaintiff,<br><br>          vs.<br><br>HAWAIIAN EXPRESS SERVICE,<br>INC., et al.,<br><br>                    Defendants.<br>_____ | ) CIVIL NO. CV03-00385 SOM-LEK<br>) (Copyright)<br>)<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF**<br>) **DEFENDANT PCT'S RENEWED**<br>) **MOTION FOR JUDGMENT AS A**<br>) **MATTER OF LAW AGAINST**<br>) **ENTITLEMENT TO PROFIT AND**<br>) **VICARIOUS LIABILITY**<br>)<br>) Judge:          Hon. Susan O. Mollway |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT PCT'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AGAINST ENTITLEMENT
<u>FOR PROFIT AND VICARIOUS LIABILITY</u>**

# TABLE OF CONTENTS

**Page**

I.  Introduction.................................................................................................1

II.  Judgment as a Matter of Law Lies Where the Evidence Supports Only One Conclusion. ...............................................................................4

III.  Berry's Evidence Does Not Link Infringement to Profits....................5

    A.  Berry Had the Burden To Prove a Causal Connection. ............................6

        1.  Berry Needed to Show a Greater Causal Connection to Recover Indirect Profits Than if He Had Sought Direct Profits. .......................................................................................7

        2.  Mere Use of Infringing Work Was Not Sufficient to Establish Causation..........................................................................9

        3.  Damages Must Be Related to Profits from Relevant Business Units Involved in the Infringement. ...............................10

    B.  Berry's Expert Failed to Show the Connection Between Fleming's Infringing Use and Its Profits...................................................12

    C.  Berry, as a Lay Witness, Could Not Establish the Causal Link. .............15

IV.  Berry's Evidence Does Not Support a Vicarious Liability Against Fleming. ................................................................................................16

    A.  The Absence of Profit Means There Was No Vicarious Liability. ................................................................................................16

    B.  There Can Be No Vicarious Liability Because the Jury Found No Profits to Disgorge...........................................................................17

    C.  Alternatively, Vicarious Liability is Improper Because the Employees Acted in the Scope of their Duties as Agents of Fleming.................................................................................................18

V.  Conclusion .............................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

A&M Records v. Napster, Inc.
  239 F.3d 1004 (9th Cir. 2001) ..............................................................16

American Home Assurance Co. v. Sunshine Supermarket, Inc.,
  753 F.2d 321 (3d Cir. 1985) ...............................................................15

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ...........................................................................4

Andreas v. Volkswagen of America, Inc.,
  336 F.3d 789 (8th Cir. 2003) ..........................................................6, 7

Bonner v. Dawson,
  404 F.3d 290 (4th Cir. 2005) ..........................................................6, 8

Bouchat v. Baltimore Ravens Football Club, Inc.,
  346 F.3d 514 (4th Cir. 2003) .............................................................9

Cream Records, Inc. v. Jos. Schlitz Brewing Co.,
  754 F.2d 826 (9th Cir. 1985) ............................................................10

Ellison v. Robertson
  357 F.3d 1072 (9th Cir. 2004) ...........................................................16

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
  772 F.2d 505 (9th Cir. 1985) ........................................... 7, 9, 18, 19

In re Agent Orange Prod. Liab. Litig.
  611 F. Supp. 1223 (E.D.N.Y. 1985) ....................................................14

In re Letterman Bros. Energy Sec. Litig.,
  799 F.2d 967 (5th Cir. 1986) ..............................................................5

James v. Milwaukee County,
  956 F.2d 696 (7th Cir. 1992) ..............................................................5

John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,
  322 F.3d 26 (1st Cir. 2003) ...............................................................13

## TABLE OF AUTHORITIES (cont'd.)

**Page**

Johnson v. Campbell,
  332 F.3d 199 (3d Cir. 2003) .................................................................5

Mackie v. Rieser,
  296 F.3d 909 (9th Cir. 2002) ............................................................5, 6

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.
  125 S.Ct. 2764 (2005) ......................................................................16

On Davis v. The Gap, Inc.,
  246 F.3d 152 (2d Cir. 2001) ............................................... 6, 8, 10, 11

Polar Bear Prods., Inc. v. Timex Corp.,
  384 F.3d 700 (9th Cir. 2004) ....................................................... passim

Ross v. University of Texas at San Antonio
  139 F.3d 521 (5th Cir. 1998) ...............................................................14

Sheldon v. Metro-Goldwyn Pictures Corp.,
  309 U.S. 390 (1940) ..........................................................................13

Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,
  No. CV-71-2262-MML, 1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983) ............9

Taylor v. Meirick,
  712 F.2d 1112 (7th Cir. 1983) ...................................................... 10, 11

United States v. Mussare,
  405 F.3d 161 (3d Cir. 2005) ...............................................................15

United States v. Tranowski,
  659 F.2d 750 (7th Cir. 1981) ..............................................................14

Weisgram v. Marley Co.,
  528 U.S. 440 (2000) ...........................................................................4

Wilden Pump & Eng'g Co. v. Pressed and Welded Products Co.
  655 F.2d 984 (9th Cir. 1981) ....................................................... 18, 19

## TABLE OF AUTHORITIES (cont'd.)

**Page**

**Statutes**

17 U.S.C. § 504(b) ...................................................................................6

**Rules**

Federal Rules of Civil Procedure Rule 50 .............................................3, 4

Federal Rules of Evidence 702 ................................................. 15, 17, 18

**Treatises**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2521
    (3d ed. 1995).......................................................................................4

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2524
    (3d ed. 1995).......................................................................................5

## I.    Introduction

On March 7, 2006, the jury found that the plaintiff was only entitled to actual damages in the amount of $57,534.  It also (erroneously) found that Berry was entitled to recover profits attributable to Fleming's infringement, but found that there was no profit attributable that was not duplicative of the $57,534. Finally, the jury (also erroneously) found Fleming to be vicariously liable for at least one employee.  *See* Ex. A (Special Verdict Form).[1]

No record evidence supports a causal connection between Defendants' infringement of plaintiff's copyright and any theoretical profits that Fleming might have made.  Establishing such a connection required competent expert testimony. Berry, a lay witness with no economic expertise, was not qualified to establish such a connection.  Ueno, purportedly an economic damages expert, might have been qualified but in practical application he failed to render a competent expert opinion because he did not review the underlying financial documents (which were sent to him twice and Berry's counsel once) and did not even understand the meaning of line items contained in exhibits to his own report.  The Court should therefore rule as a matter of law that the answer to jury verdict form question #4 on

---

[1]    All exhibits are attached to the concurrently filed Declaration of R. Olivia Samad.

recovery of profits should be "No."[2]

The answer to jury verdict form question #6 on vicarious liability should also be "No."[3]  The Court's June 27, 2005 summary judgment order shaped the case such that the critical element determining Fleming's vicarious liability was whether Fleming profited from the individual employees' direct infringement. There are three reasons why Fleming did not.

First, for the same reasons the answer to question #4 should be no (i.e., Berry failed to prove causation between Fleming's infringement and Fleming's profits because he failed to offer competent testimony to establish that point), it logically follows that Berry did not prove that Fleming profited from the direct infringement of its employees.

Second, even if Berry did offer sufficient evidence to show a potential causal link between infringement and profits, the jury plainly stated that there were no profits to award.  At trial, Fleming showed that whether one looked at the division as a whole or just at the transportation department Fleming was losing money during the time period in question.  The only rational way to interpret the jury's

---

[2]  Question #4 was:  "Has the plaintiff proven by a preponderance of the evidence that he is entitled to recover profits attributable to Fleming's use of the plaintiff's software between April 1, 2003, and June 9, 2003?"

[3]  Question #6 was:  "Is Fleming vicariously liable for any employee defendant's use of the plaintiff's software between April 1, 2003, and June 9, 2003?"

combined response to questions #4 and #5 is that the jury (erroneously) concluded that Berry had established causation but as a practical matter there were no profits to award. Even in this instance, there can be no vicarious liability for Fleming, because vicarious liability requires that Fleming benefited from the employees' direct infringement. No profits, no vicarious liability.

Finally, Fleming cannot be vicariously liable for the employees' direct infringement because as a matter of law the employees did not directly infringe. The evidence at trial conclusively proved that the employees[4] acted at all times within the scope of their duties and at the direction of their employer, Fleming. Under such circumstances any infringing activities by the employees falls within the scope of Fleming's direct infringement.

Accordingly, by this motion the PCT[5] renews its two motions for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure as to Berry's entitlement to profits from infringement and vicarious liability.

---

[4]  The former Fleming employees ("Employees") are Mark Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio.

[5]  We use "Fleming" and the "PCT" interchangeably throughout our briefing unless context requires otherwise. Fleming Companies, Inc. filed Chapter 11 bankruptcy on April 1, 2003. Fleming's reorganization plan created the Post-Confirmation Trust (PCT) to handle a number of rights and obligations relating to Fleming.

## II.    Judgment as a Matter of Law Lies Where the Evidence Supports Only One Conclusion.

Judgment as a matter of law is proper where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).[6]  A party can renew its request for judgment as a matter of law within ten days after the entry of judgment. Fed. R. Civ. P. 50(b).  Rule 50 allows this Court to remove issues from the jury's consideration and enter judgment as a matter of law "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (citing *Federal Practice and Procedure* § 2521, p. 240).

Judgment as a matter of law is proper where the evidence allows only one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). "[T]he question is not whether there is literally no evidence supporting the

---

[6]    Specifically, Rule 50(a) provides:

(1)    If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2)    Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.  Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment.

party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2524 (3d ed. 1995); *accord Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). A "mere scintilla of evidence" is insufficient to prevent entry of judgment. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992). The court's decision to grant JMOL is not an issue of discretion; it is a conclusion of law based on a finding that there is insufficient evidence to create a fact question for the jury. *In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986).

## III. Berry's Evidence Does Not Link Infringement to Profits.

Due to the plaintiff's inability to establish any causal connection between the alleged infringement and any alleged revenue either through his expert Thomas Ueno or through his own lay testimony, there has been no legally sufficient evidence of profits introduced in the record. Fleming is entitled to judgment as a matter of law on this issue. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (finding no evidence in support of causal link between Symphony's infringing use of Reiser's sculpture in multi-page brochure and profits from subscription to the symphony).

### A.    Berry Had the Burden To Prove a Causal Connection.

17 U.S.C. § 504(b) establishes a two-step framework for recovery of profits. First, the copyright claimant must show a causal nexus between the infringement and gross revenue.  Second, once the plaintiff shows the nexus, the infringer bears the burden of apportioning the profits that were not the result of the infringement. *Polar Bear*, 384 F.3d at 711.

The Ninth Circuit has conclusively ruled that a copyright owner must "demonstrat[e] some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply."  *Polar Bear*, 384 F.3d at 712, *Mackie*, 296 F.3d at 915; *see also Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-61 (2d Cir. 2001);  *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003). This is despite the language of the statute that suggests that a copyright owner "need only provide the company's overall gross revenue, without regard to the infringement." The Ninth Circuit states that this "would make little practical or legal sense."  *Polar Bear*, 384 F.3d at 711;  *see also* 17 U.S.C. § 504(b).

The causation element is a logical parameter to the range of gross profits a plaintiff may seek and obviates "a good deal of mischief in claiming profits beyond what might be attributable to the infringement."  *Polar Bear*, 384 F.3d at 711 (internal citations omitted); *see also On Davis*, 246 F.3d at 160.  Thus, the revenue

stream for profits must bear *a legally significant relationship to the infringement*.

*Polar Bear*, 384 F.3d at 711 (emphasis added).

> ### 1. Berry Needed to Show a Greater Causal Connection to Recover Indirect Profits Than if He Had Sought Direct Profits.

A copyright owner may  include revenue that is an indirect result of the

copyright infringement, but the Ninth Circuit requires that the plaintiff must meet a

*higher* burden of establishing a causal nexus.  "[C]ausation in indirect profit claims

is often more attenuated than claims for actual damages or direct profits.  It is

therefore particularly important for the plaintiff in indirect profit action to

demonstrate the alleged causal link between the infringement and profits sought."

*Polar Bear,* 384 F.3d at 711, n.7;  *see also Frank Music Corp. v. Metro-Goldwyn-*

*Mayer, Inc.*, 772 F.2d 505, 516-517 (9th Cir. 1985) (allowing claim for indirect

profits under Copyright Act of 1909); *Cream Records*, 754 F.2d at 828-29

(allowing claim for indirect profits for use of copyrighted material in commercial

to sell product).

Because Berry sought profits for the *use* of his software instead of for its

*sale*, he needed to establish a higher causal burden required for indirect profits.

*Compare Polar Bear*, 384 F.3d at 712-16 (vacating a jury's indirect profit award

because of the plaintiff's failure to establish the required casual nexus between all

three of defendant's revenue streams), *Andreas*, 336 F.3d at 796-99 (reinstating a

jury's verdict awarding a percentage of profits derived from sales related to advertisements because the plaintiff had introduced a large amount of circumstantial evidence evidencing the requisite nexus between infringement and profits), *and On Davis*, 246 F.3d at 159-61 (affirming the district court's grant of summary judgment based on infringer's profits in favor of defendant because plaintiff had only submitted the defendant's gross revenues rather than defendant's gross revenues attributable to "the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories"), *with Bonner*, 404 F.3d at 294 (holding that proof that "[t]he building generating the funds was designed based upon [a valid] copyright," satisfies the "requirement of a 'causal connection' between the infringement and the profit stream").

In *Polar Bear*, Timex used the plaintiff's kayaking film footage over its express prohibition to promote and sell Expedition watches. *Polar Bear*, 384 F.3d at 704-05. The plaintiff won $2.4 million in actual damages and indirect profits. *Id.* The Ninth Circuit found that evidence of the causal connection to revenues based on a brand premium theory was "woefully insufficient" and stretches the causation rubber band to its breaking point. *Id.* at 714. The plaintiff failed to show how its film footage was causally linked to all the revenues from the sales of all Expedition watches. *Id.* The district court erred by allowing the jury to consider the claim because the plaintiff could not demonstrate a nonspeculative causal link.

*Id.* at 716.

Berry, like Polar Bear, needed to show how Fleming's overall profits were indirectly related to his 1993 FCS. Recovering indirect profits is only allowed if the amount of profit indirectly attributable to the infringing use can be ascertained. *Frank Music,* 772 F.2d at 517; *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, No. CV-71-2262-MML, 1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983).

### 2. Mere Use of Infringing Work Was Not Sufficient to Establish Causation.

Fleming's use of Berry's software did not, by itself, entitle Berry to disgorgement of Fleming's profits. *Polar Bear*, 384 F.3d at 713 (finding that use of copyrighted film footage and minimal causal link was insufficient to support an award for indirect profits). The Court should have excluded from the jury's inquiry those portions of Fleming's revenues that had no conceivable connection to infringement or for which the plaintiff has offered no more than mere speculation as to existence of causal connection to infringement. *See Polar Bear*, 384 F.3d at 716 (finding the jury should not have considered profits from brand premium calculation because the plaintiff failed to demonstrate a nonspeculative causal link between its work and the infringement); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) (ruling that a football team revenues, which were not attributable to use of an artist's work in the team logo, could not be

included in the calculation of defendants' profits).

### 3. Damages Must Be Related to Profits from Relevant Business Units Involved in the Infringement.

Because it would go against basic tort law principles to allow a copyright owner to claim all of an infringer's revenue even though the infringement may have increased the revenues by only a small amount, courts require the copyright owner to limit his claim to revenue reasonably attributable to the infringement. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 828 (9th Cir. 1985). Thus, Berry needed to do more "initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Polar Bear*, 384 F.3d at 711 (citing Seventh Circuit *Taylor v. Meirick* and Second Circuit *On Davis v. The Gap* cases with approval).

Similarly, in *On Davis v. The Gap, Inc.*, the plaintiff's proof of defendant's profits was not limited to the defendant's particular lines of business and the particular subsidiary involved in the infringement. 246 F.3d 152, 160 (2d Cir. 2001) (cited with approval in *Polar Bear,* 384 F.3d at 711, n.8). The plaintiff, an eyeglass designer, failed to show causal connection between the infringing use of its eyeglasses in a Gap ad and the Gap's profits from that infringing use. *Id.* at 159-60. The plaintiff showed an increase of $146 million in net sales for Gap's corporate parent following the use of the ad. *Id.* The Court found the evidence not

-10-

reasonably related to the precise infringement at issue "[b]ecause the ad infringed only with respect to Gap label stores and eyewear, . . . it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." *Id.* "The statutory term, 'infringer's gross revenue' should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement." *Id.* at 160.

Like The Gap whose use of eyeglasses in an ad was not sufficiently connected to the overall profits of the company, Fleming's profits are not reasonably related to the precise infringement caused by its use of the largely licensed Berry software. The plaintiff in a copyright action against a company with multiple divisions and products cannot merely offer a gross revenue number and sit back. *See Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (remanding for new trial on damages under § 504(b) from infringing maps). The *Taylor* court reasoned, "If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Id.* The same is true here. Berry had a burden to show Fleming's profits were related to the infringement. Failing that, the PCT is entitled to JMOL.

### B.    Berry's Expert Failed to Show the Connection Between Fleming's Infringing Use and Its Profits.

Berry's expert, Thomas Ueno, over the PCT's objections, testified in the plaintiff's case-in-chief and in Berry's rebuttal case.  When he testified, as the Court will recall, he admitted under cross-examination to twice receiving Fleming's financial reports in the mail and not opening the package either time.[7] Even worse, he admitted that he reviewed only one page of each period's financial reports, voluminous reports that are half an inch thick.  He never looked at the detail behind the reports until at the break in his testimony that day.  He came back to mislead the jury by testifying that there was no line item for costs of goods sold,[8] and he was unable to even explain the meaning of other line items in exhibits to his own report.

Mr. Ueno's testimony lacked foundation and should not have been admitted in the first instance.  Furthermore, it did not tie profits to infringing elements of the software and therefore, cannot cure the deficiencies in Berry's case-in-chief.

Berry needed expert testimony to causally link the infringer's profits with the infringement.  *See, e.g.*, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S.

---

[7]    The PCT can supplement this with cites to the trial transcripts when the certified copies become available.

[8]    The lack of a separate line item for cost of goods sold was explained in detail by Fleming's former controller, Andrew Chun, and Fleming's damages expert,

390, 409 (1940) (explaining that there is "no greater difficulty in the admission and use of expert testimony" in cases of apportioning infringer's profits than in property rights valuation cases, especially when "such testimony often forms the sole basis for the decision"); *Polar Bear*, 384 F.3d at 709, 712-13 (discussing expert testimony regarding actual damages and the causal link between infringement and profits); *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 48 (1st Cir. 2003) (allowing architect expert testimony regarding damages).  Indeed, Berry explicitly acknowledged the need for expertise by presenting Mr. Ueno's expert testimony to guide the jury.  Moreover, Mr. Ueno would not have been *permitted* to provide his opinion testimony if profits from infringement were an issue within the competency of the jurors to understand without expert testimony.  "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  Fed. R. Evid. 702, Advisory Committee Notes, 1972 Proposed Rules.

Here, Mr. Ueno's testimony was based on an insufficient and incomplete

---

Jeff Kinrich, who testified that the cost of goods was simply the difference between two other line items.

review of Fleming's financial statements.  On cross examination, he was unable to identify or explain his own exhibits and line items, and he admitted to reviewing none of the details underlying his financial statements.  No reasonable financial expert would rely on merely the summary page of voluminous documents in reaching his opinion, or furthermore, on documents provided solely by the plaintiff in anticipation of litigation.  *See Ross v. University of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998) (finding that expert statistician's  conclusions about discrimination and faculty salaries expressly based upon incomplete information could not contain any statistical analysis that would be competent testimony); *United States v. Tranowski*, 659 F.2d. 750, 755 (7th Cir. 1981) (finding trial court erred by admitting astronomer's testimony about date of a photograph based on measuring shadows because it was never shown that an astronomer would rely on his methods to date a photograph); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987) (excluding proposed testimony because it was based on self-serving and unverified checklists filled out by the plaintiffs and inapposite general studies and literature "so lacking in probative force and reliability that no reasonable expert could base an opinion on them").

On this record, regardless of his qualifications, he could not have provided the jury with adequate evidence of a causal link to profits.

## C.     Berry, as a Lay Witness, Could Not Establish the Causal Link.

By offering Mr. Ueno as an expert, Berry acknowledged that the subject of his opinion—the alleged profits Fleming earned from infringing software—required scientific, technical or other specialized knowledge under Rule 702.  *See* Fed. R. Evid. 702 ("[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise . . .").  The Court appears to have agreed that expert guidance on the subject was needed, because it permitted Mr. Ueno to testify despite the PCT's motion to preclude his testimony.[9]

Wayne Berry, on the other hand, is a lay witness.  He offered no evidence at trial to establish that he has any economic expertise.  To be more specific, there

---

[9]  "[A] pre-trial motion in limine relieves a defendant of [its] need to make contemporaneous objections in order to preserve an issue on appeal."  *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005); *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324-25 (3d Cir. 1985) ("[I]f an issue is fully briefed and the trial court is able to make a definitive ruling, then the motion in limine provides a useful tool for eliminating unnecessary trial interruptions. . . .  Under these circumstances, requiring an objection when the evidence was introduced at trial would have been in the nature of a formal exception and, thus, unnecessary under Rule 46.").  Here, of course, the PCT moved *in limine* prior to trial to exclude Ueno's testimony and moved to strike and exclude his testimony again at trial when it was clear that he failed to examine any underlying financial documents.

was no evidence that Berry has any professional training in economics, that he has any specialized education in economics, or even that he has a college degree of any kind. Berry established himself as a software designer, that is all. And his standing as a software designer does not entitle him to opine under F.R.E. 702 about how, if at all, his software impacted Fleming's profits during the relevant period of time, which was four years after he last worked for API. Like Ueno, Berry offered no competent evidence on which the jury could have based a finding that Berry was theoretically entitled to disgorgement of any of Fleming's profits. Since Berry offered no evidence on these issues other than testimony from himself and Ueno, the trial record supports only one answer to verdict form question #4: "No."

## IV.    Berry's Evidence Does Not Support a Vicarious Liability Against Fleming.

### A.    The Absence of Profit Means There Was No Vicarious Liability.

As a threshold matter for vicarious infringement, there must be a finding of direct infringement. Then, the two elements of vicarious infringement are (1) the right to control the party who infringed; and (2) profit from direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2776 (2005); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)). This Court ratified that view: "One infringes vicariously by profiting from direct infringement while declining to

exercise a right to stop or limit the infringement… It is ***unclear***, however, ***whether***

***Fleming realized any profit*** through use of the altered version of FCS." *See* Ex. B

at p. 29 (June 27, 2005 Summary Judgment Order) (emphasis added); *see also* Ex.

C (p. 24 of jury instructions) (requiring that Fleming "profited from the infringing

activity").  In sum, the Court had established a binary scheme:  Fleming would be

vicariously liable if (and only if) there were profit attributable to the infringement.

But as described fully above in Part III, there is no causal link between profits and

infringements, compelling the conclusion that Fleming did ***not*** realize any profit

from the altered version of the FCS.  Therefore, Fleming is not liable for vicarious

infringement.

> **B.    There Can Be No Vicarious Liability Because the Jury Found No
> Profits to Disgorge.**

Second, as a matter of fact, the jury found that there was no profit

attributable to Fleming's (direct) infringement.  *See* Ex. A at p. 5 (Special Verdict

Form, Question 5).[10]  Even if the plaintiff had shown a theoretical connection to

profits, the jury obviously agreed with the PCT's trial presentation that there were

no profits to claim from Fleming during the relevant window of time, whether one

looked at the Hawaii division generally or the transportation department

---

[10]   In addition, there was no evidence presented at trial that the individual
employee defendants personally profited.  Indeed, Berry did not even cross-
examine them.

specifically.  There were no profits attributable to infringement, because there were no profits at all.  Under these circumstances there is similarly no basis for finding that Fleming was vicariously liable.

### C.     Alternatively, Vicarious Liability is Improper Because the Employees Acted in the Scope of their Duties as Agents of Fleming.

Finally, the trial evidence uniformly showed that the former Fleming employees acted in scope of their duties and at all times at the direction of Fleming.  On this record there can be no vicarious liability because there is no evidence of direct infringement by the employees as individuals.  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985); *Wilden Pump & Eng'g Co. v. Pressed and Welded Products Co.*, 655 F.2d 984, 990 (9th Cir. 1981) (reversing direct infringement finding for non-management employees who derived no personal benefit from infringement).

In *Wilden*, the Ninth Circuit reasoned:

No contention has been made that [the employee] enjoyed profits or derived distinct benefits from the infringement separate from those of any other salaried employee…

The appellee simply maintains that [the employee] should be held ***individually liable*** for the infringement ***because he was one of the moving, active, conscious forces behind the appellants' infringement.*** All of the cases cited to us by the appellees which imposed individual liability, however, involve persons who were significant shareholders in the corporation, executive officers or chief executives, presidents of the corporation, alter egos of the company, or other high ranking individuals with personal control, supervision,

-18-

and direction of both the company and the copying of the patent. . ..
**No cases have been cited where a non-management, salaried employee, without more, was found to be an individually liable infringer, and we have found none.**

*Wilden Pump*, 655 F.2d at 990 (emphasis added).

Similarly, in *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985), the court reversed the finding of employee liability because he did not act as a partner or independent contractor. The copyright holders of a musical drama sued MGM, Inc., its subsidiary, MGM Grand, and Don Arden, an individual employee of MGM Grand who staged, produced and directed the show containing the infringing piece. *Id.* at 509. The Ninth Circuit found that the plaintiffs were entitled to damages in the amount of MGM Grand's profits from the infringing work but held that the employee defendant, Arden, could not be held jointly liable for these profits unless he acted as a partner or practically as a partner of MGM Grand, rather than as an employee or independent contractor. *Id.* at 519. Remanding to the district court for the determination of Arden's position with the company, the Court dictated that Arden could only be held jointly and severally liable as an employee if he himself had earned profits in connection with the infringing work, further stating that amounts paid in salary were not to be considered as profits. *Id.*

As in *Frank Music* and *Wilden Pump*, there is no basis for holding the Employees personally liable for actual damages in this infringement action. The

-19-

Employees were former salary and hourly wage earners of Fleming who had no

decision-making authority or control. Any infringement that occurred between

April 1, 2003 and June 9, 2003 was done in the scope of their employment and

under the direction of their supervisors.  Relatedly, Fleming reminds the Court that

Berry introduced no evidence that the employees individually caused any of

Berry's claimed damages, and indeed his expert (Thomas Ueno) testified that he

had no opinion on that point.  Moreover, Berry's counsel conceded towards the end

of trial that the vicarious liability determination would not increase his damages,

again emphasizing that the vicarious liability issue was unnecessary and served no

purpose under the Copyright Act.

Fleming is not a living breathing person, and can only act through its

employees.  *See* Ex. C, p. 17.  Thus, the Employees' infringement is Fleming's

infringement. The Employees' infringement is not in addition to Fleming's

infringement but rather, identical to it. The Employees are not liable for profits.

The Employees did not directly cause Berry any actual damages. As the

Employees actual damages and lost profits are zero,  and Fleming profits are zero,

Fleming can have no vicarious liability.  The PCT renews its motion for judgment

as a matter of law as to vicarious liability.

## V.     Conclusion

Given the trial record and the relevant law, Fleming respectfully renews its motions and moves this Court to enter judgment as a matter of law in its favor as to all claims for profits and vicarious liability.

DATED: Honolulu, Hawaii, March 23, 2006.

/s/ Thomas H. Yee
KOBAYASHI, SUGITA & GODA
LEX R. SMITH (659-0)
THOMAS H. YEE (7344-0)

KIRKLAND & ELLIS LLP
MICHAEL E. BAUMANN
DAMIAN D. CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant PCT