# EXHIBIT J

# KIRKLAND & ELLIS

## FLEMING

## ASSET PURCHASE AGREEMENT

among

### C&S ACQUISITION LLC,

as Purchaser,

### C&S WHOLESALE GROCERS, INC.,

as Parent,

### FLEMING COMPANIES, INC.

and

### THE OTHER ENTITIES IDENTIFIED HEREIN,

as Sellers

## July 7, 2003

### VOLUME I OF II

ASSET PURCHASE AGREEMENT

dated as of July 7, 2003

among

C&S ACQUISITION LLC,

as Purchaser,

C&S WHOLESALE GROCERS, INC.,

as Parent,

FLEMING COMPANIES, INC.

and

THE OTHER ENTITIES IDENTIFIED HEREIN,

as Sellers

I:\Fleming\CPAK\C&S r-apa.v.12.doc

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT is dated July 7, 2003, among C&S Acquisition LLC, a Delaware limited liability company ("Purchaser"), Fleming Companies, Inc., an Oklahoma corporation ("Fleming"), Fleming Transportation Service, Inc., an Oklahoma corporation, Piggly Wiggly Company, an Oklahoma corporation, RFS Marketing Services, Inc., an Oklahoma corporation, Fleming International Ltd., an Oklahoma corporation, Fleming Foods of Texas L.P., an Oklahoma limited partnership, Fleming Foods Management Co., L.L.C., an Oklahoma limited liability company, and Fleming Foreign Sales Corporation, a Barbados corporation (each, a "Seller" and collectively, "Sellers"), each a debtor and debtor in possession under Chapter 11 Case No. 03-10945 (MFW) (jointly administered) pending in the United States Bankruptcy Court for the District of Delaware and, with respect to Article V and Sections 14.8 and 14.11 only, C&S Wholesale Grocers, Inc., a Vermont corporation ("Parent").

WHEREAS, Sellers are engaged in the wholesale grocery distribution business;

WHEREAS, Sellers and certain of their Subsidiaries, as debtors in possession pursuant to voluntary petitions, filed on April 1, 2003 for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), pending in the United States Bankruptcy Court for the District of Delaware as Case Nos. 03-10944 through 03-10966 and 03-10970 through 03-10973;

WHEREAS, Sellers have been engaged in an active effort to market the Business and, pursuant to this effort, Fleming has entered into a Supply Agreement with Parent as well as a Letter of Intent (the "Letter of Intent") with Parent, each dated June 27, 2003; and

WHEREAS, Sellers and Purchaser have negotiated in good faith and at arm's-length for the purchase and sale of certain assets of Sellers, including certain assets of Seller's wholesale grocery distribution business, the assumption of certain liabilities associated therewith, and for certain bid protections in connection therewith;

NOW THEREFORE, in consideration of the mutual covenants, agreements and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

1.1     Definitions. Unless otherwise defined herein, capitalized terms used herein shall have the meanings set forth below:

"AAA" shall have the meaning set forth in Section 13.6 hereof.

"Acquired Assets" shall have the meaning set forth in Section 2.1 hereof.

"Acquired Contracts" means the Leases, Subleases and Owned Real Property Leases and other agreements with Third Parties, including without limitation agreements with Third Parties related to the Business or the other Acquired Assets, including the agreements that are listed on

I:\Fleming\CPAK\C&S r-apa.v.12.doc

Schedule 4.11(b), but does not include (i) those Leases and agreements excluded from the Acquired Assets pursuant to Section 2.5, (ii) collective bargaining agreements or other agreements with a labor union or labor organization, (iii) vendor supply agreements (the "Excluded Vendor Supply Agreements") and (iv) any agreements that are Excluded Assets.

"Acquired Leased Equipment" shall have the meaning set forth in Section 2.1(c) hereof.

"Acquisition Proposal" means a proposal or proposals relating to any acquisition, purchase, merger, recapitalization or other similar transaction or series of transactions with or involving any securities or other interests in substantially all of the Acquired Assets, other than sales of Inventory in the ordinary course of business.

"Active Customers" shall have the meaning set forth in Section 3.3(e) hereof.

"Affiliate" shall have the meaning set forth in Bankruptcy Code section 101(2).

"Agents" shall have the meaning ascribed to such term in the DIP Credit Agreement.

"Agreement" means this Asset Purchase Agreement, including all Exhibits and Schedules hereto, as the same may be amended from time to time in accordance with its terms.

"Allocation" shall have the meaning set forth in Section 3.5 hereof.

"Alternative Transaction" means any disposition (other than pursuant to this Agreement and other than sales of Inventory in the ordinary course of business prior to the termination of this Agreement), whether by way of (i) acquisition, purchase, merger, recapitalization or other similar transaction with or involving any securities or other interests in the Acquired Assets, including pursuant to an Acquisition Proposal, or (ii) sale or liquidation of all or any portion of the Acquired Assets, and in each case, whether in a single or series of transactions.

"Ancillary Documents" shall have the meaning set forth in Section 14.8 hereof.

"Applicable Closing" means, with respect to an Acquired Asset, the Initial Closing or the Subsequent Closing pursuant to which such Acquired Asset is assigned, transferred and delivered to Purchaser, any Purchaser Assignee or any Third Party Purchaser pursuant to this Agreement.

"Applicable Closing Date" means, with respect to an Acquired Asset, the date, whether the Initial Closing Date or a Subsequent Closing Date, on which such Acquired Asset is assigned, transferred and delivered to Purchaser, any Purchaser Assignee or any Third Party Purchaser pursuant to the terms of this Agreement.

"Assignment and Assumption" shall have the meaning set forth in Section 10.2 hereof.

"Assignment Deadline" shall have the meaning set forth in Section 2.6 hereof.

"Assumed Liabilities" shall have the meaning set forth in Section 2.3 hereof.

2

(c)     "may not" is prohibitive and not permissive; and

(d)     "or" is not exclusive.

## ARTICLE II
## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1     Purchase and Sale of Assets.  Subject to the terms and conditions set forth in this Agreement, including Section 2.5, at the Applicable Closing, Sellers shall sell, assign, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of, for the consideration specified in Section 3.1, all of Sellers' and their Affiliates' right, title and interest in and to all of their respective assets and properties, including the assets described below, but not including those assets specifically excluded by Sections 2.2 and 2.5 (all of the assets to be sold, assigned, transferred and delivered to Purchaser are called the "Acquired Assets").

(a)     Acquired Contracts and Leasehold Improvements.  All of Sellers interest in the Acquired Contracts and security interests, if any, related thereto, and in the leasehold improvements owned by Sellers that are situated in or on the PSCs (the "Leasehold Improvements").

(b)     Inventory.  All inventory located in or held for sale at the Operating PSCs on the Initial Closing Date and all Inventory In Transit (collectively, the "Inventory"); excluding, however, the Excluded Inventory.

(c)     Equipment.  All of the machinery, vehicles, furnishings, furniture, equipment, trade fixtures, computers, and other similar items of tangible personal property owned by Sellers, or leased by Sellers that is subject to a lease that is an Acquired Contract (the "Acquired Leased Equipment"), located at the PSCs on the Initial Closing Date, together with all rights of Sellers against the manufacturers and/or suppliers of such equipment other than those excluded pursuant to Section 2.2(a) (collectively, the "Equipment").

(d)     Files and Records.  All files, personnel records, documents, papers, computer files, data, customer and supplier lists, cost and pricing information, business plans, quality control records and manuals, blueprints, research and development files, personnel records and books and business records of Sellers in any media relating to the Acquired Assets of the Business (collectively, the "Files and Records").

(e)     Permits.  All assignable permits, licenses, consents, approvals, and authorizations, related to the operation of the PSCs (collectively, the "Permits").

(f)     Intellectual Property.  All Company Owned Intellectual Property, all Company Used Intellectual Property set forth on Schedule 8.11 and all other Company Used Intellectual Property to the extent such other Company Used Intellectual Property is assumable and assignable and subject to obtaining any necessary consents to transfer such assets.

(g)     Owned Real Property.  All of the land, together with all buildings and improvements located thereon, and all easements and other rights and interests appurtenant

16

I:\Fleming\CPAK\C&S r-apa.v.12.doc

thereto, owned by Sellers which are not Excluded Assets, including real property constituting a PSC or which is reasonably adjacent or in close proximity to any PSC, including those which are set forth on Schedule 2.1(g) hereto (the "Owned Real Property").

(h)    Corporate Offices. All assets (including any leasehold interest) of Sellers at their Lewisville, Texas and Oklahoma City corporate offices (the "Corporate Offices"); provided, however, that pursuant to the Transition Services Agreement, Purchaser or Fleming, as the case may be, shall provide systems and operation support to the other party from such Corporate Offices.

(i)    Warranties. All manufacturer's warranties to the extent related to the Acquired Assets and all claims under such warranties.

(j)    Goodwill. All goodwill in or arising from the Acquired Assets and the Business.

(k)    Supplies. All supplies, tools and spare parts related to the Business.

(l)    Signs. All signs or personal property which contain any Intellectual Property which is an Acquired Asset (including, without limitation, the name (or trade derivative thereof) or logo of "Fleming" or variations thereof), including all uniforms supplied to employees of the Business that contain or display any such Intellectual Property.

(m)    Prepaid Expenses. Subject to Section 2.2(o), all prepaid expenses related to the Acquired Assets and the Business, but excluding the Deposit and Sellers' Deposits.

(n)    Identified Customer Notes and Agreements. All customer forgiveness notes and customer promissory notes listed on Schedule 2.1(n).

(o)    Records of Sale. All records prepared in connection with the sale of the Acquired Assets, including bids but excluding analyses relating to bids for the Acquired Assets.

(p)    Unrelated Assets. The Unrelated Assets, subject to the provisions of Section 3.7, provided that such Unrelated Assets may not be acquired by Purchaser prior to the end of the Option Period, as it may be extended pursuant to Section 3.7.

(q)    Equity Interests in Customers. All equity interests, if any, in customers of the Business.

(r)    Remaining Insurance Proceeds. All insurance proceeds not retained by Sellers pursuant to Section 2.2(g).

2.2    Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the assets of Sellers described below or identified on Schedule 2.2 (which may be amended by mutual agreement of the parties) shall be retained by Sellers and are not being sold or assigned to Purchaser hereunder (all such assets are referred to collectively as the "Excluded Assets").

17

I:\Fleming\CPAK\C&S r-apa.v.12.doc

ability of Purchaser effectively to exercise full rights of ownership of the Acquired Assets, or (e) which otherwise is reasonably likely to have a Material Adverse Effect.

8.5    Sellers' Deliveries.  Sellers shall have executed and delivered to Purchaser the Sellers' Ancillary Documents and other documents referred to in Section 10.2 hereof.

8.6    Statutes; Orders.  No statute, rule or regulation shall have enacted by any Governmental Entity which prohibits the consummation of the Initial Closing, and there shall be no Order of a Governmental Entity in effect precluding the consummation of the Initial Closing.

8.7    Title Commitments.  Sellers shall deliver to Purchaser, at Purchaser's sole cost and expense, commitments from Chicago Title Insurance Company with respect to each parcel of Owned Real Property to be transferred, assigned and delivered to Purchaser at the Initial Closing pursuant to which title policies may be issued at such Closing insuring title thereto vested in Purchaser subject only to Permitted Encumbrances.

8.8    Survey.  Sellers shall deliver to Purchaser, at Purchaser's sole cost and expense, a current as-built survey of the Owned Real Property to be transferred, assigned and delivered to Purchaser at the Initial Closing prepared in accordance with the ALTA/ACSM Land Title Survey Requirements of 1992, certified to the Purchaser, the Purchaser's lender and Chicago Title Insurance Company selected by Purchaser by a registered public surveyor or registered professional engineer disclosing only Permitted Encumbrances and otherwise reasonably satisfactory to the Purchaser and its lender in all respects.

8.9    Debt Liens.  Purchaser shall have received evidence reasonably satisfactory to it that (a) the Debt Liens (related to Acquired Assets that will be transferred to Purchaser on the Initial Closing Date) have been released by the holders thereof, (b) the holders of Debt Liens (related to Acquired Assets that may be transferred pursuant to a Subsequent Closing) conditionally agree to release such Debt Liens upon such Subsequent Closing in accordance with the terms of the Sale Order and (c) the holders of Debt Liens acknowledge and agree that such holders' Liens shall not attach to any property relating to the Business first coming into any Seller's possession on or after the Initial Closing Date.

8.10    Sales Material Adverse Effect.  The Business shall not have suffered a Sales Material Adverse Effect.

8.11    Transfer of All Assets.  Substantially all of the Acquired Assets shall be transferable to Purchaser, it being understood that Purchaser shall have no obligation to effect the Initial Closing unless substantially all the Acquired Assets shall be transferable to Purchaser as of the Initial Closing or, pursuant to the terms hereof, one or more Purchaser Assignees or Third Party Purchasers; provided, however, that Purchaser shall not be required to close, if any of the Acquired Assets listed on Schedule 8.11 of the Disclosure Schedule are not capable of being transferred and assigned to Purchaser as of the Initial Closing unless any such Acquired Asset is not capable of being transferred and assigned to Purchaser because of Purchaser's inability to provide adequate assurance of future performance with respect to such Acquired Asset.

58

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed and delivered on the date first above written.

PURCHASER:

C&S Acquisition LLC

By: _Mark Gross_

Name: Mark Gross
Title: Executive Vice President

PARENT:

For purposes of Article V, and Sections 14.8 and 14.11 only,

C&S Wholesale Grocers, Inc.

By: _Mark Gross_

Name: Mark Gross
Title: Executive Vice President

SELLERS:

Fleming Companies, Inc.

By: _Ted Stenger_

Name: Ted Stenger
Title: Chief Restructuring Officer

Fleming Transportation Service, Inc.

By:_____

Name:
Title:

Piggly Wiggly Company

By:_____

Name:
Title:

Jul-08-03    12:14pm    From-Fleming Co.                9729062302              T-947    P.002/003    F-484

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed and delivered on the date first above written.

PURCHASER:

C&S Acquisition LLC

By:_____
      Name: Mark Gross
      Title: Executive Vice President

PARENT:

For purposes of Article V, and Sections 14.8 and 14.11 only,

C&S Wholesale Grocers, Inc.

By:_____
      Name: Mark Gross
      Title: Executive Vice President

SELLERS:

Fleming Companies, Inc.

By:_____
      Name:
      Title:

✓ Fleming Transportation Service, Inc.

By:_____
      Name: William E. May, Jr.
      Title: President

✓ Piggly Wiggly Company

By:_____
      Name: Jimmy D. Garrison
      Title: President

1

✓ RFS Marketing Services, Inc.

By: _____
    Name: William E. May, Jr.
    Title: President


✓ Fleming International Ltd.

By: _____
    Name: William E. May, Jr.
    Title: President


✓ Fleming Foods of Texas L.P.
By Fleming Companies, Inc.
Its General Partner

By: _____
    Name: William E. May, Jr.
    Title: Executive Vice President


✓ Fleming Foods Management Co., L.L.C.
By Fleming Companies, Inc.
Its Sole Member

By: _____
    Name: William E. May, Jr.
    Title: Executive Vice President


Fleming Foreign Sales Corporation

By: _____
    Name: William E May, Jr.
    Title: Executive Vice President


2

**<u>Schedule 8.11 - Certain Certified Assets</u>**

See attached.

**Schedule 8.11**

I    All owned real property located at the Operating PSCs

II   The following Leased and Subleased Real Property:

| | Lessor | Lessee | Location | Fleming File Number |
|---|---|---|---|---|
| 1 | DMA Fresno Development, Ltd | Fleming Companies | Fresno | CA-242 |
| 2 | Susan Randleman as Trustee | Fleming Companies | Garland | TX-314 |
| 3 | Fleming Companies | Enterprise Leasing Company of DFW | Garland | TX-371F |
| 4 | Pacific Warehouse, Inc | Fleming Companies | Hawaii | HI-002 |
| 5 | Campbell Watumul | Fleming Companies | Hawaii | HI-007 |
| 6 | Loyalty Development Company, Ltd | Fleming Companies | Hawaii | HI-005 |
| 7 | Nabisco, Inc | Fleming Companies | La Crosse | WI-926PL |
| 8 | City of Lincoln, Nebraska | Fleming Companies | Lincoln | NE-123 |
| 9 | Red Jack Partners | Fleming Companies | Lincoln | NE-121 |
| 10 | Sperling Massillon LLC, WMS Massillon, LLC et al (as TIC) | Fleming Companies | Massillon | OH-215 |
| 11 | The Realty Associates Fund VI, L.P. | Fleming Companies | Memphis | MS-210 |
| 12 | Holmes Road Associates | Fleming Companies | Memphis | TN-306 |
| 13 | PRIM Fleming Warehouse, LLC | Fleming Companies | Miami | FL-746 |
| 14 | David Minkin, et al. | Fleming Companies | Miami | FL-742CL |
| 15 | Jaren E Hiller, Eagle Prairie, Inc. | Fleming Companies | Milwaukee | WI-913 |
| 16 | K.C. Investors, LLC | Fleming Companies | Nashville | TN-303 |
| 17 | Sacramento Foodcco Investors, LLC | Fleming Companies | Sacramento | CA-269 |
| 18 | Collins Foodservice, Inc. | Fleming Companies | Sacramento | CA-239 |
| 19 | Grocery (OK) QRS 15-5, Inc. | Fleming Companies | Tulsa | OK-267 |
| 20 | Boyle Investment Company (Agent for Jean B. Isbell Trustee) | Fleming Companies | Memphis | TN-300 |
| 21 | Fleming Companies | Quality Incentive Company | Memphis | TN-300.a |
| 22 | BGK LLC | Fleming Companies | West Sacramento | CA-236 |
| 23 | Forbes Industrial Park L.L.C. | Fleming Companies | Topeka | KS-209 |
| 24 | CMD Realty Investors | Fleming Companies | Staff (Fort Worth data center) | TX-317 |
| 25 | Girgner, Incorporated | Fleming Companies | Staff (Oklahoma City) | OK-249 |
| 26 | Hogen Publishing Company | Fleming Companies | Staff (4 Corporate Center) | OK-250A |
| 27 | Vantage Development #21, Inc. | Fleming Companies | Staff (Lewisville) | TX-351 |
| 28 | Prusan Limited Partnership | Fleming Companies | KOP | PA-826 |
| 29 | REBNEC NINE, INC | Fleming Companies | Geneva | AL-212 |
| 30 | Petroleum Helicoptors, Inc. | Fleming Companies | Lafayette | LA-188 |
| 31 | Ant, LLC | Fleming Companies | Minneapolis | MN-264PL |
| 32 | Store Container Corporation | Fleming Companies | Minneapolis | MN-264PL3 |
| 33 | Winthrop Income Properties II | Fleming Companies | Warsaw NC | NC-041 |
| 34 | CSX Transportation, Inc. | Fleming Companies | Warsaw NC | NC-040F[B] |
| 35 | CSX Transportation, Inc. | Fleming Companies | Warsaw NC | NC-040F[C] |
| 36 | Northeast Commerce Center, L.L.C. | Fleming Companies | Northeast | MD-891 |
| 37 | Northeast Commerce Center, L.L.C. | Fleming Companies | Northeast | MD-891[B] |
| 38 | Phoenix Foodco Investors, LLC | Fleming Companies | Phoenix | AZ-135 |
| 39 | SLC Foodco Investors, LLC | Fleming Companies | Salt Lake City | UT-052 |

III   IP

All of the Sellers' Company's rights, whether by ownership or license, in the following trademarks:

1    Best Yet
2    Exceptional Value
3    Marquis
4    Festival Foods
5    Piggly Wiggly
6    Sentry
7    Super One
8    Jubilee
9    Shop 'n Kart
10   Super 1 Foods
11   Super Foods
12   Super Save
13   Super Thrift
14   Buy for Less
15   Big Star
16   IGA

IV   Procurement
1    Assorted vendors    All vendor private label agreements for the trademarks set forth above*
2    Carolina Logistics    Reclamation agreement*

*These shall be maintainable at the Initial Closing and assignable upon thirty days notice at any time during the six months following the Initial Closing.

| V | IT Agreements | | |
|---|---|---|---|
| 1 | IBM | 1 year Enterprise Software Agreement | Enterprise Software License Agreement |
| 2 | IBM | 5 year Hardware Maintenance Agreement | Enterprise Hardware Maintenance Agreement |
| 3 | Southwestern Bell | Customer Service Agreement | ATM Services |
| 4 | Comdisco | Hardware Lease 909 | EMC DASD |
| 5 | Comdisco | Hardware Lease 910 | EMC DASD |
| 6 | Comdisco | Hardware Lease 912 | EMC DASD |
| 7 | Comdisco | Hardware Lease 913 | EMC DASD |
| 8 | IBM | Lease Supplement 09789 | 9672-Z77 Misc. Equipment |
| 9 | IBM | Lease Supplement 13015 | Virtual Tape Serve / Base Extension |
| 10 | IBM | Lease Supplement 13036 | Magstar Subsystem, Base Extension |
| 11 | IBM | Lease Supplement 13062 | Service Select, Coupling Facility, Connection Direct |
| 12 | IBM | Lease Supplement 17565 | Magstar Tape Subsystem |
| 13 | IBM | Lease Supplement 20009 | 9032 Equipment / LED Port Cards |
| 14 | IBM | Lease Supplement 43877 | ELA Financing |
| 15 | IBM | Lease Supplement 47141 | Virtual Tape Server and Tape Drives |
| 16 | IBM | Lease Supplement 62345 | Performance Tools,Backup/Recovery, Webshp Devlpt. |
| 17 | IBM | Lease Supplement 64170 | 9672-Z57 ProcessorFeature |
| 18 | IBM | Lease Supplement 45608 | Escon Director, Sysplex Timer, 9672 features |
| 19 | IBM | Lease Supplement 82572 | AS400 Operating System Software |
| 20 | EMC Corporation | Master Customer Agreement | Software & Hardware Purchase / Support DASD |
| 21 | AT&T | Master Services Agreement | Voice / Data Service |
| 22 | SAP | R/3 License Agreement & 8 Appendix | fi,tr-cm,co,ec,ps,mm,sd,pp,dw,bc,pa,pd ,850named users |
| 23 | Comdisco | Software License Agreement | Mainframe Hardware |
| 24 | EMC Corporation | Software License Agreement | Powerpath Enterprise |
| 25 | EMC Corporation | Software License Agreement | Powerpath Enterprise Plus Inix Depot (qty 25) |
| 26 | EMC Corporation | Software License Agreement | Powerpath Workload Bal Shartel |
| 27 | EMC Corporation | Software License Agreement | DASD SYMMGR, SYMPRF |
| 28 | EMC Corporation | Software License Agreement | ECCPKG caap 2. To 4. Timefinder, Hub Switch |
| 29 | EMC Corporation | Software License Agreement | Powerpath Unix |
| 30 | EMC Corporation | Software License Agreement | Poweerpath Work Load Bal 27 Licenses |
| 31 | EMC Corporation | Software License Agreement | Visionet-ECCPKG cap 2. To 4. Ppath (2) nfs datamvr) |
| 32 | EXE Technologies, Inc. | Software License Agreement | 30 Site License for |
| 33 | EXE Technologies, Inc. | Software License Agreement | Software Support Terms and Conditions |
| 34 | Extensis, Inc. | Software License Agreement | Portfolio 6.0 /Server,SQL connect,clients,service,upgrd |
| 35 | FileNet Corporation | Software License Agreement | Imaging System |
| 36 | Geac Computer Systems, Inc. | Software License Agreement | General Ledgeer |
| 37 | Gerber Systems | Software License Agreement | Fish Creek / Data Integrator |
| 38 | Hyperion | Software License Agreement | Financial Planning |
| 39 | ICG Group, Inc. | Software License Agreement | Filenet |
| 40 | iSoft Corporation | Software License Agreement | Commerce Suite / Unlimited Use |
| 41 | Kronos, Inc. | Software License Agreement | 25,000 employee connect, 600 manager seats |

| 42 | Levi, Ray & Shoup, Inc. | Software License Agreement | vps,tso,tcpip,pcl,vtam,drs,drs/tcpip, vps/report/browse |
| 43 | MacKinney Systems | Software License Agreement | VTAM virtual printer, 2 licenses |
| 44 | AT&T | Voice / Data Services Agreemet | State Pricing Schedule |

The above IT agreements shall be maintainable at the Initial Closing and assignable on or prior to the Business Day immediately preceeding the six month anniversary of the Initial Closing.

**VI**    **Leases and notes (if any) for the top five customers at each Operating PSC**

**VII**    The following promissory notes with an outstanding balance of over $1,000,000, unless settled in accordance with the Agreement, including Section 2.7(c):

| DIV_NUM | NAME | PRIN_BAL |
|---|---|---|
| 2012 | ASR ENTERPRISES, INC. | $5,772,477.59 |
| 2177 | MARVIN'S BFL OF TULSA, INC. | $4,866,060.90 |
| 2029 | ERICA INC. | $3,560,786.23 |
| 2047 | PAQ; INC. | $3,187,650.99 |
| 2024 | MAL ENTERPRISES,INC. | $2,900,106.82 |
| 2151 | GES. INC. | $2,890,459.57 |
| 2177 | RHODES GROCERY, INC. | $2,603,794.21 |
| 2177 | JMM, LLC AND RELATED LLC'S | $2,453,705.69 |
| 2166 | ADRIEN'S SUPERMARKET, INC. | $2,191,640.78 |
| 2177 | MARVIN'S, INC. | $2,100,000.00 |
| 2006 | MADISON FOODS, INC. | $1,970,323.61 |
| 2505 | QUALITY INCENTIVE COMPANY | $1,901,241.42 |
| 2060 | FEOLI'S SUPERMARKET, LLC | $1,808,329.46 |
| 2016 | SCOZIO'S WEXFORD FOODS, LLC | $1,697,278.67 |
| 2039 | HAFSA CORPORATION | $1,650,168.44 |
| 2177 | MARVIN'S, INC. | $1,477,959.26 |
| 2039 | GARRETT'S MARKET, INC. | $1,408,247.67 |
| 2155 | RAGLAND BROS. SUPERMARKETS, IN | $1,379,937.35 |
| 2016 | HIRRI FOODS, INC. | $1,238,838.71 |
| 2024 | MAL ENTERPRISES,INC. | $1,126,319.28 |
| 2039 | GARRETT'S MARKET, INC. | $1,047,121.90 |