# EXHIBIT M

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
 2              FOR THE DISTRICT OF DELAWARE
 3
 4      ------------------------------
 5      In re:                        )
 6                                    )
 7      FLEMING COMPANIES, INC.;      ) No. 03-10945 (MFW)
 8      et al.,                       ) VOLUME I
 9              Debtors.              )
10      ------------------------------
11
12
13            Deposition of MICHAEL ANDERSON, taken
14      at 209 S.W. Oak Street, Suite 500,
15      Portland, Oregon, commencing 1:08 p.m.,
16      Friday, July 9, 2004, before Phillip A.
17      Rader, a Notary Public.
18
19
20
21
22
23
24
25      PAGES 1 - 37
```

spherion

```
 1    APPEARANCES OF COUNSEL:
 2
 3    APPEARING ON BEHALF OF THE DEBTORS
 4
 5    KIRKLAND & ELLIS, LLP
 6    BY:  DAMIAN D. CAPOZZOLA
 7    777 South Figueroa Street
 8    Los Angeles, California 90017
 9    (213) 680-8653
10
11    APPEARING ON BEHALF OF WAYNE BERRY
12
13    LYNCH, ICHIDA, THOMPSON, KIM & HIROTA
14    BY:  TIMOTHY J. HOGAN
15    1132 Bishop Street
16    Suite 1405
17    Honolulu, Hawaii 96813
18    (808) 528-0100
19
20
21
22
23
24
25
```

2

```
 1    APPEARANCES OF COUNSEL (CONTINUED):
 2
 3    APPEARING ON BEHALF OF THE OFFICIAL COMMITTEE
 4    OF UNSECURED CREDITORS
 5
 6    PEPPER, HAMILTON, LLP
 7    JULIE SKIDMORE
 8    ROBERT HERTZBERG
 9    Renaissance Center
10    Suite 3600
11    Detroit, Michigan 48243-1157
12    (313) 259-7110
13
14    APPEARING ON BEHALF OF THE WITNESS AND NTI
15
16    STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.
17    KEITH A. KETTERLING
18    209 S.W. Oak Street
19    Suite 500
20    Portland, Oregon 97204
21    (503) 227-1600
22
23    ALSO PRESENT:
24
25    MICHAEL GRAMZA, VIDEOGRAPHER
```

3

| | | |
|---|---|---|
| 1 | Could I at least ask counsel to describe the | 13:14:56 |
| 2 | document or have someone do it so that I've got what | 13:14:59 |
| 3 | purports to be what I think is being marked so I can | 13:15:03 |
| 4 | at least follow along. | 13:15:05 |
| 5 | MR. CAPOZZOLA:  Mr. Hogan, this the | 13:15:06 |
| 6 | Consulting Engagement Agreement between NTI and | 13:15:08 |
| 7 | Fleming. | 13:15:12 |
| 8 | MR. HOGAN:  And because it's a | 13:15:13 |
| 9 | telephonic deposition, could you just tell me how | 13:15:13 |
| 10 | many pages we're dealing with, if it's simple to do | 13:15:14 |
| 11 | that. | 13:15:17 |
| 12 | MR. CAPOZZOLA:  There appears to be | 13:15:18 |
| 13 | eight pages with an additional page entitled | 13:15:19 |
| 14 | "Statement of Work." | 13:15:22 |
| 15 | MR. HOGAN:  I will just say for the | 13:15:24 |
| 16 | record the copy that I have that I obtained from | 13:15:26 |
| 17 | your declaration, Mr. Capozzola, had what looked | 13:15:28 |
| 18 | like fax numbers at the top right corner going P1 | 13:15:31 |
| 19 | through 9. | 13:15:34 |
| 20 | MR. CAPOZZOLA:  Yes.  Those appear. | 13:15:35 |
| 21 | MR. HOGAN:  Okay.  Thank you. | 13:15:39 |
| 22 | A.  Yes, sir, I've briefly looked at the | 13:15:41 |
| 23 | document. | 13:15:45 |
| 24 | BY MR. CAPOZZOLA: | 13:15:46 |
| 25 | Q.  Do you understand that this is the engagement | 13:15:46 |

9

| | | |
|---|---|---|
| 1 | agreement between Fleming and NTI? | 13:15:48 |
| 2 | A.   That's my understanding. | 13:15:51 |
| 3 | Q.   Okay.  And who is -- turning to page 8, who | 13:15:52 |
| 4 | is Mr. -- it looks like John Dethman? | 13:15:59 |
| 5 | A.   John Dethman, he's our Vice President of | 13:16:03 |
| 6 | Finance and Operations. | 13:16:07 |
| 7 | Q.   And he's authorized to enter into these kind | 13:16:08 |
| 8 | of agreements for NTI? | 13:16:12 |
| 9 | A.   Yes, he is. | 13:16:13 |
| 10 | Q.   And that's his signature?  You recognize | 13:16:13 |
| 11 | that? | 13:16:15 |
| 12 | A.   Yes.  Yes, it is. | 13:16:16 |
| 13 | Q.   Do you presently understand that NTI pulled | 13:16:17 |
| 14 | out of the agreement of Exhibit 3? | 13:16:20 |
| 15 | A.   Yes. | 13:16:21 |
| 16 | Q.   And do you understand that the agreement was | 13:16:21 |
| 17 | made on or about June -- well, it's dated by its | 13:16:25 |
| 18 | terms June 9. | 13:16:32 |
| 19 |      Do you see that on the first page? | 13:16:33 |
| 20 | A.   Yes. | 13:16:34 |
| 21 | Q.   Okay.  Maybe we'll take that up with Mr. | 13:16:36 |
| 22 | Stevens. | 13:16:41 |
| 23 |      As president and primary founder of NTI, | 13:16:42 |
| 24 | do you know why NTI pulled out of the Consulting | 13:16:51 |
| 25 | Engagement Agreement with Fleming? | 13:16:53 |

10

| | | |
|---|---|---|
| 1 | A. Based on business reasons, we thought it | 13:16:56 |
| 2 | would be prudent to withdraw from the engagement. | 13:16:58 |
| 3 | Q. Can you elaborate on those business reasons. | 13:17:01 |
| 4 | What were those business reasons? | 13:17:04 |
| 5 | A. The primary ones were that we had more | 13:17:05 |
| 6 | consulting work than we had had in years, so we were | 13:17:08 |
| 7 | stretched pretty thin. | 13:17:11 |
| 8 | And the other reason was that we | 13:17:15 |
| 9 | received a call from Mr. Hogan -- or I received a | 13:17:18 |
| 10 | call late one evening from Mr. Hogan who advised me | 13:17:21 |
| 11 | that there was a potential for RICO lawsuit. | 13:17:26 |
| 12 | Q. Against NTI? | 13:17:29 |
| 13 | A. That was my understanding. | 13:17:32 |
| 14 | MR. CAPOZZOLA: I'd like to mark as | 13:17:33 |
| 15 | Exhibit 4 -- and I'm sorry, I only have one copy of | 13:17:34 |
| 16 | this, so maybe we can share it -- what appears to be | 13:17:38 |
| 17 | a copy with a Post-It note about two inches by two | 13:17:42 |
| 18 | inches. | 13:17:46 |
| 19 | (Whereupon, a copy of a Post-It note was | 13:17:46 |
| 20 | marked Exhibit 4 for identification.) | 13:17:46 |
| 21 | BY MR. CAPOZZOLA: | 13:17:46 |
| 22 | Q. Do you recognize that note, Mr. Anderson? | 13:17:46 |
| 23 | A. Yes. That's a note that I made relative to | 13:17:49 |
| 24 | the conversation with Mr. Hogan. | 13:17:53 |
| 25 | MR. KETTERLING: Mr. Hogan, this is | 13:17:55 |

11

| | | |
|---|---|---|
| 1 | Keith Ketterling. Just for your information, this | 13:17:56 |
| 2 | is the note that I e-mailed to you earlier this | 13:17:59 |
| 3 | morning by PDF. | 13:18:02 |
| 4 | MR. HOGAN: I appreciate that. I have | 13:18:04 |
| 5 | it in front of me. It has a little "W" sort of | 13:18:06 |
| 6 | blaze in the upper left corner? | 13:18:09 |
| 7 | MR. KETTERLING: Exactly. | 13:18:12 |
| 8 | MR. HOGAN: Thank you. | 13:18:12 |
| 9 | BY MR. CAPOZZOLA: | 13:18:13 |
| 10 | Q. Why don't you just briefly walk us through | 13:18:14 |
| 11 | these notes as they appear on the page and what you | 13:18:16 |
| 12 | were thinking when you wrote them down. | 13:18:19 |
| 13 | A. Well, I was -- I was working late one evening | 13:18:21 |
| 14 | at NTI and I was the only employee there. And the | 13:18:24 |
| 15 | phone rang, and I answered it. And I think it was | 13:18:31 |
| 16 | about seven or 7:30, but I didn't record the time. | 13:18:31 |
| 17 | And a gentleman identified him -- the caller | 13:18:33 |
| 18 | identified himself as Mr. Hogan, who he said he was | 13:18:36 |
| 19 | an attorney and he was calling me from Hawaii. And | 13:18:39 |
| 20 | he mentioned to me that he had reason to believe | 13:18:43 |
| 21 | that we were involved in a consulting engagement | 13:18:46 |
| 22 | involving a company named Fleming. And he asked me | 13:18:49 |
| 23 | if that was -- if that was true, as I recall. | 13:18:55 |
| 24 | And I really didn't know, because I | 13:18:58 |
| 25 | don't involve myself with the consulting cases on an | 13:18:59 |

12

| | | |
|---|---|---|
| 1 | ongoing basis. So I basically told him that I | 13:19:02 |
| 2 | didn't have any specific knowledge of that. And he | 13:19:06 |
| 3 | indicated that he was calling to advise that there | 13:19:10 |
| 4 | had been -- and I'm going by my memory here -- but | 13:19:17 |
| 5 | there had been some kind of a lawsuit or an action | 13:19:22 |
| 6 | filed involving a RICO violation against Guidance | 13:19:26 |
| 7 | Software, and he did not want us involved in a | 13:19:29 |
| 8 | similar action or something to that effect. | 13:19:32 |
| 9 | Q. The note, "talk to John," what does that | 13:19:33 |
| 10 | mean? | 13:19:36 |
| 11 | A. Well, he was asking me, as I recall, specific | 13:19:37 |
| 12 | things about the engagement. And I told him that I | 13:19:40 |
| 13 | really didn't have any knowledge of the -- I didn't | 13:19:45 |
| 14 | even know if this was a client at that point in | 13:19:48 |
| 15 | time. And I advised him that John Dethman was the | 13:19:50 |
| 16 | person that managed that division and that he would | 13:19:54 |
| 17 | more likely know. | 13:19:58 |
| 18 | And as I recall at that time, Mr. Hogan | 13:19:59 |
| 19 | referenced a document -- it may have been a copy of | 13:20:00 |
| 20 | the engagement letter or something -- and he said, | 13:20:03 |
| 21 | oh, yes, I see his name here, or signature, or | 13:20:06 |
| 22 | something to that effect. | 13:20:09 |
| 23 | Q. And then "Wayne Berry Software Development, | 13:20:10 |
| 24 | DEV," as it appears, what caused you to write that, | 13:20:13 |
| 25 | if you recall? | 13:20:17 |

| | | |
|---|---|---|
| 1 | A.  Mr. Hogan indicated that this involved -- I | 13:20:18 |
| 2 | think he was trying to refresh my memory about the | 13:20:21 |
| 3 | engagement or something.  But I don't know.  But he | 13:20:23 |
| 4 | mentioned that he represented Wayne Berry and that | 13:20:26 |
| 5 | he was a software developer and he was involved in | 13:20:29 |
| 6 | the case.  I believe Mr. Hogan said that he | 13:20:32 |
| 7 | represented him in the action. | 13:20:34 |
| 8 | Q.  Okay.  And then the word "Fleming" appears. | 13:20:35 |
| 9 | Do you recall why you wrote that? | 13:20:38 |
| 10 | A.  I think I was asking him for information | 13:20:39 |
| 11 | about what -- you know, what the -- from a conflicts | 13:20:46 |
| 12 | check standpoint, you know, the case name or | 13:20:48 |
| 13 | something.  And so I wrote down the name "Fleming." | 13:20:50 |
| 14 | And as I recall, I think he suggested that that was | 13:20:53 |
| 15 | our client in the engagement matter. | 13:20:57 |
| 16 | Q.  Then you have the name "Sean," and a phone | 13:20:59 |
| 17 | number there: 503-201-5010. | 13:21:04 |
| 18 | What caused you to write that, if you | 13:21:07 |
| 19 | recall? | 13:21:08 |
| 20 | A.  That was written after the -- after the | 13:21:09 |
| 21 | conversation.  And because I knew nothing about this | 13:21:11 |
| 22 | engagement or if it was even an actual case that was | 13:21:13 |
| 23 | active with NTI, I called -- I believe John Dethman | 13:21:17 |
| 24 | -- and I called Scott Stevens -- and I can't | 13:21:23 |
| 25 | remember which of them got back to me.  But they | 13:21:27 |

14

1        REPORTER'S CERTIFICATE

2

3    I, PHILLIP A. RADER, do hereby certify:

4

5    That the foregoing deposition testimony of
6    MICHAEL ANDERSON was taken before me at the time and
7    place therein set forth, at which time the witness,
8    was placed under oath and was sworn by me to tell the
9    truth, the whole truth, and nothing but the truth;
10   That the testimony of the witness and all
11   objections made by counsel at the time of the
12   examination were transcribed under my direction and
13   supervision, and that the foregoing pages contain a
14   full, true and accurate record of all proceedings and
15   testimony to the best of my skill and ability.
16   I further certify that I am neither counsel for
17   any party to said action, nor am I related to any
18   party to said action, nor am I in any way interested
19   in the outcome thereof.
20   IN WITNESS WHEREOF, I have subscribed my name
21   this 15th day of July, 2004.

22

23

24   _____
          *Phillip Rader*
25       PHILLIP A. RADER

36