# EXHIBIT SS

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813

TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920
E-MAIL: mail@loio.com

COUNSEL
TIMOTHY J. HOGAN

OF COUNSEL
GREG TURNBULL, MA

## FAX TRANSMITTAL

July 14, 2004

TO:     Richard Wynne              FAX NO. (213) 680-8500

FROM:   Timothy J. Hogan, Esq.     PAGES: 4

RE:     In re Fleming Companies, Inc., Bk. No. 03-10945-MFW (Bankr. Del.)

PLEASE NOTE: This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you received it in error, please notify the sender immediately by telephone or fax.

---

Letter (dated 7/14/04) to Richard Wynne, Esq. from Tim Hogan, Esq. re: Rule 408 Communication.

# LYNCH ICHIDA THOMPSON KIM & HIROTA
### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813
TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920

*Counsel*
TIMOTHY J. HOGAN

*Of Counsel*
GREG TURNBULL, MA

July 14, 2004

Richard L. Wynne                              <u>Via Fax No. (213) 680-8500</u>
Kirkland & Ellis
777 S. Figueroa Street, Suite 3700
Los Angeles, California 90017

    Re:   *In re Fleming Companies, Inc.*, Bk. No. 03-10945-MFW (Bankr. Del.)
           <u>Fed. R. Evid. 408 Settlement Communication</u>

Dear Mr. Wynne:

    Thank you for your letter dated July 13, 2004. As an initial matter, I fear that there is not sufficient time to resolve this prior to the hearing on the 26th. Any agreement we might reach would be subject to objections extending past the Confirmation hearing. If you can propose some mechanism that would allow any agreement with Mr. Berry to be enforceable prior to the hearing were I presume you will require his withdrawal of his objection to the plan filed some weeks ago, I am happy to continue attempting to resolve this. In any event, attached you will find a term sheet that will address our concerns.

    We, like the Debtors, agree to be bound only by the final expression of our acceptance in a written agreement signed by Mr. Berry.

                                 Very truly yours,

                                 LYNCH ICHIDA THOMPSON KIM & HIROTA

                                 Timothy J. Hogan

TJH:llk

cc: Julie Skidmore, Esq.

Enclosure

Settlement Communication Inadmissible Under Fed. R. Evid. 408

Mr. Berry's Term Sheet July 14, 2004
Numbers Correlate to Debtors' Draft - - July 13, 2004

1.  Monetary issues should be addressed after material terms established.

2 & 3   The injunctions must be entered in one of the copyright cases as part of a stipulated final judgment. Otherwise it will lack subject matter jurisdiction and the Copyright Office will not have a proper record of the disposition. Your trucker has just disclosed what we believe to be another derivative that went on line in May. We need to have Hawaii jurisdiction to enforce this.

We presume that the "interested C&S entities" will include all defendants in the present litigation that are engaged in commerce related to C&S. If not, we need to carve out for the truckers and Foodland. We also need all copies returned including the ones taken by any experts and attorneys and some means to verify all this.

4.  What is C&S going to do in the interim? We claim that all Mark Dillon works are Mr. Berry's derivatives and do not intend to allow future unlicenced use. We have been willing to license C&S but they have refused to discuss it. If they maintain a copy of any derivative, we will consider the new program to be Mr. Berry's.

Who is the "reputable outside programer?" We will require the identity prior to agreement. We need to be sure that they won't have any prior access to Berry Technology or his and C&S/Fleming former employees. As to Dillon and Noa, their continued relationship to C&S/Fleming will be a serious stumbling block.

If C&S wants to do a true clean room they will have to accept going to pre-paid freight for a year during development.

We suggest the following:

"Fleming/Core-Mark Newco agrees and understands "Clean Room" development standards for Copyright protection and will adhere to these standards for any future development, whether the development is done "in-house", as "work made for hire" or not "work made for hire". Should a conflict arise between the Fleming/Core-Mark Newco and Berry, Fleming/Core-Mark Newco will bear the burden of producing records of "Clean Room" development or a valid software license for "off the shelf" commercial freight control software from another software company in the business of selling "freight

logistics systems" in lieu of the "Clean Room" documentation for the alleged offending product."

5. We need entry of final judgment and waiver of right to appeal.

6. Mr. Berry can only withdraw claims for himself only. The API claim is separate and Mr. Berry is not disposed to withdraw it. If there are any other claims that your are referring to, Debtors need to identify them with specificity.

7. This is problematic from a timing perspective as set forth in the cover letter.

8. Agree.

9. We agree that C&S has to agree to the injunction relating to C&S. We do not agree that we can't reach a deal without C&S' consent. The committee is obviously going to have to agree.

End