LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al.<br><br>Defendants.<br><br>_____ | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO PCT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST ENTITLEMENT TO PROFITS AND VICARIOUS LIABILITY**<br><br>Trial:   February 28, 2006<br>Judge:  Honorable Susan Oki<br>          Mollway<br><br>**Non-Hearing Motion** |

**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO PCT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST ENTITLEMENT TO PROFITS AND VICARIOUS LIABILITY**

COMES NOW Plaintiff Wayne Berry, by and through his undersigned counsel, and hereby respectfully submits his Memorandum in Opposition to PCT's Renewed Motion For Renewed Motion For Judgment As A Matter of Law Against Entitlement to Profits and Vicarious Liability (the "Motion"). Plaintiff incorporates by this reference the opposition filed regarding Defendants Mark Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama and Jacqueline Rio's Renewed Motion for Judgment as a Matter of Law as to Actual Damages and Vicarious Infringement.

I.     **Background Facts to Support the Motion.**

What Fleming is attempting to do is to scramble to protect itself from its own failure to produce evidence in the case related to Mr. Berry's right to its profits, relying instead on the already rejected notion that a lack of bottom line profits was all that need be proven at trial. Fleming seeks to confuse the Court into believing that there wasn't evidence sufficient for the jury to determine that Mr. Berry was entitled to profits as a last bastion defense to its failure to address profits hidden in the cost of goods sold. Fleming is finally having to face the reality of what Congress intended for infringers who operate businesses in violation of the exclusive rights of copyright owners when it made the fateful decision to infringe software post-bankruptcy.

Mr. Berry's first burden regarding profits was simply to put in the gross revenues. All parties agreed as to the gross revenues. Mr. Berry, therefore, carried the burden that Congress established when Congress enacted the Copyright Act, 17 U.S.C. § 504(b).

What Fleming-PCT is attempting to direct the Court to is the court-made law regarding the right to indirect profits and the necessity that those profits be derived from the use of the copyrighted work. First, the Court had already performed its gatekeeper function when it denied the motions for summary judgment on this issue. At trial, assuming the Court believes the gate keeper function need be performed again, the copyright owner must show that the use of the copyrighted work produced some portion of the gross revenues. In this case, Mr. Berry's testimony regarding the use of the software by API (Fleming claimed it used it just like API used it) and the manner in which it operated to produce revenues for Fleming was admitted.

To additionally show the causal link, the financial records of API (Trial Exhibits 96 to 100) showed the increase in income by Jack Borja after he started using Mr. Berry's technology. The e-mails, including the Ron Griffin e-mail evidencing that Fleming only had the Berry work and ordering the subordinates to reach an accommodation with Mr. Berry (Trial Exhibit 78), Mr. Stussi's admission

regarding the "savings generated" by changes that Mr. Berry was denied via the infringement the opportunity to make (Trial Exhibit 21) and the effect the removal of the software had on Fleming's operations (Trial Exhibits 10, 13, 14, 15, 17, 26 and 27) all evidence that Mr. Berry's work was a cause of the gross revenues. The fact that Fleming hid the revenues in the costs of goods sold (Trial Exhibit 46) does not remove them but only highlight Fleming-PCT's failure in regard it its burden.

Mr. Berry's testimony was admitted as the testimony of a fact witness as to the use of the software by Fleming. Just on that alone, the jury could reasonably determine that Mr. Berry had met his causal relationship between the profits generated by Fleming through the use of the software and its gross revenues. Additional exhibits dealing with the profits being generated by the use of the unlicensed work make this motion sanctionable. (Trial Exhibits 40, 41, 43, 46, 62, 67 (limited admissibility), 78, 80, 84, 85, 87, 92, 96 to 101,103 and 105).

In addition, if it were necessary, Mr. Berry provided the unrebutted testimony of Thomas Ueno who testified regarding the critical function that Mr. Berry's software played. While it was not necessary that Mr. Ueno provide that testimony as Mr. Berry's testimony, the e-mails, reports and other documents including Jack Borja's financials were all sufficient for the jury to have found the causal link. Mr. Ueno's testimony was helpful and that is all that the rules require.

There is nothing, contrary to Fleming's argument, that requires that the expert testimony be the *sine qua non* but only to be helpful.  To allow the trier of fact to arrive at its determinations through the use of expert testimony has long been understood as being part of litigation and not simply the only thing in litigation, the PCT's confusion notwithstanding.   The PCT did not qualify their expert brought to rebut Mr. Ueno on the causal link (Brad Dechter) so when the defense case closed, the Ueno testimony making the causal link was entirely unrebutted.

      In addition, and completely absent from the PCT's motion is the fact that Mr. Ueno's qualifications were clearly sufficient for him to give testimony regarding the critical value of the software  to the enterprise.  His testimony regarding his extensive software development expertise while at a "Big 8" accounting firm was more than enough to make the causal connection to the profits and show that the gross profits were derived from the use of Mr. Berry's work. Fleming-PCT ,in contrast, can point to no evidence in its case that rebutted this. After Mr. Berry's case in chief the PCT's witness, Brian Christensen's admission that Fleming could not cease the use of the software and the PCT's  unqualified expert, Brad Dechter, who as a lay witness admitted the software  was a necessity to his firm bolsters the Court's decision to deny this motion.

      As to the issue of vicarious liability, the PCT again attempts to torture word

definitions in order to reach its necessary end. The jury instruction required that the employer profit from the use. It didn't mean that all the use resulted in bottom line profits as defined by the PCT in the old "red herring" it has been dragging around for months. Fleming admitted during final argument that it was liable vicariously. It is judicially estopped from denying it now and its Motion should be grounds to sanction counsel for its outrageous conduct in this regard.

In any event, Mr. Berry demonstrated through the direct testimony of Brian Christensen in his case in chief that each of the employees were directed by Fleming to use the software and they used it in Fleming's business. Fleming, whether it made bottom line profit, still operated with the software to run its business. The evidence cited above related to profits more than connects the software to the Fleming's financial interests in its use. (Trial Exhibits 40, 41, 43, 46, 62, 67 (limited admissibility), 78, 80, 84, 85, 87, 92, 96 to 101,103 and 105).

In addition, the only logistics software that Fleming had during this time was established through the email regarding Ron Griffin. (Trial Exhibit 78"). For the PCT to claim that Mr. Berry had not established his prima facie case is simply nonsense. The Court was correct in allowing this to go to the jury and in light of Fleming's admission in its closing argument that it admitted it was vicariously liable, the PCT should be sanctioned for its conduct in regard to renewing this

issue.

Finally, the claim that somehow because the employees were acting within the scope of their authority they are not liable, seeks to revisit orders previously entered. There was nothing in this case to evidence that the defendants were not direct infringers the Court so found prior to trial. The question was whether Fleming was a vicarious liable for that direct infringement. Notwithstanding that it admitted that it was in its closing argument, the evidence was clear that Fleming employees had used the work in the scope of their employment with Fleming to assist Fleming in its business endeavors. (Trial Exhibits 20, 28, 58, 115 and 116). They were all direct infringers. Fleming's argument that somehow that these direct infringement claims should be expunged should be brought through a motion for reconsideration, subject to sanctions. It is not appropriate to a motion brought under Rule 50(b).

Fleming-PCT cites to the *WildenPump & Eng'g Co. v. Pressed and Welded Products Co.*, 655 F.2d 984, 990 (9th Cir. 1981). This case has nothing at all to do with vicarious liability but simply for the liability of the defendants for the infringer's profits when they are simply employee users. The Court ruled on this long ago. Why Fleming has chosen to rehash this is something that perhaps it can explain in its reply. Fleming is an admitted vicarious infringer in regard to its

employees' use and therefore the Court should deny the Motion entirely and grant all fees that have been requested in response to this absurd and wasteful Motion.

## II. CONCLUSION.

For the reasons stated, Plaintiff requests that the motion be denied.

DATED: Honolulu, Hawaii, March 31, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>HAWAIIAN EXPRESS SERVICE,  )<br>INC., a California corporation; et al.  )<br>)<br>Defendants.  )<br>_____ ) | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

I hereby certify that on the dates and by the methods of service noted below, a true and correct copy of the foregoing document was served on the following at their last known addresses:

Served Electronically on March 31, 2006 :

Andrew V. Beaman abeaman@chunkerr.com

Margery S. Bronster mbronster@bchlaw.net, audrey@bchlaw.net

Damian Capozzola dcapozzola@kirkland.com

Christopher T. Chun ctc@hosodalaw.com

Leroy E. Colombe lcolombe@chunkerr.com

Rex Y. Fujichaku rfujichaku@bchlaw.net, jennifer@bchlaw.net

Lyle S. Hosoda lsh@hosodalaw.com

Eric C. Liebeler eliebeler@kirkland.com

Raina P. Mead ! rpbm@hosodalaw.com

William G. Meyer , III wmeyer@dwyerlaw.com

R. Olivia Samad osamad@kirkland.com

Lex R. Smith lrs@ksglaw.com

Ann C. Teranishi act@ksglaw.com

Thomas H.Y.P. Yee thy@ksglaw.com, bls@ksglaw.com

    DATED: Honolulu, Hawai'i, March 31, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY