IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) Civil No. CV03 00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) AFFIDAVIT OF WESLEY H. H. |
| vs. | ) CHING |
| | ) |
| HAWAIIAN EXPRESS SERVICE, INC.,) | |
| a California corporation; et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

AFFIDAVIT OF WESLEY H. H. CHING

| | | |
|---|---|---|
| STATE OF HAWAII | ) | |
| | ) | SS. |
| CITY AND COUNTY OF HONOLULU | ) | |

WESLEY H. H. CHING, being first duly sworn on oath, deposes and says:

1.    I am a partner in the law firm of Fukunaga Matayoshi Hershey and Ching ("FMHC") and am the lead attorney representing Defendant HAWAII TRANSFER COMPANY, LIMITED ("HTC") in the above-entitled matter.

2.    I am licensed to practice law before all state and federal courts in the State of Hawaii.

3.    I make this Affidavit based upon personal knowledge, and am competent to testify as to all matters stated herein.

4.    In May, 2004, HTC participated in court ordered mediation, however such mediation was unsuccessful.

5.    Attached hereto as Exhibit "A" is a true and correct copy of HTC's Bill of Costs (excluding itemization and supporting documentation) which will be filed in this case.

6.    Attached hereto as Exhibit "B" is a true and correct table itemizing the taxable costs incurred by HTC in its defense of this lawsuit.

7.    HTC requests an award of $2,938.17 for costs incurred for copying of papers. All of the requested copying and reproduction expenses were necessarily obtained for use in this case. In-house copying at FMHC was charged at $.10 per page. The number of pages copied in-house at FMHC was 20,867. See the itemization attached hereto as Exhibit "B" for a detailed breakdown of the copies and costs. Attached hereto as Exhibit "C" are true and correct copies of FMHC's redacted invoices for, among other things, in-house copying costs incurred in this case. The number of pages copied by an outside vendor was 6,936. See the itemization attached hereto as Exhibit "B" for a detailed breakdown of the copies and costs. Attached hereto as Exhibit "D" are true and correct copies of invoices for copying and reproduction costs charged by the outside vendor. The charge for each copy by an outside vendor varied depending

2

on the type of service necessary for such reproduction. For example, to unstaple/re-staple originals, staple copies, and add slip sheet for tabs the rate was $.16 per page; to copy and add slip sheets the rate was $.10 per page; to copy staple and re-staple the rate was $.12 per page; to auto-feed copies (one side) the rate was $.06 per page. The outside vendor's rates were competitive and reasonable.

8.    The copying costs were not incurred for mere convenience of HTC's counsel, but were necessarily incurred for the defense of HTC in this litigation. The purposes for which documents were copied in this case include, but are not limited to: submission of pleadings and exhibits, service on other parties of pleadings and exhibits, extra copies of pleadings and exhibits to the Court, submission of mediation documents, discovery, and reproduction of discovery (including produced documents).

9.    HTC incurred $713.45 in costs for court reporter services. The court reporter costs were incurred for the transcripts of the following individuals' depositions: Brian Christensen, Jacqueline Rio, and Alfredda Waiolama. Attached hereto as Exhibit "E" is a true and correct copy of the court reporter's invoice for the aforementioned depositions. At the time the depositions were taken, all information gathered from such depositions were to be used for trial preparation, if

3

trial was necessary; such depositions were not taken for merely general discovery. The transcripts of the aforementioned individuals' depositions were necessary for use in HTC's defense of Plaintiff's claims in this case.

10.    The costs, as set forth on HTC's Bill of Costs, are correctly stated, and based on my experience, are reasonable, were necessarily incurred, and appear to be allowable by law. The services for which such costs have been charged were actually performed.

11.    On April 3, 2006, my office contacted Plaintiff's counsel, Timothy Hogan, to set up a date and time to meet and confer regarding HTC's Bill of Costs. On April 5, 2006, Mr. Hogan and I met and conferred at my law office, however most of our discussion was devoted to the motion filed by HTC for an award of attorneys' fees and costs; we discussed HTC's claimed taxable costs briefly, however we did not resolve the matter.

FURTHER, AFFIANT SAYETH NAUGHT.

WESLEY H. H. CHING

Subscribed and sworn to before me this
___7__ day of __April_____, 2006.

Notary Public, State of Hawaii
My commission expires: __8|11|06___

4