LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | PLAINTIFF WAYNE BERRY'S |
| vs. | ) | REPLY TO PCT'S OPPOSITION TO |
| | ) | PLAINTIFF WAYNE BERRY'S |
| HAWAIIAN EXPRESS SERVICE, | ) | RENEWED MOTION FOR |
| INC., a California corporation; et al. | ) | JUDGMENT AS A MATTER OF |
| | ) | LAW REGARDING DEFENDANT |
| | ) | FLEMING-PCT'S FAILURE TO |
| Defendants. | ) | PROVE EVIDENCE OF |
| | ) | DEDUCTIBLE EXPENSES, OR IN |
| | ) | THE ALTERNATIVE, FOR NEW |
| | ) | TRIAL; CERTIFICATE OF SERVICE |
| | ) | |
| | ) | HEARING |
| | ) | |
| | ) | Date:      June 5, 2006 |
| | ) | Time:      9:45 a.m. |
| | ) | Judge:    Hon.  Susan Oki Mollway |
| | ) | |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S REPLY
TO PCT'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW REGARDING DEFENDANT FLEMING-PCT'S FAILURE
TO PROVE EVIDENCE OF DEDUCTIBLE EXPENSES, OR IN
THE ALTERNATIVE, FOR NEW TRIAL**

COMES NOW Plaintiff Wayne Berry, by and through his undersigned counsel, and hereby respectfully submits his Plaintiff Wayne Berry's Reply to PCT's Opposition to Plaintiff Wayne Berry's Renewed Motion for Judgment as a Matter of Law Regarding Defendant Fleming-PCT's Failure to Prove Evidence of Deductible Expenses, Or In the Alternative, for New Trial.

The only thing that can be said about the PCT's opposition is that it clearly concedes the PCT did not address the profits and/or deductible expenses hidden in what was presumed to be Fleming Hawaii's costs of goods sold. Instead, what the PCT argues after four pages of boiler plate string cites and customary threats is to say that the reason it did not address the over $50 million in gross revenues is because the PCT and its expert presumed this to be the cost of goods sold and such oversight was a "common practice." It may or may not be common in some cases, but where the defendant is shown, in the Plaintiff's case, to have hidden the revenues derived from the use of the copyrighted work in its presumed cost of goods, that common practice must give way to common sense. Instead, the PCT

2

chose to simply show it was losing money. It is obvious from the verdict that this

showing was enough to confuse the jury into finding that Mr. Berry was entitled to

the revenues derived from the use of his system but awarded him none. It is well

settled that Mr. Kinrich and the PCT are dead wrong on their theory that no bottom

line means no profits to Plaintiff as follows:

> The Defendant may not claim the absence of profits
> merely because the profits attributable to the infringing
> items were not sufficient to offset the losses sustained by
> the Defendant from other aspects of his business.

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright. § 14.03[C][1]
(2005).

This Court had previously ruled, consistent with this authority, that the Defendant

could not rely on this red herring to avoid its burden as follows:

> The Ninth Circuit has noted that a copyright owner's recovery
> of "any profits of the infringer" is essentially recovery of "the
> infringer's gains." *Polar Bear*, 384 F.3d at 708. Therefore, a
> copyright owner may recover any financial gain attributable to the
> infringement, regardless of whether the infringer's business was
> ultimately profitable. Stated differently, "[t]he defendant may not
> claim the absence of profits merely because the profits attributable to
> the infringing items were not sufficient to offset the losses sustained
> by the defendant from other aspects of his business." Melville B.
> Nimmer & David Nimmer, *Nimmer on Copyright*, §14.03[C][1]
> (2005) [hereinafter, *Nimmer*] (citing *Wilkie v. Santly Bros.*, 139 F.2d
> 264, 265 (2d Cir. 1943)).

> Moreover, §504(b) does not require the copyright owner to
> show that the infringer profited from the infringement. Rather, the
> copyright owner is "required to present proof only of the infringer's

> gross revenue."  17 U.S.C. §504(b).  The burden is on the infringer "to
> prove his or her deductible expenses and the elements of profit
> attributable to factors other than the copyrighted work."  *Id.*
> Accordingly, at trial, if Berry establishes, for example, that the only
> freight tracking system used by Fleming during the relevant period
> was the infringing software, and that the use of Berry's software
> caused Fleming to receive revenue, then the issue of Fleming's
> offsetting expenses will go the amount of damages that berry can
> recover under §504(b), not to Berry's entitlement to a damage award.
> In that event, Berry need show only Fleming's gross revenues, and the
> burden will fall on Fleming, not Berry, to prove offsetting expenses.
> In short, at this stage of the case, Fleming's nonprofitability does not
> defeat Berry's claim that Fleming profited from the infringement and
> does not limit the amount of Berry's recovery.

*See* Order Denying Defendant's Motion For Summary Judgment, etc. Dated
October 21, 2005 at pp. 30-31.

Fleming's first mistake was that it focused only on what it allegedly did with

the gross revenues, not where it got them and specifically why they didn't come

from Berry's work.  There was no evidence in the Defense case that addressed the

gross revenues represented by the alleged cost of good sold that was proven to be

causally related to the use of Plaintiff's software as established by  Trial Exhibit

46.  There was no evidence offered by the PCT to break the causal connection to

what Mr. Chun claimed was the cost of goods sold.   Though having ample

opportunity to elicit testimony from Mr. Chun to rebut the Plaintiff's showing that

FCS derived profits were hidden in the missing line item, Defendants produced no

evidence in rebuttal.  The only testimony relevant to the Logistics Department's

4

profit elicited from Mr. Chun was that, even though he received reports detailing the Logistics Departments profit/loss  (Trial Exhibit 67) those clearly relevant financials were not included in Fleming's apparently contrived financials that were admitted as Trial Exhibits 202 to 207.   Because it was unchallenged that this difference between gross receipts and gross margins contained FCS freight system profits, this missing line item could just have easily been the money moved into the pockets of investors as it was the cost of goods sold.  This is especially true because the only evidence at trial was that Fleming's customers, and not Fleming, were paying for the cost of goods during the relevant period.  This too was not addressed in the Defendant's case and leaves a gapping whole that precluded the issue from going to the jury.

The simple fact is that Fleming's own expert, Mr. Kinrich, readily admitted he didn't even bother to look at this $50 million plus element of Fleming's gross revenues.   When asked about his failure to address the revenues that were deducted as cost of goods sold, Mr. Kinrich's excuse was that the financials he had been given did not include any proof related to the revenues' he erroneously presumed were eaten up by the cost of goods sold.  Mr. Chun also admitted this relevant backup was not in Fleming's financial statements.   That excuse is not sufficient to avoid the PCT's burden as follows:

> When an infringer's income is uncertain because of
> inadequate record keeping, expert testimony has been
> held inadmissible on the subject.  Such uncertainty over
> income is to be contrasted with uncertainty over profits
> because of inadequate record keeping, in which case any
> doubt in the evidence should be resolved in the plaintiff's
> favor.  Taken to the extreme, this rule can result in the
> denial of any deduction for defendant's expenses . . .

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright. § 14.03[C][3], 14-56 (2005).

Choosing to rely on bad law that Mr. Berry as some obligation to prove that Fleming ran in the black, and seeking to be excused for its bad record keeping, Fleming failed to make any proper deduction from its gross revenues that it claimed were represented by the cost of goods sold figure to establish, as the law requires, what portion of its gross revenue was not derived from the use of the infringing work.  Mr. Berry bore no burden to make any deduction for deductible expenses.  Mr. Berry must show a minimum causal link between the infringing use of his software and the revenues that Fleming obtained and the amount of gross revenues.   The PCT bore all remaining burdens related to breaking the causal connection and itemizing, in detail, each and every deductible cost.  Only after that defense burden is met should the jury be tasked with the chore of determining the amount of profits due the Plaintiff.   The fact that Fleming claims that it didn't report this relevant information in the financials that it relied on at trial does not

excuse its burden that is established by Congress and its failure meant that the issue should not have gone to the jury.

The Copyright Act, 17 U.S.C. § 504(b) places the burden squarely on the defendant to show what portions of the gross revenues came from factors other than the copyrighted work.  Fleming failed to make any showing of deductible costs from revenues generated by Plaintiff's FCS that were proven, without rebuttal, to be in the alleged cost of goods sold figures.   Fleming's burden was to show each element of the deductible costs and why they were not derived from Mr. Berry's work.  The financials didn't even address cost of goods sold and the Court and jury were to take it on faith that the difference between gross revenues and gross margin was the cost of goods sold although there was nothing in the actual financials to support that speculation. Mr. Chun's testimony did nothing to remove from the PCT the burden to show that the FCS derived revenues weren't in the alleged cost of goods sold.  As stated above, it matters not whether the infringer had a bottom line profit.  It matters whether the infringer produced evidence to break the causal connection, not simply produce financials that showed that they lost money.  The PCT clings to its totally indefensible view that once they show no bottom line, its burden has been met.  That is not the law.

Moreover, there is nothing in the record that in any way removes from the

Defendant the obligation to have rebutted Mr. Christensen's statement that, during the relevant period, Fleming wasn't even paying for its goods that were being "fronted" by its own customers. The PCT ignored this, claiming now that the Court should look into a crystal ball and create a record that was never before jury regarding this necessary element of the PCT's case. It may be a shock to the PCT that, based on the manner in which it presented its case using its defective financials, Mr. Berry is entitled to such a large sum of money. Congress never intended for the infringer to have it easy. The Court must rule, as a matter of law, that Fleming failed to meet its burden. Because it failed to meet its initial burden as required by Congress, this  issue should not h ave gone to the jury. Therefore, the Court must grant the Rule 50(b) Motion or, in the alternative, grant a new trial.

DATED: Honolulu, Hawaii, April 10, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN