KOBAYASHI, SUGITA & GODA
LEX R. SMITH            3485-0
THOMAS H. YEE           7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone No. (808) 539-8700
Facsimile No.  (808) 539-8799
Email: lrs@ksglaw.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | CIVIL NO. CV03-00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **DEFENDANT PCT'S REPLY IN** |
| vs. | ) | **SUPPORT OF ITS RENEWED** |
| | ) | **MOTION FOR JUDGMENT AS A** |
| | ) | **MATTER OF LAW AGAINST** |
| | ) | **ENTITLEMENT TO PROFIT AND** |
| HAWAIIAN EXPRESS SERVICE, | ) | **VICARIOUS LIABILITY** |
| INC., et al., | ) | |
| | ) | Hearing Date: June 5, 2006 |
| Defendants. | ) | Time:         9:45 a.m. |
| _____ | ) | Judge:        Hon. Susan O. Mollway |

**DEFENDANT PCT'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST ENTITLEMENT TO PROFIT AND VICARIOUS LIABILITY**

**I.    Introduction**

There are none so blind as those who will not see. The Plaintiff has repeatedly obfuscated the most basic legal principles and facts and mischaracterized arguments and testimony. There are only two questions before the Court. The first is whether the plaintiff met his burden in establishing a causal nexus to the revenues of Fleming's Hawaii Division for indirect infringement of his software for a seventy day period. The second is whether a vicarious liability claim against Fleming for the direct infringement of its employees is a valid claim when the Ninth Circuit has found that a simple employee's use does not constitute direct infringement. For reasons more fully briefed in our moving papers, the answer to each question is no.

**II.    Berry Has Not Established a Causal Connection Entitling Him to Profits.**

Despite the plaintiff's wishful thinking, the burden of establishing a nexus between revenues and infringement has always been on Berry, not on Fleming. *See* PCT's Mem. of P. & A. in Support of JMOL[1] at 6-7.

Berry glibly states that his burden "was simply to put in the gross revenues."

---

[1] Memorandum of Points and Authorities in Support of Defendant PCT's Renewed Motion for Judgment as a Matter of Law Against Entitlement to Profit and Vicarious Liability, filed on March 23, 2006.

1

*See* Berry's Opp.² at 3.  Indeed, that is all he did.³  But in every case, a plaintiff must "demonstrat[e] some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply."  *See Polar Bear*, 384 F.3d at 712; *see also Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-61 (2d Cir. 2001); *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003).  This is the federal law and the law of this Circuit despite Berry's attempt to minimize its importance by referring to it as "court-made law."  *See* Berry's Opp. at 3.

The PCT's argument and the binding federal law are not about Fleming's bottom line profit as Berry suggests.  *See* Berry's Opp. at 1.  This is about his failure to establish a legally significant relationship between gross revenues and profits related to the infringement.  *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004); *see also* PCT's Mem. of P. & A. at 6-7.  This nexus requirement and Berry's burden is higher for indirect infringement.  *See*

---

² Plaintiff Wayne Berry's Memorandum in Opposition to PCT's Renewed Motion for Judgment as a Matter of Law Against Entitlement to Profits and Vicarious Liability, filed March 31, 2006.

³   In the Plaintiff's moving papers, he seeks to recover all of Fleming's Hawaii Division revenues of $54,413,019.00.  He ignores his causal burden there as here. *See* Plaintiff Wayne Berry's Renewed Motion for Judgment As A Matter of Law Regarding Defendant Fleming PCT's Failure to Produce Evidence of Deductible Expenses, Or In The Alternative, For New Trial, Docket No. 864, Filed March 21, 2006.

2

*Polar Bear*, 384 F.3d at 711, n.7; PCT's Mem. P. & A. at 7. Berry failed to carry his burden.

### A. Ueno's Testimony Did Not Establish Causation.

Berry claims that Ueno's testimony establishes a connection. *See* Berry's Opp. at 4. However, Ueno testified regarding the critical function of the software while admitting that he never independently learned about Fleming's business or structure. He further never looked at the software. He looked at only one page of voluminous financial documents and simply regurgitated what Berry told him to say. Such does not comprise legitimate expert testimony. *See* cases cited at PCT's Mem. of P. & A. at 14.

Berry makes much of the "hidden" cost of goods sold – the difference between two line items on a financial statement. *See* Berry's Opp. at 2, 4. Fleming's former Controller, Andrew Chun, and the PCT's damages expert, Jeffrey Kinrich, addressed this issue directly. That Ueno did not simply reflects his own incompetent understanding of the financials. Ueno utterly failed to establish any connection between software and financials or to even competently testify about financial data. *See* PCT's Mem. P. & A. at 12-15.

Berry claims that Ueno's testimony was unrebutted. *See* Berry's Opp. at 4. Berry audaciously argues that Brian Christensen admitted that "Fleming could not cease the use of the software…" when in fact, Fleming could and did. *See* Berry's

3

Opp. at 5. Christensen testified that the Berry software was not more valuable to the company than the Excel spreadsheets that replaced them. He presented evidence that it was the employees, not the software, that generated any profits. This was supported by the testimony of the individual employees about their own efforts. Jointly, the employees and Christensen flatly rebutted Ueno's baseless testimony about the critical value of the software. Berry's attempt to claim profits from the overall workings of the Fleming Hawaii Division fails because he has not shown a causal nexus through his expert.

> **B.    Berry's Testimony and Exhibits Concerning API Did Not Establish Causation, Nor Did Any of the Other Exhibits Berry Throws Against the Wall.**

Berry cannot establish causation between a company's profits and his software as a fact witness. *See* PCT's Mem. P. & A. at 15-16. His testimony about his software as used at API and exhibits concerning API (Exs. 21 and 96-100) are simply irrelevant to the crux of this case: how, if at all, Fleming's use of his software four years later impacted its profits. API is not and was not Fleming. Fleming acquired certain of API's *assets*, not its corporate structure. Berry never worked at Fleming. He has no first-hand knowledge of Fleming's financial structure, nor did he testify about anyone at Fleming providing him with a single shred of information about how his software -- even if used for freight tracking purposes identically as it was during the API days -- impacted the bottom line of a

4

separate company with an entirely alien financial structure. Similarly, Berry has no financial expertise that would qualify him to opine on these issues. To the extent Berry testified in this regard, such testimony was rank speculation and properly disregarded.

Tacitly acknowledging these deficiencies, Berry tries to cover them over with a truckload of other exhibits that on close inspection are equally irrelevant.

First, the Ron Griffin e-mail Berry loves so dearly (Ex. 78) simply shows that Fleming was using the Berry software during the infringement window, which is not even disputed. But the e-mail by itself proves nothing: Berry <u>still</u> needs to prove that his software impacted profits, and nothing about the Griffin e-mail does that.

Second, exhibits demonstrating the employees' temporary frustrations at implementing the Excel spreadsheets (Exs. 10, 13, 14, 15, 17, 26, and 27) were easily explained away at trial. The employees unanimously testified that they overcame those frustrations and now actually prefer the spreadsheets. Moreover, the evidence was that Fleming's financial performance actually improved after the conversion to the spreadsheets, further indicating that Berry's software had no link to Fleming's profits regardless of which program the employees found easier to use at the time.

Finally, Berry cites at least fifteen more exhibits for the nebulous

proposition that "Additional exhibits dealing with the profits being generated by the use of the unlicensed work make this motion sanctionable." Berry Opp. at 4. But they show no such thing. By way of example, Ex. 103 does not even mention profits. Instead, it simply shows the defendants trying to understand Berry's position. Exhibit 105 likewise does not mention profits; instead, it shows Brian Christensen accurately predicting that Berry "will probably sue us for something else" and Teresa Noa accurately predicting that Berry would never prevail on any claim based on use of "a database to keep track of the same things we keep track of" (i.e., the spreadsheets) and that he would get nothing from any of the employees. Exhibits 84 and 85 concern Fleming's relationship with HEX, an issue that saw no air time at trial after the Court correctly determined that Berry could not double recover against his previous settlement. Exhibit 92 is chock full of screens from Crystal Reports, in which Berry has no copyright at all. The balance of Berry's exhibits are similarly irrelevant, and the bottom line is that Berry simply never connected his software to any actual Fleming profits. The jury rightly awarded him none.

### III.    There is No Valid Claim Against Fleming for Vicarious Liability.

The PCT has never admitted and does not admit vicarious liability. *Compare* Berry's Opp. at 6. What Berry is mischaracterizing is the portion of Mr. Baumann's closing argument in which the PCT said that *if* the jury were to award

direct infringement damages against any employee the jury should also find the PCT vicariously liable so the employees would not face individual liability.  But the PCT's true position is and has been that the so-called direct infringement of its employees (for which it is being held vicariously liable) is really just Fleming's own direct infringement.  When the alleged copyright infringer is a simple employee user, the Ninth Circuit has found no grounds for finding direct infringement as to the individual.  *See* PCT's Mem. P. & A. 18-20; *see also See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985); *Wilden Pump & Eng'g Co. v. Pressed and Welded Products Co.*, 655 F.2d 984, 990 (9th Cir. 1981) (reversing direct infringement finding for non-management employees who derived no personal benefit from infringement).

      The lingering direct infringement claim against the employees did nothing but create confusion in creating the jury instructions and special verdict form.  The employees individually did not profit and their infringement is really singularly Fleming's direct infringement.  The futility and baselessness of the vicarious liability claim is illustrated by the fact that there were no additional damages because the underlying infringing act was the same.  There was no additional profit because the employees did not profit individually in their personal capacity for the infringement.  There were no additional actual damages and Mr. Berry's expert, Ueno, did no per-employee analysis.

7

Moreover, even if there were a basis for a direct infringement claim against the individual employees for which Fleming was vicariously liable, because there were no profits from that infringement, there can be no vicarious liability. Profits are an essential element of the vicarious liability claim. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2776 (2005); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001)); *see also* Mem. P. & A. at 16-17.

Finally, even if there were a theoretical basis for recovering profits (assuming Berry successfully met his causal burden), the jury conclusively determined that there were no profits to be had. *See* Ex. A to Mem. P. & A. at p. 5 (Special Verdict Form, Question 5). Therefore, the vicarious liability claim fails as a matter of fact even if it is allowed as a matter of law.

///
///
///
///
///
///
///
///

## IV. Conclusion

Given the trial record and the relevant law, Fleming respectfully renews its motions and moves this Court to enter judgment as a matter of law in its favor as to all claims for profits and vicarious liability.

DATED: Honolulu, Hawaii, April 11, 2006.

/s/ Thomas H. Yee

KOBAYASHI, SUGITA & GODA

LEX R. SMITH (659-0)
THOMAS H. YEE (7344-0)

KIRKLAND & ELLIS LLP
MICHAEL E. BAUMANN
DAMIAN D. CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant PCT

9