LYLE S. HOSODA & ASSOCIATES, LLC

LYLE S. HOSODA          3964-0
RAINA P.B. MEAD         7329-0
345 Queen Street, Suite 804
Honolulu, Hawaii 96813
Telephone: (808) 524-3700
Facsimile: (808) 524-3838
E-mail: lsh@hosodalaw.com

Attorneys for Defendants
BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA,
MELVIN PONCE, SONIA PURDY, JUSTIN FUKUMOTO,
ALFREDDA WAIOLAMA, and JACQUELINE RIO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen, | CIVIL NO. CV03-00385 SOM-LEK |
| | (Copyright) |
| Plaintiff, | |
| | DEFENDANTS BRIAN CHRISTENSEN, |
| v. | MARK DILLON, TERESA NOA, |
| | MELVIN PONCE, SONIA PURDY, |
| HAWAIIAN EXPRESS SERVICE, | JUSTIN FUKUMOTO, ALFREDDA |
| INC., a California | WAIOLAMA, AND JACQUELINE RIO'S |
| corporation; H.E.S. | REPLY MEMORANDUM IN SUPPORT OF |
| TRANSPORTATION SERVICES, INC., | RENEWED MOTION FOR JUDGMENT AS |
| a California corporation; | A MATTER OF LAW AS TO ACTUAL |
| CALIFORNIA PACIFIC | DAMAGES AND VICARIOUS |
| CONSOLIDATORS, INC., a | INFRINGEMENT; CERTIFICATE OF |
| California corporation; | SERVICE |
| JEFFREY P. GRAHAM and PETER | |
| SCHAUL, California citizens; | |
| MARK DILLON and TERESA NOA, | |
| BRIAN CHRISTENSEN, Hawaii | |
| citizens; FLEMING COMPANIES, | Mon-Hearing Motion |
| INC., an Oklahoma corporation; | Judge:   Hon. Susan Oki |
| C & S LOGISTICS OF HAWAII, | Mollway |
| LLC, a Delaware LLC; C & S | |
| WHOLESALE GROCERS, INC., a | [*caption continued on next* |
| Vermont corporation; C & S | *page*] |
| ACQUISITIONS, LLC; FOODLAND | |
| SUPER MARKET, LIMITED, a | |
| Hawaii corporation; HAWAII | |

```
TRANSFER COMPANY, LIMITED, a      )
Hawaii corporation; RICHARD       )
COHEN, New Hampshire citizen;     )
ES3, LLC, a Delaware Limited      )
Liability Company, MELVIN         )
PONCE, SONIA PURDY, JUSTIN        )
FUKUMOTO, ALFREDDA WAIOLAMA,      )
JACQUELINE RIO, Hawaii            )
citizens; JESSIE GONSALVES,       )
LUIZ RODRIGUES, AL PEREZ and      )
PATRICK HIRAYAMA, California      )
citizens; GUIDANCE SOFTWARE,      )
LLC, a California LLC; MICHAEL    )
GURZI, a California citizen;      )
ALIX PARTNERS, LLC, a Delaware    )
LLC; DOE INDIVIDUALS 2-350;       )
DOE PARTNERSHIPS, CORPORATIONS    )
and OTHER DOE ENTITIES 2-20,      )  Trial:    February 28, 2006
                                  )  Judgment: March 16, 2006
             Defendants.          )
                                  )
_____)
```

**DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, SONIA PURDY, JUSTIN FUKUMOTO, ALFREDDA WAIOLAMA, AND JACQUELINE RIO'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO ACTUAL DAMAGES AND VICARIOUS INFRINGEMENT**

I.  **INTRODUCTION**

      It is, and has been apparent since almost the outset of this lawsuit, that the Employees view the facts and applicable law much differently than Mr. Berry. As individuals and entities have the right and ability to differ in opinion, we are fortunate under our American jurisprudence system to have judges and juries to determine which is the prevailing view.

      Plaintiff's resilience and bravado after being defeated time and time again has far surpassed being amusing at this

point. After nearly a year after his initial complaint was filed herein, the Plaintiff was given leave to attempt to clean up his claims and allegations. Leaving behind the allegations referring to Al-Quaida, cigarette smuggling and ties to the wrongdoing of a former Bishop Estate Trustee, Plaintiff's second amended complaint was reduced down to seven counts including: 1) Direct Infringement; 2) Contributory and Vicarious Infringement; 3) Conspiracy to Infringe; 4) Misappropriation of Trade Secrets; 5) Violation of the Sherman Anti-Trust Action; 6) RICO; and 7) Injunctive Relief against a total of twenty eight (28) individual and entity defendants. Plaintiff claimed that he was entitled to hundreds of millions of dollars for infringing on his copyrighted database from the time that he created and licensed it until the time when defendants' all stopped using his database (Plaintiff has always argued and continues to argue that the defendants continue to use either his database or an unauthorized derivative).

By the time that trial in this case commenced, twenty (20) of the twenty eight (28) defendants had been completely absolved of any liability for any of the seven (7)counts, being dismissed by way of summary judgment. The Employees represented seven (7) of the eight (8) remaining defendants. They moved for summary judgment three (3) times. With each motion, the facts and allegations remaining for trial were narrowed significantly.

The Employees successfully defended three attempts by the Plaintiff for a restraining order or injunction. Six (6) out of seven (7) of the counts against the Employees were defeated by way of summary judgment. And, the time frame for any damage consideration was significantly reduced from the beginning of creation till the end of time, to a narrow and limited seventy (70) day period between April 1, 2003 to June 9, 2003.

At trial, after all of the evidence was heard and considered, the jury placed zeros next to five (5) of the Employees, and the nominal sum of two dollars ($2.00) next to the two remaining Employees. This was the jury's award following four (4) full days of trial at the conclusion of which Plaintiff asked the jury for an award of nearly sixty million dollars ($60M).

Thus, in the win-loss column whether the counting is done by parties or claims eliminated, or dollars asked for versus dollars awarded, Plaintiff was annihilated, and has no business being thrusting and audacious in attempting to convince this Court that his views should be the prevailing ones for this motion. Based upon his $700,000 attorney's fees and costs request recently filed, Plaintiff makes clear the huge mis-perception or mis-evaluation that he has regarding the relevant facts and law. From the formal settlement discussions in mediation and the settlement conferences, Plaintiff's mis-

evaluation is very clear.  Plaintiff could have settled long ago and been far more financially successful than proceeding to trial.  But, Plaintiff has made plain that his intention has never been to settle, and that he would take a high risk and gamble on trying to hit defendants with a mega-million dollar judgment.

Plaintiff did as he has said he would.  He had his chance and day in court.  He gambled, and he lost.  And, now it is time to move on.  For the Employees, they filed the present motion for judgment as a matter of law because based upon the facts in evidence, and applicable law it is time to fully dismiss them from this lawsuit.  Both this Court and the jury have now seen and heard the evidence.  The jury has found that the Employees are not responsible to pay Plaintiff, other than the nominal sum of four dollars ($4.00).

## II. THE MOTION SHOULD BE GRANTED BECAUSE THERE IS NO EVIDENCE THAT ANY OF THE EMPLOYEES' USE OF THE DATABASE CAUSED DAMAGE TO THE PLAINTIFF

Plaintiff cites no law in his Opposition to the Employees' motion.  There is no dispute then that the motion should be granted if there is no legally sufficient basis for a reasonable jury to find for the party on a given issue.  *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004).

### A. The Jury Determined No Causation

There is also no dispute as to the applicable law related to causation. In order to meet his burden, the Plaintiff must introduce evidence and prove by a preponderance of the evidence that the Employee's infringement was a substantial factor in causing Plaintiff's damage. *See Mackie v. Rieser,* 296 F.3d 909, 915-916 (9th Cir. 2002)(a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement); *Polar Bear Productions, Inc. v. Timex Corp.,* 384 F.3d 700, 708 (9th Cir. 2004)(a plaintiff in a § 504(b) action must establish a causal link between the infringement and monetary remedy sought as a predicate to recovery of both actual damage and profits). The jury was expressly instructed on this issue and conclusively found that based upon the evidence presented, five (5) of the Employees' inadvertent direct infringement was not a substantial factor, and did not cause any damage to Plaintiff. The March 7, 2006 Special Verdict Form reads:

> State the portion of the actual damage amount that each defendant's direct infringement caused. If one or more defendants were responsible for the entire damage amount, you may so indicate by writing the word "all" in the space next to any such defendant's name. **If a defendant did not cause the entire actual damage award, you may fill in "0"** or a dollar amount less than your response to

> Question No. 2 next to that defendant's name.
> *** [bold and underscoring added].

By placing zeros next to the names of Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama and Jacqueline Rio, the jury determined that Plaintiff had failed his burden of proof on causation. Moreover, the two dollar ($2.00) figures placed next to Mark Dillon's and Teresa Noa's name are so nominal and de minis in the context of Plaintiff's demands for sixty million dollars ($60M), that the Court should similarly find that Plaintiff failed his burden on causation with respect to all Employee defendants.

**B.    There is No Record Evidence of Causation**

Plaintiff's evidence came from essentially the only two witnesses he offered: 1) Mr. Berry, and 2) Thomas Ueno (CPA - damage expert). Neither provided any testimony or offered any documentary evidence of a causal link or nexus between any one of the individual Employee defendants' infringing activity or conduct and the damages being claimed by the Plaintiff.

Mr. Berry did not even mention any of the individual Employee defendants by name during his examination with the limited exception of testifying that he delivered notices to Mr. Dillon, Ms. Noa, Ms. Rio and a Ms. Dickie upon the transition from API to Fleming. Other than that, Mr. Berry did not testify as to any damage being caused by any infringing activity by an

7

individual Employee.  Therefore, no causal link was established by Mr. Berry.

Mr. Ueno did not know the names of the individual defendants, what their positions were within the company, or what their inadvertent infringing activity was.  He admitted that the report that he prepared did not even consider whether there was any causal link between the damage figure that he had calculated for direct infringement and any of the Employee's infringing conduct.  He did not render any opinion that Plaintiff's damages were caused by or were directly attributable to any of the Employees' conduct.  So not only was there no opinion, but there was no attempt to even have this threshold issue addressed by Plaintiff's expert.  Therefore, Plaintiff has failed his burden on causation.

### III. THE EMPLOYEES ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE OF DIRECT INFRINGEMENT BY THEM AS INDIVIDUALS

#### A. Sonia Purdy

Sonia Purdy testified that she never used Mr. Berry's database during the seventy (70) day relevant time period.  This evidence is undisputed.  She was not even cross-examined.  There is nothing to hold her in this lawsuit any longer.

The history of why Ms. Purdy was not previously granted summary judgment has already been traced.  This Court granted summary judgment to all Employees including Ms. Purdy for any use

of the Excel spreadsheets (which Plaintiff had argued was still an authorized use of his database). In support of her motion for summary judgment, Ms. Purdy signed an affidavit stating that she never used Mr. Berry's database after June 9, 2003.

Because the motion was focused on the period after June 9, 2003, it was not discovered until just prior to trial that Ms. Purdy did not use Mr. Berry's database either before or after June 9, 2003. The truth is she never used his database. That is exactly what she testified to (because she was in another department). This testimony is uncontroverted, and she should be dismissed from the lawsuit because there is no evidence to hold her any longer.

**B.** **The Remaining Employees Should Also Be Dismissed**

The remaining Employees testified that they were employees just doing their jobs with the equipment (database) that they were provided with by their Employer during the relevant seventy (70) day period. They had no choice on what database to use to do their work and they had no idea that by merely going to work and using the database that they were using that they were violating Plaintiff's copyrights. There is no evidence to contradict any of this testimony evidence. There is also nothing in the record to dispute that all of the Employees were acting within the course and scope of their employment during the relevant time period.

Plaintiff belittles Ninth Circuit case law set forth in *Wilden Pump and Frank Music*. He emphasizes that the main holdings in those cases were related to individuals who were not exposed on the claim for profits. The language cited from those opinions shows the Ninth Circuit's position on holding non-management, salaried employees personally liable generally. Unable to find contrary authority, Plaintiff relegated himself to attempting to take issue with the cited cases.

The Employees have also offered additional case precedence to support their position that they should be dismissed from this lawsuit because all evidence is that they were mere employees acting within the course and scope of their employment. This Court should consider the findings and holdings in *Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082 (C.D. Cal. 2001) and *Freiman v. Lazur,* 925 F.Supp. 14 (D. D.C. 1996). In *Hendrickson*, a federal district court granted summary judgment in favor of two employees of eBay who were sued for copyright infringement by the owner of a copyrighted motion picture entitled, "Manson". The court determined the undisputed facts established eBay did not have the right and ability to control the infringing activity. In granting summary judgment to the employees and to the company, the court stated that "the copyright claims against eBay's employees are based solely on

10

alleged acts and omissions committed in the course and scope of their employment with eBay." *Hendrickson*, 165 F.Supp. at 1094.

Similarly in *Freiman*, a federal district court granted motions to dismiss filed by employees of a federal agency. In *Freiman*, the holders of a copyright for a computer program filed a copyright infringement action naming a federal agency and individual employee defendants. The court ruled that as long as the employees were acting within the course and scope of their employment, the federal agency and not the individual employees was possibly liable to the plaintiff therein for copyright infringement. *Freiman*, 925 F.Supp. at 19.

As the rulings in the above cases show, there is ample authority to dismiss the Employees herein from this case. The evidence of record is that Melvin Ponce, Justin Fukumoto, Jacqueline Rio, and Alfredda Waiolama were former salary and hourly wage earners of Fleming who had no decision-making authority or control. Any infringement that occurred between April 1, 2003 and June 9, 2003 was inadvertent and done in the scope of their employment and under the direction of their supervisors. Sonia Purdy was not even working in Fleming's logistics department during the relevant time period and never used Plaintiff's FCS. Brian Christensen also never used Plaintiff's FCS, and the Court properly ruled Mr. Christensen was

not liable for any infringement.  The Employees are not individually liable.

### IV. **VICARIOUS LIABILITY**

It is difficult to comprehend Plaintiff's direct attack that the Employees are "sophomoric" and their position on vicarious liability "absurd" and sanctionable.  The Employees' position is very simple.  They do not belong in this lawsuit.  They have maintained that since the outset of this lawsuit.  They nearly completely extricated themselves from the lawsuit before the commencement of trial.  As they were compelled, they went through trial and successfully defended themselves, with the Plaintiff getting no more than four dollars ($4.00) from two (2) of the seven (7) individual Employees.

The Employees should be dismissed based upon the evidence and applicable law.  There can be no vicarious liability in the event that the Employees are dismissed completely from the lawsuit.  The Employees have not taken an inconsistent position.  Nor have they taken a position against their own interest.  The Employees have consistently maintained that they are not liable for direct or any other type of infringement, and that without them being liable, the Employer can not be held vicariously liable because it begs the very definition of vicarious liability.  Only in Plaintiff's world could the Employees' position be mis-read or misunderstood.

**V.     CONCLUSION**

      For the foregoing reasons, the Employees respectfully request that this Honorable Court grant their renewed motion for judgment as a matter of law, and for such other and further relief as this Court deems just and proper under the circumstances.

      DATED: Honolulu, Hawaii, April 11, 2006.


                              /s/ Lyle S. Hosoda
                              LYLE S.  HOSODA
                              RAINA P.B. MEAD

                              Attorneys for Defendants
                              BRIAN CHRISTENSEN, MARK DILLON,
                              TERESA NOA, MELVIN PONCE, SONIA
                              PURDY, JUSTIN FUKUMOTO, ALFREDDA
                              WAIOLAMA, and JACQUELINE RIO