# Exhibit

# 1

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813
TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920

*Counsel*
TIMOTHY J. HOGAN
----------------
*Of Counsel*
GREG TURNBULL, MA

February 9, 2004

Lyle Hosoda, Esq.                              **VIA FAX to No. 524-3838**
345 Queen Street, Suite 804
Honolulu, Hawaii 96813

### RULE 408 SETTLEMENT COMMUNICATION

**Re:    Wayne Berry v. Hawaiian Express Service, Inc., et al.,
       Civil No. CV03-0035 SOM-LEK**

Dear Mr. Hosoda:

I am writing in regard to the attempt to settle the above case.  I will presume that your clients are not presently in a position to contribute anything of substance to the monetary part of any settlement.  In regard to any settlement that provides your clients with a resolution of this case, Mr. Berry will require that they agree to enter into a stipulated injunction against any future acts inconsistent with Mr. Berry's rights under the Copyright act and/or  the Hawaii Uniform Trade Secrets Act.   This offer will remain open until February 18, 2004, unless extended by me in writing.

Very truly yours,

LYNCH ICHIDA THOMPSON KIM & HIROTA

Timothy J. Hogan

TJH:llk
Enclosure
cc: Mr. Wayne Berry

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813

TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920
E-MAIL: mail@loio.com

COUNSEL
TIMOTHY J. HOGAN

OF COUNSEL
GREG TURNBULL, MA

## FAX TRANSMITTAL

February 9, 2004

TO:    Lyle Hosoda, Esq.    FAX NO.    524-3838

FROM:  Timothy J. Hogan, Esq.    PAGES:    2    *D@ 9:24*

RE:    *Wayne Berry v. HEX, et al., Civ. No. CV03 00385 SOM-LEK*

**PLEASE NOTE: This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you received it in error, please notify the sender immediately by telephone or fax.**

Letter (dated 2/9/04) to Lyle Hosoda from Timothy J. Hogan.

# Exhibit

# 2

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813
TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920

*Counsel*
TIMOTHY J. HOGAN
-----------------
*Of Counsel*
GREG TURNBULL, MA

February 9, 2004

Lex R. Smith, Esq.
Kobayashi Sugita & Goda
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

**VIA FAX NO. 539-8799**
**and FIRST CLASS MAIL**
**Rule 408 Settlement Communication.**

Re:   **Wayne Berry v. Hawaiian Express Service, Inc., et al.,**
      **Civil No. CV03-0035 SOM-LEK**

Dear Mr. Smith:

As you may recall, we have discussed several ways to resolve this case. My client needs to be certain that he will never have to pursue your clients for infringement again and your clients seek a similar assurance that they will not be sued by Mr. Berry. Therefore we recommend the following:

A single payment of $400,000 and a stipulated injunction against future infringement. To assure compliance with that injunction, C&S must agree to engage a reputable outside programer to create a non-infringing replacement for Mr. Berry's system. We must have sufficient access to assure that C&S is not again using Mr. Berry's system or any derivative of Mr. Berry's system. A reputable programmer should be sufficient for that access so long as Mr. Berry is able to communication with them unimpeded.

Any role by former API Employees or Fleming-Logics Personnel in the development and programing of the system will remain a basis for suspecting that C&S is infringing. We believe that reputable programers will not agree to these person having any role in the development of any replacement work. Additionally, Mr. would also be willing to discuss a going forward license fee arrangement that could permit changes to be made by your client.

Page 2
February 9, 2004

This offer will remain open until February 18, 2004 unless extended in writing.

Very truly yours,

LYNCH ICHIDA THOMPSON KIM & HIROTA

Timothy J. Hogan

TJH:llk
cc: Mr. Wayne Berry

# Exhibit

# 3

## Fleming Computer 05 FHL 150 New

| | |
|---|---|
| **From:** | "Fleming WorkingToWin" <FLMTOWIN@email.fleming.com> |
| **To:** | <ADINFO@email.fleming.com>; <ADISBRO@email.fleming.com>; |
| | <AGAITHE@email.fleming.com>; <AKESHAV@email.fleming.com>; |
| | <ALEWIS@email.fleming.com>; <ARANDOL@email.fleming.com>; |
| | <ASCOTT@email.fleming.com>; <ASTANLE@email.fleming.com>; |
| | <ATHAYER@email.fleming.com>; <ATROXEL@email.fleming.com>; |
| | <ATURNER@email.fleming.com>; <BCOOK@email.fleming.com>; |
| | <BKROHN@email.fleming.com>; <BMARQUA@email.fleming.com>; |
| | <BNIEMAN@email.fleming.com>; <BSTAPP@email.fleming.com>; |
| | <BSTEELE@email.fleming.com>; <CALBREC@email.fleming.com>; |
| | <CAREER@email.fleming.com>; <CBOND@email.fleming.com>; <CBURT@email.fleming.com>; |
| | <CGODDAR@email.fleming.com>; <CKUPIEC@email.fleming.com>; |
| | <CLEISTE1@email.fleming.com>; <CMCHENR@email.fleming.com>; |
| | <CPHILLI@email.fleming.com>; <CPOYNER@email.fleming.com>; |
| | <CROCKWE@email.fleming.com>; <CSIMMON@email.fleming.com>; |
| | <DALTES@email.fleming.com>; <DBAILEY1@email.fleming.com>; |
| | <DBROWN1@email.fleming.com>; <DDAWSON@email.fleming.com>; |
| | <DDENNER@email.fleming.com>; <DDOUGLA@email.fleming.com>; |
| | <DELKINS@email.fleming.com>; <DFALCK@email.fleming.com>; |
| | <DGRIFFI@email.fleming.com>; <DHENSLE@email.fleming.com>; |
| | <DHUGHES@email.fleming.com>; <DJEROME@email.fleming.com>; |
| | <DKASTNE@email.fleming.com>; <DMCDONA@email.fleming.com>; |
| | <DMOBLEY@email.fleming.com>; <DSHERID@email.fleming.com>; |
| | <DSIGLER@email.fleming.com>; <DSMITH3@email.fleming.com>; |
| | <DSTEWAR@email.fleming.com>; <DVANDER@email.fleming.com>; |
| | <DVICK@email.fleming.com>; <DWALLER@email.fleming.com>; |
| | <DWEST@email.fleming.com>; <DWHITTE@email.fleming.com>; <E-Status#032#Forms@email.fleming.com>; <ECRATER@email.fleming.com>; |
| | <EKERNAL@email.fleming.com>; <EROBERS@email.fleming.com>; |
| | <EWEISSE@email.fleming.com>; <FFLIGHT@email.fleming.com>; |
| | <FKITELI@email.fleming.com>; <GBREEDL@email.fleming.com>; |
| | <GCOPELA@email.fleming.com>; <GDOWNS@email.fleming.com>; |
| | <GJANOK@email.fleming.com>; <GLONG@email.fleming.com>; |
| | <GPOTTER@email.fleming.com>; <GRHYNE@email.fleming.com>; |
| | <GSCHMID@email.fleming.com>; <GSWANSO@email.fleming.com>; |
| | <HALBERT@email.fleming.com>; <HCARTTA@email.fleming.com>; |
| | <HLEWIS@email.fleming.com>; <HSNYDER@email.fleming.com>; |
| | <JADAIR@email.fleming.com>; <JBLEASE@email.fleming.com>; |
| | <JBRAND@email.fleming.com>; <JCOTTER@email.fleming.com>; |
| | <JDISBRO@email.fleming.com>; <JDOSHIE@email.fleming.com>; |
| | <JEDWARD@email.fleming.com>; <JFUGATE@email.fleming.com>; |
| | <JGARNER@email.fleming.com>; <JHERTZL@email.fleming.com>; <JIVY@email.fleming.com>; |
| | <JLASALA@email.fleming.com>; <JLEONAR@email.fleming.com>; |
| | <JLOCKE@email.fleming.com>; <JMALLET@email.fleming.com>; |
| | <JMINSTE@email.fleming.com>; <JMORGAN@email.fleming.com>; |
| | <JPEARSO@email.fleming.com>; <JPEREZ@email.fleming.com>; |
| | <JPOWELL@email.fleming.com>; <JPRAY@email.fleming.com>; <JROST@email.fleming.com>; |
| | <JRUNYAN@email.fleming.com>; <JSANCHE@email.fleming.com>; |
| | <JSORREL@email.fleming.com>; <JTAYLOR1@email.fleming.com>; |
| | <JTISCH@email.fleming.com>; <JWALKER@email.fleming.com> |
| **Sent:** | Thursday, March 21, 2002 11:22 AM |
| **Subject:** | Announcing Brian Christensen Named Hawaii Division President |

Please print and post this announcement for associates who do not have access to GroupWise. Thanks!

Announcing*



Brian Christensen Named Hawaii Division President

Brian Christensen has been promoted to President of our Hawaii Division effective immediately. Brian will report to Mike Carey, Sr. Vice President, Operations.

Brian joined Fleming in January of 1991 as a Sales Representative and was promoted to Division Sales Manager in 1993. Prior to working at Fleming, he worked in the retail food industry in Hawaii for 15 years.

"Brian's many years on the island has prepared him well to lead our associates in Hawaii," said Mike. "I am very confident that Brian will continue the long standing traditions of Servant Leadership, excellent service to our customers, and a commitment to growth that have become the standard in the Hawaii Division."

Locally, Brian is very involved in the community. He is on the Board of Directors of the Hawaii Food Bank and an active member of the Hawaii Food Industry Association.

Please join us in congratulating Brian on his new position!

Exhibit

4

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Richard L. Wynne
(213) 680-8202
rwynne@kirkland.com

213 680-8400

www.kirkland.com

Facsimile:
213 680-8500

July 13, 2004

**VIA FACSIMILE**

Timothy J. Hogan
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813

Re:    *Berry vs. Hawaiian Express Services, Inc., et al.*

Dear Mr. Hogan:

As I believe you are aware, I am senior bankruptcy counsel to Fleming in its Chapter 11 case. While we have not previously spoken, I was in Court last week during the argument over your motion for relief from the automatic stay.

We have had several discussions with the Official Committee of Unsecured Creditors concerning Mr. Berry's claims and litigation, and I am pleased to be able to convey to you the enclosed term sheet for a full and complete settlement. We reviewed your February 9, 2004 settlement offer, and have attempted to respond to it as directly as possible in order to accommodate Mr. Berry's position.

While we understand that previous offer has expired, we felt that it would be most productive to use that offer as a starting point. In that regard, we have offered to agree to Mr. Berry's monetary demand, and to the request for a stipulated injunction against future infringement. We have also provided a mechanism for a third party programmer to ensure that the offending software program has been properly removed from the C&S computer systems.

Please note that we do not have C&S' or the Committee's consent to the enclosed offer, although we have informed them about it and have requested their consent. We are also in the process of having a complete settlement agreement drafted for your review, but believed that providing this term sheet would facilitate our discussions.

Chicago            London            New York            San Francisco            Washington, D.C.

# KIRKLAND & ELLIS LLP

Timothy J. Hogan
July 13, 2004
Page 2


If possible, I would like to discuss this with you this week, and could also come to Hawaii to meet with you and Mr. Berry next Tuesday.  I will be traveling tomorrow to New York, but available after 4:00 p.m. New York time on my cell phone at (310) 729-3054.

Very truly yours,

Richard L. Wynne

RLW/cm
Enclosure

*Settlement Communication*
*Protected under F.R.E. 408*

## [PROPOSED] SETTLEMENT AGREEMENT TERM SHEET

### *Draft -- July 13, 2004*

1. Wayne Berry receives one lump-sum payment of $400,000.00 on the Effective Date of the Plan.

2. Core-Mark Newco stipulates to an injunction against future infringement as a condition of Plan confirmation.

3. All other Debtor entities and all interested C&S entities stipulate to injunction against future infringement.

4. C&S engages a reputable outside programmer to verify that all infringing software identified in Berry's Hawaiian preliminary injunction motion has been permanently removed from all C&S computers, including home computers of Mark Dillon and Teresa Noa.

5. Berry dismisses with prejudice and provides complete general releases for all defendants.

6. Berry withdraws all filings in Debtors' bankruptcy proceedings made on his own behalf or on behalf of entities to which he is related in any way, including but not limited to filings made on behalf of API. Berry waives and releases any and all pre- and post-petition claims.

7. Berry agrees not to oppose confirmation of Debtors' Plan.

8. No binding deal unless and until the parties sign a formal, written agreement. Until that time, all discussions and draft documents are for negotiation purposes only and no party is bound to any position in any manner.

9. Subject to approval of C&S and OCUC.

   END

Exhibit

5

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813
TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1920

*Counsel*
TIMOTHY J. HOGAN
------------------
*Of Counsel*
GREG TURNBULL, MA

July 14, 2004

Richard L. Wynne                               <u>**Via Fax No. (213) 680-8500**</u>
Kirkland & Ellis
777 S. Figueroa Street, Suite 3700
Los Angeles, California 90017

Re:    *In re Fleming Companies, Inc.*, Bk. No. 03-10945-MFW (Bankr. Del.)
       <u>**Fed. R. Evid. 408 Settlement Communication**</u>

Dear Mr. Wynne:

    Thank you for your letter dated July 13, 2004. As an initial matter, I fear that there is not sufficient time to resolve this prior to the hearing on the 26th. Any agreement we might reach would be subject to objections extending past the Confirmation hearing. If you can propose some mechanism that would allow any agreement with Mr. Berry to be enforceable prior to the hearing were I presume you will require his withdrawal of his objection to the plan filed some weeks ago, I am happy to continue attempting to resolve this. In any event, attached you will find a term sheet that will address our concerns.

    We, like the Debtors, agree to be bound only by the final expression of our acceptance in a written agreement signed by Mr. Berry.

                                        Very truly yours,

                                        LYNCH ICHIDA THOMPSON KIM & HIROTA

                                        Timothy J. Hogan

TJH:llk

cc: Julie Skidmore, Esq.

Enclosure

Settlement Communication Inadmissible Under Fed. R. Evid. 408

Mr. Berry's Term Sheet July 14, 2004
Numbers Correlate to Debtors' Draft - - July 13, 2004

1.     Monetary issues should be addressed after material terms established.

2 & 3  The injunctions must be entered in one of the copyright cases as part of a stipulated final
       judgment. Otherwise it will lack subject matter jurisdiction and the Copyright Office will
       not have a proper record of the disposition. Your trucker has just disclosed what we
       believe to be another derivative that went on line in May. We need to have Hawaii
       jurisdiction to enforce this.

       We presume that the "interested C&S entities" will include all defendants in the present
       litigation that are engaged in commerce related to C&S. If not, we need to carve out for
       the truckers and Foodland. We also need all copies returned including the ones taken by
       any experts and attorneys and some means to verify all this.

4.     What is C&S going to do in the interim? We claim that all Mark Dillon works are Mr.
       Berry's derivatives and do not intend to allow future unlicenced use. We have been
       willing to license C&S but they have refused to discuss it. If they maintain a copy of any
       derivative, we will consider the new program to be Mr. Berry's.

       Who is the "reputable outside programer?" We will require the identity prior to
       agreement. We need to be sure that they won't have any prior access to Berry Technology
       or his and C&S/Fleming former employees. As to Dillon and Noa, their continued
       relationship to C&S/Fleming will be a serious stumbling block.

       If C&S wants to do a true clean room they will have to accept going to pre-paid freight
       for a year during development.

       We suggest the following:

       "Fleming/Core-Mark Newco agrees and understands "Clean Room" development
       standards for Copyright protection and will adhere to these standards for any future
       development, whether the development is done "in-house", as "work made for hire" or
       not "work made for hire". Should a conflict arise between the Fleming/Core-Mark Newco
       and Berry, Fleming/Core-Mark Newco will bear the burden of producing records of
       "Clean Room" development or a valid software license for "off the shelf" commercial
       freight control software from another software company in the business of selling "freight

logistics systems" in lieu of the "Clean Room" documentation for the alleged offending product."

5.    We need entry of final judgment and waiver of right to appeal.

6.    Mr. Berry can only withdraw claims for himself only. The API claim is separate and Mr. Berry is not disposed to withdraw it.   If there are any other claims that your are referring to, Debtors need to identify them with specificity.

7.    This is problematic from a timing perspective as set forth in the cover letter.

8.    Agree.

9.    We agree that C&S has to agree to the injunction relating to C&S.  We do not agree that we can't  reach a deal without C&S' consent.  The committee is obviously going to have to agree.

End

# LYNCH ICHIDA THOMPSON KIM & HIROTA

### A LAW CORPORATION

MAILE M. HIROTA
WESLEY W. ICHIDA
STEVEN J. KIM
PAUL A. LYNCH
WILLIAM "Buzz" THOMPSON III

1132 BISHOP STREET, SUITE 1405
HONOLULU, HAWAII 96813

TELEPHONE (808) 528-0100
FACSIMILE (808) 528-4997
(808) 523-1930
E-MAIL: mail@loio.com

COUNSEL
TIMOTHY J. HOGAN

OF COUNSEL
GREG TURNBULL, MA

## FAX TRANSMITTAL

### July 14, 2004

TO:        Richard Wynne              FAX NO.  (213) 680-8500

FROM:    Timothy J. Hogan, Esq.      PAGES:  4

RE:        In re Fleming Companies. Inc., Bk. No. 03-10945-MFW (Bankr. Del.)

PLEASE NOTE: This communication contains confidential and privileged information.  It is exempt from disclosure under applicable law.  If you received it in error, please notify the sender immediately by telephone or fax.

Letter (dated 7/14/04)  to Richard Wynne, Esq. from Tim Hogan, Esq. re: Rule 408 Communication.

# Exhibit

# 6

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 2 7 2005

at 10 o'clock and 45 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen,<br><br>       Plaintiff,<br><br>  vs.<br><br>HAWAII EXPRESS SERVICE, INC., a California corporation; et al.<br><br>       Defendants. | Civ. No. 03-00385 SOM/LEK<br><br>ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR
SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC,
C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND
RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY
JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        Plaintiff Wayne Berry is suing multiple defendants for

copyright infringement and related matters.  This court has

previously ruled on several motions in this case.  In this latest

round of what seems to this court to be a never ending stream of

motions, Berry moves for summary judgment against all remaining

Defendants.  Defendant Post Confirmation Trust ("PCT")[1];

Defendants C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers,

_____

        [1] PCT represents the interests of Defendant Fleming
Companies, Inc. ("Fleming"), during Fleming's bankruptcy.

version of his FCS software.[3]  Second, Berry alleges that after

June 9, 2003, Fleming, Employees, and C&S used a derivative of

the FCS program.  Third, Berry alleges that Guidance, at

Fleming's direction, made unauthorized copies of his software

that were then retained on Fleming computers.  Fourth, Berry

alleges that Fleming sold illegal copies of FCS to C&S by leaving

the unauthorized copies that Guidance had made on the computers

when C&S took over Fleming's operations.

### 1.    Employees.

The court has already addressed several of Berry's

claims against Employees.  In its January 26, 2005, order, the

court granted summary judgment to Dillon and Noa with respect to

all claims relating to activities outside the period of March 7,

2003, to June 9, 2003.  The court, however, denied Dillon and

Noa's motion for summary judgment with respect to direct

infringement that might have occurred during that time period.

In its April 12, 2005, order, the court denied without prejudice

Ponce, Purdy, Fukumoto, Wailoama, and Rio's motion for summary

judgment on all Counts, and also denied without prejudice Berry's

counter-motion for summary judgment on all Counts.

---

[3] At the June 20, 2005, hearing on the present motions,
Berry said that, in prior orders, the court limited the direct
infringement claim to the period after April 1, 2003.  This
court, however, found no such limitation in its earlier orders in
this case.

6

---

a.  Dillon and Noa Infringed on Berry's
    Copyright Between March 7, 2003, and
    June 9, 2003.

The court grants Berry's motion for summary judgment
with respect to Dillon and Noa's liability for conduct between
March 7, 2003, and June 9, 2003.

---

In its January 26, 2004, order, this court granted
summary judgment to Dillon and Noa with respect to conduct
occurring outside the period between March 7, 2003, and June 9,
2003.  The court, however, denied Dillon and Noa's motion for
summary judgment with respect to infringement allegedly occurring
between March 7, 2003, and June 9, 2003.  Given Dillon's
declaration stating that he had attempted to revert to the
original version of FCS following the jury verdict of March 6,
2003, but had inadvertently failed to remove a scratch name field
and two label changes, the court concluded that Dillon had used
an altered version of FCS.  An expert report by Dr. Philip
Johnson confirmed that the version of FCS in use by Dillon was
not the original licensed version of the software.  Because only
a copyright holder has the right to prepare and use derivative
works, see Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir.
2001), the unauthorized use of the altered version of FCS
constituted a copyright violation.

Berry has established that Dillon and Noa used an
altered version of the FCS software between March 7, 2003, and

June 9, 2003.  See Ex. L to Hogan Decl.; Ex. P to Hogan Decl.
The unauthorized use of a software derivative constitutes
impermissible "copying."  See MAI Sys. Corp. v. Peak Computer,
Inc., 991 F.2d 511, 517-18 (9th Cir 1993).  The use of the
altered version of FCS therefore violated Berry's copyright.

        Dillon and Noa now contend that the changes made to the
software were de minimis and that they therefore cannot be said
to have used an unauthorized derivative.  Dillon and Noa rely on
an expert report by Dr. Martin Walker, stating that there were
only seven differences between the altered version of FCS used by
Employees and Berry's original FCS.  See Ex. C to Hosoda Decl.
¶ 41.  Walker's report also states that the changes made to FCS
either facilitated the exporting of Fleming's data or aided
recovery of lost data.  Id. ¶ 42.  Walker therefore concludes
that the alterations were not part of the normal operation of the
database and that "the two databases are practically identical
from both a numerical perspective and a functional perspective."
Id.

        Dillon and Noa cite Apple Computer, Inc. v. Microsoft
Corp., 35 F.3d 1435 (9th Cir. 1994), and Newton v. Diamond, 388
F.3d 1189 (9th Cir. 2004), for the proposition that de minimis
changes do not rise to the level of infringement.  Those cases,
however, do not apply here.  In Apple Computer, the plaintiff
alleged that Microsoft had copied its software by using a

8

graphics interface on Microsoft software that was similar to the
interface employed by Apple computers.  The Ninth Circuit
concluded that the similarities between the two software programs
were de minimis, and that therefore the defendants had not
violated a copyright.  Id. at 1439.  Similarly, the court in
Newton held that de minimis use of a musical composition was
insufficient to sustain a claim of infringement.  388 F.3d at
1196.

        This case, by contrast, involves the creation and use
of an impermissible derivative.  The situation in this case thus
arises in a context entirely different from the literal copying
at issue in Apple Computer or the use of an unaltered composition
in Newton.  Dillon and Noa cite no law suggesting that a
derivative is allowed if the changes are small.

        Fleming and Employees, citing Melville B Nimmer & David
Nimmer, Nimmer on Copyright § 13.05[D][2] (2005), say that
"[t]rivial changes and inconsequential modifications such as
underlining, highlighting, [and] cropping pages" do not rise to
the level of creating a derivative.  The alterations in this
case, however, extend beyond mere underlining or highlighting.
Underlining and highlighting emphasize particular aspects of a
work.  Here, by contrast, Dillon made alterations to FCS that
changed the content and structure of the program.  These types of

9

alterations, even if they constitute a small percentage of the total code, resulted in a derivative.

Dillon and Noa have admitted that they used an altered version of FCS. The court therefore grants Berry's motion for summary judgment against Dillon and Noa with respect to their liability under Count I, alleging direct infringement, for acts occurring between March 7, 2003, and June 9, 2003.

                        **b.    Ponce, Purdy, Fukumoto, Waiolama, and Rio Infringed on Berry's Copyright <u>Between March 7, 2003, and June 9, 2003.</u>**

In its April 12, 2005, order, this court denied a motion for summary judgment filed by Defendants Ponce, Purdy, Fukumoto, Waiolama, and Rio, noting those persons had admitted to using a computer for various tasks while at Fleming. As these Employees worked for Fleming at some point between March 7, 2003, and June 9, 2003, the court found a genuine issue of material fact as to whether each had used the unauthorized altered version of FCS. The court, however, also denied Berry's counter-motion for summary judgment, noting that Berry had failed to establish that any of the employees had actually used an infringing version of FCS. Berry now renews his motion for summary judgment against the remaining Employees, and the court now grants Berry's motion with respect to their conduct between March 7, 2003, and June 9, 2003.

The evidence now establishes that Ponce, Purdy, Fukumoto, Waiolama, and Rio used the same unauthorized derivative of Berry's FCS software as Dillon and Noa between March 7, 2003, and June 9, 2003. An affidavit by Teresa Noa states that Fleming "went back to the original" version of FCS after the March 6, 2003, jury verdict. Ex. E to Hogan Decl. What Noa believed to be the "original" FCS, however, was actually the modified version of FCS created by Dillon on March 7, 2003. Employees offer no evidence to contradict Noa's statement, and each admits to using a computer to track shipments or enter data relating to freight orders between March 7, 2003, and June 9, 2003. See Ex. J to Hosoda Decl.; Ex. K to Hosoda Decl.; Ex. L to Hosoda Decl.; Ex. M to Hosoda Decl.; Ex. N to Hosoda Decl. Employees, therefore, do not raise any triable issue of fact, and the court grants Berry's motion for summary judgment with respect to Ponce, Purdy, Fukumoto, Waiolama, and Rio's liability for acts between March 7, 2003, and June 9, 2003. The court denies these Employees' counter-motion for summary judgment with respect to infringement during this period.

        c.    Any Infringement by Employees Between March 7, 2003, and June 9, 2003, was Not Willful.

In its January 26, 2003, order, this court held that "any infringement [by Dillon and Noa] during the period of March 7, 2003, to June 9, 2003, was not willful." This determination

11

days after Berry receives any new evidence justifying such a motion or 10 working days from the date of this order.

       3.   <u>Fleming.</u>

Berry alleges that Fleming directly infringed on his software in three ways. First, Berry alleges that Fleming is liable for using altered FCS software between March 7, 2003, and June 9, 2003. Second, Berry alleges that Fleming distributed 16 copies of FCS to C&S, in violation of Berry's exclusive right of distribution. Third, Berry alleges that Fleming directly infringed on FCS by creating the Excel spreadsheets that Berry claims are an illegal derivative of FCS.

>       a.   Fleming Infringed By Using An Altered Version of Berry's Software from March 7, 2003, to June 9, 2003.

As discussed earlier, Employees used an unauthorized altered version of FCS from March 7, 2003, to June 9, 2003, while working for Fleming. Fleming is liable for the infringement during this time. Berry's motion for summary judgment is granted with respect to Fleming's liability for direct infringement through the use of an altered version of FCS from March 7, 2003, to June 9, 2003. Fleming's counter-motion for summary judgment is denied with respect to these acts.

b.    Fleming's "Distribution" of 16 Copies of
      FCS to C&S Was Protected by the Fair Use
      Doctrine.

As noted above, Berry alleges that Fleming impermissibly retained 16 copies of FCS on its computers after claiming it had purged the software from its system. Berry further alleges that these copies were retained on the computers when the computers were sold to C&S, constituting an improper sale of his software to C&S. The court grants Fleming's motion for summary judgment with respect to this claim.

Fleming had a right to retain the 16 FCS files for litigation purposes under the fair use doctrine. The transfer of the computers containing these files, as well as all other user files for Dillon, Noa, and the other Employees, was also permissible under the fair use doctrine, as Employees had a right to retain the files for their own litigation purposes.

There is no evidence that C&S paid any premium for the files or that Fleming otherwise stood to benefit from the alleged scheme to defraud the Bankruptcy Court. In fact, the record establishes that, even though Employees had a right to retain the files for litigation, the retention was inadvertent. See Ex. G to Hosoda Decl ¶ 30; Ex. K to Hogan Decl. at 156-57. Given Berry's failure to show that there is any issue of material fact with respect to Fleming's transfer of the files, the court grants Fleming's motion for summary judgment with respect to this claim.

26

c.    The Creation of the Excel Spreadsheets.

As Berry raises no material issues of fact regarding
his claim that the Excel spreadsheets are a derivative of FCS,
Berry's motion for summary judgment with respect to direct
infringement by Fleming after June 9, 2003, is denied for the
same reasons that the court rejects Berry's similar claim against
Employees.  Fleming's motion for summary judgment on this claim
is granted.

4.    C&S.

Berry's only claim against C&S for direct infringement
arises out of Berry's allegation that the Excel spreadsheets used
by C&S are actually an FCS derivative.  As explained earlier,
however, no material issues of fact exist with respect to whether
the Excel spreadsheets are an FCS derivative.  Berry's motion for
summary judgment on his claim of direct infringement against C&S
is denied, and C&S's counter-motion for summary judgment on this
claim is granted.

Berry also claims that C&S destroyed evidence by
"scrubb[ing] the relevant computer immediately after this court
directed that a special master investigate the software on the
server at C&S."  Berry relies on correspondence from C&S's
attorney notifying Berry that C&S had been using a trial version
of Microsoft's Windows 2003 Server software and would soon be
installing the full version of the same software.  Berry does

27

other than Fleming on that Count are granted.  The issue of
Fleming's alleged vicarious infringement may be raised in later
motions, as noted later in this order.

C.    Count III: Conspiracy to Infringe.

A cause of action for civil conspiracy to infringe a
copyright is not created by the Copyright Act and instead falls
under state tort law.  See Schuchart v. Solo Serve Corp., 540 F.
Supp. 928, 937 (W.D. Tex. 1982).  A conspiracy is "a combination
of two or more persons or entities by concerted action to
accomplish a criminal or unlawful purpose, or to accomplish some
purpose . . . by criminal or unlawful means."  Robert's Haw. Sch.
Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 91 Haw. 224, 252
n.28; 982 P.2d 853, 881 (1999).  To be actionable, the conspiracy
must result in overt acts, done in furtherance of the conspiracy,
that are both the cause in fact and the proximate cause of the
plaintiff's injuries.  Sanchez v. City of Santa Ana, 936 F.2d
1027, 1039 (9th Cir. 1990).

As any infringement of Berry's software was
inadvertent, there could not have been an agreement to infringe.
Berry's motion for summary judgment is denied with respect to
Count III, and Defendants' counter-motions for summary judgment
are granted with respect to this Count.

infringement and the issue of any direct benefit to Fleming for alleged vicarious infringement. Motions for summary judgment on damages or on Fleming's alleged vicarious infringement may be filed on or before the dispositive motions cutoff. Berry's motion for summary judgment is denied in all other respects.

Employees' motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and for vicarious infringement. Employees' motion for summary judgment is granted in all other respects.

Fleming's motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and with respect to vicarious infringement. Fleming's motion for summary judgment is granted in all other respects.

All other Defendants' motions for summary judgment are granted. The tentatively reserved hearing date of August 9, 2005, is vacated with respect to Guidance and Gurzi.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 27, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, Inc., et al., Civ. No. 03-00385 SOM/LEK, ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

40

# Exhibit

# 7

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii Citizen,<br><br>Plaintiff,<br><br><br>V.<br><br><br>HAWAIIAN EXPRESS SERVICE, INC.;<br>FLEMING COMPANIES, INC., et al.,<br><br>Defendants. | **SECOND<br>AMENDED JUDGMENT<br>IN A CIVIL CASE**<br><br>CIVIL 03-00385SOM-LEK<br><br>FILED IN THE<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF HAWAII<br><br>March 16, 2006<br><br>At 4 o'clock and 00 min p.m.<br>SUE BEITIA, CLERK |

A Stipulation Regarding Good Faith Settlement  between Plaintiff Wayne Berry and Defendants Hawaiian Express Service, Inc., H.E.S. Transportation Services, Inc., California Pacific Consolidators, Inc., Jeffery P. Graham, Peter Schaul , and Patrick Hirayama, (collectively "HEX Defendants")  having been approved and ordered and filed on July 7, 2005, and a  "Stipulation for Dismissal of the HEX Defendants with Prejudice and Order" having been approved and ordered and filed on July 25, 2005, and this Action having come for hearing before the Court whereby the issues have been heard and decisions have been rendered; and this Action having come for a trial by jury before the Court  whereby the issues have been tried and decision has been entered; the Clerk of Court enters an AMENDED JUDGMENT as follows:

IT IS ORDERED AND ADJUDGED that pursuant to the "ORDER GRANTING DEFENDANT FOODLAND'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT HAWAII TRANSFER COMPANY'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART, DENYING IN PART DEFENDANTS DILLON, NOA, AND CHRISTENSEN'S MOTION FOR SUMMARY JUDGMENT" filed on January 26, 2005:

March 16, 2006
CIVIL 03-00385SOM-LEK
Wayne Berry, etc vs. Hawaiian Express Service, Inc., *et al.*
SECOND AMENDED JUDGMENT IN A CIVIL CASE
page 2 of 4

- SUMMARY JUDGMENT as to Counts I, II, III, and VI of the Second Amended Verified Complaint is GRANTED in favor of defendant Foodland Super Market, Limited; in favor of defendant Hawaii Transfer Company, Limited, and against plaintiff Wayne Berry. As to Count 5 of the Second Amended Verified Complaint, the Court dismisses all claims under the Sherman Act against defendant Foodland Super Market, Limited and against defendant Hawaii Transfer Company, Limited , pursuant to FRCP Rule 12(b)(6); and,

- SUMMARY JUDGMENT with respect to Defendants Mark Dillon, Brian Christiansen, and Teresa Noa [collectively, "Employee Defendants" ] is DENIED in Part and GRANTED in Part, as pursuant to the aforementioned January 26, 2005 Order, wherein *"...The Court denies summary judgment to [defendant Mark] Dillon and [defendant Teresa] Noa with respect to Count I for acts occurring between the dates of March 7, 2003, and June 9, 2003, but grants summary judgment to [defendant Brian] Christiansen with respect to Count I for that time period. The court grants summary judgment to all Employee Defendants with respect to Count I for acts occurring outside the period from March 7, 2003, to June 9, 2003. The court grants summary judgment to Employee defendants on Counts II, III, and IV, and dismisses Count V with respect to Employee Defendants... ".*

IT IS FURTHER ORDERED that SUMMARY JUDGMENT IS GRANTED in favor of defendant AlixPartners and against plaintiff Wayne Berry, and is granted as pursuant to the "ORDER DENYING BERRY'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIXPARTNERS; ORDER GRANTING ALIXPARTNERS' COUNTERMOTION FOR SUMMARY JUDGMENT" filed on June 17, 2005.

March 16, 2006
CIVIL 03-00385SOM-LEK
Wayne Berry, etc vs. Hawaiian Express Service, Inc., *et al.*
SECOND AMENDED JUDGMENT IN A CIVIL CASE
page 3 of 4

IT IS FURTHER ORDERED that:  (1) Plaintiff Wayne Berry's Motion for
Summary Judgment is Granted in Part and Denied in Part ; (2) Defendant Post
Confirmation Trust-- *as the representative of defendant Fleming Companies, Inc.
during Fleming Companies, Inc.'s bankruptcy*--Counter-Motion for Summary
Judgment is Granted in Part and Denied in Part ; (3) Defendants C&S Logistics of
Hawaii, LLC, C&S Wholesale Grocers, Inc.; C&S Acquisitions, LLC, ES3, LLC,
and Richard Cohen's Counter-Motion for Summary Judgment are GRANTED; (4)
Defendants Mark Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy, Justin
Fukumoto, Alfredda Waiolama, and Jacqueline Rio's Counter-Motion for
Summary Judgment is GRANTED in Part and DENIED in Part; and   (5)
Defendants Guidance Software, Inc., and Michael Gurzi's Counter-Motion for
Summary Judgment is GRANTED.[1]

Said Motions are adjudicated  as pursuant to the "ORDER GRANTING IN PART,
DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT;
ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE
GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD
COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR
SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART
REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT" filed
on June 27, 2005.

~3~

---

[1] The "Amended Judgment" incorrectly reflected defendants Guidance Software, Inc. and
Michael Gurzi's Counter-Motion for Summary Judgment as having been Granted in Part and
Denied in Part.

March 16, 2006
CIVIL 03-00385SOM-LEK
Wayne Berry, etc vs. Hawaiian Express Service, Inc., *et al.*
SECOND AMENDED JUDGMENT IN A CIVIL CASE
page 4 of 4

AS TO THE ISSUES THAT HAVE BEEN TRIED BEFORE THE COURT AND
THE DECISION THAT HAS BEEN RENDERED BY THE JURY:

IT IS ORDERED AND ADJUDGED THAT JUDGMENT is entered in favor of
the Plaintiff in the amount of $57,534.00, and against the defendant(s) Fleming in
the amount of $57,530.00; Mark Dillon in the amount of $2.00; and Teresa Noa in
the amount of $2.00, and furthermore, is entered as pursuant to the "SPECIAL
VERDICT FORM" filed on March 7, 2006.

cc:    All Counsel and/or Parties of Record

_____March 16, 2006_____                  _____SUE BEITIA_____
Date                                          Clerk

                                              _____
                                              (By) Deputy Clerk