LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) ) | **Civ. No. CV03 00385 SOM-LEK** **(Copyright)** |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO MOTION FOR AWARD OF** |
| HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al. | ) ) ) ) | **ATTORNEYS' FEES AND FULL COSTS FILED BY GUIDANCE SOFTWARE, INC. AND MICHAEL GURZI ON MARCH** |
| Defendants. | ) ) ) | **30, 2006** |
| | ) ) | **Non-Hearing** |
| | ) ) ) | **Judge:     Hon. Magistrate Judge Leslie Kobayashi** |
| _____ | ) | |

## Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iv**

**I.    BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

    **A.    The Guidance Motion Was Not Timely and Must Be Denied.** . . . **1**

    **B.    Mr. Berry is Severely Prejudiced By the Tardy Filing.** . . . . . . . **2**

    **C.    Guidance Can't Claim Excusable Neglect.** . . . . . . . . . . . . . . . . . **3**

    **D.    Guidance Was Not the Prevailing Party on Count I and Cannot Claim Any Fees for Work Done on Counts III to VI.** . . . . . . . . . . **4**

    **E.    The Fees Sought By Guidance Are Patently Unreasonable** . . . . . **6**

    **F.    Guidance Was Not Engaged in Conduct Related to the First Infringement Action.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

**II.   ARGUMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    **A.    Guidance's Motion for Attorneys Fees and Costs Was Untimely.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    **B.    Guidance has Waived Any Claim of Excusable Neglect.** . . . . . . **12**

    **C.    The Policy Embodied in Rule 54 (d)(2)(B) Directs the Court to Deny the Motion that Can't be Saved by a Last Minute Claim of Excusable Neglect.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

    **D.    The Fogerty Factors Weigh Against Any Award For this Defendant.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

    **E.    The Additional Claims that the Guidance Claims to Have**

**Prevailed Upon Do Not Provide for Attorneys Fees or Full Costs to the Prevailing Defendant.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

**F.** **The Four Factors in Fogerty Show the Motion Must be Denied.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**III.** **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

## Table of Authorities

<u>**CASES**</u>

*Chang v. Chen*, 95 F.3d 27 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chun v. Park*, 51 Haw. 462 (Haw. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Committee for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996) . . . . . 12

*County of Imperial v. United States*, 348 F.2d 904 (9th Cir. 1965) . . . . . . . . . . 11

*F.T.C. v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 73 S. Ct. 245 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Farkas v. Rumore*, 101 F.3d 20 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir. 1994) . . . . . . . . . . . . . . . . . 12

*Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (CA3 1986) . . . . . . . . . . . . . . 21

*Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 504 (D.N.Y. 2002) . . . . . . . . . . 13

*Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224(5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Slader v. Pearle Vision, Inc.*, 199 F.R.D. 125 (D.N.Y. 2001) . . . . . . . . . . . . . . 14

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466 (D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466 (D. Cal.

1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220 (2d Cir. 2004) . . . . . . . . . . . . . 14

*The Traditional Cat Ass'n. Inc. v. Gilbreath*, 340 F. 3d 829 (9th Cir. 2003) . . . 20

*United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Weyant v. Okst*, 198 F.3d 311 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATUTES

18 U.S.C. §1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

18 U.S.C. § 152. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hawaii Rev. Stat. §482B-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

The Bankruptcy Code, 11 U.S.C. § 362 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

The Copyright Act Title 17, §106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The RICO Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 19, 20

The Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## RULES

District Court LR 54.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b) (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Fed. R. Civ. P. 54(d)(2)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Federal Rules of Civil Procedure 54(d)(2)(A) and (B)** . . . . . . . . . . . . . . . . **12, 13**

**Rule 54 (d)(2)(B)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

vi

**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN
OPPOSITION  TO MOTION FOR AWARD OF ATTORNEYS'
FEES AND FULL COSTS FILED BY GUIDANCE
<u>SOFTWARE, INC. AND MICHAEL GURZI FILED ON MARCH 30, 2006</u>**

Comes now, Plaintiff Wayne Berry, by and through his undersigned counsel, and hereby respectfully submits his memorandum in opposition to Motion for Award of Attorneys' Fees and Full Costs Filed By Guidance Software, Inc. and Michael Gurzi Filed on March 30, 2006 (the "Motion").   This opposition is supported by the Declaration of Timothy J. Hogan; Exhibits 1 to 9, filed concurrently.

**I.    <u>BACKGROUND.</u>**

**A.    <u>The Guidance Motion Was Not Timely and Must Be Denied.</u>**

As an initial matter, the Guidance Software, Inc. and Michael Gurzi ("Guidance") Motion was not timely having not filed it as required under both the Fed. R. Civ. P. 54(d)(2) and the District Court LR 54.3(a) within fourteen (14) days of the entry of the "final judgment."

The Clerk entered final judgment herein on March 9, 2006.  Declaration of Timothy J. Hogan (the "Hogan Dec.") Exhibit "1" .  Guidance Software, Inc. and Michael Gurzi jointly filed their motion for attorneys fees on March 30, 2006.  That is 21 days after entry of final judgment and the Guidance motion is untimely.

1

**B.    Mr. Berry is Severely Prejudiced By the Tardy Filing.**

The prejudice in regard to this Motion is evidenced by the fact that by the time Guidance had bothered to file its Motion, Mr. Berry's counsel had already participated in meet and confers and negotiated settlements with two defendants. Had Mr. Berry been aware that Guidance was going to file a late motion, Mr. Berry would have taken a different approach regarding the other Defendants Hogan Dec. ¶¶ 1 to 3. It is clear that the value of settling with Foodland and Alix Partners was diminished by Guidance's inexcusable sandbagging by preventing Mr. Berry from requiring a global settlement or other terms to deal with the number of settling parties.

After Guidance filed its tardy Motion, Mr. Berry had to consider whether to finalize the settlements with parties who timely filed. Keeping to the settlement offers made prior to Guidance's tardy Motion, does not mean that Mr. Berry has not been severely prejudiced. His ability to approach the negotiation of settlements and issue like seeking a global settlement with the non-PCT defendants was taken away by Guidance violation of the rules. Mr. Berry asks that the Court not even consider this Motion and to simply deny it on the grounds that it violates the rules.

Moreover, Plaintiff believes that the instant motion was filed untimely to provide the PCT additional leverage against the Plaintiff after Plaintiff's counsel in

2

his good faith meet-and-confer with the Employee, PCT and C&S counsel provided them with the Plaintiff's reasons why their motions should be denied.   That reason alone should be grounds to deny the Motion.   Such a strategic violation of the rules should, at a minimum, be ground for denial of the motion.

### C.    <u>Guidance Can't Claim Excusable Neglect</u>.

When asked by Mr. Berry's counsel to address the untimeliness of the motion, Guidance's counsel did not claim excusable neglect, but took the position that its interpretation of the rules permitted the filing.   Hogan Dec. Exhibit "2."   If an amended judgment extends the period to file attorneys fee motions, taken to its logical extreme, an amended judgment that seeks only to fix a typo in a name on the case caption that is effected months after the matter has been concluded would provide the neglectful with a new shot at fees mistakenly omitted.  This is would be an absurd result and the Court should not permit this motion to be considered as it is clearly untimely and prejudicial.  Moreover, Guidance, in its Motion,  makes no claim that its failure to timely file should be remedied by the Court applying an excusable neglect exception.  That failure constitutes a waiver.

### D.   Guidance Was Not the Prevailing Party on Count I and Cannot Claim Any Fees for Work Done on Counts III to VI.

The Second Amended Verified Complaint, Hogan Dec. Exhibit "7" brought five claims in regard to the litigation against Guidance and Gurzi as follows:

COUNT I was a claim for direct infringement.  In regard to this claim, Mr. Berry was the prevailing party as set forth in the Second Amended Judgment that was entered on March 16, 2006 and Order regarding Summary Judgment dated June 27, 2005 against eight defendants.   That was the claim brought under the Copyright Act Title 17, §106 where Mr. Berry prevailed on the issue of ownership, copyrightability and direct infringement as to Fleming Companies, Inc.. Guidance defended on the grounds that, despite violating an order entered in the first case, and despite that fact that it admitted to filing a false affidavit in the Bankruptcy court where Guidance/Gurzi falsely claimed all Berry works were deleted from the Fleming system, the Court's granting of the fair use affirmative defense that was not even it Guidance's answer was a resounding victory justifying an award of fees.

COUNT II of the Second Amended Verified Complaint was a count for contributory and/or vicarious infringement.  In regard to that claim, Mr. Berry prevailed against the PCT and the jury found, and Fleming conceded, that it was a

4

vicarious infringer.  Because Guidance was granted the protection of the fair use

defense, the Court entered summary judgment in favor of Guidance on this count.

COUNT  III, is a claim for Conspiracy to Infringe.  The District Court, in

granting summary judgment on June 27, 2005, held Count III is a state law  tort

claim.  Hogan Dec. Exhibit "6" at page 30.  Under Hawaii law, no such claim can

support a claim for attorneys' fees as a matter of well settled law.

COUNT IV is a claim brought under the Hawaii state misappropriation of

trade secret statute.  Hawaii law provides for attorneys' fees to the prevailing party

but only where there has been a showing of "bad faith."   There is nothing in the

Motion filed by the PCT to even suggest that the trade secret claim was not well

founded.  Mr. Berry sought to protect what has been admitted to be  hundreds of

works transferred in computers sold to C&S in regard to the Guidance debacle that

set off much of the litigation in this case.

As to the last two COUNTS V and VI,  regarding the Sherman Act claims

and the RICO Act claims respectively, neither of these claims, as a matter of well

settled law, provide for attorneys' fees for the prevailing defendant.  In regard to

certain authority that provides for an exception where a non-copyright claim is

bound up in the Copyright claim,  the  Sherman Act claims was largely based on the

claim of monopoly and price fixing, which is are separate claims from any

5

copyright claim.   Moreover, the Court has held in granting Fed. R. Civ. P. 12(b) (6) relief that Mr. Berry's copyright claims do not provide his standing under the federal antitrust laws.  Therefore, if the Court claims that this is grounds to grant fees, it would appear that the Court would vacate its earlier finding.  In any even, that finding should work as an adjudication that no right to fees for those claims may be bootstrapped to the copyright claims.

The RICO claimed simply the existence of an enterprise and a 18 U.S.C. §1962(d) conspiracy that was the same conspiracy set forth in COUNT III.  Because the District Court ruled that this claim was a state law tort claim and not a copyright claim, the RICO 1962(d) claim therefore, can provide no basis for attorneys' fees under the Copyright Act.

Also noteworthy, Guidance makes no claim that it has adjusted its fee request to take into account these matters for which no fees can be allowed.

**E.     The Fees Sought By Guidance Are Patently Unreasonable.**

In addition to the other reasons for the Court to deny the Motion, the Guidance fees are unreasonable.  Despite not being a participant at trial the Guidance attorneys continue to bill for reviewing motions in limine and voir dire questions that have nothing to do with Guidance and shows that these time entries are not reasonable and not necessarily incurred in defense of this case.  The fact that

6

Guidance's agreement with Fleming causes it to remain embroiled in Fleming related litigation does not convert Guidance's attorneys fees incurred subsequent to the summary judgment motion into fees necessarily incurred in defending Mr. Berry's claims that were resolved in June 2005. The simple fact is that even if Guidance was not a defendant, it would have to incur costs associated with its ill-advised decision to perform third-party software copying work for an adjudicated willful infringer.

### F.    Guidance Was Not Engaged in Conduct Related to the First Infringement Action.

Guidance, seeking to enhance its stature by making false factual representations, claims on page 2 its Opposition to have been working on the first infringement action  *Wayne Berry v. Fleming Companies, Inc.*, Civ. No. 01-00446 SPK-LEK when it was victimized by Mr. Berry. That is just plain false.

The first case was stayed by the Fleming Bankruptcy. If Guidance got sued for its work on that case it would have gotten what it deserved for violation of the Bankruptcy Code, 11 U.S.C. § 362 (a), which violation amounts to contempt of court.

In addition, the Discovery Master in the first case had specifically prohibited the kind of system scrubbing that Guidance admits it engaged in after the filing of

the Bankruptcy.   Hogan Dec. Exhibit "8."   Guidance and Gurzi now appear to concede that they knowingly committed criminal contempt by scrubbing the Fleming computers in knowing violation of this Court's order.   To now ask for money from Mr. Berry for this conduct would be absurd.

Mr. Berry asks that the Magistrate Judge who adopted the Master's report, advise Mr. Berry's counsel how the Court wishes to proceed in *Wayne Berry v. Fleming Companies, Inc.*, Civ. No. 01-00446 SPK-LEK, in light of this apparent admission of criminal contempt in the first infringement case and the process the Court wishes to follow for the motion to be filed in that case seeking criminal contempt sanctions.  For the Court's information, Mr. Berry has obtained relief from the automatic stay so the Court will have jurisdiction to punish Guidance and Fleming related entities in light of this admission of criminal contempt.   This admission leaves aside the criminal sanctions that can be brought for anyone who destroys the financial records of a debtor in Bankruptcy. *See* 18 U.S.C. § 152. Contrary to any claim that Guidance preserved evidence, the missing Berry Freight System that was memorialized by Mr. Gurzi's hand written note, Hogan Dec. Exhibit "9" was never found on the image of the server and was not preserved and Mr. Berry request a date for a full evidentiary hearing on the Guidance and Fleming (Guidance's principal) now admitted act of criminal contempt.

8

If Guidance, like it has in the past, admits it was not being truthful in its

Memorandum about what case it was hired for, it will likely concede it was hired by

a company just over two months removed from being adjudicated a willful

copyright infringer, to scrub computers involved in a formal SEC investigation and

in violation of a  court order with an agreement to then  produce what it now admits

was a false expert report and affidavit.   That report and affidavit was intended to be

filed in support of a suit commenced  by Fleming, not Mr. Berry, in Delaware. *See*

Hogan Dec. Exhibit "3" that is a true and correct excerpt from the Fleming

complaint filed in Delaware and Hogan Dec. Exhibit "4" that is an excerpt from the

report that was filed in the Delaware Adversary Proceeding evidencing the case title

as "Fleming v. Berry" not "Berry v. Fleming."

## II.    ARGUMENT.

### A.    Guidance's Motion for Attorneys Fees and Costs Was Untimely.

Final Judgment was entered 21 days before the instant motion was filed. It is

well settled that an amended judgment does not alter the dates that are linked to the

judgment unless the amendment modifies the parties substantive rights.  The Court

entered summary judgment for Guidance and Gurzi in June 2005.  The amended

judgment did nothing to add or detract from the effect of that order other than to

make it a "final judgment."  Had Mr. Berry not filed an appeal within 30 days after

9

the entry of final judgment, and then later the Court simply entered an amended

judgment to correct a clerical error, would Guidance concede that a subsequent

appeal by Mr. Berry was timely?  More important, the Court of Appeals would say

it was not.   The same interpretation of the rules  must apply to Guidance that

missed the date for filing its attorneys fee motions.   The cases that deal with final

judgments in the context of appellate jurisdiction are instructive and should be

controlling.

> Where a judgment is reentered, and the subsequent
> judgment does not alter the substantive rights affected by
> the first judgment, the time for appeal runs from the first
> judgment. This doctrine has been applied to judgments
> reentered to correct technical errors. Similarly, where an
> order disposes of a party's substantive claims, but does not
> dispose of claims relating to attorney's fees, the time for
> appeal of the substantive claims starts to run from the date
> of the first order, unless the district court explicitly grants
> a delay.

*Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir. 1996) (citations omitted).

> Only when the lower court changes matters of substance,
> or resolves a genuine ambiguity, in a judgment previously
> rendered should the period within which an appeal must
> be taken or a petition for certiorari filed begin to run
> anew.

*Farkas*, 101 F.3d at 23.

> The mere fact that a court reenters a judgment or revises a
> judgment in an immaterial way does not affect the time

10

> within which litigants must pursue an appeal. Rather, the test is 'whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.' In this case, the district court's August 28 judgment did not in any manner alter the legal rights or obligations of any party. Consequently, the August 10 judgment is final and appealable, and this court has jurisdiction to reach the merits of this case.

*Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (citations omitted).

> The mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity in a judgment previously rendered, should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*County of Imperial v. United States*, 348 F.2d 904, 905 (9th Cir. 1965); *citing F.T.C. v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211, 73 S. Ct. 245, 249 (1952).

**B.    Guidance has Waived Any Claim of Excusable Neglect.**

The Court's power to modify the time for filing such motions is limited to providing relief for excusable neglect.   The Motion makes no claim that it is untimely and clearly has waived any such relief continuing to rely on the erroneous interpretation of the rules.  Hogan Dec. Exhibit "2."   That has never been grounds for relief under the excusable neglect exception.

> Federal Rules of Civil Procedure 54(d)(2)(A) and (B), as amended effective December 1, 1993, require a claim for attorney's fees to be made by motion 'filed and served no later than 14 days after entry of judgment'; a court can by order provide a different deadline.

*Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996).

Where, like this case, the reason that a motion is not timely filed is because of the inability of an attorney to comprehend the rules, there is no grounds to grant the extension on the grounds of excisable neglect.

> It is well settled that inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.

*Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931 (9th Cir. 1994) (citation omitted).

> In the October 15 telephone conference, counsel for Radio City candidly admitted that the reason he had failed to file

> within the 14-day limit was that he had overlooked or
> forgotten about Rule 54(d)(2)(B). *See* Fed. R. Civ. P.
> 54(d)(2)(B). As the *Canfield* case indicates, such
> inadvertence does not, in the usual case, constitute
> excusable neglect. *See Canfield*, 127 F.3d at 251. Given
> the care with which Radio City's counsel had followed
> other developments in this case, *see* letter dated October 3,
> 2002 from Michael Aschen, Esq. (outlining his efforts to
> ensure the Clerk entered judgment in a timely fashion), his
> inadvertence with respect to the time limit is rendered even
> less excusable.

*Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 504, 505 (D.N.Y. 2002) (citations in
the original).

In this case, counsel for Guidance mistakenly relied on the admitted belief that
the motion need not be filed within 14 days of the entry of final judgment choosing
instead the erroneous interpretation that the amended final judgments started the
clock over. Soon after the entry of summary judgment, Guidance conducted legal
research regarding attorneys fees. It continued to actively review trial filings even
though it was not going to be participating at trial. The Court may not grant relief
under such circumstances.

## C.    The Policy Embodied in Rule 54 (d)(2)(B) Directs the Court to Deny the Motion that Can't be Saved by a Last Minute Claim of Excusable Neglect.

In this case, Mr. Berry undertook to resolve both fee issues and potential
appeal issue with the parties that had timely filed their motions. Only after

settlements had been reached with Foodland and Alix Partners did these defendants

bother to their motion.  Guidance's fee records show that it continued to be active in

the case, even billing for reviewing motions in limine regarding a trial that it had no

part in.  It could have filed its motion months earlier had it chosen to. There is no

reason for this Court to re-write the rules to accommodate these defendants.

> Congress's reasons for its 1993 addition to Rule
> 54(d)(2)(B) (the fourteen-day deadline) were three-fold:
> (1) to provide notice of the fee motion to the non-movant
> before the time to appeal expires; (2) to encourage a
> prompt ruling on fees to facilitate a consolidated appeal on
> both the merits and the attorneys' fee issue; and (3) to
> resolve fee disputes efficiently, "while the services
> performed are freshly in mind." Fed. R. Civ. P. 54 advisory
> committee's notes (1993); *see Weyant v. Okst*, 198 F.3d
> 311, 315 (2d Cir. 1999) (noting that the deadline was
> intended, in part, to minimize 'piecemeal appeals of merits
> and fee questions'). <u>Allowing district judges to extend the
> deadline for filing a motion for attorneys' fees without any
> showing of 'excusable neglect' would impede these
> efficiency and fairness goals</u>.

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (citations in
original)(emphasis added).

> Given the normal American presumption against the shifting of
> attorneys' fees, as well as the strong interest in the finality of judgments,
> the mandatory 14-day limit for seeking attorneys' fees should not be
> lightly disturbed, and defendant has offered no good reason why it
> should not be enforced here.

*Slader v. Pearle Vision, Inc.*, 199 F.R.D. 125, 126 (D.N.Y. 2001).

In this case, Guidance missed the date and waived any claim that the only

basis for excusing it applies especially where there is a showing of prejudice to the

opposing party.

> With regard to determining whether a party's neglect of a
> deadline is excusable, we are in substantial agreement with
> the factors identified by the Court of Appeals. Because
> Congress has provided no other guideposts for determining
> what sorts of neglect will be considered "excusable," we
> conclude that the determination is at bottom an equitable
> one, taking account of all relevant circumstances
> surrounding the party's omission. These include, as the
> Court of Appeals found, **the danger of prejudice** to the
> debtor, the length of the delay and its potential impact on
> judicial proceedings, the reason for the delay, including
> whether it was within the reasonable control of the movant,
> and whether the movant acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395

(1993) (citation omitted)(emphasis added).

**D.    The Fogerty Factors Weigh Against Any Award For this
Defendant**.

If the Court is going to consider the Motion, it is important for the Court to

carefully address the factors that the Supreme Court has said that are relevant to such

motions.

First, as to the facts surrounding the reason Guidance was made a party to this

case, during the previous copyright infringement case, the Honorable Samuel King,

15

the United States District Judge for the District of Hawaii, entered a protective order that was meant to protect the parties commercial secrets.   The Discovery Master also ordered that no computer files could be deleted from Fleming's computers. Guidance claiming to be a "forensic" professional, made no attempt to contact Plaintiff or his counsel to inquire when it set off on its mission at Fleming setting in motion much of this case.   Second, the bankruptcy stay was in effect making any continued conduct of the first case a violation of an injunction.  Third, contrary to what Guidance states in this Motion, the work it performed in July 2003, that it claims in its motion was related to the First Infringement case, was to assist Fleming in its frivolous and sanctionable Adversary Proceeding, *Fleming Companies, Inc. v. Wayne Berry*, Adv. Proc. 03-54809-MFW, filed in Delaware.  Hogan Dec. Exhibits "3" and "4." That is the only proceeding that the Gurzi-Guidance Report has ever been filed as an expert report and it shows the matter was *Fleming v. Berry* not *Berry v. Fleming* contrary to the Motion. This completely negates any of the basis for awarding Guidance fees that are set forth in the Motion that Guidance was somehow involved in pending litigation in the District of Hawaii.  Simply stated, Guidance is fabricating the facts.  This is not unlike Guidance's earlier conduct where Mr. Gurzi admitted that his affidavit, filed in Delaware attesting that no Berry works remained on the Fleming computers, was false.  Despite all of this, Guidance was able to

16

escape liability in this case because the Court gave Mr. Berry the benefit of no

inferences regarding this conduct in passing on summary judgment.   If there is a

copyright related policy advanced by awarding Guidance anything, Guidance has

failed to articulate it and simply can't, having just dodged a bullet.

The Court's task is to determine whether Guidance's conduct and the granting

of its fee motion in light of that conduct will further the principles that Congress set

forth in enacting the Copyright Law.  Clearly stated, Guidance's conduct was

sloppy, unprofessional and disastrous for Mr. Berry and many other persons.

Guidance cannot now claim victory on this record.  There is no legitimate policy

whatsoever that is advanced by granting Guidance anything other than to deny its

Motion.

Mr. Berry is an individual and Guidance is a corporation.  To grant

Guidance's attorneys' fees to go after a small independent developer would also

shock the conscience and be contrary to the factors set forth by the United States

Supreme Court in *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) .

E.    **The Additional Claims that the Guidance Claims to Have Prevailed Upon Do Not Provide for Attorneys Fees or Full Costs to the Prevailing Defendant.**

1.    Count III- Conspiracy to Infringe.

The District Court has already determined this to be a claim sounding in tort. *See* June 27, 2005 Order at page 30. Hogan Dec. Exhibit "6." Under well settled Hawaii law, no attorneys' fees or full costs are allowable. *See Chun v. Park*, 51 Haw. 462, 469 (Haw. 1969) (attorneys fees not available for tort claims).

2.    Count IV-Violation of Hawaii Trade Secrets Law.

The fact of the transfers of Mr. Berry's works was not subject to any dispute. Guidance failed to make any claim that the trade secret claim brought to protect the hundreds of other works transferred to C&S was brought in "bad faith." That was a requirement of the statute that could have arguably provided for fees to the Guidance as follows:

> The court may award reasonable attorney's fees to the prevailing party if:
> (1) <u>A claim of misappropriation is made in bad faith</u>;
> (2) A motion to terminate an injunction is made or resisted in bad faith; or
> (3) Wilful and malicious misappropriation exists.

Hawaii Rev. Stat. §482B-5 (emphasis added).

There is no claim or evidence presented to suggest that the trade secret

18

misappropriation claims he brought were in bad faith where Guidance has admitted to transferring the Plaintiff's works to computers sold to a third party.

>    3.    Count V-Violation of the Sherman Act.

It is well settled that no fees or costs may be awarded to the prevailing defendant based on these claims.

> While it is clear that an award of attorney's fees will lie in favor of a defendant who successfully prosecutes a counterclaim sounding in antitrust, it is equally clear that <u>the prevailing defendant in a private antitrust suit ordinarily is not entitled to attorney's fees for successfully resisting the plaintiff's claims.</u>

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466, 1468-1469 (D. Cal. 1983) (citations omitted) (emphasis added).

In addition, it is also been held that the plaintiff need not have prevailed to be entitled to fees brought under the federal antitrust laws.

> <u>First, there is no requirement in section 4 of the Clayton Act that an antitrust plaintiff be a 'prevailing party' to recover attorney's fees.</u> The term 'prevailing party' appears nowhere in section 4 of the Clayton Act. All that is required is an injury. *See supra.* As stated supra, an injury was found, therefore the award of attorney's fees was automatic.

*United States Football League v. National Football League*, 887 F.2d 408, 412 (2d Cir. 1989) (emphasis added).

The copyright claims were not implicated in any of the claims for which the

19

Guidance might arguably be able to claim to be a prevailing party.  There is no way to torture a price fixing and monopoly conspiracy claim to a claim under the Copyright Act.   As such they can form no basis for an award of fees and full costs. *See The Traditional Cat Ass'n. Inc. v. Gilbreath*, 340 F. 3d 829 (9th Cir. 2003). Moreover, by finding that Mr. Berry's rights under the Copyright Act did not give him any standing to bring an action under the Sherman Act, the Court has already determined that these antitrust based claims are unrelated to the Copyright claims and to say otherwise should be grounds to vacate the earlier finding on standing.

        4.      Count VI-Violations of RICO.

It is well settled in this Circuit that the RICO statute provides no fees and costs to prevailing defendants as follows:

> The RICO statute provides, in pertinent part, that "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). <u>As noted above, this provision permits only prevailing plaintiffs to recover attorneys' fees.</u>

*Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) (emphasis added).

The RICO claim was brought under 18 U.S.C. § 1962(d) for conspiracy to violate RICO and  was based on the state law Conspiracy to Infringe claim in Count

III that the Court has already determined was in tort not copyright law.  As such this claim can form no basis for an award of fees and full costs.  Hogan Dec. Exhibit "6" at page 30.

### F.    The Four Factors in Fogerty Show the Motion Must be Denied.

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) the Supreme Court expressed that the four non-exclusive factors that the Court of Appeals applied in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (CA3 1986) may be applied "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner."   The Court must therefore, make a determination whether the purpose of the copyright act is advanced by awarding Guidance fees and costs.  Applying the instant facts to the Fogerty factors, the Court must find for Mr. Berry.

### 1.    Frivolousness.

First, Mr. Berry won on its claims against Guidance's principal Fleming.  The facts show that Guidance caused the transfer of at least sixteen (16) copies of Mr. Berry's works back to computers that were sold to C&S.  The fact that Mr. Dillon claimed to have deleted them after Mr. Berry brought the instant action does not mean that Mr. Berry was not entirely justified in his desire to protect this vertical market software application from being transferred without his authority to an unknown

21

potential customer.  Mr. Berry prevailed on all the relevant issues as to Fleming and seven of its employees and no less than two of the three as to Guidance, C&S as to all defendants.

      2.  Motivation.

Congress has enacted  the Copyright Act to protect authors of original works. It is without dispute as an adjudicated fact that from January 1, 2000 to April 2003 Mr. Berry was the victim of willful infringement. This was clearly done for financial gain and as such Mr. Berry was the victim of criminal infringement.   For such a crime victim to utilize the mechanisms provided by Congress to protect their works cannot be construed as acting with improper motivation unless the Court is willing to condone violations of Federal criminal statutes meant to protect Mr. Berry, not the infringer. In this case, Mr. Berry sought to have Fleming stop using his work after the jury found Fleming was a willful infringer and after Fleming filed bankruptcy.  It is without dispute that Fleming continued to use the software as a willful infringer after the jury verdict.  This   same willful infringer sued Mr. Berry with Guidance's material assistance seeking to make it more difficult for a crime victim to protect his works.  The Delaware case was dismissed and Mr. Berry prevailed against Fleming as to the ownership and copyrightability and infringement of his FCS for a second time.   Mr. Berry was motivated by seeking to defend himself from a frivolous assault by an

adjudicated willful-criminal infringer in proceedings it brought under the cover of a bankruptcy filed Delaware with the assistance of Guidance and Gurzi. Because all facts pointed to the PCT having transferred unlicensed copies of Mr. Berry's works by Guidance's conduct, he had no choice but proceed in this action to adjudicate again his ownership of FCS. This simple issue was again found for Mr. Berry against all defendants including the PCT and Guidance. Had Mr. Berry not protected this works the 16 copies that Guidance admits it transferred would still be on the C&S system.

> 3. Objective Unreasonableness Concerning Both the Factual and Legal Components of the Case.

Mr. Berry won as to FCS all issues relevant to the infringement action. As to Guidance, the transfer of the copies back to the computers sold to C&S was established. Mr. Berry has a lawful right to protect his work from acts of infringement that cannot be impaired and the Court should not act to deter a developer from protecting his works from infringement, especially where it has been established the principal of these defendants is an adjudicated willful infringer.

> 4. The Need In Particular Circumstances To Advance Considerations of Compensation and Deterrence.

First, Fleming has been twice adjudicated an infringer. Deterrence necessitated the filing of the instant action in which Mr. Berry has prevailed. As to claims that the Guidance and Gurzi claims to have prevailed upon, first all but two claims fail to

23

provide for fees or full costs as a matter of law.  Even if they did, the Court must recognize that the outcome of this case was far from pre-ordained when it was filed. Mr. Berry respectfully believes that the facts that were presented do not support the fair use defense that the Court granted Guidance and Gurzi. The final determination of that expansion of this defense will be by the Court of Appeals.   The Court did not rule that their was no evidence to support claims against Guidance and Gurzi only that it chose not to accept it nor allow the jury to hear the evidence. It should not now order a struggling individual developer trying to eke out a living to pay the fees to a corporations that another judge might have found a wrongdoer and an infringer or worse.   If however, the Court wants to deter all developers  from protecting their works, and reward persons who violate this Court's own orders, then the award of fees to these Defendants would appear a good way to deter  such Plaintiffs.

## III.    CONCLUSION.

For the reasons stated the Motion should be denied.

DATED: Honolulu, Hawaii, April 27, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff