LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | **Civ. No. CV03 00385 SOM-LEK (Copyright)** |
| Plaintiff, | |
| vs. | **PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANT HAWAII TRANSFER'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS FILED ON MARCH 30, 2006 *and* HTC REQUEST FOR TAXABLE COSTS; CERTIFICATE OF SERVICE** |
| HAWAIIAN EXPRESS SERVICE, INC., a California corporation; et al. | |
| Defendants. | |
| | **Non-Hearing** |
| | **Judge:    Hon. Magistrate Judge Leslie Kobayashi** |

## Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iii**

**I.    BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

    **A.    The Motion Was Not Timely and Must Be Denied.** . . . . . . . . . . . . **1**

    **B.    Mr. Berry is Severely Prejudiced By the Tardy Filing** . . . . . . . . **2**

    **C.    HTC Did not Claim Excusable Neglect.** . . . . . . . . . . . . . . . . . . . . **3**

    **E.    HTC Cannot Claim Any Fees for Work
Done on Counts III to VI.** . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    **F.    The Fees Sought By HTC Are Patently Unreasonable** . . . . . . . . . **5**

**II.    ARGUMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    **A.    The Motion for Attorneys Fees and Costs Was Untimely.** . . . . . . **6**

    **B.    The Motion  Waived Any Claim of Excusable Neglect.** . . . . . . . . **8**

    **C.    The Policy Embodied in Rule 54 (d)(2)(B) Directs the Court to
Deny the Motion that Can't be Saved by a Last Minute Claim of
Excusable Neglect.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

    **D.    The Fogerty Factors Weigh Against Any Award For this
Defendant.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

    **E.    The Additional Claims that the HTC Claims to Have Prevailed
Upon Do Not Provide for Attorneys Fees or Full Costs to the
Prevailing Defendant.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

F.     **The Four Factors in Fogerty Show the Motion Must be Denied**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

III.     **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

# Table of Authorities

## CASES

*Chang v. Chen*, 95 F.3d 27 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

*Chun v. Park*, 51 Haw. 462 (Haw. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

*Committee for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996) . . . . . . **8**

*County of Imperial v. United States*, 348 F.2d 904 (9th Cir. 1965) . . . . . . . . . . . **8**

*F.T.C. v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 73 S. Ct. 245 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

*Farkas v. Rumore*, 101 F.3d 20 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . **12, 15, 16**

*Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . **9**

*Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (CA3 1986) . . . . . . . . . . . . . . **15**

*Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 504 (D.N.Y. 2002) . . . . . . . . . . . **9**

*Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224(5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

*Slader v. Pearle Vision, Inc.*, 199 F.R.D. 125 (D.N.Y. 2001) . . . . . . . . . . . . . . **11**

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466 (D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466 (D. Cal.

1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220 (2d Cir. 2004) . . . . . . . . . . . . . . 10

*The Traditional Cat Ass'n. Inc. v. Gilbreath*, 340 F. 3d 829 (9ᵗʰ Cir. 2003) . . . 14

*United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Weyant v. Okst*, 198 F.3d 311 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## <u>STATUTES</u>

18 U.S.C. §1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hawaii Rev. Stat. §482B-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The RICO Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13-15

The Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>RULES</u>

District Court LR 54.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b) (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure 54(d)(2)(A) and (B) . . . . . . . . . . . . . . . . . . 8, 9

Rule 54 (d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANT HAWAII TRANSFER'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS and HTC REQUEST FOR AWARD OF TAXABLE COSTS FILED ON MARCH 30, 2006**

Comes now, Plaintiff Wayne Berry, by and through his undersigned counsel, and hereby respectfully submits his Plaintiff Wayne Berry's Memorandum in Opposition to Defendant Hawaii Transfer's Motion for an Award of Attorneys' Fees and Related Non-taxable Costs Filed on March 30, 2006 (the "Motion"). This opposition is supported by the Declaration of Timothy J. Hogan; Exhibits 1 to 9 filed concurrently.

## I.     BACKGROUND.

### A.     The Motion Was Not Timely and Must Be Denied.

As an initial matter, the Hawaii Transfer Company Limited's ("HTC")'s Motion was not timely having not filed it as required under both the Fed. R. Civ. P. 54(d)(2) and the District Court LR 54.3(a) within fourteen (14) days of the entry of the "final judgment."

The Clerk entered final judgment herein on March 9, 2006. Declaration of Timothy J. Hogan (the "Hogan Dec.") Exhibit "1". HTC filed the Motion for attorneys fees on March 30, 2006. That is 21 days after entry of final judgment and the HTC motion is untimely.

**B.    Mr. Berry is Severely Prejudiced By the Tardy Filing.**

The prejudice in regard to this Motion is evidenced by the fact that by the time HTC had bothered to file its Motion, Mr. Berry's counsel had already participated in meet and confers and negotiated settlements with two defendants. Had Mr. Berry been aware that HTC was going to file a late motion, Mr. Berry would have taken a different approach regarding the other Defendants.  Hogan Dec. ¶¶ 1 to 3.   It is clear that the value of settling with Foodland and Alix Partners was diminished by HTC's  inexcusable sandbagging.

After HTC filed its tardy Motion, Mr. Berry had to consider whether to finalize the settlements with parties who timely filed.   Keeping to the settlement offers made prior to HTC's  tardy Motion, does not mean that Mr. Berry has not been severely prejudiced by not being able to negotiate a more global settlement with the non-PCT defendants.  Mr. Berry asks that the Court not even consider this Motion and to simply deny it on the grounds that it violates the rules.

Moreover, Plaintiff believes that the instant motion was filed untimely to provide the PCT additional leverage against the Plaintiff after Plaintiff's counsel, in his good faith meet-and-confer with the Employee, PCT and C&S counsel provided them with the Plaintiff's reasons why their motions should be denied.  This would be grounds for more than just denying the Motion.

C.    **HTC Did not Claim Excusable Neglect.**

HTC , in its Motion,  makes no claim that its failure to timely file should be remedied by the Court applying an excusable neglect exception.  That failure constitutes a waiver.

D.    **HTC Defended by Denying Mr. Berry's Ownership Of FCS and by Not Prevailing on that Claim Can't be the Prevailing Party as to Counts I and II the Only Two Counts for Which Fees Could Be Allowed.**

First, Mr. Berry's Second Amended Verified Complaint Counts I and II that are the only copyrights claims and don't even mention HTC.  Hogan Dec. Exhibit "7."   Assuming that the Court considers these claims as to HCT, in its answer to the Plaintiff's Second Amended Verified Complaint HTC asserted affirmative defenses attempting to defeat the Plaintiff's claims of ownership and copyrightability as to this Freight Control System.  *See* Hogan Dec. Exhibit "5." HTC did not prevail on these affirmative defenses related to the two critical issues of Copyrightability, Registration and Ownership.   By failing to prevail on these issues, any additional use by HTC of the Berry software, it now must concede is covered by the protections of a valid copyright owned by Mr. Berry and such use would be ground for both civil and criminal sanctions with no ownership related defenses available.

3

HTC could have agreed that Mr. Berry owned FCS but chose to challenge his ownership in this proceeding.  HTC failed in that challenge and as to two of the three critical copyright issues, Mr. Berry won two out of the three and is the prevailing party.  This alone must deny HTC any right to Fees and any costs associated with the case.

### E.    HTC Cannot Claim Any Fees for Work Done on Counts III to VI.

The Second Amended Verified Complaint, specifically, brought only three claims against HTC as follows:

COUNT  III, a claim for Conspiracy to Infringe.  The District Court, in granting summary judgment on June 27, 2005, held Count III is a state law  tort claim.  Hogan Dec. Exhibit "6" at page 30.  Under Hawaii law, no such claim can support a claim for attorneys' fees as a matter of well settled law.[1]

COUNTS V and VI,  regarding the Sherman Act claims and the RICO Act claims respectively, neither of these claims, as a matter of well settled law, provide for attorneys' fees for the prevailing defendant.  HTC's participation in the Sherman Act claim was based on its involvement in commercial bribery.  In regard to certain authority that provides for an exception where a non-copyright claim is

---

[1]  Like Counts I and II there is no claim under Count IV against HTC.

4

bound up in the Copyright claim,  the  Sherman Act claims was largely based on the

claim of monopoly and price fixing, which  are separate claims from any copyright

claim.  Moreover, the Court has held in granting Fed. R. Civ. P. 12(b) (6) relief that

Mr. Berry's copyright claims do not provide his standing under the federal antitrust

laws.  Therefore, if the Court rules that this is grounds to grant fees, it would appear

that the Court would vacate its earlier finding.  In any even, that finding should also

work as an adjudication that no right to fees for those claims may be bootstrapped

to the copyright claims.

The RICO claimed simply the existence of an enterprise and a 18 U.S.C.

§1962(d) conspiracy that was the same conspiracy set forth in COUNT III.  Because

the District Court ruled that this claim was a state law tort claim and not a copyright

claim, the RICO 1962(d) claim therefore, can provide no basis for attorneys' fees

under the Copyright Act.

**F.     <u>The Fees Sought By HTC Are Patently Unreasonable</u>.**

In addition to the other reasons for the Court to deny the Motion, the HTC

fees are unreasonable.  As this Court is aware from the docket, HTC also did not

answer the Complaint and was defaulted.  Much time that has been expended in the

time records that were submitted were dealing with the default.

II.  **ARGUMENT.**

A.  **The Motion for Attorneys Fees and Costs Was Untimely.**

Final Judgment was entered 21 days before the instant motion was filed. It is well settled that an amended judgment does not alter the dates that are linked to the judgment unless the amendment modifies the parties substantive rights.  The Court entered summary judgment for HTC in June 2005.  The amended judgment did nothing to add or detract from the effect of that order other than to make it a "final judgment."  Had Mr. Berry not filed an appeal within 30 days after the entry of final judgment, and then later the Court simply entered an amended judgment to correct a clerical error, would HTC concede that a subsequent appeal by Mr. Berry was timely?  More important, the Court of Appeals would say it was not.   The same interpretation of the rules  must apply to HTC  that missed the date for attorney's fee motions.   The cases that deal with final judgments in the context of appellate jurisdiction are instructive and controlling.

> Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment. This doctrine has been applied to judgments reentered to correct technical errors. Similarly, where an order disposes of a party's substantive claims, but does not dispose of claims relating to attorney's fees, the time for appeal of the substantive claims starts to run from the date of the first order, unless the district court explicitly grants

6

a delay.

*Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir. 1996) (citations omitted).

> Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.

*Farkas*, 101 F.3d at 23.

> The mere fact that a court reenters a judgment or revises a judgment in an immaterial way does not affect the time within which litigants must pursue an appeal. Rather, the test is 'whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.' In this case, the district court's August 28 judgment did not in any manner alter the legal rights or obligations of any party. Consequently, the August 10 judgment is final and appealable, and this court has jurisdiction to reach the merits of this case.

*Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (citations omitted).

> The mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity in a judgment previously rendered, should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*County of Imperial v. United States*, 348 F.2d 904, 905 (9th Cir. 1965); *citing F.T.C. v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211, 73 S. Ct. 245, 249 (1952).

## B.    <u>The Motion  Waived Any Claim of Excusable Neglect</u>.

The Court's power to modify the time for filing such motions is limited to providing relief for excusable neglect.   The motion makes no claim that it is untimely and clearly has waived any such relief continuing to rely on the erroneous interpretation of the rules.  Hogan Dec. Exhibit "2."   That has never been grounds for relief under the excusable neglect exception.

> Federal Rules of Civil Procedure 54(d)(2)(A) and (B), as amended effective December 1, 1993, require a claim for attorney's fees to be made by motion 'filed and served no later than 14 days after entry of judgment'; a court can by order provide a different deadline.

*Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996).

Where, like this case, the reason that a motion is not timely filed is because of the inability of an attorney to comprehend the rules, there is no grounds to grant the extension on the grounds of excisable neglect.

> It is well settled that inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.

8

*Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931 (9th Cir. 1994) (citation omitted).

> In the October 15 telephone conference, counsel for Radio
> City candidly admitted that the reason he had failed to file
> within the 14-day limit was that he had overlooked or
> forgotten about Rule 54(d)(2)(B). *See* Fed. R. Civ. P.
> 54(d)(2)(B). As the *Canfield* case indicates, such
> inadvertence does not, in the usual case, constitute
> excusable neglect. *See Canfield*, 127 F.3d at 251. Given
> the care with which Radio City's counsel had followed
> other developments in this case, *see* letter dated October 3,
> 2002 from Michael Aschen, Esq. (outlining his efforts to
> ensure the Clerk entered judgment in a timely fashion), his
> inadvertence with respect to the time limit is rendered even
> less excusable.

*Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 504, 505 (D.N.Y. 2002) (citations in
the original).

In this case,  HTC apparently mistakenly relied on the belief that the motion

need not be filed within 14 days of the entry of final judgment choosing instead the

erroneous interpretation that the amended final judgments started the clock over that

began running upon the entry of final judgment on March 9, 2006. The Court may

not grant relief under such circumstances.[2]

**C.    The Policy Embodied in Rule 54 (d)(2)(B) Directs the Court to
Deny the Motion that Can't be Saved by a Last Minute Claim of**

---

[2] Mr. Berry also firmly believes that the delay was strategic in order to
prejudice Mr. Berry and cause piecemeal settlements with the non-PCT defendants
and to exact leverage regarding certain issues.

**Excusable Neglect.**

In this case, Mr. Berry undertook to resolve both fee issues and potential appeal issue with the parties that had timely filed their motions.  Only after settlements had been reached with Foodland and Alix Partners did these defendants bother to file its motion.  It could have filed its motion months earlier had it chosen to. There is no reason for this Court to re-write the rules to accommodate these defendants.

> Congress's reasons for its 1993 addition to Rule 54(d)(2)(B) (the fourteen-day deadline) were three-fold: (1) to provide notice of the fee motion to the non-movant before the time to appeal expires; (2) to encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorneys' fee issue; and (3) to resolve fee disputes efficiently, "while the services performed are freshly in mind." Fed. R. Civ. P. 54 advisory committee's notes (1993); *see Weyant v. Okst*, 198 F.3d 311, 315 (2d Cir. 1999) (noting that the deadline was intended, in part, to minimize 'piecemeal appeals of merits and fee questions'). <u>Allowing district judges to extend the deadline for filing a motion for attorneys' fees without any showing of 'excusable neglect' would impede these efficiency and fairness goals</u>.

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (citations in original)(emphasis added).

> Given the normal American presumption against the shifting of attorneys' fees, as well as the strong interest in the finality of judgments, <u>the mandatory 14-day limit for seeking attorneys' fees should not be lightly disturbed,</u> and defendant has offered no good reason why it

10

should not be enforced here.

*Slader v. Pearle Vision, Inc*., 199 F.R.D. 125, 126 (D.N.Y. 2001) (emphasis added).

In this case, HTC missed the date and waived any claim that the only basis for excusing it applies especially where there is a showing of prejudice to the opposing party.

> With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, **the danger of prejudice** to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395

(1993) (citation omitted)(emphasis added).

### D.     The Fogerty Factors Weigh Against Any Award For this Defendant.

If the Court is going to consider the Motion, it is important for the Court to carefully address the factors that the Supreme Court has said that are relevant to such motions.

First, HTC was not the prevailing party.  Second, as to the facts surrounding the reason HTC  was made a party to this case, is that like Fleming it had been operating its business though the benefits provided by infringing unlicensed software.  The Court's task is to determine whether HTC's conduct and the granting of its fee motion in light of that conduct will further the principles that Congress set forth in enacting the Copyright Law.   Mr. Berry is an individual and HTC is a corporation.  To grant HTC's attorneys' fees to go after a small independent developer would also shock the conscience and be contrary to the factors set forth by the United States Supreme Court in *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) .

**E.    The Additional Claims that the HTC Claims to Have Prevailed Upon Do Not Provide for Attorneys Fees or Full Costs to the Prevailing Defendant.**

1.    Count III- Conspiracy to Infringe.

The District Court  has already determined this to be a claim sounding in tort. *See* June 27, 2005 Order at page 30.  Hogan Dec. Exhibit "6."  Under well settled Hawaii law, no attorneys' fees or full costs are allowable.  *See  Chun v. Park*, 51 Haw. 462, 469 (Haw. 1969) (attorneys fees not available for tort claims).

2.    Count IV-Violation of Hawaii Trade Secrets Law.

There was no claim brought against HTC for Count IV.  Even if there had been a claim, the HTC Motion makes no claim that the claim was otherwise brought

in bad faith, a necessary requirement for fees to be considered in such cases.

> The court may award reasonable attorney's fees to the prevailing party if:
>> (1) <u>A claim of misappropriation is made in bad faith</u>;
>> (2) A motion to terminate an injunction is made or resisted in bad faith; or
>> (3) Wilful and malicious misappropriation exists.

Hawaii Rev. Stat. §482B-5 (emphasis added).

> 3.    Count V-Violation of the Sherman Act.

It is well settled that no fees or costs may be awarded to the prevailing

defendant based on these claims.

> While it is clear that an award of attorney's fees will lie in favor of a defendant who successfully prosecutes a counterclaim sounding in antitrust, <u>it is equally clear that the prevailing defendant in a private antitrust suit ordinarily is not entitled to attorney's fees for successfully resisting the plaintiff's claims.</u>

*Syufy Enterprises v. American Multicinema, Inc.*, 602 F. Supp. 1466, 1468-1469 (D.

Cal. 1983) (citations omitted) (emphasis added).

In addition, it is also been held that the plaintiff need not have prevailed to be

entitled to fees brought under the federal antitrust laws.

> <u>First, there is no requirement in section 4 of the Clayton Act that an antitrust plaintiff be a 'prevailing party' to recover attorney's fees.</u> The term 'prevailing party' appears nowhere in section 4 of the Clayton Act. All that is

> required is an injury. *See supra.* As stated supra, an injury
> was found, therefore the award of attorney's fees was
> automatic.

*United States Football League v. National Football League*, 887 F.2d 408, 412 (2d Cir. 1989) (emphasis added).

The copyright claims were not implicated in any of the claims for which the HTC might arguably be able to claim to be a prevailing party. There is no way to torture a price fixing and monopoly conspiracy claim to a claim under the Copyright Act. As such they can form no basis for an award of fees and full costs. *See The Traditional Cat Ass'n. Inc. v. Gilbreath*, 340 F. 3d 829 (9th Cir. 2003). Moreover, by finding that Mr. Berry's rights under the Copyright Act did not give him any standing to bring an action under the Sherman Act, the Court has already determined that these claims are unrelated to the Copyright claims and to say otherwise should be grounds to vacate the earlier finding on standing.

4.    Count VI-Violations of RICO.

It is well settled in this Circuit that the RICO statute provides no fees and costs to prevailing defendants as follows:

> The RICO statute provides, in pertinent part, that "any
> person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefor .
> . . and shall recover threefold the damages he sustains and
> the cost of the suit, including a reasonable attorney's fee."
> 18 U.S.C. § 1964(c). <u>As noted above, this provision</u>

14

<u>permits only prevailing plaintiffs to recover attorneys' fees.</u>

*Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) (emphasis added).

The RICO claim was brought under 18 U.S.C. § 1962(d) for conspiracy to violate RICO and was based on the state law Conspiracy to Infringe claim in Count III that the Court has already determined was in tort not copyright law. As such this claim can form no basis for an award of fees and full costs. Hogan Dec. Exhibit "6" at page 30.

**F.     <u>The Four Factors in Fogerty Show the Motion Must be Denied</u>.**

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) the Supreme Court expressed that the four non-exclusive factors that the Court of Appeals applied in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (CA3 1986) may be applied "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." The Court must therefore, make a determination whether the purpose of the copyright act is advanced by awarding the PCT fees. Applying the instant facts to the Fogerty factors, the Court must find for Mr. Berry.

1.     Frivolousness.

15

First, Mr. Berry won on its claims against HTC that claimed it or someone other than Mr. Berry owned Mr. Berry's work, that it was not properly registered or was created by someone other than Mr. Berry.

2.   Motivation.

Congress has enacted  the Copyright Act to protect authors of original works. It is without dispute as an adjudicated fact that from January 1, 2000 to April 2003 Mr. Berry was the victim of willful infringement. This was clearly done for financial gain and as such Mr. Berry was the victim of criminal infringement.   For such a crime victim to utilize the mechanisms provided by Congress to protect their works cannot be construed as acting with improper motivation unless the Court is willing to condone violations of Federal criminal statutes meant to protect Mr. Berry, not the infringer. In this case, Mr. Berry sought to have Fleming stop using his work after the jury found Fleming was a willful infringer and after Fleming filed bankruptcy.  It is without dispute that Fleming continued to use the software as a willful infringer after the jury verdict.

3.    Objective Unreasonableness Concerning Both the Factual
      and Legal Components of the Case.

Mr. Berry won as to FCS all issues relevant to the infringement action.

16

As to HTC,  Mr. Berry prevailed on the disputed issues of his ownership and the copyrightability of the work.  He has an unqualified lawful right to protect his work from acts of infringement or false claims of ownership like HTC offered in its Answer and that cannot be impaired. The Court should not act to deter a developer from protecting his works from infringement, especially where it has been established the principal of this defendant is an adjudicated willful infringer.

      4.     The Need In Particular Circumstances To Advance Considerations of Compensation and Deterrence.

First, Fleming has been twice adjudicated an infringer.  Deterrence necessitated the filing of the instant action in which Mr. Berry has prevailed.  As to claims that  HTC claims to have prevailed upon, all but two claims fail to  provide for fees or full costs as a matter of law.   As to Counts I and II, Mr. Berry defeated HTC's claims ownership. If however, the Court wants to deter all developers  from protecting their works, then the award of fees to these Defendants would appear a good way to deter  such Plaintiffs.

17

III.    **CONCLUSION**.

For the reasons stated the Motion should be denied.

DATED: Honolulu, Hawaii, April 27, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff

18