# Exhibit

# 6

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 2 7 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

at 10 o'clock and 45 min. A M
SUE BEITIA, CLERK

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen,<br><br>    Plaintiff,<br><br>  vs.<br><br>HAWAII EXPRESS SERVICE, INC., a California corporation; et al.<br><br>    Defendants. | Civ. No. 03-00385 SOM/LEK<br><br>ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR
SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC,
C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND
RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY
JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

      Plaintiff Wayne Berry is suing multiple defendants for copyright infringement and related matters. This court has previously ruled on several motions in this case. In this latest round of what seems to this court to be a never ending stream of motions, Berry moves for summary judgment against all remaining Defendants. Defendant Post Confirmation Trust ("PCT")[1]; Defendants C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers,

---

[1] PCT represents the interests of Defendant Fleming Companies, Inc. ("Fleming"), during Fleming's bankruptcy.

version of his FCS software.[3]  Second, Berry alleges that after June 9, 2003, Fleming, Employees, and C&S used a derivative of the FCS program.  Third, Berry alleges that Guidance, at Fleming's direction, made unauthorized copies of his software that were then retained on Fleming computers.  Fourth, Berry alleges that Fleming sold illegal copies of FCS to C&S by leaving the unauthorized copies that Guidance had made on the computers when C&S took over Fleming's operations.

      1.    Employees.

The court has already addressed several of Berry's claims against Employees.  In its January 26, 2005, order, the court granted summary judgment to Dillon and Noa with respect to all claims relating to activities outside the period of March 7, 2003, to June 9, 2003.  The court, however, denied Dillon and Noa's motion for summary judgment with respect to direct infringement that might have occurred during that time period.  In its April 12, 2005, order, the court denied without prejudice Ponce, Purdy, Fukumoto, Wailoama, and Rio's motion for summary judgment on all Counts, and also denied without prejudice Berry's counter-motion for summary judgment on all Counts.

---

[3] At the June 20, 2005, hearing on the present motions, Berry said that, in prior orders, the court limited the direct infringement claim to the period after April 1, 2003.  This court, however, found no such limitation in its earlier orders in this case.

6

> a. Dillon and Noa Infringed on Berry's Copyright Between March 7, 2003, and June 9, 2003.
>
> The court grants Berry's motion for summary judgment with respect to Dillon and Noa's liability for conduct between March 7, 2003, and June 9, 2003.

In its January 26, 2004, order, this court granted summary judgment to Dillon and Noa with respect to conduct occurring outside the period between March 7, 2003, and June 9, 2003. The court, however, denied Dillon and Noa's motion for summary judgment with respect to infringement allegedly occurring between March 7, 2003, and June 9, 2003. Given Dillon's declaration stating that he had attempted to revert to the original version of FCS following the jury verdict of March 6, 2003, but had inadvertently failed to remove a scratch name field and two label changes, the court concluded that Dillon had used an altered version of FCS. An expert report by Dr. Philip Johnson confirmed that the version of FCS in use by Dillon was not the original licensed version of the software. Because only a copyright holder has the right to prepare and use derivative works, see Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001), the unauthorized use of the altered version of FCS constituted a copyright violation.

Berry has established that Dillon and Noa used an altered version of the FCS software between March 7, 2003, and

7

June 9, 2003. See Ex. L to Hogan Decl.; Ex. P to Hogan Decl. The unauthorized use of a software derivative constitutes impermissible "copying." See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 517-18 (9th Cir 1993). The use of the altered version of FCS therefore violated Berry's copyright.

Dillon and Noa now contend that the changes made to the software were de minimis and that they therefore cannot be said to have used an unauthorized derivative. Dillon and Noa rely on an expert report by Dr. Martin Walker, stating that there were only seven differences between the altered version of FCS used by Employees and Berry's original FCS. See Ex. C to Hosoda Decl. ¶ 41. Walker's report also states that the changes made to FCS either facilitated the exporting of Fleming's data or aided recovery of lost data. Id. ¶ 42. Walker therefore concludes that the alterations were not part of the normal operation of the database and that "the two databases are practically identical from both a numerical perspective and a functional perspective." Id.

Dillon and Noa cite Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994), and Newton v. Diamond, 388 F.3d 1189 (9th Cir. 2004), for the proposition that de minimis changes do not rise to the level of infringement. Those cases, however, do not apply here. In Apple Computer, the plaintiff alleged that Microsoft had copied its software by using a

8

graphics interface on Microsoft software that was similar to the interface employed by Apple computers. The Ninth Circuit concluded that the similarities between the two software programs were de minimis, and that therefore the defendants had not violated a copyright. Id. at 1439. Similarly, the court in Newton held that de minimis use of a musical composition was insufficient to sustain a claim of infringement. 388 F.3d at 1196.

This case, by contrast, involves the creation and use of an impermissible derivative. The situation in this case thus arises in a context entirely different from the literal copying at issue in Apple Computer or the use of an unaltered composition in Newton. Dillon and Noa cite no law suggesting that a derivative is allowed if the changes are small.

Fleming and Employees, citing Melville B Nimmer & David Nimmer, Nimmer on Copyright § 13.05[D][2] (2005), say that "[t]rivial changes and inconsequential modifications such as underlining, highlighting, [and] cropping pages" do not rise to the level of creating a derivative. The alterations in this case, however, extend beyond mere underlining or highlighting. Underlining and highlighting emphasize particular aspects of a work. Here, by contrast, Dillon made alterations to FCS that changed the content and structure of the program. These types of

9

alterations, even if they constitute a small percentage of the total code, resulted in a derivative.

Dillon and Noa have admitted that they used an altered version of FCS. The court therefore grants Berry's motion for summary judgment against Dillon and Noa with respect to their liability under Count I, alleging direct infringement, for acts occurring between March 7, 2003, and June 9, 2003.

> b. Ponce, Purdy, Fukumoto, Waiolama, and Rio Infringed on Berry's Copyright <u>Between March 7, 2003, and June 9, 2003.</u>

In its April 12, 2005, order, this court denied a motion for summary judgment filed by Defendants Ponce, Purdy, Fukumoto, Waiolama, and Rio, noting those persons had admitted to using a computer for various tasks while at Fleming. As these Employees worked for Fleming at some point between March 7, 2003, and June 9, 2003, the court found a genuine issue of material fact as to whether each had used the unauthorized altered version of FCS. The court, however, also denied Berry's counter-motion for summary judgment, noting that Berry had failed to establish that any of the employees had actually used an infringing version of FCS. Berry now renews his motion for summary judgment against the remaining Employees, and the court now grants Berry's motion with respect to their conduct between March 7, 2003, and June 9, 2003.

10

The evidence now establishes that Ponce, Purdy, Fukumoto, Waiolama, and Rio used the same unauthorized derivative of Berry's FCS software as Dillon and Noa between March 7, 2003, and June 9, 2003. An affidavit by Teresa Noa states that Fleming "went back to the original" version of FCS after the March 6, 2003, jury verdict. Ex. E to Hogan Decl. What Noa believed to be the "original" FCS, however, was actually the modified version of FCS created by Dillon on March 7, 2003. Employees offer no evidence to contradict Noa's statement, and each admits to using a computer to track shipments or enter data relating to freight orders between March 7, 2003, and June 9, 2003. See Ex. J to Hosoda Decl.; Ex. K to Hosoda Decl.; Ex. L to Hosoda Decl.; Ex. M to Hosoda Decl.; Ex. N to Hosoda Decl. Employees, therefore, do not raise any triable issue of fact, and the court grants Berry's motion for summary judgment with respect to Ponce, Purdy, Fukumoto, Waiolama, and Rio's liability for acts between March 7, 2003, and June 9, 2003. The court denies these Employees' counter-motion for summary judgment with respect to infringement during this period.

        c.    Any Infringement by Employees Between March 7, 2003, and June 9, 2003, was Not <u>Willful</u>.

In its January 26, 2003, order, this court held that "any infringement [by Dillon and Noa] during the period of March 7, 2003, to June 9, 2003, was not willful." This determination

11

days after Berry receives any new evidence justifying such a motion or 10 working days from the date of this order.

### 3. Fleming.

Berry alleges that Fleming directly infringed on his software in three ways. First, Berry alleges that Fleming is liable for using altered FCS software between March 7, 2003, and June 9, 2003. Second, Berry alleges that Fleming distributed 16 copies of FCS to C&S, in violation of Berry's exclusive right of distribution. Third, Berry alleges that Fleming directly infringed on FCS by creating the Excel spreadsheets that Berry claims are an illegal derivative of FCS.

#### a. Fleming Infringed By Using An Altered Version of Berry's Software from March 7, 2003, to June 9, 2003.

As discussed earlier, Employees used an unauthorized altered version of FCS from March 7, 2003, to June 9, 2003, while working for Fleming. Fleming is liable for the infringement during this time. Berry's motion for summary judgment is granted with respect to Fleming's liability for direct infringement through the use of an altered version of FCS from March 7, 2003, to June 9, 2003. Fleming's counter-motion for summary judgment is denied with respect to these acts.

25

        b.    Fleming's "Distribution" of 16 Copies of FCS to C&S Was Protected by the Fair Use Doctrine.

As noted above, Berry alleges that Fleming impermissibly retained 16 copies of FCS on its computers after claiming it had purged the software from its system. Berry further alleges that these copies were retained on the computers when the computers were sold to C&S, constituting an improper sale of his software to C&S. The court grants Fleming's motion for summary judgment with respect to this claim.

Fleming had a right to retain the 16 FCS files for litigation purposes under the fair use doctrine. The transfer of the computers containing these files, as well as all other user files for Dillon, Noa, and the other Employees, was also permissible under the fair use doctrine, as Employees had a right to retain the files for their own litigation purposes.

There is no evidence that C&S paid any premium for the files or that Fleming otherwise stood to benefit from the alleged scheme to defraud the Bankruptcy Court. In fact, the record establishes that, even though Employees had a right to retain the files for litigation, the retention was inadvertent. See Ex. G to Hosoda Decl ¶ 30; Ex. K to Hogan Decl. at 156-57. Given Berry's failure to show that there is any issue of material fact with respect to Fleming's transfer of the files, the court grants Fleming's motion for summary judgment with respect to this claim.

    c. <u>The Creation of the Excel Spreadsheets.</u>

As Berry raises no material issues of fact regarding his claim that the Excel spreadsheets are a derivative of FCS, Berry's motion for summary judgment with respect to direct infringement by Fleming after June 9, 2003, is denied for the same reasons that the court rejects Berry's similar claim against Employees. Fleming's motion for summary judgment on this claim is granted.

    4. <u>C&S.</u>

Berry's only claim against C&S for direct infringement arises out of Berry's allegation that the Excel spreadsheets used by C&S are actually an FCS derivative. As explained earlier, however, no material issues of fact exist with respect to whether the Excel spreadsheets are an FCS derivative. Berry's motion for summary judgment on his claim of direct infringement against C&S is denied, and C&S's counter-motion for summary judgment on this claim is granted.

Berry also claims that C&S destroyed evidence by "scrubb[ing] the relevant computer immediately after this court directed that a special master investigate the software on the server at C&S." Berry relies on correspondence from C&S's attorney notifying Berry that C&S had been using a trial version of Microsoft's Windows 2003 Server software and would soon be installing the full version of the same software. Berry does

27

other than Fleming on that Count are granted. The issue of Fleming's alleged vicarious infringement may be raised in later motions, as noted later in this order.

  C. <u>Count III: Conspiracy to Infringe.</u>

  A cause of action for civil conspiracy to infringe a copyright is not created by the Copyright Act and instead falls under state tort law. <u>See</u> <u>Schuchart v. Solo Serve Corp.</u>, 540 F. Supp. 928, 937 (W.D. Tex. 1982). A conspiracy is "a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose . . . by criminal or unlawful means." <u>Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.</u>, 91 Haw. 224, 252 n.28; 982 P.2d 853, 881 (1999). To be actionable, the conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and the proximate cause of the plaintiff's injuries. <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1039 (9th Cir. 1990).

  As any infringement of Berry's software was inadvertent, there could not have been an agreement to infringe. Berry's motion for summary judgment is denied with respect to Count III, and Defendants' counter-motions for summary judgment are granted with respect to this Count.

infringement and the issue of any direct benefit to Fleming for alleged vicarious infringement. Motions for summary judgment on damages or on Fleming's alleged vicarious infringement may be filed on or before the dispositive motions cutoff. Berry's motion for summary judgment is denied in all other respects.

Employees' motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and for vicarious infringement. Employees' motion for summary judgment is granted in all other respects.

Fleming's motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and with respect to vicarious infringement. Fleming's motion for summary judgment is granted in all other respects.

All other Defendants' motions for summary judgment are granted. The tentatively reserved hearing date of August 9, 2005, is vacated with respect to Guidance and Gurzi.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 27, 2005.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

<u>Berry v. Hawaiian Express Service, Inc., et al.</u>, Civ. No. 03-00385 SOM/LEK, ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.