KOBAYASHI, SUGITA & GODA
LEX R. SMITH          3485-0
THOMAS H. YEE         7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone No. (808) 539-8700
Facsimile No.  (808) 539-8799
Email: lrs@ksglaw.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) **DEFENDANT PCT'S REPLY IN** |
| vs. | ) **SUPPORT OF ITS MOTION FOR** |
| | ) **ATTORNEYS' FEES AND COSTS;** |
| | ) **EXHIBITS "ZZ" – "UUU";** |
| | ) **DECLARATION OF R. OLIVIA** |
| (Caption continued) | ) **SAMAD; CERTIFICATE OF** |
| | ) **COMPLIANCE; CERTIFICATE OF** |
| | ) **SERVICE** |

HAWAIIAN EXPRESS SERVICE,
INC., et al.,

                Defendants.

Conference:  May 5, 2006
Time:          2:00 p.m.
Judge:        Magistrate Kobayashi
Trial Date:   February 28, 2006


### DEFENDANT PCT'S REPLY IN SUPPORT OF ITS
### MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

I.      Introduction ............................................................................................ 1

II.     The PCT Prevailed and is Entitled to Attorneys' Fees. ................................. 1

        A.      The PCT is Entitled to Recover Fees Under Copyright Law. .............. 2

                1.      The PCT Prevailed. .................................................. 2

                2.      The Court Should Award the PCT its Entire Request. ............. 3

        B.      The PCT Is Entitled to Recover for Fees and Costs for Defense
                of Related Claims. ................................................. 8

        C.      The PCT is Also Entitled to Recover Attorney Fees Under
                Trade Secret Law. ................................................. 9

III.    The Court Should Award the PCT the Full Amount of Its Requested
        Attorneys' Fees and Costs. ........................................................ 10

        A.      Kirkland's Fees are Reasonable and the Time Records are
                Appropriate. ................................................. 10

        B.      Berry Created Conditions that Required Extensive Defense
                Costs. ................................................. 12

IV.     Conclusion ........................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page**

Assessment Technologies of WI, LLC v. Wiredata, Inc.,
    350 F.3d 640 (7th Cir. 2003)                                                                 5

Assessment Technologies of WI, LLC v. Wiredata, Inc.,
    361 F.3d 434 (7th Cir. 2004)                                                                 17, 18

Berkla v. Corel Corp.,
    302 F.3d 909 (9th Cir. 2002)                                                                 15

Bridgeport Music, Inc. v. Rhyme Syndicate Music,
    376 F.3d 615 (6th Cir. 2004)                                                                 15, 16, 17

Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts,
    222 F. Supp. 2d 733 (D. Md. 2002)                                                            10

Diamond Star Building Corp. v. Freed,
    30 F.3d 503 (4th Cir. 1994)                                                                  8

Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,
    122 F.3d 1211 (9th Cir. 1997)                                                                2

Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,
    499 U.S. 340 (1991)                                                                          5

Florentine Art Studio, Inc. v. Vedet K. Corp.,
    891 F.Supp. 532 (C.D. Cal. 1995)                                                             passim

Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994)                                                                          passim

Gracie v. Gracie,
    217 F.3d 1060 (9th Cir. 2000)                                                                8, 12

In the Matter of Union Financial Services Group,
    303 B.R. 390 (Bankr. E.D. Mo. 2003)                                                          11

Traditional Cat Association, Inc. v. Gilbreath,
    340 F.3d 829 (9th Cir. 2003)                                                                 2, 9, 12

## DEFENDANT PCT'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

### I.    Introduction

Berry's opposition and fee motion prove the PCT's point: Berry's unreasonable optimism and his determination to litigate as aggressively as possible despite any adverse ruling forced the PCT's defense costs to skyrocket. Moreover, his current threats of future litigation show he will continue this crusade absent a significant attorneys' fee award in the PCT's favor.

The parties largely agree on standards governing when to award attorneys' fees to a prevailing party in a copyright case (under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)), and that fees are recoverable for related claims. The Court in its discretion is left to decide one issue: whether the PCT has prevailed because it "succeeded in a substantial part of this litigation, and achieved substantially all the benefits [it] hoped to achieve in defending the suit." *See Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D. Cal. 1995). Because the PCT has met all its defense objectives and otherwise meets the *Fogerty* criteria, and because its fees were reasonable and necessary, the Court should find in the PCT's favor and award the PCT the full amount of its requested fees and costs.

### II.    The PCT Prevailed and is Entitled to Attorneys' Fees.

The parties agree that *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), articulates the primary factors this Court should consider in determining whether to

1

award fees to a prevailing party.  *See* Berry Opp'n at 14.  The parties also agree

that a prevailing party in a copyright case may recover fees incurred for other

related claims.  *See* Opp'n at 13, 22 (citing *Entertainment Research Group, Inc. v.*

*Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997) and *Traditional*

*Cat Association, Inc. v. Gilbreath*, 340 F.3d 829 (9th Cir. 2003)).

Likely because the parties agree on how the Court should treat a prevailing

party, Berry simply ignores the legal standard for determining who prevailed.  That

standard is simple: whether the PCT "succeeded in a substantial part of this

litigation, and achieved substantially all the benefits [it] hoped to achieve in

defending the suit."  *Florentine Art Studio*, 891 F.Supp at 541.  The PCT

succeeded in the objectives of its defense by every relevant metric, and is therefore

a prevailing party for purposes of copyright law.  Moreover, because the PCT's

defense of the non-copyright counts in the Second Amended Complaint were

related claims under the very authorities Berry endorses, the PCT is entitled to

recover every penny of its claimed fees and costs.

## A.    The PCT is Entitled to Recover Fees Under Copyright Law.

### 1.    The PCT Prevailed.

To avoid duplication, the PCT refers the Court to pages 10-14 of its moving

papers, describing the methodical deconstruction of Berry's lawsuit and the PCT's

eventual success at trial.  Berry demanded injunctive relief and damages that

ultimately ballooned to over $200 million. Despite numerous attempts in this Court and others, he never got an injunction, and the jury awarded him only $57,534 at trial. But the most critical point for this Court to grasp in evaluating the mountain of paperwork before it is this: the PCT didn't have to "win" outright to be a prevailing party for purposes of copyright law. The PCT only had to meet the *Florentine* standard of succeeding in a substantial part of this litigation and achieving substantially all the benefits it hoped to achieve in its defense.

The PCT achieved this by preventing Berry from obtaining any injunctive relief and limiting him to a *de minimis* financial recovery. Berry ignores that even for Counts I and II, the PCT secured a summary judgment finding that it did not infringe from June 10, 2003 onwards. In private, Berry would admit that this lawsuit has been a devastating loss for him. In fact, he did admit it, confiding to his expert that the Court's June 27, 2005 summary judgment ruling "killed a lot of our case." Ex. GG.[1]

The PCT prevailed. Now the Court should simply follow the parties' agreed legal guideposts and award the PCT the full amount of its request.

## 2.    The Court Should Award the PCT its Entire Request.

---

[1] Citations to Exhibits A through YY are to the March 23, 2006 Declaration of Damian D. Capozzola in Support of Defendant PCT's Motion for Attorneys' Fees and Costs. Exhibits ZZ through UUU are to the concurrently filed supporting Declaration of R. Olivia Samad.

All of the *Fogerty* factors support the PCT's right to its fees and costs. Berry brought frivolous, unreasonable claims with an improper motive, and deterrence requires an award of full fees and costs because of the plaintiff's litigious, aggressive, and irrational positions. *See* PCT's Mem. P. & A. at 12-14, 16-19. When the Court examines each party's degree of success as well as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" the PCT is clearly entitled to a full recovery. *Fogerty*, 510 U.S. at 535, n. 19. *See also* Mem. P. & A. at 12-14, 16-19.

### (A)    Degree of Success – The PCT Met the Objectives of Its Defense.

The most important metric of success, according to Berry's own motion for attorneys' fees, was his goal of an injunction. *See* Ex. JJ (excerpt from Berry attorneys' fees motion). Even the Court stated, "in most intellectual property cases the . . . more valuable portion of the judgment is the injunction." Ex. HHH at 25:16-20. Fleming has prevailed against all of Berry's repeated motions for injunctive relief, at least two of which were brought in this case. Exs. KK, LL, SSS (excerpts from Court Orders denying injunctive relief).

/ / /

In addition, the PCT narrowed the timeframe from April 1 to August 23, 2003 (the closing date of the C&S sale) to April 1 to June 9, 2003. *See* Mem. P. & A. at 11-12. Berry's only counterargument twists the language in *Fogerty* that prevailing plaintiffs and defendants are to be treated alike to claim that somehow this means that the PCT is not entitled to fees because Fleming did not copyright the spreadsheets it used after June 9th. *See* Opp'n at 11. No authority requires a prevailing defendant to copyright its non-infringing work. Berry's failure to cite a single supporting case or secondary authority speaks volumes.

### (B)    Berry Brought Frivolous and Objectively Unreasonable Claims.

The preceding point also shows how Berry's suit rested on objectively unreasonable and frivolous claims. Another example would be his position that extracting data into off-the-shelf software created an infringing derivative, in the process flatly contravening well-established federal authorities. *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 363-64 (1991) (finding for the defendant publisher of a phone directory because no one can hold a copyright in facts – e.g. names, towns, phone numbers – and plaintiff phone company was not original in its compilation of those facts); *Assessment Technologies of WI, LLC v. Wiredata, Inc.,* 350 F.3d 640, 646-48 (7th Cir. 2003) (reversing finding of copyright infringement and stating that data collected and inputted by the defendant assessors into plaintiff's database could be extracted into

electronic files or Access Database without violating the plaintiff's copyright in the structure of the database); *see also* Ex. ZZ (excerpt from Berry summary judgment papers). Moreover, referencing the support of his technical expert, Dr. Johnson, does not aid Berry's cause: Dr. Johnson did not perform a competent analysis. *See* Ex. F (June 27, 2005 Order at pp. 14-21). If anything, Dr. Johnson's work only enhances the PCT's argument that the bases for the bulk of Berry's case – claims about the spreadsheets – were frivolous.

### (C)   Berry's Motivation Was Improper.

Berry's massive complaint and baseless allegations reflect his true motivation: to pursue his vendetta regardless of cost. *See* Mem. P. & A. at 7-10. The vitriolic nature of his opposition symbolizes his posture throughout the entire case. And rather than distancing himself in his opposition from his utterly unsupportable claims about smuggling and terrorism, he argues without a single citation to record evidence that federal law enforcement is investigating Fleming's use of Berry's software. *Compare* Mem. P. & A. at 7-10 *with* Opp'n at 7. As with the rest of his paranoid statements, this is completely without evidence because it is patently false.

He also misrepresents that Fleming moved in the Delaware Bankruptcy Court in an attempt to silence him once it was clear that he planned to sue Fleming. Ex. AAA (July 10, 2003 e-mail from T. Hogan). In fact, quite the opposite is true:

6

Fleming requested an order <u>requiring</u> Berry to inform the Delaware Bankruptcy

Court of anything he intended to tell anyone about any alleged acts of wrongdoing,

and to get approval from that court before doing so, to allow the Delaware

Bankruptcy Court to preapprove the considerable time and money Fleming was

spending dealing with the initial wave of Berry's harassment.  Ex. BBB (Fleming's

August 1, 2003 motion).  He also misleads this Court about what he got from the

Delaware Bankruptcy court.  Opp'n at 6.  All he got was the right to liquidate his

prepetition claim and then present it to the Delaware Bankruptcy Court for

classification, almost certainly as an unsecured claim.  Ex. CCC (August 13, 2004

Order).

> **(D)     Compensation and Deterrence – The PCT Should Be
>          Rewarded for Defending the Fleming Estate and
>          Valid Copyright Policies.**

Berry is correct that the legitimate creditors of the Fleming estate have been

prejudiced by the enormous defense costs Berry forced the PCT to incur.  But no

authority allows a plaintiff to demand exorbitant sums, win a pittance, and then

point to the result as evidence that court should deny fees to prevailing defendants

to encourage plaintiffs' lawyers to bring low stakes cases.  In fact, when the

prevailing party is the defendant, who by definition receives not a small award but

no award, the presumption in favor of awarding fees is very strong.  *Diamond Star

Building Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994).

While the defendants always believed Berry's case was meritless, this was not a low stakes case: the stakes in this case exceeded $50 million because Berry sought that amount (and more). *See* Mem. P. & A. at 10. Yet the plaintiff brazenly argues that the PCT's defense costs have prejudiced *Mr. Berry*, as a creditor of Fleming. *See* Opp'n at 6. Forcing Berry to pay the PCT's fees would discourage this type of harassment and help to rectify the substantial prejudice to Fleming's legitimate creditors. *See* Mem. P. & A. at 18-19, *see also infra* § III(B).

**B.    The PCT Is Entitled to Recover for Fees and Costs for Defense of Related Claims.**

Berry argues that the PCT needed to separate the time spent on certain Counts, but because all Berry's claims were related to the "Freight Control System," and because the PCT prevailed in achieving substantially all the benefits it hoped to achieve in defending the suit, the PCT is entitled to recover all its costs. Berry's copyright and non-copyright claims were so closely related that it would be impossible to differentiate between the two. Therefore, the PCT is entitled to recover fees for the work it did defending against Berry's unsuccessful non-copyright claims. *See Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000).

Berry defined the "Freight Control System" as the "work of authorship" for all his claims against the PCT. *See* Ex. U at 25, 29 *(*Second Amended Verified Complaint ("SAVC")). The Ninth Circuit interprets Section 505 of the Copyright Act to allow prevailing defendants to recover fees incurred in defending non-

8

copyright claims that are related to the copyright allegations. *See The Traditional Cat Association, Inc. v. Gilbreath*, 340 F.3d at 833. Therefore, "the first step in the calculation of a reasonable attorney's fee in the present case should [be] to decide if the copyright and non-copyright claims are related." *Id.*

All of Berry's claims against the PCT in this action are related because the alleged infringement of the "Freight Control System" is the basis of each of the plaintiff's claims. Counts I - III (direct copyright infringement, contributory and vicarious copyright infringement, conspiracy to infringe) all focus on the alleged infringement of Freight Control System. Similarly, Count IV (Trade Secrets) focuses its claims in part on "efficiencies of Mr. Berry's Freight Control System" (SAVC at 99); and "automation that was provide [sic] by the Berry Freight Control System" (SAVC 100). Similarly, although not specifically directed against the PCT, Berry's other two counts are also related to the first four. All of the six claims in the lawsuit centered on the alleged misuse of "Freight Control System." Trying to parse out the time spent by any defense counsel on a Count by Count basis emphasizes form over substance.

**C.    The PCT is Also Entitled to Recover Attorney Fees Under Trade Secret Law.**

Berry agrees that fees are recoverable where a plaintiff has brought a trade secret claim in bad faith. *Compare* Opp'n at 20-21 *with* Mem. P. & A. at 14-15. Berry's trade secret claim is a glaring example of bad faith. *See Contract*

9

*Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 745 (D. Md. 2002) (finding bad faith under the Uniform Trade Secrets Act for failure to present any admissible evidence in support of claim). The court dismissed this claim for failure to identify a single trade secret, any programs, or to produce any evidence in support of this claim. *See* Ex. F at 31-33. In addition, his discovery responses meshed copyright and trade secret claims. Ex. DDD. Therefore, the PCT can recover its fees and costs under either theory.

## III. The Court Should Award the PCT the Full Amount of Its Requested Attorneys' Fees and Costs.

The PCT's counsel has submitted appropriate time records that support the work done. Berry did not complain about the rates or the need for the work in his opposition, perhaps because he knows he made the work necessary with his own tactics and because his own counsel may have seen consistent rates approved in major bankruptcies in which he has been counsel. The fees detailed by Kirkland & Ellis, LLP ("Kirkland") were both reasonable and necessary and the Court should award them in full.

### A. Kirkland's Fees are Reasonable and the Time Records are Appropriate.

As a threshold matter, Kirkland has not done any work for C&S despite Berry's contention to the contrary. *See* Opp'n at 19. Kirkland did not represent C&S, and told Berry this fact many times. *See, e.g.,* Ex. EEE (e-mail to T. Hogan

from D. Capozzola stating "As we have told you many times, K&E does not represent C&S.").

Kirkland instead represented exclusively the PCT, and Fleming prior to the July 26, 2004 confirmation of the reorganization plan that created the PCT. By pursuing Fleming in its post-petition environment, including his repeated appearances in Delaware attempting to leverage his Hawaii lawsuit into something that could derail the entire confirmation process of one of the largest bankruptcies in history, Berry elevated his dispute with Fleming to the national scale. It was therefore appropriate for Fleming and the PCT to have counsel with national presence, such as Kirkland. Kirkland's fees are reasonable compared to other national firms of similar size and reputation, thus winning approval from bankruptcy courts in different matters across the country.[2]

The PCT's apportionment is fair, reasonable and appropriate under the circumstances. The PCT carefully reviewed the supporting materials to assure that only work attributable to the defense of the PCT is covered by this Motion and the time spent by its counsel is appropriate and compensable under the law. *See* Ex. QQ (chart showing reductions to fees in exercise of billing judgment).

---

2  *See* Samad Decl. at ¶ 13; Ex. FFF at 5-13, 41-48; Ex. GGG at 7-13; *In the Matter of Union Financial Services Group*, 303 B.R. 390, 415 (Bankr. E.D. Mo. 2003).

> Where a district court must apportion fees, "the impossibility of
> making an exact apportionment does not relieve the district court of
> its duty to make some attempt to adjust the fee award in an effort to
> reflect an apportionment."

*The Traditional Cat Association, Inc. v. Gilbreath*, 340 F.3d 829, 834 (9th Cir.

2003) (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000)). Kirkland's

fees were properly documented in painstaking detail and the Court should reject

Berry's arguments to the contrary.

### B.    Berry Created Conditions that Required Extensive Defense Costs.

Kirkland's fees were large. But not one penny was excessive. Berry created

the conditions that required thousands of hours and millions of dollars in defense

that the PCT has detailed. A sampling of his actions demonstrates this.

- Early on, Berry threatened the PCT's forensic expert, New
  Technologies, Inc. ("NTI"), with a RICO suit when the PCT tried to
  investigate what (if anything) got transferred to C&S. Exs. L, M.
  Then Berry subsequently argued that Mark Dillon may have visited
  NTI's web site a year earlier, implying a conspiratorial connection.
  Ex. JJJ.

- Berry did not and would not voluntarily produce the software at the
  heart of his case and would not negotiate reasonably for a protective
  order. The PCT was forced to go to Special Master Matsui, who
  compelled the production of Berry's software. Ex. KKK; Ex. LLL.

12

- Berry badgered the PCT about a system-wide software overhaul called the F-1 Project that had nothing to do with Berry's software. Ex. MMM. He harped on a mythical 4.6 gigabyte cluster. When he didn't get what he wanted he declared that one of Guidance's employees who was working on the issues was "a fictional person." Exs. NNN, OOO.

- Even his grand finale – delaying trial a month to investigate what he described in open court as the "motherlode" of damages information on recently obtained Guidance materials – was just grandstanding. Berry never supplemented his damages analysis so much as a dollar. Samad Decl. at ¶ 4.

The list could go on indefinitely.[3] *See also* Mem. P. & A. 7-10.

Moreover, Berry did all this notwithstanding repeated warnings. In June 2004, the Court stated, "Berry has submitted broad, burdensome, and sometimes irrelevant discovery requests." *See* Ex. 10 to Opp'n at p.4, fn 5. And in August 2005, the Discovery Master sanctioned Berry $1,200 for his actions in connection with the F-1 Project. Ex. PPP (August 29, 2005 Order) (Berry's discovery "resulted in a waste of time and effort"). Judge Mollway affirmed, accepting

---

3  Plaintiff has even threatened to sue Fleming's banks, despite clear law against duplicative recovery and a verdict limiting him to $57,534 for innocent infringement. *See* Samad Decl. at ¶ 5.

Kirkland's rates and time spent, stating, "Berry does not even make a plausible argument as to how the anticipated content of those materials will somehow relate to the time period in issue here." Ex. III at 8 (October 21, 2005 Order). But Berry refused to learn, compelling this Court to upgrade to a larger rod lest the child make good on his repeated threats to litigate frivolous claims and issues "until cert. denied." Exs. QQQ, RRR.

This Court must also consider the parties' settlement history. Berry's $400,000 settlement offer contained unreasonable conditions that operated to prevent employees from working. Opp'n Ex. 2; *see also* Opp'n Ex. 5 (Dillon and Noa's "continued relationship to C&S/Fleming will be a serious stumbling block."). In July 2004, when the defendants counter-proposed to settle for $400,000 without the unacceptable terms, Berry rejected this offer and instead tried to hijack the confirmation hearing. Then after the Delaware Bankruptcy court estimated his claim at $100,000, Berry <u>raised</u> his settlement demand to $2.5 million. Ex. TTT. And even after summary judgment rulings that "killed a lot of our case," Berry again <u>raised</u> his settlement demand to $4 million. *See* Exs. GG, UUU. These counterintuitive behaviors brightly illustrate that Berry's settlement negotiations have never been grounded in reality. Instead, they have always been just another mechanism for harassing the PCT "until cert. denied."

/ / /

14

Berry cites *Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir. 2002) to suggest that settlement history, absent a Rule 68 offer, has no bearing on the court's award to a prevailing party. Opp'n at 23-25. Not so. Berry's citation omits the *Berkla* court's earlier elaborate explanation of its rationale for denying plaintiff his fees on circumstances almost directly on point with ours:

> [W]e conclude that the district court did not abuse its discretion in denying Berkla's attorney's fees. Berkla recovered only $23,502 in compensatory damages for breach of the NDA, although he sought more than $1.2 million. Although Berkla suggests that he obtained an "unqualified" win on his contract claim, it is clear from Hsu that **a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives**. In this case, these demands and objectives clearly involved a substantial financial payoff for Berkla. The jury, however, completely rejected Berkla's contractual damages theory, instead awarding damages consistent with the estimates offered by Corel's expert. Given the equitable considerations that animate prevailing party status under §1717 and the deference owed to the district court, we conclude that the district court did not abuse its discretion in denying Berkla's attorney's fees request.

*Berkla*, 302 F.3d at 920 (emphasis added). Ultimately the *Berkla* court endorsed the applicability of *Florentine* where, as here, plaintiff unjustifiably pressed on in the face of adversity. *Berkla*, 302 F.3d at 924 n.15.

The better view is that a party's continual rejection of settlement offers can justify awarding fees against that party. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 626 (6th Cir. 2004) (affirming reasoning below that *Fogerty* "factors need not all weigh in favor of an award in order to grant fees

15

to a prevailing party and other factors may be considered"). In *Bridgeport*, the district court's fees analysis noted "the plaintiffs' overly aggressive, take-no-prisoners litigation tactics, and the overall impression that plaintiffs' strategy was to exact the highest possible toll in order to maximize the settlement value of the cases." *Id.* at 627. The key factor for the district court was "the plaintiff's decision not to settle or otherwise compromise its claim after the Court ruled in this case against its theory of infringement by receipt of royalties, which by September 2002 was its only remaining viable theory against this defendant." *Id.*

The Sixth Circuit affirmed much of the ruling, but remanded the case to the district court to explicitly apply the *Fogerty* factors. *Id.* at 628 (noting that the district court contradicted itself by stating that the plaintiff was unreasonable under the attorneys' fee analysis after it made an explicit finding that the plaintiff's claim was reasonable, and that the defendant in the case never made a settlement offer to the plaintiff). The Circuit Court implicitly ratified the District Court's rationale and inclusion of the plaintiff's aggressive tactics, though it required an explicit, non-contradictory prevailing party analysis under *Fogerty*. If the defendant actually made a settlement offer the Sixth Circuit would clearly have approved the District Court's reliance on settlement negotiations.

Another illustrative case – in which a defendant was awarded fees where the plaintiff received only a marginally favorable result – is one Berry himself has

16

cited throughout this litigation as "the Posner case:" *Assessment Technologies of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 435 (7th Cir. 2004).  Although the outcome for plaintiff there was mildly beneficial, the *Wiredata* court granted the defendant's fees, reasoning that the plaintiff was "transparently seeking to annex a portion of the intellectual public domain" in data that is neither copyrightable nor copyrighted and that it did not obtain or collect. *Assessment Technologies of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).  Furthermore, it reasoned, because a defendant can obtain no affirmative relief from its victory it must have the prospect of obtaining attorneys' fees or otherwise be pressured to throw in the towel if the cost of settlement is less than the anticipated attorneys' fees. *Id.*  Finally, "for a copyright owner to use an infringement suit to obtain property protection, here in data, that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent" could be a form of copyright misuse. *Id.*

Like the plaintiff in *Wiredata* Berry claims things that are not his, and like the plaintiff in *Bridgeport* Berry has been undeterred by every adverse ruling and all of his prior losses.  He tried to block the entire reorganization and got laughed out of bankruptcy court.  Mem. P. & A. 5-7.  He pursued his relentless crusade against Fleming in this Court, moving for reconsideration repeatedly and losing every time.  Including all the Berry v. Fleming suits, Berry has sought six

injunctions and lost all six. *See* Ex. SSS.  And he rejected the PCT's 2004

$400,000 settlement offer, dragged twenty defendants through two years of

litigation to claim over $50 million at trial, and recovered only $57,534.  Like the

defendant in *Wiredata*, the PCT prevailed against a plaintiff that obtained only a

marginal judgment.  The PCT's successful defense and vindication of copyright

law merits a full award of attorneys' fees and costs.  The time has come for the

Court to make Berry pay for the damage he has caused the Fleming estate and to

deter him from continuing his litigious ways.

## IV.    Conclusion

This Court has the power and discretion to award the PCT its attorneys' fees

and costs.  The PCT is the prevailing party under *Florentine*, and under the

*Fogerty* factors it is entitled to its fees and costs for its entire defense.

/ / /

/ / /

/ / /

18

The Court should grant the PCT's motion so the legitimate creditors of the Fleming estate will not continue to be victimized by defense costs imposed by Berry's irrational vendetta.

DATED: Honolulu, Hawaii, May 4, 2006.

/s/ Thomas H. Yee
_____

KOBAYASHI, SUGITA & GODA
Lex R. Smith (659-0)
Thomas H. Yee (7344-0)
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:   (808) 539-8700
Facsimile:   (808) 539-8799

        and

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500
Co-Counsel for the Post Confirmation Trust for
Fleming Companies, Inc.