# EXHIBIT KKK

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

213 680-8400

www.kirkland.com

Eric C. Liebeler
To Call Writer Directly:
213 680-8484
eliebeler@kirkland.com

Facsimile:
213 680-8500
Dir. Fax: 213 680-8500

February 4, 2005

**VIA FEDERAL EXPRESS**

Clyde Wm. Matsui, Esq.
Matsui Chung
Attorneys at Law
Suite 1400 Mauka Tower
Pacific Guardian Center
737 Bishop Street
Honolulu, Hawaii 96813

Re:   *Wayne Berry v. Hawaiian Express Service, et al.*, Civil No. CV03-00385 SOM-LEK (D. Haw.)

Dear Mr. Matsui:

The Post-Confirmation Trust for Fleming Companies, Inc. propounded two requests for documents on Wayne Berry in late November 2004. The PCT asked for (1) an electronic copy of Mr. Berry's 1993 Freight Control System, and (2) an electronic copy of the 2003 Freight Control System Berry identified in his July 1, 2004 deposition.[1] At the January 7, 2005 discovery conference, Mr. Hogan agreed to produce the 1993 FCS pursuant to a protective order. Despite several attempts since then, the parties cannot agree on the terms of such an order. At the conference, Mr. Hogan refused to produce the 2003 FCS at all. We submit this letter brief to address both disputes.

### 1. Introduction

Wayne Berry is seeking hundreds of millions of dollars from and a permanent injunction against the PCT. At the same time, he flatly refuses to produce his 2003 FCS and insists on extraordinarily aggressive and unusual terms in a negotiated protective order. He should be ordered to produce the 2003 FCS under a standard protective order, a copy of which is attached as Exhibit 2 to this letter.

---

[1]   A copy of these discovery requests and Mr. Berry's responses are attached as Exhibit 1.

Chicago   London   Munich   New York   San Francisco   Washington, D.C.

K&E 10162385.

KIRKLAND & ELLIS LLP

Clyde Wm. Matsui, Esq.
February 4, 2005
Page 2

### 2.  The 2003 FCS Is Relevant to the PCT's Defense Against Mr. Berry's Claims.

Mr. Berry is seeking hundreds of millions of dollars from the PCT and a permanent injunction based on Fleming's alleged infringement of Berry's 1993 FCS. But Mr. Berry has admitted that the software he is now marketing -- the 2003 FCS -- is "radically different" and "much improved" from the version Berry licensed to Fleming. (Ex. 3 (Berry Dep.) at 28:23-29:18.) If the 2003 FCS is indeed "radically different" and "much improved," then there is not much, if any, market for the 1993 FCS. Without a market, no injunction is warranted, see *Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 359 (S.D.N.Y. 1992) (plaintiff not entitled to injunction where defendant established that plaintiff's product was outdated and no longer marketed), and any damages award should be *de minimis*, *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985) (stating that courts traditionally use a market value method to determine actual damages for copyright infringement).

Berry cannot contest the relevancy of the 2003 FCS after stating affirmatively that it is radically different and much improved from the 1993 version. The PCT should now be entitled to examine the 2003 FCS to assess how different and improved this new version is. Without the ability to examine the new version of the software, the PCT will be forced to rely solely on the plaintiff's inevitably self-serving description of the software as "evidence" of how the new version differs from the 1993 version Mr. Berry licensed to Fleming. Such a result is antithetical to the PCT's ability to mount a vigorous defense to Mr. Berry's claims.

### 3.  Berry Cannot Hide Behind 17 U.S.C. § 201(e)

We expect Mr. Berry to claim that the Court cannot require him to produce the 2003 software because his work is not subject to seizure under 17 U.S.C. § 201(e). Nonsense. Subsection 201(e) states that "[w]hen an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title . . . ." 17 U.S.C. § 201(e). The PCT is not asking for the Master or the Court to "seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright." Rather, the PCT is asking the Master to compel Mr. Berry to produce the 2003 software for purposes of this litigation. This subsection is thus not relevant to the instant dispute. Caselaw confirms this. *See In re Peregrine Entm't, Ltd. (Nat'l Peregrine, Inc. v. Capitol Fed. Sav. & Loan Ass'n)*, 116 B.R. 194, 206 n.16 (C.D. Cal. 1990) (stating that § 201(e) "has ***no application*** to governmental actions taken in the sphere of private law where the government is enforcing private rights and ***is not the ultimate beneficiary***") (emphasis added). Counsel for the PCT was unable to find even a single case that suggests in any way that § 201(e) somehow applies to discovery.

K&E 10162385.

**KIRKLAND & ELLIS LLP**

Clyde Wm. Matsui, Esq.
February 4, 2005
Page 3

Congress simply did not have in mind the situation we now face when it enacted § 201(e). Rather, this provision was enacted to "protect foreign authors against laws and decrees purporting to divest them of their rights under the United States copyright statute, and would protect authors within the foreign country who choose to resist such covert pressures." H.R. Rep. No. 94-1476, at 124 (1976), *reprinted in* 1990 U.S.C.C.A.N. 5659, 5739. This rationale is wholly absent from the current dispute.

Moreover, by virtue of the fact that Berry filed the instant lawsuit for copyright infringement, he should not now be allowed to refuse to produce the very software that may offer a defense to the claims he is asserting. Such a result would be highly inequitable.

### 4. Any Concerns About the Software's Confidentiality Can Be Addressed by a Protective Order.

Mr. Berry's counsel has time and again accused the PCT and its counsel of scheming to obtain discovery regarding Mr. Berry's software in order to facilitate ongoing infringement of Mr. Berry's original works by C&S. Mr. Berry's accusations are nothing more than that -- accusations, hollow of any substance and unsubstantiated by any evidence.

Counsel for the PCT has drafted a protective order for Mr. Berry's consideration. The terms of the protective order would allow Mr. Berry to designate particularly sensitive material as "Highly Confidential - Attorneys' Eyes Only." *See* Ex. 2 §§ 5, 7. Such designation should resolve any concern Mr. Berry might have regarding the preservation of his trade secrets and the software's alleged competitive value. Continuing with his theory that the PCT's counsel is an accomplice in this alleged ongoing grand infringement scheme, however, Mr. Berry has refused to consider the PCT's proposed protective order and instead insisted on an order that includes numerous overreaching and aggressive terms. (Ex. 4 (email from T. Hogan).) As we explain in Section 4 below, such an order would be cumbersome, unworkable, and just plain unnecessary.

There is no reason to think that a protective order cannot safeguard Mr. Berry's rights. Protective orders are put in place routinely to protect critical trade secrets. *Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995) (stating that blanket protective orders, such as that proposed by the PCT, "are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors"). Here, the PCT is not an operating company that has any use for freight logistics software, and it is at no risk of infringing Mr. Berry's copyrights or using his claimed trade secrets for competitive advantage. Nor does the PCT have any interest in or reason to facilitate infringement on behalf of any other entity or person. The PCT is merely seeking to defend itself from an astronomical damages claim that, the PCT believes, is premised on outrageous allegations. A protective order will provide Mr. Berry the protection he seeks while also allowing the PCT to access materials critical to its defense.

KIRKLAND & ELLIS LLP

Clyde Wm. Matsui, Esq.
February 4, 2005
Page 4

### 5. The Suggested Terms of a Protective Order Are Reasonable and Appropriate.

Immediately after January 7, counsel for the PCT contacted Mr. Hogan to negotiate the terms of a protective order. (Ex. 5 (email from M. Dulac).) Counsel for the PCT requested an initial draft order from Mr. Hogan as a starting point for negotiations. Not once during this exchange of communication did Mr. Hogan ever retract his agreement to produce the 1993 FCS pursuant to a protective order; however, Mr. Hogan ignored the PCT's repeated requests to send an initial draft order and attempted to impose inappropriate conditions on the production of the software. (Ex. 4 (email from T. Hogan).) Specifically, Mr. Hogan:

> ➢ insisted that Fleming agree to terminate any license rights in the 1993 FCS it may have or have had as a condition of discovery, thereby improperly demanding that the PCT take a *substantive litigation position* in order to receive discovery;
>
> ➢ required that Mr. Robert Kors, the PCT's representative, be *personally liable* if anyone violates the protective order, despite the fact that Mr. Kors is not and has never been a defendant in this action; and
>
> ➢ demanded that the software be designated as "experts' eyes only." (Exs. 4, 6 (emails from T. Hogan).)

Mr. Hogan also injected into the negotiations a demand to know the substantive position of Fleming Foods, Inc., *the former name under which Fleming Companies, Inc. conducted business in Florida before it ceased operating*, regarding the 1999 license -- even going so far as to suggest a Rule 30(b)(6) deposition of this non-entity. (Exs. 4, 6.) Although counsel for the PCT has informed Mr. Hogan that Fleming Foods, Inc. is not a separate legal entity and Fleming Companies, Inc. no longer operates any business in Florida under this (or any other) name, Mr. Hogan continues to claim that Fleming Foods, Inc. is somehow relevant to this dispute. The PCT rejected Mr. Hogan's conditions and drafted the initial confidentiality order itself. (Ex. 7 (email from M. Dulac).)

The terms of the PCT's proposed order are standard, reasonable, and fair. Yet, as mentioned above, counsel for Mr. Berry insists on imposing absurd and unnecessary conditions. (Exs. 4, 6.) The PCT circulated the draft order to all defense counsel but believes that Mr. Hogan's protestations are designed only to harass the PCT and delay the ultimate production of the software. With only six months remaining before the discovery cut-off, it is imperative that the PCT obtain a copy of the 1993 and 2003 versions of the software as soon as possible in order to analyze them and tailor subsequent discovery requests accordingly. The PCT further believes that if Mr. Hogan were to respond with any additional substantive comments or counterpoints to

K&E 10162385.

**KIRKLAND & ELLIS LLP**

Clyde Wm. Matsui, Esq.
February 4, 2005
Page 5


the initial draft order, Mr. Hogan's terms would be so far afield as to be unreasonable. The PCT therefore requests your assistance in crafting a suitable protective order.

*   *   *

    For the above reasons, the PCT respectfully requests that Your Honor require Mr. Berry to produce the 2003 FCS as described by him in his July 1, 2001 deposition and further requests that Your Honor craft a reasonable and appropriate protective order to govern production of the 1993 FCS and all remaining discovery in this case. Thank you for your attention to this matter.

Very truly yours,

*Eric C. Liebeler* /MMD

Eric C. Liebeler

ECL

cc (by email):  Timothy J. Hogan (also by mail)
                Lex Smith
                Peter Kashiwa
                Edmund K. Saffery
                Wesley Ching
                Roy T. Tijoe
                Emily Reber Porter
                Karen L.S. Fine
                Andrew Beaman
                Leroy E. Colombe
                Lyle Hosoda
                Sheldon Toll