LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| HAWAIIAN EXPRESS SERVICE, | ) | **AMENDMENT TO MOTION  FOR** |
| INC., a California corporation; et al. | ) | **NEW TRIAL FILED ON 3/21/06 OR** |
| | ) | **IN THE ALTERNATIVE MOTION** |
| Defendants. | ) | **FOR  RECONSIDERATION AND** |
| | ) | **RULE 60(b) RELIEF** |
| _____ | ) | |

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    GENERAL FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    Fleming Was A Willful Infringer in March 2003. . . . . . . . . . . . . . 1

      B.    Christensen Admits He Testified Falsely at Trial.  . . . . . . . . . . . . 3

      C.    The Filing of the Fee Motion Set off the Search of the Record.   . 4

      D.    The Proof is Well Beyond Clear And Convincing . . . . . . . . . . . . 12

      E.    Fleming and C&S' Counsel Knew that Christensen's Testimony
            was False Testimony and Did Nothing to Corrected the Damage
            Done. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    Christensen  Falsely Testified in his Deposition and at Trial.  . . 15

      B.    Christensen Continued the Lie at Trial Where More Damage was
            Done. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    The Fraud Is Clear and Proven by Evidence That Is Not Even
            Disputed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      D.    A New Trial Must Be Granted for Perjured Testimony.   . . . . . 18

      E.    The Court of Appeals Holds that the Relief Sought Under These
            Facts Is Timely Presented.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      F.    Rule 60(b) Applies in Cases of  Extrinsic Fraud. . . . . . . . . . . . . 20

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

*Pogue v. International Industries, Inc.*, 524 F.2d 342 (6th Cir. 1975) . . . . . . . 20

*Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670 (9th Cir. 1985) . . . 20

*Stamps v. United States*, 406 F.2d 925(9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . 19

*State v. De Guzman*, 68 Haw. 14 (Haw. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATUTES

18 U.S.C. § 2319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

17 U.S.C. § 506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §§ 1961(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## RULES

Fed. R. Civ. P 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20

Hawaii Disciplinary Rule 3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Comment 6 to DR 3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20

**MEMORANDUM IN SUPPORT OF PLAINTIFF WAYNE BERRY'S
AMENDMENT TO MOTION FOR NEW TRIAL FILED ON 3/21/06, OR IN
THE ALTERNATIVE, MOTION FOR RECONSIDERATION AND
RULE 60(b) RELIEF**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned

counsel and hereby respectfully submits his Memorandum in Support of Plaintiff

Wayne Berry's Motion for Fed. R. Civ. P. 59 or in the alternative, reconsideration

under LR. 60.1 and/or Fed. R. Civ. P 60(b) Relief ("Motion").

**I.    GENERAL FACTUAL BACKGROUND.**

The Court is familiar with the facts in this case but the facts will be restated

briefly to make the record clear with regard to these matters.

**A.    Fleming Was A Willful Infringer in March 2003.**

On March 6, 2003, a jury of the United States District Court for the District

of Hawaii, entered a finding of willful infringement against Fleming Companies,

Inc. ("Fleming"), for its unauthorized, unlawful modification of the Berry freight

control system, FCS Logistics Data.mdb ("FCS"). The Court is requested to take

judicial notice of the record of the case *Wayne Berry v. Fleming Companies, Inc.*,

Civ. No. 01-00446 SPK-LEK (U.S.D.C. Hawaii) and in particular the finding of

willful infringement. A true and correct copy of the jury verdict finding willful

infringement is attached to the Declaration of Timothy J. Hogan (the "Hogan

Dec.") as Exhibit "1."

Willful infringement for financial gain is a RICO predicate offense. *See* 18 U.S.C. §§ 1961(1)(B) and 18 U.S.C. § 2319 (relating to criminal infringement of a copyright under 17 U.S.C. § 506(a)).

Rather than cease operating with the Berry system immediately upon the finding of willful infringement, on March 6, 2003, Fleming continued for a period of more than three weeks knowingly operating with the infringing Berry system. Based on the proof at trial that evidenced that in 70 days over $50 million in commerce was handled by the Berry FCS, the Court must conclude that, for the 25 days of March no less than $15 million in commerce was handled by the Berry FCS during the period of continued willful infringement.   The amount commerce that the full year of infringement that Christensen now admits he oversaw, is staggering.

Then, on or about April 1, 2003, Fleming claimed to have created a new non-infringing version of Mr. Berry's software and then simultaneously filed a voluntary Chapter 11 bankruptcy petition, staying the Berry infringement proceeding and preventing Mr. Berry from obtaining an injunction.

The Court has found that Fleming continued, from that date to June 9, 2003, using a copy of what Fleming claimed was the original Berry FCS.   The Court has already ruled that the software that Mr. Dillon made, entitled "Original Logistics

2

Data.mdb," the software that was allegedly used by Fleming and its employees after April 1, 2003, was, as a matter of law, another infringing derivative copy of Mr. Berry's software.

### B.    Christensen Admits He Testified Falsely at Trial.

Despite the fact that the all but one employee defendant had been ruled an infringer, on March 23, 2006, the former Fleming employees filed a Motion for Attorneys Fees and Full Costs seeking 100% of the fees and costs incurred in the PCT's defense of the employees, based on primarily the fact that Brian Christensen was vindicated as a non-infringer.  Christensen had claimed that Mr. Berry was not the FCS copyright owner and that it was not copyrightable but he like the other defendants failed on these affirmative defenses.  The filing of the fee motion opened up Mr. Christensen's conduct to one last look.

Now that the official transcripts are available, Mr. Berry offers Mr. Christensen's March 2, 2006, trial testimony regarding his role in the adjudicated willful infringement as follows:

6    Question by Mr. Hogan:  But I'm talking about - actually, I would like to go

7    back to March 7th, the day after the jury verdict:

8    Why not just walk into the logistics department, as

9    the boss, and say, turn it off. We don't need this, because

3

10      it's your knowledge and hard work that we make our money with,

11      not this software that's been nothing but trouble.

12      Why not just shut it off?

13      A.      <u>Well, for one thing, I wasn't the president at that time.</u>

14      <u>I became the president after that, the ending of March. When</u>

15      <u>I got on board, it already -- we were already using it.</u>

Transcript of Proceeding Before the Honorable Susan Oki Mollway dated March 2,

2006, at page 98 lines to 15. Hogan Dec. Exhibit "2" (emphasis added).


        The effect on the jury of Mr. Christens's now admitted false testimony is

obvious and would have left the jurors with the impression that Mr. Christensen

and his employer were doing nothing wrong when the jury began deliberations.

Moreover, by not testifying truthfully, Mr. Christensen had the credibility of the

blameless person seeking to right the ship after years of wrongdoing, when the

truth would have shown him to be a willful infringer.

        **C.      <u>The Filing of the Fee Motion Set off the Search of the Record</u>.**

        After trial and after the filing of the various attorneys fees motions, Mr.

Berry began to prepare to meet the employee fee motion and conducted a review of

the rough drafts of the Trial Transcripts regarding  Mr. Christensen's testimony.

The official transcripts were filed on April 28, 2006 and made available to counsel

4

the following week.

The transcript of the March 2, 2006 testimony confirmed what the rough draft had indicated that, at trial, Christensen  testified to have been made the Hawaii Division President in March 2003.  After an extensive review of documents the Kobayashi Sugita & Goda time records submitted in March 2003 to compare the reasonableness of those fees and the fees sought presently, Mr. Berry discovered that, by July 7, 2002, Lex Smith had begun to submit his time records to Christensen and not to Ralph Stussi.   *See* Hogan Dec. ¶ 5 and Exhibit "3" showing submission to Stussi and Hogan Dec.  Exhibit "4"  submitting the invoice to Christensen starting at least by July 7, 2002.  This finding  prompted a search of emails that were contained on the drive copies produced on January 26, 2006 for some evidence in Fleming's records to prove the date that Christensen became the division president. After an extensive search counsel discovered an email in a deleted directory that evidences the announcement of Mr. Christensen as the Fleming division president in March 21, 2002.   Hogan Dec. ¶ and Exhibit "5." Believing that this evidenced that Mr. Christensen had not been truthful in his trial testimony and therefore lacking standing to seek an award of fees, Mr. Berry raised Christensen's false trial testimony in the Opposition to the Employee Fee motion filed on April 20, 2006,  Docket No. 942, at pages 4 and 5.  Hogan Dec. Exhibit

"6."

Then, in response, in the Reply, Christensen admitted he had not testified truthfully.  Hogan Dec. Exhibit "7."   Seeking to minimize the damage done by this false testimony, Mr. Christensen in his Reply admitted the trial testimony was not truthful, but in a bizarre display put forward instances where Christensen wasn't lying to prove his entitlement to fees.  The claim to have simply misstated the date he became Division President at trial is simply unbelievable based on the questioning at trial that dealt with what he did in reaction to the March 6, 2003 jury verdict.

Until it was admitted in the Reply, there was no admissible evidence other than Mr. Christensen's deposition testimony taken in December 2004 evidencing the date the Christensen became the Hawaii Division President.  Once the email surfaced and the Reply admitted the trial testimony was false, Mr. Berry moved timely.   As set forth in the Reply, it has now been admitted false. What Mr. Christensen neglected to remember is that, contrary to the Reply that calls it a misstatement, the false trial testimony was not the first time Christensen falsely testified under oath about the date he became the Hawaii Division President.  Had the trial been the only time he made the false claim under oath in this proceeding Christensen and his employers might be able to claim that Mr. Berry cannot carry

6

his burden to prove fraud with clear and convincing evidence because it could pass the giggle test as a misstatement. But, the simple fact is, that this was not a misstatement but another act of false testimony that started during his deposition taken in December 2004 where he made what can only be termed as a false statement under oath as follows:

Page 16

    24   Q.   What is your job presently at C&S?

    25   A.   I'm the division president.

Page 17

    1   Q.   How long have you held that position?

    2   A.   <u>Since March of 2003.</u>

    3   Q.   Now, March 2003 was the period during the

    4  original jury trial. Do you recall that?

    5   A.   That's my understanding, yes.

    6   Q.   Is it fair to say that you were the

    7  replacement for Ralph Stussi?

    8   A.   Yes.

            . . .

Page 20

9    Q.    So March 1st, 2003, is it your

10  understanding that there was an Access database

11  operating at Fleming logistics?

12        MR. SMITH:  Calls for speculation.

13  BY MR. HOGAN:

14    Q.    You can answer the question, if you can.

15    A.    That's my understanding.

16    Q.    What do you base that understanding on?

17    A.    From what little I know about the database

18  itself, I've heard that term used.

19    Q.    Had you heard it on or about March 1st,

20  2003?

21    A.    Yes.

22    Q.    Were you supervising employees at that

23  time at Fleming that were working in the freight or

24  the Fleming logistics department?

25    A.    No.

Page 21

1    Q.    Who was supervising them?

8

2    A.    <u>Ralph Stussi</u>.

3    Q.    <u>When did Ralph Stussi stop working for</u>

4    <u>Fleming Hawaii</u>?

5    A.    <u>Right about that time actually</u>.

6    Q.    So do you recall the precise date?

7    A.    No, I don't.

8    Q.    Was it prior to April 1st, 2003?

9    A.    Yes.

10    Q.    <u>So sometime after April 1st, 2003 or after</u>

11    <u>March 1st, 2003 but before April 1st, 2003, you</u>

12    <u>became the supervisor of the people at the Fleming</u>

13    <u>freight logistics department</u>?

14    A.    <u>Correct</u>.

15    Q.    <u>But you don't know the exact date</u>?

16    A.    <u>I became the president on the 23rd, I</u>

17    <u>believe, of March</u>.

18    Q.    <u>At that time it is your understanding that</u>

19    <u>you would be their supervisor</u>?

20    A.    <u>Correct</u>.

9

Transcript of the Deposition of Brian Christensen taken in this proceeding on

December 6, 2004 at page 16 line 24 to page 21 line 20, Hogan Dec. Exhibit "8."

(emphasis added).

At the time the Court ruled on summary judgment in January 2004, Mr.

Berry put forward proof regarding Christensen's knowledge of the infringement

but the Court found it insufficient to avoid summary Judgment.  *See* excerpt of

January 27, 2004 Order.  Hogan Dec. Exhibit "9."

The proof that the misstatement was material is contained in Defendants

Mark Dillon, Brian Christensen, and Teresa Noa's Reply Memorandum in Support

of Their Motion for Summary Judgment Filed on December 29, 2004 as Docket

No. 396 (The "MSJ Reply").  *See* Hogan Dec. Exhibit "10."[1]  The MSJ Reply,  the

'last word' in regard to the Christensen motion for summary judgment, [2] cites the

earlier false deposition testimony and in the body and falsely asserts, based on that

false testimony, that: "He did not even become President until March, 2003.   So

_____

[1]      Hogan Dec. Exhibit "10" also contains Affidavit of Lyle Hosoda, Esq. Exhibit "A" that is the portion of the Christensen deposition transcript where the false statement regarding the date Christensen became the Fleming division president was made.  *Compare* hogan dec. Exhibit "8."

[2] Also worth noting is the claim in the MSJ Reply that Noa was not guilty of making changes to database.  *Compare* Hogan Dec. Exhibit "10" at page 14 to Trial Transcript dated March 2, 2006, Hogan Dec. Exhibit "2" at pages 147 line 21 to 148 line 1.

Plaintiff is just wrong with respect to Mr. Christensen."  Hogan Dec. Exhibit "10" at page 14.  To paraphrase, in light of the admitted false testimony, Mr. Berry was, "right" as to Mr. Christensen.[3]

Now that Counsel has admitted that Christensen was not testifying truthfully both at trial and in his deposition that was the basis for the grant of summary judgment,  Counsel[4] is under an affirmative duty to mitigate the harm done or be personally subject to disciplinary sanctions.  *See* Hawaii DR 3.3 Comment 6.

In granting summary judgment the Court noted that Mr. Berry had not moved to amend to seek to impose liability earlier than March 7, 2003. Mr. Berry did not return to seek a third amended complaint  because, as to Fleming and its principal responsible actor in Hawaii, the sworn evidence was that Christensen had nothing to do with the infringement after the March 6, 2003 verdict. Christensen had successfully (though falsely) testified that Ralph Stussi was on duty during the period prior to and immediately after  March 7, 2003.  By falsely testifying about

---

[3]  Mr. Berry notes that, contrary to the MSJ Reply, there is no evidence in the record to support any claim that Mr. Christensen was not paid extra to develop the illegal software.  Both Christensen's affidavit and the Court' Order only address additional compensation from C&S.  Fleming was conspicuously omitted.

[4] This would apply equally to Mr. Smith as to Mr. Hosoda.  Although Mr. Hosoda was representing Christensen personally, Mr. Smith, as the attorney for both his past and present employer was representing this responsible division president and could have directed him not to answer questions if they were directed to attorney client privileges held by Fleming and/or C&S. Clearly the same obligation to correct the false testimony

the date he became the responsible person at Fleming, Christensen avoided the

liability for willful contributory infringement after the March 6, 2003 jury verdict,

but more importantly, for all the willful infringement during the period after he

became Hawaii Division President on March 21, 2002 to the alleged cessation of

willful infringement on April 1, 2003.

His calculated fraud raises serious issues.  Christensen's  ability to look the

jurors (and the Court) in the eyes and state that he could not have shut the system

down after the verdict because he wasn't in charge (a false statement)  proves that

C&S Hawaii Division President is a person capable of infringing or at least making

false statements about it again.  Mr. Berry was denied the chance to have the jury

determine Christensen and his principals' true liability solely because he was

willing to commit perjury.  The denial of injunctive relief has been consistently

predicated on the claim that the actors in this case are all innocent.  That is clearly

not the case with the person now running C&S in Hawaii.

### D. **The Proof is Well Beyond Clear And Convincing**.

Mr. Berry has met any applicable standard of proof because the Reply at

page 5 Mr. Christensen freely admits that he falsely testified at trial that he became

the Fleming Hawaii Division President in March 2003.  The false testimony placed

Mr. Christensen in the responsible role of boss of the Hawaii Fleming Division

during periods when only the "inadvertent" infringement was occurring. The effect of this false testimony is obvious. He was able to show himself as the blameless manager of a company going through financial problems, thus garnering sympathy from the jury rather than the person responsible for over a year of willful infringement. The jury verdict that Fleming claims was its great victory would have been different as to damages had Christensen testified truthfully that, not only was he the boss while the willful infringement was going on for one full year, but that he lied in his deposition to cover it up. That would have necessarily put him and his employers in a different light, but that is the only truthful thing he could have said at trial.

In addition, prior to trial, Brian Christensen himself escaped any liability by committing perjury. His false testimony related to his control of the willfully infringing use of the Berry FCS prior to April 1, 2003 resulted in summary judgment against Mr. Berry. It is now admitted that it was Christensen not Ralph Stussi running the Hawaii Division from and after March 21, 2002. Falsely testifying regarding his role in the willfully infringing use and falsely testifying he was not the boss ordering the willfully infringing use, Mr. Christensen was able to escape liability contributory and vicarious infringement for infringements done in the period after March 21, 2002 and prior to April 1, 2003.

13

### E.     Fleming and C&S' Counsel Knew that Christensen's Testimony was False Testimony and Did Nothing to Corrected the Damage Done.

As set forth in the Hogan Dec., Lex Smith, who represented Fleming in the first case and Fleming and C&S in this case, was sending his bills to Fleming's Division President Ralph Stussi in spring of 2002.  Hogan Dec. Exhibits "3". Consistent with proof that Counsel was aware that Brian Christensen was the division president in the spring of 2002 and was testifying falsely, is the copy of the Kobayashi Sugita & Goda time records showing that Counsel began to send his bills to the new division president, Brian Christensen, by July7, 2002.  Hogan Dec. Exhibit "4."  When Mr. Christensen, in his deposition, Hogan Dec. Exhibit "8," falsely testified that he had not become the division president until March 2003, counsel sitting at the table had to know it was false but sat silent except for the objections made evidencing more than a passive role in the fraud.  Counsel was under an absolute affirmative duty to correct the false testimony.  *See* Hawaii Disciplinary Rule 3.3 and comments 4 to 6.  Comment 6 to DR 3.3 states, in part, that: "the rule generally recognized is that, if necessary to rectify the situation, an advocate must the disclose the existence of the client's deception to the court or to the other party."  It will be impossible for Counsel to deny that he had forgotten who his client's representative was and who he was directing his bills to as the

14

client for over a year prior to the deposition.

## II.    ARGUMENT.

### A.    Christensen  Falsely Testified in both his Deposition and at Trial.

On December 6, 2004, prior to rulings on Summary Judgment, in his deposition, Christensen was questioned about his job history at Fleming.  He testified that he became the Hawaii Division President in March 2003.  Transcript of the Deposition of Brian Christensen taken in this proceeding on  December 6, 2004 at page 16 line 24 to page 21 line 20, Hogan Dec. Exhibit "8." (emphasis added).   That testimony was false as proven by the admission in the Reply that proves this fact well beyond the clear and convincing standard.  *See* Hogan Dec. Exhibits "6" and "7."

At the time of the Christensen deposition, he had a pending motion for summary judgment.  Mr. Berry put forward an opposition but did not have the benefit of the truthful testimony regarding Christensen's role in the willful infringement because Mr. Christensen was lying in his deposition about the date he started as the Hawaii Division president.  Far from a misstatement, this was necessary to the Fleming strategy to avoid another finding of willful infringement by putting forward a false case that the new management was not to be held responsible for any of the prior acts.  To work though, Christensen had to lie in his

15

deposition and the Reply proves that is exactly what he did.

The effect of the lie was to prevent Mr. Berry from proving, through the benefit of a truthful deposition transcript that, at a minimum from March 6, 2003 to April 1, 2003 Christensen oversaw the use of adjudicated willfully infringing software that he knew was illegal. That would have necessarily resulted in triable issue if not a finding of willful infringement as to Christensen and from that the dominos would have necessarily fallen.

First, as to Christensen, he would have been required to defend as a willful contributory infringer, that makes another RICO predicate and therefore, the RICO claim should have to have gone to the jury.

Second, his act of giving false testimony in his deposition was a bankruptcy fraud in violation of 18 U.S.C. § 152 and Section 1962 RICO predicate, another reason the RICO should have survived. His willingness to commit the act for the benefit of Fleming makes a very strong case to support the fact that Fleming was a member of an enterprise. Christensen's continued employment at C&S who, through the knowledge of its concurrent counsel is imputed with the knowledge of Christensen's fraud, evidences RICO continuity as to C&S.

Finally, one of the reasons the Court decided not to grant an injunction despite the numerous acts of infringement was because all non-bankrupt

16

defendants were innocent.  It therefore follows that if Christensen was not innocent that at least he must be enjoined.

### B.    Christensen Continued the Lie at Trial Where More Damage was Done.

Seeking to seem like a victim of the Plaintiff, Fleming and the Employees put forward testimony that showed Christensen as the blameless new guy coming on the scene of the willful infringement simply trying to do the right thing.[5]  The fact is that this was a pure fabrication.  Influenced by Christensen's unchallenged credibility, the jury chose a compromise verdict setting forth an arbitrary number derived from an offer that was never accepted and then awarded to the Plaintiff damages under a pro rata formula that nobody argued was applicable.[6]

### C.    The Fraud Is Clear and Proven by Evidence That Is Not Even Disputed.

First, Mr. Christensen admits in his Reply that his trial testimony was false.

---

[5]  The Fleming employees all sat at trial listened to Christensen's testimony but must have know their boss was not telling the truth as the identity of the Division President for the year prior to the Fleming bankruptcy a fact that  must have been made know to the employees at the time Christensen was promoted. The existence of the email announcement in a deleted directory may give a hint of at one of the employees roll in the deception.

[6]  It seems clear that to arrive at a damage figure the juror took the $300,000 offer that was never accepted, then divided it by 365 days and then times the 70 days that comprised the relevant period.

What he apparently had been forgotten is that this admission shows it was not a misstatement, but rather, one of a series of acts of perjury.   The facts are not in dispute.  Mr. Berry has proven the factual predicate for the fraud on the court as well as the kind of misconduct warranting a new trial well beyond the clear and convincing standard that is applied to Rule 60(b) motions: it is proven conclusively.

### D.    A New Trial Must Be Granted for Perjured Testimony.

Rule 59 provides for relief and an order directing a new trial.

In order to prevail on a Rule 59 motion on the grounds of new evidence, the moving party must establish the following:

1.    The newly discovered evidence must have been discovered afer judgment and the movant must have been excusably ignorant of the facts at the time of trial despite due diligence to learn about the facts of the case.

2.    The evidence discovered bust be of a nature that would probably change the outcome of the case.

3.    The evidence must not be merely cumulative or impeaching.

See Moore's Federal Practice, 3rd Ed. 2005, at  §59.13[2][d][ii].

The false testimony by a witness is grounds for a new trial.

> However, in view of the closeness of the issue as to
> Counts I and II, hinging on the credibility of the agent,
> and in view of the inquiry by the jury, we think a new

trial should have been granted on those counts.

*Stamps v. United States*, 406 F.2d 925, 929 (9th Cir. 1969).

As in *Stamps,* Christensen's testimony was prejudicial not just because the facts that were not properly presented, but also because Christensen was able to avoid the attack on his credibility because of his false statement.  Had Christensen stated that he had been the one who had been running Fleming during the willful infringement period, it is doubtful that Fleming would have ever called him. That would have effected the testimony regarding profits and the value on the operation of FCS that Christensen said was next to worthless.  Had he been called and subjected to fair cross examination he would have to have admitted that for over a year, he ran the business in a manner that could be considered criminal because they needed to use the software.  That would have necessarily influenced the value that the jury would place on the software, not to mention the fact that Mr. Berry would have had the chance to elect statutory damages with a potential of $150,000 in damages for his willful infringement.

**E.    The Court of Appeals Holds that the Relief Sought Under These Facts Is Timely Presented.**

The Court may grant a new trial even thought the facts are brought

subsequent to the time limit provide by Rule 59 because Mr. Berry has a pending

Rule 59 Motion filed on March 21, 2003 as Docket No. 864, as follows:

> However, even had the ground of his order varied from
> that specified in appellees' motion, Rule 59(d)
> specifically provides that the judge is free to grant the
> motion for a reason not stated in the original motion,
> provided he gives the parties notice and an opportunity to
> be heard on the matter.

*Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670, 671 (9th Cir. 1985)

("Even if the later document were considered to be an amendment, such would be

permitted") *citing  Pogue v. International Industries, Inc.*, 524 F.2d 342 (6th Cir.

1975).

In addition, until the admission in the Reply, Mr. Berry did not have the kind

of proof necessary for both the Rule 59 and Rule 60(b) motions and moved timely

upon learning of the admission.

**F.    Rule 60(b) Applies in Cases of  Extrinsic Fraud.**

Alternatively, LR 60.1 or Rule 60 (b) is applied when an officer of the court

engages in fraud or other wrongful conduct that threatens the administration of our

courts.  In this case, at least Fleming and C&S' concurrent attorney was in a

20

position to correct the fraud but sat silent.

> The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline.

*State v. De Guzman*, 68 Haw. 14, 17 (Haw. 1985) (decided under the Hawaii model Code of Professional Responsibility).

In this case, despite sending bills to Brian Christensen starting in at least July 2002, Lex Smith not only sat silent while the false testimony was being offered, but offered objections during the time the client gave the false testimony. This is the kind of conduct that the Court can grant relief for even months after the judgment has been final.

## III.    CONCLUSION.

For these reasons, the Court must grant the Motion.

DATED: Honolulu, Hawai'i, May 9, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

21