# Exhibit 2

```
                                                                    1

 1                  IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF HAWAII

 3

 4   WAYNE BERRY, a Hawaii Citizen,  ) CIVIL NO. 03-00385SOM
                                     )
 5              Plaintiff,           )
                                     )
 6        vs.                        )
                                     )
 7   HAWAII EXPRESS SERVICE, INC.,   )  - VOLUME 4 -
     et al.,                         )
 8                                   )
                Defendants.          )
 9   _____)

10

11                      TRANSCRIPT OF PROCEEDINGS

12        The above-entitled matter came on for hearing on

13   Thursday, March 2, 2006, at 9:24 a.m., at Honolulu, Hawaii,

14   BEFORE:         THE HONORABLE SUSAN OKI MOLLWAY
                     United States District Judge
15
     REPORTED BY:    STEPHEN B. PLATT, RMR, CRR
16                   Official U.S. District Court Reporter

17   APPEARANCES:    TIMOTHY J. HOGAN, ESQ.
                     WESLEY W. ICHIDA, ESQ.
18                   Lynch Ichida Thompson Kim & Hirota
                     1032 Bishop Street, Suite 1405
19                   Honolulu, Hawaii  96813

20                                   Attorneys for the Plaintiffs

21                   MICHAEL E. BAUMANN, ESQ.
                     DAMIAN D. CAPOZZOLA, ESQ.
22                   Kirkland & Ellis LLP
                     777 South Figueroa Street
23                   Los Angeles, CA  90017

24                                   Attorneys for Defendant
                                     Post Confirmation trust
25                                   for Fleming companies, Inc.
```

1   nothing for your business?
2   A.   Because under our understanding, it was okay to use, so
3   we used it.  Subsequently by taking out the changes that we
4   made, it didn't work very well, so we did, in fact, get rid of
5   it on June 9th.
6   Q.   But I'm talking about -- actually, I would like to go
7   back to March 7th, the day after the jury verdict:
8           Why not just walk into the logistics department, as
9   the boss, and say, turn it off.  We don't need this, because
10  it's your knowledge and hard work that we make our money with,
11  not this software that's been nothing but trouble.
12          Why not just shut it off?
13  A.   Well, for one thing, I wasn't the president at that time.
14  I became the president after that, the ending of March.  When
15  I got on board, it already -- we were already using it.  And
16  my assumption is that it was working -- you know, we have to
17  have a way to capture data.  So we were using it.
18          We thought we were okay by going back to the
19  original.  Subsequently it didn't work that well with taking
20  out the -- basically, improvements.  So we did look for
21  something else.  And once we switched, yeah, we were done with
22  it.
23  Q.   But on April 1st you were the president of the Hawaii
24  division?
25  A.   Correct.

1  Q.  And you said Mark Dillon didn't use it?
2  A.  He didn't use it as we use it.  He was the network
3  administrator, so I'm sure that he was updating or doing what
4  any IT person needs to do to maintain the database.
5  Q.  Well, isn't it true, ma'am, that Mark Dillon was found --
6  it was found that the changes that Mark Dillon made was found
7  by a jury in March of 2003, right before this period started,
8  to have been infringement?
9  A.  Yes.
10 Q.  So, would it be fair to say that he used it for
11 infringement?
12 A.  No, that's not what I'm saying.  Don't mis- -- don't turn
13 my words around.
14 Q.  But what was he doing with it?  He was developing
15 Mr. Berry's database without his permission; correct?
16 A.  I don't think that -- I mean... he -- he updated and made
17 changes, yes, to the database.
18 Q.  Yes.  And those were found to infringe.  That's your
19 understanding?
20 A.  Yes.
21 Q.  Did you make changes to the database?
22 A.  I did.
23 Q.  You did?
24 A.  Yes.
25 Q.  You believe that those changes were not infringement?

```
 1   A.   I soon found out that it was infringement, yes.
 2   Q.   So your use of the database for work was also to change
 3   the database; is that correct?
 4          MR. BAUMANN:  Objection, Your Honor; vague as to
 5   period of time.  And it's irrelevant, frankly, to the damage
 6   phase.
 7          MR. HOSODA:  Join, Your Honor.
 8          THE COURT:  I'll allow it.
 9          Go ahead.
10          THE WITNESS:  Can you restate it, please?
11   BY MR. HOGAN:
12   Q.   So, your use of the database was -- for work was also to
13   change the database; is that correct?
14          MR. HOSODA:  Again, Your Honor, objection as to
15   time?
16          THE COURT:  I'll allow this.
17   A.   I changed the database, yes, in order to operate, because
18   we were unable to get ahold of Mr. Berry.
19   BY MR. HOGAN:
20   Q.   What did you do to try to get ahold of Mr. Berry?
21   A.   I attempted to call on various phone numbers that he had
22   left with us.
23   Q.   Did you ever ask Mr. Smith to get in touch with me so you
24   could find Mr. Berry?
25          MR. BAUMANN:  Again, I object --
```

248

```
 1
 2
 3
 4
 5
 6
 7                          -ooOoo-
 8          I, Stephen B. Platt, Official Court Reporter,
 9  United States District Court, District of Hawaii, do hereby
10  certify that the foregoing is a true and correct transcript of
11  proceedings before the Honorable Susan Oki Mollway, United
12  States District Judge.
13
14
15
16
17
18
19
20                                   /s/   Stephen B. Platt
21  THURSDAY, APRIL 27, 2006        STEPHEN B. PLATT, CSR NO. 248
22
23
24
25
```