LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| HAWAIIAN EXPRESS SERVICE, | ) | **MOTION  FOR  RECUSAL** |
| INC., a California corporation; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Fleming Committed Willful Infringement. . . . . . . . . . . . . . . . . . 5

      B.    Christensen Admits He Testified Falsely at Trial. . . . . . . . . . . . 6

      C.    The Filing of the Fee Motion Set off the Search of the Record. . 8

      D.    Fleming and C&S' Counsel Knew that Christensen's Testimony
            was False Testimony and Did Nothing to Corrected the Damage
            Done. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.    Mr. Smith Had A Duty to Correct the Fraud. . . . . . . . . . . . . . . 15

      F.    The Magistrate Judge has Stated Mr. Smith a Close Friend. . . 16

II.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    The United States Code Provides for Mandatory Recusal in
            Certain Circumstances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    The Court Must Make the Criminal Referral. . . . . . . . . . . . . . . 18

      C.    The Court must Not Allow Itself to Be Placed in the Position of
            Having to Make Such a Referral Impacting a Close Friend. . 21

      D.    The Motion Was Brought in A Timely Manner. . . . . . . . . . . . . 21

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## CASES

*In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cheney v. United States Dist. Court*, 541 U.S. 913 (U.S. 2004) . . . . . . . . . . . . . 17

*In re UAL Corp.*, 310 B.R. 373  (Bankr. D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES

18 U.S.C. § 2319  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 U.S.C. § 506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 152  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 152(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 3057  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. §§ 1961(1)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 455 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Chapter 9 of Title 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 11  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**RULES**

**Hawaii Disciplinary Rule 3.3** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

**Comment 6 to DR 3.3** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14, 15**

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF WAYNE BERRY'S MOTION FOR**
**RECUSAL**

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"),  by and through his undersigned counsel, and hereby respectfully submits his Memorandum in Support of his motion for an  order of recusal of the Magistrate Judge regarding the pending fee and cost motions, on the grounds that evidence strongly evidences that Lex Smith, Esq.,  who the Court has stated is a close personal friend, appears to have engaged in conduct prejudicial to the administration of justice regarding the testimony of Brian Christensen who concedes in his Reply in Support of his Motion for Attorney's Fees and Costs filed on May 4, 2006 at page 5, that he provided false testimony in the proceeding.

I.    **BACKGROUND.**

A.    **Fleming Committed Willful Infringement.**

On March 6, 2003, a jury of the United States District Court for the District of Hawaii, entered a finding of willful infringement against Fleming Companies, Inc. ("Fleming"), for its unauthorized, unlawful modification of the Berry freight control system, FCS Logistics Data.mdb ("FCS").  The Court is requested to take judicial notice of the record of the case *Wayne Berry v. Fleming Companies, Inc.*, Civ. No. 01-00446 SPK-LEK (U.S.D.C. Hawaii) and in particular the finding of

5

willful infringement.  A true and correct copy of the jury verdict finding willful infringement is attached to the Declaration of Timothy J. Hogan (the "Hogan Dec.") as Exhibit "1."

Willful infringement for financial gain is a RICO predicate offense. *See* 18 U.S.C. §§ 1961(1)(B) and 18 U.S.C. § 2319 (relating to criminal infringement of a copyright under 17 U.S.C. § 506(a)).

Rather than cease operating with the Berry system immediately upon the finding of willful infringement, on March 6, 2003, Fleming continued for a period of more than three weeks knowingly operating with the infringing Berry system. Based on the proof at trial that evidenced that in 70 days over $50 million in commerce was handled by the Berry FCS, it is fair to conclude that, for the 25 days of March, no less than $15 million in commerce was handled by the Berry FCS during the period of continued willful infringement.

Then, on or about April 1, 2003, Fleming claimed to have created a new non-infringing version of Mr. Berry's software and then simultaneously filed a voluntary Chapter 11 bankruptcy petition, staying the Berry infringement proceeding and preventing Mr. Berry from obtaining an injunction.

### B.    Christensen Admits He Testified Falsely at Trial.

Despite the fact that all but one employee defendant had been ruled an

infringer, on March 23, 2006, the former Fleming employees filed a Motion for

Attorneys Fees and Full Costs seeking 100% of the fees and costs incurred in the

PCT's defense of the employees, based on primarily the fact that Brian Christensen

was vindicated as a non-infringer.  Christensen had claimed that Mr. Berry was not

the FCS copyright owner and that it was not copyrightable but he like the other

defendants failed on these affirmative defenses.  The filing of the fee motion

opened up Mr. Christensen's conduct to one last look.

Now that the official transcripts are available, Mr. Berry offers Mr.

Christensen's March 2, 2006, trial testimony regarding his role in the adjudicated

willful infringement as follows:

6    Question by Mr. Hogan:  But I'm talking about - actually, I would like to go

7    back to March 7th, the day after the jury verdict:

8    Why not just walk into the logistics department, as

9    the boss, and say, turn it off. We don't need this, because

10    it's your knowledge and hard work that we make our money with,

11    not this software that's been nothing but trouble.

12    Why not just shut it off?

13    A.    Well, for one thing, I wasn't the president at that time.

14    I became the president after that, the ending of March. When

15    <u>I got on board, it already -- we were already using it.</u>

Transcript of Proceeding Before the Honorable Susan Oki Mollway dated March 2, 2006, at page 98 lines to 15. Hogan Dec. Exhibit "2" (emphasis added).

The effect on the jury of Mr. Christensen's now admitted false testimony is obvious and would have left the jurors with the impression that Mr. Christensen and his employer were doing nothing wrong when the jury began deliberations. Moreover, by not testifying truthfully, Mr. Christensen had the credibility of the blameless person seeking to right the ship after years of wrongdoing, when the truth would have shown him to be a willful infringer.

### C.    <u>The Filing of the Fee Motion Set off the Search of the Record</u>.

After trial and after the filing of the various attorneys fees motions, Mr. Berry began to prepare to meet the employee fee motion and conducted a review of the rough drafts of the Trial Transcripts regarding  Mr. Christensen's testimony. The official transcripts were filed on April 28, 2006 and made available to counsel the following week.

The transcript of the March 2, 2006 testimony confirmed what the rough draft had indicated that, at trial, Christensen  testified to have been made the Hawaii Division President in March 2003.  After an extensive review of documents the Kobayashi Sugita & Goda time records submitted in March 2003 to compare the reasonableness of those fees and the fees sought presently, Mr. Berry

discovered that, by July 7, 2002, Lex Smith had begun to submit his time records

to Christensen and not to Ralph Stussi.   *See* Hogan Dec. ¶ 5 and Exhibit "3"

showing submission to Stussi and Hogan Dec.  Exhibit "4"  submitting the invoice

to Christensen starting at least by July 7, 2002.  This finding  prompted a search of

emails that were contained on the drive copies produced on January 26, 2006 for

some evidence in Fleming's records to prove the date that Christensen became the

division President. After an extensive search counsel discovered an email in a

deleted directory that evidences the announcement of Mr. Christensen as the

Fleming division president in March 21, 2002.   Hogan Dec. ¶ and Exhibit "5."

Believing that this evidenced that Mr. Christensen had not been truthful in his trial

testimony and therefore lacking standing to seek an award of fees, Mr. Berry raised

Christensen's false trial testimony in the Opposition to the Employee Fee motion

filed on April 20, 2006,  Docket No. 942, at pages 4 and 5.  Hogan Dec. Exhibit

"6."

        Then, in response, in the Reply, Christensen admitted he had not testified

truthfully.  Hogan Dec. Exhibit "7."   The claim to have simply misstated the date

he became Division President at trial is simply unbelievable based on the

questioning at trial that dealt with what he did in reaction to the March 6, 2003 jury

verdict.   Surely Mr. Christensen knew who was actually running Fleming Hawaii

at that time.

The simple fact is, that this was not a misstatement but another act of false testimony that started during his deposition taken in December 2004 where he made what can only be termed as a false statement under oath as follows:

Page 16

24    Q.    What is your job presently at C&S?

25    A.    I'm the division president.

Page 17

1    Q.    How long have you held that position?

2    A.    <u>Since March of 2003.</u>

3    Q.    Now, March 2003 was the period during the

4    original jury trial.  Do you recall that?

5    A.    That's my understanding, yes.

6    Q.    Is it fair to say that you were the

7    replacement for Ralph Stussi?

8    A.    Yes.

. . .

Page 20

9    Q.    So March 1st, 2003, is it your

10  understanding that there was an Access database

11  operating at Fleming logistics?

12      MR. SMITH:  Calls for speculation.

13  BY MR. HOGAN:

14    Q.    You can answer the question, if you can.

15    A.    That's my understanding.

16    Q.    What do you base that understanding on?

17    A.    From what little I know about the database

18  itself, I've heard that term used.

19    Q.    Had you heard it on or about March 1st,

20  2003?

21    A.    Yes.

22    Q.    Were you supervising employees at that

23  time at Fleming that were working in the freight or

24  the Fleming logistics department?

25    A.    No.

Page 21

1    Q.    Who was supervising them?

2    A.    Ralph Stussi.

11

3    Q.    When did Ralph Stussi stop working for

4    Fleming Hawaii?

5    A.    Right about that time actually.

6    Q.    So do you recall the precise date?

7    A.    No, I don't.

8    Q.    Was it prior to April 1st, 2003?

9    A.    Yes.

10    Q.    So sometime after April 1st, 2003 or after

11    March 1st, 2003 but before April 1st, 2003, you

12    became the supervisor of the people at the Fleming

13    freight logistics department?

14    A.    Correct.

15    Q.    But you don't know the exact date?

16    A.    I became the president on the 23rd, I

17    believe, of March.

18    Q.    At that time it is your understanding that

19    you would be their supervisor?

20    A.    Correct.

Transcript of the Deposition of Brian Christensen taken in this proceeding on December 6, 2004 at page 16 line 24 to page 21 line 20, Hogan Dec. Exhibit "8."

(emphasis added).

At the time the District Court ruled on summary judgment in January 2004, Mr. Berry put forward proof regarding Christensen's knowledge of the infringement but the Court found it insufficient to avoid summary Judgment. *See* excerpt of January 27, 2004 Order. Hogan Dec. Exhibit "9."

The proof that the misstatement was material is contained in Defendants Mark Dillon, Brian Christensen, and Teresa Noa's Reply Memorandum in Support of Their Motion for Summary Judgment Filed on December 29, 2004 as Docket No. 396 (The "MSJ Reply"). *See* Hogan Dec. Exhibit "10."[1] The MSJ Reply, the 'last word' in regard to the Christensen motion for summary judgment, cites the earlier false deposition testimony and in the body and falsely asserts, based on that false testimony, that: "He did not even become President until March, 2003. So Plaintiff is just wrong with respect to Mr. Christensen." Hogan Dec. Exhibit "10" at page 14.

### D.    Fleming and C&S' Counsel Knew that Christensen's Testimony

---

[1]    Hogan Dec. Exhibit "10" also contains Affidavit of Lyle Hosoda, Esq. Exhibit "A" that is the portion of the Christensen deposition transcript where the false statement regarding the date Christensen became the Fleming division president was made. *Compare* hogan dec. Exhibit "8."

### was False Testimony and Did Nothing to Corrected the Damage Done.

As set forth in the Hogan Dec., Lex Smith, who represented Fleming in the first case and Fleming and C&S in this case, was sending his bills to Fleming's Division President Ralph Stussi in spring of 2002.  Hogan Dec. Exhibits "3". Consistent with proof that Counsel was aware that Brian Christensen was the division president in the spring of 2002 and was testifying falsely, is the copy of the Kobayashi Sugita & Goda time records showing that Counsel began to send his bills to the new division president, Brian Christensen, by July7, 2002.  Hogan Dec. Exhibit "4."  When Mr. Christensen, in his deposition, Hogan Dec. Exhibit "8," falsely testified that he had not become the division president until March 2003, counsel sitting at the table had to know it was false but sat silent except for the objections made evidencing more than a passive role in the fraud.  Counsel was under an absolute affirmative duty to correct the false testimony.  *See* Hawaii Disciplinary Rule 3.3 and comments 4 to 6.  Comment 6 to DR 3.3 states, in part, that: "the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party."  It will be impossible for Counsel to deny that he had forgotten who his client's representative was and whom he was directing his bills to as the client for over a year prior to the deposition.  Moreover, when Christensen gave the false

14

testimony he not only violated state and federal perjury statutes, he clearly appears to have committed a bankruptcy fraud.

### E.      Mr. Smith Had A Duty to Correct the Fraud.

Mr. Smith appears to have had a duty to correct the Christensen deposition testimony but didn't.   Even if Mr. Smith finds a way to excuse this failure to rectify Christensen's acts, Mr. Christensen's liability for his false testimony, that he now admits he committed in trial and must admit he committed in his deposition, will necessarily have a direct impact on Mr. Smith who was acting as the attorney for his present and former employer in the deposition of the Hawaii Divisions senior-most manager to whom he was submitting is billing invoices going back at least to July 2002.   The evidence in light of the admission in the Reply can result in only one conclusion: Christensen lied in his deposition and at trial and Mr. Smith must have known about it.  Whether Mr. Smith's conduct at the deposition evidences his knowledge of the fraud, he has not done anything to mitigate it as required by the Hawaii Disciplinary Rule 3.3 Comment 6. Regardless of what  Mr. Christensen might say during the conduct of the United States Attorney's investigation regarding Mr. Smith's knowledge at the time, it appears obvious that this will have to be addressed.  In any event, as to Christensen, it is clear that a bankruptcy crime referral is mandated.

**F.    <u>The Magistrate Judge has Stated Mr. Smith a Close Friend</u>.**

In the prior infringement proceeding, the Magistrate Judge addressed the Court's relationship with Mr. Smith in the initial Rule 16 conference. At that time the Court has stated to Mr. Berry's counsel in Mr. Smith's presence that Mr. Smith was a close personal friend. Hogan Dec. ¶ 11. The evidence is compelling that Mr. Smith had both knowledge of the false testimony and materially participated in defending the commission of the act of false testimony in the Christensen Deposition. The Court should not rule on any matters related to Mr. Smith or the propriety of any fees related to him and should permit another judge without the close personal ties to counsel to make these rulings.

Because all the fee issues will likely end up before the District Court in one fashion or another, and because the Magistrate turned over most responsibilities to the discovery master, the District Court, who actually had to read and dealt with the documents for which fees are sought would appear able to dispose of the motions efficiently. If this is not appropriate, then the matters should be referred to another magistrate judge.

## II.    ARGUMENT.

### A.    The United States Code Provides for Mandatory Recusal in Certain Circumstances.

> Any justice, judge, or magistrate [magistrate judge] of the
> United States shall disqualify himself in any proceeding
> in which his impartiality might reasonably be questioned.

28 U.S.C. § 455 (a).

The Supreme Court has recently, in a motion to recuse Justice Scalia,

reaffirmed the rule that mandates that this court recuse when faced with having to

make a decision that would have the possibility of having a direct impact on the

fortune and freedom one of the Court's close friends as follows:

> But while friendship is a ground for recusal of a Justice
> where the personal fortune or the personal freedom of the
> friend is at issue, it has traditionally not been a ground
> for recusal where official action is at issue, no matter
> how important the official action was to the ambitions or
> the reputation of the Government officer

*Cheney v. United States Dist. Court*, 541 U.S. 913, 916 (U.S. 2004).

In this case, the mere fact that the Court is a close friend of counsel does not,

in-of-itself, support grounds for recusal where the Court was simply reviewing

papers supporting or opposing position taken by one of Mr. Smith's clients, with

Mr. Smith acting only in the capacity of attorney of record.   But in this case, at

17

this juncture, on May 4, 2006, the Reply admitted that the prior Christensen

Deposition, where Mr. Smith actively participated, was false.   The deposition

transcript Hogan Dec. Exhibit "8" evidences Mr. Smith's conduct strongly

suggesting his active participation in the false testimony.  When this is combined

with Mr. Smith's invoices Hogan Supp. Dec. Exhibits "3" and "4 ", a reasonable

trier of fact could easily find that Mr. Smith engaged in subordination of perjury,

bankruptcy fraud not to mention violations of the Hawaii Disciplinary Rules.

Whether he did or not is not the issue.  This Court should not be the one to make

the call, one way or the other.

### B.    The Court Must Make the Criminal Referral.

Under Title 18 § 3057 this Court is under an affirmative obligation to make

a criminal referral to the United States Attorney of the Court's close friend if

"reasonable grounds for believing" that the conduct set forth above occurred.  The

record makes that obligation clear in these circumstances.

Under 18 U.S.C. § 152, a false sworn statement made in connection with any

bankruptcy proceeding constitutes bankruptcy fraud as follows:

A person who—

knowingly and fraudulently makes a false oath or
account in or in relation to any case under title 11;

. . .

shall be fined under this title, imprisoned not more than 5 years, or
both.

18 U.S.C. § 152(2).

The fact of the false oath is not subject to dispute.  It is reasonable for the

Court to conclude that Mr. Christensen knew he was the boss of Fleming Hawaii

when he was appointed in March 2002.  He concealed that fact and the

concealment resulted in a grant of summary judgment thus limiting an existing

claim in the Fleming bankruptcy.   It is also reasonable to assume that Mr. Smith

who had been sending his bills to Christensen knew who the client or client

representative was.  At the bare minimum, Mr. Smith is a material witness to the

fraud.  Even if Mr. Smith is able to explain his conduct it still requires that the

matter be referred and the impact on Mr. Smith is obvious.   The Court is not

tasked with making a final determination of the basis for proceeding to indictment,

the Court is a gate keeper who congress specifically determined lacks the

discretion to avoid a referral when reasonable grounds exist as follows:

> (a) **<u>Any judge</u>**, receiver, or trustee <u>having reasonable
> grounds for believing that any violation under chapter 9
> of this title</u>[2] or other laws of the United States relating to
> insolvent debtors, receiverships or reorganization plans
> has been committed, or that an investigation should be

---

[2]  Chapter 9 of the Title 18 US Criminal code is entitled "Bankruptcy."

had in connection therewith, **shall report** to the
appropriate United States attorney all the facts and
circumstances of the case, the names of the witnesses and
the offense or offenses believed to have been committed.
Where one of such officers has made such report, the
others need not do so.

(b) The United States attorney thereupon **shall inquire**
into the facts and report thereon to the judge, and if it
appears probable that any such offense has been
committed, shall without delay, present the matter to the
grand jury, unless upon inquiry and examination he
decides that the ends of public justice do not require
investigation or prosecution, in which case **he shall
report** the facts to the Attorney General for his direction.

18 U.S.C. § 3057 (emphasis added).

A proceeding is "related to" a bankruptcy case if it "affects the amount of

property available for distribution or the allocation of property among creditors."

*In re UAL Corp.*, 310 B.R. 373, 383 (Bankr. D. Ill. 2004) *citing  In re Xonics, Inc.*,

813 F.2d 127, 131 (7th Cir. 1987).   In this case Mr. Berry has asserted a large

administrative claim against the Bankruptcy estate of *Fleming Companies, Inc.*, Bk

No. 03-10945 (MFW) (Bankr. Del.).  Fleming tried to liquidate the claim in

Delaware but Mr. Berry prevailed on the motion to dismiss, stay or transfer.

Christensen's false testimony was directly relevant to the liquidation of the

Bankruptcy claim and this proceeding and the false testimony is related to a case

under Title 11 and the Criminal sanctions set forth in Chapter 9 of Title 18 related

20

to bankruptcy crimes.

### C. The Court must Not Allow Itself to Be Placed in the Position of Having to Make Such a Referral Impacting a Close Friend.

By recusal, the Court may request that the matter be given to another magistrate judge or to the District Court that will likely have to review the fee motions in any event. Because the Court lacks the discretion to avoid a referral if "reasonable grounds" exist, and surely they do, and any referral would necessarily involve a close personal friend, the Court must recuse.

### D. The Motion Was Brought in A Timely Manner.

Until the May 4, 2006 Reply, there was no concrete proof of the fraud. Mr. Berry moved timely thereafter. In this case, the relationship between the Court and counsel was not grounds for recusal until counsel's role in the Christensen fraud surfaced. Any claim of prejudice or delay in seeking this relief cannot be laid at Plaintiff's feet. Fleming and C&S' counsel who failed to correct the Christensen deposition as required by law and the ethical rules and is solely responsible for the need to bring this motion.

## III.    CONCLUSION.

Under these circumstances the Court must recuse.

DATED: Honolulu, Hawai'i, February 10, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY