LYLE S. HOSODA & ASSOCIATES, LLC

LYLE S. HOSODA        3964-0
RAINA P.B. MEAD       7329-0
345 Queen Street, Suite 804
Honolulu, Hawaii 96813
Telephone: (808) 524-3700
Facsimile: (808) 524-3838
E-mail: lsh@hosodalaw.com

Attorneys for Defendants
BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA,
MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO,
JUSTIN FUKUMOTO, AND SONIA PURDY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen, <br><br> Plaintiff, <br><br> v. <br><br> HAWAIIAN EXPRESS SERVICE, INC., a California Corporation; et al. <br><br> Defendants. | CIVIL NO. CV03-00385 SOM-LEK (Copyright) <br><br> **DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO, JUSTIN FUKUMOTO, AND SONIA PURDY'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S MOTION FOR RECUSAL; DECLARATION OF BRIAN CHRISTENSEN; DECLARATION OF LYLE S. HOSODA; EXHIBITS "A"–"B"; CERTIFICATE OF SERVICE** <br><br> JUDGE:    Hon. Leslie E. Kobayashi |

**DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO, JUSTIN FUKUMOTO, AND SONIA PURDY'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S MOTION FOR RECUSAL**

I.  **INTRODUCTION**

Disqualification of this Court under 28 U.S.C. § 455(a) is not mandated here where there has been no perjury or fraud committed upon the Court.  Brian Christensen unintentionally misstated when he became President of Fleming's Hawaii division. He made an honest mistake when he was deposed on December 6, 2004 and testified at trial on March 2, 2006.

Plaintiff tries to turn this mistake into something intentional and nefarious.  But Plaintiff cannot deny that he himself had forgotten that he knew Christensen became President in March, 2002 because he (1) was present on March 25, 2002 when Mark Dillon was deposed and explained Christensen took over in March, 2002; and (2) was present on February 28, 2003, when Ralph Stussi testified at trial that he left Fleming in April, 2002. *See* Hosoda Decl., Exs. A and B.

Plaintiff further cannot deny he has had in his possession the Kobayashi Sugita & Goda invoices that allegedly evidence counsel's fraud since 2003, when they were filed in the first infringement lawsuit (*see* Hogan Decl., ¶ 4, Ex. 4) and the March 21, 2002 email announcement he claimed to have only discovered in response to the Employees' fee motion since September, 2005, when it was turned over as part of the Guidance production.  *See* PCT Opposition, Walker Decl.

2

The basis for Plaintiff's filing demonstrates the overwhelming need for this Court to shut Plaintiff down. The jury has spoken. Plaintiff has had his day in court. He lost. It's over. Yet, his post-trial, after the fact filing, which attempts to rely upon something that happened before this lawsuit was started in a pretrial conference that was apparently not recorded, is ridiculous. Plaintiff's counsel signed a sworn statement that the Magistrate stated that Lex Smith was a "close personal friend." No one else recalls such a statement. There is no such statement on any record any where.

These types of disclosures, had such a statement been made, would have been made on the record, and all parties and counsel would have been afforded the opportunity to request that the Magistrate recuse herself at that time. This is standard and required practice of all judges. By stating under oath his recollection (without even attaching a note or any other supporting documentation or corroboration from anyone else), Plaintiff's counsel pits his memory against not only the credibility of the Magistrate, but the entire Hawaii judiciary.

Assuming purely for the sake of discussion that the Magistrate did say those words, and deviated from standard and required practice, Plaintiff's counsel heard the words, and knowingly and willingly chose to do nothing about it. There was no letter to counsel, no reporting to the disciplinary counsel,

no letter to the chief judge, and no reporting to the senate judiciary committee.  Nothing.

Under all of these facts and circumstances, a reasonable person would not conclude that the Court's impartiality would reasonably be questioned.

II.  **LEGAL STANDARD**

28 U.S.C. § 455 provides in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

A motion to disqualify a judge under § 455 must be determined by the very judge whose impartiality is being questioned.  *United States v. Sibla*, 624 F.2d 864 (9th Cir. 1980); *In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1994); *United States v. Champlin*, 388 F.Supp.2d 1177, 1180 (D. Haw. 2005)(stating that § 455 is addressed to the judge whose recusal is in question and demands that the judge decide for him or herself whether to recuse).

Under § 455, the statutory test for disqualification is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *Yagman v. Republic Insurance*, 987 F.2d 622, 626 (9th Cir.  1993); *U.S. v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983); *Champlin*, 388 F.Supp.2d at 1182.  The reasonable person in this context is a "well-informed, thoughtful observer," not a

4

"hypersensitive or unduly suspicious person." *Clemens v. U.S.
Distr. Court for the Central Distr. of Ca.*, 428 F.3d 1175, 1178
(9th Cir. 2005).

Because a § 455(a) claim for disqualification is fact
driven, the court's analysis must be guided by an independent
examination of the unique facts and circumstances of the
particular claim at issue. *Id.*

A judge will not ordinarily be disqualified on the
grounds that his impartiality might be reasonably questioned on
the basis of (1) rumor, speculation, beliefs, conclusions,
innuendo, suspicion, opinion, and similar nonfactual matters . .
. or (4) mere familiarity with the defendant(s) or the type of
charge, or a kind of defense presented. *Clemens*, 428 F.3d at
1178-79.

III. **HAVING KNOWLEDGE OF ALL OF THE SURROUNDING FACTS CONCERNING
BRIAN CHRISTENSEN'S TESTIMONY AND WHEN THE PARTIES KNEW HE
BECAME PRESIDENT OF FLEMING HAWAII, A REASONABLE OBSERVER
WOULD NOT CONCLUDE THAT THE COURT'S IMPARTIALITY MIGHT
REASONABLY BE QUESTIONED.**

Plaintiff contends that Lex Smith and Brian Christensen
orchestrated a conspiracy to commit fraud upon the court in order
to get Christensen out on summary judgment.  While Plaintiff is
the only one who claims this Court disclosed more than three
years ago in Plaintiff's prior lawsuit against Fleming that it
was a friend of Mr. Smith's, and despite no objections raised by
Plaintiff at that time, Plaintiff now asserts that this alleged

5

acquaintance coupled with an alleged fraud upon the court creates
the appearance of partiality.  Despite Plaintiff's contentions,
there has been no fraud on the court, and therefore, no factual
basis warranting this Court's recusal on the pending fee motions.

> The Ninth Circuit has established that
>
> > "Fraud upon the court" should, we believe,
> > embrace only that species of fraud which does
> > or attempts to, defile the court itself, or
> > is a fraud perpetrated by officers of the
> > court so that the judicial machinery can not
> > perform in the usual manner its impartial
> > task of adjudging cases that are presented
> > for adjudication.

*In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999).  "To
constitute fraud on the court, the alleged misconduct must 'harm
the integrity of the judicial process.'" *Id*.  Ultimately, the
moving party must show by clear and convincing evidence "an
unconscionable plan or scheme which is designed to improperly
influence the court in its decision".  *England v. Doyle*, 281 F.2d
304, 309 (9th Cir. 1960).

As Christensen explains in his declaration attached
hereto, when asked at his deposition in December, 2004, when he
became President of Fleming's Hawaii division ("Fleming"), his
mind went to the month of March.  Christensen deduced, albeit
incorrectly, that he became President in March of 2003 and not
2002 because he was not involved in any substantive way with
Berry's first lawsuit against Fleming until after the verdict was
rendered.  He did not intentionally or purposely misstate the

date he became Fleming's President.  He did not scheme to defraud
the Plaintiff or the Court.  He made an honest mistake.  *See*
Christensen Decl., ¶¶ 6-7.

Ralph Stussi, Fleming's former President, was the
primary contact for all matters related to and concerning the
pre-petition lawsuit up through trial and until the verdict was
rendered.  Stussi was involved with all decision-making relative
to that lawsuit and in fact returned to attend the trial against
Fleming as its representative.  *See* Christensen Decl., ¶ 8; *See*
C&S Opposition, Smith Decl.

While Christensen assumed the day to day operations of
Fleming in March, 2002, he was not a part of and had little or no
knowledge of Plaintiff's prior litigation proceedings against
Fleming.  Christensen acknowledges that as Fleming's President in
2002, he would have likely received invoices from Fleming's local
counsel for services rendered in connection with Plaintiff's
prior lawsuit.  But he did not recall that at the time of his
deposition or trial in this matter.  *See* Christensen Decl., ¶ 8.

Christensen was not Fleming's counsel's primary contact
on Plaintiff's prior lawsuit.  He did not have personal knowledge
of the events that lead to Plaintiff bringing the prior lawsuit.
Christensen got involved with pre-petition lawsuit only after the
jury rendered its verdict.  He oversaw Fleming's efforts to
return to the original, licensed version of Plaintiff's software.

He believed that by taking out the changes that were made to Plaintiff's software, Fleming would have the original, licensed version and thereby, be in compliance with the jury's verdict. He also oversaw Fleming's subsequent abandonment of Plaintiff's software altogether in favor of the Excel Spreadsheets.  *See* Christensen Decl., ¶ 9.

  Furthermore, Plaintiff's counsel cannot dispute that he himself had forgotten he knew when Christensen in fact became President of Fleming.  Plaintiff's counsel deposed Mark Dillon on March 25, 2002.  Dillon told Plaintiff that Christensen was the boss at Fleming's Hawaii Division.  *See* Hosoda Decl., 3/25/02 Depo. of Dillon, Ex. A at 89:1-9.  On February 28, 2003, during the pre-petition lawsuit, Plaintiff's counsel questioned Ralph Stussi.  Stussi testified that he ceased being Fleming's President in April of 2002.  *See* Hosoda Decl., 2/28/03 Trial Trans., Ex. B at 85:4-9.  Yet, despite knowing and apparently forgetting this sequence of events, Plaintiff wants this Court to believe that Christensen and his counsel deliberately concealed the true date of Christensen's promotion to President in order to succeed on summary judgment in this case.  In light of the incessant litigation the parties have been embroiled in, it is not surprising that on occasion a party's memory may lapse. Christensen forgot it was March of 2002 that he became President. Lex Smith forgot, and so did Plaintiff and his counsel.  Having a

8

faulty memory, as Plaintiff's counsel cannot deny being guilty of himself, does not equate to fraud on the Court.

Finally, the invoices Plaintiff relies upon as proof that Lex Smith allegedly conspired to commit fraud was in Plaintiff's possession since 2003 during the first infringement lawsuit. *See* Hogan Decl., ¶ 4 and Ex. 4 attached thereto. Plaintiff has also had the email announcing Christensen's promotion since September, 2005 when it was produced as part of the Guidance production. *See* PCT Opp., Walker Declaration, ¶¶ 3-4. Despite having this information at the time Christensen was deposed in December, 2004 and at the time of trial in March, 2006, Plaintiff did nothing with it until faced with the possibility of an adverse recommendation against him on the fee motions pending before this Court.

Under all of the facts and circumstances, including those presented by Lex Smith and the PCT, there is no basis for the Court to disqualify itself from reviewing the parties' fee motions. "There is as much obligation for a judge not to recuse when there is no occasion form him to do so as there is for him to do so when there is." *Himan v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

\

\

\

IV.  **CONCLUSION**

For the foregoing reasons, the Employees' respectfully request that Plaintiff Wayne Berry's Motion for Recusal be denied and that the Court grant any such further relief it deems just and proper under the circumstances.

DATED:  Honolulu, Hawaii, May 17, 2006.


 /s/ Lyle S. Hosoda
LYLE S. HOSODA
RAINA P.B. MEAD

Attorneys for Defendants
BRIAN CHRISTENSEN, MARK DILLON,
TERESA NOA, MELVIN PONCE, ALFREDDA
WAIOLAMA, JACQUELINE RIO, JUSTIN
FUKUMOTO, and SONIA PURDY