# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

APR 0 5 2002

2.A

| | |
|---|---|
| WAYNE BERRY, ) | CIVIL NO. CV01-00446 |
| Plaintiff, ) | SPK LEK |
| ) | (Copyright) |
| vs. ) | |
| FLEMING COMPANIES, INC., ) | |
| aka FLEMING FOODS, INC., ) | |
| aka FLEMING, DOE ) | |
| INDIVIDUALS 1-50 AND DOE ) | |
| PARTNERSHIPS, ) | |
| CORPORATIONS AND OTHER ) | |
| ENTITIES 1-20 S 1-50, ) | |
| Defendants. ) | |

DEPOSITION OF MARK DILLON

Taken on behalf of the Plaintiff pursuant to Notice, on Monday, March 25, 2002, commencing at 9:00 a.m., at the Law Offices of Lynch Ichida Thompson Kim & Hirota, 1132 Bishop Street, Suite 1405, Honolulu, Hawaii 96813.

Case 1:03-cv-00385-DAE-LEK   Document 974-4   Filed 05/17/2006   Page 3 of 5

Wayne Berry vs. Fleming Companies                                Multi-Page™                                      Mark Dillon
                                                                                                          March 25, 2002

### Page 2

```
 1   APPEARANCES:
 2
         For Plaintiff Wayne Berry:
 3
           TIMOTHY J. HOGAN, ESQ.
 4         Lynch Ichida Thompson Kim & Hirota
           1132 Bishop Street, Suite 1405
 5         Honolulu, Hawaii 96813
           (808) 528-0100
 6
 7       For Defendant Fleming Companies, Inc., aka
         Fleming Foods, Inc., aka Fleming:
 8
           LEX R. SMITH, ESQ.
 9         Kobayashi Sugita & Goda
           First Hawaiian Center
10         999 Bishop Street, Suite 2600
           Honolulu, Hawaii 96813
11         (808) 539-8700
12       For Defendant Hawaiian Express Service,
13       Inc.:
           ROY J. TJIOE, ESQ.
14         Goodsill Anderson Quinn & Stifel
           Alii Place, Suite 1800
15         1099 Alakea Street
           Honolulu, Hawaii 96813
16         (808) 547-5600
17
18   Also Present: Wayne Berry
19
20   REPORTED BY: Laura Savo, CSR No. 347
                  Notary Public, State of Hawaii
21
22
              -oOo-
23
24
25
```

### Page 3

```
 1              I N D E X
 2   EXAMINATION:                       PAGE
 3   BY MR. HOGAN                         5
 4   Lunch Recess                       119
 5
 6   EXHIBITS FOR IDENTIFICATION:
 7   Plaintiff's Exhibit 1               28
     (9-page document entitled "Declaration of
 8   Mark Dillon")
 9   Plaintiff's Exhibit 2               48
     (3-page document entitled "Declaration of
10   Mark Dillon")
11   Plaintiff's Exhibit 3               54
     (1-page document containing logistics data,
12   dated 10-7-99)
13   Plaintiff's Exhibit 4               57
     (21-page document entitled "Exhibit 8.txt")
14
     Plaintiff's Exhibit 5               57
15   (21-page document entitled
     "ProgrammingLog.txt")
16
     Plaintiff's Exhibit 6               57
17   (9-page document entitled "Exhibit 2.txt")
18   Plaintiff's Exhibit 7               75
     (2-page email addressed to
19   MarkD@FlemingLogistics.com from Badten,
     dated 11-19-99)
20
     Plaintiff's Exhibit 8              101
21   (1-page letter addressed to Mark S. Hansen
     from Wayne Berry, dated 11-27-00)
22
     Plaintiff's Exhibit 9              105
23   (1-page memo addressed to Wayne Berry from
     Ralph Stussi, dated 10-28-99)
24
     Plaintiff's Exhibit 10             107
25   (5-page document entitled "End-User
```

### Page 4

```
 1           I N D E X (Cont'd)
 2                                     PAGE
     Plaintiff's Exhibit 11            108
 3   (2-page memo addressed to Wayne Berry from
     Ralph Stussi, dated 11-24-99)
 4
     Plaintiff's Exhibit 12            110
 5   (2-page computer screen print displaying
     opening menu for the database)
 6
     Plaintiff's Exhibit 13            114
 7   (2-page computer screen print displaying
     data)
 8
     Plaintiff's Exhibit 14            115
 9   (2-page computer screen print displaying
     master load plan for API)
10
     Plaintiff's Exhibit 15            116
11   (2-page computer screen print displaying
     the company name screen)
12
     Plaintiff's Exhibit 16            117
13   (2-page computer screen print displaying
     pop-up screen for FCS Logistics)
14
     Plaintiff's Exhibit 17            119
15   (1-page computer screen print displaying
     for costing services)
16
     Plaintiff's Exhibit 18            124
17   (1-page computer screen print displaying
     delivery costing)
18
     Plaintiff's Exhibit 19            140
19   (2-page computer screen print displaying
     Functional State of Logistics Database)
20
     Plaintiff's Exhibit 20            170
21   (2-page document entitled "Fleming Asset
     Purchase from API")
22
     Plaintiff's Exhibit 21            186
23   (2-page letter addressed to Steve
     Christensen from Pete Schaul, dated 6-11-99)
24
     UNANSWERED QUESTIONS AS REQUESTED BY COUNSEL:
25
```

### Page 5

 1   (Pursuant to Rule 14 of the Rules Governing Court
 2   Reporting in Hawaii, the reporter's disclosure
 3   was made and is attached hereto.)
 4              MARK DILLON
 5   Having been called as a witness and being first
 6   duly sworn to tell the truth, the whole truth and
 7   nothing but the truth, was examined and testified
 8   as follows:
 9              EXAMINATION
10   BY MR. HOGAN:
11       Q  Good morning, Mr. Dillon.  Would you,
12   please, state your full name and spell it for the
13   court reporter.
14       A  My name is Mark Robert Dillon, M-a-r-k
15   R-o-b-e-r-t D-i-l-l-o-n.
16       Q  Have you been known by any other names
17   other than --
18       A  No.
19       Q  -- that?
20          Have you ever had your deposition taken
21   before?
22       A  No.
23       Q  Have you ever attended a deposition?
24       A  No.
25       Q  Have you ever testified in court?

Case 1:03-cv-00385-DAE-LEK   Document 974-4   Filed 05/17/2006   Page 4 of 5

Wayne Berry vs. Fleming Companies                 Multi-Page™                                    Mark Dillon
                                                                                          March 25, 2002

Page 86

1  reconstructed for myself, for my own purposes,
2  just to help me remember the kind of chain of
3  events at certain times just so I could represent
4  what I understood to be the facts at that time.
5      Q  Why did you create that, whatever it
6  is, the document you're talking about?
7      A  Well, I think it had a number of
8  purposes. I created it just really to clarify,
9  to gather together any information I had on what
10 was going on at certain points of time that were
11 at issue, you know, during which there were
12 developments that were --
13     MR. SMITH: Is this the memo you wrote
14 to me, or is this something different you're
15 describing now?
16     THE WITNESS: You've seen it, yeah.
17 You saw it.
18     MR. SMITH: This is the one you sent to
19 me that was on the first CD I got?
20     THE WITNESS: Yes.
21     MR. SMITH: Okay. So this is
22 something -- Well, you can tell him what the
23 purpose was, but it sure seemed like it was
24 prepared for me. It was addressed to me.
25     THE WITNESS: Yes. Well, it was

Page 87

1  addressed to him, but I explained to him my
2  recollections about all the things that were --
3  all the kind of events, like in 2000, Mr. Perez
4  says, "In 2000, the database was down," what led
5  us to reply as FlemingPO.exe and how we did that,
6  those kinds of things. And any emails, I made
7  references to any emails or documentation I had
8  just so I would have a way to substantiate my
9  recollection, and I gave a copy of that to
10 mister --
11     MR. SMITH: Yeah, I would characterize
12 it, actually, as sort of a memo from Mark to me
13 explaining the things, what the things were and
14 where they fit into the time line of the rest of
15 the information on the CD, and that was actually
16 one of the reasons we had a delay in producing
17 the CD to you because I told him that we weren't
18 supposed to produce that memo to your side.
19     MR. HOGAN: I remember you mentioned
20 that to me.
21     Q  Did you review that prior to coming in
22 here today?
23     A  Yes, I did just to refresh my memory.
24     Q  How many times have you met Mr. Smith?
25 Let's talk about the number of times.

Page 88

1      A  Twice.
2      Q  Okay. When was the first time?
3      A  Friday.
4      Q  Friday. I presume you've spoken to him
5  on the phone or had other contacts with him?
6      A  Yes.
7      Q  We don't want to know what you were
8  talking about. So you met with him Friday?
9      A  Yes.
10     Q  When was the other time?
11     A  Just this morning.
12     Q  How long did you meet with him on
13 Friday?
14     A  Forty-five minutes, something like
15 that.
16     Q  Was anyone else in the room with you?
17     A  No.
18     Q  Did you discuss your testimony with
19 Ralph Stussi? That's S-t-u-s-s-i.
20     A  No.
21     Q  When was the last time you spoke with
22 Mr. Stussi?
23     A  I saw him Friday, actually.
24     Q  You saw him Friday?
25     A  Yeah.

Page 89

1      Q  Is Mr. Stussi still employed at Fleming
2  Kapolei?
3      A  I'm not sure.
4      Q  Why do you say that?
5      MR. SMITH: Well, I'll just tell you.
6  The answer's no.
7  BY MR. HOGAN:
8      Q  All right. Who's the boss out there?
9      A  The boss would be Brian Christensen.
10     Q  Do you have any information regarding
11 why Mr. Stussi's no longer in Kapolei?
12     A  No, I don't.
13     Q  Have you heard any speculation from any
14 employees --
15     A  No, I haven't.
16     Q  -- at Fleming?
17        Did you discuss that with Theresa Noa?
18     A  No, I did not.
19     Q  Anyone else at Fleming?
20     A  No, I did not.
21     Q  Do you know Brian Christensen?
22     A  Not very well.
23     Q  Is he related, to your knowledge, to
24 Steve Christensen?
25     A  They're not related.

Case 1:03-cv-00385-DAE-LEK    Document 974-4    Filed 05/17/2006    Page 5 of 5

Wayne Berry vs. Fleming Companies                Multi-Page™                        Mark Dillon
                                                                                  March 25, 2002

## Page 222

1  Wednesday instead. Frankly, I think if I told
2  him, "You have no choice. You gotta be here
3  tomorrow," I can produce him tomorrow. It's up
4  to you whether you're really willing to grant the
5  courtesy or not.
6      MR. HOGAN: Why don't we do this. Why
7  let you go back, contact him. I don't think he's
8  going to be that long. It may not be a long day
9  and get it over with. Let's talk before the end
10 of the day. All right?
11     MR. SMITH: Sure.
12     MR. HOGAN: Let's leave him on for
13 tomorrow, but I promise to talk to you before
14 5:00 o'clock.
15     MR. SMITH: Okay.
16     MR. HOGAN: And then we can go from
17 there. I'd rather get it over with.
18     MR. SMITH: I'll give you a call.
19     MR. HOGAN: Fair enough. Thank you.
20     (Whereupon the proceedings
21     were adjourned at 3:11 p.m.)

## Page 223

1      I, the undersigned, MARK DILLON, being first
2  duly sworn say:
3      I have read and/or had translated the
4  foregoing deposition and know the contents
5  thereof, and I certify that the same is true of
6  my own knowledge, except as to those matters
7  which are therein stated upon my information and
8  belief, and as to those matters, I believe it to
9  be true.
10     I declare under penalty of perjury that the
11 foregoing is true and correct.
12
13     Executed on _____,
14 2002, at _____,
15 _____.
16
17     _____
       MARK DILLON

## Page 224

CERTIFICATE

STATE OF HAWAII  )
                 ) ss.
                 )

    I, LAURA SAVO, a Notary Public in and
for the State of Hawaii, do hereby certify:

    That prior to being examined, the
witness herein, Mark Dillon, was sworn by me to
testify to the truth, the whole truth and nothing
but the truth;

    That the foregoing deposition was taken
down by me in machine shorthand at the time and
place herein stated, and was thereafter reduced
to typewriting under my supervision;

    That the foregoing is a full, true
and correct transcript of said deposition;

    That after said deposition was reduced
to typewriting, the witness, in accordance with
Rule 30(e) of the Hawaii Rules of Civil
Procedure, was duly informed of the right to make
such corrections as might be necessary to render
the same true and correct.

    I further certify that I am not of
counsel or attorney for any of the parties to
this case, nor in any way interested in the
outcome hereof, and that I am not related to any
of the parties hereto.

    Witness my hand and seal this 2nd day
of April, 2002.


_____
LAURA SAVO, RPR, CSR NO. 347
Notary Public, State of Hawaii
My Commission Expires: 11/28/2005