LYLE S. HOSODA & ASSOCIATES, LLC

LYLE S. HOSODA          3964-0
RAINA P.B. MEAD         7329-0
345 Queen Street, Suite 804
Honolulu, Hawaii 96813
Telephone: (808) 524-3700
Facsimile: (808) 524-3838
E-mail: lsh@hosodalaw.com

Attorneys for Defendants
BRIAN CHRISTENSEN, MARK DILLON,
TERESA NOA, MELVIN PONCE, ALFREDDA
WAIOLAMA, JACQUELINE RIO, JUSTIN
FUKUMOTO, AND SONIA PURDY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen,<br><br>        Plaintiff,<br><br>    v.<br><br>HAWAIIAN EXPRESS SERVICE, INC., a California Corporation; et al.<br><br>        Defendants. | CIVIL NO. CV03-00385 SOM-LEK<br>(Copyright)<br><br>**DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO, JUSTIN FUKUMOTO, AND SONIA PURDY'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S AMENDMENT TO MOTION FOR NEW TRIAL FILED ON 3/21/06 OR IN THE ALTERNATIVE MOTION FOR RECONSIDERATION AND RULE 60(b) RELIEF; DECLARATION OF BRIAN CHRISTENSEN; DECLARATION OF LYLE S. HOSODA; EXHIBITS "A"-"F"; CERTIFICATE OF SERVICE**<br><br>Hearing:<br>Date:    June 5, 2006<br>Time:    9:45 a.m.<br>Judge:  Hon. Susan Oki Mollway |

**DEFENDANTS BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO, JUSTIN FUKUMOTO, AND SONIA PURDY'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S AMENDMENT TO MOTION FOR NEW TRIAL FILED ON 3/21/06 OR IN THE ALTERNATIVE <u>MOTION FOR RECONSIDERATION AND RULE 60(b) RELIEF</u>**

I.  **<u>INTRODUCTION</u>**

       Christensen made an honest mistake when he stated he became President of Fleming's Hawaii Division ("Fleming") in March of 2003 rather than March of 2002 at his deposition taken on December 6, 2004 and when he testified at trial on March 2, 2006. He had no intention of misleading the Court. He simply had a memory lapse.

       Plaintiff and his counsel apparently suffered the same memory lapse when they forgot that Mark Dillon told them in his deposition taken on March 25, 2002 that Christensen was the boss at Fleming and forgot that Ralph Stussi testified at the March, 2003 pre-petition trial that he left Fleming in April, 2002.

       Moreover, Plaintiff and his counsel have had in their possession the Kobayashi Sugita & Goda invoices since 2003, when they were filed in the first infringement case and the email that announced Christensen's promotion to President since September, 2005, when it was turned over as part of the Guidance production. Despite having all of this information at the time Christensen filed for summary judgment, and the ability to cross-examine Christensen on the apparent discrepancy at trial on March 2, 2006, Plaintiff did nothing. He did nothing until faced with a motion for attorney's fees and costs filed by the Employees. In

a desperate attempt to avoid entry of an unfavorable fee order against him, Plaintiff resorts to an attack on Christensen's credibility and the wisdom of this Court in its summary judgment rulings to date. Because Plaintiff presents no intervening change in the law, no newly discovered evidence, and no manifest error in law or in fact that would impact this Court's prior rulings, his fourth motion for reconsideration must be denied.

II.  **LEGAL STANDARD**

It is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D. Haw. 1987)(citations omitted), *rev'd on other grounds*, 863 F.2d 617 (9th Cir. 1988). Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, or to prevent manifest justice. Id. The District of Hawaii has implemented these standards in Local Rule 60.1.

Mere disagreement with a previous order is not a sufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F.Supp. 1572 (D. Haw. 1988). Furthermore, a reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *See All Haw. Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 649-650 (D. Haw. 1987) *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988).

III. **NO PERJURY OR FRAUD HAS BEEN COMMITTED**.

Unwilling to accept the mere $4 the jury felt he deserved with regard to the Employees, Plaintiff now contends that he should be entitled to a new trial because Christensen and his counsel allegedly engaged in a purposeful and unconscionable plan to defraud the Court into granting Christensen summary judgment. Nothing could be further from the truth. Simply put, Christensen suffered a memory lapse. He made an honest mistake. He certainly had no intention of misleading the Court when he was deposed in December, 2004 or when he testified at trial in March, 2006.

Ninth Circuit law requires that a party moving for relief under Rule 60(b)(3) for fraud by an adverse party must: (1) prove by clear and convincing evidence that the judgment was obtained by fraud, misrepresentation, or misconduct and (2) that the conduct complained of prevented the moving party from fully

and fairly presenting the case. *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1337 (9th Cir. 1986); *Bunch v. U.S.*, 680 F.2d 1271, 1283 (9th Cir. 1982).

To determine whether there has been fraud on the court, the Ninth Circuit applies the following definition:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999).

"To constitute fraud on the court, the alleged misconduct must 'harm the integrity of the judicial process.'" *Id*. Ultimately, the moving party must show by clear and convincing evidence "an unconscionable plan or scheme which is designed to improperly influence the court in its decision". *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960).

As Christensen explains in his declaration attached hereto, when asked at his deposition in December, 2004, when he became President of Fleming's Hawaii division ("Fleming"), his mind went to the month of March. Christensen deduced, albeit incorrectly, that he became President in March of 2003 and not 2002 because he was not involved in any substantive way with Berry's first lawsuit against Fleming until after the verdict was rendered. He did not intentionally or purposely misstate the

date he became Fleming's President. He did not scheme to defraud the Plaintiff or the Court. He made an honest mistake. *See* Christensen Decl., ¶¶ 6-7.

Ralph Stussi, Fleming's former President, was the primary contact for all matters related to and concerning the pre-petition lawsuit up through trial and until the verdict was rendered. Stussi was involved with all decision-making relative to that lawsuit and in fact returned to attend the trial against Fleming as its representative. *See* Christensen Decl., ¶ 8; *See* Smith Decl.

While Christensen assumed the day to day operations of Fleming in March, 2002, he was not a part of and had little or no knowledge of Plaintiff's prior litigation proceedings against Fleming. Christensen acknowledges that as Fleming's President in 2002, he would have likely received invoices from Fleming's local counsel for services rendered in connection with Plaintiff's prior lawsuit. But he did not recall that at the time of his deposition or trial in this matter. *See* Christensen Decl., ¶ 8.

Christensen was not Fleming's counsel's primary contact on Plaintiff's prior lawsuit. He did not have personal knowledge of the events that lead to Plaintiff bringing the prior lawsuit. Christensen got involved with the pre-petition lawsuit only after the jury rendered its verdict. He oversaw Fleming's efforts to return to the original, licensed version of Plaintiff's software.

5

He believed that by taking out the changes that were made to Plaintiff's software, Fleming would have the original, licensed version and thereby be in compliance with the jury's verdict. He also oversaw Fleming's subsequent abandonment of Plaintiff's software altogether in favor of the Excel Spreadsheets. *See* Christensen Decl., ¶ 9.

Christensen's reasonable explanation and Lex Smith's supporting declaration do not demonstrate "an unconscionable plan or scheme which is designed to improperly influence the court in its decision". *England,* 281 F.2d at 309. No perjury or fraud has been committed, and therefore, Berry's motion for reconsideration must be denied.

III. **PLAINTIFF PRESENTS NO NEWLY DISCOVERED EVIDENCE**.

Plaintiff's counsel cannot dispute that he himself had forgotten he knew when Christensen became President of Fleming since March, 2002. Plaintiff's counsel deposed Mark Dillon on March 25, 2002. Dillon told Plaintiff that Christensen was the current boss at Fleming's Hawaii Division. *See* Hosoda Dec., 3/25/02 Depo. of Dillon, Ex. A at 89:1-9. On February 28, 2003, during the pre-petition trial, Plaintiff's counsel questioned Ralph Stussi. Stussi testified that he ceased being Fleming's President in April of 2002. *See* Hosoda Dec., 2/28/03 Trial Tran., Ex. B at 85:4-9. Yet, despite knowing and apparently forgetting this sequence of events, Plaintiff wants this Court to

6

believe that Christensen and his counsel deliberately concealed the true date of Christensen's promotion in order to succeed on summary judgment in this case. In light of the incessant litigation the parties have been embroiled in, it is not surprising that on occasion a party's memory may lapse. Christensen forgot it was March of 2002 that he became President. Lex Smith forgot, and so did Plaintiff and his counsel. Having a faulty memory, as Plaintiff's counsel cannot deny being guilty of himself, does not equate to perjury or fraud on the Court.

Additionally, the invoices Plaintiff relies upon as proof that Lex Smith allegedly conspired to commit fraud was in Plaintiff's possession since 2003 during the first infringement lawsuit. *See* Hogan Decl., ¶ 4 and Ex. 4 attached thereto. Plaintiff has also had the email announcing Christensen's promotion since September, 2005 when it was produced as part of the Guidance production. *See* PCT Opp., Walker Declaration, ¶¶ 3-4. Despite having this information at the time Christensen was deposed in December, 2004 and at the time of trial in March, 2006, Plaintiff did nothing with it until faced with the possibility of an adverse recommendation against him on the fee motions pending before Magistrate Kobayashi. Evidence is not "newly discovered" if it could have been discovered with reasonable diligence. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 212 (9th Cir. 1987).

Plaintiff has known Christensen's true promotion date was March, 2002 (Ex. A at 89:1-9, 3/25/02 Depo. of Dillon; Ex. B at 85:4-9, 2/28/03 Trial Testimony of Stussi) and has had documentation confirming that date (Hogan Decl., ¶ 4) since the first infringement case three years ago.  Such evidence is not newly discovered or sufficiently material to induce the Court to reverse its prior decision.

IV. **THERE IS NO MANIFEST ERROR IN LAW OR IN FACT THAT WOULD IMPACT THIS COURT'S SUMMARY JUDGMENT RULINGS AS TO CHRISTENSEN**.

Given Christensen's rational explanation and the lack of any intent on his part to perjure himself or defraud the Court, the factual conflict in Christensen's testimony has no impact on the Court's analysis which lead to summary judgment in his favor.

A. **PLAINTIFF FAILED TO PLEAD OR FILE AN AMENDED COMPLAINT FOR EMPLOYEE ACTS PRIOR TO MARCH 7, 2003**.

First, the Court rightly determined that Berry's Second Amended Verified Complaint, filed on June 18, 2004 ("SAVC"), failed to allege claims against Christensen and the other employee defendants for acts occurring before Plaintiff's pre-petition lawsuit against Fleming:

> Fleming is named as a defendant in Count I. Berry, however, could not be suing Fleming for the actions underlying his earlier case against Fleming.  Present claims against Fleming must therefore apply only to events occurring after the acts in issue in the

8

>earlier case.  Because Dillon, Noa, and Christensen are sued only as Fleming's former employees and C&S's present employees, the court construes Count I as applying only to events occurring after the acts in issue in the earlier case.

Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 26-27.

Second, the Court determined that neither the allegations nor the prayer in the SAVC sufficiently put the Employee Defendants on notice that, with respect to their employment by Fleming, they were being sued for actions beyond the time frame in issue for Fleming in this lawsuit.  Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 27-30.  The Court concluded that the Employees were being sued for periods not already covered by the earlier lawsuit, and cautioned Berry that if he wanted to seek damages from the Employee Defendants for earlier periods, he would have to seek leave of Court to file another amended pleading.  Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 29-30.  The Court cautioned Berry that filing an amended pleading might be futile absent evidence that the Employee Defendants actually profited from the alleged infringement or absent a reason for Berry to be concerned that his total damage award or his ability to collect any judgment would be materially affected without such an amendment.  Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 30, fn. 6.  Thus, the Employees, including Christensen, cannot be held liable for acts prior to March 7, 2003.  Plaintiff

9

cannot deny that he knew during the pre-petition lawsuit and prior to filing the complaint initiating this action that Christensen was Fleming's President as of March, 2002.  Yet, he knowingly chose to forgo pleading any allegations against Christensen or any of the other employee defendants for acts prior to March 7, 2003 and seeking leave to file an amended complaint.  As Christensen had very little or no knowledge of Plaintiff's pre-petition lawsuit; did not have any decision-making authority with respect to the prior lawsuit; and never used Plaintiff's FCS, the Court was right in its hindsight that seeking an amendment would have been futile.

    B.    **THE FACTUAL CONFLICT IN CHRISTENSEN'S TESTIMONY IS IMMATERIAL TO THE COURT'S SUMMARY JUDGMENT ANALYSIS**.

The only relevant period of infringement for this case is between April 1, 2003 and June 9, 2003.[1]  Christensen consistently testified that he was President of Fleming's Hawaii division during the relevant period of infringement and the Court properly granted him summary judgment on all counts of the SAVC as to that time period.  At trial, Christensen testified to the following:

---

[1] The Court ruled that this lawsuit concerned only acts occurring on or after April 1, 2003.  See Order Denying Defendants' Motions for Summary Judgment; Order Affirming Magistrate Judge's Adoption of Discovery Master's Order Regarding F-1 Program Materials, filed on October 21, 2005 at 1-2, fn. 3.

10

> Q. Good morning, Mr. Christensen. What is your job presently?
>
> A. I am the president of C&S Wholesale, the Hawaii division.
>
> Q. And what was your job in - - let's say April 1st 2003?
>
> A. I was president of Fleming Companies Hawaii division.

*See* Hosoda Decl., Ex. D (3/1/06 Trial Trans.) at 88:13-17.

> Q. Okay, now, in this period April 1st, 2003, to June 9th, 2003, what was your job?
>
> A. I was the division president of Fleming Companies here in Hawaii.

*See* Hosoda Decl., Ex. E (3/2/06 Trial Trans.) at 72:20-23.

He also consistently testified that following the March 6, 2003 jury verdict, Fleming's intent was to revert to the original licensed version of FCS and it attempted to do just that:

> Q. An Mr. Christensen, what was your understanding - - was it your understanding that it was Fleming's intention as of April 1st, 2003 to go back to the Berry system as it was originally configured by Mr. Berry?
>
> A. Yes, it was.

*See* Hosoda Decl., Ex. D (3/1/06 Trial Trans.) at 88:22-89:1.

> Q. Why didn't you tell 'em to stop using it?
>
> A. Because I didn't think we had to. After the ruling, my understanding is Fleming did have a license to use the software in its original form, and we reverted back to what we thought was the original form.

11

*See* Hosoda Decl., Ex. E (3/2/06 Trial Trans.) at 73:13-17.

> Q.  Now, you testified that - - you were aware that Fleming lost an infringement trial on or about March 6, 2003?
>
> A.  Yes.
>
> Q.  And you are aware that despite losing, Fleming continued to use the very software that was at least the subject of that case?
>
> A.  Well- - yes.  What we lost was that we couldn't make changes to the software, but my understanding was, we had a license to use it in its original licensed form, and that's what we attempted to do.

*See* Hosoda Decl., Ex. E (3/2/06 Trial Trans.) at 94:16-25.

Christensen's mistaken testimony, placed in its proper context, does nothing to negate the Court's summary judgment rulings.  By order entered on January 26, 2005, the Court found there was no evidence that Christensen ever used the version of FCS that was used by Fleming between April 1, 2003 and June 9, 2003.  Thus, the Court granted summary judgment in favor of Christensen on the issue of direct infringement.  *See* Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 32, 37.  Plaintiff has put forth no evidence that would reverse this ruling.

The Court further determined that following the March 6, 2003 jury verdict, Mark Dillon accessed FCS in an attempt to comply with the jury verdict by restoring the system to what he believed was its original, licensed form.  The Court found that the Employees were not aware that the version of FCS the

logistics department was using between April 1, 2003 and June 9, 2003 was not the original licensed version and that they were not allowed to use it.  *See* Hosoda Decl., Ex. C (Jan 26, 2005 Order) at 32-33; Ex. F (Jun. 27, 2005 Order) at 11-12.  The Court determined that emails written by Christensen at the time of the jury verdict, stating that a replacement may be needed for Berry's software, did not establish any knowledge of infringement, nor did they establish that Christensen had knowledge at any time of infringing elements in Fleming's version of FCS.  *See* Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 38.  The Court found the jury verdict did not provide notice that attempts to return Fleming's version of FCS to the original, licensed form were unlawful.  *See* Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 33.  Thus, even if Christensen was President of Fleming's Hawaii division before the March 6, 2003 jury verdict, Christensen did not have knowledge of the infringement.  The Court properly determined Christensen could not be liable for contributory infringement.  *See* Hosoda Decl., Ex. (Jan. 26, 2005 Order) at 38.  Plaintiff offers nothing that would change this ruling.

Finally, the Court determined that Berry failed to present any evidence of any direct financial benefit to Christensen.  *Id*.  Aside from the compensation adjustments related to the new positions Christensen held and the normal

13

merit increases he received, Christensen did not receive any special or additional compensation or bonuses related to Plaintiff's software or the development of any computer software for Fleming while employed at Fleming.  *See* Christensen Dec., ¶ 5.  He further did not receive any direct financial benefit as a result of any infringement while employed at C&S.  *See* Hosoda Decl., Ex. C (Jan. 26, 2005 Order) at 38-9.  Thus, the Court justly found Christensen not liable for vicarious infringement. *Id*.  Again, Plaintiff presents no contradictory evidence.  As Plaintiff cannot point to any manifest error in law or in fact that would warrant a reversal of this Court's prior rulings, Plaintiff's motion for reconsideration must be denied.

V.   **CONCLUSION**

Plaintiff offers nothing new or material that would persuade this Court to change its prior decision.  The Employees respectfully request that Plaintiff's motion be denied.

DATED:  Honolulu, Hawaii, March 18, 2006.

 /s/ Lyle S. Hosoda
LYLE S. HOSODA
RAINA P.B. MEAD

Attorneys for Defendants
BRIAN CHRISTENSEN, MARK DILLON, TERESA NOA, MELVIN PONCE, ALFREDDA WAIOLAMA, JACQUELINE RIO, JUSTIN FUKUMOTO, and SONIA PURDY