# EXHIBIT A

Case 1:03-cv-00385-DAE-LEK  Document 977-4  Filed 05/18/2006  Page 2 of 5

Wayne Berry vs. Fleming Companies · Multi-Page™ · Mark Dillon March 25, 2002

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

APR 0 5 2002

2.A

| | | |
|---|---|---|
| WAYNE BERRY, | ) | CIVIL NO. CV01-00446 |
| | ) | SPK LEK |
| Plaintiff, | ) | (Copyright) |
| | ) | |
| vs. | ) | |
| | ) | |
| FLEMING COMPANIES, INC., | ) | |
| aka FLEMING FOODS, INC., | ) | |
| aka FLEMING, DOE | ) | |
| INDIVIDUALS 1-50 AND DOE | ) | |
| PARTNERSHIPS, | ) | |
| CORPORATIONS AND OTHER | ) | |
| ENTITIES 1-20 S 1-50, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

DEPOSITION OF MARK DILLON

Taken on behalf of the Plaintiff pursuant to Notice, on Monday, March 25, 2002, commencing at 9:00 a.m., at the Law Offices of Lynch Ichida Thompson Kim & Hirota, 1132 Bishop Street, Suite 1405, Honolulu, Hawaii 96813.

Page 2

1  APPEARANCES:
2
3    For Plaintiff Wayne Berry:
4      TIMOTHY J. HOGAN, ESQ.
       Lynch Ichida Thompson Kim & Hirota
       1132 Bishop Street, Suite 1405
5      Honolulu, Hawaii 96813
       (808) 528-0100
6
7    For Defendant Fleming Companies, Inc., aka
     Fleming Foods, Inc., aka Fleming:
8
       LEX R. SMITH, ESQ.
9      Kobayashi Sugita & Goda
       First Hawaiian Center
10     999 Bishop Street, Suite 2600
       Honolulu, Hawaii 96813
11     (808) 539-8700
12
     For Defendant Hawaiian Express Service,
13   Inc.:
14     ROY J. TJIOE, ESQ.
       Goodsill Anderson Quinn & Stifel
15     Alii Place, Suite 1800
       1099 Alakea Street
16     Honolulu, Hawaii 96813
       (808) 547-5600
17
18  Also Present: Wayne Berry
19
20  REPORTED BY: Laura Savo, CSR No. 347
                 Notary Public, State of Hawaii
21
22          -oOo-
23
24
25

Page 4

1              I N D E X (Cont'd)
2                                          PAGE
   Plaintiff's Exhibit 11           108
3  (2-page memo addressed to Wayne Berry from
   Ralph Stussi, dated 11-24-99)
4
   Plaintiff's Exhibit 12           110
5  (2-page computer screen print displaying
   opening menu for the database)
6
   Plaintiff's Exhibit 13           114
7  (2-page computer screen print displaying
   data)
8
   Plaintiff's Exhibit 14           115
9  (2-page computer screen print displaying
   master load plan for API)
10
   Plaintiff's Exhibit 15           116
11 (2-page computer screen print displaying
   the company name screen)
12
   Plaintiff's Exhibit 16           117
13 (2-page computer screen print displaying
   pop-up screen for FCS Logistics)
14
   Plaintiff's Exhibit 17           119
15 (1-page computer screen print displaying
   for costing services)
16
   Plaintiff's Exhibit 18           124
17 (1-page computer screen print displaying
   delivery costing)
18
   Plaintiff's Exhibit 19           140
19 (2-page computer screen print displaying
   Functional State of Logistics Database)
20
   Plaintiff's Exhibit 20           170
21 (2-page document entitled "Fleming Asset
   Purchase from API")
22
   Plaintiff's Exhibit 21           186
23 (2-page letter addressed to Steve
   Christensen from Pete Schaul, dated 6-11-99)
24
   UNANSWERED QUESTIONS AS REQUESTED BY COUNSEL:
25

Page 3

1              I N D E X
2  EXAMINATION:                  PAGE
3    BY MR. HOGAN                   5
4  Lunch Recess                   119
5
6  EXHIBITS FOR IDENTIFICATION:
7  Plaintiff's Exhibit 1            28
   (9-page document entitled "Declaration of
8  Mark Dillon")
9  Plaintiff's Exhibit 2            48
   (3-page document entitled "Declaration of
10 Mark Dillon")
11 Plaintiff's Exhibit 3            54
   (1-page document containing logistics data,
12 dated 10-7-99)
13 Plaintiff's Exhibit 4            57
   (21-page document entitled "Exhibit 8.txt")
14
   Plaintiff's Exhibit 5            57
15 (21-page document entitled
   "ProgrammingLog.txt")
16
   Plaintiff's Exhibit 6            57
17 (9-page document entitled "Exhibit 2.txt")
18 Plaintiff's Exhibit 7            75
   (2-page email addressed to
19 MarkD@FlemingLogistics.com from Badten,
   dated 11-19-99)
20
   Plaintiff's Exhibit 8           101
21 (1-page letter addressed to Mark S. Hansen
   from Wayne Berry, dated 11-27-00)
22
   Plaintiff's Exhibit 9           105
23 (1-page memo addressed to Wayne Berry from
   Ralph Stussi, dated 10-28-99)
24
   Plaintiff's Exhibit 10          107
25 (5-page document entitled "End-User

Page 5

1  (Pursuant to Rule 14 of the Rules Governing Court
2  Reporting in Hawaii, the reporter's disclosure
3  was made and is attached hereto.)
4            MARK DILLON
5  Having been called as a witness and being first
6  duly sworn to tell the truth, the whole truth and
7  nothing but the truth, was examined and testified
8  as follows:
9            EXAMINATION
10 BY MR. HOGAN:
11    Q  Good morning, Mr. Dillon.  Would you,
12 please, state your full name and spell it for the
13 court reporter.
14    A  My name is Mark Robert Dillon, M-a-r-k
15 R-o-b-e-r-t D-i-l-l-o-n.
16    Q  Have you been known by any other names
17 other than --
18    A  No.
19    Q  -- that?
20       Have you ever had your deposition taken
21 before?
22    A  No.
23    Q  Have you ever attended a deposition?
24    A  No.
25    Q  Have you ever testified in court?

Case 1:03-cv-00385-DAE-LEK   Document 977-4   Filed 05/18/2006   Page 4 of 5

Wayne Berry vs. Fleming Companies — Multi-Page™ — Mark Dillon
March 25, 2002

**Page 86**

1  reconstructed for myself, for my own purposes,
2  just to help me remember the kind of chain of
3  events at certain times just so I could represent
4  what I understood to be the facts at that time.
5     Q  Why did you create that, whatever it
6  is, the document you're talking about?
7     A  Well, I think it had a number of
8  purposes. I created it just really to clarify,
9  to gather together any information I had on what
10 was going on at certain points of time that were
11 at issue, you know, during which there were
12 developments that were --
13     MR. SMITH: Is this the memo you wrote
14 to me, or is this something different you're
15 describing now?
16     THE WITNESS: You've seen it, yeah.
17 You saw it.
18     MR. SMITH: This is the one you sent to
19 me that was on the first CD I got?
20     THE WITNESS: Yes.
21     MR. SMITH: Okay. So this is
22 something -- Well, you can tell him what the
23 purpose was, but it sure seemed like it was
24 prepared for me. It was addressed to me.
25     THE WITNESS: Yes. Well, it was

**Page 87**

1  addressed to him, but I explained to him my
2  recollections about all the things that were --
3  all the kind of events, like in 2000, Mr. Perez
4  says, "In 2000, the database was down," what led
5  us to reply as FlemingPO.exe and how we did that,
6  those kinds of things. And any emails, I made
7  references to any emails or documentation I had
8  just so I would have a way to substantiate my
9  recollection, and I gave a copy of that to
10 mister --
11     MR. SMITH: Yeah, I would characterize
12 it, actually, as sort of a memo from Mark to me
13 explaining the things, what the things were and
14 where they fit into the time line of the rest of
15 the information on the CD, and that was actually
16 one of the reasons we had a delay in producing
17 the CD to you because I told him that we weren't
18 supposed to produce that memo to your side.
19     MR. HOGAN: I remember you mentioned
20 that to me.
21     Q  Did you review that prior to coming in
22 here today?
23     A  Yes, I did just to refresh my memory.
24     Q  How many times have you met Mr. Smith?
25 Let's talk about the number of times.

**Page 88**

1     A  Twice.
2     Q  Okay. When was the first time?
3     A  Friday.
4     Q  Friday. I presume you've spoken to him
5  on the phone or had other contacts with him?
6     A  Yes.
7     Q  We don't want to know what you were
8  talking about. So you met with him Friday?
9     A  Yes.
10    Q  When was the other time?
11    A  Just this morning.
12    Q  How long did you meet with him on
13 Friday?
14    A  Forty-five minutes, something like
15 that.
16    Q  Was anyone else in the room with you?
17    A  No.
18    Q  Did you discuss your testimony with
19 Ralph Stussi? That's S-t-u-s-s-i.
20    A  No.
21    Q  When was the last time you spoke with
22 Mr. Stussi?
23    A  I saw him Friday, actually.
24    Q  You saw him Friday?
25    A  Yeah.

**Page 89**

1     Q  Is Mr. Stussi still employed at Fleming
2  Kapolei?
3     A  I'm not sure.
4     Q  Why do you say that?
5     MR. SMITH: Well, I'll just tell you.
6  The answer's no.
7  BY MR. HOGAN:
8     Q  All right. Who's the boss out there?
9     A  The boss would be Brian Christensen.
10    Q  Do you have any information regarding
11 why Mr. Stussi's no longer in Kapolei?
12    A  No, I don't.
13    Q  Have you heard any speculation from any
14 employees --
15    A  No, I haven't.
16    Q  -- at Fleming?
17       Did you discuss that with Theresa Noa?
18    A  No, I did not.
19    Q  Anyone else at Fleming?
20    A  No, I did not.
21    Q  Do you know Brian Christensen?
22    A  Not very well.
23    Q  Is he related, to your knowledge, to
24 Steve Christensen?
25    A  They're not related.

Case 1:03-cv-00385-DAE-LEK   Document 873-4   Filed 05/18/2006   Page 5 of 5

Wayne Berry vs. Fleming Companies   Multi-Page™   Mark Dillon
March 25, 2002

Page 222

1  Wednesday instead. Frankly, I think if I told
2  him, "You have no choice. You gotta be here
3  tomorrow," I can produce him tomorrow. It's up
4  to you whether you're really willing to grant the
5  courtesy or not.
6       MR. HOGAN: Why don't we do this. Why
7  let you go back, contact him. I don't think he's
8  going to be that long. It may not be a long day
9  and get it over with. Let's talk before the end
10 of the day. All right?
11      MR. SMITH: Sure.
12      MR. HOGAN: Let's leave him on for
13 tomorrow, but I promise to talk to you before
14 5:00 o'clock.
15      MR. SMITH: Okay.
16      MR. HOGAN: And then we can go from
17 there. I'd rather get it over with.
18      MR. SMITH: I'll give you a call.
19      MR. HOGAN: Fair enough. Thank you.
20      (Whereupon the proceedings
21      were adjourned at 3:11 p.m.)
22
23
24
25

Page 223

1       I, the undersigned, MARK DILLON, being first
2  duly sworn say:
3       I have read and/or had translated the
4  foregoing deposition and know the contents
5  thereof, and I certify that the same is true of
6  my own knowledge, except as to those matters
7  which are therein stated upon my information and
8  belief, and as to those matters, I believe it to
9  be true.
10      I declare under penalty of perjury that the
11 foregoing is true and correct.
12
13      Executed on _____,
14 2002, at _____,
15 _____.
16
17           _____
                 MARK DILLON
18
19
20
21
22
23
24
25

Page 224

CERTIFICATE

1
2  STATE OF HAWAII  )
                    ) ss.
3                   )
4
5       I, LAURA SAVO, a Notary Public in and
   for the State of Hawaii, do hereby certify:
6
        That prior to being examined, the
7  witness herein, Mark Dillon, was sworn by me to
   testify to the truth, the whole truth and nothing
8  but the truth;
9       That the foregoing deposition was taken
   down by me in machine shorthand at the time and
10 place herein stated, and was thereafter reduced
   to typewriting under my supervision;
11
        That the foregoing is a full, true
12 and correct transcript of said deposition;
13      That after said deposition was reduced
   to typewriting, the witness, in accordance with
14 Rule 30(e) of the Hawaii Rules of Civil
   Procedure, was duly informed of the right to make
15 such corrections as might be necessary to render
   the same true and correct.
16
        I further certify that I am not of
17 counsel or attorney for any of the parties to
   this case, nor in any way interested in the
18 outcome hereof, and that I am not related to any
   of the parties hereto.
19
        Witness my hand and seal this 2nd day
20 of April, 2002.
21
22      _____
        LAURA SAVO, RPR, CSR NO. 347
23      Notary Public, State of Hawaii
        My Commission Expires: 11/28/2005
24
25