400931v.1

KOBAYASHI, SUGITA & GODA
LEX R. SMITH          3485-0
THOMAS H. YEE        7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone No. (808) 539-8700
Facsimile No.  (808) 539-8799
Email: lrs@ksglaw.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) **DEFENDANT PCT'S OPPOSITION** |
| vs. | ) **TO PLAINTIFF WAYNE BERRY'S** |
| | ) **AMENDMENT TO MOTION FOR** |
| (Caption Continued) | ) **NEW TRIAL FILED ON 3/21/06 OR** |
| | ) **IN THE ALTERNATIVE MOTION** |
| | ) **FOR RECONSIDERATION AND** |
| | ) **RULE 60(b) RELIEF; EXHIBITS** |

|  | ) | **"A" – "M"; DECLARATION OF** |
|---|---|---|
|  | ) | **LEX R. SMITH; DECLARATION OF** |
| HAWAIIAN EXPRESS SERVICE, | ) | **MARTIN G. WALKER;** |
| INC., et al., | ) | **CERTIFICATE OF SERVICE** |
|  | ) | |
| Defendants. | ) | Hearing Date:  June 5, 2006 |
|  | ) | Hearing Time:  9:45 a.m. |
|  | ) | Judge:  Hon. Susan O. Mollway |
|  | ) | |
|  | ) | |
|  | ) | |
| _____ | ) | |

## DEFENDANT PCT'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S AMENDMENT TO MOTION FOR NEW TRIAL FILED ON 3/21/06 OR IN THE ALTERNATIVE MOTION FOR RECONSIDERATION AND RULE 60(b) RELIEF

A.     Introduction

Plaintiff's motion is perhaps the best demonstration yet of his "moving target and kitchen sink" approach to litigation that has caused Defendants to spend so many millions of dollars defending against a $57,000 claim that stands on antiquated software nobody has used since before this lawsuit started three years ago.  Plaintiff's misguided zealotry compels him to allege a conspiracy behind every inadvertent mistake, and to reflexively throw at the wall every legal theory he can think of to see what will stick.  Here, he asks for a new trial, or reconsideration, or maybe Rule 60(b) relief.  The truth is Plaintiff doesn't know what he wants, other than to avoid the reality that he has only a $57,000 verdict in one hand and potentially massive attorneys fee liabilities in the other.  The Court must contain and terminate this crusade, and denying this motion will help do so.

B.     Legal Standards

Berry moves under three Rules simultaneously.

First, he moves for a new trial under FRCP 59(a), which provides for new trials on the same bases that "new trials have heretofore been granted in actions at law in the courts of the United States." Berry's motion states that his alleged ground is new evidence, which by his own admission requires that he "must have been excusably ignorant of the facts at the time of trial despite due diligence" and must be "of a nature that would probably change the outcome of the case" instead of merely "cumulative or impeaching." Mot. at 18.

Second, he moves for reconsideration under D. Haw. L.R. 60.1(a), which provides relief for "Discovery of new material facts not previously available."

Third, he moves for relief from judgment under FRCP 60(b), which provides for relief under a variety of circumstances. Plaintiff does not specify which specific circumstance drives his motion, but presumably it is either (2) newly discovered evidence which due diligence would not have revealed, or (3) fraud.

C.    Argument

Boiled down, the thrust of all the Rules under which Berry moves is as follows: Berry must show that he has discovered new, important evidence demonstrating misconduct by the defense such that fundamental fairness requires that Berry should have the opportunity to present his claims to a fresh jury, this time with the benefit of the new evidence he trumpets.

As an initial matter, the motion suffers from significant procedural problems. Berry had all of the material supporting his motion months if not years before the trial. The Court should not now allow him to use this information to attempt to manufacture new issues for strategic gain. Moreover, the motion is substantively frivolous. Its premise is that a factual conflict in Brian Christensen's testimony requires the undoing of an entire trial. Even if the factual basis for the motion were new, which it is not, it is immaterial and certainly is not the result of affirmative misconduct. The Court should deny the motion.

1.    The motion is untimely

Berry tries to argue that not until April 5, 2006 did he discover the e-mail that allegedly gave him notice that Christensen became Division President in March, 2002.  See Hogan Decl. ¶ 5.  And Hogan further tries to argue that the PCT did not produce this e-mail in its previous (September, 2005) production.  Id.  This is simply incorrect.  Indeed, the September, 2005 production contains at least six copies of this very e-mail.  Walker Declaration ¶¶ 3-4.  Even if everything else in Plaintiff's motion were otherwise true, the Court should rule that Plaintiff has actually or constructively waived his ability to move for relief under any of the three Rules on which Plaintiff now moves:  the evidence is not new.  Plaintiff had multiple iterations of this e-mail throughout the entire trial and the Court should not allow him to point to it after the fact in an effort to undo the result.

Furthermore, since by his own admission (Hogan Decl. ¶ 5) Plaintiff discovered this e-mail on April 5, why did he not file his motion until May 9, four days after the settlement conference before Magistrate Kobayashi?  The timing of his motion strongly suggests that Plaintiff is simply disillusioned with the prospect of recovering a large fee award to compensate for the paltry verdict.  The Court should not indulge Plaintiff's "wait and see" approach to deciding whether to raise to the Court "new" evidence and claim fraud or otherwise demand a new trial.

2.    The motion is substantively frivolous

a.    There was no cover up.

Even putting aside the March 21, 2002 e-mail that Berry received at least six copies of in September, 2005, the bottom line is that Christensen's true promotion date was well known to everyone during the prepetition trial.  During the postpetition trial everybody obviously forgot, most likely because it wasn't material.  It seems that Plaintiff's unending barrage of allegations and conspiracies have blurred time for witnesses and counsel alike.  For example, Plaintiff and his

counsel obviously forgot given that Mark Dillon told them both on March 25, 2002 that Christensen was the boss at Fleming's Hawaii Division. Smith Decl. Ex. A (3/25/02 Dillon Deposition at p. 92). Plaintiff and his counsel apparently also forgot questioning Ralph Stussi about this very point during the March, 2003 prepetition trial as well as receiving in March 2003 the same time records to which they now point as evidence of Defendants' obfuscation. See Smith Decl. Ex. B (2/28/03 transcript, pp. 84-85); Pl. Mot. at p. 8 and Exs. 3, 4.

When Christensen subsequently testified during his deposition and again at the recent trial that he became Division President in March, 2003, Plaintiff and his counsel made absolutely no use of any of this potential impeachment material. Given their zeal for these issues, the only plausible inference is that they simply forgot about it, making it entirely reasonable that everyone else did also. Thus, no basis exists to conclude that Brian Christensen, Lex Smith, or anyone else associated with the defense knowingly advanced untruthful testimony. Christensen simply made an honest mistake.

b.    Berry shows no prejudice concerning the real issues at hand

The Court has already determined that Berry's postpetition lawsuit concerns events post-dating April 1, 2003. Smith Decl. Ex. C (10/21/05 Order at fn. 3). Moreover, Christensen agreed under cross-examination that during this time he was President of the Hawaii Division with control over the employees, Smith Decl. Ex. D (March 1, 2006 transcript at 88:16-88:20, 91:12-91:18), allowing Berry to argue whatever he wanted to argue concerning Christensen's culpability for the infringement. Such culpability, if any, would nonetheless only be indirect, as the record remains unrebutted that Christensen never actually used Berry's software. The date when Christensen became Division President is immaterial.

Berry's brief (at 19) tacitly concedes that lack of materiality, and instead shifts to a broader attack on Christensens' credibility. In doing so he purports to

rely on Stamps v. U.S., 406 F.2d 925, 929 (9th Cir., 1969), but this is misplaced. Stamps supports the Defendants' position, not Berry's.

In Stamps the Defendant was convicted on multiple counts stemming from heroin sales over a period of time. The centerpiece of the People's case was the testimony of one federal agent, who was the People's only witness concerning the sales alleged in two of the counts on which Defendant was convicted. During the post-trial motions it became apparent that the federal agent had forged an informer's written statement concerning the federal agent's initial introduction to the Defendant, and further that the federal agent had given false testimony concerning that forgery to suggest that the informer had signed another document that was substantially identical. The Ninth Circuit required a new trial with regard to those two counts. Its sole basis was that the conviction on those counts rested entirely on the agent's credibility to such an extent that the jury had independently inquired during deliberations whether it could believe the agent's testimony over the Defendant's given the lack of any other witness to the transactions at issue. Stamps, 406 F.2d at 928-929.

The critical distinction between Stamps and the present case is that there the potential perjury came from an agent who was the only witness supporting those two counts, whereas the Defendants here presented other witnesses and other evidence that covered the all same ground that Christensen covered to support the various elements of its defenses. Christensen testified about the circumstances surrounding Fleming's descent into bankruptcy and other issues pertaining to damages, but Chun and Kinrich also discussed these issues as did various admitted exhibits. Compare Smith Decl. Ex. F (3/2 transcript) at 20:24-21:5, 76:24-82:25 with Smith Decl. Ex. F (3/2 transcript) at 39:16-54:17 [Chun] and at 208:21-228:15 [Kinrich]; see also Smith Decl. Exs. G, H, I (Tr. Ex. 201, excerpts from Tr. Exs. 202-207, and T. Hogan March 2, 2006 e-mail re admitted exhibits).

6

Christensen testified about Fleming's intentions to revert to the original, licensed version of FCS and its frustrations in subsequently converting to spreadsheets, but again Noa and the rest of the employees covered these issues as did various admitted exhibits. Compare Smith Decl. Ex. E (3/1 transcript )at 88:22-89:1 and Ex. F (3/2 transcript) at 73:7-73:17 with Smith Decl. Ex. F (3/2 transcript) at 126:18-157:15 [Noa], 158:22-166:5 [Waiolama], and 194:16-201:18 [Rio]; see also Smith Decl. Exs. I, J (Tr. Ex. 14), K (Tr. Ex. 26), and L (Tr. Ex. 103). Christensen testified about Fleming's organizational structure, but the Fleming organizational chart itself was admitted into evidence. Compare Smith Decl. Ex. F (3/2 transcript) at 73:22 - 76:22 with Smith Decl. Exs. I, M (Tr. Ex. 66). In sum, unlike the two counts in the People's case in Stamps that hinged entirely on the testimony of one federal agent, nothing about Defendants' case hinged exclusively on Christensen's testimony. Even if Christensen had perjured himself (which he did not) on a material issue (which it was not), the Stamps court would have affirmed the present case because other witnesses and evidence at trial also supported Defendants' positions. This Court should do the same.

D.    Conclusion

Apparently unhappy with the tenor of the settlement conference with Magistrate Judge Kobayashi, Plaintiff has filed this train wreck of a motion that is a transparent attempt to derail the process and buy himself some time. His motion stands on information he could and should have raised long ago and alleges a cover-up of information that Plaintiff and his counsel demonstrably have been aware for years. The Court should deny Plaintiff's motion and give it due consideration in its analysis of prevailing party attorneys' fees. It is yet another

example in the long string of Plaintiff's baseless antics that the PCT has had to spend creditors' money to oppose.

Dated: Honolulu, Hawaii, May 18, 2006

/s/ *Thomas H. Yee*
KOBAYASHI SUGITA & GODA
Lex R. Smith 659-0
Thomas H. Yee  7344-0
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:  808 539 8700
Facsimile:  808 539 8799

and

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Co-Counsel for the Post Confirmation Trust for Fleming Companies, Inc.