IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) | ORDER DENYING RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF |
| vs. | ) ) | LAW |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al. | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

I.          INTRODUCTION AND BACKGROUND.

This case arises from Plaintiff Wayne Berry's

allegations that Defendant Post Confirmation Trust,[1] and

Defendants Mark Dillon ("Dillon"), Teresa Noa ("Noa"), Melvin

Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and

Jacqueline Rio (collectively, "Employees")[2] directly infringed

his copyright in the 1993 Freight Control System software program

between April 1 and June 9, 2003.  In addressing various pretrial

motions, this court found that Defendants directly infringed

Berry's copyright.  However, the court did not determine at that

time whether Fleming was vicariously liable for Employees'

---

[1] As noted in this court's June 27, 2005, order, Post Confirmation Trust represents the interests of Fleming Companies, Inc., and is therefore referred to as "Fleming."

[2] Fleming and Employees are collectively referred to as "Defendants."

infringement or the amount of damages Berry could recover for the infringement.  Those issues were instead addressed at trial.

Trial took place from February 28 through March 6, 2003.  The jury returned a verdict on March 7, 2003, in which it found that Berry proved he is entitled to recover actual damages from:  (1) Fleming, in the amount of $57,530; (2) Dillon, in the amount of two dollars; and (3) Noa, in the amount of two dollars. The jury also found that Berry proved he is entitled to recover Fleming's profits attributable to Defendants' infringing conduct; however, the jury did not award any profits to Berry because the profits duplicated the actual damages the jury awarded to Berry. Lastly, the jury found Fleming vicariously liable for Employees' infringing use of the software program during the relevant time period.

During trial, Berry and Defendants moved for judgment as a matter of law, which this court denied.  After entry of judgment, all of the parties timely filed renewed motions for judgment as a matter of law, which are presently before this court.

In his motion, Berry argues that, because Fleming failed to present any evidence of the "costs of goods sold," which is a deductible expense under 17 U.S.C. § 504(b), he is entitled to a monetary award of Fleming's profits. Alternatively, Berry asks for a new trial on the amount of

profits Berry may recover from Fleming.  Because Fleming did
introduce evidence concerning its cost of goods sold and because
Berry presents no argument as to why a new trial is warranted,
the court denies Berry's motion.

   Fleming's motion argues that insufficient evidence
supports the award of profits from Fleming because Berry did not
establish a causal connection between those profits and the
infringement.  Fleming also argues that insufficient evidence
supports the jury's finding that Fleming is vicariously liable
for Employees' direct infringement because Fleming in fact did
not profit from the infringement and because the record lacks any
evidence that Employees directly infringed Berry's copyright.
Because substantial evidence shows a causal connection between
Fleming's profits and the infringement and supports the jury's
finding of vicarious liability, the court denies Fleming's
motion.

   Employees argue in their motion that they should be
dismissed from this case because there is insufficient evidence
showing that they directly infringed on Berry's copyright.
Alternatively, Employees argue that Berry is not entitled to
recover actual damages from Noa and Dillon because Berry failed
to establish a causal link between their infringement and Berry's
actual damages.  Employees also argue that insufficient evidence
supports the jury's finding of vicarious liability because they

should be dismissed from the case and because Berry did not
establish that they infringed on his copyright or that his actual
damages were caused by their infringement.  Because the court
previously ruled that Employees directly infringed Berry's
copyright and because substantial evidence supports the jury's
finding of vicarious liability, the court denies Employees'
motion.

II.      LEGAL STANDARD.

        If a party makes a motion for judgment as a matter of
law that is not granted by the court, that party may file a
renewed motion pursuant to Rule 50(b) of the Federal Rules of
Civil Procedure after entry of judgment.  Rule 50(b) provides
that a court ruling on a renewed motion after a verdict may allow
the judgment to stand, direct entry of judgment as a matter of
law, or order a new trial.  Fed. R. Civ. P. 50(b).

        Judgment as a matter of law is authorized "if there is
no legally sufficient basis for a reasonable jury to find in
favor of [the nonmoving party]."  Bell v. Clackamas County, 341
F.3d 858, 865 (9th Cir. 2003) (citing Fed. R. Civ. P. 50(a)).
The jury verdict will be affirmed if it is supported by
substantial evidence.  Mockler v. Multnomah County, 140 F.3d 808,
815 n.8 (9th Cir. 1998).  "Substantial evidence is such relevant
evidence as reasonable minds might accept as adequate to support
a conclusion even if it is possible to draw two inconsistent

conclusions from the evidence." <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856 (9th Cir. 1999) (internal quotations and citations omitted).

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves v. Sanderson Plumbing Prods.</u>, Inc., 530 U.S. 133, 150, (2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51, (1986)). Thus, in deciding whether judgment as a matter of law is warranted, the court may not assess the credibility of witnesses and must draw all reasonable inferences in the nonmovant's favor. <u>See</u> <u>Bell</u>, 341 F.3d at 865. In other words, the court "may not substitute its view of the evidence for that of the jury." <u>Johnson v. Paradise Valley Unified Sch. Dist.</u>, 251 F.3d 1222, 1227 (9th Cir. 2001). <u>See also</u> <u>Harvey v. Office of Banks & Real Estate</u>, 377 F.3d 698, 707 (7th Cir. 2004) ("Our job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict." (citation omitted)).

III.    <u>ANALYSIS</u>

  A.    Berry's Renewed Motion for Judgment as a
    <u>Matter of Law.</u>

Berry argues that he is entitled to an award of profits totaling $54,413,019.00 because Fleming failed to meet its burden under 17 U.S.C. § 504(b) of producing evidence of deductible

5

expenses. Motion at 5. Specifically, Berry asserts that "Fleming made no attempt to produce any . . . evidence regarding the cost of goods sold." Motion at 5. In response, Fleming contends that it introduced substantial evidence, including Fleming's financial statements and the testimony of Andrew Chun ("Chun") and Jeffrey Kinrich ("Kinrich"), showing the cost of goods sold and other deductible expenses. Opp. at 5-6. The court agrees with Fleming and denies Berry's request for judgment as a matter of law.

> Under 17 U.S.C. § 504(b),
>
> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Therefore, once Berry established Fleming's profits attributable to the infringement, if any, Fleming was required to prove its deductible expenses. See 17 U.S.C. § 504(b).

Thomas Ueno ("Ueno") and Kinrich both testified that Fleming's gross revenues during the relevant period totaled $55,120,183. Transcript of Proceedings ("Transcript") (3/1/2006) at 126 (Ueno); Transcript (3/2/2006) at 209 (Kinrich). The

6

parties agree that the cost of goods sold is a deductible expense under § 504(b).  Berry argues that, because "the exhibits that [Fleming] introduced contained no evidence of the costs of goods sold" and because "Fleming made no attempt to produce any such evidence regarding the cost of goods sold," Fleming did not meet its burden under 17 U.S.C. § 504(b).

During Fleming's case, both Chun and Kinrich testified that Fleming's financial statements, which Fleming had previously produced to Berry, contained information relating to Fleming's cost of goods sold.  Chun and Kinrich testified that, although there was no separate line for the cost of goods sold, such cost could be easily calculated using information in the statements.

For example, Chun, who was Fleming's controller during the relevant time period, testified that Fleming's financial statements contained two lines:  "a net sales line" and a "product margin and other margin" line.  Transcript (3/2/2006) at 40, 42.  Chun explained that "[t]he difference between net sales and product margin is the costs of goods sold."  Transcript (3/2/2006) at 42.  He testified that the financial statements did not have a separate line for the cost of goods sold because the cost could be easily calculated by determining the difference between net sales and product margin.  Transcript (3/2/2006) at 42-43.

Kinrich, who was qualified as an expert witness on the computation of financial damages, similarly testified that, although Fleming's financial statements did not contain a separate line for cost of goods sold, the statements contained lines for "net sales," "product margin," and "other margin." Transcript (3/2/2006) at 206, 210.  Like Chun, Kinrich testified that the cost of goods sold could be determined by calculating the difference between net sales and margins.  See Transcript (3/2/2006) at 210.  Kinrich explained that it is a "common practice" for distributors like Fleming to use financial statements that do not contain a separate line for cost of goods sold.  Transcript (3/2/2006) at 210.  Because the cost of goods sold could be determined using Fleming's financial statements, Berry does not establish that Fleming failed to introduce evidence regarding that cost.  Because Berry argues only that Fleming failed to present evidence concerning the cost of goods sold, Berry's motion could be denied on this basis alone.

There is, however, other evidence rendering Berry's position untenable.  Fleming introduced evidence that its deductible expenses exceeded its revenues, resulting in a negative "bottom line."  Chun testified that a bottom line "is basically your top-line revenues minus all your expenses." Transcript (3/2/2006) at 46.  Chun explained that, during the relevant time period, Fleming's Hawaii division as a whole, and

8

its transportation department in particular, lost money because "the cost exceeded the revenues." Transcript (3/2/2006) at 47, 49, 53. Kinrich similarly testified that Fleming's expenses exceeded its revenues during the relevant period, resulting in a negative bottom line. See Transcript (3/2/2006) at 208-21. Viewing the evidence in the light most favorable to Fleming, the court concludes that substantial evidence supports the jury's finding that Berry was not entitled to $54,413,019 in Fleming's profits. The court denies Berry's request for judgment in his favor as to the amount of profits he may recover.[3]

   B.   Fleming's Renewed Motion for Judgment as a
        Matter of Law.

        Fleming argues that insufficient evidence supports Berry's recovery of profits because Berry did not establish a causal connection between Fleming's alleged profits and any infringement. Motion at 5-15. Fleming further argues that the court should enter judgment as a matter of law in its favor on the issue of vicarious liability. The court disagrees.

---

        [3] Berry alternatively asks this court to "grant a new trial under Rule 59 as there clearly [has] been insufficient evidence for this issue to have been put to the jury and Mr. Berry is entitled to a new trial." Motion at 6. Other than this lone statement, Berry presents no argument on this issue. Therefore, the court also denies Berry's request for a new trial.

1.    Sufficient Evidence Supports the Award
of Profits from Fleming.

Fleming asserts that, because Berry "did not establish
any causal connection between the alleged infringement and any
alleged revenue either through his expert Thomas Ueno or through
his own lay testimony, there has been no legally sufficient
evidence of profits introduced in the record."  Motion at 5.  In
response, Berry points to multiple exhibits that he contends
establish the requisite causal connection between profits and
infringement.  Opp. at 3-7.  The court declines to enter judgment
as a matter of law in Fleming's favor.

As previously indicated, a copyright owner may recover
"profits of the infringer that are attributable to the
infringement and are not taken into account in computing the
actual damages."  17 U.S.C. § 504(b).  The Ninth Circuit requires
a copyright owner like Berry to present evidence establishing a
legally sufficient causal link between the infringement and
indirect profits.[4]  See Mackie v. Rieser, 296 F.3d 909, 915-16
(9th Cir. 2002), cert denied, 537 U.S. 1189 (2003); see also
Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514,
520 (4th Cir. 2003); On Davis v. The Gap, Inc., 246 F.3d 152 (2d
Cir. 2001); 6/27/2005 Order at 38.  "When an infringer's profits

---

[4] The court previously noted in its order of June 27,
2005, that Berry seeks to recover indirect profits from Fleming.
See 6/27/2005 Order at 38.

are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 711 (9th Cir. 2004) (en banc).

Fleming distributed food products from mainland locations to clients in Hawaii. Transcript (3/2/2006) at 127. During his direct examination, Berry testified that his software program was designed for and improved Fleming's operations. He explained that the program organizes data to track the locations of products being transported and "maintains full receivables for doing a freight billing, aging the accounts, collecting the money, [and] posting the payments coming back in." Transcript (2/28/2006) at 201-02. Berry also testified that his software "summarizes the total cubes and weight by purchase order [and] by commodity so that planning can be done as to how to load the containers and maximize the usage of cube and weight to minimize the cost." Transcript (3/1/2006) at 6. Because of these efficiencies for cube and weight, Berry testified that, although a person could manually organize a container without using his software, that person would not be able to manually organize as many containers per week as one could organize using his software program. <u>See</u> Transcript (3/1/2006) at 6.

11

Ueno also testified as to how Berry's software program functioned in Fleming's operations.[5]  He stated that the software program was "one of the cornerstones" and a "critical function" of the Fleming operations.  Transcript (3/1/2006) at 119.  He testified that the database was one of the functions "necessary to be performed in totality for the company to be able to do its business, to earn its sales."  Transcript (3/1/2006) at 119.  According to Ueno, "the system virtually is involved in all of [Fleming's] areas, including the controllership function."  Transcript (3/1/2006) at 119-20.  Specifically, he testified that Berry's database was essential to Fleming's logistics, merchandising, and sales departments during the relevant time period.  Transcript (3/1/2006) at 121-24.  Ueno also testified that, without Berry's system, Fleming "would not earn the $55 million" in sales.  Transcript (3/1/2006) at 129.  Berry's and Ueno's statements evince more than a speculative causal connection between the use of Berry's software during the relevant period and profit.  Accordingly, the court concludes that Berry introduced sufficient evidence for a reasonable jury to find that he was entitled to recover profits from Fleming.

---

[5] Fleming appears to challenge Ueno's credibility on this issue.  See Motion at 13-14.  However, in deciding whether judgment as a matter of law is warranted, the court may not assess the credibility of witnesses.  See Bell, 341 F.3d at 865. Fleming also argues that "Berry needed expert testimony to causally link the infringer's profits with the infringement," but cites no cases stating such a requirement.

            2.    Sufficient Evidence Supports the Jury's
                  Finding that Fleming Was Vicariously
                  Liable for Employees' Infringement.

        Fleming next asserts that, because Berry did not profit

from any infringing activity, Fleming could not be vicariously

liable for Employees' infringement.  Motion at 16-18.

Alternatively, Fleming argues that "there can be no vicarious

liability because there is no evidence of direct infringement by

the employees as individuals" and because "there is no basis for

holding the Employees personally liable for actual damages."

Motion at 18-20 (citing Frank Music Corp. v. Metro-Goldwyn-Mayer,

Inc., 772 F.2d 505 (9th Cir. 1985); Wilden Pump & Eng'g Co. v.

Pressed & Welded Prods. Co., 655 F.2d 984 (9th Cir. 1981)).  In

response, Berry maintains that substantial evidence establishes

that Fleming did profit from infringing activity, that Employees

have already been found to be direct infringers, and that cases

cited by Fleming do not nullify the jury's finding of vicarious

liability.  The court agrees with Berry.

        "A defendant is vicariously liable for copyright

infringement if he enjoys a direct financial benefit from

another's infringing activity and has the right and ability to

supervise the infringing activity."  Ellison v. Robertson, 357

F.3d 1072, 1076 (9th Cir. 2004) (citing A&M Records v. Napster,

Inc., 239 F.3d 1004, 1022 (9th Cir. 2001)).  Because it is

undisputed that Fleming had the right and ability to supervise

                                13

Employees' infringing conduct, the issue at trial was whether
Fleming profited from their activities.  Fleming now challenges
the jury's finding that Fleming did enjoy a direct financial
benefit from Employees' use of Berry's software.

Regarding Fleming's argument that it cannot be
vicariously liable because Berry failed to show he is entitled to
Fleming's profits, the court denies Fleming's motion because, as
discussed in the prior section, the court concludes that a
reasonable jury could have found that Fleming profited from the
infringement.  See Mockler, 140 F.3d at 815 n.8.

Fleming also argues that, because the jury did not
return an award of profits, "there can be no vicarious liability
because the jury found no profits to disgorge."  Motion at 17.
Fleming says "the jury obviously agreed with the PCT's trial
presentation that there were no profits to claim from Fleming
during the relevant window of time."  Motion at 17.

On the special verdict form, the jury found Berry
entitled to profits, but entered zero when asked to "state the
amount of profit attributable to Fleming's direct infringement."
Special Verdict Form at 5.  It is important to note that the jury
was told, "[D]o not include in your calculation any matters that
would duplicate [actual] damages, if any, already awarded."
Special Verdict Form at 5.  Because the jury had already awarded
$57,534 in actual damages in an earlier question, the jury's

14

award of zero profits may indicate that the profits attributable to the infringement would duplicate damages.  Cf. Penry v. Johnson, 532 U.S. 782, 799 (2001) ("We generally presume that jurors follow their instructions.").  The jury's zero award does not, as Fleming argues, necessarily indicate that "there were no profits to claim."  Motion at 17.  The jury may still have found a direct financial benefit to Fleming from Employees' use of Berry's software program.

Fleming also argues that it should not be vicariously liable because there is no evidence of direct infringement by Employees as individuals.  The court previously concluded in its order of June 27, 2005, that Employees directly infringed Berry's copyright during the relevant time period.  6/27/2005 Order at 7-11.  In that order, the court detailed the factual circumstances warranting its finding of direct infringement against Employees.  The court need not restate the relevant evidence in this order or revisit that order on this motion for judgment as a matter of law.  The issue of whether Employees directly infringed Berry's copyright was simply not an issue at trial.

Fleming also argues that, because "there is no basis for holding the Employees personally liable for actual damages in this infringement action," the jury's finding of vicarious liability is not supported by substantial evidence.  Motion

15

at 19.  Fleming cites to <u>Wilden Pump and Engineering Co. v. Pressed and Welded Productions Co.</u>, 655 F.2d 984 (9th Cir. 1981), and <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505 (9th Cir. 1985)), for the proposition that nonmanagement, salaried employees cannot be liable for infringement occurring in the scope of their employment and under the direction of a supervisor.  Motion at 18-20.  However, as this court stated in its order of October 21, 2005, those cases stand for the proposition that compensation paid to nonmanagement, salaried employees is not profit for which employees are liable.[6]  <u>See Frank Music Corp.</u>, 772 F.2d at 519; <u>see also</u> <u>Wilden Pump & Eng'g Co.</u>, 655 F.2d at 990; <u>cf.</u> 10/21/2005 Order at 31-34.  The cases do not stand for the proposition that Employees cannot be liable for actual damages.  Therefore, even though "Employees were former salary and hourly wage earners of Fleming who had no decision-making authority or control," they remain liable for any actual damages awarded against them.  Accordingly, the court denies Fleming's request for judgment as a matter of law on the issue of vicarious liability.

      C.   <u>Employees' Renewed Motion for Judgment as a Matter of Law.</u>

Employees move this court for "entry of judgment in their favor and against Berry on the basis of insufficient

---

[6]  Indeed, this court previously ruled that Employees are "not liable for profits."  10/21/2005 Order at 33-24.

evidence as a matter of law of direct infringement by the
Employees as individuals." Motion at 1. Alternatively,
Employees argue that insufficient evidence "support[s] the jury's
verdict that Berry is entitled to recover actual damages for any
defendant's use of Berry's software between April 1, 2003 and
June 9, 2003." Motion at 1. Employees also argue that "Fleming
cannot be held vicariously liable." Motion at 9. In response,
Berry argues that the court should not disturb its earlier
finding that Employees directly infringed Berry's copyright.
Opp. at 3. Berry also contends that sufficient evidence supports
the jury's award of actual damages and vicarious liability. Opp.
at 4-6. The court agrees with Berry.

       1.    This Court Previously Found that Employees
             Directly Infringed Berry's Copyright.

      Employees argue, as does Fleming, that they "are
entitled to judgment as a matter of law because there is no
evidence of direct infringement by them as individuals." Motion
at 3. As Fleming argues above, Employees assert that "a non-
management, salaried employee should not be held personally
liable for infringement." Motion at 3-5 (citing Frank Music
Corp., 772 F.2d 505; Wilden Pump & Eng'g Co., 655 F.2d 984).
Thus, they maintain that, because they "were former salary and
hourly wage earners of Fleming who had no decision-making
authority or control" and any infringement "was done in the scope
of their employment and under the direction of their

17

supervisors," they "should be dismissed from this case as a matter of law." Motion at 5. Berry distinguishes the cases cited by Employees, contending that they "dealt simply with the issue of profits of the employer that were derived from infringing conduct." Opp. at 3. The court agrees with Berry.

As discussed in the prior section, this court found in its order of June 27, 2005, that Employees directly infringed Berry's copyright during the relevant time period. 6/27/2005 Order at 7-11. The court declines to reconsider that pretrial order in this renewed motion for judgment as a matter of law.

The court is simply unpersuaded by Employees' argument that they cannot be liable for direct infringement because they "were former salary and hourly wage earners of Fleming who had no decision-making authority or control" and that their infringing activities were "done in the scope of their employment and under the direction of their supervisors." Motion at 4-5. Like Fleming, Employees cite to Frank Music Corp., 772 F.2d 505, and Wilden Pump and Engineering Co., 655 F.2d 984. As previously explained, however, those cases stand for the proposition that amounts paid to such employees are not to be considered as profits. Frank Music Corp., 772 F.2d at 519; see also Wilden Pump, 655 F.2d at 990. Neither Frank Music Corp. nor Wilden Pump and Eng'g Co. precludes Employees from being liable for direct infringement or for an award of actual damages. Having already

18

found Employees liable for direct infringement, the court
declines to dismiss them from this case or to enter judgment as a
matter of law in their favor on this issue.

>            2.    Sufficient Evidence Supports the Jury's
>                  Award of Actual Damages against Noa and
>                  Dillon.

Employees alternatively argue that insufficient
evidence supports the jury's verdict that Berry was entitled to
recover actual damages from Noa and Dillon.  Motion at 5.  They
contend that Berry failed to establish a causal connection
between Employees' infringement and actual damages.  Motion at 5.
The court disagrees.

Under 17 U.S.C. § 504(b), "actual damages must be
suffered 'as a result of the infringement.'"  Polar Bear Prods.,
Inc., 384 F.3d at 708.  Thus, the Ninth Circuit says that,
"[f]rom the statutory language, it is apparent that a causal link
between the infringement and the monetary remedy sought is a
predicate to recovery of . . . actual damages."  Id.  The court
"define[s] the phrase 'actual damages' as 'the extent to which
the market value of a copyrighted work has been injured or
destroyed by an infringement.'"  Mackie v. Rieser, 296 F.3d 909,
917 (9th Cir. 2002) (citing Frank Music Corp., 772 F.2d at 517).
To determine the work's market value at the time of the
infringement, the Ninth Circuit endorses the following
hypothetical approach:  "what a willing buyer would have been

reasonably required to pay to a willing seller for the owner's work." Id. (quoting Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir. 1977)).  This can be measured by the profits lost because of the infringement, the diminution in value of the copyrighted work, or the value of a reasonable license fee that might have been paid in a comparable situation.  See Polar Bear Prods., Inc., 384 F.3d at 708; see also Mackie, 296 F.3d at 917.

The jury found that Berry was entitled to recover actual damages for Noa's and Dillon's infringement.  Special Verdict Form at 3.  The jury awarded two dollars in such damages against each of them, Special Verdict Form at 4, presumably finding that Berry had established the requisite causal connection between their activities and the awards of two dollars in actual damages against each of those Employees.

The jury was instructed that actual damages "can be measured by the profits lost by the copyright owner, any diminution in value of the copyright, or the value of the reasonable license fee that might have been paid in a comparable situation."  Jury Instructions at 21.  The jury was not asked to specify whether the award constituted Berry's lost profits, the diminution in value of his copyright, or the value of a reasonable license fee.

20

Although other explanations are possible, it is perhaps easiest to see how the jury could have determined that the two-dollar awards constituted a reasonable license fee that might have been paid in a comparable situation.

Berry testified that, although he did not agree to sell the software program to Fleming, he allowed Fleming to possess a copy of the software. Transcript (2/28/2006) at 137. Berry testified that he originally requested that Fleming pay $300,000 for the use of his software. Transcript (2/28/2006) at 164. However, because Fleming chose not to pay that fee, Berry instead decided to let Fleming use the program at no cost, with the understanding that Fleming would pay Berry an hourly rate for making changes to the program that he believed would be necessary to keep the program updated and running properly. Transcript (2/28/2006) at 164. Berry explained that he expected to "recoup that $300,000 the first year" by making such changes to the program. Transcript (2/28/2006) at 164. Thus, Berry proffered evidence that the use of his software program was valued at $300,000 for the first year or $57,534.25 over the 70-day period at issue. Because Berry testified that Fleming chose to use the software under those conditions, a reasonable jury could conclude that a reasonable license fee for the use of the program was $57,534.

Noa testified that she was the logistics supervisor at Fleming during the relevant time period. Transcript (3/2/2006) at 127. She also testified that the logistics department was responsible for coordinating the shipment of products from the mainland to Hawaii. Transcript (3/2/2006) at 128. Noa explained that the Employees who worked in the logistics department used Berry's software program to conduct their operations. See Transcript (3/2/2006) at 129-37. Regarding Dillon, Noa testified that she supervised his activities and that he was Fleming's network administrator. Transcript (3/2/2006) at 128-29. Noa explained that Dillon's role in the logistics department was to "ensure the database was running for us to do our daily work." See Transcript (3/2/2006) at 136.

Although the award of actual damages against Defendants totaled $57,534, the jury awarded only two dollars in actual damages against Noa and Dillon. Special Verdict Form at 4. Noa was in charge of supervising the logistics department, and Dillon was responsible for ensuring the program was operating properly. The jury could have found a two-dollar license fee reasonable if the fee was only for Noa's and Dillon's use of the software program over the relevant 70-day period. See Gilbrook, 177 F.3d at 856. Accordingly, the court denies Employees' request to enter judgment as a matter of law in their favor on the issue of actual damages.

   3.    Sufficient Evidence Supports the Jury's
         Determination of Vicarious Liability.

     Finally, Employees argue that "Fleming cannot be held
vicariously liable" because "Berry has presented insufficient
evidence that the Employees infringed on his copyright as
individuals and that he suffered actual damages as a direct
result of the Employees' infringement."  Motion at 9-10.  In
their reply memorandum, Employees additionally contend that
"[t]here can be no vicarious liability in the event that the
Employees are dismissed completely from the lawsuit."  Reply
at 12.  As previously discussed, sufficient evidence supports the
jury's award of actual damages against Noa and Dillon, and the
court declines to withdraw its prior ruling that Employees
directly infringed on Berry's copyright.  Accordingly, the court
denies Employees' request to enter judgment in their favor on the
issue of vicarious liability.

IV.    CONCLUSION.

     In light of the foregoing, the court denies the
parties' renewed motions for judgment as a matter of law.  This
order leaves for future disposition:  (1) Berry's Amendment to
Motion for New Trial Filed on 3/21/06 or in the Alternative
Motion for Reconsideration and Rule 60(b) Relief; (2) Berry's
Motion for Recusal of Magistrate Judge Leslie E. Kobayashi; and
(3) motions for attorneys' fees and costs filed by Berry;
Fleming; Employees; Defendants Guidance Software, Inc., and

                              23

Michael Gurzi; and Defendants C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers, Inc., C&S Acquisitions, LLC, ES3, LLC, and Richard Cohen.

     IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, May 24, 2006.



            Susan Oki Mollway
           United States District Judge


**Berry v. Hawaiian Express Service, Inc., et al.**, Civ. No. 03-00385 SOM/LEK; ORDER DENYING RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW.