LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **REPLY TO DEFENDANT PCT'S** |
| | ) | **OPPOSITION TO PLAINTIFF** |
| HAWAIIAN EXPRESS SERVICE, | ) | **WAYNE BERRY'S AMENDMENT** |
| INC., a California corporation; et al. | ) | **TO MOTION FOR NEW TRIAL** |
| | ) | **FILED ON 3/21/06, OR IN THE** |
| Defendants. | ) | **ALTERNATIVE, MOTION FOR** |
| | ) | **RECONSIDERATION AND RULE** |
| | ) | **60(b) RELIEF; CERTIFICATION** |
| | ) | **PURSUANT TO L.R. 7.5** |
| | ) | |
| | ) | |
| | ) | **HEARING:** |
| | ) | **DATE:   June 5, 2006** |
| | ) | **TIME:   9:45 A.M.** |
| | ) | **JUDGE:  Honorable Susan** |
| | ) |             **Oki Mollway** |
| _____ | ) | |

**PLAINTIFF WAYNE BERRY'S REPLY TO DEFENDANT PCT'S OPPOSITION TO PLAINTIFF WAYNE BERRY'S AMENDMENT TO MOTION FOR NEW TRIAL FILED ON 3/21/06, OR IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION AND RULE 60(b) RELIEF**

## Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.    **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    **Christensen gave false testimony** . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2.    **The December 2004 deposition  supported Christensen's  defense to contributory and vicarious infringement** . . . . . . . . . . . . . . . . 1

    3.    **The false testimony was repeated at trial. No other witness was competent to testify at trial** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    4.    **Fleming's counsel had reason to know that Christensen's deposition and trial testimony was false** . . . . . . . . . . . . . . . . . . . . 2

II.   **BACKGROUND**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    **There Is No Dispute That False Testimony Was Given in the Deposition, in a Declaration Used to Oppose the Permanent Injunction and at Trial.**    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    **The PCT's Proof Is Not Sufficient to Overcome the Clear and Convincing Evidence in Support.**    . . . . . . . . . . . . 3

    C.    **The PCT Can't Claim that the Motion is Untimely.** . . . . . . . . . . 6

**III.**    **DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    **A.**    **Timeliness Is Not an Issue**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

        **1.**    **Summary Judgment**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

        **2.**    **Trial Testimony**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

    **B.**    **The PTC Opposition not the Motion  is Substantively Frivolous**.**11**

    **C.**    **The Facts that Mr. Berry's Was Unable To  Has Nothing to Do**
        **with Christensen and Fleming Attorneys' Misconduct** . . . . . . . . **14**

    **D.**    **The Remaining Two Parts of the  Four Part Test Entitle Mr.**
        **Berry to an Injunction**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

        **1.**    **Balance of Hardships** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

        **2.**    **Public Interest**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

**CERTIFICATION PURSUANT TO L.R. 7.5**  . . . . . . . . . . . . . . . . . . . . . . . . **21**

**Table of Authorities**

<u>**CASES**</u>

*Apple Computer v. Franklin Computer*, 714 F.2d 1240 (3d Cir. 1983) . . . . . . 20

*Autoskill, Inc. v. National Educational Support Systems, Inc.*, 944 F.2d 1476, 1499 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*CP Kelco United States, Inc. v. Pharmacia Corp.,* 213 F.R.D. 176 (D. Del. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ebay, Inc. v. MERCEXCHANGE, L. L. C.*, 547 U.S. ____,  (No. 05-130) (May 15, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001) . . . 4

*Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695 (D. Va. 2003) . . . . . 18

*Pogue v. International Industries, Inc.*, 524 F.2d 342 (6th Cir. 1975) . . . . . . . 11

*Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670 (9th Cir. 1985) . . . 11

*Stamps v. United States*, 406 F.2d 925 (9th Cir. 1969) . . . . . . . . . . . . . . . . 13, 14

*United States Fid. & Guaranty Co. v. Brapetro Oil Serv. Co.*, 53 Fed. R. Serv. 3d 60 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

The Copyright Act, 17 U.S.C. § 506(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

The Copyright Act, 17 U.S.C. § 506(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## RULES

**Fed. R. Civ. P. 32(a)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**Fed. R. Civ. P. 56** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**Fed. R. Civ. P. 59** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**Fed. R. Civ. P. 60(b)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**Fed. R. Civ. P. 60(b)(3)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 11, 15**

## OTHER AUTHORITIES

**Moore's Federal Practice 3rd Ed. § 60.43[1][a] (2005)** . . . . . . . . . . . . . . . . . . . . . **3**

**Moore's Federal Practice 3rd Ed. § 60.43[1][b] (2005)** . . . . . . . . . . . . . . . . . **15**

**Moore's Federal Practice 3rd Ed. § 60.43[1][d] (2005)** . . . . . . . . . . . . . . . . . . . . . **4**

**Moore's Federal Practice 3rd § 60.42[6] (2005)** . . . . . . . . . . . . . . . . . . . . . . . . **9, 10**

## I.    <u>INTRODUCTION.</u>

The Post-Confirmation Trust ("PCT") claims it is unclear regarding the grounds for the instant Motion.  Trying to pretend the Motion is seeking relief based on newly discovered evidence and not upon the fraud or misconduct of Mr. Christensen, the PCT hopes to create a basis for denying the relief for the misconduct that is now admitted.

In regard to the grounds for granting the relief sought under Fed. R. Civ. P. 60(b)(3), the following is compelling proof that relief must be granted:

1.    Christensen gave false testimony in his deposition in December 2004 regarding being the Hawaii Division President during the period prior to March 6, 2003.  He repeated it in the Declaration of Brian Christensen filed on January 12, 2006 employed to defeat the Motion for Permanent Injunction.  Declaration of Timothy J. Hogan (the "Hogan Dec.") at Exhibit "1" at ¶ 2.

2.    The December 2004 deposition  supported Christensen's  defense to contributory and vicarious infringement and falsely established that Christensen could not have prevented the willful infringement either during the period after March 21, 2002 when he became Hawaii Division President or even immediately after the entry of the jury verdict on March 6, 2003. The false testimony also resulted in

findings that none of the Fleming defendants engaged in willful

infringement or violated RICO.

3.      The false testimony was repeated at trial. No other witness was

competent to testify at trial regarding what Fleming's top management

did in reaction to the verdict and why Fleming just did not just shut

the system off proving the system was worthless as they claimed at

trial.

4.      Fleming's counsel had reason to know that Christensen's deposition

and trial testimony was false.

5.      Neither counsel for Christensen, nor counsel for the PCT-C&S have

done anything to mitigate the harm.

## II.     BACKGROUND.

### A.     There Is No Dispute That False Testimony Was Given in the Deposition, in a Declaration Used to Oppose the Permanent Injunction and at Trial.

The false testimony was material because it put Christensen outside of the

group of possible contributory and/or vicarious infringers and deflected having to

answer the question that would have shown the critical value of the Berry work to

Fleming.  The only issue that is contested is whether the false testimony was given

with knowledge of its falsehood to make it an actionable fraud.  First, that is not

relevant to whether relief should be granted.  The simple fact is that Mr. Berry has no obligation to prove that the false testimony was intentional.   Moore's Federal Practice 3rd Ed. § 60.43[1][a] (2005) (unintentional conduct will suffice for relief). Were there such an obligation, the proof is overwhelming that an actionable fraud has been committed.  The PCT seeks to avoid the clear evidence of its knowledge and of Christensen's obvious contributory infringement, by relying on Christensen's false claim that he was out of the loop.

**B.    The PCT's Proof Is Not Sufficient to Overcome the Clear and Convincing Evidence in Support.**

The PCT submits the Declarations of Brian Christensen and Lex Smith as the only proof to support this absurd defense.   First, even if any of this evidence in the Christensen Declaration is true, it cannot change the fact that Christensen knew of the claim of infringement, was the division president at the time and did nothing to stop it while all the time earning a living off the revenues generated by the infringed work.

The thrust of these two declarations is that, "yes, Christensen told falsehoods but he and the PCT should be excused because Christensen had so little to do with the pre-verdict activities of Fleming's Hawaii Division related to Mr. Berry that it is reasonable to believe that he (Christensen) and his counsel both forgot Christensen was the President of  Fleming Hawaii Division on the day the verdict

3

entered."  Ignoring this absurd *non sequitur* that the knowledge of the Berry litigation somehow equates to knowledge of what his daily job was, the PCT and Christensen forgot the materials that Mr. Walker was perusing to prepare his many reports and declarations contain some of Mr. Smith and Mr. Christensen's recorded history of these events that make their two declarations just more grist for the mill.

As set forth in the Hogan Dec. the "Before Exported" Guidance materials that were produced in September 2005 and likely shared with Walker much earlier than that, yield email correspondence that put the lie to the Christensen and Smith Declarations.  More important, now that is clear that Christensen was the division president, the Court may enter judgment against him.[1]

On August 2, 2002, a detailed email from Mr. Smith to Christensen and other members of what is described as the "team" details the discovery strategy. Hogan Dec. Exhibit "2."[2]

---

[1] To be entitled to relief Mr. Berry need not show the result would have been different.  Moore's Federal Practice 3rd Ed. § 60.43[1][d] (2005).

[2] Mr. Berry gave the PCT advance notice of his intention to file Hogan Dec. Exhibits "2" "3" and "6" under seal to permit the PCT to seek a ruling on their claim that the turnover and **continued** possession of these materials by the PCT and C&S' expert was not a waiver of privilege. *See  In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *United States Fid. & Guaranty Co. v. Brapetro Oil Serv. Co.*, 53 Fed. R. Serv. 3d 60 (S.D.N.Y. 2002); *CP Kelco United States, Inc. v. Pharmacia Corp.,* 213 F.R.D. 176, 178 (D. Del. 2003).

On October 10, 2002, another email Mr. Smith said he "described at length" to Brian Christensen issue related to the Berry litigation. Hogan Dec. Exhibit "3."

On November 25, 2002, Teresa Noa copying Brian Christensen on an email discussing the use of the Hawaiian Express computers containing Fleming software and data. Hogan Dec. Exhibit "4."

On December 5, 2002, Mark Dillon recognizing a problem using the Berry system unlawfully to ship third-party K-Mart freight in violation of the license and acknowledging that Brian Christensen ought to be notified. Hogan Dec. Exhibit "5."

On March 7, 2003, the day after the jury verdict was received, Mr. Christensen forwarded an email to Dillon and Noa where Mr. Smith notified Christensen at the head of the list of team contacts. Hogan Dec. Exhibit "6."

If there was insufficient grounds to grant this motion prior to these ill begotten declarations, there is now, by clear and convincing proof, evidence that Christensen had been a fully informed captain of the team going back to March 2002. *See* Hogan Dec. Exhibit "2."

---

Mr. Berry also offers that the emails evidence attorney advice advancing what a jury has found was willful infringement. Because it was for commercial advantage or private financial gain no privilege could apply under the crime fraud exception. *See* The Copyright Act, 17 U.S.C. § 506(a)(1).

5

### C.    The PCT Can't Claim that the Motion is Untimely.

As to the claim that Mr. Berry waited too long to bring this motion, first, the rule sets a one year time limit.  Fed. R. Civ. P. 60(b).

Prior to filing the motion, Mr. Berry's counsel first brought the existence of the email to the attention of Mr. Smith and Mr. Hosoda, but they did nothing to rectify their client's fraud. Hogan Dec. ¶ 7 and Exhibit "7."

Second, Mr. Berry had to wait until the official transcripts were complete before citing to the trial testimony.  The trial transcripts weren't available until May 1, 2006.  Hogan Dec. ¶ 8.  The instant Motion was filed on May 9, 2006.

Finally, until the admission in the Reply to the Employee Fee Motion filed on May 4, 2006, Mr. Berry's proof could have been rebutted by a claim that Christensen had not actually been made the "official" division  president or some other such nonsense.   Until that time, Mr. Berry did not have the kind of evidence that proves by clear and convincing evidence the fact of Christensen's the  fraud on the Court.   The motion was filed in a reasonable time after the entry of judgment.

## III.    DISCUSSION.

Having to concede that Mr. Christensen's testimony in his deposition was false, and that the same testimony given at trial was also false, Plaintiff presumes defendants will admit the same statement in a declaration used to defeat the

permanent injunction motion was also false.  *See* Hogan Dec. Exhibit "1" at ¶ 2.  In

its defense,  the PCT drops back to a successful strategy of  accusing Mr. Berry and

his counsel of a variety of malfeasances to convince any court that will listen of

Fleming's moral purity thus diverting the court from the Fleming team's most

recent malfeasance.  The Smith emails show this to have been the hallmark of the

litigation strategy that has worked like a charm.  Hogan Dec. Exhibits "2" and "3."

The simple fact is that it was **Fleming** that was found a willful infringer. It is

**Fleming** that was and continues to be investigated by law enforcement.  It was

**Fleming** that was cited by the SEC and had to go out of business in the worst

bankruptcy in history.   Obscuring its lengthy history of bad acts by offering false

sworn testimony that Mr. Christensen was not able to control the earlier willful

infringement, the PCT successfully gave to this court and the jury the false picture

of Christensen and his employers as blameless victims of Mr. Berry's greed.

### A.  Timeliness Is Not an Issue.

### 1.     Summary Judgment.

First, the relief is sought for misconduct and not for new evidence.  Even so,

there is no claim whatsoever by the PCT that the hearsay e-mail that it claims Mr.

Berry should have discovered earlier had been in Mr. Berry's possession or

disclosed at any time during the summary judgment process that began in the fall

7

of 2004 and concluded in the Court's January 27, 2005 Order that exonerated Mr.
Christensen from all liability.   In regard to summary judgment, Mr. Berry was
forced to respond to Christensen's claimed blamelessness and that he was the new
guy on the scene based only on the testimony in his deposition where he swore he
had no authority to control the willful infringement that has now been proven
occurred for a period of over a year under his direct authority.  That issue as to the
Rule 60(b) relief sought to set aside the summary judgment order is simply not
even addressed by the PCT.

   The only fact that PCT claims is evidence of untimeliness is a deposition
transcript taken in a different case  that doesn't even say the phrase "division
president" and the statement by Stussi at trial when he stopped being the division
president.

   According to the PCT this is the evidence that could have defeated summary
judgment against a person who was not a party to the litigation in which the
deposition or trial testimony was given.   It is well settled that evidence that is
brought forward under either Fed. R. Civ. P. 56 or Rule 60(b) must be admissible.
This evidence is not.  *See* Fed. R. Civ. P. 32(a) and  Moore's Federal Practice 3rd,
§60.42[6] (evidence must be admissible and credible for relief to be granted).
Finally, the only proof strong enough to move under Rule 60(b) was contained in

the Reply filed five days before the instant motion.

The PCT points to the fact that Mr. Berry had the Dillon deposition testimony all along.  Because Mr. Smith had stated that Mr. Stussi was no longer working at Fleming Hawaii and Dillon confirmed Christensen was "the boss" Mr. Berry had the basis to defeat summary judgment all along.   First although Mr. Berry thinks it is ridiculous, the PCT claims this was a reasonable oversight by its counsel so it follows that they cannot claim this evidences of a lack of diligence on the part of Mr. Berry's counsel.    What's good for the goose....

It's comical to presume that Mr. Berry could have defeated Mr. Christensen's summary judgment motion with this inadmissible evidence when Christensen stated under oath in his deposition that he didn't start working as division president of Fleming Hawaii until sometime in March of 2003.  It is notable that this claimed relevant evidence does not establish that Christensen was the "division president."   In addition, Mr. Christensen admits in his own declaration that prior to March 21, 2002, he had been the "sales manager" IE a boss at Fleming.  *See* Declaration of Brian Christensen filed on May 18, 2006 at ¶ 4, Hogan Dec. Exhibit "1."  The idea that this hearsay was enough for Mr. Berry to run into Court  in the face of  Mr. Christensen's sworn deposition testimony is absurd.  For Mr. Berry to seek relief, any evidence had to be admissible.  The

9

statements made in the deposition of Mark Dillon in the earlier case in which

Christensen was neither a party or provided with notice, were not admissible

against Mr. Christensen in this case. Likewise the trial transcript did not prove

when Christensen became division president.   Mr. Berry did not have the

admissible evidence to support the clear and convincing standard until Mr.

Christensen's attorneys filed the Reply on March 4, 2006, that admitted that he had

testified falsely.  *See* Moore's Federal Practice 3rd, § 60.42[6] (2005).

**2.    Trial Testimony.**

The PCT claims Mr. Berry had been untimely regarding the trial testimony

because Mr. Berry discovered the e-mail on April 5, 2006 and waited to file the

Motion on May 9, 2006.  Not only does this show that Mr. Berry was tardy, it

somehow evidences evil intent.

First, the fact well known to the PCT is that Mr. Berry's counsel first

provided the email to attorneys under an ethical duty to fix the fraud and they

apparently did nothing. Hogan Dec. Exhibit "7."

Second, the official trial transcript was not ready until May 1.   Mr. Berry is

forbidden to use a rough draft for any such purpose and the reporter was not

available.   Hogan Dec. ¶ 8.

Third, the admissible clear and convincing evidence of Christensen's fraud

10

didn't even come into existence until his Reply was filed on May 4, 2006 at

Docket No. 957 at page 5.  Mr. Berry filed this motion based on that admission

five days later on May 9, 2006.  Five days is not late.

 Moreover, Mr. Berry has moved under Fed. R. Civ. P. 59 as an amended

motion in regard to the trial conduct of Mr. Christensen and that motion is clearly

timely and brought within Rule 59 because Mr. Berry has a pending Rule 59

Motion filed on March 21, 2003 as Docket No. 864.  *Roy v. Volkswagenwerk*

*Aktiengesellschaft*, 781 F.2d 670, 671 (9th Cir. 1985) ("Even if the later document

were considered to be an amendment, such would be permitted") *citing  Pogue v.*

*International Industries, Inc.*, 524 F.2d 342 (6th Cir. 1975).

## B.  The PTC Opposition not the Motion  is Substantively Frivolous.

Walker in his declaration claimed to have found six copies of the email

announcement in the drive that was turned over in September of 2005.  First, this

email, like the transcripts, is hearsay as to Christensen and not relevant to Rule

60(b)(3).  Second, this has absolutely no bearing at all on the motion for summary

judgment because by their own admission, the PCT and its attorneys agree that Mr.

Berry did not have it in time to meet that motion. Third, what Fleming turned over

to Walker was different than what Mr. Smith turned over to Mr. Berry's counsel.

This is one of the principal reasons that the Court ordered that Mr. Berry obtain a

11

fully un-redacted copy of the Guidance materials because what he had received before was a redacted copy provided by Mr. Smith.  Further, Mr. Walker doesn't say where he found them or if he found them on the full copy of the Guidance images that it appears he received, unlike Mr. Berry.

Moreover, in the weeks running up to trial, it is absurd to think that Mr. Berry, who had sworn testimony of Mr. Christensen as to the date he became the division president, should have somehow opined that he was lying and had gone to look for inadmissible hearsay evidence in the tens if not hundreds of thousands of emails that he had no idea were relevant or even existed to rebut the earlier sworn statement during a time that Fleming was screaming that the materials were privileged.

Finally, this is not a "new evidence" based motion but one based on misconduct.  The need to reverse the summary judgment order related to Christensen is clear.

The Court must also make a determination related to the false trial testimony.  Mr. Berry did not have an admission that only came in the Reply that was filed after trial to prove by clear and convincing evidence Christensen's earlier testimony was false.  Mr. Christensen was able to testify at trial free from any challenge as follows.

Question by Mr. Hogan:

6      But I'm taking about - - actually, <u>I would like to go</u>

7       <u>back to March 7th, the day after the jury verdict</u>:

8     Why not just walk into the logistics department, as

9     the boss, and say, turn it off. We don't need this, because

10    it's your knowledge and hard work that we make our money with,

11    not this software that's been nothing but trouble.

12    Why not just shut it off?

13    A.    <u>Well, for one thing, I wasn't the president at that time.</u>

14    I became the president after that, the ending of March. When

15    I got on board, it already -- we were already using it.

Transcript of Proceeding Before the Honorable Susan Oki Mollway dated March 2,

2006, at page 98 lines to 15. Declaration of Timothy J. Hogan filed in support of

the Motion at  Exhibit "2" (emphasis added).

       The PCT attempts to distinguish *Stamps v. United States*, 406 F.2d 925, 929

(9th Cir. 1969) in a valiant effort to free this Court from its obligation to follow

that Ninth Circuit precedent but the case is on all fours.   In this case, only Mr.

Christensen could testify to what Fleming Hawaii's responsible manager did in

reaction to the infringement and he lied by claiming he wasn't the Division

13

President.  No one else was competent to give testimony regarding why Fleming, that claimed the software was worthless, just didn't flip the switch and shut it off. To avoid having to tell the jury that, "without the software, the business would have ceased to function," Christensen restated the earlier lie.  No other defense witness gave any related testimony nor could they.   This case is on all fours with *Stamps* and the Court will be rewarding false testimony if it does not grant Mr. Berry relief but moreover, ignoring controlling Ninth Circuit law.

> **C.    The Facts that Mr. Berry's Was Unable To  Has Nothing to Do with Christensen and Fleming Attorneys' Misconduct.**

First, Fleming and now the PCT had Mr. Christensen's employment history records, they had access to documents that weren't turned over Plaintiff.  They employed him, the attorney's reported the conduct of the litigation to him and the idea that they didn't know what his actual job title was during this critical time is simply absurd.

Second, the PCT claims the following: Mr. Berry's attorney was unable to remember that there had been earlier inadmissible testimony regarding that Christensen was some kind of a "boss" so the Court should accept that these attorneys could reasonably forget what Christensen's actual job title was when they were sending him strategy emails and submitting the fee bills that were being paid and authorized through his authority as the Hawaii Division President.   Because

14

Berry's attorney, with only a smidgen of the information, couldn't figure it out,

they are therefore relieved from any knowledge regardless of how much they had.

This absurd argument would be like a parent saying to their child, "I know I forgot

your birthday, honey, but so did the neighbors." There is no question that all the

elements of fraud or gross misconduct exists. It is not necessary that it be intrinsic

fraud or extrinsic as set forth in Fed. R. Civ. P. 60(b)(3). *See* More's Federal

Practice 3rd Ed. § 60.43[1][b] (2005) (false trial testimony is ground for relief).

The Court must grant the relief sought and attempt to right the wrong that the

attorneys who are under an obligation to correct, have refused to correct. The

manner in which that can be done is simple.

First, vacating summary judgment in favor of Christensen and entering a

judgment for willful contributory infringement. This will also implicate the issues

of RICO and the injunction.

Since the trial and the last few weeks, the United States Supreme Court has

handed down a definitive opinion regarding how to this Court should address Mr.

Berry's requests for permanent injunction. *Ebay, Inc. v. MERCEXCHANGE, L.

L. C.*, 547 U.S. ____, (No. 05-130) (Slip Op. May 15, 2006). In *Eba*y, case the

court reversed and held that the Federal Circuit's rule that a permanent injunction

is automatic was error. In addressing a patent case, the Court held the law related

15

to copyright infringement was applicable and held that the district court is to apply

a strict four part test to determine whether a permanent injunction should issue as

follows:

> According to well-established principles of equity, a
> plaintiff seeking a permanent injunction must satisfy a
> four-factor test before a court may grant such relief. A
> plaintiff must demonstrate: (1) that it has suffered an
> irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for
> that injury; (3) that, considering the balance of hardships
> between the plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

*Ebay*, Slip Op. at page 2. (Citation omitted).

In its Order Denying Plaintiff's Motion for Issuance of Permanent Injunction

and for Order Directing Return, Destruction or Other Reasonable Disposition of

All Copies of Freight Control System filed on March 9, 2006 ("Order") as Docket

No. 855 at page 5, this Court concluded that Mr. Berry was not entitled to an

injunction. Hogan Dec. Exhibit "8." Though the Court ruled that parts one and two

of the four part test were satisfied, the Court did not complete its required

application of the four part test because it concluded, based on the evidence

presented by the PCT including the false Christensen Declaration, that the PCT and

Christensen were not a threat to Mr. Berry as follows:

> Berry fails to establish a threat that they are

16

continuing or will continue to infringe.

Order at page 5.

This, like the additional factors relied upon by the District Court in *Ebay*, was not

true to the.

> . . . <u>Although the District Court recited the traditional</u>
> <u>four-factor test, it appeared to adopt certain expansive</u>
> <u>principles suggesting that injunctive relief could not issue</u>
> <u>in a broad swath of cases.</u>

*Ebay,* Slip Op. *Id*. at page 5 (citation omitted) (emphasis added).

Among the criticisms that appear to be leveled against the District Court by the

Supreme Court in *Ebay* was the following expansion of the four part test by the

lower court:

> Thus, the plaintiff certainly will be compensated for any
> actions by the defendants in the absence of an injunction.
> Therefore, after consideration of all the factors discussed
> above, it appears that the balance of the hardships tips in
> favor of the defendants.

*MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 715 (D. Va. 2003),

*affirmed in part and reversed in part* 401 F.3d 1323 (Fed. Cir. 2005); *vacated*

*remanded  eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. ____, 2006 U.S. LEXIS

3872, 74 U.S.L.W. 4248 (U.S. May 15, 2006).

    In this case, the Court has relied on the Christensen teams' dubious promise

to infringe no more, thus putting Mr. Berry in essentially the same position as the

17

plaintiff in the lower court decision criticized in *Ebay*: leaving Mr. Berry to only

the a future legal remedy while denying the equitable relief.  In light of the

Supreme Court's recent holding, but more directly relevant to the relief sought in

this Motion, because Christensen made the same false claim in support of the

various oppositions to the Motion for Permanent Injunction, continued reliance on

Christensen is now clear error.  Even if the Court were to believe Christensen, it

would have to conclude his memory too faulty to support any factual finding.   It is

clearly evident that the Fleming and now C&S team captain can't tell when he is

telling the truth.    Mr. Berry asks the Court to apply the Supreme Court ruling

without any additional factor based on a defendants' claim that it will infringe no

more.

> **D.    The Remaining Two Parts of the  Four Part Test Entitle Mr. Berry to an Injunction.**

> **1.    Balance of Hardships.**

The Court found that Mr. Berry's request satisfied the first two parts of the

test.   As to the remaining two parts of the test, Fleming, Christensen and the

Employees all claim that they will not infringe.  They have no downside in putting

teeth in what they already acknowledge is their lawful obligation.  The PCT says

it's out of business although it says it in the same declaration that the Court must

find contains the identical false statement that is the basis for this motion.  In this

case, Mr. Berry is an independent developer that the Court must concede cannot

withstand repeated costly litigation of this type to protect an interest that Congress

has said this court may protect through the imposition of an injunction.

### 2.    Public Interest.

The public interest is always served by obedience to the law.  In copyright

cases, "the issues of public policy rarely is a genuine issue if the copyright owner

has established a likelihood of success.  *Concrete Machinery Company, Inc. v.*

*Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988), because "the

public interest is the interest in upholding copyright protections."  *Autoskill, Inc. v.*

*National Educational Support Systems, Inc.*, 944 F.2d 1476, 1499 (10th Cir. 1992).

"[I]t is virtually axiomatic that the public interest can only, be served by upholding

copyright protections and correspondingly, prevent the misappropriation of the

skills, creative energies, and resources which are invested in the protected work."

*Apple Computer v. Franklin Computer*, 714 F.2d 1240, 1255 (3d Cir. 1983); *see*

*Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994).

## IV.    CONCLUSION.

This Court has correctly rejected any Nuremberg defense raised by the

employees.  Now, Mr. Berry has returned to the scene with one of the architects of

the plan who concealed his own liability by repeatedly giving false testimony.  The

Court should see that justice is done,  not only regarding the innocent employee

infringer, but also as to the willful infringing Division President who almost got

away with it.

DATED: Honolulu, Hawai'i, May 28, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

20

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CERTIFICATION PURSUANT** |
| HAWAIIAN EXPRESS SERVICE, | ) | **TO L.R. 7.5** |
| INC., a California corporation; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## <u>CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing Reply contains

4,473 words therefore no more than 4,500 words as set forth in the word and line

count of the word processor used to prepare the document in compliance with L.R.

7.5 (c)(d) and (e).

DATED: Honolulu, Hawai'i, May 28, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

21