# Exhibit 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR ISSUANCE OF PERMANENT INJUNCTION AND FOR |
| vs. | ) ) | ORDER DIRECTING RETURN, DESTRUCTION OR OTHER |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al., | ) ) ) | REASONABLE DISPOSITION OF ALL COPIES OF FREIGHT CONTROL SYSTEM |
| Defendants. | ) ) ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR ISSUANCE OF PERMANENT
INJUNCTION AND FOR ORDER DIRECTING RETURN, DESTRUCTION OR OTHER
REASONABLE DISPOSITION OF ALL COPIES OF FREIGHT CONTROL SYSTEM

I.     INTRODUCTION.

Plaintiff Wayne Berry moves for an order prohibiting Fleming Companies, Inc. ("Fleming"); the Post Confirmation Trust ("PCT"); C&S Wholesale Grocers, Inc. ("C&S"), their affiliates, officers, agents, servants and employees; Mark Dillon, Teresa Noa, Melvin Ponce, Alfredda Waiolama, Jacqueline Rio, and Justin Fukumoto (collectively, "Employees"); internet service providers; Defendants' attorneys; and "any other person in active concert with them who receives actual notice of the order" from using, reproducing, and transferring Berry's 1993 Freight Control System ("FCS") and any copies or derivatives thereof. Berry also moves for an order "directing the return, destruction or other reasonable disposition of all copies of the [FCS] computer software including any derivatives." Berry excludes from this

motion "copies properly preserved for litigation purposes under Court order." The court denies Berry's motion.

II.     PERMANENT INJUNCTION STANDARD.

"The standards for a permanent injunction are the same as a preliminary injunction, except the moving party must show actual success on the merits, instead of probable success on the merits." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987). In Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994), the Ninth Circuit set forth the standard for granting a preliminary injunction:

> Traditionally we consider (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

Id. at 456 (citing United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir. 1987)). A copyright holder seeking a permanent injunction need not make a showing of irreparable harm independent of the harm presumed from actual success on the merits. Cf. LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1155-56 (9th Cir. 2006) ("In a copyright infringement action, . . . a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. A copyright holder seeking a preliminary injunction is therefore not required

to make an independent demonstration of irreparable harm."
(citing 4 <u>Nimmer on Copyright</u> § 14.06[A] (2004))).

III.     ANALYSIS.

   A.   <u>Permanent Injunction Under 17 U.S.C. § 502(a).</u>

   Berry seeks to permanently enjoin Fleming, the PCT, C&S, Employees, internet service providers, Defendants' attorneys, and others from using, reproducing, and transferring Berry's FCS and any copies or derivative works.  This court declines to enjoin those who have not been found to have infringed Berry's copyright.  Thus, the court does not enjoin C&S, internet service providers, Defendants' attorneys, or other people who were not found liable for infringement.  While Fleming and Employees were indeed found to have infringed, the court declines to issue a permanent injunction against them because Berry fails to establish a threat that they are continuing or will continue infringe.

   1.   <u>C&S, Internet Service Providers, Defendants' Attorneys and Other Unnamed Defendants.</u>

   Berry seeks to permanently enjoin C&S, internet service providers, Defendants' attorneys, and other unnamed persons from further infringing his copyright.  This court previously determined that C&S is not liable for copyright infringement, and no internet service provider, counsel in this case, or unnamed person has been found liable for infringing Berry's copyright.

3

The court denies Berry's request to issue a permanent injunction against them.

Section 502(a) of the Copyright Act authorizes the court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Regarding copyright infringement, the Ninth Circuit says, "a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) (citing Nat'l Football League v. McBee & Bruno's, Inc., 792 F.2d 726, 732 (8th Cir. 1986); 3 Nimmer on Copyright § 14.06[B] at 14-88 (1983)).  Because a showing of success on the merits raises a presumption of irreparable harm, a copyright holder seeking a permanent injunction need not make an independent showing of such harm. Cf. LGS Architects, Inc., 434 F.3d at 1155-56 (noting that a copyright holder seeking a preliminary injunction need not make an independent showing of irreparable harm because a showing of a reasonable likelihood of success on the merits raises a presumption of such harm); see also 4 Nimmer on Copyright § 14.06[B] at 14-142 (2006) ("Because a permanent injunction is issued only after liability is established, its issuance probably does not require a showing of irreparable injury.").  Injunctive relief ordinarily will not be granted when there is no

4

probability or threat of continuing or additional infringements Id.; cf. MAI Sys. Corp., 991 F.2d at 520.

In its order of June 27, 2005, this court granted summary judgement in favor of C&S on Berry's copyright infringement claim. C&S, like internet service providers, counsel in this case, or "other persons," is not liable for infringing Berry's copyright. See MAI Sys. Corp., 991 F.2d at 520.

In arguing that C&S can be enjoined even though it did not infringe Berry's copyright, Berry assumes that C&S currently has copies of Berry's FCS or derivatives thereof on its network. Berry argues that, "when the copies remaining on the C&S server and client stations are backed up as the routine function of the logistics network by Mark Dillon or anyone else, an infringing copy is made." Motion at 14. However, Berry fails to convince the court that infringing copies were on the computers purchased by C&S from Fleming or that infringing copies are currently on C&S's network and therefore can be backed up.

As support for his allegation that Fleming transferred copies to C&S, Berry points to this court's order of June 27, 2005, and a report Berry generated from the Guidance After Image listings. See Ex. A (attached to Motion); Declaration of Wayne Berry ("1/18/2006 Berry Decl.") (1/18/2006) ¶ 1; Ex. A (attached

5

to 1/18/2006 Berry Decl.).  In its June 2005 order, the court stated:

> As noted above, Berry alleges that Fleming impermissibly retained 16 copies of FCS on its computers after claiming it had purged the software from its system. . . .
>
> Fleming had a right to retain the 16 FCS files for litigation purposes under the fair use doctrine.  The transfer of the computers containing these files, as well as all other user files for Dillon, Noa, and the other Employees, was also permissible under the fair use doctrine, as Employees had a right to retain the files for their own litigation purposes.

Id. at 26.  The court did not find, as Berry urges, that Fleming transferred copies of the FCS to C&S, but concluded only that Fleming and Employees were entitled to retain copies of the program for litigation purposes.

Similarly, the report Berry generated from the Guidance After Image listings does not establish that Fleming transferred any copies of Berry's software program to C&S.  Ex. A (attached to 1/18/2006 Berry Decl.); Reply to Employees at 6.  Berry says the report "contains the names and file locations of numerous copies o[r] derivatives of my FCS Logistics Data.mdb that were transferred to C&S on the Fleming computers."  1/18/2006 Berry Decl. ¶ 2.  The report does contain the names, sizes, and locations of various files, but nothing in the report shows that those files are "copies o[r] derivatives of" Berry's FCS.  See Ex. A (attached to 1/18/2006 Berry Decl.).  Berry fails to show

6

that Fleming transferred any copies or derivatives of the FCS to C&S. Even if such a transfer did occur, Berry does not show that C&S now has such copies.

Without establishing that C&S has any copies on its network, Berry's argument that C&S "will necessarily infringe" when it creates backup copies of its logistics files fails. No permanent injunction issues against C&S.

Nor does Berry establish that Fleming's counsel should be enjoined. Berry does not show that counsel has any copies of Berry's software at this time other than what may be held for purposes of defending against the present lawsuit. As post-trial proceedings remain, and as there may be an appeal from the judgment, an injunction against counsel at this time would be patently unfair. This court fully understands that Berry is viewing Fleming's attorneys as Fleming's agents. Attorneys, however, are not the kind of agents through whom a corporation conducts freight tracking. Berry presents no basis for any concern that the attorneys will infringe on Fleming's behalf.

　　　　2.　　Fleming and the PCT.

Berry asks the court to issue a permanent injunction against both Fleming and the PCT. Berry presents no argument regarding the PCT[1] but, as to Fleming, Berry argues that,

---

[1] The PCT represented Fleming's interest during its bankruptcy and continues to represent Fleming's interest in this case. Berry appears to treat the PCT and Fleming as one entity,

although Fleming says it no longer exists, "Fleming continues to do business [in Hawaii] by continuing to sell 'Best Yet' products."  Motion at 6.  Berry says that, "[b]ecause the evidence proves that Fleming continues to sell, Fleming must concede that it therefore can infringe."  Motion at 6.  Berry argues that a permanent injunction should issue against Fleming because it transferred copies of Berry's FCS to C&S and because it was found to have twice infringed Berry's copyright.  The court is unpersuaded.

In its order of June 27, 2005, this court found Fleming liable for directly infringing Berry's copyright, but Berry must establish a threat of continuing infringement to obtain a permanent injunction against Fleming.  See MAI Sys. Corp., 991 F.2d at 520.

Berry argues that Fleming can infringe his copyright because it "continues to do business [in Hawaii] by continuing to sell 'Best Yet' products."  As evidence that Fleming continues to distribute grocery items in Hawaii, Berry points to product labels on a carton of milk and a box of cereal that he purchased from Foodland in October 2005.  Declaration of Wayne Berry (10/24/2005) ("Berry Decl.") ¶¶ 10-12; Exs. C-D (attached to Berry Decl.).  Each product label states:  "Distributed by Fleming Companies, Inc."  See Exs. C-D (attached to Berry Decl.).

---

as the court has done throughout this case.

8

Berry argues that these product labels prove that Fleming continues to operate in Hawaii.

Brian Christensen, the president of C&S Wholesale Grocers, Inc.'s Hawaii division and former sales manager for Fleming's Hawaii division, explains that, in April 2003, Fleming entered into an agreement with Meadow Gold, whereby Meadow Gold sold products under the "Best Yet" label.  Declaration of Brian Christensen ("Christensen Decl.") 1/12/2006 ¶ 3.  At that time, Meadow Gold printed and used product labels based on then-accurate information that Fleming distributed the items. Christensen Decl. ¶ 5.  After C&S purchased Fleming in August 2003, C&S distributed the Meadow Gold items in Fleming's stead. When Christensen learned in March 2005 that Meadow Gold was still using product labels with Fleming's name on it, he contacted Meadow Gold's sales manager to have Meadow Gold remove Fleming's name from the labels and replace it with C&S's name.  Christensen Decl. ¶ 7.  Christensen explains that "[p]roducts sold in 2005 bearing labels with Fleming's information are simply mistakes." Christensen Decl. ¶ 7.  As Berry does not rebut Christensen's explanation, Berry is unconvincing in contending that the labels prove that Fleming continues to operate in Hawaii.

Regarding the copies of Berry's FCS allegedly transferred to C&S by Fleming, as discussed above, Berry fails to point to any evidence showing that Fleming transferred such

9

copies to C&S or that C&S currently has such copies on its network.

It is true, as Berry notes, that Fleming has twice been found to have infringed. The second infringement, however, was inadvertent. It resulted from Fleming's attempt to comply with the jury verdict containing the finding of the first infringement. In other words, although Fleming infringed Berry's copyright twice, the second act of infringement was an attempt to halt the first act. Fleming's second infringement shows that it diligently (but incompletely) tried to stop infringing, not that Fleming is likely to infringe again. Berry has not met his burden to show a threat of continuing infringement by Fleming.

### 3. Former Fleming Employees.

Berry also seeks to permanently enjoin Employees from further infringing his copyright. As noted above, Berry argues that C&S has infringing copies of the FCS on its network and, therefore, that Employees formerly employed by Fleming but now working for C&S will continue to infringe his work every time they access and use C&S's network. Berry also argues that Dillon in particular should be enjoined because he continued to "link" to Berry's FCS after June 9, 2003, and because he "maintained during relevant periods a Berry derivative on his home computers." Motion at 4, 7. The court rejects Berry's arguments.

As discussed above, Berry does not point to any evidence establishing that copies of his FCS were on computers bought by C&S or that C&S's network currently has copies on it. Thus, Berry's argument that Employees will infringe by accessing and using C&S's network lacks merit. Moreover, as Justin Fukumoto and Melvin Ponce no longer work for C&S, they cannot access or use C&S's network.[2] See Affidavit of Justin Fukumoto (2/23/2005) ¶ 1.

With respect to Dillon, Berry contends that "Dillon was 'linking' to derivatives as late as July 2003." Motion at 7. However, when Berry previously made this contention, this court concluded that "[t]here is no evidence that having links between files means that Fleming copied Berry's work or otherwise violated his copyright." 8/10/2005 Order at 3-4. Berry's mere allegation of links between files establishes no threat of continuing infringement.

Berry also says that "Dillon maintained during relevant periods a Berry derivative on his home computers," pointing to Dillon's October 16, 2003, deposition testimony. Motion at 4. During Dillon's deposition, the following exchange occurred:

> Q [Berry's counsel] Have you ever had copies of what was known as the Berry Freight Control System on your PC clone at home?

---

[2] At the hearing on this motion, counsel for Employees informed the court that Melvin Ponce quit working for C&S as of February 26, 2006.

11

> A [Dillon] I think I had a copy of it when I was working at [Atlantic Pacific International, Inc. ("API")].
>
> . . . .
>
> Q Now, have you told Guidance Software -- I believe his name is Michael Gurzi, G-u-r-z-z-i (sic), I believe. Have you told him you had previously had copies of Mr. Berry's software on your home computer when he came here to perform his work in July of this year?
>
> A I don't think I did. I think he said that his scope of work did not include my home computer based on his conversation with the discovery master.

Ex. F (attached to Motion) at 12.

Even if Dillon may have had a copy of the FCS on his home computer when he worked at API from February 1997 until October 1999, see Ex. D (attached to Employee Opp. ¶¶ 3-4), there is no evidence that Dillon now has a copy or that he intends to infringe. To the contrary, Dillon says he "want[s] nothing to do with Plaintiff or his software." Id. ¶ 37. The court denies Berry's request to permanently enjoin Employees.

  B. Permanent Injunction Under 17 U.S.C. § 503(b).

Berry also seeks an order directing Fleming, the PCT, C&S, Employees, and others to return, destroy, or otherwise reasonably dispose of Berry's FCS and any copies or derivatives thereof pursuant to 17 U.S.C. § 503(b). The court denies Berry's request.

> Section 503(b) of the Copyright Act provides:
>
> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies of phonorecords may be reproduced.

Pursuant to this statutory provision, "the court could order the infringing articles sold, delivered to the plaintiff, or disposed of in some other way that would avoid needless waste and best serve the ends of justice." 17 U.S.C. § 503(b) Historical and Statutory Notes. Furthermore, "[b]efore [the remedy in section 503(b)] may be invoked, it is, of course, necessary that the infringement first be judicially established." 4 <u>Nimmer on Copyright</u> § 14.08 at 14-168-69.

As noted above, only Fleming and Employees were found to have infringed Berry's copyright. However, Berry has not established that Fleming or Employees have any copies or derivatives of Berry's FCS, or that C&S has such items. Neither Fleming, Employees, nor C&S currently uses the outdated FCS. Although Defendants' attorneys may possess copies, Berry does not present any argument as to how those copies are likely to be used in the future for infringement by the attorneys, the parties, or anyone else. In any event, Berry excludes from his motion copies retained for litigation purposes, which necessarily includes what

Fleming's and Employees' attorneys have.  If this case is appealed, Defendants' attorneys will need to have access to the materials produced in this litigation.  The court therefore denies Berry's request under 17 U.S.C. § 503(b).

IV.     CONCLUSION.

In light of the foregoing, the court denies Berry's motion for permanent injunction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 9, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**Berry v. Hawaiian Express Service, Inc., et al.**, **Civ. No. 03-00385 SOM/LEK; ORDER DENYING PLAINTIFF'S MOTION FOR ISSUANCE OF PERMANENT INJUNCTION AND FOR ORDER DIRECTING RETURN, DESTRUCTION OR OTHER REASONABLE DISPOSITION OF ALL COPIES OF FREIGHT CONTROL SYSTEM.**