LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
Email: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>          Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE,<br>INC., a California corporation; et al.<br><br>          Defendants.<br>_____ | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**PLAINTIFF WAYNE BERRY'S REPLY TO DEFENDANTS C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, C&S LOGISTICS, LLC, ES3, LLC AND RICHARD COHEN'S OPPOSITION TO WAYNE BERRY'S MOTION FOR RECUSAL**<br><br>**NON-HEARING**<br><br>**Judge:   Honorable Magistrate Judge Leslie Kobayashi** |

**PLAINTIFF WAYNE BERRY'S REPLY TO DEFENDANTS C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, C&S LOGISTICS, LLC, ES3, LLC AND RICHARD COHEN'S OPPOSITION TO WAYNE BERRY'S MOTION FOR RECUSAL**

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby respectfully submits his reply to Defendants C&S Wholesale Grocers, Inc., C&S Acquisition, LLC, C&S Logistics, LLC, ES3, LLC and Richard Cohen's Opposition To Wayne Berry's Motion for Recusal ("C&S Opposition").

**I.     INTRODUCTION.**

C&S makes accusations that the Motion seeks the bringing of criminal charges against counsel. Quite the contrary, the referral is simply a mechanism to require the judiciary to perform a function to initiate an investigation of possible wrongdoing connected with a bankruptcy case. Plaintiff makes no claim that Lex Smith must or will be prosecuted. As is often the case, in the effort to paint Mr. Berry as the evil doer, the C&S opposition starts as do most of C&S's filings in this case, accusing Plaintiff of fantasizing Fleming's bad acts when the undisputed fact is that Federal law enforcement was the one who informed Mr. Berry of their suspicions regarding Fleming long before Mr. Berry discovered the fact. The SEC has sanctioned Fleming not Mr. Berry and C&S has employed adjudicated infringers to develop software, not Mr. Berry.

The claim that Fleming and its counsel are the victims of Mr. Berry's delusions would be laughable except that it appears that C&S believes that the simple act of Mr. Smith saying it to the Court can apparently make it so. As to what impact any statutorily mandated investigation of the admitted Christensen false testimony might have on Lex Smith, that is neither for Mr. Berry nor any court making a required referral to determine. It is the "potential" impact on a personal friend that makes the recusal mandatory.

## II.    DISCUSSION.

The entire thrust of the opposition is that Mr. Berry's counsel failed to recall the inadmissible statement in a deposition over three years earlier. This failure makes plausible Mr. Smith's claim to have forgotten whom his client was even though sending monthly bills to him since July 2002.   This would be the same as a parent's excusing forgetting his own child's birthday by pointing to the fact that the neighbors forgot too.   The fact that the attorney that is implicated by this motion makes so inane an argument makes the recusal even more mandatory.

### A.    The Motion is not Late.

When a potential conflict is not brought as grounds for recusal it does not remove the potential that later the recusal may become mandatory.   The C&S Opposition carefully does not confirm or deny any of the facts that are the

predicate for the motion. Specifically, though given the opportunity to confront the record in support of the Opposition is silent. Nor does the C&S Opposition, like the others, make any claim that a recusal would cause them any prejudice.

### B. Mr. Berry had no Admissible Evidence to Disprove Christensen's false Sworn Statement.

The C&S Opposition like the other oppositions, makes the claim, in apparent reference to the pending Rule 60(b) motion, that Mr. Berry had proof that could have been introduced both in regard to summary judgment and at trial pointing to the Dillon deposition and Stussi trial testimony taken in a different case. First, none of these facts have anything to do with a defense to perjury. Mr. Berry readily concedes that there is a virtual mountain of evidence in the possession of the PCT proving the Christensen was the Hawaii Division President after March 21, 2002.

The simple fact is that neither of these transcripts could have been lawfully used in this proceeding and were nothing but hearsay as to Christensen. Mr. Christensen did not get notice of the deposition and the rules are clear that the deposition could not be introduced against him. *See* Fed. R. Civ. P. 32(a). Had the PCT brought Stussi, then the Stussi deposition could have come in to challenge Stussi's testimony. The fact that Stussi was a last minute scratch from the defendants' witness list points again the existence of a plan and propriety of

recusal.

    With Stussi back on the mainland, and the deposition in a different case where Christensen had not been give notice, he was safe to take the stand and give the same false testimony he gave in his deposition in December 2004.

### C. By Testifying Falsely Christensen Avoided Liability for his Responsibility for the Willful Infringement From March 2002 to April 1, 2003.

    C&S's managing employee sat in his deposition and said he was not on duty until after the jury verdict in the first case.  Then when again asked what he did upon the entry of the verdict not tied to any date, just to the event, Christensen again falsely testified as follows:

6   Question by Mr. Hogan:  <u>But I'm talking about - actually, I would like to go</u>

7   <u>back to March 7th, the day after the jury verdict</u>:

8    <u>Why not just walk into the logistics department, as</u>

9    <u>the boss, and say, turn it off.</u> We don't need this, because

10    it's your knowledge and hard work that we make our money with,

11    not this software that's been nothing but trouble.

12    Why not just shut it off?

13    A.    <u>Well, for one thing, I wasn't the president at that time.</u>

14    I became the president after that, the ending of March. When

15    I got on board, it already -- we were already using it.

Transcript of Proceeding Before the Honorable Susan Oki Mollway dated March 2, 2006, at page 98 lines to 15.  Declaration of Timothy J. Hogan, Exhibit "2" (emphasis added).

There is simply no way to harmonize this testimony with the admitted fact that, when the jury verdict was received in the first case, Christensen had been the Hawaii Division President for over eleven months.

### D.    The Conflict only Arose When Counsel Refused to Correct Client Fraud.

Had either counsel representing Christensen at the deposition taken any act to correct the fraud when its was discovered, it is possible that this issue would have never arisen in the context of a recusal motion. The failure of counsel to correct the fraud is what made this motion necessarily.  Even if the referral statute did not exist, the ethical requirement to undo the harm caused by the false testimony, implicated Mr. Smith and his relationship to the Court nonetheless, and would likely require recusal.

### E.    The Factual Predicate for the Motion are Not Challenged.

The unrebutted facts proving recusal is mandatory are as follows:

1.    Lex Smith is a close personal friend of the Magistrate Judge.

2.    Christensen gave false testimony both in his deposition and at trial.

3. The deposition testimony supported his claim that he was not a contributory infringer because he did not have any managerial responsibility for stopping the willful infringement.

4. The trial testimony supported the PCT's claim that Fleming was a blameless infringer.

5. Lex Smith had reason to know that Christensen's deposition and trial testimony was false because he knew of the Dillon deposition and was sending Christensen strategy emails and his invoices as the client representative.

6. Neither Mr. Smith, counsel for Christensen nor the PCT have done anything to mitigate the harm caused by the false testimony.

7. The case is related to a pending case under Title 11.

In this context the Court is to rule on whether Christensen, the PCT and C&S are entitled to fees and costs, a decision that will necessarily have to confront the issue of the false testimony. If the Court rules that there is reasonable grounds to find that Christensen perjured himself, it follows that he, and both his past and present employers, the beneficiaries of the false testimony, cannot claim that any policy is served by awarding them fees and costs. Such a finding of the false testimony would implicate the need for a referral. The Court is therefore going to

have make a decision that has the potential to impact Mr. Smith because, he not only appears to have more than sufficient knowledge that the testimony was false when offered, but more directly relevant to this motion, because he boldly refuses to do anything about the false testimony claiming that because Mr. Berry's counsel missed the inadmissible proof that should have shown Christensen a fraud, he becomes absolved from having any knowledge of the facts that his own billing records shows he had all along.  Any reasonable person viewing this record would conclude he had to know Christensen was giving false testimony.  Even if not, he clearly knows now.   The point of the Motion is that a close personal friend of Mr. Smith cannot have anything to do with make a ruling on these issues.

    **F.**    **The Referral Is Not an Indictment.  It Simply Requires Certain Persons Including this Court to Make a Referral If "Reasonable Grounds" Exist.**

As to the existence of reasonable grounds for a referral the Ninth Circuit Court of Appeals Model Jury Instruction for perjury in the Ninth Circuit requires the following be proven:

> The defendant is charged in [Count _____ of] the indictment with perjury in violation of Section 1621 of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant testified under oath orally or in

>writing that [false testimony];
>
>Second, the testimony was false;
>
>Third, the false testimony was material to the matters before [e.g., the grand jury]; and
>
>Fourth, the defendant acted willfully, that is deliberately and with knowledge that the testimony was false.
>
>[All of you must agree as to which statement was false.]
>. . .

Ninth Circuit Model Criminal Jury Instructions 8.110 PERJURY—TESTIMONY (18 U.S.C. § 1621).

The only issue that is even disputed is the Fourth element, whether the false testimony was given willfully or "deliberately and withy knowledge that the testimony was false."

First, the Court should not avoid a mandated law enforcement function that Congress has given to the federal judiciary by splitting hairs. None of the oppositions deny that a court could authorize warrants related to an application brought by the United States Attorney claiming probable cause for facts the same as are presented in this case.

Second, the only proof that is raised by the C&S Opposition is that Christensen simply forgot. But his own declaration disproves this and admits he knew he was responsible after the jury verdict. This makes the denial implausible

and shows that there are clear "reasonable grounds" based on the inconsistency in what Christensen says in his Declaration and what de did at trial.

Christensen in his Declaration, claims that he mixed the dates up in his deposition, getting the month right but year wrong. He goes on to say that he "got involved in Plaintiff's pre-petition lawsuit <u>only after the jury rendered its verdict</u>." Christensen Declaration filed in support of the Employee Opposition filed on May 17, 2006 at ¶ 9 (emphasis added). First, this statement in the Christensen Declaration is patently false. Christensen had been actively engaged in the pre-petition litigation all along. *See* Declaration of Timothy J. Hogan, filed in support of Plaintiff Wayne Berry's Reply to Defendant PCT's Opposition to Plaintiff Wayne Berry's Motion for New Trial filed on 3/21/06, or in the Alternative, Rule 60(b) Relief, Exhibits 2, 3 and 6 filed separately under seal on May 27, 2006 (the "Rule 60(b) Hogan Dec.").

Moreover, not focusing on the date but only on his conduct after this critical moment in time, "after the jury rendered its verdict." Mr. Christensen testified at trial under oath:

6   Question by Mr. Hogan:  <u>But I'm talking about - actually, I would like to go</u>

7      <u>back to March 7th, the day after the jury verdict</u>:

8      <u>Why not just walk into the logistics department, as</u>

9   <u>the boss, and say, turn it off.</u> We don't need this, because

10   it's your knowledge and hard work that we make our money with,

11   not this software that's been nothing but trouble.

12   Why not just shut it off?

13   A.   <u>Well, for one thing, I wasn't the president at that time</u>.

14   I became the president after that, the ending of March. When

15   I got on board, it already -- we were already using it.

Transcript of Proceeding Before the Honorable Susan Oki Mollway dated March 2, 2006, at page 98 lines to 15. Declaration of Timothy J. Hogan filed in support of the Motion. Exhibit "2" (emphasis added).

No  reasonable person could conclude that Christensen testified truthfully or more to the point, without knowledge of the falsehood at trial.  His own recently filed Declaration proves it.  He admits in his Declaration that he began to take charge upon the entry of the jury verdict, but when asked under oath at trial what he did precisely at that same critical time he gave the same false testimony he gave in his deposition.  Without any admissible evidence to impeach him, he was safe.  This response was not tied to a date but to the events.  This establishes that he gave false testimony regarding this acknowledged fact at trial.  His motive was to make his team appear more valuable and to minimize the value of the Berry work to the enterprise.   Had Christensen testified truthfully he would have to have said that

11

"they couldn't run without the system," a fact that would have made the system more valuable to the jury. Now the issue of fees is before the Magistrate Judge where the wrongdoers are claiming to have been victorious and therefore entitled to fees.

The Email attached to the Rule 60(b) Hogan Dec. Exhibit 2 establishes that Christensen was on the litigation "team" as far back as August 2002 and that his recent declaration is just more proof of both Christensen's fraud and provides even more proof of counsel's likely knowledge of the fraud.

More than any obligation to make the statutorily required referral in such circumstances is the Court's responsibility to acknowledge that Mr. Smith like the other counsel who have an obligation to fix the wrong done by Christensen now boldly claim that it is Mr. Berry and his counsel who need to be sanctioned and are at fault for not proving the fraud earlier. The bold manner in which counsel thumbs their nose at their own ethical responsibility to fix the damage done combined with their apparent belief that the Court will follow suit, points more than any other factor to the mandatory recusal. As to Mr. Berry's counsel's motives, despite the personal counter-attack, the instant motion was both appropriate and required under the circumstances.

      **G.**    **The Dillon Transcript was Not Admissible Against Christensen.**

As to the absurd argument that, because Plaintiff didn't spot the fraud earlier, Christensen is absolved, even had counsel spotted this alleged admission, the Dillon deposition transcript in the first case was not admissible and could not even be used to impeach Christensen who was not a party in that case. There was no time prior to trial that the Dillon deposition was relevant because it was in a different case. Because it was not taken in this case, had it been offered against Christensen it was simply hearsay and not admissible nor could it properly be used for impeachment. Moreover, the transcript did not say that Christensen was the "division president". He claimed in both his deposition in this case and at trial to have not become the division president until later in March 2003 and after the jury verdict. That is clearly false but moreover, until the admission in the Reply to the Employee Fee Motion, Mr. Berry had no admissible evidence to rebut the false deposition testimony. The only admissible evidence was Christensen's false deposition transcript in this case. The simple fact is that Christensen gave false testimony, had a motive and the testimony was material. That is all that is required.

Apparently getting set to beat back the Rule 60(b) motion, Martin Walker in his Declaration claims that Mr. Berry had the email all along. Walker fails to inform the Court that the drive given to Mr. Berry's counsel in September 2005 was redacted by Lex Smith. Walker did not retain any copy of this drive to

establish what was turned over in September.  The trial was delayed while a real copy of what Walker had, and upon which he claims the emails were resident, was finally given to Mr. Berry's counsel on January 26, 2006.  Mr. Berry concedes that Walker had the file all along.   Moreover, Walker, who claims great expertise in the field of computer forensics, didn't even bother to identify the email "dbx" file that he claims these copies were located.

### III.    CONCLUSION.

Whether grounds exists for Rule 60(b) relief, the elements of perjury cannot be reasonably denied.  The need to have a judge who is free from even a perception of personal bias regarding one of the persons linked to this issue is an absolute requirement of the law that regulates the conduct of judicial officers.  By granting the motion, there can be no claim that the critical rulings in this case are tainted by personal bias.  By denying the motion, the Court will be casting in stone the doubt that the law specifically dictates should never enter into any federal court proceeding.  Recusal is mandatory and the Court must grant the motion.

Finally, the material facts regarding this were brought to counsel, the e-mail was presented and asked for comment and not one word was said.  *See* Rule 60(b) Hogan Dec. Exhibit "7." This Motion was filed immediately upon the receipt of the official trial transcripts because the rough drafts cannot be used in any manner by

order of the District Court.  Mr. Berry request that he be allowed to be heard on any issues related to requests for sanctions, which request, under the facts of this case, is itself sanctionable.

        DATED: Honolulu, Hawai'i, May 31, 2006.

                              /s/ Timothy J. Hogan
                              TIMOTHY J. HOGAN
                              Attorney for Plaintiff WAYNE BERRY