IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

WAYNE BERRY,                    )      CIVIL NO. 03–00385 SOM–LEK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
HAWAIIAN EXPRESS SERVICE,      )
INC., ET AL.,                  )
                               )
          Defendants.          )
_____)


**REPORT OF SPECIAL MASTER ON PLAINTIFF WAYNE BERRY'S
MOTION FOR ATTORNEY FEES AND FULL COSTS; DEFENDANT
POST–CONFIRMATION TRUST'S MOTION FOR ATTORNEYS' FEES AND COSTS;
AND DEFENDANT EMPLOYEES' MOTION FOR ATTORNEYS' FEES AND COSTS**

          Before the Court, pursuant to a designation by United

States District Judge Susan Oki Mollway, are Plaintiff

Wayne Berry's ("Plaintiff") Motion for Attorney Fees and Full

Costs, filed March 15, 2006 ("Plaintiff Motion"), Defendant Post–

Confirmation Trust's ("PCT")[1] Motion for Attorneys' Fees and

Costs, filed March 23, 2006 ("PCT Motion"), and Defendants

Mark Dillon, Teresa Noa, Brian Christensen, Melvin Ponce,

Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and

Jacqueline Rio's (collectively "Employees") Motion for Attorneys'

Fees and Costs, filed March 23, 2006 ("Employees Motion").

_____

[1] Defendant Fleming Companies, Inc. ("Fleming") filed
Chapter 11 bankruptcy on April 1, 2003.  The PCT was created to
hold Fleming's assets and liabilities for the benefit of
Fleming's creditors.  The Court will refer to Fleming and PCT
interchangeably.

Plaintiff requests $600,000.00 in attorney's fees and $108,622.25 in costs, for a total award of $708,622.25.  PCT requests $3,369,626.30 in attorney's fees and nontaxable costs and $33,339.29 in taxable costs, for a total award of $3,402,965.59. Employees request $360,087.50 in attorney's fees and $34,910.78 in costs.  In accord with Rule LR7.2(d) of the Local Rules of Practice of the United States District Court of the District of Hawai`i ("Local Rules"), the Court finds this matter suitable for disposition without a hearing.

After reviewing the parties' submissions and the relevant case law, the Court FINDS and RECOMMENDS that the Plaintiff Motion be GRANTED IN PART and DENIED IN PART.  The Court recommends that the district court award Plaintiff $19,986.42 in costs against PCT, Mark Dillon, and Teresa Noa. The Court also FINDS and RECOMMENDS that the PCT Motion be GRANTED IN PART and DENIED IN PART.  The Court recommends that the district court award PCT $66,684.38 in attorney's fees and $16,366.92 in costs, for a total award of $83,051.30 incurred in the defense of Count IV.  Finally, the Court FINDS and RECOMMENDS that the Employees Motion be GRANTED IN PART and DENIED IN PART. The Court recommends that the district court award Employees $27,507.20 in attorney's fees incurred in Brian Christensen's defense, and that the district court deny without prejudice Employees' request for costs incurred by Christensen.

**BACKGROUND**

The parties and the Court are familiar with the factual and procedural background of this case. The Court will only address the events that are relevant to the motions currently before the Court.

In 1999, Berry granted Fleming a no-charge user license for his Freight Control System software ("FCS"). On July 3, 2001, Plaintiff filed a multi-count complaint in another action against Fleming alleging, *inter alia*, that it infringed the FCS copyright. On March 6, 2003, a jury found for Plaintiff on one count of copyright infringement, finding that Fleming wilfully made unauthorized changes to the FCS.

After the verdict, Fleming attempted to revert back to the version of FCS Plaintiff licensed to it in 1999. The oldest copy of FCS that Mark Dillon, Fleming's Local Area Network Administrator, could find was from June 2000. This version was identical to the originally licensed version, with the exception of three changes that Fleming had made. Dillon removed one feature, but left the other two intact because he simply forgot that Fleming had made those changes. Fleming eventually decided to completely move away from FCS and, by June 9, 2003, Fleming had moved its data from the FCS system to a system using Microsoft Excel spreadsheets. Prior to June 9, 2003, Employees Mark Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy,

3

Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio used the version of FCS that Dillon created.

Plaintiff filed his Second Amended Verified Complaint ("SAVC") in the instant case on June 18, 2004.  The SAVC alleged the following claims against Fleming, Employees, and numerous other defendants: direct copyright infringement (Count I); contributory and vicarious copyright infringement (Count II); conspiracy to infringe (Count III); misappropriation of trade secrets (Count IV); violations of the Sherman Act (Count V); and Racketeering Influenced and Corrupt Organization ("RICO") violations (Count VI).

In a January 26, 2005 order addressing various motions for summary judgment ("January 26, 2005 Order"), the district court dismissed Count V with respect to Brian Christensen, Mark Dillon and Teresa Noa and granted summary judgment in favor of Brian Christensen on all counts.  The district court granted summary judgment in favor of Dillon and Noa on Count I with respect to actions taken before March 7, 2003 and after June 9, 2003.  The district court denied their motion for summary judgment with respect to the period between those dates, finding that they engaged in impermissible copying by using an unauthorized derivative of FCS.  The district court granted summary judgment in their favor on Counts II, III, and VI.

Plaintiff filed a motion for summary judgment on April 20, 2005, and PCT filed a motion for summary judgment on June 2, 2005.  Mark Dillon, Teresa Noa, Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio (collectively "Trial Employees")[2] also filed a motion for summary judgment on June 2.  The district court granted all three motions in part and denied them in part in a June 27, 2005 order ("June 27, 2005 Order").  The district court granted Plaintiff's motion for summary judgment against Trial Employees with respect to their liability under Count I for acts occurring between March 7 and June 9, 2003.  The district court found that Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio used the same derivative that Dillon and Noa used during that period.  The district court, however, found that their infringement was not wilful.  The district court also found that Trial Employees' use of the Excel spreadsheets after June 9, 2003 did not infringe upon Plaintiff's copyright and granted Trial Employees' motion for summary judgment with respect to their alleged use of an FCS derivative after June 9, 2003.  In addition, the district court granted Trial Employees' motion as to Counts II, III, V, and VI and granted PCT's motion as to Counts III, IV, V, and VI.

---

[2] Brian Christiansen was terminated from the case pursuant to the January 26, 2005 Order.

PCT and Trial Employees subsequently filed motions for summary judgment on the issue of damages. The district court denied those motions in an October 21, 2005 order. The district court found that any damages Plaintiff obtained against Trial Employees were limited to actual damages because Trial Employees did not receive any profit or benefit from the infringement.

The case proceeded to trial on the issues of damages as to Count I and PCT's vicarious liability for Trial Employees' infringement. On March 7, 2006, the jury entered its verdict. The jury found that Plaintiff established that he was entitled to $57,530.00 in actual damages from PCT, $2 from Dillon, and $2 from Noa. The jury found that Plaintiff was not entitled to any damages from Ponce, Purdy, Fukumoto, Waiolama, and Rio. The jury also found that Plaintiff was not entitled to any additional profits from PCT based on Fleming's infringement and that Fleming was vicariously liable for Trial Employees' infringement. On March 16, 2006, a Second Amended Judgment was issued, addressing all of Plaintiff's claims against all of the defendants.[3]

## I.    **Plaintiff Motion**

Plaintiff now seeks attorney's fees and costs pursuant to 17 U.S.C. § 505, arguing that he prevailed against all parties on the issue of ownership and copyrightability of his FCS

---

[3] The original judgment, issued on March 9, 2006, only addressed the jury's verdict, and the Amended Judgment, issued on March 16, 2006, contained an error.

software and that he prevailed at trial against PCT and Trial Employees on his direct and vicarious infringement claims. Plaintiff argues that any award of damages, even a nominal award, modifies a defendant's behavior and renders the plaintiff the prevailing party.  Plaintiff contends that this Court cannot reduce his fee award based on the amount he recovered because Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994), requires courts to treat prevailing plaintiffs and prevailing defendants alike in awarding attorney's fees and costs and in Fogerty the defendant was the prevailing party despite the fact that it did not receive any damages.  Plaintiff also argues that both Fleming and Employees rejected numerous offers to settle the case, including an offer prior to trial to settle for injunctive relief and attorney's fees and costs.

Plaintiff asserts that the fees and costs he incurred were necessary and reasonable.  He adjusted his total fees by more than $100,000.00 to account for fees incurred pursuing claims against defendants that he did not prevail against. Plaintiff claims that Fleming's infringing use of his FCS caused Fleming's revenues to increase by $55 million.  He also notes that Fleming's PCT is holding at least $70 million for Fleming's creditors.  Plaintiff therefore argues that there is no legal or equitable reason to deny him an award of fees and costs.

PCT filed its memorandum in opposition to the Plaintiff Motion on April 12, 2006.  PCT argues that it is the prevailing party and that the Fogerty factors and the additional Ninth Circuit factors weigh against Plaintiff.  PCT raises the same arguments it raised in the PCT Motion.  See infra.  In addition, PCT argues that it is entitled to attorney's fees because Plaintiff's action were vexatious, oppressive and unreasonable.

Even assuming, arguendo, that Plaintiff is the prevailing party, PCT argues that Plaintiff is not automatically entitled to attorney's fees.  PCT characterizes the damages award against it as nominal and argues that it does not warrant fees.  Further, PCT argues that it should not be required to pay Plaintiff's attorney's fees because the district court found that PCT was not a wilful infringer.  If the Court does decide to award attorney's fees to Plaintiff, PCT argues that the award must be adjusted to reflect Plaintiff's limited recovery.

With regard to Plaintiff's request for costs, PCT argues that Plaintiff cannot recover costs incurred in litigating non-copyright claims and other claims that were resolved before trial.  PCT argues that the attorney's fees and costs incurred on those claims can be easily segregated from the fees and costs incurred on the claims that went to trial.  If the fees and costs cannot be segregated, the Court must make the allocation.

Employees filed their memorandum in opposition to the Plaintiff Motion on April 12, 2006.  They argue that they are the prevailing parties and that the Fogerty factors and additional Ninth Circuit factors weigh against Plaintiff.  Employees raise the same arguments they raised in the Employees Motion.  See infra.  In addition, Employees argue that, even if Plaintiff is the prevailing party, the nominal damages award against them does not warrant an award of attorney's fees.  Employees argue that Plaintiff did not achieve any other relief besides the nominal award and he is therefore not entitled to attorney's fees.

Finally, Employees contend that the amount of fees Plaintiff requests is unreasonable in comparison to the $4 judgment he obtained against Dillon and Noa.  They also note that Brian Christensen prevailed on all claims but Plaintiff failed to deduct any time spent pursuing claims against him.  Employees argue that the Plaintiff Motion must be denied to the extent that it includes fees incurred in the Christensen claims.  Further, Employees argue that Plaintiff did not present any evidence substantiating his deduction of $100,000 for claims against Hawai`i Transfer Company, Limited ("HTC"), the C&S entities ("C&S"), Guidance Software, LLC ("Guidance"), and Foodland Super Market, Limited ("Foodland").  Employees also urge the Court to exclude fees and costs incurred by Plaintiff's counsel in Fleming's Delaware bankruptcy case.  Finally, Employees argue

that Plaintiff's expert fees for Thomas Ueno must be excluded pursuant to 28 U.S.C. § 1821.

Plaintiff filed replies to both memoranda in opposition on April 26, 2006. In response to PCT's memorandum, Plaintiff argues that the damages award was not *de minimis*. He emphasizes that the award is almost double the minimum statutory damages. He also argues that the size of the damages award cannot be considered under <u>Fogerty</u> and that the fact that he did not prevail on every motion along the way does not preclude him from recovering fees and costs. Plaintiff argues that, pursuant to court order, he conducted limited discovery on the Sherman Act and RICO claims, accounting for the relatively small number of hours spent on those claims. He argues that his deduction of $100,000.00 for claims which he did not prevail upon is fair.

Plaintiff raises some of the same arguments in his reply to Employees' memorandum. In addition, he emphasizes that each of the Trial Employees was found to be a direct copyright infringer. With the exception of Dillon and Noa, direct infringement was the only claim against Employees. Plaintiff further argues that Christensen lost on the issues of ownership and copyrightability of FCS and that Christensen only escaped liability because he gave false testimony. He also emphasizes that Employees had the opportunity to settle for injunctive relief. Plaintiff argues that he has proven the important

principle that employees are not immune from infringement claims when they use unlicensed software at work.  Further, a fee award is necessary to deter future infringement, especially in light of the fact that the district court denied him injunctive relief.

Plaintiff notes that his fee request is reasonable in light of the extensive fees requested by PCT and Employees.  He further argues that, pursuant to § 505, he is entitled to full costs, regardless of whether those costs are taxable costs pursuant to Rule 54(d)(1).

On April 12, 2006, Foodland filed a statement of no position on the Plaintiff Motion.

## II.  PCT Motion

PCT argues that it is entitled to attorney's fees and costs as the prevailing party under § 505.  PCT notes that it prevailed against numerous injunction requests, meritless motions, and false accusations.  PCT also succeed in reducing the damages award from Plaintiff's claim of up to $213 million, including $76 million in actual damages claimed at trial, to $57,534.  Plaintiff refused to accept a $400,000.00 settlement, despite the fact that the bankruptcy judge in July 2004 estimated his claim to be worth no more than $100,000.00.  Further, PCT argues that Plaintiff's primary goal was injunctive relief and PCT prevailed in both of his requests for injunctive relief.  PCT also obtained summary judgment on Plaintiff's conspiracy and

trade secret misappropriation claims.  In addition, the June 27, 2005 Order ruled that any infringement was inadvertent and that the Excel spreadsheets used after June 9, 2003 were noninfringing.  Thus, PCT argues that it prevailed on the vast majority of the claims in this case and on the contested issues of wilful infringement and derivative works.

PCT argues that the four non-exclusive factors identified in Fogerty weigh in favor of an award under the Copyright Act.  PCT argues that the numerous spurious allegations Plaintiff raised against it are evidence that Plaintiff's claims were frivolous and were objectively unreasonable.  PCT also points to the fact that Plaintiff could have settled the case for seven times the amount he ultimately received from the jury.  Further, in light of Plaintiff's misguided beliefs about the value of his claims and his virtual crusade against Fleming, a fee award would serve the purposes of compensation and deterrence.  PCT also argues that its successful defense against Plaintiff's claims furthered the policies of the Copyright Act.

In addition, PCT argues that it is entitled to attorney's fees and costs under Hawai`i Revised Statutes § 482B-5 because Plaintiff's trade secret claim was groundless.  PCT argues that this shows that Plaintiff only brought this claim "to pile on to his claims against Fleming . . . ."  [Mem. in Supp. of PCT Motion at 15.]

12

Finally, PCT argues that the attorney's fees and costs incurred by its local counsel and mainland counsel were reasonable and necessarily incurred in this case. PCT also argues that, in addition to attorney's fees and costs under § 505, it is also entitled to taxable costs under Local Rule 54.2.

Plaintiff filed his memorandum in opposition to the PCT Motion on April 20, 2006. Plaintiff raises many of the same argument raised in the Plaintiff Motion. In addition, Plaintiff points out that the district court stated during a October 11, 2005 dispositive motions hearing that, if she entered judgment against any of the defendants for any amount, they would not be the prevailing parties. Plaintiff also disputes PCT's statement that he refused a $400,000 settlement offer. He states that it was PCT who abandoned settlement negotiations in July 2004. Even if he had rejected an offer to settle, Plaintiff asserts that is not grounds to deny him prevailing party status.

Plaintiff also emphasizes that Fleming initiated the dispute in this case by suing him in Delaware. He argues that the Delaware proceedings were relevant to the instant case because Plaintiff obtained a non-discharge and exemption from the discharge injunction. He also argues that the Bankruptcy Court's estimation of the value of his claim is irrelevant. Plaintiff further notes that Fleming has been sanctioned by the Securities Exchange Commission ("SEC") and is reportedly under criminal

13

investigation by the SEC.

Plaintiff argues that he is the prevailing party as to Counts I and II.  Conspiracy to infringe, alleged in Count III, is a state law claim which does not support an award of attorney's fees and costs.  Misappropriation of trade secrets, alleged in Count IV, only supports an award of attorney's fees and costs where there is a showing of bad faith.  Plaintiff argues that his claim was well-founded.  The Sherman Act and RICO, violations of which were alleged in Counts V and VI respectively, do not authorize an award of attorney's fees to a prevailing defendant.  Plaintiff therefore argues that Counts III, IV, V, and VI are not related to the copyright claims and cannot support a fee award.

Plaintiff emphasizes that courts must treat prevailing plaintiffs and prevailing defendants equally.  He argues that he could not have prevailed on his claims of ownership, copyrightability, and infringement, were it not for the fact that he filed a copyright registration for his FCS software.  Fleming failed to file a copyright registration its allegedly non-infringing, independently created work.  Plaintiff therefore argues that this Court is without subject matter jurisdiction over the PCT Motion.

Assuming, *arguendo*, that PCT is the prevailing party, Plaintiff argues that it is not entitled to attorney's fees and

costs because it did not keep contemporaneous time records establishing what portion of counsel's work was done for C&S. Fleming provided C&S's defense and PCT did not even attempt to summarize the time counsel spent defending C&S.

PCT filed its reply on May 4, 2006, largely reiterating the arguments previously raised. In addition, PCT argues that it is entitled to attorney's fees and costs for all claims because the non-copyright claims were related to the copyright claims. PCT also argues that Plaintiff's trade secret claim was brought in bad faith and PCT is therefore also entitled to attorney's fees associated with that claim under state law.

PCT points out that its mainland counsel has never represented C&S. PCT states that it has carefully reviewed its records to ensure that no time performed on C&S's defense is included in this motion. PCT also alleges that Plaintiff turned this case into a national dispute and that PCT needed "counsel with national presence". [Reply to PCT Motion at 11.] PCT argues that mainland counsel's rates are comparable to those for national firms of similar size and reputation. PCT acknowledges that mainland counsel's fees were large, but PCT argues that the fees are not excessive because they were necessary to respond to Plaintiff's actions and litigation tactics. PCT also argues that Plaintiff made unreasonable demands throughout their efforts to settle this case and relentlessly pursued the case in spite of

numerous rulings against him.  PCT contends that this Court may
properly consider Plaintiff's response to settlement offers, in
addition to the <u>Fogerty</u> factors, in determining whether he is
entitled to fees under the Copyright Act.

On April 12, 2006, Foodland filed a statement of no
position on the PCT Motion.

## III. <u>Employees Motion</u>

Employees argue that they are entitled to attorney's
fees and costs as the prevailing parties under § 505.  The
district court granted summary judgment in favor of Brian
Christensen on all counts and Trial Employees prevailed on all
counts except Count I.  With regard to Count I, the district
court found that any infringement during the relevant time period
was inadvertent and not wilful.  At trial, although Plaintiff's
expert claimed Plaintiff was entitled to a $2.7 million license
fee from each infringing user, the jury awarded Plaintiff a total
of $4 in damages from Dillon and Noa.  The jury awarded no
damages against Ponce, Purdy, Fukumoto, Waiolama, and Rio.
Further, the district court denied Plaintiff's requests for
injunctive relief.  Employees therefore argue that they are the
prevailing parties who are entitled to attorney's fees and costs
pursuant to § 505 and taxable costs pursuant to Rule 54(d)(1).

Employees argue that the <u>Fogerty</u> factors weigh in favor
of an award of attorney's fees.  Plaintiff's claims were

frivolous as evidenced by his many baseless accusations, including that Noa of fled to Iowa with a copy of FCS and using it in C&S's operations.  After considerable discovery and various proceedings before this Court and the discovery master, this Court found the allegation to be without any support.  Employees assert that Plaintiff's baseless attacks against them showed that he had an improper motivation in pursuing the action.  For example, he urged Fleming to fire Dillon, Noa, and Christensen, and he accused Dillon of providing false deposition testimony. Employees argue that the factual and legal bases for Plaintiff's claims were objectively unreasonable, as evidenced by the summary judgment rulings and the jury's verdict.  Defendants should be encouraged to bring meritorious copyright defenses and thus an award of attorney's fees would further the interests of compensation and deterrence.  In addition, Employees argue that the degree of their success weighs in favor of an award and that their successful defense furthered the purposes of the Copyright Act.  Finally, Employees argue that their attorney's fees and costs were reasonable and necessarily incurred.

Plaintiff filed his memorandum in opposition to the Employees Motion on April 20, 2006.  Plaintiff raises many of the same argument raised in the Plaintiff Motion.  In addition, Plaintiff points out that he offered to dismiss Employees in exchange for an injunction, but Employees refused.  Plaintiff

17

states that Employees believed they could infringe upon his copyrighted work with impunity because their employer said they could.  Plaintiff also states that what he sought in this case was a finding that Employees were copyright infringers and that is what occurred, with the exception of Christensen.

Plaintiff argues that Christensen should be denied standing to seek attorney's fees because he gave false testimony about when he became the president of Fleming's Hawai`i Division. Plaintiff asserts that Christensen would not have prevailed were it not for this testimony.  Further, Employees do not identify separate fees attributable to Christensen's defense.  Finally, Plaintiff argues that Employees are not entitled to an award of attorney's fees because PCT paid for Employees' defense.

Employees filed their reply on May 4, 2006, largely reiterating the arguments previously raised.  In addition, Employees argue that they were justified in rejecting Plaintiff's offer to settle for injunctive relief, as evidenced by the fact that the district court's denied him injunctive relief. Employees also argue that Christensen's misstatement about when he became division president should not affect his status as the prevailing party.  At trial, he consistently testified that he was the president during the relevant time period.  Further, his misstatement at trial had no effect on the summary judgment ruling in his favor.  Employees further argue that the lack of

separate time entries for Christensen should not preclude an award because counsel performed the work for Employees collectively.  If necessary, the Court can apportion the time spent on Christensen's defense by awarding him one-third the fees and costs incurred until June 18, 2004,[4] and one-eight the fees incurred from June 19, 2004 through Christensen's dismissal.

Employees argue that they are entitled to attorney's fees incurred defending against the non-copyright claims because they are related to the copyright claims.  Finally, Employees acknowledge that the Court can consider the fact that Fleming paid for their defense in exercising its discretion to award fees, but they argue that it does not automatically preclude them from recovering fees.

On April 12, 2006, Foodland filed a statement of no position on the Employees Motion.

## DISCUSSION

## I.    Entitlement to Attorney's Fees under the Copyright Act

Plaintiff, PCT, and Employees seek attorney's fees pursuant to 17 U.S.C. § 505, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the

---

[4] Plaintiff originally named only Christensen, Dillon, and Noa.  The SAVC named added the other five employees.

19

prevailing party as part of the costs.
17 U.S.C. § 505.  Thus, whether to award attorney's fees to a prevailing party is within the court's discretion; attorney's fees are not awarded as a matter of course.  See Fogerty v. Fantasy, Inc., 510 U.S. 517, 533–34 (1994).  Courts must treat prevailing plaintiffs and prevailing defendants alike in determining whether to award fees.  See id. at 534.

### A.  Subject Matter Jurisdiction over the PCT Motion

In order to bring a copyright infringement claim, a plaintiff must have registered or preregistered his copyright. See 17 U.S.C. § 411(a).  Without a registration, a court cannot award statutory damages or attorney's fees under the Copyright Act.  See 17 U.S.C. § 412.  One of Fleming's defenses to Count I was that its spreadsheet system, which Plaintiff alleged was an illegal derivative of his FCS, was an independently created work. Plaintiff argues that, because courts must apply the same standard to prevailing plaintiffs and prevailing defendants, a defendant claiming to have an original work cannot be considered a prevailing party unless it registers its work.

Plaintiff's argument is misplaced.  Neither § 411(a) nor § 412 applies because Fleming did not allege that Plaintiff infringed upon Fleming's original work.  This Court therefore rejects Plaintiff's argument that it does not have subject matter jurisdiction to consider the PCT Motion.

20

B.    **Prevailing Parties**

Plaintiff argues that he is the prevailing party against PCT and Trial Employees as to Count I and against PCT as to Count II, based on the district court's summary judgment orders and the jury's verdict. PCT argues that it is the prevailing party as to Counts I and II because it obtained a jury verdict far below Plaintiff's claimed damages and it prevailed on all of Plaintiff's requests for injunctive relief. Employees argue that Brian Christensen is clearly the prevailing party because he obtained summary judgment on all counts. Trial Employees argue that they are the prevailing parties as to Count I because the jury awarded nominal or no damages against them. Further, they prevailed on Count II and Plaintiff's requests for injunctive relief.

The United States Supreme Court has stated that the term "prevailing party" is a legal term of art. See Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). The Supreme Court noted that Black's Law Dictionary defines "prevailing party" as "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>. – Also termed *successful party*.'" Id. (quoting Black's Law Dictionary 1145 (7th ed. 1999)) (alterations and emphasis in original). This definition was supported by

21

prior Supreme Court cases.  Thus, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."  Id. at 604 (quoting Texas State Teachers Ass'n v. Garland Independent Sch. Dist., 489 U.S. 782, 792-93 (1989)) (some citations omitted).

Buckhannon dealt with a request for attorney's fees under the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990.  See id. at 601.  The Supreme Court, however, made it clear that the same principles apply to the numerous statutes authorizing an award of attorney's fees to the prevailing party.  See id. at 602-03 & n.4 ("We have interpreted these fee-shifting provisions consistently, and so approach the nearly identical provisions at issue here." (citation omitted)).  Courts have therefore applied Buckhannon to § 505 of the Copyright Act, which does not contain an express definition of "prevailing party".  See Bruce v. Weekly World News, Inc., 203 F.R.D. 51, 55 (D. Mass. 2001); Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365 & n.4 (S.D.N.Y. 2003).

### 1.   PCT

The Court cannot find that PCT is the prevailing party pursuant to Buckhannon for purposes of § 505.  Plaintiff obtained judgment against PCT as to both of his claims under the Copyright Act, Counts I and II.  Although PCT succeeded in obtaining a jury

award that was far below what Plaintiff sought, this does not change Plaintiff's status as the prevailing party.  See Wall Data Inc. v. Los Angeles County Sheriff's Dep't, 447 F.3d 769, 787 (9th Cir. 2006) (holding that district court did not abuse its discretion in finding that Wall Data was the prevailing party even though it recovered less than it originally sought).

PCT emphasizes that it prevailed on all of Plaintiff's requests for injunctive relief.  First, even where a plaintiff obtains a preliminary injunction, that does not render him a prevailing party because the action has not yet been terminated and his claims have not been resolved.  See RCA Records, A Div. of RCA Corp. v. All-Fast Sys., Inc., 594 F. Supp. 335, 340 (S.D.N.Y. 1984); see also Don Post Studios, Inc. v. Cinema Secrets, Inc., 148 F. Supp. 2d 572, 573-74 (E.D. Penn. 2001) (finding that the defendant was still the prevailing party, even though the court had granted the plaintiff a preliminary injunction, which was later dissolved).  Similarly, the mere fact that PCT prevailed on Plaintiff's requests for preliminary injunctive relief does not render PCT the ultimate prevailing party.  PCT did prevail on Plaintiff's motion for a permanent injunction, but, as with the reduction in Plaintiff's monetary damages, the fact that Plaintiff did not obtain all of the relief he sought does not mean he is not the prevailing party.

23

Finally, the Court notes that the judgment in PCT's favor on claims that were not based on the Copyright Act does not affect Plaintiff's status as the prevailing party as to the Copyright Act claims.  See Branch v. Ogilvy & Mather, Inc., 772 F. Supp. 1359, 1366 (S.D.N.Y. 1991) ("A party who succeeds on a claim of copyright infringement is a 'prevailing party' under the Act, even if that party did not succeed on its other claims.").

The Court therefore FINDS that, as between Plaintiff and PCT, Plaintiff is the prevailing party for purposes of § 505. This Court RECOMMENDS that PCT's request for attorney's fees under the Copyright Act be DENIED.

### 2.   Employees

Christensen obtained judgment on all of Plaintiff's claims.  This Court therefore finds that he is a prevailing party against Plaintiff for purposes of § 505.

Plaintiff prevailed against Trial Employees as to Count I.  He obtained judgments of $2 each against Mark Dillon and Teresa Noa, but the jury did not award him any damages against Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio.  Trial Employees obtained summary judgment as to Count II.

For purposes of an award of attorney's fees, a prevailing party is one who succeeds on any significant issue in the case and achieves some of the benefit sought in the

24

litigation.  See Farrar v. Hobby, 506 U.S. 103, 109 (1992).  With regard to Plaintiff's copyright infringement case against Trial Employees, this Court finds that Count I presented the significant issues in Plaintiff's case against Employees. Plaintiff's claims in Count II were secondary.  Insofar as the district court ruled that Trial Employees did infringe upon Plaintiff's copyright, Plaintiff succeeded on the significant issues in the case.  This Court finds that Trial Employees are not the prevailing parties.[5]

Employees, however, argue that the award of nominal damages against Dillon and Noa and the award of zero damages against Ponce, Purdy, Fukumoto, Waiolama, and Rio are insufficient to render Plaintiff the prevailing party for purposes of § 505.  When it noted that its prior cases supported the Black's definition of "prevailing party", the Supreme Court discussed the following cases:

> In Hanrahan v. Hampton, 446 U.S. 754, 758 (1980)
> (*per curiam*), we reviewed the legislative history
> of § 1988 and found that "Congress intended to
> permit the interim award of counsel fees only when
> a party has prevailed on the merits of at least
> some of his claims."  Our "[r]espect for ordinary
> language requires that a plaintiff receive at
> least some relief on the merits of his claim
> before he can be said to prevail."  Hewitt v.
> Helms, 482 U.S. 755, 760 (1987).

---

[5] For the same reasons stated supra in section I.B.1., Trial Employees' victories in the non-Copyright Act counts and in Plaintiff's requests for injunctive relief do not render them the prevailing parties in this action.

_Buckhannon_, 532 U.S. at 603-04.  The Supreme Court has held that an award of nominal damages is sufficient under this test.  _See id._ at 604 (citing _Farrar v. Hobby_, 506 U.S. 103 (1992)).  In _Farrar_, the Supreme Court pointed out that an award of nominal damages is not an entry of judgment in favor of the defendant. Further, a plaintiff who obtains a judgment for nominal damages may enforce that judgment just as a plaintiff who obtains a judgment for millions of dollars.  _See Farrar_, 506 U.S. at 112-13.  "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."  _Id._ at 113.  In the present case, Plaintiff's award of nominal damages against Dillon and Noa is sufficient to render him the prevailing party.

In contrast, where a plaintiff obtains a judicial pronouncement that the defendant violated his rights but obtains no damages or other relief, the plaintiff does not have an enforceable judgment and is not a prevailing party.  _See id._ at 112.  The plaintiff has no mechanism to alter the defendant's behavior in a way that directly benefits the plaintiff.  _See id._ at 111-112.  "Of itself, 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status."  _Id._ at 112 (quoting _Hewitt v. Helms_, 482 U.S. 755, 762 (1987)) (alteration in original).  Insofar as the jury

26

awarded Plaintiff zero damages against Ponce, Purdy, Fukumoto, Waiolama, and Rio, and he obtained no other relief against them, Plaintiff did not obtain an enforceable judgment against them.

This Court FINDS that, as between Plaintiff and Trial Employees, Plaintiff was the prevailing party over Mark Dillon and Teresa Noa for purposes of § 505.  The Court, however, FINDS that Plaintiff was not the prevailing party against Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio.  Further, insofar as Ponce, Purdy, Fukumoto, Waiolama, and Rio did not obtain a judgment against Plaintiff, this Court FINDS that they are not the prevailing parties.  The Court therefore RECOMMENDS that Employees' request for attorney's fees incurred by Trial Employees be DENIED.

C.    **Related Claims**

Plaintiff argues that Christensen is not entitled to attorney's fees related to Counts III, V, and VI because they are not claims under the Copyright Act and attorney's fees are not otherwise available for those claims.[6]  A party that prevails on

---

[6] Plaintiff states that, with the exception of Dillon and Noa, direct infringement was the only claim against Employees. Plaintiff is mistaken.  Plaintiff brought Count II against all defendants, [SAVC at ¶ 74,] Count III against Christensen, Dillon, and Noa, [SAVC at ¶ 93,] Count V against "the non-debtor defendants", *i.e.* all defendants except Fleming, [SAVC at ¶ 131,] and Count VI against all defendants except Fleming.  [SAVC at ¶ 137.]  The only claim Plaintiff did not allege against Employees
(continued...)

a claim under the Copyright Act may recover attorney's fees for the copyright claims and any other related claims.  See The Traditional Cat Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003).  The Ninth Circuit has stated that claims are related when they arise from the same course and conduct.  See Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1230 (9th Cir. 1997).  Claims are unrelated when they allege "'distinctly different claims for relief that are based on different facts and legal theories' from the other causes of action in the overall litigation."  Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000) (stating that under the Lanham Act, a prevailing party cannot recover legal fees for non-Lanham Act claims "unless the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims" (citations, internal quotation marks, and emphasis omitted)).

        In the present case, Christensen argues that he is entitled to attorney's fees associated with Counts III, V, and VI because they are related to the Copyright Act claims.  Count III alleged conspiracy to commit copyright infringement.  While conspiracy is a separate state law claim, Count III is clearly

---

        [6](...continued)
was Count IV.

related to the copyright claims because they are all based on the same course of conduct.  Count VI, which alleges RICO violations, alleges that some of the defendants formed "an enterprise engaged in interstate commerce and directly and/or indirectly conducted or participated in the conduct of that enterprise through a pattern of racketeering."  [SAVC at ¶ 138.]  The alleged conduct was the copyright infringement.  This Court therefore finds that Counts III and VI are related to the copyright claims and that, under § 505, Christensen may recover attorney's fees incurred defending against those claims.

In contrast, the crux of Count V, violation of the Sherman Act, is the allegation that Fleming, Foodland, and other defendants made illegal agreements which enabled Fleming to maintain a monopoly on the wholesale grocery market.  Count V does allege that Fleming's illegal use of Plaintiff's FCS furthered the operation of the monopoly.  The focus of the claim, however, is on the monopoly, not the illegal use of Plaintiff's product.  Thus, Count V is based on distinctly different facts and legal theories from the copyright claims and is unrelated to the copyright claims.

The Sherman Act itself does not authorize an award of attorney's fees to a prevailing defendant.  The applicable provision provides:

> Except as provided in subsection (b) of this section, any person who shall be injured in his

> business or property by reason of anything
> forbidden in the antitrust laws may sue therefor
> in any district court of the United States . . .
> and shall recover threefold the damages by him
> sustained, and the cost of suit, including a
> reasonable attorney's fee.

15 U.S.C. § 15(a). Section 15(a) only provides for an award of attorney's fees to a prevailing plaintiff; a prevailing defendant may not obtain fees incurred in defending against Sherman Act claims. See, e.g., J.T. Gibbons, Inc. v. Crawford Fitting Co., 790 F.2d 1193, 1194-95 (5th Cir. 1986); Syufy Enters. v. Am. Multicinema, Inc., 602 F. Supp. 1466, 1468 (N.D. Cal. 1983). This Court therefore finds that Christensen is not entitled to an award of fees incurred defending against Count V.

Employees did not apportion their fee request to reflect the fees incurred defending against each count. Having reviewed the Employees Motion, the Court finds that it is impossible to make an exact apportionment of the fees incurred defending against Count V. This, however, does not relieve this Court of its obligation to attempt to allocate the requested fees to arrive at an award based on the compensable claims. See Traditional Cat Ass'n, 340 F.3d at 834. If this Court finds that Christensen should be awarded fees, the Court will make the necessary apportionment based on its knowledge of the facts and procedural history of this case.[7] See id.

---

[7] For the same reasons, this Court will not deny Christensen
(continued...)

D.    **Fogerty Factors**

The United States Supreme Court has stated that, in exercising their discretion to award attorney's fees and costs under the Copyright Act, courts may consider the following nonexclusive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty, 510 U.S. at 534 n.19 (citation and quotation marks omitted). Courts, however, may only consider these factors if they are consistent with the purposes of the Copyright Act. See id. The Ninth Circuit has stated that courts should also consider the degree of the moving party's success, see Wall Data Inc. v. Los Angeles County Sheriff's Dep't, 447 F.3d 769, 787 (9th Cir. 2006), and "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003) (citation omitted).

1.    **Christensen**

a.    **Frivolousness & Objective Unreasonableness**

The mere fact that Plaintiff's claims against

---

[7](...continued)
fees merely because Employees did not apportion fees attributable to each employee's defense. If necessary, this Court will apportion the fees attributable to Christensen based on its knowledge of the case.

Christensen were unsuccessful does not automatically render them
frivolous.  See Neitzke v. Williams, 490 U.S. 319, 329 (1989)
(failure to state a claim does not require a finding of
frivolousness).  The United States Supreme Court has stated that
a claim is frivolous if it "lacks an arguable basis either in law
or in fact."  Id. at 325.  Plaintiff did not individually
identify Christensen in Count I; he was named only by virtue of
being an "employee and/or agent of defendants named."  [SAVC at ¶
73.]  In granting summary judgment in Christensen's favor, the
district court noted that Plaintiff did not present any evidence
that Christensen ever used the infringing version of FCS.
[January 26, 2005 Order at 32.]  In support of his claim that
Christensen was liable for contributory infringement, Plaintiff
presented various emails that Christensen wrote, stating that a
replacement may be needed for FCS.  The district court found that
these did not establish that Christensen had knowledge of the
infringement.  The district court therefore ruled that
Plaintiff's contributory infringement claim failed.  Plaintiff's
vicarious infringement claim also failed because he did not
present any evidence to establish the requirement that the
infringement resulted in a direct financial benefit to
Christensen.  [Id. at 38.]  In light of the utter lack of
evidence supporting Plaintiff's copyright infringement claims
against Christensen, this Court finds that they were frivolous

and objectively unreasonable.

### b.    Motivation

This Court also finds that Plaintiff's pursuit of his copyright claims against Christensen, in spite of the lack of evidence supporting them, is a strong indication that he had an improper motivation.  Plaintiff had access to counsel who could have easily determined that such claims were without legal and factual basis.  In addition, Plaintiff has been responsible for numerous lawsuits and administrative complaints against Fleming. In light of the lack of evidence against Christensen, it appears that Plaintiff pursued his claims against Christensen as part of that pattern.  This Court therefore finds that Plaintiff had an improper motivation for pursuing claims against Christensen.

### c.    Compensation and Deterrence

This Court finds that an award of attorney's fees is appropriate to deter frivolous litigation.

The Fogerty factors weigh in favor of an award of attorney's fees to Christensen.  The application of the Fogerty factors is consistent with the purposes of the Copyright Act. Its primary objective "is not to reward the labor of authors, but [t]o promote the Progress of Science and useful Arts."  Fogerty, 510 U.S. at 527 (alteration in original).  Thus, defendants are encouraged to advance meritorious copyright defenses just as plaintiffs are encouraged to bring meritorious copyright

33

infringement claims.  See id.  Christensen's successful defense against frivolous and unreasonable copyright claims furthered the purposes of the Copyright Act.

### d.    Other factors

The Ninth Circuit has stated that courts should also consider the degree of success obtained and whether an award of attorney's fees to a prevailing defendant would have too great a chilling effect.  Christensen obtained a complete victory over Plaintiff; the district court ruled in Christensen's favor on all claims.  Finally, Plaintiff is not an unsophisticated litigant and the Court finds that an award of attorney's fees to Christensen would not have too great a chilling effect.

Having considered the factors identified by the Supreme Court and the Ninth Circuit, this Court finds that Christensen should be awarded attorney's fees and costs pursuant to § 505.

### 2.    Plaintiff

### a.    Frivolousness & Objective Unreasonableness

Insofar as Plaintiff prevailed against PCT, Dillon and Noa, this Court cannot find that his claims were frivolous or objectively unreasonable.  The Court notes, however, that Plaintiff's claimed damages, which at one point were upwards of $200 million, were frivolous and objectively unreasonable.

### b.    Motivation

As noted above, the instant case is part of a long line

34

of legal and administrative actions that Plaintiff has instituted against Fleming.  This indicates that, although Plaintiff did raise some meritorious claims, this action was likely motivated, at least in part, by improper purposes.

### c.    **Compensation and Deterrence**

Insofar as the district court found that any infringement that Dillon and Noa committed was not wilful, this Court finds that it is unnecessary to deter such conduct with an award of attorney's fees.  Further, in light of the fact that Plaintiff only obtained nominal damages against Dillon and Noa and a relatively small amount of damages from PCT, this Court finds that the interests of compensation do not require an award of Plaintiff's attorney's fees.

The <u>Fogerty</u> factors weigh against an award of Plaintiff's attorney's fees.  This balance is consistent with the purposes of the Copyright Act because the Act encourages both plaintiffs to advance meritorious claims and defendants to advance meritorious defenses.

### d.    **Other Factors**

Plaintiff only obtained limited success in this case. The district court found that Trial Employees' infringement was not wilful and that Trial Employees and Fleming did not infringe Plaintiff's copyright by using the Excel spreadsheets.  Further, although he claimed millions of dollars in damages, the jury only

35

awarded him a total of $57,534.00.  Plaintiff's limited success weighs against an award of attorney's fees.

Having considered the factors identified by the Supreme Court and the Ninth Circuit, this Court FINDS that Plaintiff is not entitled to attorney's fees and costs pursuant to § 505. This Court therefore RECOMMENDS that Plaintiff's request for attorney's fees be DENIED.

## II.  **Calculation of Attorney's Fees under the Copyright Act**

In Fogerty, the Supreme Court stated that courts should be guided by the principles set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983).  See 510 U.S. at 534.  In Hensley, the Supreme Court approved the "lodestar" method in which a court determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  461 U.S. at 433.  The court must then decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation.  See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).

The factors the Ninth Circuit articulated in Kerr are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

36

contingent, (7) time limitations imposed by the
client or the circumstances, (8) the amount
involved and the results obtained, (9) the
experience, reputation, and ability of the
attorneys, (10) the "undesirability" of the case,
(11) the nature and length of the professional
relationship with the client, and (12) awards in
similar cases.

Kerr, 526 F.2d at 70.  Factors one through five have been

subsumed in the lodestar calculation.  See Morales v. City of San

Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Further, the Ninth

Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567

(1992), held that the sixth factor, whether the fee is fixed or

contingent, may not be considered in the lodestar calculation.

See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549

(9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345

(9th Cir. 1993).  Once calculated, the "lodestar" is

presumptively reasonable.  See Pennsylvania v. Delaware Valley

Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see

also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar

figure should only be adjusted in rare and exceptional cases).

Employees request the following lodestar amount for

work performed in connection with this case:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Lyle Hosoda | $200 | 1162.0 | $232,400.00 |
| Raina Mead | $125 | 1229.5 | $153,687.50 |
| | | TOTAL | **$386,087.50** |

[Exh. O to Employees Motion.]  Mr. Hosoda is the principal

37

attorney in the law firm of Lyle S. Hosoda & Associates, LLC, and he has been practicing law for twenty years. Ms. Mead is an associate who has been practicing law for six years. [Employees Motion, Aff. of Lyle S. Hosoda ("Hosoda Aff.") at ¶¶ 17–18.]

## A.  **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. See id.; see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services. See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Although it is usually required that counsel must submit additional evidence that the rate charged is reasonable, see id., this Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation. This Court finds that the requested hourly rates of $200 for Mr. Hosoda and $125

for Ms. Mead to be manifestly reasonable.

**B.    Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. See id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

**1.    Fees attributable to Christensen**

As noted above, Employees did not allocate the fees incurred by each individual employee. This Court must therefore apportion the fees attributable to Christensen's defense based on this Court's knowledge of the case. This Court finds that the apportionment proposed by Employees, one-third the fees incurred

until June 18, 2004, and one-eighth the fees incurred from June 19, 2004 through Christensen's dismissal from the case, is a reasonable apportionment.

Up to June 18, 2004, Mr. Hosoda spent 164.4 hours working on the case and Ms. Mead spent 116.8 hours. From June 19, 2004 to June 27, 2005, Mr. Hosoda spent 564.0 hours and Ms. Mead spent 577.4 hours.[8] After subtracting any specific deductions, this Court will divide the pre-June 19, 2004 hours by three and the June 19, 2004 to June 27, 2005 hours by eight.

2.  **Specific Deductions**

Mr. Hosoda billed 30.0 hours from July 25 to 27, 2004 for travel to Delaware and his attendance at Fleming's bankruptcy confirmation hearing. While the bankruptcy proceedings did address issues relevant to this case, this Court will not allow time spent in connection with other cases. This Court will therefore disallow the 30.0 hours.

The Court notes that almost all of counsel's hours are recorded in the "block billing" style. "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case,

_____

[8] The Court also finds counsel's billing statements to be more accurate than counsel's estimation of work performed by category for these periods. [Exhs. N & O to Employees Motion.] The Court has included some of the time entries after June 27, 2005 for the following tasks: opposing Plaintiff's motion to reconsider the June 27, 2005 Order; and preparing and opposing motions for attorney's fees.

rather than itemizing the time expended on specific tasks."
Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir.
1998) (citations and quotation marks omitted).  Block billing
entries generally fail to specify a breakdown of the time spent
on each task.  This practice makes it difficult to determine
whether counsel spent a reasonable amount of time on a particular
task.  This Court will therefore reduce Mr. Hosoda's and
Ms. Mead's hours by approximately ten percent to account for the
fact that their block billing prevents this Court from
determining whether the hours expended were reasonable.  The
Court will deduct: for the time up to June 18, 2004, 16.0 hours
from Mr. Hosoda and 11.0 hours from Ms. Mead; and for the time
from June 19, 2004 to June 27, 2005, 56.0 hours from Mr. Hosoda
and 57.0 hours from Ms. Mead.

        The Court therefore finds the following hours to be
necessary and reasonably expended in this case: for the time up
to June 18, 2004, 148.4 hours for Mr. Hosoda and 105.8 hours for
Ms. Mead; and from June 19, 2004 to June 27, 2005, 478.0 hours
for Mr. Hosoda and 520.4 hours for Ms. Mead.  The Court
attributes to Christensen one-third of the time up to June 18,
2004, i.e. 49.47 hours for Mr. Hosoda and 35.27 hours for
Ms. Mead, and one-eighth of the time from June 19, 2004 to
June 27, 2005, i.e. 59.75 hours for Mr. Hosoda and 65.05 hours
for Ms. Mead.  Further, the fact that Fleming provided the

defense for Employees does not preclude an award of attorney's fees for Christensen's defense.  The fact that Employees may have to use any award to reimburse Fleming does not mean that Employees are not entitled to the award in the first place.

### C.  **Total Award**

Based on the foregoing, this Court finds that Employees have established the appropriateness of the following attorney's fees incurred in Christensen's defense:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Lyle Hosoda | $200 | 109.22 | $21,844.00 |
| Raina Mead | $125 | 100.32 | $12,540.00 |
|  |  | TOTAL | **$34,384.00** |

The Court finds it unnecessary to adjust the lodestar amount based on the Kerr factors.

The Court, however, must adjust the award to account for attorney's fees incurred in the defense against Count V. Based on this Court's knowledge of the case, this Court finds that twenty percent is a reasonable allocation of fees incurred in connection with Count V.  The Court therefore RECOMMENDS that Employees' request for attorney's fees be GRANTED IN PART and DENIED IN PART and that the district court award Christensen $27,507.20 in attorney's fees.

42

III. **Attorney's Fees under State Trade Secret Law**

A.    **Entitlement to Fees**

PCT argues that it is entitled to attorney's fees pursuant to Hawai`i Revised Statutes § 482B-5, which provides, in pertinent part:

> The court may award reasonable attorney's fees to the prevailing party if:
>     (1) A claim of misappropriation is made in bad faith[.]

Haw. Rev. Stat. § 482B-5.  Hawai`i trade secret law is based on the Uniform Trade Secrets Act ("UTSA") and therefore caselaw from other states that have adopted the UTSA is instructive.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McClafferty, 287 F. Supp. 2d 1244, 1249 (D. Hawai`i 2003).  Courts interpreting the California Uniform Trade Secrets Act have found "bad faith" where they found "objective speciousness of the plaintiff's claim and subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets."  Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 116 Cal. Rptr. 2d 358, 367 (Ct. App. 2002) (approving the two-part test applied in Stilwell Dev., Inc. v. Chen, 11 U.S.P.Q.2d 1328 (C.D. Cal. 1989)); see also Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts, 222 F. Supp. 2d 733, 744-45 (D. Md. 2002) (applying the Stilwell test).

> "Objective speciousness exits where there is a complete lack of evidence supporting Plaintiff's claims."  Computer Econ., Inc. v. Gartner Group, Inc., 1999 WL 33178020, at *6 (S.D.Cal. December 14, 1999).  "Subjective misconduct exists where a

43

> plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Id. In proving subjective misconduct, a prevailing defendant may rely "on direct evidence of plaintiff's knowledge . . . and [subjective misconduct] may also be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation." Id.

Contract Materials, 222 F. Supp. 2d at 744 (some citations omitted) (alterations in original).


In order to establish a claim of misappropriation of trade secrets, a plaintiff must prove: 1) the existence of a trade secret; and 2) the misappropriation of the trade secret. See Haw. Rev. Stat. § 482B-2. A "trade secret" is any information that: 1) "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means"; and 2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Id.

In granting summary judgment to Fleming on Count IV, the district court noted that Berry failed to show that any of the files on the computers in question constituted trade secrets. He did not establish that they had independent economic value from not being generally known and he initially licensed FCS to Fleming for free. Further, Berry did not identify the "30 other programs" that Fleming allegedly transferred to C&S. [June 27, 2005 Order at 32.] Fleming allegedly misappropriated his trade

44

secrets because Fleming, Guidance, and C&S misled the Bankruptcy
Court by claiming that no copies of Plaintiff's software remained
on Fleming's computers when it sold them to C&S.  Guidance
submitted evidence that any misstatement to the Bankruptcy Court
was inadvertent and was the result of Dillon's use of different
names for the files.  Plaintiff did not presented any evidence in
response to Guidance's explanation.  The district court found
that there was no evidence that C&S used improper means to obtain
any of Plaintiff's files.

        This Court finds that Plaintiff's trade secrets claim
against Fleming was objectively specious because there was a
complete lack of evidence supporting his claim.  Further, this
Court will infer subjective misconduct from the speciousness of
Plaintiff's claim and from his conduct during the litigation.
Plaintiff's failure to present any evidence to rebut Guidance's
assertion that any failure to disclosure the transfer of
Plaintiff's software was inadvertent indicates that he knew or
should have known that his claim had no merit.  Further, as
stated previously, this action is part of a long history of legal
and administrative actions by Plaintiff against Fleming.  This
Court therefore finds that Plaintiff made the misappropriation of
trade secrets claim against Fleming in bad faith and that it is
entitled to fees incurred defending against that claim.

Neither PCT nor Trial Employees claim entitlement to attorney's fees under other legal authority.

**B.    Calculation of Attorney's Fees**

Hawai`i courts calculate reasonable attorney's fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Group L.P. v. Paiea Props., 110 Hawai`i 217, 222, 131 P.3d 500, 505 (2006).  The court must determine a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate.  See id. at 222-23, 131 P.3d at 505-06.  In addition, Hawai`i courts may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai`i, 106 Hawai`i 416, 435, 106 P.3d 339, 358 (2005) (citations omitted). These factors, however, are merely guides; courts need not

46

consider them in every case.  See id.  In certain types of cases, some of these factors may justify applying a multiplier to the "lodestar" amount.  See Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai`i, 92 Hawai`i 432, 442, 992 P.2d 127, 137 (2000).

PCT requests the following amounts for work performed by mainland counsel, Kirkland & Ellis, until the June 27, 2005 Order:

| ATTORNEY | RATE | HOURS | SUBTOTAL | ATT'Y TOTAL |
|---|---|---|---|---|
| Allison M. Andrews | $185 | 18.9 | $  3,496.50 | |
| | $195 | 186.0 | $ 36,075.00 | $ 82,571.50 |
| | | | | |
| Antoinette Huerta | $ 90 | 9.0 | $    810.00 | |
| | $105 | 188.45 | $ 19,787.25 | $ 20,597.25 |
| | | | | |
| Bibliographic Research | $175 | 1.00 | | $    175.00 |
| | | | | |
| Damian D. Capozzola | $410 | 29.4 | $ 12,054.00 | |
| | $480 | 989.65 | $475,032.00 | $487,086.00 |
| | | | | |
| Dawn H. Dawson | $375 | 14.75 | | $  5,531.25 |
| | | | | |
| Edgar I. Yep | $ 90 | 14.5 | $  1,305.00 | |
| | $105 | 10.5 | $  1,102.50 | |
| | $145 | 105.1 | $ 15,239.50 | |
| | $170 | 42.00 | $  7,140.00 | $ 24,787.00 |
| | | | | |
| Eric C. Liebeler | $525 | 22.8 | $ 11,970.00 | |
| | $545 | 2.6 | $  1,417.00 | |
| | $575 | 507.50 | $291,812.50 | $305,199.50 |
| | | | | |
| Erin N. Brady | $405 | 4.75 | $  1,923.75 | |
| | $420 | 19.50 | $  8,190.00 | $ 10,113.75 |
| | | | | |
| Greer Shaw | $415 | 1.1 | | $    456.50 |
| | | | | |
| Jeffrey S. Norman | $495 | 12.5 | $  6,187.50 | |
| | $520 | 15.75 | $  8,190.00 | $ 14,377.50 |
| | | | | |
| Karen A. Schweickart | $295 | 23.5 | | $  8,333.75 |
| | | | | |
| Melissa M. Dulac | $360 | 37.8 | $ 13,608.00 | |
| | $395 | 343.0 | $135,485.00 | |
| | $410 | 72.25 | $ 29,622.50 | $ 178,715.50 |
| | | | | |
| Michael G. Fatall | $375 | 0.2 | $     75.00 | |
| | $415 | 11.2 | $  4,648.00 | |

| | | | | |
|---|---|---|---|---|
| | $430 | 5.25 | $  2,257.50 | $  6,980.50 |
| Neal F. San Diego | $105 | 348.45 | $ 36,587.25 | |
| | $110 | 641.0 | $ 70,510.00 | $107,097.25 |
| Peter Spingola | $375 | 0.3 | | $    112.50 |
| R. Olivia Samad | $235 | 15.4 | $  3,619.00 | |
| | $285 | 404.4 | $115,254.00 | |
| | $295 | 317.3 | $ 93,603.50 | $212,476.50 |
| Raymond F. Roman | $105 | 121.5 | | $ 12,757.50 |
| Richard L. Wynne | $670 | 0.6 | $    402.00 | |
| | $695 | 29.7 | $ 20,641.50 | |
| | $725 | 5.0 | $  3,625.00 | $ 24,668.50 |
| Russell A. Archer | $245 | 21.0 | | $  5,145.00 |
| Shirley S. Cho | $445 | 0.5 | $    222.50 | |
| | $465 | 0.1 | $     46.50 | |
| | $485 | 5.45 | $  2,643.25 | |
| | $520 | 2.0 | $  1,040.00 | $    3,952.25 |

**Kirkland Grand Total     $1,511,134.50**

[Exh. OO to Decl. of Damian D. Capozzola in Supp. of PCT Motion ("Capozzola Decl.").]  Allison Andrews is a paralegal with twenty years of experience.  Damian Capozzola is a litigation partner who was been practicing law since 1996.  Dawn Dawson is an associate in intellectual property law who was admitted to the California bar in 2001.  Eric Liebeler is a partner who graduated from law school in 1989.  Erin Brady is an associate who practices bankruptcy law and was admitted to the California bar in 2001.  Greer Shaw is a partner who has been practicing law since 1997.  Jeffrey Norman is a partner in intellectual property law who graduated from law school in 1992.  Karen Schweickart is an associate in intellectual property law who has been practicing law since 2003.  Melissa Dulac is an associate who was admitted to the California bar in 2000.  Michael Fatall is a partner in

48

intellectual property law who has been practicing law since 1997.
Neal San Diego is apparently an entry-level paralegal.
Olivia Samad is an associate who was admitted to the California
bar in 2003.  Peter Spingola is an associate in intellectual
property law who graduated from law school in 1997.
Richard Wynne is the firm's lead bankruptcy attorney and he was
first admitted to the bar in 1982.  Russell Archer is an
associate who was admitted to the California bar in 2004.
Shirley Cho is a partner who practices bankruptcy law and has
been practicing law since 1997.  Antoinette Huerta, Edgar Yep,
and Raymond Roman are legal assistants.  [Capozzola Decl. at ¶
34, Exh. FF.]

PCT also requests the following amounts for work
performed by local counsel, Kobayashi Sugita & Goda:

| NAME | RATE | HOURS | SUBTOTAL |
|------|------|-------|----------|
| Lex R. Smith | $200 | 1090.61 | $218,122.00 |
| Thomas H. Yee | $150 | 290.60 | $ 43,590.00 |
| Anne E. Lopez | $120 | 282.52 | $ 33,902.40 |
| Ann C. Teranishi | $120 | 112.85 | $ 13,542.00 |
| Jesse W. Schiel | $120 | 2.65 | $    318.00 |
| MAK | $100 | 2.75 | $    275.00 |
| JMB | $ 80 | 1.40 | $    112.00 |
| J. Garrett Karr | $ 70 | 6.00 | $     42.00 |
| JSL | $ 35 | 39.625 | $  1,386.88 |

```
          Sean G. Nakamura      $ 50          1.25    $      62.50

                                         Total    $311,352.78

          Hawai`i General Excise Tax (4.166%)      $ 12,970.96
```

**Kobayashi Grand Total     $324,323.74**

[Exh. B to Decl. of Lex R. Smith in Supp. of PCT Motion ("Smith Decl.").]  Mr. Smith is a partner at Kobayashi, Sugita & Goda and has been practicing law since 1983.  Ms. Teranishi and Ms. Lopez were associates who have practicing since 1999 and 2002, respectively.  [Smith Decl. at ¶¶ 6-8.]  J. Garrett Karr is a paralegal.  [Id. at ¶ 12.]  Mr. Yee and Mr. Schiel are associates who have been practicing since 1999 and 2003, respectively.  The Court is unable to determine who "MAK" and "JMB" are and will therefore disallow time billed by them.  Based on the hourly rate and the nature of the tasks performed, "JSL" and Mr. Nakamura appear to be clerical personnel.  The Court will disallow all time billed by them because work that is clerical in nature should be subsumed by a law firm's overhead.

### 1.   Reasonable Hourly Rate

The Hawai`i courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation and some courts have considered federal law in determining a reasonable hourly rate.  See, e.g., Reiche v. Ferrera, No. 24449, 2003 WL 139608, at *8 (Hawai`i Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in

the community for similar work." (citing United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)).  But see DFS Group, 110 Hawai`i at 223, 131 P.3d at 506 (determining a reasonable hourly rate by calculating the average of the four requested rates).  This Court therefore finds the federal case law on the determination of a reasonable hourly rate, see supra section II.A., is instructive in the instant case.

The court may apply rates from outside the forum if local counsel is unavailable, either because they are unwilling to take the case or because they lack the level of experience and expertise to do so.  See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

This Court finds that PCT has not established that local counsel was unwilling or unable to take this case.  In fact, local counsel contributed significantly to the representation.  The Court must therefore reduce the requested hourly rates for the Kirkland & Ellis attorneys and support staff to be consistent with the prevailing rates in Hawai`i.

Based on this Court's knowledge of the prevailing rates

51

in the community and the attorneys' submissions in this case, this Court finds that all of the hourly rates for the Kirland & Ellis attorneys and personnel are unreasonable.  The Court finds the following hourly rates reasonable: Ms. Andrews – $90; Mr. Capozzola, Mr. Shaw, Mr. Fatall, Ms. Cho – $200; Ms. Dawson, Ms. Brady, Ms. Dulac – $150; Mr. Liebeler, Mr. Norman – $220; Ms. Sckweickart, Ms. Samad, Mr. Archer – $130; Mr. San Diego – $80; Mr. Spingola – $180; Mr. Wynne – $250.

The Court finds that the tasks performed by Ms. Huerta, Mr. Yep, and Mr. Roman were clerical in nature and will disallow their time.  This Court will also disallow the time for "Bibliographic Research" because the Court cannot identify who performed this work and whether the work and the rate charged were reasonable.

With regard to local counsel, this Court finds the requested hourly rates of $200 for Mr. Smith, $150 for Mr. Yee, $120 for Ms. Lopez, Ms. Teranishi, and Mr. Schiel, and $70 for Mr. Karr to be manifestly reasonable.

### 2.  **Reasonable Hours Spent**

For the reasoning stated in section III.B.2., this Court finds federal case instructive on the issue of the reasonable number hours expended on the instant case.  See, supra section II.B.

### a.  **Mainland Counsel**

52

This Court finds the number of hours expended by Kirkland & Ellis to be grossly excessive. To begin with, this Court will only allow the time incurred by the primary attorneys in this matter, Mr. Liebeler, Mr. Capozzola, Ms. Dulac, and Ms. Samad, and the two paralegals, Ms. Andrews and Mr. San Diego. Further, this Court will deduct approximately fifty percent from each of these persons for excessive and duplicative time entries. The Court will make the following deductions: Ms. Andrews – 100.0 hours; Mr. Capozzola – 500.0 hours; Mr. Liebeler – 250.0 hours; Ms. Dulac – 225.0 hours; Mr. San Diego – 500.0 hours; and Ms. Samad 350.0 hours.

For the reasons stated above in section II.B.2., this Court will also deduct approximately ten percent for block billing. The deduction will not apply to Mr. San Diego, who generally broke down his daily time totals by separate tasks. The Court will make the following deductions: Ms. Andrews – 20.0 hours; Mr. Capozzola – 100.0 hours; Mr. Liebeler – 50.0 hours; Ms. Dulac – 45.0 hours; and Ms. Samad 70.0 hours.

The Court finds the remaining hours to be necessary and reasonably expended in this case.

### b.    Local Counsel

Plaintiff argues that PCT is not entitled to local counsel's fees because Fleming provided the defense for C&S and counsel failed to keep contemporaneous time records of fees

incurred for each client.  The lack of contemporaneous time records alone does not automatically preclude a fee award.  See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1557 (9th Cir. 1989) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation." (citing Johnson v. University College, 706 F.2d 1205, 1207 (11th Cir. 1983))).  PCT stated in its reply that the records submitted include some time entries reflecting work done solely for PCT.  PCT acknowledges that at times counsel performed work solely for C&S, but PCT states that none of that time is reflected in the PCT Motion.  Where counsel's work was done on behalf of both C&S and PCT, PCT included one-half of that time in its request.  The time records PCT submitted are thorough and detailed.  This Court has compared the records with those in C&S's motion for attorney's fees and there are significant differences in the two requests.  The Court therefore finds that PCT has submitted sufficient time records and that the allocation of fees attributable to both C&S and PCT is fair and equitable.

This Court finds the number of hours expended by Kobayashi, Sugita & Goda to be excessive.  This Court will deduct approximately fifty percent from Mr. Smith's time and

approximately twenty-five percent from Mr. Yee, Ms. Lopez, and Ms. Teranishi for excessive and duplicative time entries.  The Court will make the following deductions: Mr. Smith – 500.0 hours; Mr. Yee – 75.0 hours; Ms. Lopez – 70.0 hours; and Ms. Teranishi – 30.0 hours.  In addition, the Court will deduct 1.0 hours from Mr. Karr's time for the performance of tasks that are clerical in nature.  The Court finds the remaining hours to be necessary and reasonably expended in this case.

### 3.  **Total Award**

Based on the foregoing, this Court finds that PCT has established the appropriateness of the following award:

| ATTORNEY | RATE | HOURS | SUBTOTAL |
|---|---|---|---|
| Allison M. Andrews | $ 90 | 84.9 | $  7,641.00 |
| Damian D. Capozzola | $200 | 419.05 | $ 83,810.00 |
| Eric C. Liebeler | $220 | 232.9 | $ 51,238.00 |
| Melissa M. Dulac | $150 | 183.05 | $ 27,475.50 |
| Neal F. San Diego | $ 80 | 489.45 | $ 39,156.00 |
| R. Olivia Samad | $130 | 317.1 | $ 41,223.00 |
| | **Kirkland Total** | | **$250,543.50** |

| NAME | RATE | HOURS | SUBTOTAL |
|---|---|---|---|
| Lex R. Smith | $200 | 590.61 | $118,122.00 |
| Thomas H. Yee | $150 | 215.60 | $ 32,340.00 |
| Anne E. Lopez | $120 | 212.52 | $ 25,502.40 |
| Ann C. Teranishi | $120 | 82.85 | $  9,942.00 |

| | | | |
|---|---|---|---|
| Jesse W. Schiel | $120 | 2.65 | $ 318.00 |
| J. Garrett Karr | $ 70 | 5.00 | <u>$ 35.00</u> |
| | | Total | $186,259.40 |
| Hawai`i General Excise Tax (4.166%) | | | <u>$ 7,759.57</u> |

**Kobayashi Grand Total    $194,018.97**

This Court finds it unnecessary to adjust the award amounts based on the factors articulated in <u>Chun</u>. <u>See</u> 106 Hawai`i at 435, 106 P.3d at 358.

The Court, however, must adjust the award to reflect only the attorney's fees incurred in the defense against Count IV. Based on this Court's knowledge of the case, this Court finds that fifteen percent is a reasonable allocation of fees incurred in connection with Count IV. The Court therefore RECOMMENDS that PCT's request for attorney's fees be GRANTED IN PART and DENIED IN PART and that the district court award PCT $37,581.53 in attorney's fees incurred by mainland counsel and $29,102.85 in attorney's fees incurred by local counsel.

## IV. <u>Costs</u>

### A. <u>Employees' Costs for Christensen Defense</u>

Employees request the following costs:

| Category | Amount |
|---|---|
| Mediation Fees (non-taxable expense) | $ 1,678.03 |
| Travel Expenses (non-taxable expense) | $11,655.53 |
| Fees of the Clerk | $ 50.00 |
| Deposition and Court Reporters | $ 9,097.22 |
| Photocopying (in-house) | $ 6,162.85 |
| Photocopying (outside) | $ 2,760.46 |
| Special Master's Fees | <u>$ 3,596.87</u> |

**Total Non-Taxable Expenses and Costs     $34,910.78**

[Exh. Q to Employees Motion.]

### 1.  **Taxable Costs**

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Fed. R. Civ. P. 54(d)(1). A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987), superseded on other grounds, 42 U.S.C. § 1988(c). "Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920." Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995) (citing Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990) (per curiam)). Costs enumerated in § 1920 include the following:

1. Fees of the clerk and marshal;
2. Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and copies of papers necessarily obtained for use in the case;
5. Docket fees under section 1923 of this title;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

57

28 U.S.C. § 1920.

Employees state that they paid $50.00 to the Clerk of the Court on January 20, 2006. [Exh. R to Employees Motion.] The docket sheet shows no record of such payment. Further, even if the amount was actually incurred, it was after Christensen was terminated from the case and should be excluded.

Employees request $9,097.22 for depositions and the services of court reporters. Of that amount, $3,299.97 was incurred while Christensen was involved in this case. Mr. Hosoda states in his affidavit that all expenses and costs were reasonably and necessarily incurred. [Hosoda Aff. at ¶ 25.] Employees, however, did not include any supporting documentation for the deposition expenses. See Local Rule LR54.2(c) ("Any vouchers, bills, or other documents supporting the costs being requested shall be attached as exhibits."). Further, the deposition expenses are only taxable if, at the time the depositions were taken, "it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." Local Rule LR54.2(f)2. Employees have not provided sufficient information for this Court to make that determination. The Court recommends that the district court deny this request without prejudice to the resubmission of costs incurred while Christensen was a party.

Employees request $6,162.85 for in-house photocopying,

of which $4,891.30 was incurred while Christensen was a party. They also request $2,670.46 for outside photocopying, all of which was incurred during the relevant time period. The Local Rules provide that:

> The cost of copies necessarily obtained for use in the case is taxable provided the party seeking recovery submits an affidavit describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied. The practice of this court is to allow taxation of copies at $.15 per page or the actual cost charged by commercial copiers, provided such charges are reasonable. The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not allowable.

Local Rule LR54.2(f)4. For Employees' in-house copying, they provide general descriptions of the documents copied, the total number of pages copied, and the cost of $0.15 per page. For the outside copying, Employees provide no information about the documents copied, except to say that they were all for the production of documents. Employees have not provided sufficient information for this Court to determine whether the copies were necessarily obtained for use in the case or were for the convenience of counsel. For example, counsel may have made copies of pleadings for submission to the courts and service on other parities, but they may also have made some copies for their own convenience. This Court therefore recommends that the district court deny Employees' request for copying costs without prejudice to a resubmission of the costs incurred while

Christensen was a party.

Finally, Employees request $3,596.87 in fees paid to Special Master Clyde Matsui, and $709.61 of this amount was incurred while Christensen was a party.  The district court has discretion to tax the fees of a special master.  See <u>Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.</u>, 260 F.3d 1054, 1061 (9th Cir. 2001).  Employees, however, have not submitted any documentation supporting this request.  This Court cannot determine whether the special master fees were reasonable and necessarily incurred in this case.  This Court therefore recommends that the district court deny Employees' request for special master fees without prejudice to a resubmission of the costs incurred while Christensen was a party.

### 2.    <u>Non-taxable Costs</u>

Section 505 provides, in pertinent part, that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."  17 U.S.C. § 505.  As with the attorney's fees, this Court must allocate the non-taxable costs attributable to the copyright claims and related claims.  See <u>Twentieth Century Fox Film Corp. v. Entm't Distrib.</u>, 429 F.3d 869, 884 (9th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2932 (2006).  The Court may therefore award Employees non-taxable costs incurred by Christensen in connection with Counts I, II, III, and VI.

Employees request $1,678.03 in mediation fees incurred while Christensen was a party. They also request $11,655.35 in travel expenses, of which $5,807.62 was incurred while Christensen was a party. Both of these are the type of expenses normally incurred in litigation and routinely charged to fee-paying clients. Employees, however, have not submitted any documentation supporting either their mediation fees or their travel expenses. Further, the travel expenses were for Dillon, Noa, and Mr. Hosoda to travel to Philadelphia. There is no indication that the travel expenses were necessarily incurred in the preparation of Christensen's defense. This Court therefore recommends that the district court deny Employees' request for mediation fees and travel expenses without prejudice to a resubmission of the costs incurred, with supporting documentation, while Christensen was a party.

### 3. <u>Summary of Christensen's Request for Costs</u>

This Court FINDS that Employees have not submitted sufficient evidence to establish their entitlement of costs incurred in Christensen's defense. This Court therefore RECOMMENDS that the district court DENY WITHOUT PREJUDICE Employees request for taxable and non-taxable costs, subject to resubmission, including the requisite supporting documentation, of the costs incurred while Christensen was a party.

### B. <u>PCT's Costs for Count IV</u>

Hawai`i trade secret law provides that: "The court may award reasonable attorney's fees to the prevailing party . . . ." Haw. Rev. Stat. § 482B-5. Although the statute does not refer to an award of costs, other states that have adopted the UTSA also make costs available under the attorney's fees provision. See, e.g., Facility Group of Michigan, Inc. v. Office Furniture Servs., Inc., No. 241139, 2003 WL 22872138, at *2 (Mich. Ct. App. Dec. 4, 2003); Computer Econ., Inc. v. Gartner Group, Inc., No. 98-CV-0312 TW (CGA), 1999 WL 33178020, at *9 (S.D. Cal. Dec. 14, 1999).[9] This Court therefore finds that § 482B-5 authorizes an award of costs and that PCT is entitled to costs incurred defending against Count IV.

1.    **Mainland Counsel**

PCT requests the following costs incurred by Kirkland & Ellis:

| | |
|---|---|
| Expenses incurred by counsel | $ 62,025.51 |
| Expert fees | $296,624.62 |
| Other soft costs | $ 65,391.42 |
| Court reporter fees | $ 30,948.91 |
| Outside printing | $ 2,178.08 |
| In-house copying costs | $    212.30 |
| **Total** | **$457,380.84** |

[Exh. XX to Capozzola Decl.] Insofar as PCT is only entitled to costs incurred defending against Count IV, this Court will exclude all costs incurred after the June 27, 2005 Order, which

---

[9] Both statutes only refer to attorney's fees. See Cal. Civil Code § 3426.4; Mich. Comp. Laws § 445.1905.

disposed of Count IV.

### a.  Counsel's Expenses

As noted in section III.B.2.a., this Court finds the expenses incurred by counsel with Kirkland & Ellis to be excessive.[10]  The Court will therefore only allow the expenses incurred by the primary attorneys working on this case.  PCT claims the following travel expenses incurred by counsel up to June 27, 2005:

| | | |
|---|---|---|
| Olivia Samad | deposition of Brian Christensen (12/4-7/04) | $2,255.08 |
| Eric Liebeler | •deposition of Plaintiff (6/30/04-7/2/04) | $2,743.24 |
| | •hearing in Delaware (7/8-9/04) | $2,386.04 |
| | •hearing in Hawai`i (7/12-17/04) | $2,943.94 |
| | •hearing in Hawai`i (8/27-31/04) | $2,771.53 |
| | •hearing in Hawai`i (9/25-29/04) | $2,499.13 |
| | •deposition in Hawai`i (5/17-20/05) | $2,667.71 |
| | •summary judgment hearing (6/17-21/05) | $2,471.31 |
| D. Capozzola | •deposition Plaintiff (6/30/04-7/4/04) | $1,851.31 |
| | •deposition of NTI Consulting (7/9/04) | $  658.44 |
| | •witness meetings (7/14-16/04) | $2,069.09 |
| | •Plan Confirmation hearing (7/23-26/04) | $3,074.05 |
| | •deposition of Plaintiff | $1,697.54 |

---

[10] The Court also notes that PCT did not itemize and provide supporting documents for the expenses incurred by other Kirkland & Ellis personnel.

|  | (5/16–20/05) | |
|  | •summary judgment hearing<br>(6/8–22/05) | $1,791.30 |
| Melissa Dulac | attending and preparing for<br>hearing (9/23–29/04) | <u>$2,927.59</u> |
|  | **Total** | **$34,807.30** |

[Exhs. AA-DD to Capozzola Decl.]

First, this Court will disallow the expenses incurred attending proceedings before the Bankruptcy Court in Delaware. While the Court acknowledges that the Bankruptcy Court discussed issues relevant to this case, the Court will only allow expenses incurred in connection with proceedings in this case. The Court also notes that Mr. Liebeler and Mr. Capozzola both incurred expenses attending Plaintiff's 2004 and 2005 depositions, and the summary judgment hearing. The Court will only allow the expenses incurred by Mr. Capozzola.

The Court finds that the following expenses incurred by Mr. Liebeler should be excluded: $400.00 for limousine service to and from the airport on his July, August, and September 2004 trips; and $10.37 for an in-room movie during his September 2004 trip. Similarly, the Court will also include the $10.37 in-room movie expense incurred by Ms. Dulac.

The Court finds the following travel expenses to be reasonably and necessarily incurred before June 27, 2005:

| Olivia Samad | $ 2,255.08 |
| Eric Liebeler | $ 7,804.23 |
| Damian Capozzola | $ 8,067.68 |

| | |
|---|---|
| Melissa Dulac | $ 2,917.22 |
| **Total** | **$21,044.21** |

Further, such travel expenses are the type that are regularly incurred during litigation and are typically passed on to fee paying clients.

### b.   **Expert Fees**

PCT requests the following expert fees incurred up to June 27, 2005:

| | |
|---|---|
| Philip Johnson | $   600.00 |
| Analysis Group | $13,168.15 |
| Brass Rat Group – Martin Walker | $62,041.01 |
| **Total** | **$75,810.16** |

[Exh. V to Capozzola Decl.]  The Court finds these experts' services to be necessary to PCT's defense of the case.  The Court, however, finds the hourly rates charged by the Analysis Group to be excessive and not representative of the prevailing rates in the community for similar services.  Jeff Kinrich, the managing principal, charges $485.00 per hour, K. Gold, the manager, charges $295.00 per hour, and D. Bhattacharyya, the analyst, charges $185.00 per hour.  The Court will allow the following hourly rates: Kinrich – $250; Gold – $175; and Bhattacharyya – $100.[11]  Similarly, the Court finds the hourly rates charged by the Brass Rat Group to be excessive and not representative of the prevailing rates in the community for

---

[11] J. Kinrich expended 5.00 hours, K. Gold 19.75 hours, and D. Bhattacharyya 26.50 hours.

similar services. The Brass Rat Group charged $300.00 per hour for professional services; the Court will allow $250.00.[12] The Court will also exclude time spent by the Brass Rat Group on clerical tasks and time spent traveling.

The Court finds the following expert fees to be reasonable and necessarily incurred in the defense of this case up to June 27, 2005:

| | |
|---|---|
| Philip Johnson | $ 600.00 |
| Analysis Group | $ 7,370.65 |
| Brass Rat Group – Martin Walker | $40,941.01 |
| **Total** | **$48,911.66** |

The Court also finds that expert fees are the type of expenses that are regularly incurred during litigation and are typically passed on to fee paying clients.

### c.    **Other Soft Costs**

PCT requests $65,391.42 in "soft costs" for which no supporting documentation is available. Of that amount, $19,354.76 was incurred after June 27, 2005 and is clearly not compensable. PCT's itemization of soft costs is 162 pages long. [Exh. TT to Capozzola Decl.] In addition, there is a list of further expenses, without any dates, at the end of the list. The categories of the expenses include: scanned images; binding; tabs/indexes/dividers; standard copies; postage; color copies; and fax charges. The undated list does not appear to be a

_____

[12] The Brass Rat Group expended 245.5 hours on professional services at $300.00 per hour.

summary, as it does not include numerous previously cited categories.  This Court therefore considers the undated list as additional expenses for which no information is available.  The Court will disallow those expenses, which total $20,894.79, as PCT has not provided enough information for the Court to determine they were reasonably and necessarily incurred.

PCT's costs during the relevant time period include the following entries which should not be considered "soft costs": May 20, 2005 outside copying – $424.60; May 31, 2005 outside copying – $727.58; and June 15, 2005 outside copying – $327.54. PCT should have been able to substantiate these costs.  This Court will therefore disallow a total of $1,479.72.

The remaining expenses include: daily in-house copying and scanning; document preparation; mailing expenses; courier expenses; computer–assisted research; long distance telephone charges; fax charges; and teleconferencing charges.  The Court finds that all of these are expenses that are routinely incurred during litigation and are typically charged to fee paying clients.  The Court finds that a total of $23,662.15 in "soft costs" was reasonable and necessarily incurred in PCT's defense up to June 27, 2005.

### d.    Fees of the Court Reporter[13]

---

[13] PCT identified the fees of the court reporters and copying costs as taxable costs.  Insofar as § 482B-5 authorizes

(continued...)

PCT claims the following court reporter fees incurred up to June 27, 2005:

| | | |
|---|---|---|
| 7/23/04 | Deposition of Michael Anderson (vol.1) | $ 567.85 |
| 7/23/04 | Deposition of Scott Stevens | $ 513.40 |
| 7/24/04 | Deposition of Plaintiff (transcript) | $ 2,337.95 |
| 7/25/04 | Deposition of Plaintiff (videotape) | $ 1,075.00 |
| 12/15/04 | Depositions of B. Christensen, J. Rio, and A. Waiolama | $ 713.45 |
| 5/31/05 | Deposition of Philip Johnson | $ 1,477.34 |
| 5/31/05 | Deposition of Plaintiff (vol.1) | $ 2,734.82 |
| 5/31/05 | Deposition of Brian Marting | $ 2,343.37 |
| 5/31/05 | Deposition of Plaintiff (vol.2) | $ 2,482.33 |
| 7/25/05 | Transcript of summary judgment hearing | $ 61.38 |
| | **Total** | **$14,306.89** |

[Exhs. W & X to Capozzola Decl.]  The Court finds that these costs are sufficiently documented and that they were reasonably and necessarily incurred in PCT's defense.  Further, such fees are regularly incurred during litigation and typically passed on to fee paying clients.

### e.   Copying

PCT requests the following outside copying expenses incurred up to June 27, 2005:

| | | |
|---|---|---|
| 12/9/04 | Unspecified | $ 108.25 |
| 5/20/05 | Document Production | $ 424.60 |
| 6/15/05 | Exhibit Binders | $ 327.54 |
| 6/23/05 | Exhibit Binders | $ 300.23 |
| | **Total** | **$1,160.62** |

[Exh. Y to Capozzola Decl.]  The Court will disallow the December 9, 2004 copying cost because PCT did not specify what

---

[13](...continued)
an award of costs, this Court need not apply the standards for taxable costs articulated in Local Rule 54.2.

was copied, nor does it provide supporting documents showing the number of pages copied and the costs per page. The Court finds the remaining $1,052.37 to be reasonably and necessarily incurred in the defense of this case.

In addition, PCT requests in-house copying costs at the rate of $0.10 per page. Prior to the resolution of Count IV, PCT made 1,355 copies in-house of exhibits to documents filed with the court, for a total cost of $135.50. The Court finds these charges to be reasonable and necessarily incurred in the defense. Further, copying expenses regularly incurred during litigation and are typically passed on to fee paying clients.

### f.   <u>Summary of Mainland Counsel's Costs</u>

The Court finds that the following costs were reasonable and necessarily incurred by Kirkland & Ellis up to June 27, 2005:

| | |
|---|---|
| Expenses incurred by counsel & staff | $ 21,044.21 |
| Expert fees | $ 48,911.66 |
| Other soft costs | $ 23,662.15 |
| Court reporter fees | $ 14,306.89 |
| Copying costs | <u>$  1,187.87</u> |
| **Total** | **$109,112.78** |

The Court, however, must adjust the award to reflect only the costs incurred in the defense against Count IV. Based on this Court's knowledge of the case, this Court finds that fifteen percent is a reasonable allocation of fees incurred in connection with Count IV and attributes $16,366.92 in costs to Count IV.

### 2.   <u>Local Counsel</u>

69

PCT requests $26,942.77 in costs incurred by Kobayashi, Sugita & Goda. PCT merely submitted a list of its actual expenditures in chronological order. It did not include a summary of its costs, nor did it include any supporting documentation. Further, many of the cost items have insufficient descriptions. For example, there are charges that merely state "On-line Services – Westlaw", or "Postage" or "Telephone Expense – Long distance charges". Without further information, this Court cannot determine whether and to what extent PCT is entitled to costs in connection with its defense of Count IV.

The Court therefore RECOMMENDS that PCT's request for costs be GRANTED IN PART and DENIED IN PART. The Court recommends that the district court award PCT $16,366.92 in costs incurred by Kirkland & Ellis and recommends that the district court deny PCT's request for costs incurred by Kobayashi, Sugita & Goda without prejudice, subject to a resubmission of eligible costs with the necessary supporting documents.

C.    **Taxable Costs by Plaintiff, PCT, & Trial Employees**

Rule 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Fed. R. Civ. P. 54(d)(1). The Ninth Circuit has applied the Buckhannon analysis to the determination who is a "prevailing party" for purposes of

Rule 54(d)(1).  See Miles v. California, 320 F.3d 986, 989 (9th

Cir. 2003).  Accord Dattner v. Conagra Foods, Inc., 458 F.3d 98,

101 (2d Cir. 2006) (stating that "a litigant who is a prevailing

party for purposes of attorney's fees is also the prevailing

party for purposes of costs" and noting that several courts have

applied Buckhannon to Rule 54(d) motions for costs).  This Court

therefore finds, for the reasons stated in section I.B., that

Plaintiff is the prevailing party against PCT, Mark Dillon, and

Teresa Noa for purposes of Rule 54(d)(1).  Plaintiff is not the

prevailing party against Melvin Ponce, Sonia Purdy,

Justin Fukumoto, Alfredda Waiolama, and Jacqueline Rio.  The

Court finds that Plaintiff is entitled to Rule 54(d)(1) costs

against PCT, Mark Dillon, and Teresa Noa.  Neither PCT nor Trial

Employees are prevailing parties; they are not entitled to costs

under Rule 54(d)(1).  This Court therefore RECOMMENDS that the

district court DENY PCT's and Trial Employees' requests for

taxable costs.

        Plaintiff requests $108,622.25 in taxable costs

consisting of the following:

| | |
|---|---|
| Court and Sheriff Fees | $ 476.00[14] |
| Court Appointed Experts | $32,657.92 |
| Outside Copies and Exhibit Costs | $ 3,949.76 |
| Deposition Transcripts | $ 5,187.91 |
| Court Transcripts | $ 4,878.96 |
| Trial Experts | $42,600.20 |

_____

        [14] Plaintiff's summary erroneously states that he incurred
$591.53.

| | |
|---|---|
| Facsimile Charges at .50 per page | $ 1,591.25 |
| Long Distance Charges | $   267.00 |
| Additional In House Copy costs at .20 per page | $13,449.20 |
| Postage at cost | $ 1,043.11 |
| Erhard Delaware Local Counsel Costs | $ 2,405.41 |
| **Total** | **$108,622.25** |

[Aff. of Timothy J. Hogan in Supp. of Plaintiff's Motion ("Hogan Aff."), Summary.]

## 1.    **Fees of the clerk and marshal**

Fees of the clerk and marshal are taxable pursuant to 28 U.S.C. § 1920(1).  Plaintiff's request for court and sheriff fees include the following:[15]

| | |
|---|---|
| A.A.A. Process Service/Teresa Noa service | $105.00 |
| USDC certified copies | $ 50.00 |
| Clerk of the U.S. Dist. Ct., 3 minute CD of final pretrial conference before Magistrate Kobayashi | $ 26.00 |
| Clerk, U.S. Dist. Ct., jury questionnaire | $ 50.00 |
| Sheriff Harry Kau, service of process Chun & Christensen | $ 88.00 |
| Sheriff Harry Kau, service of process on Chun | $ 49.00 |
| **Total** | **$372.00** |

[Exh. 2A to Hogan Aff.]  Plaintiff has submitted supporting documentation for each of these items.  This Court finds that these costs are fully taxable pursuant to 28 U.S.C. § 1920(1).

## 2.    **Witness fees**

---

[15] The Court has excluded those costs which Plaintiff that are actually witness fees and will discuss those separately.

72

Plaintiff's request for court and sheriff fees include a $50.00 witness fee, with mileage, for Andrew Chun and a $54.00 witness fee, with mileage, for Brian Christensen.  [Exh. 2A to Hogan Aff.]  Witness fees are taxable pursuant to 28 U.S.C. § 1920(3).  "Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821."  Local Rule LR54.2(f)(3); see also Clausen v. M/V New Carissa, 339 F.3d 1049, 1064 (9th Cir. 2003) (stating that witness fees are taxable costs under § 1920(3), but are limited to forty dollars per day under 28 U.S.C. § 1821(b)); Yasui v. Maui Elec. Co., Ltd., 78 F. Supp. 2d 1124, 1130 (D. Hawai`i 1999) (same).

Plaintiff apparently subpoenaed Chun and Christensen to testify at trial.  Christensen testified for Plaintiff on March 1, 2006 and Chun testified for Defendants on March 2, 2006. Plaintiff submitted records of the checks prepared for Chun and Christensen.  This Court therefore finds that their presence at trial was reasonably necessary and that there is sufficient documentation supporting the witness fees.  Plaintiff is entitled to the $40.00 witness fee for Chun and Christensen.

The remaining fees of $10.00 for Chun and $14.00 for Christensen apparently represent mileage payments.  Section 1821(c)(2) provides:

> A travel allowance equal to the mileage allowance which the Administrator of General Services has

prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

28 U.S.C. § 1821(c)(2). There is no indication that Plaintiff calculated Chun and Christensen's mileage allowances in accordance with § 1821(c)(2). The Court therefore finds that the mileage allowances are not taxable.

### 3.   Court Appointed Experts

Section 1920(6) provides that compensation of court appointed experts is a taxable expense. Plaintiff requests $32,657.92 in compensation for court appointed experts, consisting of the following:

| | |
|---|---|
| William G. Meyer, III – mediator fee | $ 1,678.03 |
| William H. Sudell, Jr. – mediator fee | $ 1,050.00 |
| Clyde Matsui – discovery master fee | $24,616.25 |
| Clyde Matsui – fees re computer investigation | $ 5,313.64 |
| **Total** | **$32,657.92** |

[Exh. 2B to Hogan Aff.]

Mediation fees are not one of the expenses enumerated in § 1920 and are therefore not taxable. See, e.g., Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002) (per curiam); Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 530 (5th Cir. 2001). This Court will therefore disallow the requested mediators' fees for Mr. Meyer and Mr. Sudell.

As noted above, courts may tax the fees of a special

74

master.  See Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp,
Inc., 260 F.3d 1054, 1061 (9th Cir. 2001).  Plaintiff submitted
an invoice, transmitted on March 3, 2006, for Matsui Chung for
services rendered from December 3, 2004 to December 27, 2005
("2006 Invoice").  [Exh. 2B to Hogan Aff.]  The 2006 Invoice
reflects $49,232.50 in fees and $77.85 in costs.  This Court
finds the fees of the discovery master to be reasonable and
necessarily incurred in this case.  Plaintiff requests taxation
of $24,616.25 for the 2006 Invoice.  The invoice, however,
reflects payments from a variety of sources, including Alix
Partners, LLC, Guidance, and Fleming, as well as counsel for
Foodland, HTC, Employees, and Plaintiff.  The 2006 Invoice states
that, on May 24, 2005, Plaintiff made a payment of $4,218.72 for
fees and $38.93 for costs.  It also states that the payments from
all sources totaled $26,990.46, which left a remaining balance of
$22,319.89.  Plaintiff did not provide any information about any
further payments he made on the 2006 Invoice.  Plaintiff has only
established that he paid $4,257.65 on the 2006 Invoice and, in
light of the numerous parties that made payments on the invoice,
it seems unlikely that Plaintiff paid over $20,000.00 of the
remaining balance.  This Court therefore finds that only
$4,257.65 of the 2006 Invoice is taxable.

Plaintiff also submitted an invoice for services

rendered by Matsui Chung from March 1, 2005 to July 5, 2005 concerning a discovery dispute regarding the computer investigation ("2005 Invoice").  [Exh. 2B to Hogan Aff.]  The fees for this dispute were split equally between Plaintiff and Fleming.  The invoice reflects total fees and expenses of $10,627.28.  Plaintiff requests fifty percent of that amount, or $5,313.64.  The Court finds the discovery master's fees and expenses, as reflected in the 2005 Invoice, to be reasonable and necessarily incurred in this case.  The Court finds that Plaintiff's expenses for the 2005 Invoice are taxable and that a total of $9,571.29 in discovery master's fees are taxable as fees of a court appointed expert.

### 4.    **Copying Costs**

Section 1920(4) allows for the taxation of copies necessarily obtained for use in the case.  Local Rule 54.2(f)4. states that internal copying costs may be taxed at $0.15 per page and that external copying costs may be taxed if reasonable.  That provision also provides that copies made for the use or convenience of the requesting party or counsel are not taxable.

Plaintiff requests $13,449.20 for in house copying costs at $0.20 per page and $3,949.76 for outside copying and exhibit costs.  [Exhs. IB & 2C to Hogan Aff.]  With regard to both categories, Plaintiff failed to provide an affidavit describing what documents were copied and the intended purpose of

the copies.[16]  <u>See</u> Local Rule LR54.2(f)4.  Without such
information, the Court cannot determine whether the copies were
necessary for use in the case.  The Court also notes that
Plaintiff's per page charge for in house copying exceeds the
amount allowed by Local Rule 54.2(f)4.  The Court recommends that
the district court deny Plaintiff's request for in house and
external copying costs without prejudice, subject to a
resubmission which complies with the Local Rules.

     5.  **Transcripts**

     Section 1920(2) allows for the taxation of court
reporter fees for transcripts necessarily obtained for use in the
case.  The Local Rules provide that:

> The cost of a stenographic and/or video original
> and one copy of any deposition transcript
> necessarily obtained for use in the case is
> allowable.  A deposition need not be introduced in
> evidence or used at trial, so long as, at the time
> it was taken, it could reasonably be expected that
> the deposition would be used for trial
> preparation, rather than mere discovery.  The
> expenses of counsel for attending depositions are
> not allowable.

Local Rule 54.2(f)2.

     Plaintiff requests $5,187.91 for the following

---

[16] Plaintiff provided brief descriptions of some of the
documents copied by external sources, such as "Motions for SJ",
"Ueno Depo.", and "Exhibits".  The external invoices include
information about the number of copies made of some of the
documents.  Even with this information, the Court cannot
determine whether the copies were necessary for use in the case
because Plaintiff failed to provide information about the
intended purpose of the copies.

deposition transcripts:

| | |
|---|---|
| Mark Dillon | $ 805.79 |
| Brian Christensen, Alfredda Waiolama & Jacqueline Rio | $1,051.19 |
| Brian Marting, Philip Johnson & Wayne Berry | $1,812.15 |
| Thomas Ueno (7/22/05) | $ 597.80 |
| Jack Borja | $ 629.48 |
| Thomas Ueno (1/23/06)[17] | $ 291.50 |
| **Total** | **$5,187.91** |

[Exhs. 2D & 2E to Hogan Aff.]  Christensen, Waiolama, Rio,

Plaintiff, and Ueno testified at trial.  Dillon, though he did

not testify at trial, was a party at trial.  Brian Marting,

Philip Johnson, and Jack Borja did not testify at trial.  PCT and

Trial Employees identified Brian Marting and Jack Borja as

potential witnesses.  Plaintiff intended to call Philip Johnson,

Ph.D., as a rebuttal witness, if it was necessary based on the

evidence adduced at trial.  This Court therefore finds that, at

the time the depositions were taken, it could reasonably be

expected that they were for trial preparation and not mere

discovery.  The Court finds that Plaintiff's deposition

transcript costs are taxable in full.

Plaintiff also requests $4,878.96 for transcripts of

the following court proceedings:

| | | |
|---|---|---|
| 8/30/04 | Prelim. Injunction Hearing | $  66.57 |
| 6/20/05 | Summary Judgment Hearing | $  61.38 |

---

[17] Plaintiff's Exhibit 2D summary contains two entries for the same deposition of Jack Borja.  The supporting invoices, however, establish that the second entry was actually a further deposition of Thomas Ueno.

| 9/11/05 | Summary Judgment Hearing | $ 161.56 |
| 1/31/06 | Motions in Limine Hearing | $ 107.71 |
| 1/31/06 | Trial (jury selection) | $ 626.49 |
| 2/28/06 | Trial (remaining) | $3,855.25 |
| | **Total** | **$4,878.96** |

[Exhs. 2D & 2E to Hogan Aff.]  Plaintiff's counsel states that all of the transcripts, including the trial transcripts, were necessary for trial preparation.  [Hogan Aff. at ¶ 12.]

This Court finds that it could be reasonably expected, at the time of the proceedings, that the transcripts of hearings on the motions for preliminary injunction, summary judgment, and motions in limine, as well as the jury selection, would be used for trial preparation.  The Court finds that those costs are taxable in full.

Plaintiff requested "realtime" transcripts for the trial proceedings on February 28, March 1, March, 2, and March 3, 2006.  Plaintiff requested only "regular" delivery for the transcripts of the trial proceedings on February 27 and March 7, 2006.  Many courts have recognized that daily trial transcripts may be a taxable cost where the trial is lengthy and the issues were complex.  See Majeske v. City of Chicago, 218 F.3d 816, 825 n.3 (7th Cir. 2000) (citing Holmes v. Cessna Aircraft Co., 11 F.3d 63, 64 (5th Cir. 1994) (per curiam); Galella v. Onassis, 487 F.2d 986, 999 (2d Cir. 1973); A.B.C. Packard, Inc. v. General Motors Corp., 275 F.2d 63, 75 (9th Cir. 1960); United States v. Davis, 87 F. Supp. 2d 82, 88 (D.R.I. 2000); EEOC v. Sears,

Roebuck and Co., 114 F.R.D. 615, 622 (N.D. Ill. 1987)).  While
trial in this case was not unusually lengthy, the issues were
complex.  This Court therefore finds that the realtime
transcripts were reasonably necessary for trial preparation.

Insofar as Plaintiff did not request expedited
transcripts for the proceedings on February 27 and March 7, this
indicates that Plaintiff did not expect to use those transcripts
in preparation for trial.  This Court therefore finds that the
cost of the February 27 and March 7 transcripts are not taxable.
Those two transcripts were a total of 100 pages, at a price of
$0.83 per page for the first copy and $0.55 per page for the
second, plus 4.16% tax.  This Court will therefore deduct $143.74
from Plaintiff's request.  The Court finds that $4,735.22 of
Plaintiff's request for court transcripts is taxable.

### 6.  **Trial Expert Witness Fees**

Plaintiff requests $42,600.20 for the fees of his trial
experts.  [Exh. 2F to Hogan Aff.]  Plaintiff's request includes:

| | | |
|---|---|---|
| 12/10/04 | Professor Philip Johnson | $ 1,000.00 |
| 3/14/05 | Professor Johnson | $ 1,300.00 |
| 4/28/05 | Thomas T. Ueno, CPA | $10,692.04 |
| 5/16/05 | Thomas Ueno, 4/01-30/05 | $   130.21 |
| 6/2/05 | Thomas Ueno | $   932.29 |
| 7/7/05 | Professor Johnson | $   900.00 |
| 7/1/05 | Thomas Ueno | $ 1,080.02 |
| 9/1/05 | Thomas Ueno | $ 1,594.59 |
| 8/8/05 | Thomas Ueno | $ 1,332.02 |
| 10/7/05 | Thomas Ueno | $ 4,245.30 |
| 11/1/05 | Thomas Ueno | $ 1,059.08 |
| 12/1/05 | Thomas Ueno | $ 1,213.53 |
| 1/12/06 | Thomas Ueno | $ 6,151.92 |
| 2/1/06 | Thomas Ueno | $ 4,056.24 |

| | | |
|---|---|---|
| 3/1/06 | Thomas Ueno | $ 4,481.31 |
| 3/7/06 | Thomas Ueno | $ 2,431.65 |
| | **Total** | **$42,600.20** |

[Id.]  "Absent 'express statutory authority' for shifting expert

witness fees, reimbursement for such fees is limited by §§

1821(b) and 1920(3)."  Lovell v. Chandler, 303 F.3d 1039, 1058

(9th Cir. 2002) (citing Crawford Fitting Co. v. J.T. Gibbons,

Inc., 482 U.S. 437, 439 (1987)).  Thus, expert witnesses are only

entitled to the statutory fee of $40.00 a day for each day of

attendance at court proceedings or their depositions.  See Feher

v. Dep't of Labor & Indus. Relations, 561 F. Supp. 757, 768 (D.

Hawai`i 1983).


        Plaintiff's supporting documentation indicates that

Professor Johnson was deposed on May 19, 2005.  A $40.00 fee for

Professor Johnson's deposition is a taxable expense.  The

invoices for Thomas Ueno and his support staff contain various

entries for deposition preparation, but they do not indicate when

he was deposed.  Mr. Ueno testified at trial on March 1 and 2,

2006, but Plaintiff's request does not includes fees for

Mr. Ueno's trial attendance.  This Court therefore finds that

none of Mr. Ueno's fees are taxable.

### 7.  **Other Ineligible Expenses**

Plaintiff requests $1,591.25 in facsimile charges at $0.50 per page, $1,043.11 in postage, and $267.00 in long distance telephone charges.  Section 1920 does not identify facsimile charges, postage, and long distance charges as taxable expenses.  See Yasui, 78 F. Supp. 2d at 128–30.  This Court therefore recommends that Plaintiff's request for facsimile, long distance, and postage costs be denied.

Plaintiff also requests $2,405.41 incurred by Delaware counsel in connection with the Fleming bankruptcy.  While the Court acknowledges that the Bankruptcy Court discussed issues relevant to the instant case, the Court will only allow expenses incurred in connection with proceedings in this case.  The Court therefore recommends that Plaintiff's request for costs incurred by Delaware counsel be denied.

### 8.  **Summary of Plaintiff's Costs**

This Court finds that the following costs incurred by Plaintiff are taxable pursuant to § 1920:

| | |
|---|---|
| Court and Sheriff Fees | $   372.00 |
| Witness Fees | $    80.00 |
| Court Appointed Expert Fees | $ 9,571.29 |
| Deposition Transcripts | $ 5,187.91 |
| Court Transcripts | $ 4,735.22 |
| Expert Witness Fees | $    40.00 |
| **Total** | **$19,986.42** |

This Court rejects PCT's argument that Plaintiff should not be awarded costs for claims that were resolved against him.  There

is no rule requiring courts to apportion taxable costs based on the relative success of the parties.  See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1348 (Fed. Cir. 2006).  "In fact, apportioning costs according to the relative success of parties is appropriate only under limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained."  Id. (citing 10 James Wm. Moore et al., Moore's Federal Practice § 54.101[1][b] (3d ed. 2006)).  The Court finds that the circumstances of the case and the recommended award to not warrant an apportionment of costs.

This Court RECOMMENDS that Plaintiff's request for costs pursuant to Rule 54(d)(1) be GRANTED IN PART and DENIED IN PART.  This Court recommends that the district court award Plaintiff $19,986.42 in costs against PCT, Mark Dillon, and Teresa Noa.  This Court further recommends that Plaintiff's request for copying costs be denied without prejudice, subject to a resubmission of eligible costs with supporting documents.

## CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS and RECOMMENDS that Plaintiff's Motion for Attorney Fees and Full Costs, filed March 15, 2006, be GRANTED IN PART and DENIED IN PART and that the district court award Plaintiff costs in the amount of $19,986.42 against PCT, Mark Dillon, and Teresa Noa.  The Court recommends that the

83

district court deny Plaintiff's request for taxable copying costs without prejudice.  The Court recommends that the Plaintiff Motion be denied in all other respects.

The Court also FINDS and RECOMMENDS that PCT's Motion for Attorneys' Fees and Costs, filed March 23, 2006, be GRANTED IN PART and DENIED IN PART.  The Court recommends that the district court award PCT the following amounts in connection with the defense of Count IV: $37,581.53 in attorney's fees incurred by Kirkland & Ellis and $29,102.85 in attorney's fees incurred by Kobayashi, Sugita & Goda, for a total of $66,684.38; and $16,366.92 in costs incurred by Kirkland & Ellis.  The Court recommends that the district court deny PCT's request for costs incurred by Kobayashi, Sugita & Goda without prejudice.  The Court recommends that the district court award PCT a grand total of $83,051.30.  The Court recommends that the PCT Motion be denied in all other respects.

Finally, the Court FINDS and RECOMMENDS that Employees' Motion for Attorneys' Fees and Costs, filed March 23, 2006, be GRANTED IN PART and DENIED IN PART.  The Court recommends that the district court award Employees attorney's fees incurred by Brian Christensen in the amount of $27,507.20, and that the district court deny Employees' request for costs incurred by Christensen without prejudice.  The Court recommends that the Employees Motion be denied in all other respects.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, December 4, 2006.



　　　　　　　　　　　　　　　 /S/ Leslie E. Kobayashi
　　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　　United States Magistrate Judge

**WAYNE BERRY V. HAWAIIAN EXPRESS SERVICE, INC., ET AL; CIVIL NO. 03-00385 SOM-LEK; REPORT OF SPECIAL MASTER ON PLAINTIFF WAYNE BERRY'S MOTION FOR ATTORNEY FEES AND FULL COSTS; DEFENDANT POST-CONFIRMATION TRUST'S MOTION FOR ATTORNEYS' FEES AND COSTS; AND DEFENDANT EMPLOYEES' MOTION FOR ATTORNEYS' FEES AND COSTS**