LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | **Civ. No. CV03 00385 SOM-LEK** |
| | ) | **(Copyright)** |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **LIMITED OBJECTION TO** |
| | ) | **REPORT OF SPECIAL MASTER** |
| HAWAIIAN EXPRESS SERVICE, | ) | **ON PLAINTIFF WAYNE BERRY'S** |
| INC., a California corporation; et al. | ) | **MOTION FOR AWARD OF** |
| | ) | **ATTORNEY'S FEES AND FULL** |
| | ) | **COSTS; DEFENDANT POST-** |
| | ) | **CONFIRMATION TRUST'S** |
| | ) | **MOTION FOR ATTORNEYS'** |
| | ) | **FEES AND COSTS; AND** |
| | ) | **DEFENDANT EMPLOYEES'** |
| | ) | **MOTION FOR ATTORNEY'S** |
| Defendants. | ) | **FEES AND COSTS FILED ON** |
| | ) | **DECEMBER 4, 2006** |
| | ) | |
| | ) | HEARING: |
| | ) | Date: February 26, 2007 |
| | ) | Time: 9:00 a.m. |
| _____ | ) | Judge: Hon. Susan Oki Mollway |

**PLAINTIFF WAYNE BERRY'S LIMITED OBJECTION TO REPORT OF SPECIAL MASTER ON PLAINTIFF WAYNE BERRY'S MOTION FOR ATTORNEY'S FEES AND FULL COSTS; DEFENDANT POST-CONFIRMATION TRUST'S MOTION FOR ATTORNEY'S FEES AND COSTS; AND DEFENDANT EMPLOYEES' MOTION FOR ATTORNEY'S FEES AND COSTS FILED ON DECEMBER 4, 2006**

COMES NOW Plaintiff Wayne Berry ("Plaintiff") by and through his undersigned counsel and hereby respectfully submits his limited objection to the Report of Special Master on Plaintiff Wayne Berry's Motion for Attorney's Fees and Full Costs; Defendant Post-confirmation Trust's Motion for Attorney's Fees and Costs; and Defendant Employees' Motion for Attorney's Fees and Costs Filed on December 4, 2006 (the "Report").

## I. INTRODUCTION.

Plaintiff Wayne Berry files this limited objection to the Report insofar as it deals with the award of fees and/or costs to Defendant Fleming Companies, Inc., Post-Confirmation Trust ("PCT") on the Count IV Trade Secret claim and to Defendant Brian Christensen ("Christensen") award of fees and/or costs on the claim of copyright infringement.  Mr. Berry further objects to the denial of attorney's fees in total from the prevailing party in this case including the denial of certain taxable and non-taxable costs denied to the prevailing plaintiff.  This is a limited objection insofar as the Master has recommended a denial of fees and/or

costs to various parties, Mr. Berry does not seek to upset that and wishes those parts of the Report be adopted. To the extent that the Report, that denied certain of the defendants' requested relief, "without prejudice," is construed to permit additional claims of fees and cost to be raised, Mr. Berry objects.

**II.    DISCUSSION.**

**A.  Plaintiff's Fees and Costs.**

The Report should be rejected in total in regard to the denial of Plaintiff's attorney's fees. First, the Report does not make any claim that the fees that were incurred in regard to this case were unreasonable in light of the complexity of the case, nor does it make any claim that the hourly rates were not reasonable or appropriate. In light of the over $3.0 million in fees that were incurred by the PCT defending the case any claim that the $700,000 incurred fighting what the PCT claims is a case of "national importance" would, respectfully, be error.

Second, Mr. Berry was the prevailing party in this case. The Report concedes that as to the Copyright claim against all but Mr. Christensen. The Report disregards Congressional intent embodied in *Fogarty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) that stands for the proposition that a small individual copyright owner, should not face financial ruin so that he/she be deterred from protecting his/her works in the future. The Report's conclusion that the deterrence

factor weighs against the successful copyright owner is just wrong. Mr. Berry should be entitled to his fees, reduced for the amount time that was related to the parties against whom he had not prevailed in the amount as filed. This amounts to a generous self imposed deduction of $100,000.00 for a total of $600,000.00. No party was able to point to any discovery done regarding the Sherman Act claim or make an argument that this reduction was not reasonable.

In regard to the right to costs, the prevailing party was Mr. Berry. Only one party who was involved in the instant motions might have an arguable claim to costs. Brian Christensen will be discussed in Section C. In regard to the PCT, it was a losing party, it cannot be a prevailing party. It has a judgment against it and the Report agrees with that. As to Mr. Berry's claim for costs, the costs that were incurred with regard to this experts that were disallowed by the Report, these type of costs can be allowed in a copyright case under the full costs category and based on the *Fogarty* of compensation and deterrence Mr. Berry respectfully offers that he should be entitled to his full costs.

As to the copy costs, a supplemental declaration is Timothy J. Hogan ("Hogan Dec.") is submitted, detailing the breakdown of the costs consistent with the Report. *See* Hogan Dec. ¶ 1 and Exhibits "1" and "2".

As to the legal grounds put forward in the Report to support a denial of fees,

the Report states, as the grounds for denying the prevailing plaintiff fees that he received only "nominal damages against Dillon and Noa and relatively small amount of damage from the PCT, this Court finds that the interests of compensation do not require an award of Plaintiff's attorney's fees."  Report at page 35.  This finding is contrary to the law that this Court is bound to apply as follows:

> **In this case, the district court cited the above-listed factors in its order granting Wall Data's motion for attorneys' fees. It found that Wall Data was the prevailing party, even though Wall Data's ultimate recovery was less than that which it originally sought**. Contrary to the Sheriff's Department's argument, this was not an abuse of discretion. See Nimmer on Copyright § 14.10[B], at 14-176 to -177 ("**The plaintiff will ordinarily be regarded as the prevailing party if he succeeds at trial in establishing the defendant's liability, even if the damages awarded are nominal or nothing**."). The court therefore concluded that attorneys' fees furthered the goal of copyright law. It found that the attorneys' rates were reasonable within the prevailing market, but reduced the total award based on the experience of the attorneys and the complexity of the issues. Reversal is not appropriate here because we lack a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. See Smith, 84 F.3d at 1221.

*Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (citations in the original) (emphasis added).

Contrary to the Report, whether Mr. Berry won anything in the way of monetary damages should have no bearing on his right to fees. Having proven, again, that Fleming and now its employees are infringers he is entitled to his fees and can't be denied them on the basis set forth in the Report. The Report must be disregarded as directly contrary to controlling Ninth Circuit authority.

As to the Discovery Master's, fees, the Master did not seek court approval for his fees as required by the order appointing him and the amounts disallowed remain outstanding. Should the Court believe that Mr. Matsui should be paid, his failure to file for court approval notwithstanding, then the taxable costs should adjusted upwards to account for his fees. The cost of trial experts and other cost that are part of the typical costs of such litigation should also be allowed as filed.

### B. **THE PCT**.

The Report attempts to weave the facts to make Mr. Berry out to be a villain victimizing the corporate good citizen Fleming Companies, Inc.. Making the claim that Mr. Berry shows ill will because he has cooperated with law enforcement, the Report should send a chill through any person who, acting out of public concern, answers law enforcement inquiry (in form of a Grand Jury subpoena) directed at conduct of an established corporate wrongdoer. This part of the Report must, as a

matter of public policy if not constitutional imperative, be rejected.

The Report also states that Mr. Berry has been responsible for "numerous lawsuits and administrative complaints against Fleming. Report at page 33. By Plaintiff's count Mr. Berry has brought two law suits against Fleming and won both. Fleming has brought two against Mr. Berry and both were dismissed. This basis for finding Mr. Berry has acted out of an ill motive when he has been a victim of what the first jury found was equivalent to criminal conduct is just plain error. The simple fact is that ever since Mr. Berry cooperated with federal law enforcement he has been the target of Fleming's view that he needs to be punished. As far as the comment that Mr. Berry has brought numerous administrative complaints against Fleming the Constitution protects the right of petition. The Magistrate does not explain why that would be grounds to punish a victimized software developer.

On page 6 of the Report, the Magistrate Judge makes the erroneous statement that "the jury also found that Plaintiff was not entitled to any additional profits from PCT based on Fleming's infringement and that Fleming was vicariously liable for trial employees' infringement." The fact is that the jury found that Mr. Berry was entitled to any profits but the jury found there were no profits. Therefore, had there been profits, based on the jury verdict, Mr. Berry

would have been entitled to them. The jury finding that he is entitled to profits for Fleming's operations is a significant victory for the small copyright owner in regard to this form of infringement. This erroneous view of the case is relevant not only on why Fleming shouldn't get fees but, more to the point, why Mr. Berry should.

Having conceded that Fleming has no basis for obtaining fees under the Copyright Act or under the Sherman Act, the Report focused on the state law trade secret misappropriation claim and applies an erroneous view of the facts that makes it appear that Mr. Berry simply dreamed this claim up out of thin air and had no basis whatsoever. Unless the Court finds bad faith in this claims under state law no fees can be awarded. The Court should disregard the Report and find that no bad faith is shown.

First, it is established law in this circuit that computer programs can be afforded protection as trade secrets. *See S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081, 1089-1090 (9th Cir. 1989). That alone should set the record straight on whether <u>bringing</u> such a claim regarding hundreds of transferred works was frivolous, regardless of how it was resolved. In light of the Report the record that was put before the Court in the summary judgment motions must be revisited.

The record was full of evidence regarding Mr. Berry's trade secret claim. First, as to the Order Granting Summary Judgment dated June 27, 2005, the Court addressed the Second Amended Verified Complaint claiming that Mr. Berry had not put forward the basis of his trade secret claim. First, the Court was reviewing the evidence under the summary judgment standard.  Even if under the Fed. R. Civ. P. 12(b) standard, the complaint need only contain a short plain statement not the particularity required of a fraud pleading.

The Court then states "as an initial matter, Berry does not show any of the files that were on the computer qualify as his trade secrets.  Berry has not presented any evidence that those files had any independent economic value resulting from not being generally known."  This echoed the argument in the PCT's Cross-Motion/Opposition.

As to why Mr. Berry's hundreds of works that remained on the computers sold to C&S, qualified for trade secret protection, Mr. Berry had filed attached to his concise statement on April 20, 2005, a Declaration of Wayne Berry Exhibits "A" through "S" in support of his motion for summary judgment (the "Berry Dec.") a true and correct copy is attached the Hogan Dec. as its Exhibit "3".  In regard to the support for a trade secrete claim the Berry Dec. states as follows: "There are no licensed copies of my freight control system that are not in my

physical possession. . . . FCS is a vertical application with a limited number of potential licensees. Any dissemination of this intellectual property to an unlicensed user causes me to lose a large part of my potential customer base." Berry Dec. ¶ 9. . "My software is a one-of-a-kind work.... I have not given C&S or Fleming the permission to copy, distribute, transfer, sell or use or possess my software." Berry Dec. ¶ 10.

    Moreover, as to the actual description of the works illegally transferred, even though the discovery Master blocked their disclosure, the Berry Dec. goes into great detail at paragraphs 18 to 27 to walk the Court through the various misappropriated works that Fleming illegally sold to C&S that based on this Court's ruling C&S claims it now owns. None of this evidence was even mentioned by the other side, that simply addressed authority related to the one registered work, FCS 1993 but completely ignored all the other evidence. Not only was Mr. Berry's claim not frivolous, Mr Berry respectfully offers that the PCT's failure to address it should have resulted in summary judgment against it. That issue is respectfully before the Court of Appeals. Moreover, the Berry EULA and the Second Addendum both established that Fleming knew it had a duty to continue to protect Berry's secrets. <u>See</u> Hogan Dec. Exhibit 3 at its Exhibit "B" authenticated in the Berry Dec. at paragraph 2. Even though Fleming clings to the

claim that it is not bound by the EULA, the November 24, 1999 second addendum that Fleming claimed was the operative document, acknowledges that Mr. Berry seeks to market the works commercially and promises to protect his works from any disclosure to third-parties.  Mr. Berry's claim that his software was "one of a kind" was and remains entirely un-rebutted.  That alone would qualify a work for such protection.  Mr. Berry does not expect the Court to reverse its rulings, that issue is now before another court.  All that he asks is that for this Court to simply acknowledge that Mr. Berry's claim was not a frivolous claim as the Report claims.

Moreover, the Court's June 27, 2005 Summary Judgment Order focuses only on the sixteen copies that were transferred and then focused solely on the conduct of Guidance disregarding the evidence that Mr. Berry put forward in regard to summary judgment that showed in detail numerous other files that had been transferred.   Hogan Dec. Exhibit "3" at paragraphs 2 through 28.

In addition, the District Court's conclusion that only the Guidance false statements to the Delaware bankruptcy court constituted "improper means" was supported by the Court's reference to Exhibit "K" of the Hogan Declaration.  That exhibit had little to do with Guidance but had more to do with the fact that attorneys for the seller (Fleming) and the purchaser (C&S) stood in front of the Delaware Bankruptcy Court and told the Court flat out that none of this was being

transferred when in fact, there is no question that copies of these additional works were, in fact, transferred.  A copy of that Exhibit "K" is attached to the Hogan Dec. Exhibit "4." Mr. Berry believes that making a false representation to a federal judge as a device to unlawfully distribute intellectual property is, as a mater of law, an "improper means."  But, even if the Court does not agree with this, under Rule 11, he is permitted to make argument for the change in existing law and that's one that, if it is held he is wrong, is long overdue for a change.

The Berry Declaration, Exhibits "A" through "S" clearly set forth the basis of the trade secret claim.  The Court ruled against the claim but that does not then turn his claim into a frivolous claim.  The portion of the Report that allows the PCT to be given anything in this case should be disregarded and the Court should enter an order that they are not a prevailing party under any circumstances and are not entitled to anything, fees, costs or otherwise.

In addition, the Report makes reference to certain alleged bad acts committed by Mr. Berry but makes no reference to where in the record these accusations are contained.  Specifically on page 17 the Report alleges that, ""For example, he urged Fleming to fire Dillon, Noa, and Christensen." See Report at page 17.  Mr. Berry has combed the record and even requested that opposing counsel direct him to the record for support for this fact.  As of this writing no

evidence of this fact in the record has been brought to Mr. Berry's attention and he objects to the Report on the grounds that it contains facts that were not derived from the record of this case.

### C. Brian Christensen.

As to Mr. Christensen, the Report makes a specific factual error in regard to what Mr. Christensen did and why his false statements, which are now of record, were material. On page 18, the Report states, "at trial, he consistently testified that he was President during the relevant period of time. Further his statements at trial had no effect on summary judgment ruling in his favor." On the contrary, Mr. Christensen first testified falsely in his deposition that was then used to avoid summary judgment. An excerpt of the Employees' opposition to Plaintiff's Motion for Summary Judgment is attached to the Hogan Dec. as Exhibit "5" and referring to the false deposition testimony that resulted in a grant of summary judgment. The Report appears to concedes that the relevant period in regard to this case as to liability was March 7, 2003 to June 9,2003. When asked both in deposition and at trial why he didn't just shut the system down on March 7, 2003, Mr. Christensen falsely testified that he wasn't in charge on that date. Mr. Christensen's false statement that he was not in charge on March 7th when taken in light of the statement that the relevant period included March 7th, makes his false statement

material. Mr. Christensen's own filings in regard to Summary Judgment concedes that this was material. Hogan Dec. Exhibit "5." Mr. Christensen dodged the bullet both at summary judgment and at trial by giving false testimony. That does not give you fees and/or costs in a copyright case.

Where a party uses false evidence to obtain a result in a copyright case, the court may award attorneys fees against that party. It is that party against whom the *Fogarty* factors should apply:

> Here, the standards of both Rule 11 and the Copyright Act warrant the imposition of an appropriate sanction. The filing of plaintiffs' false affidavits in an effort to forestall dismissal of their claims was objectively unreasonable conduct by both lawyers and clients, and was motivated by a desire to prolong what had become objectively baseless litigation

*Margo v. Weiss*, 49 U.S.P.Q.2D (BNA) 1057, 1998 U.S. Dist. LEXIS 17258 (D.N.Y. 1998).   There is no policy, *Fogarty* or otherwise, to justify allowing a person who had been in charge of a company adjudicated as committing willful infringement for financial gain for a period of over a year to be given fees and costs because he was not found a contributory infringer after he gave false testimony. The Court should just disregard the Christensen fees and costs, as well as the employees' costs that were related thereto and grant Mr. Berry the relief he

has requested in his fee application in full, as modified in regard to the copy costs.

As to the two employees who had no monetary amount entered against them, they were found direct infringers. They lost on the issue of infringement and should they use Berry's work again in their employment, would anyone argue that they would be willful infringers?  That judgment necessarily modifies their future conduct and therefore they are not prevailing parties and all parts of the Report that seeks to compensate them should be rejected.  The Ninth Circuit opinion in *Wall Data supra*  makes it clear that this conclusion that supports the denial of fees to Mr. Berry is not the law in this circuit.

Dated: Honolulu, Hawaii, December 14, 2006.

/S/Timothy J. Hogan  
TIMOTHY J. HOGAN  
Attorney for Plaintiff Wayne Berry