# Exhibit 4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Case No. 03-10945 |
| | . |
| FLEMING COMPANIES, INC., et al., | . 824 Market Street<br>. Wilmington, DE 19801 |
| Debtor, | . August 4, 2003<br>. 11:45 a.m. |

TRANSCRIPT OF MOTIONS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.<br>By: LAURA DAVIS JONES, ESQ.<br>CHRISTOPHER J. LHULIER, ESQ.<br>JAMES I. STANG, ESQ.<br>919 North Market Street, 16th Floor<br>Wilmington, DE 19899 |
| For Farris, et al.: | Werb & Sullivan<br>By: DUANE D. WERB, ESQ.<br>Tenth Floor, 300 Delaware Ave.<br>Wilmington, DE 19899 |
| For Sunkist: | Whiteman, Bankes & Chebot, LLC<br>By: JEFFREY M. CHEBOT, ESQ.<br>325 Chestnut Street, Suite 1300<br>Philadelphia, PA 19106 |
| For Reliant Energy: | Jackson Walker, LLP<br>By: KIRK A. KENNEDY, ESQ.<br>1401 McKinney, Suite 1900<br>Houston, TX 77010 |
| Audio Operator: | Jennifer M. Patone |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@optonline.net

(609)586-2311 Fax No. (609)587-3599



to accumulate other bids in the process as competing bids to theirs.

Q Now, why did you -- why did you conclude that it wasn't likely to be feasible to engage in the piecemeal sale of the business?

A Couple reasons. First, with the period of time basically being a month and a half, to move from a letter of interest, if you will, to a full-blown concludable, doable asset purchase agreement and closing it was not feasible for us to do that with a multiplicity of prospective buyers.

Second was because of the fast time table that the company needed to conclude a sale on, we knew from the beginning that we would be in a situation where we, Fleming, would be continuing to provide transition services to whomever the buyer was, because there was not enough time in this process to allow for the kinds of due diligence and transition planning that you might otherwise have if you had three or four months, five months to do this kind of a transaction.

So, it became important for us to be able to deal with a buyer who would commit to buying substantially all the assets and therefore commit to a transition services agreement where we, in effect, would have one party.

Q Okay, and did you, in fact, negotiate a transition services agreement with CNS?

A Yes, we have.

Counsel's going to come back.

MR. PENNINGTON: Okay, fine. That works.

THE COURT: All right. Any other objection?

MR. HOGAN: Your Honor, this is Timothy Hogan from Wayne Berry. If I may, Your Honor, I'm not certain if the Court ever received our objection that was timely filed. It was 2664?

THE COURT: I'm not sure I have, either, so you better re-articulate it.

MR. HOGAN: Wayne Berry was a software developer, developed software that Fleming has used in the Hawaii division, at least in Hawaii for sure, since 1999 under a non-exclusive limited license. I went to trial against Fleming and got a jury verdict in March, March 6th of this year, Your Honor, finding Fleming as a wilful infringer for making derivative copies of the software.

Fleming has continued to use Mr. Berry's software. There's a dispute as to which version is being used, but has used it and is continuing to use what is claimed to be a new software package made by the same individual who the jury found had infringed.

My concern is that Mr. Berry is going to have to pursue the new -- the buyer under a -- the claim of infringement again. If there's any thought that Mr. Berry's software is passing in this agreement I'd at least like

something in the record, Your Honor, that would at least indicate they've not chosen to even schedule this software, they have not chosen to assume it or to assign it, and that whatever the buyer gets the buyer will get subject to Mr. Berry's copyright.

THE COURT: Well --

MR. HOGAN: If any.

THE COURT: Let me hear from the debtor and buyer on that issue.

MR. LIEBELER: We're not using the software. I mean --

THE COURT: Who cares if you're using it. Are you selling it to the buyer?

MR. ZIMAN: Your Honor, I do not believe that this software license is on any list to be assumed and assigned, and if -- to the extent that we can't assume it and assign it under 365, we won't, and we're certainly not going to infringe.

THE COURT: All right. You're satisfied with the buyer's statement?

MR. HOGAN: I'm sorry, Your Honor, I couldn't hear what the buyer said.

THE COURT: Please talk into the mike so he can hear you.

MR. ZIMAN: I'm sorry, Your Honor. I am not aware --

MR. HOGAN: Is this Mr. Gross?

MR. ZIMAN: I'm sorry, sir, I'm not aware --

THE COURT: Raise it so he can actually hear you.

MR. ZIMAN: I'm not aware of this license being on any list to be assumed and assigned as of the initial closing. I don't have any facts regarding this license, and to the extent that there's a 365C issue where we can't assume and assign it, then the Court won't let us, and we're certainly not going to use it an subject ourselves to infringement liability, or if we do we are liable.

THE COURT: Did you hear that?

MR. HOGAN: I did, Your Honor, and I guess what I conclude from it is -- we believe it is being used, Your Honor, for the record. It has been used in the case, it has been used -- and we believe that the software that was created when it's properly litigated will be shown to be another derivative, the one that they're going to assume and use.

THE COURT: Well, the buyer says they're not buying it. To the extent they use it you'll have to sue them for infringement.

MR. HOGAN; And that seems to be the way it's left, Your Honor, as long as it's understood that it's not being assigned in this sale.

THE COURT: I'm not giving any order assuming it, assigning it by this sale order. To the extent they think they can assume and assign it later, that issue will be teed up.

MR. HOGAN: Yes, Your Honor, and we believe that the software they're buying is infringed software, so we will pursue it. Thank you.

THE COURT: All right. Anybody?

MR. LIEBELER: Just to make sure and to make it clear, we contend that we're not using it.

THE COURT: I heard you the first time. Any other objector?

MR. RHODES: Good afternoon, Your Honor. Jeff Rhodes on behalf of the Sandelman landlords, and as a procedural matter, Your Honor, I have submitted today a motion to be admitted pro hac vice to this court.

THE COURT: All right, that's fine.

MR. RHODES: Thank you. I have Mr. McCauley, my local counsel, with me.

Your Honor, on behalf of the Sandelman landlord, who are landlords that own properties, various properties across the country to which one or more of the debtor was a party, we filed an objection basically to cure claim issues.

Now, I understand that what the debtors are now proposing to do is to bifurcate and deal with assumption and assignment issues later.

THE COURT: Yes.

MR. RHODES: However, I'm concerned, under the text of the proposed order that's being circulated that some rights

you.

MS. JONES: Your Honor, may I ask Your Honor a mechanical question. With respect to the hearing on Thursday, would Your Honor like us to submit an agenda?

THE COURT: No, that's not necessary.

MS. JONES: Thank you.

THE COURT: That's fine. I'll just keep what I have here, but I'd ask parties to send everything to chambers so I'm sure I get it.

MS. JONES: Thank you.

THE COURT: All right, we'll stand adjourned then.

(Recording ends)

* * *

C E R T I F I C A T I O N

I, Betsy Wolfe, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Betsy Wolfe Aug 11, 2003

Betsy Wolfe Date

J&J COURT TRANSCRIBERS, INC.