LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | PLAINTIFF WAYNE BERRY'S |
| vs. | ) | RESPONSE TO DEFENDANT PCT'S |
| | ) | LIMITED OBJECTION TO THE |
| HAWAIIAN EXPRESS SERVICE, | ) | REPORT OF THE SPECIAL |
| INC., a California corporation; et al. | ) | MASTER ON PLAINTIFF WAYNE |
| | ) | BERRY'S  MOTION FOR |
| | ) | ATTORNEY'S FEES AND FULL |
| | ) | COSTS; DEFENDANT POST- |
| | ) | CONFIRMATION TRUST'S |
| | ) | MOTION FOR ATTORNEY'S FEES |
| | ) | AND COSTS; AND DEFENDANT |
| | ) | EMPLOYEES' MOTION FOR |
| Defendants. | ) | ATTORNEY'S FEES AND COSTS |
| | ) | |
| | ) | HEARING |
| | ) | Date:        February 26, 2007 |
| | ) | Time:        9:00 a.m. |
| _____ | ) | Judge:      Judge Susan Oki Mollway |

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     Standard of Review Request to Be Heard and for Judicial Notice. . . . . . . . 1

II.    The Master Was Correct in Finding Berry Was the
       Prevailing Party In the Copyright Litigation . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   The PCT's Time Was Excessive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Table of Authorities

CASES

*Assessment Techs. of Wi, LLC v. Wire Data, Inc.*, 361 F.3d 434 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . 12, 14-16

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (U.S. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Florentine Art Studio v. Vedet K. Corp.*, 891 F. Supp. 532 (D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir. 1986) . . . . . . . . . . . . . 14

*Summers v. Howard University*, 362 U.S. App. D.C. 363, 374 F.3d 1188 (D.C.Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989) . . . . 16

STATUTES

The Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

The Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 12

RULES

Fed. R. Civ. P. 53 (g)(3) and (4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 53(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 74.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PLAINTIFF WAYNE BERRY'S RESPONSE TO DEFENDANT
PCT'S LIMITED OBJECTION TO THE REPORT OF THE SPECIAL
MASTER ON PLAINTIFF WAYNE BERRY'S MOTION FOR
ATTORNEY'S FEES AND FULL COSTS; DEFENDANT POST-
CONFIRMATION TRUST'S MOTION FOR ATTORNEY'S
FEES AND COSTS; AND DEFENDANT EMPLOYEES'
<u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>

Comes now Plaintiff Wayne Berry ("Plaintiff"),  by and through his

undersigned counsel and hereby respectfully submits his response.

## I.    <u>Standard of Review Request to Be Heard and for Judicial Notice</u>.

As the result of the 2003 amendment to Fed. R. Civ. P. 53 (g)(3) and (4), the

District Court must review *de novo* all objections to findings of fact and/or

conclusions of law made or recommended by the special master.  *See also*

*Summers v. Howard University*, 362 U.S. App. D.C. 363, 374 F.3d 1188, 1195 n. 6

(D.C.Cir.2004) (Fed. R. Civ. P. 53 was amended in 2003 to provide for *de novo*

review of a special master's fact findings by the district court).  In addition,

In acting on a special master's report, the District Court must afford an opportunity

to be heard and may receive evidence.  Fed. R. Civ. P. 53(g)(1).  Local Rule 74.2

provides that the District Court will "not conduct a new hearing, unless provided

by law."   Plaintiff requests that the Court take notice of its docket in this case

regarding the fact that no hearing has been conducted on these applications for fees

and costs.

## II.    The Master Was Correct in Finding Berry Was the Prevailing Party In the Copyright Litigation.

Mr. Berry obtained a judgment against the PCT and six of Fleming's former employees on the issue of copyright infringement.  Bound up in that judgment are the issues of copyright ownership and copyrightability of his FCS1993.   Fleming failed to preserve these issues by filing an appeal and now its continuing appeal of the first willful infringement verdict is, for the most part, rendered  moot regarding these issues.

Mr. Berry received an award at trial that was nearly twice the maximum amount he could have received in statutory damages, had he elected them.  Under any interpretation of the Copyright Act, Mr. Berry is the prevailing party.  The Magistrate Judge correctly applied the controlling United States Supreme Court authority in determining that Mr. Berry was the prevailing party.

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed. 1999) defines "prevailing party" as **"[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded** (in certain cases, the court will award attorney's fees to the prevailing party). -- Also termed successful party." This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (U.S. 2001) (emphasis added).

2

The PCT's claims that Mr. Berry's failure to obtain a greater award than that awarded by the jury results in the PCT, the judgment debtor,  becoming the prevailing party.  This is contrary to law and the Court should adopt the Magistrate's finding on this issue.

The PCT points to the denial of  Mr. Berry's request for a permanent injunction as proof of its victory because the real test of success in a copyright case is evidenced by the entry of a permanent injunction.   The PCT has forgotten that Mr. Berry did obtain a permanent injunction against the party he first sued in this case, Hawaiian Express Service, Inc. and its related defendants (Docket No. 594).  According to the PCT's own interpretation, Mr. Berry is the prevailing party.  The and Supreme Court holds that such consensual injunctions may be considered when establishing who the prevailing party is even in cases where the plaintiff, unlike Mr. Berry, did not receive a judgment on the merits.

> In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. **Although a consent decree does not always include an admission of liability by the defendant . . .it nonetheless is a court-ordered "change [in] the legal relationship between [the plaintiff] and the defendant.**" These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.

*Buckhannon Bd. & Care Home,* 532 U.S. at 604 (emphasis added)  (citations

3

omitted).

What the Fleming and now the PCT ask this Court to do is to deter Mr. Berry from defending his intellectual property from <u>future acts</u> of infringement.  To do this the PCT has worked feverishly to paint Mr. Berry as a vexatious litigant who has accused Fleming of all sorts of unproven wrongs.  The record of these proceeding regarding those acts remains unrebutted.  *See* Declaration of Timothy J. Hogan filed in support of Mr. Berry's Objection to the Masters Report on November 8, 2006 (Docket No. 1013) at paras. 1 to 7 and Exhibits "A" to "F ."  A true and correct copy of the declaration *sans* exhibits is attached to the Declaration of Timothy J. Hogan (the "Hogan Dec.") as Exhibit "1."

The PCT's  thinking is that, if Mr. Berry is deterred from protecting his works, the future use by C&S or by the reorganized Fleming debtor, though illegal, will be allowed to continue without fear of additional civil litigation from Mr. Berry who has been financially destroyed by the District Court's award of fees.  The attempt to paint Mr. Berry as a vexatious litigant must fail because twice Mr. Berry has proven infringement and received money judgments against the infringers.  As to Fleming's bad acts, they are deemed admitted by virtue of the PCT's failure to put forward any opposing admissible evidence, only its customary unsupported diatribe masquerading as argument.

4

Mr. Berry is the proven twice victim of infringement, including adjudicated willful infringement, who now is threatened by financial ruin because he chose to attempt to protect his work from a former Fortune 100 corporate scofflaw through the very civil means that Congress has provided to him.  Like the bad acts, the PCT has not rebutted Mr. Berry's showing that it was Fleming, the PCT, Employees and C&S who all refused to discuss reasonable settlement.  The Affidavit of Timothy J. Hogan filed on March 15, 2006 in support of his fee request is unrebutted and proves that Mr. Berry tried to negotiate early on with Fleming and was willing to essentially walk away from any damage claim if Fleming and its employees would simply agree to not commit additional acts of infringement.  As the record shows, it was Fleming that chose to run up the cost of this case and go forward as follows:

14.    Attached hereto as Exhibit "3" is a true and correct copy of an email dated May 1, 2003 from me to Damian Capozzola.  In the beginning of the period after the commencement of the Fleming bankruptcy, **I attempted to negotiate a reasonable license fee with Fleming's attorneys but they did not respond.**

. . .

17.    Attached hereto as Exhibit "6" is a true and correct copy of an email dated September 10, 2003 from me to Damian Capozzola. I wrote the email after a telephone conference with Mr. Capozzola were [SIC] **I proposed dismissal of all claims against Fleming in exchange for an injunction and return of Mr. Berry's works**.

. . .

20.    Attached hereto as Exhibit "9" is as a true and correct copy of

5

letter dated November 4, 2005from me to the Employee Defendants' attorney Lyle Hosoda, Esq. **proposing a settlement for a share in the fees and costs and an injunction**. I do not recall and have no record of receiving any response from Mr. Hosoda regarding my offer.

      21.    Attached hereto as Exhibit "10" is a s [SIC]a true and correct copy of letter dated November 4, 2005from me to the PCT's attorney Eric Liebeler, Esq. **proposing a settlement for a share in the estimated fees and costs that would be incurred through trial and an injunction**. I do not recall and have no record of receiving any response from Mr. Liebeler regarding my offer.

*See* Affidavit of Timothy J. Hogan filed on March 15, 2006 in support of Plaintiff's

Motion for Attorneys Fees and Full Costs, at paras. 14 to 21 (Court Docket No.

858) (emphasis added) a copy of which, *sans* exhibits, is attached to the Hogan Dec.

as Exhibit "2."

Most telling is the fact that even after the case concluded, Mr. Berry

remained willing to settle all matters with C&S and permit the appeal to be

dismissed if C&S would simply return his other works.

      22.    Attached hereto as Exhibit "11" is a s [SIC]a true and correct copy of letter dated November 4, 2005 from me to C&S' attorney Lex Smith, Esq. proposing a settlement for an agreement to waive any right to appeal the spreadsheet infringement ruling for an agreement from C&S to return Mr. Berry's works that were left on the computers sold by Fleming.  I received a call from Mr. Smith who inquired about the terms of such an offer but there was no formal counter proposal, written or otherwise to the best of my recollection.

Hogan Dec. Exhibit "2" at para. 22.   *See* also Hogan Dec. Exhibit "3" that is a copy of the November 4, 2005 letter.   C&S now takes the position that it is free to continue to use any Berry work left in its possession although there is no dispute that, at the time this case commenced, Fleming had a license to use these other works and could not have sued Fleming for infringement because there was no evidence that had been used in violation of Mr. Berry's EULA.[1]   *See* Hogan Dec. Exhibit "4."   The PCT, that is contractually obligated to pay off any judgment against C&S for past and future infringement, needs the Court's assistance to deter Mr. Berry from protecting his intellectual property even if he is the victim of wrongful conduct.   There is no authority that this is what the Supreme Court meant when it said deterrence may be one of the non-exclusive factors for the Court to consider.

Assailed by one of the largest firms in the country with dozens of attorneys spending millions of dollars to protect proven unauthorized use of the Plaintiff's works, he prevailed, again.   It is Mr. Berry who deserves to have his fees and costs paid in this case, not the PCT.   The Master's finding that Mr. Berry is the prevailing

---

[1]     Under the terms of the Fleming plan of reorganization, and the Bankruptcy Code generally, Fleming possessed the means to attempt to assume the Berry EULA and assign it to C&S until Mr. Berry recently terminated any such right but the PCT chose instead a course of continued infringement because to do so would require reaching an accord with Mr. Berry.

7

party is the only valid interpretation of federal law and that finding should be adopted and the PCT objection overruled.

Even if Mr. Berry had received nothing in the form of a monetary award, he again prevailed on the issue of ownership and copyrightability of his FCS1993 both necessary to the judgment of infringement. Could anyone argue that if Fleming's reorganized debtor or C&S were to be caught using a copy of FCS1993 in operations that they would not be liable under both Titles 17 and 18, or that they would violate this Court's injunction if that use involved the HEX defendants? This is a significant victory for the individual copyright owner. In light of the injunction that was entered, the PCT's claim that it prevailed because it is not separately enjoined from committing additional acts of infringement should send a chill down the spine of any law abiding citizen for it is clearly evident that the PCT believes that the PCT and C&S have a right to infringe Berry works when the mood strikes them. The reality is that they do not have any such right. They have not obtained a license as the result of this proceeding, they have waived any defense of ownership, and any future unlicensed use of Mr. Berry's works by Fleming, C&S or anyone else would constitute willful infringement for financial gain. Use by these defendants with the Hawaiian Express defendants would be a violation of the permanent injunction and contempt of this Court.

8

As to the claims of his overstated damages, first, the above cited evidence in the Hogan Dec. Exhibit "2" shows the actual record of these proceedings proving that Mr. Berry was willing to walk away for essentially no damages, just an agreement not to commit acts of infringement. Hogan Dec. Exhibit 2 at para. 17. Fleming chose to litigate and the jury awarded Mr. Berry over $9,000 per week for use by five employees. Mr. Berry put forth a damage model that was identical to the amount that his system historically earned prior to the infringement. Just because the jury chose to award approximately $9,000 per week for five users instead of adopting Mr. Berry's reasonable license model hardly makes his case frivolous. The Court may note that software that costs over $9,000 per week for five users can hardly be considered a frivolity. Moreover, Mr. Berry proved that his work was sufficiently connected to the Fleming-Logistics revenues to entitle the copyright owner to **<u>any profits</u>** generated from its infringing use. This finding, through collateral estoppel, applies to anyone who obtains this intellectual property from Fleming and unlawfully uses it. Mr. Berry's judgment on the merits becomes a copyright warning notice with teeth.

The PCT claims that by seeking review of this Court's ruling that found that an infringing derivative FCS1993 could be used to make a replacement system or that Plaintiff had failed to put forward **<u>any</u>** evidence to support his trade secret

9

misappropriation claim evidences that Mr. Berry believes that he was not the prevailing party. Quite the contrary, the fact that Fleming, the judgment debtor, that had frivolously sued Mr. Berry in Delaware by falsely claiming it was not infringing and the fact that the party that was first named in this case, Hawaiian Express Service, Inc., agreed to a settlement that included a stipulated permanent injunction all prove that Mr. Berry is the prevailing party. This is especially so in light of the unwillingness of Fleming to even counter an offer seeking no damage award if they would simply agree to an injunction.

As to whether the PCT could ever be entitled to fees, the Court of Appeals, in a case with nearly the precise fact pattern of this case has held that, the exact same defense that prevailed in this case (no protectable expression) does not warrant the defendant an award of fees because to do so would run counter to the purposes of the Copyright Act as follows:

> This Court has held that "while courts may take the *Lieb* factors into account, they are 'nonexclusive.' **Even so, courts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion.**" *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996).
>
> **Corel argues that its successful defense of Berkla's infringement claims on the ground that Berkla's images contained no protectable expression furthered a primary objective of the Copyright Act - to "promote the Progress of Science and useful**

10

**Arts" by "encouraging others to build freely upon the ideas and
information conveyed by a work.**" Feist Publ'ns, Inc. v. Rural Tel.
Serv. Co., 499 U.S. 340, 349-50, 113 L. Ed. 2d 358, 111 S. Ct. 1282 at
1282 (1991). **It contends that its defense of this suit fostered the
important concept of distinguishing unprotectable ideas from
protectable expression.**

**We find this argument unpersuasive and agree with the district
court that Corel's behavior in this case did not advance the
purposes of the Copyright Act. In denying fees, the district court
found that Corel's use of Berkla's nozzles to model its own Photo
Paint images, while not technically violating the virtual identity
standard of copyright infringement, nevertheless constituted a
highly questionable business practice**. The district court emphasized:

> Most important ...is the fact that the jury found Corel had
> acted improperly in utilizing Berkla's databases for
> modeling of its own. While the jury's finding of
> maliciousness or oppressiveness or fraud on the part of
> Corel in breaching Berkla's confidence could be
> questioned, Corel has chosen not to contest these findings
> in post-trial motions. The jury's unaltered liability verdict
> speaks loudly in proclaiming that Corel should not be
> rewarded for prevailing on a finding regarding copyright
> standard of proof in light of the found misdeeds on related
> issues.

**It would be inconsistent with the Copyright Act's purposes to
endorse Corel's improper appropriation of Berkla's product by
awarding fees.**

*Berkla v. Corel Corp.*, 302 F.3d 909, 922-923 (9th Cir. 2002)(citations in the
original) (emphasis added).[2]

---

[2]     Plaintiff gives notice of his intention to rely upon this previously un-
cited authority at the hearing in regard to the report related to Guidance Software,

In the instant case, the PCT can't deny that Mr. Berry has obtained judgment against Fleming for infringement.  Rather than develop its own work, Fleming took a copy of Mr. Berry's database (that the Court found it didn't have a license to use) copied out the tables it needed as spreadsheet workbooks (despite the prohibition in Mr. Berry's EULA) that resulted in a replacement system still running in MS Access that the Court found was not an infringing derivative of FCS1993.  To paraphrase the Court of Appeals, regardless of whether the Court found infringement, it would be inconsistent with the Copyright Act's purpose to endorse this conduct by awarding fees.   Even if this Court is affirmed regarding the finding that the replacement system was not an infringing derivative of FCS1993, the Court of Appeals holds that, an award of fees on these precise facts is contrary to the purposes of the Copyright Act.   This is even more relevant, because in this case, the Defendants readily admit that the purpose of seeking the award of fees is to deter the infringement victim from continuing to protect his intellectual property rights from **future** acts of infringement.

The PCT argues that the Magistrate Judge's report failed to apply the correct standard asking this Court to apply *Florentine Art Studio v. Vedet K. Corp.*, 891 F.

Inc. and C&S Wholesale Grocers, Inc. and his Motion for Attorneys Fees and Full Costs.

12

Supp. 532, 542 (D. Cal. 1995).  Even were that to be the controlling authority in this

circuit (and it is not) the case evidences the key factor that is plainly absent in this

case:  The voluntary willingness of the infringer to enter into a permanent

injunction as follows:

> In their November 11, 1993 letter, defendants offered to discontinue
> the manufacture of seven of the nine statues, and told plaintiff that they
> had never made or sold the remaining two statues. **Further,
> defendants offered to stipulate to the entry of a permanent
> injunction on all nine of the statues**. Finally, defendants put plaintiff
> on notice of most of their substantive defenses. These defenses were
> almost entirely successful at trial.

*Florentine Art Studio,* 891 F. Supp. at 542 (emphasis added).

Assuming, *arguendo*, that *Florentine Art Studio* is applicable, the defendants'

refusal to accept a stipulated injunction as set forth above  or return the other works,

means that, according to its claimed controlling authority, the PCT must be denied

anything in regard to the instant fee requests.   In addition, the Court of Appeals

distinguished *Florintine Art Sudio* because it involved a case where the plaintiff

pressed on as follows:

> Corel cites *Screenlife Establishment v. Tower Video, Inc*., 868 F. Supp.
> 47, 50 (S.D.N.Y. 1994), and *Florentine Art Studio, Inc. v. Vedet K.
> Corp.,* 891 F. Supp. 532, 541 (C.D. Cal. 1995), **but these cases do not
> aid its position. Both dealt with situations where plaintiffs pressed
> on with their lawsuits despite lacking any facially legitimate claims
> that would have justified continuing the action. In contrast, this**

13

**case involved a clear prerelease infringement of Berkla's nozzles coupled with legitimate state law claims upon which Berkla ultimately recovered at trial.**

*Berkla*, 290 F.3d at 998 (citations in original) (emphasis added).

Noteworthy is the fact that in *Berkla*, the defendant infringer stipulated to a judgment for infringement on one infringement claim and then later prevailed on the remaining infringement claim.   In the instant case, the PCT prevailed on one claim, but unlike the defendant in *Berkla*, contested liability on the other claim.  If the Court applies the rule of *Berkla* the PCT cannot be entitled to fees because it fought and lost on one claim that resulted in a finding of infringement.  In addition, the decision not to discuss a settlement with the Plaintiff means that the costs of completing the case must fall entirely on the PCT.   Finally, by allowing the case to go to the jury, PCT established both the value of one week's infringement of FCS1993 for five users and that the profits of the infringer go to the copyright owner.   These findings that have not been appealed may come back to haunt the PCT and C&S.

As stated above, *Florentine Art Studio's* slavish application of the *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) factors has been rejected by the Ninth Circuit that holds that, consistent with the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 127 L. Ed. 2d 455, 114 S. Ct. 1023

14

(1994) are "non-exclusive factors." The most important factor ignored by *Florentine Art Studio* and the PCT but must be applied in this Circuit is fidelity to the Copyright Act. Paying a twice adjudicated infringer to deter the copyright owner from protecting his works where he has twice prevailed in infringement actions (one willful) would be a perversion of the law and run directly contrary to purpose of the Copyright Act and controlling Ninth Circuit authority.

> Even so, courts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996).

*Berkla,* 302 F.3d at 922-923 (citations in the original) (emphasis added).

The PCT relies on *Assessment Techs. of Wi, LLC v. Wire Data, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) for the proposition that Mr. Berry should be denied fees. In *Assessment Techs* the court observed that in copyright cases the defendant is usually the little guy being put upon by a corporate goliath. In that case the Court found that the little guy defendant had put forward a winning defense that merited an award of fees.

The instant case involves the little guy plaintiff versus the former Fortune 100 corporate adjudicated willful infringer. In addition, the Ninth Circuit in *Berkla* made it clear that the kind of literal copying that Fleming engaged in is **"a highly questionable business practice**" that does nothing to foster "**promote the**

15

**Progress of Science and useful Arts**", Berkla 302 F.3d at 923 and they cannot be entitled to fees according to the holding of *Assessment Techs.*

    *Warner Bros., Inc. v. Dae Rim Trading, Inc*., 877 F.2d 1120, 1122 (2d Cir. 1989) contrary to the PCT evidences the way a court should address copyright litigation fee applications when the big guy pursues the little guy. *Warner Bros*., held, consistent with *Fogarty,* that the analysis has to be the same whether the big guy is the copyright owner or the corporate infringer. In *Warner Bros.*, the court of appeals vacated a fee award against a poor immigrant innocent infringer who, even though having lost, had been hounded unreasonably by the corporate copyright owner. To facilitate its ongoing hounding of Mr. Berry, the PCT, currently holds at least $23 million that, in recent secret settlement agreement, has apparently been set aside to insure C&S has clear sailing for future infringements of Mr. Berry's works. *See* Excerpt from the PCT's Motion for an Order in Aid of Implementation of the Plan Filed by Post-Confirmation Trust in *In re Fleming Companies, Inc*., Bk. No. 03-10945 MFW (Bankr. DE) on December 4, 2006. Hogan Dec. Exhibit "5." This agreement with C&S was apparently entered into because C&S, who the PCT claims is the successful recipient of its software development efforts in June 2003, admits to a **"lingering uncertainly"** regarding outcome of the Berry matter. *See* Response to and Reservation of Rights With Respect to The PCT's Motion for an

Order in Aid of Implementation of the Plan  Filed by C&S Acquisition LLC, C&S

Wholesale Grocers, Inc., in *In re Fleming Companies, Inc.* ,Bk. No. 03-10945

MFW (Bankr. DE) on January 18, 2007.  Hogan Dec. Exhibit "6."  In any event, the

PCT and its adopted ward C&S can hardly equate to a poor immigrant family trying

to eke out a living.  The Court must address the factual reality that the nation's

second largest grocery wholesaler is being insured by the PCT to assuage its

"**lingering uncertainty"** while it runs its $15 billion a year company on software

bearing a very great resemblance to FSC1993.  Even C&S is apparently having

second thoughts over the Fleming PCT claimed resounding success and the

Master's report was correct finding that Mr. Berry was the prevailing party.

Providing the PCT greater leverage against the victim of infringement would be

unconscionable.

     The PCT claims that it deserves fees  because this Court refused to enjoin

future acts of infringement.  Rather than standing as a fact in support of the PCT's

claim to fees, this points to the dire need for Mr. Berry to be compensated because

the PCT clearly signals its belief that it believes it is free to infringe.

> The two most important considerations in determining whether to
> award attorneys' fees in a copyright case are the strength of the
> prevailing party's case and the amount of damages or other relief the
> party obtained. **<u>If the case was a toss-up and the prevailing party
> obtained generous damages, or injunctive relief of substantial
> monetary value, there is no urgent need to add in an award of</u>**

**attorneys' fees**.  But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling. As we said with reference to the situation in which the prevailing plaintiff obtains only a small award of damages, "the smaller the damages, provided there is a real, and especially a willful, infringement, the stronger the case for an award of attorneys' fees . . . . **We go so far as to suggest, by way of refinement of the Fogerty standard, that the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees**."

*Assessment Techs*., 361 F.3d at 436-437(citations omitted) (emphasis added).

This Court chose to not exercise its discretion and grant Mr. Berry the means to avoid additional litigation.  In absence of an injunction the only deterrence factor that the Court can rightfully consider on this record is an award of fees and full costs to the Plaintiff to permit him the ability to protect his intellectual property rights.   To that end, the Master's finding that Mr. Berry was the prevailing party should be adopted.

### III.    The PCT's Time Was Excessive.

What the PCT's excessive time entries show in this case is the scope of the litigation juggernaut that Mr. Berry had to fight to prevail in this case.    Now complaining that Mr. Berry beat them up, it is clear from the beginning when the PCT first sued Mr. Berry in Delaware, a case that was dismissed,  that Fleming and now the PCT were willing to spend any amount of the Fleming creditors' money to try (and fail) to defeat Mr. Berry.   To that end, the PCT, C&S and the Employee

attorneys, all hired and paid by Fleming and the PCT combined by using legions of attorneys and filing massive motions and counter-motions, double teaming depositions, offering false testimony all in an effort to crush Mr. Berry and his attorney attempting to fight through the mass of paper and lies being thrown at them.

To conceal its attorneys own misdeeds the PCT again misstates the record in hope that the Court will again rely on unsupported argument rather than the record of these proceedings.  In regard to the usupported claim that threats were made against experts, that is simply false.  *See* Declaration of Timothy J. Hogan filed on November 16, 2004 a copy of which is attached to the Hogan Dec. as Exhibit "7" at paras. 2 to 6.

It is also absurd to claim that Mr. Berry unreasonably sought to protect an irrelevant work in progress from being handed over to an adjudicated and unrepentant willful infringer.

As to who was responsible for delaying trial, it was the PCT's dumping of a full banker's box of withheld documents and computer files <u>at 7:00 p.m. on the night before trial</u> that caused the delay not Mr. Berry.  *See* Transcript of Proceedings Before the Honorable Susan Oki Mollway dated January 24, 2006, Hogan Dec. Exhibit "8" at page 5 line 23 to page 7 line 18.   Again, the PCT

misstates the record to obfuscate its own misdeeds.   The Court should conclude

that the Master was correct in finding that the PCT's attorneys' time was excessive.

The fact that Mr. Berry was able to prevail as he did in light of the falsehoods  and

the onslaught of attorney time that is evident from the PCT's clearly excessive fees

is a testament to his success and the reason why that specific finding of the

Magistrate's Report should be adopted.

      For the reasons stated, the PCT objections should be overruled.

      DATED:   Honolulu, Hawaii, February 16, 2007.

                /S/Timothy J. Hogan
                TIMOTHY J. HOGAN