IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) | ORDER ADOPTING AND MODIFYING THE OCTOBER 25, 2006, AND |
| vs. | ) ) | DECEMBER 4, 2006, REPORTS OF SPECIAL MASTER ON THE |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al. | ) ) ) | PARTIES' MOTIONS FOR ATTORNEYS' FEES AND COSTS |
| Defendants. | ) ) ) | |

ORDER ADOPTING AND MODIFYING THE OCTOBER 25, 2006, AND
DECEMBER 4, 2006, REPORTS OF SPECIAL MASTER ON THE PARTIES'
MOTIONS FOR ATTORNEYS' FEES AND COSTS

I.        INTRODUCTION AND BACKGROUND.

          After a jury trial and entry of judgment, Plaintiff

Wayne Berry ("Berry"), as well as Defendants Guidance Software,

Inc., and Michael Gurzi (collectively, "Guidance"), Defendants

C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers, Inc., C&S

Acquisitions, LLC, ES3, LLC, and Richard Cohen (collectively,

"C&S"), Defendants Brian Christensen, Mark Dillon, Teresa Noa,

Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda Waiolama,

and Jacqueline Rio (collectively, "Employees"),[1] and Defendant

Post Confirmation Trust[2] moved for attorneys' fees and costs.

---

          [1] All Employees, except Christensen, are referred to
collectively as "Trial Employees."

          [2] As noted in this court's October 21, 2005, order,
Post Confirmation Trust represents the interests of Fleming
Companies, Inc., and is therefore referred to as "Fleming."

This court referred all of the motions for fees and costs to Magistrate Judge Leslie E. Kobayashi. The task of parsing the requests was onerous, and this district judge is hugely indebted to Magistrate Judge Kobayashi for her painstaking work.

On October 25, 2006, the magistrate judge issued a special master's report on Guidance's and C&S's motions for fees and costs ("10/25/2006 Report" or "October 25 Report"). The magistrate judge recommended that this court grant in part and deny in part Guidance's motion by awarding Guidance $47,561.18 in attorneys' fees and $4,096.32 in costs, for a total award of $51,657.50. The magistrate judge also recommended that this court grant in part and deny in part C&S's motion by awarding C&S $84,758.98 in attorneys' fees and denying C&S's request for costs.

On November 8, 2006, Berry filed objections to the October 25 Report. Berry objects to the magistrate judge's addressing issues other than the "value of services." Berry also objects to the magistrate judge's finding that Guidance's motion for fees was timely. Berry also argues that the Report encourages improper conduct. Additionally, Berry contends that Guidance and C&S are not the prevailing parties, that his claim for misappropriation of trade secrets is not related to his copyright claims, and that Guidance and C&S are not entitled to

2

fees.  On November 17, 2006, Guidance filed a response to Berry's objections.[3]

On December 4, 2006, the magistrate judge issued a special master's report on Berry's, Employees', and Fleming's motions for fees and costs ("12/04/2006 Report" or "December 4 Report").  The magistrate judge recommended that this court grant in part and deny in part all of the motions by:  (1) awarding Berry $19,986.42 in costs against Fleming, Mark Dillon, and Teresa Noa; denying Berry's request for taxable copying costs without prejudice; and denying Berry's motion in all other respects; (2) awarding Fleming $66,684.38 in attorneys' fees; awarding Fleming $16,366.92 in costs; and denying Fleming's motion in all other respects; and (3) awarding Employees attorneys' fees incurred by Christensen in the amount of $27,507.20 and denying their motion in all other respects.

On December 14, 2006, Berry filed objections to the December 4 Report, arguing that the magistrate judge erred in recommending fees for Christensen and in finding Trial Employees to be the prevailing parties against Berry.  Berry also contends that "the Magistrate Judge makes the erroneous statement that 'the jury also found that [Berry] was not entitled to any additional profits from [Fleming].'"  Berry objects to the

---

[3] As C&S did not file a response to Berry's objections, the court considers C&S's pleadings before the magistrate judge as stating its position on the various issues Berry now raises.

magistrate judge's finding that Fleming is entitled to fees and costs incurred in defending against the misappropriation of trade secrets claim.  Lastly, Berry objects to the magistrate judge's recommendation that this court deny his request for fees and his request for costs relating to trial expert witnesses.  On February 8, 2007, Fleming filed its response to Berry's objections.[4]

On December 22, 2006, Fleming filed its objections to the December 4 Report.  Fleming argues that the magistrate judge "applie[d] the wrong standard to assess whether [it] is the prevailing party in this litigation."  Fleming urges this court to rely on <u>Florentine Art Studio, Inc. v. Vedet K. Corp.</u>, 891 F. Supp. 532, 541 (C.D. Cal. 1995), rather than <u>Buckhannon Board and Care Home, Inc. v. Western Virginia Department of Health and Human Resources</u>, 532 U.S. 598 (2001).  Fleming also argues that the magistrate judge erred in finding that the hours it spent defending against Berry's claims were excessive.  On February 16, 2007, Berry filed his response to Fleming's objections.

As discussed below, the court adopts the Reports with modifications.

---

[4] As Christensen did not file a response to Berry's objections, the court relies on Christensen's pleadings before the magistrate judge as stating his position on Berry's arguments.

II.        <u>LEGAL STANDARD.</u>

The court reviews <u>de novo</u> all objections to findings of fact and conclusions of law made or recommended by a special master.  <u>See</u> Fed. R. Civ. P. 53(g) (noting that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master" and that "[t]he court must decide de novo all objections to conclusions of law made or recommended by a master"); LR 74.2 ("[a] district judge shall make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made").  In acting on a special master's report, the court "may receive evidence, and may:  adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions." <u>See</u> Fed. R. Civ. P. 53(g)(1); LR 74.2 (noting that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may exercise discretion to receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions").  Under the Copyright Act, "the awarding of costs and attorney's fees are left to the court's discretion." <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 523 (1994) (citing 17 U.S.C. § 505).

III.     ANALYSIS.

     A.     Objections to the October 25 Report.

          1.     The Magistrate Judge Did Not Exceed Her
                Powers in Ruling on the Parties' Motions.

Berry argues, "To the extent that the District Court views this as a master report, [he] objects on the grounds that it exceeds the scope of permissible referral." Berry Objections at 3. Berry says that he "does not consent to the Magistrate making any findings other than the value of services." The court overrules Berry's objection.

According to Local Rule 53.1, "Unless otherwise ordered by a district judge, the magistrate judge designated to handle non-dispositive matters in a civil case is, in accordance with 28 U.S.C. § 636(b)(2) and Fed. R. Civ. P. 53, 54(d)(2)(A), and 54(d)(2)(D), designated to serve as special master to adjudicate any motion for attorneys' fees and related non-taxable expenses filed in the civil case." As Magistrate Judge Kobayashi was designated to handle the nondispositive matters in this case, pursuant to Local Rule 53.1, she was also "designated to serve as special master to adjudicate" the parties' motions for fees and costs. See LR 53.1. The court therefore referred to her the parties' motions, which addressed several issues other than "the value of services." Given the referral to her of the motions in their entirety, the magistrate judge was authorized to address every issue therein.

There is no bar to the referral of any matter, including a dispositive matter, to a magistrate judge for a recommendation.  The "scope of permissible referral" for a recommendation, as opposed to an order, is not limited to the "value of services."

> ### 2.   Guidance's Motion for Fees and Costs Was Timely.

Berry claims that the magistrate judge "erred in determining that there was sufficient grounds to permit the tardy filed Guidance fee motion to go forward."  Berry Objections at 5.  Berry contends that "the fourteen day clock began" when the court entered the original judgment, and that his post-judgment motions did not toll the time in which Guidance was allowed to file its motion.  Berry Objections at 5-6.  The court disagrees with Berry and adopts the magistrate judge's finding that Guidance's motion was timely.

Guidance brought its fee motion under Rule 54(d) of the Federal Rules of Civil Procedure and under Local Rule 54.3.  Guidance Motion at 2.  Rule 54(d)(2)(B) provides:  "Unless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed no later than 14 days after entry of judgment."  The Ninth Circuit says that a "Rule 54(d)(2)(B) motion for fees is timely if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59

motion."  <u>Bailey v. County of Riverside</u>, 414 F.3d 1023, 1025 (9th Cir. 2005).

Like Rule 54(d), Local Rule 54.3 provides:  "Unless otherwise provided by statute or ordered by the court, a motion for an award of attorneys' fees and related non-taxable expenses must be filed within fourteen (14) days of entry of judgment."  Although Local Rule 54.3 states that "[f]iling an appeal from the judgment does not extend the time for filing a motion," it is silent as to whether orders resolving motions under Rule 50(b), Rule 52(b), or Rule 59 toll the time for filing a motion for fees.  As stated in Local Rule 1.3, the Local Rules "supplement the Federal Rules of Civil Procedure . . . and shall be construed so as to be consistent with those rules."  Motions filed under Local Rule 54.3, like those filed under Rule 54(d), are therefore timely "if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion."  <u>See</u> <u>Bailey</u>, 414 F.3d at 1025; <u>cf.</u> <u>R.L. Inv. Ltd. Partners v. INS</u>, 86 F. Supp. 2d 1014, 1019 n.1 (D. Haw. 2000) (interpreting Local Rules 6.1 and 7.4 consistently with Rule 6 of the Federal Rules of Civil Procedure, as required by Local Rule 1.3 ).

On March 9 and 16, 2006, the Clerk of Court entered the original and amended judgments in this case.[5]  On March 21, 2006,

_____

[5] As noted by the magistrate judge, "The original judgment, issued on March 9, 2006, only addressed the jury's verdict, and the Amended Judgment, issued on March 16, 2006,

Berry filed a motion for judgment as a matter of law and a motion
to alter or amend the Second Amended Judgment under Rules 50(b)
and 59 of the Federal Rules of Civil Procedure.  These motions
were resolved by the court in separate orders on May 16 and 24,
2006.  Thus, under <u>Bailey</u>, 414 F.3d at 1025, the time during
which the parties were required to submit any motion for fees and
costs under Rule 54(d) or Local Rule 54.3 expired fourteen days
after May 24, 2006.  Because Guidance filed its motion on May 30,
2006, the court agrees with the magistrate judge that Guidance's
motion was timely.  The court therefore overrules Berry's
objection on this point.

> 3.    The Magistrate Judge Did Not "Encourage"
>        Improper Conduct.

Berry also objects to the "disturbing finding in the
Magistrate's recommendation . . . that 'Fleming's and C&S' use of
[a] non-infringing spreadsheet system that built upon the ideas
conveyed by [Berry's] FCS should be encouraged.'"  Berry
Objections at 14.  Berry asserts, "It is undisputed in this case
that the ideas were conveyed through copying into Random Access
Memory of an illegal, unlicensed, derivative copy of Mr. Berry's
work.  The Magistrate is now stating . . . that you may commit
acts of software copyright infringement and then use the

---

contained an error."  12/4/2006 Report at 6 n.3.  "The Second
Amended Judgment, filed on March 16, 2006, addressed all of the
dispositive rulings throughout the case."  10/25/2006 Report
at 15.

infringing work that you create to create a new work which
conduct is to be 'encouraged.'"  Berry Objections at 14.  The
court overrules Berry's objection.

        In making the statement to which Berry now objects, the
magistrate judge was discussing the purposes of the Copyright
Act.  The magistrate judge noted that the Act's "primary
objective 'is not to reward the labor of authors, but to promote
the Progress of Science and useful Arts.  To this end, copyright
assures authors the right to their original expression, but
encourages others to build freely upon the ideas and information
conveyed by a work.'"  10/25/2006 Report at 27 (quoting <u>Fogerty</u>,
510 U.S. at 527).  This court had previously concluded that "no
material issues of fact exist with respect to whether the Excel
spreadsheets are an FCS derivative."  6/27/2005 Order at 13, 27.
The magistrate judge simply applied that conclusion to <u>Fogerty</u> by
stating, "Fleming's and C&S's use of a non-infringing spreadsheet
system [(<u>i.e.</u>, the Excel spreadsheets)] that build upon the ideas
conveyed by [Berry's] FCS should be encouraged."  <u>Id.</u> at 27.
Berry misinterprets the magistrate judge's statement, as she did
not even imply, much less find, that "you may commit acts of
software copyright infringement and then use the infringing work
that you create to create a new work."  Berry Objections at 14.
The court rejects Berry's argument and overrules his objection.

4.    <u>Guidance and C&S Are the Prevailing Parties.</u>

Berry next argues that "the Magistrate erroneously states that 'Guidance and C&S each obtained total victory on all [Berry's] claims.'" Berry Objections at 12.  Berry says, "While it is true that C&S and Guidance prevailed on the issue of direct infringement both failed in any attempt to defeat Mr. Berry's rights as an owner to the copyrightable work FCS 1993."  Berry Objections at 12-13.  Berry therefore argues that the magistrate judge erred in finding that Guidance and C&S prevailed on the issues of "copyrightability and ownership of FCS."  The court disagrees with Berry and adopts the magistrate judge's finding that Guidance and C&S prevailed on all of Berry's claims.

In the Second Amended Verified Complaint ("SAVC"), Berry asserted the following claims against Guidance and C&S: (1) direct copyright infringement (Count 1); (2) contributory and vicarious copyright infringement (Count 2); (3) conspiracy to infringe (Count 3); (4) misappropriation of trade secrets (Count 4); (5) violations of the Sherman Act (Count 5); and (6) Racketeering Influenced and Corrupt Organization violations (Count 6).

On June 27, 2005, this court issued an order on, among other things, Guidance's and C&S's motions for summary judgment. In the order, the court stated that, to establish a prima facie case of direct infringement, "a plaintiff must show:  (1) that

11

the plaintiff owns the copyright; and (2) that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." 6/27/2005 Order at 5. With respect to the first element, the court noted that "Defendants do not dispute . . . that Berry has a valid copyright in his FCS software." 6/27/05 Order at 5. Thus, Berry is correct in asserting that he prevailed on the first element of his claim for direct infringement. However, the order made clear that, with respect to Guidance and C&S, Berry did <u>not</u> prevail on the second element. The court therefore granted summary judgment in their favor, and, based on that order, Guidance and C&S clearly prevailed on all claims asserted against them.

In her October 25 Report, the magistrate judge properly found that Guidance and C&S were the prevailing parties, stating:

> Although the district court found for [Berry]
> on the issues of ownership and
> copyrightability, the district court
> ultimately found that neither Guidance nor
> C&S infringed that copyright. The district
> court granted summary judgment to Guidance
> and C&S on all counts. . . . Guidance and
> C&S each obtained a total victory on all of
> [Berry's] claims. This Court therefore finds
> that both Guidance and C&S are prevailing
> parties for purposes of § 505.

10/25/2006 Report at 17. Contrary to Berry's assertion, the magistrate judge did <u>not</u> find that Guidance and C&S prevailed on the issues of ownership or copyrightability. Accordingly, the court overrules Berry's objection on this ground and adopts the

12

magistrate judge's finding that Guidance and C&S are the
prevailing parties on all claims asserted against them.

     5.   Count 4 Is Related to Berry's Copyright
         Claims.

Berry objects to the magistrate judge's finding that
Count 4 for misappropriation of trade secrets is related to the
copyright claims.  Berry argues that Count 4 is not based on the
same conduct alleged in the copyright claims because, "at the
time this case was filed, Fleming was not engaged in any known
copyright infringement regarding its use of the numerous other
Berry works."  Berry Objections at 13.  The court disagrees with
Berry and adopts the magistrate judge's finding that Count 4 is
related to Berry's copyright claims.

As the magistrate judge noted, "A party that prevails
on a claim under the Copyright Act may recover attorney's fees
for the copyright claims and any other related claims."
10/25/2006 Report at 18 (citing Traditional Cat Ass'n, Inc. v.
Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003)).  In the Ninth
Circuit, claims are related when they arise from the same course
and conduct.  Id. (citing Entm't Research Group, Inc. v. Genesis
Creative Group, Inc., 122 F.3d 1211, 1230 (9th Cir. 1997)).
Claims are unrelated when they allege "'distinctly different
claims for relief that are based on different facts and legal
theories' from the other causes of action in the overall

13

litigation." Id. (citing Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000); Entm't Research Group, Inc., 122 F.3d at 1230).

Berry's copyright claims against Guidance were based on Guidance's agreement with Fleming to analyze Berry's software. SAVC ¶ 37. Berry asserted in the SAVC that Guidance's possession and use of his software program pursuant to its agreement with Fleming infringed on his copyright. SAVC ¶¶ 37, 52, 66. Guidance's possession and use of his program pursuant to that agreement also served as the basis of Berry's claim for misappropriation of trade secrets against Guidance in Count 4. SAVC ¶¶ 99-112. Because Berry's claims against Guidance for copyright infringement and misappropriation of trade secrets (Count 4) arose from the same course and conduct, they are related for purposes of attorneys' fees under the Copyright Act. See Entm't Research Group, Inc., 122 F.3d at 1230.

Berry's copyright claims against C&S were based on C&S's alleged use of Berry's software program and infringing derivatives after C&S took over Fleming's operations. Specifically, Berry alleged that C&S, "through certain agreements with Fleming, ha[d] entered into an agreement with Fleming and certain of the other defendants to operate the Berry Freight Control System, and the illegal derivatives." SAVC ¶ 68. Berry also alleged in the SAVC that, "Each time C&S transfers wholesale groceries through the Berry Freight Control System, it commits

14

another act of copyright infringement." SAVC ¶ 69. Similarly,
Berry's claim against C&S for misappropriation of trade secrets
was based on C&S's alleged use and possession of Berry's program
and derivatives after C&S took over Fleming's operations. Berry
specifically alleged that the programs "were illegally
transferred to C&S when it[] became the owner and operator of the
Fleming-Logistics Department." SAVC ¶ 103. Because Berry's
claims against C&S for copyright infringement and for
misappropriation of trade secrets (Count 4) were based on the
same course and conduct, they are related for purposes of
attorneys' fees under the Copyright Act. See Entm't Research
Group, Inc., 122 F.3d at 1230. Accordingly, the court adopts the
magistrate judge's finding that Count 4, alleging
misappropriation of trade secrets, is related to Berry's
copyright claims.

> 6. C&S's Time Records Are Sufficient.

Berry contends that C&S should be denied fees because
"it did not keep contemporaneous separate records from time
expended for Fleming." Berry Objections at 12, 14-15. Berry
says that "there is simply no attempt to even say that there are
separate time records kept for C&S" and that "there simply are no
records to show any time expended solely for C&S." Berry
Objections at 12, 14-15. The court disagrees with Berry.

In its moving papers, C&S explains that the law firm, Kobayashi, Sugita & Goda, "was counsel of record in this case for [C&S]" and "acted as local counsel for [Fleming]." C&S Reply at 5. Because the law firm represented both C&S and Fleming, C&S explains that the "time records submitted with [its] motion reflect 100% the time billed for" legal services "exclusively connected to the representation of [C&S]." C&S Reply at 5. C&S also states:

> On some occasions, Kobayashi, Sugita & Goda did work attributable exclusively to the representation of [Fleming]. None of that work is reflected in the materials submitted with this motion. Finally, on some occasions Kobayashi, Sugita & Goda performed work for [C&S] that also benefitted the defense of [Fleming]. The records submitted with this motion attribute one-half of such work to the defense of [C&S]. In the judgment of [C&S's] counsel this is an equitable way to allocate the charges, since both parties benefitted from the effort."

C&S Reply at 5-6; see also Declaration of Lex Smith (3/23/2006) ¶¶ 7, 9 (explaining that the "chart showing attorneys' fees and costs" incurred by C&S, which was attached to C&S's fee motion, "reflects only 50% of the total amount charged" for services that benefitted both C&S and Fleming).

In her October 25 Report, the magistrate judge noted that the fees requested by C&S include "entries reflecting work done solely for C&S." 10/25/2006 Report at 36. She stated:

> C&S acknowledges that at times counsel performed work solely for [Fleming], but C&S

16

> states that none of that time is reflected in
> the C&S Motion.  Where counsel's work was
> done on behalf of both C&S and [Fleming], C&S
> included one-half of that time in its
> request.  The time records C&S submitted are
> thorough and detailed.  This Court has
> compared the records with those in
> [Fleming's] motion for attorney's fees and
> there are significant differences in the two
> requests.  C&S has not merely submitted one-
> half of Fleming's fees.  The Court therefore
> finds that C&S has submitted sufficient time
> records and that the allocation of fees
> attributable to both C&S and [Fleming] is
> fair and equitable.

10/25/2006 Report at 36.  C&S requested fees solely attributable

to defending C&S and did not request fees incurred in defending

Fleming.  The court rejects Berry's assertion that the magistrate

judge "engage[d] in what amounts to ghost writing C&S' time

records."  Further, as noted by the magistrate judge, "the lack

of contemporaneous time records alone does not automatically

preclude a fee award."  10/25/2006 Report at 35 (citing <u>Frank

Music Corp. v. Metro-Goldwyn-Mayer Inc.</u>, 886 F.2d 1545, 1557 (9th

Cir. 1989) ("The lack of contemporaneous records does not justify

an automatic reduction in the hours claimed, but such hours

should be credited only if reasonable under the circumstances and

supported by other evidence such as testimony or secondary

documentation.")).  C&S's time records are sufficient to support

an award of fees.

7.    Guidance and C&S Are Entitled to an Award of Fees.

Berry objects to the magistrate judge's finding that Guidance and C&S are entitled to attorneys' fees.  Specifically, Berry argues that, in applying the <u>Fogerty</u> factors to the present case, the magistrate judge erred in finding that Berry's claims against Guidance were frivolous, and that she also erred in omitting any discussion regarding Guidance's alleged violation of an order issued in the prior infringement case.  Berry Objections at 3-4, 7-8.  Regarding C&S, Berry objects to the magistrate judge's finding that Berry is a vexatious litigant.  Berry Objections at 8, 10-11.  The court adopts the magistrate judge's finding that Guidance and C&S are entitled to attorneys' fees.

In her Report, the magistrate judge noted that the "United States Supreme Court has stated that, in exercising their discretion to award attorney's fees and costs under the Copyright Act, courts may consider the following nonexclusive factors: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  10/25/2006 Report at 21 (quoting <u>Fogerty</u>, 510 U.S. at 534 n.19).  Indeed, the Court concluded that the foregoing factors "may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and

18

defendants in an evenhanded manner." <u>Fogerty</u>, 510 U.S. at 534
n.19. The Ninth Circuit has added that courts may also consider
the degree of the moving party's success, <u>see Wall Data Inc. v.
Los Angeles County Sheriff's Dep't</u>, 447 F.3d 769, 787 (9th Cir.
2006), and "whether the chilling effect of attorney's fees may be
too great or impose an inequitable burden on an impecunious
plaintiff." <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 323 F.3d 763, 766
(9th Cir. 2003) (citation omitted).

        a. <u>Factors Applied to Guidance.</u>

      After stating the applicable law, the magistrate judge
balanced the foregoing factors and made the following findings
with respect to Guidance's fee request:  (1) Berry's copyright
claims against Guidance were "frivolous and objectively
unreasonable," as they "were without legal and factual basis";
(2) Berry's "pursuit of claims against Guidance, in spite of
notice that its copying constituted fair use, is a strong
indication that he had an improper motivation"; (3) "an award of
attorney's fees is appropriate to deter frivolous litigation";
and (4) "an award of attorney's fees to Guidance would not have
too great a chilling effect" on Berry, as he "is not an
unsophisticated litigant."  10/25/2006 Report at 22-25.

      Although Berry argues generally that this court should
reject all of the magistrate judge's "recommendations regarding
the award of fees to" Guidance, Berry Objections at 3, Berry only

19

raises specific objections to the following:  (1) the statement
that Berry "alleges that Guidance has made false statements in
this and other related actions," Berry Objections at 3-4
(emphasis added); and (2) the omission of "the fact that the acts
that Guidance undertook in the Summer of 2003 violated its own
order in the first case," Berry Objections at 4, 7.  See LR 74.2
("The objecting party shall file with the clerk . . . written
objections that specifically identify the portions of the order,
findings, or recommendations to which objection is made and the
basis for such objections.").

        Regarding the magistrate judge's statement that Berry
"alleges that Guidance has made false statements in this and
other related actions," Berry argues, "It is not an allegation,
it is an established fact."  Berry points to this mistake as
proof that his claims were not frivolous.  Berry Objections at 4
(emphasis added).

        The magistrate judge, however, was merely summarizing
the allegations and arguments made in Berry's opposition to
Guidance's motion.  The magistrate judge summarized a portion of
Berry's opposition as follows:

        [Berry] contends that awarding Guidance
        attorney's fees would be contrary to the
        principles behind the Copyright Act.  He
        alleges that Guidance has made false
        statements in this and other related actions.
        He posits that Guidance was only able to
        obtain summary judgment because the district
        court did not make any inferences from

20

> Guidance's conduct and this is hardly a
> victory for Guidance.

12/4/2006 Report at 5-6 (emphasis added).  Indeed, Berry claims

in his opposition that Guidance prevailed on summary judgment

"despite th[e] fact that it admitted to filing a false affidavit

in the Bankruptcy court where Guidance/Gurzi falsely claimed all

Berry works were deleted from the Fleming system."  Berry Opp.

at 4.  Because the magistrate judge was simply summarizing

Berry's allegation that Guidance submitted false statements to

the bankruptcy court, the magistrate judge did not err in stating

that Berry "alleges" that Guidance made false statements.

Further, contrary to Berry's assertion, the statement did not go

to the magistrate's analysis of the Fogerty "frivolousness"

factor.  The court therefore declines to vacate the magistrate

judge's statement.

        Regarding the magistrate judge's omission of any

discussion about Guidance's alleged violation of an order in the

previous infringement case, Berry argues that "an order existed

which prohibited Guidance from performing the very acts that it

had committed that involved the scrubbing of computers."  Berry

Objections at 4, 7.  In support of this assertion, Berry points

to a court order from the previous infringement case that adopted

a special master's ruling on discovery.  Ex. 8 (attached to Berry

Opp.) at 4.  One of the rulings adopted by the court stated:

> the parties are to preserver [sic] all
> evidence in this case.  <u>In particular, no
> software, data, or emails are to be
> destroyed.</u>  The parties may continue with
> their ordinary business operations, however
> any routine corporate document destruction
> programs should be suspended during the
> pendency of this case.

Ex. 8 (attached to Berry Opp.) at 4 (emphasis in original).

Berry does not explain how the ruling applies to Guidance, as Guidance was not a party in the prior infringement case.  Further, Berry states in his opposition that the work Guidance performed in July 2003 was not related to the prior infringement case, but was instead related to Fleming's case in Delaware, <u>Fleming Companies, Inc. v. Wayne Berry</u>, Adv. Proc. 03-54809-MFW.  Berry Opp. at 16.  As the ruling does not appear to apply to Guidance, and as Berry says that Guidance's work was not even related to the prior infringement case, the court declines to vacate any portion of the magistrate judge's order for failure to discuss Guidance's alleged violation.  Accordingly, as Berry does not challenge the magistrate judge's findings regarding the remaining <u>Fogerty</u> factors, the court, in exercising its discretion, adopts the recommendation to award Guidance attorneys' fees.

b.    <u>Factors Applied to C&S.</u>

Regarding C&S, the magistrate judge found:  (1) Berry's "claims against C&S were objectively unreasonable based on the fact of this case and the applicable law"; (2) Berry had an

22

"improper motive for pursuing the instant case against C&S"; and (3) "an award of attorney's fees is appropriate to deter the type of vindictive litigation that [Berry] has pursued." 10/25/2006 Report at 25-27. The magistrate judge also found that "C&S's success in this case" and the fact that Berry "is not an unsophisticated litigant" weighed in favor of awarding C&S attorneys' fees. 10/25/2006 Report at 27-28.

Berry objects to the magistrate judge's finding that Berry is a vexatious litigant. Berry argues that the magistrate judge "erroneously concludes that [he] was engaged in an ongoing vendetta that passed from Fleming to C&S." Berry Objections at 11. Berry asserts:

> If the Court looks simply at the cases that are cited [in C&S's motion], it will see that one of the cases was brought by Fleming against Atlantic Pacific International Inc. ("API") to enforce the terms of a fraudulently induced settlement. . . . As to the other two, one is brought against Fleming by API but the other was against an API customer, Kraft Foods, that, despite claiming to have paid Fleming, never paid API for money it owed to API. It is fundamental that you can't argue against the electric company shutting off the lights by claiming that you paid the telephone company instead.

Berry Objections at 11.

The three cases to which Berry refers are addressed in C&S's motion in support of its argument that "[Berry's] motivation, stemming from a long-standing vendetta, strongly calls for an award of [C&S's] attorneys' fees." C&S Motion at 7.

23

C&S argues in its motion that the "chain of litigation sponsored by plaintiff includes": (1) API v. Fleming, Civil. No. CV02-00711 HG LEK, which C&S describes as an "alleged antitrust case filed by plaintiff's wholly owned corporation"; (2) Fleming v. API, Civil No. CV 01-00645 SPK KSC, which C&S describes as an "action to compel arbitration, which the plaintiff appealed to the Ninth Circuit rather than arbitrate"; and (3) API v. Kraft Foods North America, Inc., Civil No. 03-1-0865-04, which C&S describes as a "'collection action' in which plaintiff sued Kraft for bills that Kraft had already paid to Fleming."  C&S Motion at 7-8.

        Although Berry had a relationship with API, which brought two of the three actions cited by C&S, Berry is correct in asserting that "none of the cases were brought by [him]." Berry is also correct in stating that he partially prevailed in the two lawsuits he brought against Fleming.  The instant action is the only suit Berry brought against C&S.

        This court finds it unnecessary to either adopt or reject the magistrate judge's finding that Berry's alleged responsibility for bringing "numerous lawsuits and administrative complaints against Fleming" indicates an improper motive for pursing the instant case against C&S.  The court also finds it unnecessary to either adopt or reject the magistrate judge's finding that "an award of attorney's fees is appropriate to deter

24

the type of vindictive litigation that [Berry] has pursued."
10/25/2006 Report at 27.  The unchallenged findings relating to
the remaining Fogerty factors and the other factors set forth in
Wall Data Inc. and Ets-Hokin are sufficient to support an award
of fees to C&S.  Therefore, even without the challenged findings,
the court, in its discretion, adopts the magistrate judge's
recommendation to award C&S attorneys' fees.

> 8.  Berry's Remaining Assertions.

Berry also argues:  (1) that the magistrate judge
"punished" him because he "cooperated with federal law
enforcement"; (2) that "most milk is shipped to Hawaii
pasteurized on the Mainland then goes sour in shipping only to be
cooked again before sold to consumers as 'fresh' milk"; (3) that
"the three previously alleged victims of Mr. Berry's vendetta,
Fleming, Kraft Foods and Meadow Gold Dairy nka Dean's Food, are
all the recipients of SEC cease and desist consent decrees";
(4) that the magistrate judge "erroneously decided that Mr. Berry
is not to be afforded the ability to protect his works"; and
(5) that the magistrate erred in finding that "C&S can obtain an
adjudication of ownership rights in regard to its claimed
replacement for FCS without filing a copyright registration and
without providing a transfer from Fleming."  Berry Objections at
8-13 (emphasis in original).  Berry also states, "As to the
Department of Defense, Mr. Berry requests that the Court permit

25

the facts of this issue to be heard, <u>in camera</u> if it is in any way relevant." Berry Objections at 9. Because the magistrate judge neither made these alleged findings or conclusions nor addressed these issues, the court declines to address Berry's objections.

      B.   <u>Objections to the December 4 Report.</u>

         1.   <u>Christensen Is Entitled to Attorneys' Fees.</u>

Berry objects to the magistrate judge's recommendation to award Christensen attorneys' fees. Berry Objections at 13–15. Berry argues that, when this court granted summary judgment in Christensen's favor on all claims, the court erroneously relied on "his false statements." Berry Objections at 13–14. Berry explains, "When asked both in deposition and at trial why [Christensen] didn't just shut the system down on March 7, 2003, Mr. Christensen falsely testified that he wasn't in charge on that date." Berry Objections at 13. Berry contends that this false evidence served as the basis of Christensen's victory in this case and should therefore preclude an award of fees in his favor. Berry Objections at 13–14. The court disagrees with Berry and adopts the magistrate judge's recommendation to award Christensen attorneys' fees.

This is not the first time that Berry has pointed to Christensen's deposition testimony as a basis for challenging the court's January 26, 2005, summary judgment order in favor of

26

Christensen.  In Berry's motion under Rule 60(b) of the Federal
Rules of Civil Procedure, he asked the court to, among other
things, vacate the summary judgment order because Christensen
stated in deposition testimony that he became the president of
Fleming's Hawaii division sometime after March 7, 2003, although
Christensen had actually been the president since March 2002.
See 6/5/2006 Order at 1, 3.  The court denied that motion,
stating, "Contrary to Berry's position, the court did not, in the
summary judgment order, rely on or refer to Christensen's
erroneous deposition testimony that he became the president of
Fleming's Hawaii division in March 2003."  6/5/2006 Order at 8.
Rather, the court stated:

> The grant of summary judgment in favor of
> Christensen resulted from Berry's failure to
> produce any evidence showing direct,
> contributory, or vicarious infringement.  The
> date that Christensen's presidency began was
> irrelevant to whether he infringed Berry's
> copyright during the period in issue.

6/5/2006 Order at 10.

As stated in the June 5, 2006, order, Christensen's
misstatement played no role in Christensen's victory in this
case.  The court therefore rejects Berry's objection on this
point.

27

        2.    Trial Employees Are Not the Prevailing
              Parties.

     Berry next argues:

        As to the two employees who had no monetary
        amount entered against them, they were found
        direct infringers.  They lost on the issue of
        infringement and should they use Berry's work
        again in their employment, would anyone argue
        that they would be willful infringers?  Th[e]
        judgment necessarily modifies their future
        conduct and therefore they are not prevailing
        parties and all parts of the Report that
        seeks to compensate them should be rejected.

Berry Objections at 15.  Regardless of which of the Trial

Employees Berry is referring to in this argument,[6] the argument

is unrelated to what the magistrate judge actually found.  The

magistrate judge viewed none of the Trial Employees as having

prevailed against Berry.  Regarding Dillon and Noa, the

magistrate judge said that "[Berry] was the prevailing party over

Mark Dillon and Teresa Noa for purposes of § 505."  12/4/2006

Report at 27.  Regarding the other Trial Employees, the

magistrate judge said that, "insofar as Ponce, Purdy, Fukumoto,

Waiolama, and Rio did not obtain a judgment against [Berry], this

court FINDS that they are not the prevailing parties."  12/4/2006

Report at 27.  As none of the Trial Employees was found to be a

_____

        [6] Although Berry's argument addresses "the two
employees who had no monetary amount entered against them," the
jury did not award damages against five of the Trial
Employees--Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda
Waiolama, and Jacqueline Rio.  Berry Objections at 15 (emphasis
added).  The jury awarded damages against the two remaining Trial
Employees--Mark Dillon and Teresa Noa.

prevailing party, and as none of them was awarded fees or costs, the court disregards Berry's argument that they are not prevailing parties and should not receive fees or costs.

> 3.    The Jury Found That Berry Is Entitled to Recover Profits.

Berry also argues that "the Magistrate Judge makes the erroneous statement that 'the jury also found that [Berry] was not entitled to any additional profits from [Fleming] based on Fleming's infringement and that Fleming was vicariously liable for trial employees' infringement.'" Berry Objections at 7. Berry contends, "The fact is that the jury found that Mr. Berry was entitled to any profits but the jury found there were no profits. Therefore, had there been profits, based on the jury verdict, Mr. Berry would have been entitled to them." Berry Objections at 7-8. The court disagrees with Berry that the magistrate judge's statement is erroneous.

The jury found that Berry proved his entitlement to $57,534 in actual damages from Fleming, Dillon, and Noa for direct infringement. Special Verdict Form at 2-4. The jury also found that Berry proved "by a preponderance of the evidence that he is entitled to recover profits attributable to Fleming's use of [his] software." Special Verdict Form at 5. The jury was then asked to "state the amount of profit attributable to Fleming's direct infringement," excluding "any matters that would duplicate [actual] damages." Special Verdict Form at 5. The

jury answered that question by writing, "$0." Special Verdict Form at 5. Thus, while the jury found that Berry was entitled to recover profits attributable to Fleming's direct infringement, it also found that there were no profits to recover that were not already included in the jury's award of actual damages. The magistrate judge's statement that the jury "found that [Berry] was not entitled to any additional profits from [Fleming] based on Fleming's infringement" correctly summarizes the jury's findings.

### 4. Fleming Is Entitled to Attorneys' Fees Incurred in Defending Against Count 4.

Berry objects to the magistrate judge's recommendation to award Fleming attorneys' fees under state trade secret law for defending against his claim for misappropriation of trade secrets (Count 4). Berry points to the court's June 27, 2005, order granting summary judgment in Fleming's favor on Count 4, arguing that the order "focuse[d] only on the sixteen copies that were transferred," but "disregard[ed] the evidence that Mr. Berry put forward . . . that showed in detail numerous other files that had been transferred." Berry Objections at 9-11. Berry asserts that "[t]he record was full of evidence regarding Mr. Berry's trade secret claim."[7] Berry Objections at 9-11. The court adopts the

---

[7] Berry also asserts: "Making the claim that Mr. Berry shows ill will because he has cooperated with law enforcement, the Report should send a chill through any person who, acting out of public concern, answers law enforcement inquiry (in form of a

magistrate judge's finding that Fleming is entitled to fees under state trade secret law.

In Count 4, Berry asserted a claim against Fleming for misappropriation of trade secrets under Hawaii's Trade Secret Act, Haw. Rev. Stat. § 482B.  Under Haw. Rev. Stat. § 482B-5, the court "may award reasonable attorney's fees to the prevailing party if . . . [a] claim of misappropriation is made in bad faith."  Haw. Rev. Stat. § 482B-5(1).  Hawaii's Trade Secret Act does not define "bad faith," and no Hawaii appellate case law addresses section 482B-5.  Although Berry argues that the court cannot award fees under this section unless it finds bad faith under state law, he cites no authority for that proposition. Berry Objections at 8.  Because "Hawaii's Trade Secret Act is based on the Uniform Trade Secrets Act [('UTSA')]," the court agrees with the magistrate judge's conclusion that "caselaw from other states that have adopted the UTSA is instructive."  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. McClafferty, 287 F. Supp. 2d 1244, 1249 (D. Haw. 2003); 6/27/2005 Order at 31 ("Hawaii's Trade Secret Act, Haw. Rev. Stat. § 482B, follows the Uniform Trade Secrets Act."); see also 12/4/2006 Report at 43;

---

Grand Jury subpoena) directed at a conduct of an established corporate wrongdoer."  Berry Objections at 6.  Berry continues, "This part of the Report must, as a matter of public policy if not constitutional imperative, be rejected."  As the court is unable to find any such discussion in the December 4 Report, the court declines to entertain this argument.

cf. Weber v. Indem. Ins. Co. of N. Am., 345 F. Supp. 2d 1139 (D. Haw. 2004) (noting that sufficient case law from Hawaii and other jurisdictions is helpful "to predict Hawaii law with confidence").

Like Hawaii, "California has adopted without significant change the Uniform Trade Secrets Act." DVD Copy Control Ass'n, Inc. v. Bunner, 75 P.3d 1, 9 (Cal. 2003). In Gemini Aluminum Corp. v. California Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1262, (Cal. App. 2002), the California Court of Appeals noted that, under California's Uniform Trade Secrets Act ("CUTSA"), a defendant may recover attorneys' fees "[i]f a claim of misappropriation is made in bad faith." Because the CUTSA "does not define 'bad faith,'" the court held that "'bad faith' for purposes of [the CUTSA] requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim." Id. "An objectively specious claim is one that is completely unsupported by the evidence or one that lacks proof as to one of its essential elements." JLM Formation, Inc. v. Form+Pac, No. C 04-1774 CW, 2004 WL 1858132, at *2 (N.D. Cal. Aug. 19, 2004). "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Id. "A court may determine a plaintiff's subjective misconduct by examining evidence of the

plaintiff's knowledge during certain points in the litigation and may also infer it from the speciousness of a plaintiff's trade secret claim."  Id.

Michigan has also adopted the UTSA.  Compuware Corp. v. Int'l Bus. Machs. Corp., No. 02-CV-70906, 2003 WL 23212863, at *8 (E.D. Mich. Dec. 19, 2003) ("Michigan has adopted the Uniform Trade Secrets Act.").  In Degussa Admixtures, Inc. v. Burnett, No. 1:05-CV-705, 2007 WL 274219, at *7 (W.D. Mich. Jan. 30, 2007), the district court for the Western District of Michigan noted that Michigan's Uniform Trade Secrets Act, which provides for the award of attorneys' fees "[i]f a claim of misappropriation is made in bad faith," does not contain a definition of "bad faith."  The court therefore turned to California's interpretation of "bad faith" in the CTUSA.   The court stated, "interpreting the [CTUSA], courts have held that 'bad faith' exists when the court finds '(1) objective speciousness of the plaintiff's claim and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets.'"  Id.  The court ultimately awarded attorneys' fees to the defendant after finding that "Plaintiff's claims were objectively unsupported, both factually and under Michigan law, at the time of filing" and that "[Plaintiff's] invocation of the MUTSA to prevent legitimate competition constituted an improper purpose."  Id. at *8.

33

Maryland has also adopted the UTSA.  Optic Graphics,
Inc. v. Agee, 591 A.2d 578, 585 (Md. App. 1991) ("On July 1,
1989, Maryland adopted the Uniform Trade Secrets Act.").  "Under
the Maryland Uniform Trade Secrets Act, a court may award
reasonable attorney's fees to a prevailing party if the claim of
misappropriation of trade secrets was brought in 'bad faith.'"
Contract Materials Processing, Inc. v. Kataleuna GMBH Catalysts,
222 F. Supp. 2d 733, 744 (D. Md. 2002).  In determining whether
the defendants were entitled to attorneys' fees, the district
court for the District of Maryland stated, "In the same vein as
the Maryland test for 'bad faith' under MUTSA, courts considering
the attorneys' fees provisions under the [CTUSA] have reasoned
persuasively that 'bad faith' exists when the court finds '(1)
objective speciousness of the plaintiff's claim and
(2) plaintiff's subjective misconduct in bringing or maintaining
a claim for misappropriation of trade secrets." Id. at 744.  The
court added that the "'knowing persistence in an invalid claim'
demonstrates subjective bad faith" and that "a party's 'tactics
during the course of litigation' can support a finding as to its
'underlying motives' for purposes of determining whether the
party pursued the litigation in bad faith."  Id. at 745 n.4.
After concluding that the plaintiff "utterly failed to identify
any evidence in some respects, and has failed to identify
admissible evidence in other respects, in support of the elements

34

of its ostensible misappropriation of trade secrets claims" and
that the plaintiff, "despite several warnings to [it] about the
evident lack of merit in its misappropriation claims . . . has
continued to pursue these baseless claims," the court awarded the
defendants attorneys' fees.  <u>Id.</u> at 745 (emphasis in original).

In sum, like Hawaii's trade secrets law, California,
Michigan, and Maryland authorize awards of attorneys' fees to
defendants when a plaintiff brings a misappropriation of trade
secret claim in bad faith, but do not define "bad faith."  Case
law from those states allows fee awards only when the plaintiff's
claim is objectively specious and the plaintiff engages in
subjective misconduct in bringing or maintaining the claim.  <u>See</u>,
<u>e.g.</u>, <u>JLM Formation, Inc.</u>, 2004 WL 1858132, at *2.  Because
Hawaii, like California, Michigan, and Maryland, has adopted the
UTSA, Hawaii courts are likely to apply the same test in
determining whether defendants may be awarded fees under Hawaii
trade secret law:  objective speciousness and subjective
misconduct.

In this court's order of June 27, 2005, the court
stated:  "To succeed on a claim for misappropriation of trade
secrets, a plaintiff must establish (1) the existence of a trade
secret; and (2) the misappropriation of the trade secret."
6/27/2005 Order at 31 (citing Haw. Rev. Stat. § 482B).  In that

35

order, the court granted summary judgment in favor of Defendants, stating:

> Berry does not show that any files that were on the computers qualify as his trade secrets. Berry has not presented any evidence that those files had any independent economic value resulting from not being generally known. In fact, Berry initially gave FCS to Fleming for free.

6/27/2005 Order at 32. Although Berry points to evidence that he says supported his claim, the order makes clear that this court viewed Berry's claim as "completely unsupported by the evidence" and "lack[ing] proof as to one of its essential elements." See JLM Formation, Inc., 2004 WL 1858132, at *2. Berry's claim in Count 4 for misappropriation of trade secrets was therefore objectively specious. See id.; see also Gemini Aluminum Corp., 95 Cal. App. 4th at 1261-62.

The court may and does infer subjective misconduct from the speciousness of Berry's trade secret claim. See JLM Formation, Inc., 2004 WL 1858132, at *2. The court recognizes that, in alleging a misappropriation of trade secrets, Berry relies on Guidance's, C&S's, and Fleming's alleged misrepresentation to the bankruptcy court "that Mr. Berry's software was 'not on the list' while knowing that they were intending to transfer Mr. Berry's trade secrets." SAVC ¶ 105. However, in the June 27, 2005, order, the court found that Berry presented "only argument, not evidence," in response to

36

Defendants' explanation that "any misstatement to the Bankruptcy
Court was inadvertent and caused by Dillon's use of a different
name for the files." 6/27/2005 Order at 33. Moreover, because
"the direct infringement in this case occurred . . . when Fleming
and Employees inadvertently used an altered version of FCS," and
because Berry failed "to prove that any Defendant's action was
'intentional,'" the record lacks any evidence that Fleming or any
other Defendant was "intending to transfer Mr. Berry's trade
secrets." 6/27/2005 Order at 28-29; SAVC ¶ 105. The court
agrees with the magistrate judge that Berry's complete lack of
evidence on this claim "indicates that he knew or should have
known that his claim had no merit." 12/4/2006 Report at 45; see
also JLM Formation, Inc., 2004 WL 1858132, at *2. The court
adopts the magistrate judge's finding that Berry "made the
misappropriation of trade secrets claim against Fleming in bad
faith." 12/4/2006 Report at 45. Therefore, Fleming is entitled
to an award of fees under Haw. Rev. Stat. § 482B-5(1). See
12/4/2006 Report at 45. However, as discussed in the next
section, the court modifies the magistrate judge's recommendation
regarding the amount of fees to award Fleming.

> 5. The Court Reduces the Amount of Fees
> Awarded to Fleming.

Fleming objects to the magistrate judge's finding that
the number of hours expended in defending Fleming against the
claim of misappropriation of trade secrets was excessive, arguing

that the finding "is both unnecessary and unfair."  Fleming
Objections at 7.  Fleming contends that the magistrate judge did
not "take into account the work the counsel actually performed
relative to the trade secret claim--the claim for which [Fleming]
received its fee."  Fleming Objections at 7.  At the hearing on
the matter, Fleming explained that it does not seek to modify the
recommended award of fees, but only asks the court to vacate the
finding that it spent "excessive" hours defending Fleming.  This
position renders unnecessary the finding that Fleming's hours
were excessive.  However, the court further reduces the
recommended award of fees to Fleming.

The magistrate judge noted the proper standard for
calculating attorneys' fees under Hawaii law:

> Hawaii courts calculate reasonable
> attorney's fees based on a method that is
> virtually identical to the traditional
> "lodestar" calculation set forth in Hensley
> v. Eckerhart, 461 U.S. 424, 433 (1983).  See
> DFS Group L.P. v. Paiea Props., 110 Hawaii
> 217, 222, 131 P.3d 500, 505 (2006).  The
> court must determine a reasonable fee by
> multiplying the number of hours reasonably
> expended by a reasonable hourly rate.  See
> id. at 222-23, 131 P.3d at 505-06.  In
> addition, Hawaii courts may consider the
> following factors:

> > (1) the time and labor required,
> > the novelty and difficulty of the
> > questions involved and the skill
> > requisite properly to conduct the
> > cause; (2) whether the acceptance
> > of employment in the particular
> > case will preclude the lawyer's
> > appearance for others in cases

> likely to arise out of the
> transaction, and in which there is
> a reasonable expectation that
> otherwise he would be employed, or
> will involve the loss of other
> employment while employed in the
> particular case or antagonisms with
> other clients; (3) the customary
> charges of the Bar for similar
> services; (4) the amount involved
> in the controversy and the benefits
> resulting to the client from the
> services; (5) the contingency or
> the certainty of the compensation;
> and (6) the character of the
> employment, whether casual or for
> an established and constant client.
>
> Chun v. Bd. of Trs. of Employees' Ret. Sys.
> of Hawaii, 106 Hawaii 416, 435, 106 P.3d 339,
> 358 (2005) (citations omitted).  These
> factors, however, are merely guides; courts
> need not consider them in every case.  See
> id.  In certain types of cases, some of these
> factors may justify applying a multiplier to
> the "lodestar" amount.  See Chun v. Bd. of
> Trs. of Employees' Ret. Sys. of Hawaii, 92
> Hawaii 432, 442, 992 P.2d 127, 137 (2000).

12/4/2006 Report at 46-47.

Because Fleming did not itemize its attorneys' fees by claim,[8] the magistrate judge was unable to determine the exact number of hours Fleming billed in defending against Count 4. Rather, because Fleming was granted summary judgment on Count 4 on June 27, 2005, the magistrate judge looked at the total number

---

[8] Fleming did, however, itemize its hours "by the categories delineated in the District of Hawaii Local Rules (Rule 54.3(d)(1))," "by counsel," and "by date."  Declaration of Damian D. Capozzola in Support of Defendant PCT's Motion for Attorneys' Fees and Costs (3/23/2006) ¶ 41-43.

of hours billed up to that date by mainland counsel at the law
firm of Kirkland & Ellis.  See 12/4/2006 Report at 47-50.  After
making various reductions from mainland counsel's hourly rates
and after recommending that only certain of Fleming's mainland
counsel and paralegals recover their fees, the magistrate judge
deducted approximately fifty percent of the fees attributable to
those mainland attorneys and paralegals as excessive.  12/4/2006
Report at 53.  The magistrate judge also deducted approximately
ten percent of the hours billed by mainland attorneys and
paralegals who "block billed."  12/4/2006 Report at 53.  The
magistrate judge ultimately recommended that Fleming be awarded
fifteen percent of the remaining amount to reflect fees incurred
by mainland counsel to defend against Count 4.

        Regarding Kobayashi, Sugita & Goda, Fleming's local
counsel, the magistrate judge similarly looked to the number of
hours billed up to June 27, 2005.  12/4/2006 Report at 49-50.
The court disallowed time billed by persons who were
unidentifiable and for "work that is clerical."  12/4/2006 Report
at 50.  The magistrate judge also deducted "approximately fifty
percent from Mr. Smith's time and approximately twenty-five
percent from Mr. Yee, Ms. Lopez, and Ms. Teranishi" as excessive.
12/4/2006 Report at 54-55.  The magistrate judge recommended that
Fleming be awarded fifteen percent of the remaining amount to

reflect fees incurred by local counsel that was attributable to
Count 4.

The court adopts the magistrate judge's uncontested
findings and recommendations that this court:  (1) deny time
billed by mainland and local counsel for "work that is clerical
in nature," 12/4/2006 Report at 50, 52-53; (2) deny time billed
by unidentifiable persons, 12/4/2006 Report at 50, 52; (3) reduce
the hourly rate of mainland counsel and support staff to be
consistent with prevailing rates in Hawaii, 12/4/2006 Report at
51; and (4) regarding mainland counsel, "only allow the time
incurred by the primary attorneys in this matter, Mr. Liebeler,
Mr. Capozzola, Ms. Dulac, and Ms. Samad, and the two paralegals,
Ms. Andrews and Mr. San Diego," 12/4/2006 Report at 53.  However,
the court vacates the magistrate judge's finding that Fleming
billed an excessive amount of hours in defending this case, as
the finding has become unnecessary in light of Fleming's
statement to the district judge that Fleming has no objection to
the fifty and twenty-five percent deductions recommended by the
magistrate judge, which this court adopts.

The court agrees with the magistrate judge that
Fleming's voluminous "summaries" of its hours spent working on
this case make it impossible to determine with certainty the
number of hours billed in defending against Count 4.  The
magistrate judge, after wrestling with this uncertainty,

recommended a deduction of approximately ten percent from mainland counsel's hours for block billing. This court increases that deduction to approximately twenty-five percent to yield what this court, having made the substantive rulings in this case, draws as a reasonable total for attorneys' fees.

With the deduction for block billing increased to twenty-five percent, the following hours were deducted: Allison M. Andrews – 51.0 hours; Damian D. Capozzola – 255.0 hours; Eric C. Liebeler - 130.0 hours; Melissa M. Dulac - 113.0 hours; and R. Olivia Samad – 184.0 hours. As recommended by the magistrate judge, the court does not apply this deduction for block billing to "Mr. San Diego, who generally broke down his daily time totals by separate tasks." 12/4/2006 Report at 53. The court does, however, modify the recommendation that Neal F. San Diego's paralegal fee be reduced to $80. 12/4/2006 Report at 49, 52. Rather, the court reduces his fee to $70, as he appears to be "an entry-level paralegal." See 12/4/2006 Report at 49.

Following the format of the chart provided on pages 55 and 56 of the December 4 Report, the court modifies the amounts (before allocating fees incurred in connection with Count 4) as follows:

| NAME | RATE | HOURS | SUBTOTAL |
|------|------|-------|----------|
| Allison M. Andrews | $90 | 53.9 | $4,851.00 |
| Damian D. Capozzola | $200 | 264.05 | $52,810.00 |

42

| | | | |
|---|---|---|---|
| Eric C. Liebeler | $220 | 149.9 | $32,978.00 |
| Melissa M. Dulac | $150 | 115.05 | $17,257.50 |
| Neal F. San Diego | $70 | 489.45 | $34,261.50 |
| R. Olivia Samad | $130 | 203.1 | <u>$26,403.00</u> |

**Kirkland Firm Grand Total    $168,561.00**[9]

| NAME | RATE | HOURS | SUBTOTAL |
|---|---|---|---|
| Lex R. Smith | $200 | 590.61 | $118,122.00 |
| Thomas H. Yee | $150 | 215.60 | $ 32,340.00 |
| Anne E. Lopez | $120 | 212.52 | $ 25,502.40 |
| Ann C. Teranishi | $120 | 82.85 | $  9,942.00 |
| Jesse W. Schiel | $120 | 2.65 | $    318.00 |
| J. Garrett Karr | $ 70 | 5.00 | <u>$     35.00</u> |
| | | Total | $186,259.40 |
| Hawaii General Excise Tax (4.166%) | | | <u>$  7,759.57</u> |

**Kobayashi Firm Grand Total    $194,018.97**

The court adjusts the magistrate judge's finding that "fifteen percent is a reasonable allocation of fees incurred in connection with Count IV." 12/4/2006 Report at 56. The court is concerned about the number of people who staffed Fleming's case, when only a single attorney was on the other side. Although Berry's damage claim was astronomical, the result of the earlier copyright trial gave Fleming a basis for anticipating that the

---

[9] Tax was not applied to mainland counsel's fees, and no party has objected to that.

43

true value of Berry's claims was considerably less than claimed.
The court recognizes that some of the staffing may have been an
attempt to save money by having more junior attorneys bill at
lower hourly rates than senior attorneys, but the number of
attorneys spending significant hours on this case seems to the
court to have probably led to some loss of efficiency.  The court
therefore replaces the magistrate judge's fifteen percent
allocation with a twelve percent allocation.  This reduces
Fleming's award to $20,227.32 in attorneys' fees incurred by
mainland counsel and $23,282.28 in attorneys' fees incurred by
local counsel, for a total of $43,509.60 in attorneys' fees
incurred by Fleming in defending against Count 4.  The total
reduction from the $66,684.38 that the magistrate judge
recommended is $23,174.78.  In setting this lower amount as fees
payable by Berry to Fleming in connection with Count 4, this
judge is simply making a different judgment call from the
magistrate judge, given this judge's different exposure to the
attorneys.  Making this judgment call was made significantly
easier for this judge by the magistrate judge's thorough and
clear analysis of the facts and issues presented.

        Having not challenged the method of calculating fees
awardable to Fleming in connection with Count 4, all parties,
including Berry, have waived objections to the magistrate judge's
calculations, which were less favorable to Berry than this

court's.  Berry's objection was to the award of any fee at all to
Fleming.

            6.    The Magistrate Judge Properly Relied on
                  _Buckhannon_.

        Fleming argues that the magistrate judge "applie[d] the
wrong standard to assess whether [Fleming] is the prevailing
party in this litigation."  Fleming Objections at 2.  Fleming
contends that the magistrate judge's reliance on Buckhannon Board
and Care Home, Inc. v. West Virginia Department of Health and
Human Resources, 532 U.S. 598 (2001) ("Buckhannon"), is misplaced
because that case "was decided under the Fair Housing Amendments
Act of 1998 [and] is not relevant to federal copyright cases."
Fleming Objections at 2.  Instead of relying on Buckhannon,
Fleming relies on the standard set forth in Florentine Art
Studio, Inc. v. Vedet K. Corp., 891 F. Supp. 532 (C.D. Cal.
1995).  Fleming Objections at 2-5 (also citing Warner Brothers
Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120 (2d Cir. 1989); Repp
v. Webber, 892 F. Supp. 552 (S.D.N.Y. 1995)).  The court
disagrees with Fleming and adopts the magistrate judge's
application of Buckhannon.

        The magistrate judge relied on Buckhannon, 532 U.S. at
603-04, in determining whether Berry or Fleming prevailed on the
copyright claims.  The magistrate judge noted that, although
"Buckhannon dealt with a request for attorneys' fees under the
Fair Housing Amendments Act of 1988 [("FHAA")] and the Americans

45

with Disabilities Act of 1990 [("ADA")]," the same principles apply to requests for fees under the Copyright Act. 12/4/2006 Report at 22-26.

In Buckhannon, 532 U.S. at 600, the plaintiff, an operator of care homes that provided assisted living to its residents, brought suit against the state of West Virginia regarding the state law requirement that "all residents of . . . care homes be capable of 'self-preservation,' or capable of moving themselves 'from situations involving imminent danger, such as fire.'" Because the plaintiff had failed an inspection by the state fire marshal, who found that "some of the residents were incapable of 'self-preservation,'" the plaintiff brought suit, seeking "declaratory and injunctive relief that the 'self-preservation' requirement violated the [FHAA]." Subsequent to filing the suit, "the West Virginia Legislature enacted two bills eliminating the 'self-preservation' requirement," and the district court therefore dismissed the case as moot. Id. at 601.

The plaintiffs sought fees under the FHAA and ADA, both of which authorize an award to the "prevailing party." Id. The district court denied the request, and the Fourth Circuit affirmed. Id. at 602. On certiorari, the Supreme Court was faced with determining whether the term "prevailing parties" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless

46

achieved the desired result because the lawsuit brought about a

voluntary change in the defendant's conduct." Id. at 600.

Noting that Congress "has authorized the award of attorney's fees

to the 'prevailing party' in numerous statutes in addition to

those at issue here," the Court stated:

> In designating those parties eligible for an
> award of litigation costs, Congress employed
> the term "prevailing party," a legal term of
> art.  Black's Law Dictionary 1145 (7th ed.
> 1999) defines "prevailing party" as "a party
> in whose favor a judgment is rendered,
> regardless of the amount of damages awarded
> <in certain cases, the court will award
> attorney's fees to the prevailing party>.
> –Also termed successful party."  This view
> that a "prevailing party" is one who has been
> awarded some relief by the court can be
> distilled from our prior cases."

Id. at 603 (emphasis in original).  The Court held that, in order

to be a "prevailing party," a plaintiff must "receive at least

some relief on the merits of his claim" and that "even an award

of nominal damages suffices under this test."  Id. at 603-04.

Because the plaintiff did not "secure a judgment on the merits or

a court-ordered consent decree," the Court affirmed the denial of

its request for attorneys' fees.

      Although the Buckhannon court did not concern a request

for fees under the Copyright Act, other jurisdictions have

applied its standards to such requests.  See, e.g., HI-Tech, Inc.

v. Rising, 2006 WL 1966663, No. 3:05 CV 265, at *4 (W.D.N.C. July

11, 2006) (applying Buckhannon to a request for fees under

section 505 of the Copyright Act); TRF Music Inc. v. Alan ETT
Music Group, LLC, 2006 WL 1376931, No. 06 Civ. 0349 (PKC), at
*1-3 (S.D.N.Y. May 18, 2006) ("The requirements for 'prevailing
party' status set forth in Buckhannon have been applied to the
fee-shifting provision under the Copyright Act."); Philadelphia
Stock Exch. v. Int'l Sec. Exch., 2005 WL 2923519, No. 05 Civ.
5390 (NRB), at *1-2 (S.D.N.Y. Nov. 2, 2005) (noting that
Buckhannon's "definition of 'prevailing party' applies to that
term as it is used in the Copyright Act"); Bruce v. Weekly World
News, Inc., 203 F.R.D. 51, 55 (D. Mass. 2001) ("While the
Copyright Act does not offer a crystal-clear definition of what
is meant by the term 'prevailing party,' in [Buckhannon, 532 U.S.
598], the Supreme Court, labeling the phrase 'a legal term of
art,' defined a 'prevailing party' as one who obtains an
enforceable judgment on the merits or a court-ordered consent
decree."); see also Ninox Tel. Ltd. v. Fox Entm't Group, 2006 WL
1643300, No. 04 Civ. 7891 (DLC), at *1-2 (S.D.N.Y. June 13, 2006)
(applying Buckhannon to a request for fees under the Copyright
Act); Gardendance, Inc. v. Woodstock Copperworks, Ltd., 2006 WL
305220, No. 1:04 CV 00010, at *1-2 (M.D.N.C. Feb. 8, 2006);
Christopher Phelps & Assocs. v. Galloway, 2005 WL 4169714, No.
3:03 CV 429-MU, at *1 (W.D.N.C. Dec. 5, 2005);  NXIVM Corp. v.
Ross Inst., 2005 WL 1843275, No. 1:03 CV 0976 GLSDRH, 1:03 CV
1051 GLSDRH, at *1-2 (N.D.N.Y. Aug. 2, 2005); Venegas-Hernandez

v. Peer, 2005 WL 3740474, No. Civ. 01-1215 (JAF), Civ. 01-2186
(JAF), at *1 (D. Puerto Rico Feb. 23, 2005); Bridgeport Music,
Inc. v. London Music, U.K., 345 F. Supp. 2d 836, 838 (M.D. Tenn.
2004); Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365
(S.D.N.Y. 2003).

        Fleming urges the court to disregard the foregoing
cases applying Buckhannon's definition and discussion of
"prevailing party" to requests for fees under section 505 of the
Copyright Act.  Fleming asks the court to instead apply the tests
in Warner Brothers, Inc., 877 F.2d at 1126, Repp, 892 F. Supp. at
560, and Florentine, 891 F. Supp. at 541.  Although those cases
address fee requests under section 505 of the Copyright Act and
do not apply Buckhannon, they were decided before the Supreme
Court issued its decision in Buckhannon.  The court therefore
rejects Fleming's assertion that the magistrate judge erred in
applying Buckhannon to the present motions.  The court also
affirms the magistrate judge's finding that Berry prevailed
against Fleming on the copyright claims, as Berry "obtained
judgment against [Fleming] as to both of his claims under the
Copyright Act."[10]  See 12/4/2006 Report at 22.

————————————————

        [10] Berry alternatively asserts that, even if this court
concludes that Fleming is the prevailing party on the copyright
claims, Fleming should not be awarded attorneys' fees incurred in
defending against those claims, citing to Berkla v. Corel Corp.,
302 F.3d 909, 923 (9th Cir. 2002).  Berry Response to Fleming
Objections at 10-11.  Because the court adopts the magistrate
judge's findings that Berry prevailed against Fleming on the

7.    <u>Berry's Attorneys' Fees Are Denied.</u>

Berry next objects to the magistrate judge's recommendation to deny him attorneys' fees incurred in maintaining his copyright and related claims despite her finding that Berry was the prevailing party against Fleming, Mark Dillon, and Teresa Noa.  Berry Objections at 3-6.  Specifically, Berry argues that:  (1) the magistrate judge erred in finding that "Berry has been responsible for numerous lawsuits and administrative complaints against Fleming," Berry Objections at 7; (2) the magistrate judge's statement that Berry "urged Fleming to fire Dillon, Noa, and Christensen" lacks support in the record; (3) the magistrate judge's "conclusion that the deterrence factor weighs against the successful copyright owner is just wrong," Berry Objections at 3-4; and (4) "whether Berry won anything in the way of monetary damages should have no bearing on his right to fees."  Berry Objections at 6.  The court adopts the magistrate judge's recommendation to deny Berry attorneys' fees incurred in maintaining his copyright and related claims.

As discussed above, in exercising its discretion to award attorneys' fees under the Copyright Act, the court may consider the following factors:  frivolousness, motivation,

---

copyright claims and that Fleming is not entitled to such fees,
the court does not address this issue.

objective unreasonableness, the degree of the moving party's
success, and whether the chilling effect of attorneys' fees may
impose an inequitable burden on an impecunious plaintiff.  See
Fogerty, 510 U.S. at 534 n.19; Wall Data Inc., 447 F.3d at 787;
Ets-Hokin, 323 F.3d at 766.

          After concluding that Berry is the prevailing party
against Fleming, Dillon, and Noa, the magistrate judge found that
consideration of the foregoing factors "weigh[s] against an award
of [Berry's] attorney's fees."  12/4/2006 Report at 35.
Specifically, the magistrate judge found, among other things,
that:  (1) Berry's "claimed damages, which were upwards of $200
million, were frivolous and objectively unreasonable," 12/4/2006
Report at 34; (2) "this action was likely motivated, at least in
part, by improper means" because "the instant case is part of a
long line of legal and administrative actions that [Berry] has
instituted against Fleming," 12/4/2006 Report at 34-45; (3) "it
is unnecessary to deter [inadvertent] conduct with an award of
attorney's fees," 12/4/2006 Report at 35; and (4) "the interests
of compensation do not require an award."  12/4/2006 Report
at 35.

          Berry first objects to the magistrate judge's finding
that "this action was likely motivated, at least in part, by
improper purposes" because "the instant case is a part of a long
line of legal and administrative actions that [Berry] has

51

instituted against Fleming." Berry argues that he "has brought
two law suits against Fleming and won both. Fleming has brought
two against Mr. Berry and both were dismissed." Berry Objections
at 7. Although numerous lawsuits have involved Berry, API,
and/or Fleming, Berry partially prevailed in the two lawsuits he
brought against Fleming. The court therefore rejects the
magistrate judge's finding that Berry's long line of actions
against Fleming demonstrated that this action was motivated by
improper purposes.

Berry next objects to the magistrate judge's statement
that Berry "urged Fleming to fire Dillon, Noa, and Christensen."
Berry Objections at 12. Berry says he "has combed the record and
even requested that opposing counsel direct him to the record for
support for this fact." Berry Objections at 12. Because the
court is unable to find any evidence in the voluminous record
showing that Berry urged Fleming to fire any of its employees,
the court rejects that statement.

Berry also objects to the magistrate judge's finding
that, "[i]nsofar as the district court found that any
infringement that Dillon and Noa committed was not wilful, this
Court finds that it is unnecessary to deter such conduct with an
award of attorney's fees." 12/4/2006 Report at 35. This court
did conclude in its summary judgment orders that any direct
infringement was inadvertent and that Berry "fail[ed] to prove

that any Defendant's action was 'intentional.'" 1/27/2005 Order at 34 ("Any infringement was therefore inadvertent, and not willful."); 6/27/2005 Order at 26, 28.  Because the infringement was not intentional, willful, or knowing, the court agrees with the magistrate judge that "it is unnecessary to deter such conduct." 12/4/2006 Report at 35.  The court overrules Berry's objection on this point.

Finally, Berry challenges the magistrate judge's finding that, "in light of the fact that [Berry] only obtained nominal damages against Dillon and Noa and a relatively small amount of damages from [Fleming], this Court finds that the interests of compensation do not require an award of [Berry's] attorney's fees." 12/4/2006 Report at 35.  Berry argues, "[W]hether Mr. Berry won anything in the way of monetary damages should have no bearing on his right to fees."  Berry Objections at 6.  He cites to Wall Data Inc., 447 F.3d at 787, for the proposition that a "'plaintiff will ordinarily be regarded as the prevailing party if he succeeds at trial in establishing the defendant's liability, even if the damages awarded are nominal or nothing.'"  Berry Objections at 5 (quoting Wall Data Inc., 447 F.3d at 787).  Nothing the magistrate judge found is inconsistent with that statement from Wall Data Inc.  The magistrate judge found, and this court agrees, that Berry was the prevailing party against Fleming, Dillon, and Noa.

53

The court notes that the Wall Data Inc. court stated that courts may consider "the degree of success obtained" by the party moving for attorneys' fees.  Wall Data Inc., 447 F.3d at 787.  Accord Ets-Hokin, 323 F.3d at 766; 12/4/2006 Report at 31. The magistrate judge considered Berry's "degree of success" in finding that the size of Berry's award against Dillon, Noa, and Fleming was so small as to "not require an award of [his] attorney's fees."  Specifically, the magistrate judge said that, compared to Berry's "claimed damages, which were upwards of $200 million," his jury award of $57,534.00 was small and "the interests of compensation do not require an award of [his] attorney's fees."  12/4/2006 Report at 34-35.  This court agrees and adopts those statements.

### 8.   Costs Relating to Berry's Trial Experts.

Berry argues that the costs relating to his trial experts "should be allowed as filed."  Berry Objections at 4 ("the costs that were incurred with regard to this [sic] experts that were disallowed by the Report . . . can be allowed"), 6. The court adopts the magistrate judge's findings with respect to Berry's trial expert witnesses.

Berry requests $42,600.00 for the fees of his trial experts, Philip Johnson and Thomas Ueno, but does not object to the magistrate judge's conclusion that "expert witnesses are only entitled to the statutory fee of $40.00 a day for each day of

54

attendance at court proceedings or their depositions." 12/4/2006
Report at 80-81 (citing <u>Feher v. Dep't of Labor & Indus.
Relations</u>, 561 F. Supp. 757, 768 (D. Haw. 1983)); Ex. 2F
(attached to Berry Motion) at 1.  Berry's supporting
documentation indicates that Johnson was deposed on one day, May
19, 2005.  Thus, the court adopts the magistrate judge's finding
that a "$40.00 fee for [Johnson] is a taxable expense." <u>See</u> Ex.
2F (attached to Berry Motion) at 5.  Regarding Ueno's fees,
Berry's supporting documentation does not indicate whether or
when Ueno was deposed and, although Ueno testified at trial,
Berry's request does not include fees for Ueno's trial
attendance.  <u>See also</u> 12/4/2006 Report at 81.  The court
therefore adopts the magistrate judge's finding that "none of
[Ueno's] fees are taxable."

> C.  The Court Adopts the Magistrate Judge's
> Recommendation to Deny Costs, Noting That the
> Parties Have Opted Not to Submit Supplemental
> Information.

In both Reports, the magistrate judge recommended that
this court deny certain costs incurred by the parties for failure
to provide sufficient information to the court.  <u>See</u> 10/25/2006
Report at 2, 42, 45-46; 12/4/2006 Report at 2, 58-61, 70, 77,
83-84.  No party challenges the denial of costs.  Berry objects
only to the magistrate judge's statement that the denial should
be without prejudice to a future cost award based on supplemental
submissions.  Berry argues that this statement invites

"additional claims of costs and fees" by Defendants.  Berry
Objections to 10/25/2006 Report at 15; Berry Objections to
12/4/2006 Report at 3.  At the hearing on this matter, all
Defendants informed the court through their attorneys that they
will not supplement the record with future filings relating to
their requests for costs.  Berry's objection is therefore moot.

        Berry himself submitted supplemental information
regarding only his copying costs.  With respect to such costs, 28
U.S.C. § 1920(4) "allows for the taxation of copies necessarily
obtained for use in the case." 12/4/2006 Report at 76 (citing 28
U.S.C. § 1920(4)).  Local Rule 54.2(f)(4) also allows for
"taxation of copies at $0.15 per page or the actual cost charged
by commercial copiers, provided such charges are reasonable."
Additionally, "The cost of copies obtained for the use and/or
convenience of the party seeking recovery and its counsel is not
allowable." LR 54.2(f)(4).  To recover copy costs, a party must
submit "an affidavit describing the documents copied, the number
of pages copied, the cost per page, and the use of or intended
purpose for the items copied."  LR 54.2(f)(4).

        In deciding whether to award Berry any copy costs, the
magistrate judge noted that Berry "failed to provide an affidavit
describing what documents were copied and the intended purpose of
the copies." 12/4/2006 Report at 76-77.  She acknowledged that
Berry "provided brief descriptions of some of the documents

56

copied by external sources, such as 'Motions for SJ', 'Ueno Depo.', and 'Exhibits,'" but decided that, "[e]ven with this information, the Court cannot determine whether the copies were necessary for use in the case because [Berry] failed to provide information about the intended purpose of the copies." 12/4/2006 Report at 77 n.16. The magistrate judge therefore recommended denial of Berry's "request for in house and external copying costs without prejudice, subject to a resubmission which complies with the Local Rules." 12/4/2006 Report at 77.

Berry now submits a declaration and two exhibits in support of his in-house copy costs requests. In his declaration, Berry's counsel says that the attached Exhibit 1 "is a true and correct summary [of] the voluminous record of the in-house copy costs that were advanced in this case." Declaration of Timothy J. Hogan (12/14/2006) ¶ 1. Berry's counsel explains that the in-house copy costs "were all based on costs for the filing of motions and other materials that were filed and necessary in the case" and "do not include the costs for incidental working copies of documents for attorneys or otherwise that are not billed to the client in this case." Id. Berry's counsel says, "These are costs that were necessary to be able to bring motions and to respond to motions and other matters before the Court and were necessary in this case." Berry's counsel also alleges that the

57

attached Exhibit 2 provides detailed information about the in-house copy costs.

In light of Berry's supplemental information, and in the absence of any objection by Defendants, the court finds that Berry's requested in-house copying costs were necessary.  The charge of $0.15 per page is standard.  <u>See</u> LR 54.2(f)(4); Ex. 1 (attached to Berry Objections) (noting that Berry's "In House Copy costs Of 67,246 pages at .15 per page" totals $10,086.90). The court therefore awards Berry $10,086.90 for his in-house copying costs against Fleming, Dillon, and Noa.

IV.     <u>CONCLUSION.</u>

In light of the foregoing, the court adopts, for the most part, the magistrate judge's Reports, subject to the few exceptions and modifications discussed herein.

                    IT IS SO ORDERED.

                    DATED:  Honolulu, Hawaii, March 2, 2007.


                              _____
                              Susan Oki Mollway
                              United States District Judge


**Berry v. Hawaiian Express Service, Inc., et al.**, Civ. No. 03-00385 SOM/LEK; ORDER ADOPTING AND MODIFYING THE OCTOBER 25, 2006, AND DECEMBER 4, 2006, REPORTS OF SPECIAL MASTER ON THE PARTIES' MOTIONS FOR ATTORNEYS' FEES AND COSTS.