IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE,<br>INC., et al.,<br><br>　　　　Defendants. | ) CIVIL NO. CV03-00385 SOM-LEK<br>) (Copyright)<br>)<br>) MEMORANDUM IN SUPPORT OF<br>) MOTION<br>) |

## MEMORANDUM IN SUPPORT OF MOTION

By Order entered March 2, 2007, the Honorable Susan O. Mollway awarded attorneys' fees in favor of C&S Wholesale Grocers, Inc. and against Plaintiff Wayne Berry in the amount of $84,758.98. The March 2 order is a final and enforceable judgment.[1]

On February 1, 2000, several years before entry of C&S's judgment, the United States (through the Internal Revenue Service) issued and recorded a tax lien against Mr. Berry a true and correct copy of which is attached hereto as Exhibit "A."

---

[1] See Order Declining Defendants' Request For Additional Entry Of Judgment

The tax lien states:

> As provided by section 6321, 6322 and 6323 of the Internal Revenue Code, we are giving notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Exhibit "A."[2]

The tax lien effected a "transfer" of Mr. Berry's copyrights as defined under the Copyright Act. "Transfer of copyright ownership" is defined as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright...." 17 U.S.C. § 101. Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163 (9th Cir. 1997).

Because the transfer effected by the IRS lien was first in time and because the transfer was perfected immediately, without any need for filing with the Copyright Office (26 U.S.C. §§ 6322, 6323(f)(5)) the IRS lien has priority over the rights of C&S and the other creditors in this case. Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163 (9th Cir. 1997). Under Hawaii law, the execution sale of Berry's registered and

---

entered herein on May 21, 2007.

[2] It is unknown whether Mr. Berry has additional liability to the Internal Revenue Service in light of the his testimony in August of 2007 that he did not file tax returns until 2007 for the years 2002 through 2006. (Judgment Debtor Exam, page 26).

unregistered copyrights, causes of and all rights existing in any pending lawsuits shall transfer all of Berry's interest in these items, subject to any prior liens, such as the lien, or liens, in favor of the Internal Revenue Service. Accordingly, Mr. Berry's copyrights should be sold subject to the IRS's lien. Haw. Rev. Stat. §651-49.

The levy and execution should be carried out as follows:

1. Pursuant to Haw. Rev. Stat. Section 651-42, the Deputy Sheriff shall levy upon Mr. Berry's registered copyrights by recording in the United States Copyright Office (pursuant to the procedures of the copyright office) a certified copy of the Court's Writ of Execution.

2. The Deputy Sheriff shall levy upon Mr. Berry's unregistered copyrights and on all of his causes of action for infringement of copyrights and all other claims Mr. Berry may have in any pending lawsuits by filing in the Bureau of Conveyances of the State of Hawaii and in the appropriate governmental office in New York, the Writ of Execution identifying the property levied upon.

3. After the levy has been completed, the Deputy Sheriff shall advertise the sale for a period of thirty (30) days, as called for by Haw. Rev. Stat. §651-43;

4. On the day and place set forth in the advertisement, the Deputy Sheriff shall conduct a public auction of all of Mr. Berry's registered and unregistered copyrights as well as all causes of action for infringement and all rights existing in any pending lawsuits as called for in Haw. Rev. Stat. §651-44.

5. The Deputy Sheriff shall file a report in the Court, stating the amount of the high bid at the auction and the amount of his fees and expenses and seeking the Court's approval of the sale at the high bid.

6. The Court will consider, and if appropriate, approve the sale, and order the transfer to the high bidder of all of Wayne Berry's registered and unregistered copyrights as well as all causes of action and all rights and claims existing in any pending lawsuits.

7. If Mr. Berry refuses to comply with the Court's order, the Court can consider a motion pursuant to Fed. R. Civ. P. 70 for appointment of the Deputy Sheriff or other person to sign the transfers of copyrights and record them in the Copyright Office.

In the past ten years, Mr. Berry cannot recall ever receiving any money for any item whose copyright he has registered. (August 13, 2007 Deposition of Wayne Berry, pages 89 through 115 – Exhibit "B" attached hereto). Although these copyrights obviously have no value on the open market, they have value to the judgment creditors in this case because ownership of the copyrights and the other property may help to get Mr. Berry to stop suing them.

Execution on Mr. Berry's copyrights, causes of action and pending lawsuits is necessary because all other, more traditional, methods of attempting to satisfy the judgment have been stymied. On August 13, 2007, Mr. Berry failed to produce any

4

portion of his bank statements, except the first page. He stated that he does not have possession or control of the rest of the statement because he deliberately throws it out when it arrives. In the entire judgment debtor examination, he failed to identify anything he owns of any value and failed to identify any source of future income.[3]

The judgment in C&S's favor is still outstanding and has not been satisfied in whole or in part. C&S now seeks an Order directing the issuance of a Writ of Execution of said judgment as provided by Hawaii Revised Statutes § 651-31 et seq.

It is anticipated that Mr. Berry will oppose this motion on the basis of 17 U.S.C. §201(e). However, Mr. Berry's reliance on §201(e) is misplaced for several reasons. In the first place, Section 201(e) only addresses:

> actions initiated by governmental bodies, not with those where, as in the case of a judgment lienholder, the instruments of government are merely acting in furtherance of private objectives. Indeed, it appears that the section was intended to prevent expropriations of copyrights by foreign governments in their efforts to suppress the works of dissident authors.

In re Peregrine Entertainment, Ltd., 116 B. R. 194 (C.D. Cal. 1990) n16.

Section 201(e) prevents foreign governments such as the old Soviet Union, from using expropriation powers to control or prevent the publication of the writings of Alexandr Solzhenitsyn, and other dissident authors. The House Report expressly

---

[3] Although Mr. Berry has an ongoing contractual relationship with Y. Hata, he has made some kind of a deal in which Y. Hata received a discount for prepaying their obligations to Mr. Berry, so nothing is owed at the present time. When he was

confirms that the purpose of Section 201(e) is to:

> "Protect foreign authors against laws and decrees purporting to divest them of their rights under the United States copyright statute, and would protect authors within the foreign country who choose to resist such covert pressures."

H. Rep. No. 94–1476 (1978).

Obviously, Section 201(e) does not apply here, as no foreign government has sought to divest Wayne Berry of any rights. The instant matter deals only with the private rights of creditors to enforce their liens against Mr. Berry's personal property. This case is obviously not impacted by Section 201(e) of the Copyright Act.

Moreover, because Mr. Berry's copyrights have already been transferred to the IRS, by virtue of its lien filed in 2000, Mr. Berry cannot rely on 17 U.S.C. §201(e). On its face, that section only applies where "an individual author's ownership of a copyright, or any of the exclusive rights under a copyright, has <u>not previously been transferred</u> voluntarily…" (emphasis added). Here, the transfer was accomplished when the IRS issued its lien. The Copyright Act's definition of transfer includes attachment of a lien. Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163 (9th Cir. 1997). And the Internal Revenue Code's definitions of the taxpayer's property subject to tax lien clearly include copyrights. 26 USC §6321 ("all property and rights to property, whether real or personal, belonging to such person").

---

asked for the specifics of this "deal" Mr. Berry testified that he couldn't remember.

6

Moreover, Mr. Berry's transfers to the IRS and to C&S are **voluntary** within the meaning of Section 201(e). This is because it was Mr. Berry's voluntary actions that resulted in the liens against his assets in favor of the IRS and C&S. The house report explains:

> Traditional legal actions that may involve transfer of ownership, such as bankruptcy proceedings and mortgage foreclosures, are not within the scope of this subsection; the authors in such cases have voluntarily consented to these legal processes by their overt actions—for example, by filing in bankruptcy or by hypothecating a copyright.

House Report 94–1476 (1978). In this case, Mr. Berry's overt, voluntary actions of incurring, and not paying, liability to the IRS and his voluntary filing and pursuing the lawsuit that resulted in the judgment in C&S's favor are all that is required to proceed with execution sale.

In accordance with the foregoing authorities, C&S respectfully urges that the Court should issue an Order directing the issuance of a Writ of Execution.

DATED: Honolulu, Hawaii, February 19, 2008.

_____
LEX R. SMITH
Attorney for Defendant
C&S Wholesale Grocers, Inc.