432993
KOBAYASHI, SUGITA & GODA
Lex R. Smith       3485-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii  96813
Telephone No. (808) 539-8700
Facsimile No.  (808) 539-8799
Email: lrs@ksglaw.com

Counsel for Defendant
C&S Wholesale Grocers, Inc., et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK <br> ) (Copyright) <br> ) |
| Plaintiff, | ) <br> ) DEFENDANT C&S WHOLESALE |
| vs. | ) GROCERS, INC.'S STATEMENT OF <br> ) APPEAL RE ORDER DENYING EX |
| HAWAIIAN EXPRESS SERVICE, <br> INC., et al., | ) PARTE MOTION FOR WRIT OF <br> ) EXECUTION AFTER JUDGMENT; <br> ) EXHIBIT "A" |
| Defendants. | ) <br> ) |

C&S WHOLESALE GROCERS INC.'S STATEMENT OF APPEAL RE:
ORDER DENYING C&S WHOLESALE GROCERS, INC.'S EX PARTE
MOTION FOR ISSUANCE OF WRIT OF EXECUTION AFTER
<u>JUDGMENT</u>

C&S Wholesale Grocers ("C&S"), through its undersigned counsel,

hereby submits its appeal from the Magistrate Judge's Order dated March

27, 2008 denying C&S's motion for a writ of execution after judgment, a

copy of which is attached hereto as Exhibit " A."

I.  **BACKGROUND**

C&S is the owner and holder of a judgment in the amount of 84,758.98 plus interest.[1] Although Wayne Berry has appealed from the judgment, he has neither sought nor obtained any stay of execution of the judgment. As the Court confirmed at page 3 of its May 21, 2007 Order:

> This court had no intent to stay the execution of the Order, and no party has requested any stay. In the absence of any request for a stay under Rule 62 or some equivalent, the ten-day automatic stay began to run on March 2, 2007, and has since expired.

C&S's efforts to collect its judgment through traditional means have been thwarted. Mr. Berry testified that he owns no real property, no mutual funds, no stocks, bonds or equities, no titles or registrations to any vehicle, no life insurance policies, no accounts receivable (except the amounts he continues to claim that C&S owes him money despite this Court's summary judgment to the contrary), no retirement accounts, no rights to receive payments on any leases and no rights in any deferred compensation plans.

Mr. Berry further testified that his sole source of income is through a software contract with Y-Hata which was supposed to pay him approximately $5,000 per month, but Y-Hata prepaid a lump sum sometime

---

[1] See Order Declining Defendants' Request For Additional Entry Of Judgment entered herein on May 21, 2007 (Docket #1062).

shortly before the judgment in this case was entered. As a result, he testified that he does not know when he will again begin receiving payments from Y-Hata. Mr. Berry produced only the first page of his bank statements (claiming he throws all other pages of the statements in the trash). The limited bank statements Berry produced showed that he deposited more than $77,000 in his checking account for the period of March 17, 2007 through April 17, 2007. Those same statements also show that he withdrew nearly $72,000 over that three month period, leaving him with less than $4,500. When asked where this $67,500 went, Mr. Berry testified "I don't know."

On February 19, 2008, C&S moved for a writ of execution. Mr. Berry's counsel filed his memorandum in opposition the same day. C&S's motion seeks to have the sheriff execute on the following assets of Mr. Berry:

> a. All claims in any and all lawsuits to which Mr. Berry is a party;
>
> b. all causes of action that Mr. Berry may have against anyone; and
>
> c. all copyrights (registered and unregistered) that Mr. Berry owns.

Although there is no evidence that any of these has any value (indeed with respect to Mr. Berry's registered copyrights, he testified that he has no recollection of ever receiving anything of value for them in the past ten (10)

3

years), these items could have value to C&S since their purchase could put a stop to Mr. Berry's filing lawsuits against it.

The following day, the attorneys for Brian Christensen joined in the motion for writ of execution; and, on the same day, Mr. Berry filed his opposition.

## II. THE MAGISTRATE JUDGE'S RULING WHICH IS THE SUBJECT OF THE APPEAL

The Magistrate Judge denied the motion for writ of execution, citing the following language from Haw. Rev. Stat. §651-32:

> "[e]very district judge at the request of the party recovering any civil judgment in the judge's court, <u>unless the judgment is duly appealed from</u>, shall issue the judge's execution against the property of the party recovered against...."

(Exhibit "A" emphasis in the Court's Order).

The Magistrate Judge concluded that it "cannot issue a writ of execution" because C&S's judgment has been "duly appealed from" even though the record is clear that no supersedeas bond has been posted and no stay of execution has been requested.

C&S files this appeal because it believes the Magistrate Judge's ruling to be in error. Indeed, if the law prohibited execution merely because an appeal is pending, it would be tantamount to an automatic stay of execution

in every case. This is not the law and C&S is entitled to execute on Mr. Berry's assets.

### III. DISCUSSION

   1. **The Magistrate Judge Erred In Interpreting Hawaii Law. Under Hawaii Law, The Appeal Alone Does Not Stay Execution of the Judgment**

Under Hawaii law the holder of a judgment is entitled to proceed with enforcement thereof notwithstanding the pendency of an appeal unless a stay of execution is granted upon the posting of appropriate security. MDG Supply, Inc. v. Diversified Inv., Inc., 51 Haw. 375, 381, 463 P.2d 525, 529 (1969) ("[u]nder H.R.C.P. Rule 62(d), a party taking an appeal from a judgment must file a supersedeas bond in order to stay its enforcement."); TSA Intern. Ltd. v. Shimizu Corp., 92 Hawai'i 243, 990 P.2d 713 (1999) ("because the mere filing of a notice of appeal does not affect the validity of a judgment, the circuit court retains jurisdiction to enforce the judgment."):

> [t]he necessary implication [of Haw. R. Civ. P. 62(d)] is that without giving a supersedeas bond or unless otherwise ordered by the Court, the order is not stayed, even though an appeal is pending. Otherwise a person could completely frustrate judicial proceedings by disobeying an order of the Court during the pendency of an appeal without giving any security that it will be complied with in the event of affirmance.

5

Shanghai Inv. Co., Inc. v. Alteka Co., Ltd., 92 Hawai'i 482, 993 P.2d 516 (2000) overruled on an unrelated point by Blair v. Ing, 96 Hawai'i 327, 31 P.3d 184 (2001).

In light of the case law demonstrating that Hawaii courts routinely hold that a judgment **is** enforceable despite the pendency of an appeal, the Magistrate Judge's order should be reversed. The statutory language "unless the judgment is duly appealed from" should be read to apply only where there is a duly filed appeal together with an order staying execution.

Additionally, Section 651-32 appears to apply to the State's "**district judges.**" The U.S. District Court is more akin to Hawaii's courts of record, or Circuit Courts. Execution proceedings by Hawaii's Circuit Courts are governed by Haw. Rev. Stat. Section 651-36 which says nothing about the impact of appeals. Accordingly, Section 651-32 provides no impediment to the Court immediately enforcing C&S's judgment against Mr. Berry and issuing the appropriate writ.

### 2. As a Matter of Federal Law, C&S Is Entitled To Proceed With Execution Now

Under Fed. R. Civ. P. 69, the process for execution on Wayne Berry's assets is defined by Hawaii law; but C&S's *right* to execute on Mr. Berry's assets is governed by the Federal Rules of Civil Procedure. Under federal

law, C&S is entitled to enforce this Honorable Court's judgment now, without delay.

Under federal law the Court's final judgment is enforceable regardless of a pending appeal because the judgment debtor has done nothing to obtain a stay of execution and failed to post security in an amount approved by the Court. U.S. for Use of Terry Inv. Co. v. United Funding and Investors, Inc., 800 F.Supp. 879 (E.D.Cal. 1992). ("If the appellant does not file for a stay, the appellee may enforce the judgment at any time, even during the pendency of the appeal"); American Color Graphics, Inc. v. Travelers Property Cas. Ins. Co., Slip Copy, (N.D.Cal. 2007) ("Enforcement of a final judgment is not generally stayed during the pendency of an appeal. Federal Rule of Civil Procedure 62(d), however, allows for a stay of the execution of the judgment pending appeal when the moving party posts a supersedeas bond"); Folse v. Richard Wolf Medical Instruments Corp., 1998 WL 473941 (E.D.La. 1998) ("In the absence of a stay, a court's judgment is enforceable during the pendency of an appeal").

Under Fed. R. Civ. P. 62(d), a party appealing a money judgment can make a motion "to obtain a stay of execution of judgment pending appeal by posting a satisfactory supersedeas bond." U.S. v. Cowan, ___ F. Supp. 2nd

___ (D. Hawai'i 2008). "The supersedeas bond is meant to secure the appellee from any resulting loss from the stay." Id.

Because there is no supersedeas bond and no stay in this case, C&S is entitled to proceed with execution without delay.

**3.    C&S Has The Right To Execute On Mr. Berry's Intangibles**

Mr. Berry's argument that "intangibles" such as causes of action and copyrights cannot be executed upon because the sheriff cannot physically take them "into his possession" is wrong.[2] Hawaii law has always been clear that a judgment creditor is entitled to proceed against the judgment debtor's intangibles. For example, in Crescent City Motors v. Nalaielua, 31 Haw. 418 (1930) the Court ordered the judgment debtor's "equitable, contingent remainder" sold and the proceeds applied to the judgment. In language that is applicable to the present situation, the Hawaii Supreme Court explained:

> If [the judgment debtor's] interest is alienable by him, as we think it is, it certainly should be seizable by a court of equity in satisfaction of the claims of creditors. To deny a creditor's petition for this relief would be to permit

---

[2] Mr. Berry's argument is based on the 1923 case of Ferry v. Murata, 26 Haw. 699 (1923) holding that execution on intangibles could not be had **at law**. Crescent City Motors, and numerous other cases, make clear, the Court had the power to execute on intangibles **in equity**. Because the distinction between law and equity was abolished long ago, this entire argument is meaningless.

8

> the respondent to sell immediately thereafter his interest by voluntary conveyance and to pocket the proceeds in defiance of the claims of his creditors and of the court.

31 Haw. at 426.

This is exactly the situation here. The judgment debtor, Mr. Berry, is flaunting this Court's judgment; he could sell these copyrights and causes of action if he chose (and if he could find a buyer) and there is no reason whatsoever that they should not be seized and auctioned off by the sheriff in order to satisfy his debt reflected by C&S's judgment against him.

### 4. Section 201(e) of the Copyright Act Has No Effect On C&S's Right To Execute On Wayne Berry's Assets Including, But Not Limited To Copyrights

#### a. Section 201(e) is Inapplicable

Mr. Berry's reliance on §201(e) of the Copyright Act is misplaced for several reasons. Section 201(e) provides:

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

9

In the first place, Mr. Berry's reliance on Section 201(e) is wrong because that section only addresses:

> actions initiated by governmental bodies, not with those where, as in the case of a judgment lienholder, the instruments of government are merely acting in furtherance of private objectives. Indeed, it appears that the section was intended to prevent expropriations of copyrights by foreign governments in their efforts to suppress the works of dissident authors.

In re Peregrine Entertainment, Ltd., 116 B. R. 194 (C.D. Cal. 1990) n16. C&S is not, nor is this Court, acting as a "governmental body" or "official organization" as described in Section 201(e). Rather, C&S is merely enforcing its private right of a judgment creditor to be paid. Section 201(e) has no applicability under these circumstances. As the Court confirmed in Crescent City Motors, if the judgment debtor could sell it, his creditors are entitled to execute on it. 31 Haw. at 426.

As one scholar has observed:

> Construction of the provision, however, should consider its purpose. It was the concern of Congress that the Soviet Union would use the copyright laws to control dissemination of works by Soviet authors of which it did not approve. Potentially, the Soviet government would seize the copyright and then, as owner of the copyright, restrict publication and distribution of the work. Section 201(e) was incorporated to provide the basis for United States courts to refuse to recognize such involuntary transfers.

10

Peter A. Alces, Commercial Law of Intellectual Property, Section 4.3.3.2. pages 139-40.

Section 201(e) prevents foreign governments such as the old Soviet Union, from using expropriation powers to control or prevent the publication of dissident authors such Alexander Solzhenitsyn. The House Report expressly confirms that the purpose of Section 201(e) is to:

> "Protect foreign authors against laws and decrees purporting to divest them of their rights under the United States copyright statute, and would protect authors within the foreign country who choose to resist such covert pressures."

H. Rep. No. 94–1476 (1978).

Section 201(e) does not apply here, as no foreign government has sought to divest Wayne Berry of any rights. The instant matter deals only with the private rights of creditors to enforce their liens against Mr. Berry's personal property. This case is therefore not impacted by Section 201(e) of the Copyright Act.

### b. Section 201(e) is Inapplicable To Mr. Berry's Lawsuits And Causes of Action

The motion for writ of execution seeks to execute on assets other than Mr. Berry's copyrights. Mr. Berry's existing causes of action and his claims in pending lawsuits certainly can be sold to satisfy the judgment, regardless of the Court's ruling regarding Section 201(e).

### c. Section 201(e) Is Inapplicable Because Berry's Copyrights Have Already Been Transferred To The IRS

The IRS filed a tax lien in the year 2000, which has not been satisfied. The filing of the tax lien effected a transfer of the copyrights. The Copyright Act's definition of transfer includes attachment of a lien. <u>Broadcast Music, Inc. v. Hirsch</u>, 104 F.3d 1163 (9th Cir. 1997). And the Internal Revenue Code's definitions of the taxpayer's property subject to tax lien include copyrights. 26 USC §6321 ("all property and rights to property, whether real or personal, belonging to such person").

Because Section 201(e) only applies where "an individual author's ownership of a copyright … has <u>not previously been transferred</u> voluntarily…" (emphasis added) Section 201(e) is inapplicable to the copyrights that are the subject of this motion.

Mr. Berry's transfers to the IRS and to C&S are **voluntary** within the meaning of Section 201(e). This is because it was Mr. Berry's voluntary actions that resulted in the liens against his assets in favor of the IRS and C&S. The house report explains:

> Traditional legal actions that may involve transfer of ownership, such as bankruptcy proceedings and mortgage foreclosures, are not within the scope of this subsection; the authors in such cases have voluntarily consented to these legal processes by

12

> their overt actions—for example, by filing in
> bankruptcy or by hypothecating a copyright.

House Report 94–1476 (1978). In this case, Mr. Berry's overt, voluntary actions of incurring, and not paying, liability to the IRS and his voluntary filing and pursuing the lawsuit that resulted in the judgment in C&S's favor are all that is required to proceed with execution sale.

The IRS has a recorded lien encumbering all of Mr. Berry's copyrights and can sell them to satisfy Mr. Berry's unpaid tax liability. Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163 (9th Cir. 1997). It has the power to auction Mr. Berry's copyrights in order to satisfy Mr. Berry's tax liability. 26 USC §6321. The already-accomplished transfer to the IRS confirms that Section 201(e) does not preclude issuance of a writ of execution and sale to the highest bidder of Mr. Berry's copyrights and other assets. Since the IRS can sell it, there is no reason a judgment creditor such as C&S cannot do the same thing.

The fact that an IRS tax lien is not "voluntary" for purposes of 11 U.S.C. §522 is irrelevant. The point of the word "voluntary" in Section 201(e) is that the lien is the result of the debtor's voluntary actions, not a government expropriation. See Alces, Id. In this case Mr. Berry's voluntary actions of failing to pay his taxes and filing a meritless suit against C&S confirm that Section 201(e) is inapplicable. Just as a debtor in bankruptcy

or a borrower in foreclosure, the natural consequences of Mr. Berry's voluntary actions (attachment of liens) are all that is required to make the lien voluntary. Mr. Berry's "overt actions—for example, by filing in bankruptcy … hypothecating a copyright", ignoring his obligation to pay taxes, and filing a meritless copyright lawsuit against C&S confirm that Section 201(e) does not apply.

### 5. The Assets Will Be Sold Subject To The Lien of the IRS

It is a fundamental rule of Hawaii law, that only the interest of the judgment debtor will be sold at the auction. Haw. Rev. Stat. §651-49. Accordingly, the assets will be sold subject to the tax lien in favor of the IRS.

## IV. CONCLUSION

For the foregoing reasons, C&S urges the Honorable Court to reverse the Magistrate Judge and issue the writ of execution.

DATED: Honolulu, Hawaii, April 3, 2008.

/s/ Lex R. Smith
LEX R. SMITH
Attorney for Defendant-Appellant C&S Wholesale Grocers, Inc.