TIMOTHY J. HOGAN 5312-0
ATTORNEY AT LAW
1050 Bishop Street, No.433
Honolulu, Hawaii 96813
Tel. No. (808) 382-3698
Fax No. (808) 356-1682
E-mail: tjh@timhogan.com

WAYNE BERRY
Attorney for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | PLAINTIFF WAYNE BERRY'S |
| | ) | OPPOSITION TO DEFENDANT C&S |
| | ) | WHOLESALE GROCERS, INC.'S |
| HAWAIIAN EXPRESS SERVICE, | ) | STATEMENT OF APPEAL RE: |
| INC., et al. | ) | ORDER DENYING EX PARTE |
| | ) | MOTION FOR WRIT OF |
| | ) | EXECUTION AFTER JUDGMENT |
| | ) | |
| | ) | JUDGE: Hon. Susan Oki Mollway |
| Defendants. | ) | |
| _____ | ) | (Non-Hearing) |

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    The First Case Established Mr. Berry's Ownership. . . . . . . . . . . . . 1

       B.    Fleming Avoided an Injunction by Filing Bankruptcy and Sold its
             Business to C&S. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.    Mr. Berry Sued Fleming Again Because it Continued to Infringe.
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       D.    Mr. Berry Obtained Relief from Stay to Finish the
             First Hawaii Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       E.    The District Court in the Instant Case Entered Summary Judgment. . 8

       F.    Final Judgment was Entered in the Instant Case a Year Before the
             Instant Order Regarding Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       G.    Fleming Admitted in the Appeal of the First Case That Berry Owns
             the Works It Created. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       H.    By Affirming the District Court in the First Hawaii Case, The Court of
             Appeals Determined that the Works C&S Bought From Fleming are
             Actually Berry's Works . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       I.    C&S Has Not Adequately Demonstrated It Owns the Judgment
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

A.    This Court has Already ruled that Mr. Berry Lives in Florida . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.    C&S and Christensen Lack Standing in Equity . . . . . . . . . . . . . . . . 17

C.    Hawaii State Law Prohibits the Relief Sought . . . . . . . . . . . . . . . . 18

D.    A Tax Lien is Not A Voluntary Transfer . . . . . . . . . . . . . . . . . . . . . 25

E.    C&S Is Not the Holder of the Claim and the Bankruptcy Court has Stayed the Collection Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Table of Authorities

CASES

*7's Enterprises, Inc. v. Del Rosario*, 111 Hawaii 484, 143 P.3d 23 (Hawaii 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Berry v. Fleming Companies, Inc.*, 243 Fed. Appx. 260, 2007 WL 1062946 (9th Cir. (Hawaii 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blair v. Ing*, 96 Hawaii 327, 31 P.3d 184 (Hawaii 2001) . . . . . . . . . . . . . . . . . 1, 14

*Crescent City Motors, Ltd. Nalaielua*, 31 Haw. 418, 1930 WL 2889 (Hawai'i Terr. 1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ferry v. Murata*, 26 Haw. 699, 1923 WL 2731 (Haw. Terr. 1923) . . . . . . . . 20, 24

*Hyman v. Sing Warn*, 16 Haw. 106, 1904 WL 1331 (Haw.Terr. 1904) . . . . . . . . 20

*In re DeMarah*, 62 F.3d 1248 (9th Cir 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Kealiiahonui's Estate*, 9 Haw. 1, 1893 WL 1044 (Hawaii 1893) . . . . . . . . 19

*In re Peregrine Entertainment, Ltd.*, 116 B.R. 194 (C.D. Cal. 1990) . . . . . . 23-26

*In re Snavely*, 314 B.R. 808 (9th Cir.BAP 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.*, 92 Hawaii 482, 993 P.2d 516 (Hawaii 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATUTES

Federal Fair Debt Collection Practices Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

18 U.S.C. § 2319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Copyright Act, 17 U.S.C. 201(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21, 22, 24

Copyright Act, 17 U.S.C. § 301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Copyright Act, 17 U.S.C. § 506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Copyright Act, 17 US.C. §205(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hawaii Rev. Stat. § 651-32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hawaii Rev. Stat. § 651-36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hawaii Rev. Stat. §651-9(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Title 11, United States Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

RULES

Fed. R. Civ. P. 69 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

LR 74.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

OTHER AUTHORITIES
*Corpus Juris* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I.     INTRODUCTION.

COMES NOW, Plaintiff Wayne Berry, a resident of the State of Florida, by and through his undersigned counsel, who enters a limited special appearance on Plaintiff's behalf in regard to the relief sought in the instant Statement of Appeal that seeks to reverse the Magistrate Judge's denial the sanctionable request to assert the power of this Court to issue a writ of execution over Mr. Berry's copyrights, judgments and rights in litigation. As to the attempt to execute on a copyright, this act is specifically prohibited under the Copyright Act, 17U.S.C.§201(e).  As to this and the other acts to execute on judgments and choses in action, such contemplated acts exceed the territorial limits of the state law employed, even if Mr. Berry and his property were in Hawaii and are prohibited by well settled Hawaii law that this Court must apply pursuant to Fed. R. Civ. P. 69. The Appeal must be denied and the Magistrate Judge affirmed.

# II.     FACTUAL BACKGROUND.

## A.     The First Case Established Mr. Berry's Ownership.

On July 3, 2001 Mr. Berry sued Fleming Companies, Inc. ("Fleming") for infringement of three of his registered original works by commencing *Wayne Berry v. Fleming Companies, Inc*., 01-CV-00446 SPK LEK (D.Hawaii).  For clarity, Mr. Berry will hereinafter refer to this case as the "First Hawaii Case."  The principal issue that developed during that case was whether the Berry End User License

Agreement ("EULA"), with its two addenda controlled or whether, as Fleming

claimed, the EULA was irrelevant because Fleming, and not Mr. Berry, was the

owner of the copyrights to the works. Fleming asserted theories including work

for hire or, alternatively, as a fall back, that what Mr. Berry referred to as the

"Second Addendum" controlled and not the entire EULA. True and Correct

Copies of the Berry EULA and Second Addendum are attached to the Declaration

of Timothy J. Hogan (the "Hogan Dec.") as Exhibits "1" and "2."

On March 6, 2003, after Fleming attempted to prove its ownership over all

of Mr. Berry's freight related works, a jury in the First Hawaii Case returned its

verdict finding for Mr. Berry and found Mr. Berry the owner the Berry works

loaned to Fleming. The jury also found Fleming at best, a licensee regarding the

works, including the derivatives it had created, but also found Fleming to be a

willful infringer regarding Fleming's creation and use of certain illegal derivatives

of one of Mr. Berry's original works, Freight Control System ("FCS") registered

with the United States Copyright Office as TX 5-079-445. A true and correct copy

of the Special Verdict Form filed in the First Hawaii Case on March 6, 2003, is

attached to the Hogan Dec. as Exhibit "3." Willful infringement for commercial

advantage is a felony. *See* the Copyright Act, 17 U.S.C. § 506 and 18 U.S.C. §

2319.

2

**B.    Fleming Avoided an Injunction by Filing Bankruptcy and Sold its Business to C&S.**

Twenty-six days after the jury found for Mr. Berry, and while Mr. Berry's motion for a permanent injunction was pending before District Judge Samuel King, on April 1, 2003, Fleming and most of its subsidiaries filed for Chapter 11 Bankruptcy protection in the District of Delaware.  The cases were eventually substantively consolidated as *In re Fleming Companies, Inc*., Bk. No. 03-10945 (MFW) (Bankr. Delaware).   Despite the jury verdict and Mr. Berry's objections, Fleming continued to infringe as debtor-in-possession.

At the time of the Bankruptcy filing, Fleming's wholesale business was the major asset of this former Fortune 100 company. While the automatic stay was in effect, and with Fleming apparently gambling that it would prevail on keeping Mr. Berry from ever establishing, by final judgment, the issue of ownership, Fleming and C&S Wholesale Grocers, Inc. ("C&S")  entered into an Asset Purchase Agreement ("APA") to sell the Fleming wholesale operations to C&S upon Bankruptcy Court approval.

**C.    Mr. Berry Sued Fleming Again Because it Continued to Infringe.**

Treading softly by the automatic stay, on July 22, 2003, Mr. Berry commenced this case,  *Wayne Berry v. Hawaiian Express Service, Inc. et al.*, 03-CV-00385-SOM-LEK (D. Hawaii) that hereinafter will be referred to as the

"Second Hawaii Case" or the "Instant Case."   In the Instant Case, Mr. Berry sought to proceed against other ongoing infringers of Mr. Berry's works specifically against Fleming's freight forwarder an unlicensed user of his works. Neither Fleming nor C&S were named as parties on July 22, 2003.

On or about August 1, 2003, but after the commencement of the Instant Case, Fleming, through its Bankruptcy Counsel, Kirkland & Ellis,  commenced a Delaware Bankruptcy adversary proceeding, *Fleming Companies, Inc. v. Wayne Berry,* Adv. Proc. No. 03-54809 MFW (Bankr. Del.) seeking, among other relief, a declaratory judgment that Fleming had not engaged in infringement post-petition, and sought an immediate injunction to prevent Mr. Berry from bringing claims that alleged that Fleming was infringing (a now proven fact) and seeking to prevent Mr. Berry from reporting Fleming's ongoing infringement to law enforcement.   The Delaware Bankruptcy Court denied the request for an injunction *sua sponte* by Order dated August 8, 2003.  Hogan Dec. Exhibit.  "4."

After learning the Fleming was attempting a "first filed" strategic filing in Delaware, and claiming only infringements that occurred post-petition, on August 13, 2003, Mr. Berry amended his complaint in the Instant Case, prior to the filing of a responsive pleading, and named Fleming and C&S, a proposed purchaser of Fleming's wholesale operations, and others.   Through the relation-back amendment, Mr. Berry effectively defeated the Fleming's plan to obtain the a "first

filed" dominant position via the Delaware adversary proceeding.  As a result of Mr. Berry's amendment, Fleming's Delaware Adversary Proceeding was dismissed in favor of the first filed Instant Case.

After Fleming and C&S were named as parties in the Instant Case, on August 23, 2003, over a month after the filing of the initial complaint in the Instant Case Fleming and C&S entered into an agreement where Fleming agreed to indemnify C&S for C&S' unlicensed future use of what the parties to that agreement called "Berry Technology."   Hogan Dec. Exhibit "5."   This sale of the Fleming assets to C&S occurred over one month after the Instant Case commenced.

### D. Mr. Berry Obtained Relief from Stay to Finish the First Hawaii Case.

On July 24, 2004, and just one docket entry prior to the entry of the Order Approving Fleming's Third Amended Plan of Reorganization in the Fleming Bankruptcy case in Delaware, Mr. Berry obtained relief from the automatic stay to enable him to complete the First Hawaii Case and to further protect his original works by obtaining a final judgment that determined his ownership over all the Berry works including those created by Fleming under the Berry EULA.

After confirmation of the Fleming Reorganization Plan, on July 25, 2004, the prosecution of Fleming's false claim to ownership over Berry Technology fell

to the Post-Confirmation Trust ("PCT") through its representative trustee Robert Kors who, by continuing the pre-petition litigation, falsely asserted his ownership over title to the Berry works as a trustee under the PCT grantor trust. The PCT trust was created to protect the class of beneficiaries of pre-petition Fleming creditors including Mr. Berry but despite Kors' fiduciary duty to Mr. Berry he continued to assert the willful infringer's false claims after his appointment.

With the automatic stay modified, Mr. Berry immediately set out to complete the First Hawaii Case and further secure his rights of ownership over all the works.  The PCT was represented in the First Hawaii Case by  Kirkland & Ellis, the Fleming Debtor-in-Possession Bankruptcy counsel and by Lex Smith, appointed as ordinary course counsel by the Delaware Bankruptcy Court. Mr. Smith concurrently represents both C&S the buyer, and the PCT Representative Robert Kors who voluntarily stepped into the shoes of the seller, in the Instant Case.

The District Court in the First Hawaii Case directed the filing of renewed post-trial motions.  On December 27, 2004, the District Court entered its Order denying all post trial motions.  Hogan Dec. Exhibit "6."  In its Fleming's Renewed Motion for Judgment as a Matter of Law that the 'End User License Agreement' is Unenforceable Against Fleming, filed on March 20, 2003, Fleming had argued that the Berry EULA was unenforceable against it for lack of assent.  Fleming instead

claimed that its rights derived from what Mr. Berry termed the EULA's second addendum, that was drafted by Fleming with Mr. Berry's input, to permit Fleming to recast certain of the Berry works.  Despite claiming a lack of assent regarding the terms in the EULA, the language that appeared in the EULA regarding Mr. Berry's undisputed ownership of the Fleming created works also appears in the Second Addendum that Fleming agreed it had written with Mr. Berry's input.  The Berry-Fleming EULA provides for the transfer as follows:

> . . . **and any copies you are permitted to make herein are owned by Wayne Berry**. You may not copy any printed materials accompanying the SOFTWARE PRODUCT.

 Hogan Dec. Exhibit "1" at page 2 of 5, ¶ 3 (emphasis added).

This very same conspicuous transfer of all rights in the Fleming created works to Mr. Berry was also in the Second Addendum drafted by Fleming as follows:

> ... We understand that this product is licensed, not sold **and that all title and intellectual property rights in and to the software product and any copies we make are owned by you**….

Second Addendum, Hogan Dec. Exhibit "2" at first unnumbered page (emphasis added).

The District Court entered its Final Judgment in the First Hawaii Case on January 20, 2005 and Fleming filed a notice of appeal.  Mr. Berry timely filed a

notice of cross-appeal regarding the denial of a permanent injunction.

**E.     The District Court in the Instant Case Entered Summary Judgment**.

On June 27, 2005, the District Court in the Instant Case, concluded

proceedings as to liability and entered summary judgment against Fleming's PCT

and two of its employee defendants as copyright infringers of Berry's FCS but

exonerated other defendants, including C&S that escaped liability by claiming they

were not be using any Berry works.  C&S admitted that the works it was using

were works created by then Fleming employee, Mark Dillon.  *See* Declaration of

Mark Dillon, Hogan Dec. Exhibit "7" at para. 4.

**F.     Final Judgment was Entered in the Instant Case a Year Before the Instant Order Regarding Fees.**

In the Instant Case, on March 9, 2006, the District Court entered its

Judgment in Favor of Plaintiff Against Defendant(s) Fleming Companies, Inc.,

Mark Dillon and Teresa Noa.  On March 16, 2006 the District Court entered its

Amended Judgment in a Civil Case.  On March 16, 2006 the District Court entered

its Second Amended Judgment in a Civil Case.  *See* Court Docket No.s  856, 859

and 861 respectively. The District Court then finally resolved the issues related to

attorneys fees and costs on March 2, 2007, in the Order Adopting and Modifying

the October 25, 2006, and December 4, 2006, Reports of Special Master on the

Parties' Motions for Attorneys' Fees and Costs. Court Docket No. 1037. This 58

page order is the judgment that C&S and Christensen seek to enforce.

> **G.      Fleming Admitted in the Appeal of the First Case That Berry Owns the Works It Created.**

To bunker C&S's otherwise unlicensed use of the works, Fleming, through

Robert Kors the PCT representative,  continued to prosecute the false claim to

ownership to all the Berry Technology related works, including the Fleming

created works, in the appeal, so that Mr. Kors could finally complete the acts he

had undertaken that were necessary for him to complete his transfer of the Berry

Technology to C&S.  In its appellate reply brief related to the appeal of the

judgment in the First Hawaii Case, filed on August 19, 2005, Kors, represented by

C&S' concurrent counsel, Lex Smith, conceded the ownership of the copies of

works that Fleming created and the C&S admits it received from Fleming are

Berry's intellectual property as follows:

> Berry points the Court to language in the November 26, 1999 license agreement (E 034-035) and notes that the agreement states that the software was "licensed not sold and that all title and intellectual property rights in and to the software product and any copies ... are owned by you." Opp. at 14. **But the excerpt should conclude "any copies we make are owned by you"** (emphasis added). Why has Berry omitted the two small words "we make" from that excerpt? Because he was trying to hide from the Court the fact that Fleming retained ownership of the copy Berry gave Fleming in connection with the overall

> API transaction, leaving in place the above analysis.
> Fleming owned a copy of Berry's software and had a
> license to use it, and Section 117 protects the necessary
> modifications Fleming made for internal use. Again, the
> Court should reverse.

Fleming-PCT 3d Brief on Appeal, Hogan Dec. Excerpt attached as Exhibit "8" at

page 7 (emphasis added).

### H.     By Affirming the District Court in the First Hawaii Case, The Court of Appeals Determined that the Works C&S Bought From Fleming are Actually Berry's Works.

Four months after the District Court in the Instant Case entered its order

related to attorneys' fees, by Memorandum Opinion Dated July 5, 2007

Memorandum Opinion Dated July 5, 2007, the Court of Appeals for the Ninth

Circuit affirmed the District Court and Jury verdict in all respects thus  establishing

that all the works, whether Berry or Fleming created, that C&S is using without a

license, are all actually owned by Mr. Berry.  *See Berry v. Fleming Companies,*

*Inc.*, 243 Fed. Appx. 260, 262, n.2, 2007 WL 1062946 (9th Cir.  (Hawaii 2007).

A copy of the 9th Circuit Memorandum Opinion is attached to the Hogan Dec. as

Exhibit "9."   By affirming the District Court in the First Hawaii Case, the Court of

Appeals finally established that Fleming had no ability to lawfully transfer any of

the custom software works to C&S.  C&S has admitted it is using the Fleming

created Berry owned works without any license and C&S is therefore an infringer

for using Mr. Berry's works as of this writing.  It is using them for commercial

10

advantage and is therefore a criminal infringer.  Even if C&S escaped civil liability

in the Instant Case, by claiming to be innocent, that defense could not ripen into

copyright ownership and its actions are violations of federal criminal law.

As stated, C&S escaped infringement liability in the Second Hawaii Case,

by representing that it was not using one of Berry's works, FCS.  *See* Order

Denying Plaintiff's Motion for Permanent Injunction filed on March 9, 2006.

Hogan Dec. Exhibit "10." The District Court ruled as follows:

> Berry also seeks an order directing Fleming, the PCT,
> C&S, Employees, and others to return, destroy, or
> otherwise reasonably dispose of Berry's FCS and any
> copies or derivatives thereof pursuant to 17 U.S.C. §
> 503(b). The court denies Berry's request.
>
> . . .
>
> As noted above, only Fleming and Employees were
> found to have infringed Berry's copyright.  However,
> Berry has not established that Fleming or Employees
> have any copies or derivatives of Berry's FCS, **or that
> C&S has such items**. Neither Fleming, Employees, nor
> C&S currently uses the outdated FCS. Although
> Defendants' attorneys may possess copies, Berry does not
> present any argument as to how those copies are likely to
> be used in the future for infringement by the attorneys,
> the parties, or anyone else. In any event, Berry excludes
> from his motion copies retained for litigation purposes,
> which necessarily includes what Fleming's and
> Employees' attorneys have.

*See* Hogan Dec. Exhibit "10" at pages 12 to 14.

The issue of who owns the Fleming created works transferred to Berry

under the EULA, and delivered to C&S, was finally decided by the Court of Appeals on July 5, 2007. At the time the Second Hawaii Case was filed there was no final judgment in the First Hawaii Case and the Appeal was not to commence for almost another eighteen months.

Rather than accept the ruling of the Court of Appeals that has finally decided this issue, and seek to promptly remedy C&S's clear criminal infringement regarding its continued use of the works obtained from Fleming, C&S and Christensen, represented by Fleming's attorneys, in open contempt for the ruling of the Court of Appeals, have filed and/or joined in an ex parte motion to request that the District Court permit execution on Berry's copyrights though this act is specifically prohibited by Federal law. These infringers also seek to execute on pending actions and judgments using Hawaii law that, like Federal law, prohibits such execution.

## I.   C&S Has Not Adequately Demonstrated It Owns the Judgment that is Subject to Offset and a Stay by the Delaware Bankruptcy Court.

The attorneys who are seeking to collect upon these sums are actually seeking to enforce rights held by the Fleming PCT Representative, Robert Kors, who employs them to advance the criminal infringers' unlicensed use. These attorneys' fees were  paid by the PCT not C&S or Christensen as Fleming and the PCT's ordinary course attorneys.  *See* Hogan Dec. Exhibits "11" and "12."  Mr.

Berry has sought to obtain debt verification pursuant to the Federal Fair Debt Collection Practices Act ("FDCPA") to establish the predicate that these creditors are the holders of the alleged rights to collect upon the purported judgment but they, in direct violation of the FDCPA have refused to comply.  Hogan Dec. ¶ 11. If C&S is successful, then any creditor attorney would be immune from the workings of the FDCPA by seeking to execute on the very claim that arose from the violation of the Act making the law meaningless.  If the holder of the right to recover this sum is the Fleming PCT as the evidence suggests, Mr. Berry has sufficient offsets to defeat this action that was also subject of a stay entered by the Delaware Bankruptcy court. Hogan Dec. ¶ 11 and Exhibit "13."

The Statement of Appeal infers that Mr. Berry has been secreting assets but no evidence other than Mr. Berry's inability to detail his expenditures in a debtor exam is offered.  Were Mr. Berry to voluntarily transfer his copyrights, as C&S fears, he would himself act to take his copyrights outside of the exception under 17 U.S.C. § 201(e) an act that common sense would say Berry is not likely to take. More over, the "judgment" that C&S is seeking to enforce is actually a 58 page order adopting two masters' reports.  *See* Docket No. 1037.  No separate document was ever entered C&S' request for one notwithstanding.  *See* Order Declining Defendants' Request for Additional Entry of Judgment. Court Docket No. 1062 filed on May 21, 2007.

## III.   DISCUSSION.

The Magistrate ruled that, in light of the pending appeals, that included an appeal filed by one of the movants, Mr. Christensen, the C&S Hawaii President, the court could not grant the requested relief because it is specifically prohibited by Hawaii law.  The Statement of Appeal does not deny or challenge that Mr. Christensen as well as several other of C&S's employees plus the PCT have appealed their own alleged judgment.   Moreover, the evidence and record of this case shows that C&S is seeking to obtain this Court's equity to further ongoing criminal conduct.  In light of these circumstances the Court was correct to deny the Motion on the grounds cited especially where Hawaii law permits the court to stay enforcement even in the absence of a bond.  *See Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.*, 92 Hawaii 482, 504 , 993 P.2d 516, 538 (Hawaii 2000) *overruled on other grounds Blair v. Ing*, 96 Hawaii 327, 329, 31 P.3d 184, 186 (Hawaii 2001).

Moreover, had the court not decided on these grounds, there were more than sufficient other grounds to support the Magistrates denial of the motion that this court may address, as reconsideration, *sua sponte*.  *See* LR 74.1.

### A.     This Court has Already ruled that Mr. Berry Lives in Florida.

Congress has provided this Court with the power to enforce its judgments entered in favor of non-governmental judgment creditors that derives from Hawaii law as follows:

> **Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State**, and shall cease to be a lien in the same manner and time. This section does not apply to judgments entered in favor of the United States. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

28 U.S.C. § 1962 (emphasis added).

Therefore, this Court may apply Hawaii state law to reach property located in Hawaii. C&S in its Statement of Appeal cleverly failed to cite the entire relevant section that the Magistrate relied upon that also clearly prevents C&S' from executing in this Court on property in Florida. Had it been candid with this Court, it would have cited the section as follows:

> Every district judge at the request of the party recovering any civil judgment in the judge's court, unless the judgment is duly appealed from, shall issue the judge's execution against the property of the party recovered against, which execution may be in the form established by the usage and practice of the issuing court and may be directed to any police officer of the judicial circuit in which the district court is situated; **provided the**

**defendant or any of the defendants is a resident of the circuit**.

Hawaii Rev. Stat. § 651-32 (emphasis added).

In this case, the ex parte motion seeks issuance of process to seize property against a person who does not reside in the State of Hawaii recognizing that this Court is not limited to any single judicial circuit of the state.   Hawaii law, that applies to this action, requires that C&S and Mr. Christensen go to Florida to enforce any rights they claim under the Court's order and nothing in Haw. Rev. Stat. § 651-36 cited by C&S would require a different result. This Court has already transferred a case based on the very fact that Mr. Berry resides in Florida. *See* Order Denying Plaintiff's Motion to Recuse; Motion Granting Change in Venue filed in *Wayne Berry v. Deutsche Bank et al*, Civ. No. 07-172 SOM-LEK (D. Hawaii) at Docket No. 60, page 5.  Hogan Dec. Exhibit "14."   Just how this Court will employ Hawaii state law that authorizes a Hawaii officer to seize property from a person in Florida was not even addressed and would in itself be grounds to affirm the Magistrate.

Though Federal law gives a judgment creditor significant rights to proceed to collect on a judgment, the creditor must comply fully with the applicable state law. In *In re Snavely*, 314 B.R. 808, 818 (9th Cir.BAP 2004), the Bankruptcy Appellate panel held that failure to follow state law that required the filing of the

16

docket to obtain a lien on real property, was grounds to void the judgment lien.  In this case, Hawaii law is being employed over a non-resident.  No Hawaii state court could grant the execution on a non-resident's personal property and the execution must not issue.

**B.    C&S and Christensen Lack Standing in Equity.**

C&S admits that this is an action at equity.  *See* C&S' Statement of Appeal at page 8 note 2.   Hawaii law recognizes that in regard to the matters related to the use of Berry's works, C&S must come with clean hands to have standing to seek the equitable relief it now requests. *7's Enterprises, Inc. v. Del Rosario*, 111 Hawaii 484, 494-5, 143 P.3d 23, 33-4 (Hawaii 2006).  In the context of the ongoing commission of a felony, no claim can be made that C&S nor Christensen have clean hands and therefore both lack standing to proceed in equity.

On July 5, 2007, the Court of Appeals affirmed the District Court and jury verdict that finally determined that the works that C&S retained were and remain all owned by Mr. Berry.  This Writ of Mandate was issued over a year after the District Court entered its final judgment in this case and denied Mr. Berry's request for an injunction or return of his works.  Fleming's PCT, represented by C&S's concurrent counsel Lex Smith, admitted to the Court of Appeals, prior to the Court's entry of the Writ of Mandate that all of the works that C&S is using belong to Mr. Berry.  The long litigated Berry EULA has been upheld as the operative

17

license that regardless of assent is controlling over all who use the works.  Fleming agreed that all the works it created were owned, upon their creation, by Mr. Berry.  Therefore, even the works that the District Court ruled were not infringing derivatives have, since the Court entered its final judgment, by the Writ of Mandate, been finally adjudicated as the Berry works.  C&S admits it is using them for financial gain.  C&S and its employee Brian Christensen are admitted criminal infringers and lack standing in equity to request any equitable relief let alone to request that this Honorable Court disregard clear Federal law.  As such, the Court would have been acting within its discretion to deny the writ simply on the grounds of equitable standing alone.  This Court may consider the amounts due Mr. Berry by C&S for its unlicensed use as an equivalent substitute for any requested bond.  *See  Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.*, 92 Hawaii at 503-4.

### C.    Hawaii State Law Prohibits the Relief Sought.

Even if there was no pending appeal filed, including one filed by a moving party, and even if C&S were not seeking this equitable relief while engaged in ongoing criminal conduct, Hawaii law is clear that no court has power to execute on the ongoing cases as *choses in action*.  A 'chose in action,' is defined by the Hawaii Supreme Court as "a right to receive or recover a debt or money, or damages for breach of contract, or for tort connected with contract, but which cannot be enforced without action ."  *In re Kealiiahonui's Estate*,  9 Haw. 1, 4,

18

1893 WL 1044 (Hawaii 1893).   It is well settled that in Hawaii, personal property

must be capable of physical possession by the levying officer to be effective as

follows:

> Writ; how executed.  The police officer to whom the writ
> is directed and delivered, shall execute the writ without
> delay as follows:
>
> > . . .
>
> Personal property, **capable of manual delivery**, shall be attached by
> taking the same into custody.

Hawaii Rev. Stat. §651-9(2) (emphasis added).

Contrary to the C&S Statement of Appeal, as evidenced by the current

Hawaii statute, this is still the law in Hawaii that this Court is asked to enforce that,

on its face, clearly prohibits the result C&S is seeking.  The statute has a long

history of preventing this result as follows:

> There is no statute in Hawaii modifying the rule of the common law.
> The chapter on attachments ®. L., Ch. 156) contains a provision that
> "personal property, **capable of manual delivery**, shall be attached by
> taking the same into custody" and also provides a method for the levy
> of attachment upon stock in a corporation. It is silent as to any levy
> upon personal property not capable of manual delivery, **such as the
> chose in action now under consideration**. Chapter 139, which deals,
> among other things, with executions generally, does indeed say in a
> form of execution contained in section 2447 that the sheriff is
> commanded to levy upon personal property" of the defendant but
> other provisions in the chapter indicate that not all kinds of personal
> property may be levied upon by execution. Section 2456 provides that
> "every levy by an officer, in pursuance of a writ of execution issued
> by any court or judge, shall be made by taking the property levied

upon into his possession, care and guardianship, and, in his option, by removal of the same to some place of security." This language is not applicable to **such a chose in action** as that now pursued by the plaintiff.

*Ferry v. Murata*, 26 Haw. 699, 1923 WL 2731 (Haw. Terr. 1923) (emphasis added).

Likewise, in Hawaii execution may **not** be had regarding a **judgment**. *See Hyman v. Sing Warn*, 16 Haw. 106, 1904 WL 1331 (Haw.Terr. 1904). There is simply no state law that permits this Court employ Fed. R. Civ. P. 69 to grant C&S and Christensen's Motion even if they had **clean hands**. Because C&S and Christensen are clearly admitted criminal infringers, the Magistrate Judge must be affirmed and state law forbids the issuance of the writ under these extraordinary circumstances.

C&S cites single Hawaii case that permitted the execution on a beneficial interest in real property. That case specifically stated that the relief in that case may be had unless prohibited by statute as follows:

Any beneficial interest of a debtor in real or personal property which cannot be reached by regular process of law and is not expressly exempted by statute may be reached by a creditors' bill and subjected to the payment or satisfaction of the debt; and only such property may be so reached." 15 C. J. 1401.

*See Crescent City Motors, Ltd. Nalaielua*, 31 Haw. 418, 1930 WL 2889 *4 (Hawaii Terr. 1930) (emphasis added). The interest in *Cresent City Motors* was a beneficial interest in **real property** not personalty. In Hawaii execution is had regarding

20

interests in real property by filing in the Bureau of conveyances. There is no requirement that the Sheriff carry the real property away, as is required by Hawaii law in cases of personalty. The citation to the *Corpus Juris* that references personalty is pure dicta because the Court was dealing with an interest in real estate.

**D.     There is No Case That Supports the View that A Copyright That Has Not been Subject to a Prior Voluntary Transfer Can be the Subject of an Execution and Levy and Federal Law Strictly Prohibits This Court from Such an Act**.

Congress has preempted all state laws in regard to the enforcement of exclusive rights under the Copyright Act. *See* the Copyright Act, 17 U.S.C. § 301(a).

> Any transfer of copyright ownership or other document pertaining to a copyright may be recorded in the Copyright Office if the document filed for recordation bears the actual signature of the person who executed it, or if it is accompanied by a sworn or official certification that it is a true copy of the original, signed document.

*See* Copyright Act, 17 U.S.C. §205(a).

The Motion contemplated the sheriff forging Mr. Berry's signature to defeat this requirement. Consistent with the Congressional intent to protect Mr. Berry's exclusive rights, by enacting the Copyright Act, 17 U.S.C. 201(e) Congress has specifically exempted Copyrights from the remedy that the criminal infringers now seek.

21

Involuntary Transfer.— When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, **has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect** under this title, except as provided under Title 11.

The Copyright, 17 U.S.C. § 201(e) (emphasis added).

This controlling statute, that preempts all state law, evidences, on its face, that Congress was dealing with United States courts because it provides an exception where a debtor files, underTitle 11, the United States Bankruptcy Code, that provides for a transfer of the Copyright to the Debtor-in-Possession or Trustee by operation of law. Had Congress sought to limit the effect of this statute to foreign dictators, as the Statement of Appeal claims, Congress would have inserted foreign, between "any" and "governmental" but it chose not to. Congress did show that it knew that it was addressing U.S. law because it carved out a single exception under the U.S. Code, Title 11. This Court is asked to ignore a prohibition directed to this Court by Congress, set forth in the United States Code, to assist Mr. Christensen and his employer in ongoing criminal infringement of Mr. Berry's works in open defiance of the Court of Appeals. There is no equity, law or justification for this and simply stated it violates the law and lacks any claimed jurisdictional basis.

22

C&S cites one case, *In re Peregrine Entertainment, Ltd.*, 116 B.R. 194 (C.D. Cal. 1990) for the proposition that a levy on a copyright is permissible. This case has been subject of much criticism but even a cursory review of it proves that the relevant cite is dicta.

The court in *Peregrine* specifically pointed to California law to determine whether a voluntary Chapter 11 Debtor could avoid an **un-perfected security interest** under the rights of a hypothetical lien creditor granted a Trustee or Debtor in Possession under 11 U.S.C. § 544.  First, looking to the applicable state law, the Court noted that California law (in contrast to Hawaii) specifically provided for the assertion of such a right a creditor enforcement proceeding.

> To determine this, we must first look to state law, as state law generally determines the validity of liens in bankruptcy cases. *See Danning v. Pacific Propeller, Inc.* ( *In re Holiday Airlines Corp.*), 620 F.2d 731, 735 n. 4 (9th Cir.1980). In California, a creditor who obtains a money judgment may obtain a writ of execution that, when levied on a particular piece of the debtor's property, creates an execution lien on that property. See Cal.Civ.P.Code §§ 699.510, 697.710. This writ may be levied on virtually every type of personal and real property, including accounts receivables and "general intangibles." See Cal.Civ.P.Code §§ 699.710, 700.170. The California Code of Civil Procedure defines general intangibles as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." Cal.Civ.P.Code § 481.115 (incorporating by reference UCC § 9106). The Official Commentary to section 9106 specifically identifies "copyrights, trademarks and patents" as

> included in the definition of general intangibles. It
> appears, **therefore, that at least in California**, a judicial
> lien may, in fact, be used to encumber a copyright.

*Peregrine*, at 200 (citations in the original) (emphasis added).

As stated, in sharp contrast to California law, Hawaii's legislature has determined that Hawaii Courts may not impose a writ of execution on property that cannot be physically possessed by the officer. *See Ferry v. Murata*, 26 Haw. at 699. Under the law of this state, the *Peregrine* case is therefore clearly distinguishable and irrelevant.

The Court in *Peregrine* didn't need to address the issue of involuntary transfer because in *Peregrine*, the copyright owner had **already voluntarily transferred a security interest**, pre-petition to a secured creditor, whose lien the bankruptcy trustee sought to avoid because it was not properly perfected. The pre-petition grant of a security interest was clearly a transfer to the secured creditor enforceable outside of bankruptcy *vis a vis* the debtor. Under 17 U.S.C. § 201(e) where the debtor had filed a voluntary bankruptcy there was no need for the court to enter into the discussion of the Congressional intent regarding involuntary transfers. The cite to the Congressional record is clearly dicta because it was unnecessary based on any reading of the relevant statute. The court in *Perigrine* got the right result so there was no need to appeal the order.

### D.     A Tax Lien is Not A Voluntary Transfer.

In addition, *Perigrine* holds that the initial transfer must be to a non-governmental entity. *Id*. at 206.  In this case, the Statement of Appeal admits that the transfer that it claims was voluntary was to the IRS the Court must find to not be a private party.  The Motion is entirely based on a single false premise: that the tax lien is a "voluntary transfer."  This is patently false and absurd and contrary to controlling 9th Circuit law.   "...Nor is the attachment of a tax lien a voluntary transfer of property."  *See  In re DeMarah*, 62 F.3d 1248, 1250 (9th Cir.1995)(citation omitted).

The United States Congress has spoken to this Court and directs that, until Mr. Berry **voluntarily** parts with his copyright, as opposed to some income stream derived from its voluntary license, this Court and no other court has the power to wench it from him and the *Perigrine* court recognized this requirement.

> As noted above, the Copyright Act recognizes transfers of copyright ownership "in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). Transfer is defined broadly to include any "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright ... whether or not it is limited in time or place of effect." 17 U.S.C. § 101. A judicial lien creditor is a creditor who has obtained a lien "by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). **Such a creditor typically has the power to seize and sell property held by the debtor at**

> **the time of the creation of the lien in order to satisfy the judgment <u>or, in the case of general intangibles such as copyrights, to collect the revenues generated by the intangible as they come due</u>**.

*Perigrine*, 116 B.R. at 205 (citations in the original) (emphasis added).

Claims related to these works are now being litigated under the  jurisdiction of other Federal courts including one that received a related case transferred by this Court to the Southern District of New York. *Wayne Berry v. Deutsche Bank et al.*,01:07 CV 7634 WHP (S.D.N.Y.).  In addition, by filing of the notice of appeal of in the Instant Case, jurisdiction over the copyright in the Instant Case transferred to the Court of Appeals.  The District Court should respect the ongoing actions of another federal court especially where this court has ordered the transfer to another district.

### E.    C&S Is Not the Holder of the Claim and the Bankruptcy Court has Stayed the Collection Proceeding.

To date, Mr. Berry holds judgment against the infringer totaling $284,692.72.   Hogan Dec. ¶ 11.   Despite seeking to enforce an order as a judgment against Mr. Berry, C&S and its counsel have refused to provide debt verification though requested to provide verification to establish C&S' right to seek to recover on the order.  Hogan Dec. ¶ 11.  The facts evidence that the alleged judgment is Fleming's and subject to offset.  Notably, the declaration in support of the motion to obtain the writ made no claim that C&S was the holder of the

judgment that is required by local practice.   Attached to the Hogan Dec. As

Exhibits "11" and "12" are true and correct copies of the relevant declarations filed

by counsel seeking to execute in this case that evidence the reason why they refuse

to provide debt verification is because they were hired by the judgment debtor

Fleming's PCT in this case.  The evidence shows that neither Mr. Christensen nor

C&S are likely the actual holders of the right to collect upon this award that was a

right owned by the Fleming PCT regarding which the Delaware Bankruptcy Court

has ordered that Berry related collections await further order of the Delaware

Bankruptcy Court.  The Bankruptcy Court specifically ordered that the

determination of the Fleming PCT claims and Mr. Berry's claims would be

addressed when there is a final non-appealable order "out of the last court that has

jurisdiction in Hawaii."  *See* Transcript of Proceedings taken on August 28, 2006,

before the Honorable Mary F. Walrath, United States Bankruptcy Judge, in *In re*

*Fleming Companies, Inc*., Bk. No. 03-10945(MFW) (Bankr. Del.), at page 9:15-21.

 Hogan Dec. Exhibit "13."  Keeping Mr. Berry's hands tied while these criminal

infringers proceed would shock the conscious and the Court must deny the appeal

and affirm the Magistrate Judge.

## IV.    CONCLUSION.

For the reasons stated the Magistrate Judge should be affirmed.

DATED:   Honolulu, Hawaii, April 14, 2008.

/S/Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Wayne Berry