The legal authorities hold that a Creditor's Bill is available after a judgment has been entered in favor of the judgment creditor; and after attempts to collect via writ of execution have failed.   Both prerequisites are satisfied here.

By Order entered March 2, 2007, the Honorable Susan O. Mollway awarded attorneys' fees in favor of C&S Wholesale Grocers, Inc. and against Plaintiff Wayne Berry in the amount of $84,758.98.  The March 2 order is a final and enforceable judgment.[2]  There is no stay of execution.

The plaintiff has testified at his judgment debtor examination that he has no assets that could be executed upon.   Y. Hata pre-paid its obligations to Mr. Berry shortly before C&S obtained its judgment, so there is nothing that can be garnished. The only thing that Mr. Berry claims to own of any value are his copyrights and his causes of action.

While C&S doubts that there is any actual value to the copyrights or causes of action, C&S would be willing to bid for them in the hope that C&S's ownership of the copyrights will help get Mr. Berry will stop suing C&S.

## 5.    THE SALE WILL BE SUBJECT TO PRIOR LIENS THAT ATTACHED TO MR. BERRY'S ASSETS BEFORE THE JUDGMENT WAS ENTERED

On February 1, 2000, several years before entry of C&S's judgment, the United States (through the Internal Revenue Service) issued and recorded a tax lien

---

[2] See Order Declining Defendants' Request For Additional Entry Of Judgment

against Mr. Berry a true and correct copy of which is attached hereto as Exhibit "A."
The tax lien states:

> As provided by section 6321, 6322 and 6323 of the
> Internal Revenue Code, we are giving notice that taxes
> (including interest and penalties) have been assessed
> against the following-named taxpayer.  We have made a
> demand for payment of this liability but it remains unpaid.
> Therefore, there is a lien in favor of the United States on
> all property and rights to property belonging to this
> taxpayer for the amount of these taxes, and additional
> penalties, interest, and costs that may accrue.

Exhibit "A."[3]

The tax lien effected a "transfer" of Mr. Berry's copyrights.  "Transfer of
copyright ownership" is defined as "an assignment, mortgage, exclusive license, or
any other conveyance, alienation, or hypothecation of a copyright or of any of the
exclusive rights comprised in a copyright...." 17 U.S.C. §101.  Broadcast Music, Inc.
v. Hirsch, 104 F.3d 1163 (9th Cir. 1997).

Because the transfer effected by the IRS lien was first in time and because the
transfer was perfected immediately, without any need for filing with the Copyright
Office (26 U.S.C. §§ 6322, 6323(f)(5)) the IRS lien has priority over the rights of
C&S and the other creditors in this case.  Broadcast Music, Inc. v. Hirsch, 104 F.3d

---

entered herein on May 21, 2007.

[3] It is unknown whether Mr. Berry has additional liability to the Internal Revenue
Service in light of the his testimony in August of 2007 that he did not file tax
returns until 2007 for the years 2002 through 2006.  (Judgment Debtor Exam, page
26).

1163 (9th Cir. 1997).   Under Hawaii law, the sale of Berry's registered and unregistered copyrights and causes of action shall transfer all of Berry's interest in these items, subject to any prior liens, such as the lien, or liens, in favor of the Internal Revenue Service.   Accordingly, Mr. Berry's copyrights should be sold subject to the IRS's lien.   Haw. Rev. Stat. §651-49.

Regardless of whether the remedy is named "Execution" or "Creditor's Bill", the sale should be ordered and carried out as follows:

1.  The Court should enter an order granting this motion and ordering that Mr. Berry's enumerated registered copyrights, unregistered copyrights and causes of action be sold and the proceeds (after payment of costs of the sale) applied to C&S's judgment.  The Court's authority to enter the order is based on Haw. Rev. Stat. Chapter 651 or the inherent power of the Court, recognized under Hawaii law to order a sale of a judgment debtor's copyrights, patents and causes of action in order to satisfy outstanding judgments.  Byrne v. Allen, 10 Haw. 668 (1897) ("**A patent or a copyright can be reached by this means, even a right of action for injury to the debtor's property**").

2.  The Court's order should direct the Sheriff of the State of Hawaii to conduct the sale.

3.  The Sheriff should be ordered to record the Court's order in the United States Copyright Office (pursuant to the procedures of the copyright office).

4. The Order should require that the sale be advertised for a period of thirty (30) days;

5. On the day and place set forth in the advertisement, the order should direct the Deputy Sheriff to conduct a public auction of all of Mr. Berry's registered and unregistered copyrights as well as all causes of action for infringement and all rights existing in any pending lawsuits.

6. The Deputy Sheriff should be ordered to file a report in the Court, stating the amount of the high bid at the auction and the amount of his fees and expenses and seeking the Court's approval of the sale at the high bid.

7. The Court should consider, and if appropriate, approve the sale, and order Mr. Berry to transfer to the high bidder of all of Wayne Berry's registered and unregistered copyrights as well as all causes of action and all rights and claims existing in any pending lawsuits.

8. If Mr. Berry refuses to comply with the Court's order, the Court can consider a motion pursuant to Fed. R. Civ. P. 70 for appointment of the Deputy Sheriff or other person to sign the transfers of copyrights and record them in the Copyright Office.

## 6. THE ASSETS THAT ARE THE SUBJECT OF THIS EXECUTION HAVE LITTLE OR NO VALUE

In the past ten years, Mr. Berry cannot recall ever receiving any money for any item whose copyright he has registered. (August 13, 2007 Deposition of Wayne

Berry, pages 89 through 115 – Exhibit "B" attached hereto).  Although these copyrights obviously have no value on the open market, they have value to C&S and the other judgment creditors in this case because ownership of the copyrights and the other property may help to get Mr. Berry to stop suing them.

Execution on Mr. Berry's copyrights, causes of action and pending lawsuits is necessary because all other, more traditional, methods of attempting to satisfy the judgment have been stymied.  On August 13, 2007, Mr. Berry failed to produce any portion of his bank statements, except the first page.  He stated that he does not have possession or control of the rest of the statements because he deliberately throws them out when they arrive in the mail.  In the entire judgment debtor examination, he failed to identify anything he owns of any value and failed to identify any source of future income.[4]

The judgment in C&S's favor is still outstanding and has not been satisfied in whole or in part.

## 7.    SECTION 201(e) OF THE COPYRIGHT ACT IS INAPPLICABLE

It is anticipated that Mr. Berry will oppose this motion on the basis of 17 U.S.C. §201(e).  However, Mr. Berry's reliance on §201(e) is misplaced for several reasons.  Section 201(e) provides:

---

[4] Although Mr. Berry has an ongoing contractual relationship with Y. Hata, he has made some kind of a deal in which Y. Hata received a discount for prepaying their obligations to Mr. Berry, so nothing is owed at the present time.  When he was

12

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

In the first place, Section 201(e) only addresses:

> actions initiated by governmental bodies, not with those where, as in the case of a judgment lienholder, the instruments of government are merely acting in furtherance of private objectives. Indeed, it appears that the section was intended to prevent expropriations of copyrights by foreign governments in their efforts to suppress the works of dissident authors.

In re Peregrine Entertainment, Ltd., 116 B. R. 194 (C.D. Cal. 1990) n16.

C&S is not, nor is this Court, acting as a "governmental body" or "official organization" as described in Section 201(e).  Rather, C&S is merely enforcing its private right of a judgment creditor to be paid.  Section 201(e) has no applicability under these circumstances.  As the Hawaii Supreme Court confirmed in Crescent City Motors, if the judgment debtor could sell it, his creditors are entitled to have it sold and the proceeds applied to their judgment.  31 Haw. at 426.  As one scholar has observed:

> Construction of [Section 201(e)], however, should consider its purpose.  It was the concern of Congress that

asked for the specifics of this "deal" Mr. Berry testified that he couldn't remember.

13

> the Soviet Union would use the copyright laws to control dissemination of works by Soviet authors of which it did not approve. Potentially, the Soviet government would seize the copyright and then, as owner of the copyright, restrict publication and distribution of the work. Section 201(e) was incorporated to provide the basis for United States courts to refuse to recognize such involuntary transfers.

Peter A. Alces, Commercial Law of Intellectual Property, Section 4.3.3.2. pages 139-40.

Section 201(e) thus prevents foreign governments such as the old Soviet Union, from using expropriation powers to control or prevent the publication of the writings of Alexandr Solzhenitsyn, and other dissident authors. The House Report expressly confirms that the purpose of Section 201(e) is to:

> "Protect foreign authors against laws and decrees purporting to divest them of their rights under the United States copyright statute, and would protect authors within the foreign country who choose to resist such covert pressures."

H. Rep. No. 94–1476 (1978).

Obviously, Section 201(e) does not apply here, as no foreign government has sought to divest Wayne Berry of any rights. The instant matter deals only with the private rights of creditors to enforce their judgments against Mr. Berry's personal property. This case is obviously not impacted by Section 201(e) of the Copyright Act.

Additionally, the IRS filed a tax lien against Mr. Berry in the year 2000, which

has not been satisfied. The filing of the tax lien transferred the copyrights. The

Copyright Act's definition of transfer includes attachment of a lien. <u>Broadcast</u>

<u>Music, Inc. v. Hirsch</u>, 104 F.3d 1163 (9th Cir. 1997). And the Internal Revenue

Code's definitions of the taxpayer's property subject to tax lien include copyrights.

26 USC §6321 ("all property and rights to property, whether real or personal,

belonging to such person").

Because Section 201(e) only applies where "an individual author's ownership

of a copyright … has not previously been transferred voluntarily…" Section 201(e)

is inapplicable to the copyrights that are the subject of this motion.

Mr. Berry's transfers to the IRS and to C&S are voluntary within the meaning

of Section 201(e). This is because it was Mr. Berry's voluntary actions that resulted

in the liens against his assets in favor of the IRS and C&S. The house report

explains:

> Traditional legal actions that may involve transfer of
> ownership, such as bankruptcy proceedings and mortgage
> foreclosures, are not within the scope of this subsection;
> the authors in such cases have voluntarily consented to
> these legal processes by their overt actions—for example,
> by filing in bankruptcy or by hypothecating a copyright.

House Report 94–1476 (1978). In this case, Mr. Berry's overt, voluntary actions of

incurring, and not paying, liability to the IRS and his voluntary filing and pursuing

the lawsuit that resulted in the judgment in C&S's favor are all that is required to

proceed with enforcement of the judgment against Mr. Berry's copyrights.

The IRS has a recorded lien encumbering all of Mr. Berry's copyrights and can sell them to satisfy Mr. Berry's unpaid tax liability. Broadcast Music, Inc. v. Hirsch, 104 F.3d 1163 (9th Cir. 1997). It has the power to auction Mr. Berry's copyrights in order to satisfy Mr. Berry's tax liability. 26 USC §6321. The already-accomplished transfer to the IRS confirms that Section 201(e) does not preclude issuance of a writ of execution, or "creditor's bill in equity", and sale to the highest bidder of Mr. Berry's copyrights and other intangible assets. Since the IRS can sell it, there is no reason a judgment creditor such as C&S cannot do the same thing.

It is irrelevant that the Ninth Circuit has held that an IRS tax lien is not "voluntary" for purposes of Bankruptcy Code, 11 U.S.C. §522 which defines certain transfers that can be voided by the bankruptcy trustee, In re DeMarah, 62 F.3d 1248 1250 (9th Cir.1995). In contrast, the point of the word "voluntary" in Section 201(e) is that the lien is the result of the debtor's voluntary actions, not a government expropriation. See Alces, Id. Just as a debtor in bankruptcy or a borrower in foreclosure, the natural consequences of Mr. Berry's voluntary actions (attachment of liens) are all that is required to make the lien voluntary. Mr. Berry's "overt actions" of ignoring his obligation to pay taxes, and filing a meritless copyright lawsuit against C&S confirm that Section 201(e) does not apply.

In accordance with the foregoing authorities, C&S respectfully urges that the

Court should grant this motion and order that Mr. Berry's registered and unregistered

copyrights be sold in order to satisfy Mr. Berry's liability.

DATED:  Honolulu, Hawaii, June 5, 2008.

KOBAYASHI, SUGITA & GODA

/s/ Lex R. Smith
LEX R. SMITH
Attorney for Defendant
C&S Wholesale Grocers, Inc.