IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, | ) | CIVIL NO. 03-00385 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIAN EXPRESS SERVICE, INC., ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER, FILED NOVEMBER 17, 2008

Before the Court is Defendant C&S Wholesale Grocers, Inc.'s ("C&S") Motion for Enforcement of Protective Order, filed November 17, 2008 ("Motion"). Plaintiff Wayne Berry ("Plaintiff") filed his memorandum in opposition to the Motion on December 4, 2008, and C&S filed its reply on December 8, 2008. The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  The hearing on the Motion, currently set for December 22, 2008 at 9:35 a.m., is HEREBY VACATED.  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, this Court HEREBY GRANTS C&S's Motion.

### BACKGROUND

In 1999, Plaintiff granted Defendant Fleming Companies,

Inc. ("Fleming")[1] a no-charge user license for his Freight Control System software ("FCS").  On July 3, 2001, Plaintiff filed a multi-count complaint in another action against Fleming alleging, *inter alia*, that it infringed the FCS copyright.  On March 6, 2003, a jury found for Plaintiff on one count of copyright infringement, finding that Fleming wilfully made unauthorized changes to the FCS.

After the verdict, Fleming attempted to revert back to the version of FCS that Plaintiff licensed to it in 1999.  The instant case arose primarily from the alleged infringements after the 2003 verdict.  C&S purchased Fleming's wholesale operations and Plaintiff alleged that C&S continued to use the infringing works that Fleming used.

On June 27, 2005, the district judge, *inter alia*, granted summary judgment in favor of C&S on all counts and granted summary judgment in favor of Plaintiff and against Fleming as to the alleged direct infringement between March 7, 2003, and June 9, 2003, based on its use of an altered version of FCS.  The case proceeded to trial on the issues of damages for the direct infringement and whether Fleming was vicariously liable for the infringement of Fleming's employees.  On March 7,

---

[1] Fleming filed Chapter 11 bankruptcy on April 1, 2003.  The Post Confirmation Trust ("PCT") was created to hold Fleming's assets and liabilities for the benefit of Fleming's creditors.  Mid-way through this action, PCT took over the defense of the claims against Fleming.

2006, the jury entered its verdict.  The jury found that Plaintiff established that he was entitled to $57,530.00 in actual damages from PCT, $2 from Mark Dillon, and $2 from Teresa Noa.  The jury also found that Fleming was vicariously liable for the employees' infringement.  On March 16, 2006, a Second Amended Judgment was issued, addressing all of Plaintiff's claims against all of the defendants.

On October 25, 2006, this Court issued a Report of Special Master recommending, *inter alia*, that the district judge award C&S $84,758.98 in attorneys' fees and costs.  The district judge adopted this recommendation in a March 2, 2007 order.

The Ninth Circuit affirmed the district judge's rulings on appeal.  The Ninth Circuit issued its Mandate on July 22, 2008.

On November 17, 2008, C&S filed the instant Motion. C&S seeks a determination of the parties' rights and responsibilities under the Protective Order that Discovery Master Clyde Matsui ("Discovery Master") filed on April 12, 2005.[2] [Exh. A to Motion.]  C&S states that the only remaining aspects

---

[2] On April 15, 2005, this Court adopted the Discovery Master's Protective Order and granted Plaintiff's ex parte request for a stay of the protective order until Plaintiff filed an appeal of the order and the district judge issued her ruling on that appeal. [Entering Order, filed 4/15/05 (dkt. no. 460).] On May 9, 2005, the district judge affirmed the Protective Order and denied Plaintiff's request to stay the Protective Order. [Order Affirming Protective Order of Master Adopted by Magistrate Judge on April 15, 2005, filed 5/9/05 (dkt. no. 496).]

of the litigation are the outstanding attorney's fee awards, for both the district court and appellate proceedings, in favor of C&S and others.  C&S argues that the Protective Order and the Discovery Master's other orders require that protected materials produced during discovery be returned after the case is over.  C&S states that all materials have been returned except for a disk drive that C&S's counsel, Lex Smith, Esq.,[3] produced on September 21, 2005 ("Disputed Drive").[4]  C&S argues that Plaintiff should not have sought production of the Disputed Drive in the first place and that Plaintiff has no basis to retain it now that the case is over.

On May 26, 2005, the Discovery Master ordered Defendant Guidance Software, Inc. ("Guidance") to produce thousands of software files that Plaintiff alleged contained his trade secrets ("Discovery Master's Order").[5]  [Exh. B to Motion (Order Granting

---

[3] Mr. Smith also served as Fleming's counsel.

[4] A copy of the letter transmitting the Disputed Drive to Plaintiff's counsel is attached to the Motion as Exhibit C.

[5] In its reply in support of the Motion, C&S explains that Fleming hired Guidance to, *inter alia*: (1) preserve evidence by taking an image of everything on Fleming's Logistics network (the "before image"); (2) delete everything on the network; (3) reinstall only the files that were not created by Plaintiff; and (4) take another image of everything on the network (the "after image").  In 2005, Plaintiff produced a list of "suspect files" on the before image and a list of suspect files on the after image.  The Discovery Master's Order required that all files on Plaintiff's lists be produced.  According to C&S, Guidance produced the after image first because it was smaller.  After the
(continued...)

Fleming Companies, Inc.'s Post-Confirmation Trust's Request Re: Production of Guidance Software Materials).] The Discovery Master's Order stated that the production would be deemed "Highly Confidential-Attorneys' Eyes Only", subject to the Protective Order. Mr. Smith produced the Disputed Drive pursuant to the Discovery Master's Order, after attempting to remove files that were shielded by the attorney-client privilege. Plaintiff has now refused to return the Disputed Drive, arguing that there was no sticker on it identifying it as falling under the Protective Order.

After Mr. Smith produced the Disputed Drive, Plaintiff's counsel complained that some of the files in question were missing. C&S discovered that several thousand files were omitted and it produced the additional files. Plaintiff's counsel has since returned the additional files.

C&S states that the Disputed Drive contains attorney-client communications and Fleming's internal business records. C&S argues that Plaintiff and Plaintiff's counsel have no right to possess these files now that the case is over. C&S asks this

---

[5](...continued)
production, Fleming's local counsel, Mr. Smith, notified Plaintiff's counsel that Plaintiff's suspect files included attorney-client privileged documents. Plaintiff's counsel immediately sent the disk to Mr. Smith. Therefore, before it produced the disk of the before image, Guidance sent it to Mr. Smith for the identification of any attorney-client communications.

Court to order Plaintiff and Plaintiff's counsel to return the Disputed Drive, along with any copies of files that were on it.

Plaintiff filed his memorandum in opposition on December 4, 2008.  Plaintiff argues that the Disputed Drive was not produced pursuant to either the Protective Order or the Discovery Master's Order.  The Discovery Master's Order required Guidance to produce images to PCT and Plaintiff, but Guidance did not comply.  Plaintiff asserts that the Disputed Drive was produced by Mr. Smith in his capacity as PCT's counsel during the portion of the case addressing Plaintiff's claim for damages against the Fleming defendants.  Plaintiff consistently took the position that the Disputed Drive was not covered by the Protective Order, which requires that protected material be properly identified.

Plaintiff also contends that C&S does not have standing to request the return of the Disputed Drive because C&S did not produce it and C&S does not have standing to assert Fleming's attorney-client privilege.  C&S had already been dismissed as a party when the Disputed Drive was produced and all of the files on the Disputed Drive predate C&S acquisition of Fleming's wholesale operations.  Plaintiff emphasizes that, in denying his motion for a permanent injunction, the district judge accepted C&S's representation that it was not using and did not have any of Plaintiff's works.  Plaintiff argues that C&S cannot now claim

that it has an ownership interest in Plaintiff's and Fleming's works on the Disputed Drive.  Plaintiff argues that, if C&S is to prevail in this Motion, it must provide some proof that it purchased the works on the Disputed Drive from Fleming.  The purchase of Fleming's operations alone is not sufficient.  Plaintiff therefore argues that C&S cannot establish that there is good cause to protect the Disputed Drive.

In the alternative, Plaintiff argues that the action is not concluded because he has an ongoing right to enforce the permanent injunction against C&S's freight forwarder, Defendant Hawaiian Express Service, Inc. ("Hawaiian Express").[6]  Thus, even if the Protective Order applied, Plaintiff is not required to return the Disputed Drive because the action is not concluded.

Plaintiff also states that the court in Fleming's bankruptcy proceedings will soon address the disposition of Fleming's versions of his unlicensed works.  Plaintiff argues that the files on the Disputed Drive may be necessary in those proceedings.  Plaintiff asserts that, if PCT has any rights in the files on the Disputed Drive, this Court should allow the Delaware bankruptcy court to determine the issue.

Finally, Plaintiff states that the Copyright Act was recently amended and that the amendment reflects an intent to

---

[6] The Stipulated Injunction; Order, filed on July 25, 2005 is attached to Plaintiff's memorandum in opposition to the Motion as Exhibit 12.

crack down on commercially motivated infringement.  Plaintiff argues that to order him to give C&S the Disputed Drive would be inconsistent with the amendments to the Copyright Act.

C&S filed its reply in support of the Motion on December 8, 2008.  C&S emphasizes that no court has ever held that any file on the Disputed Drive contains anything belonging to Plaintiff or Plaintiff's counsel.  It contains mostly Fleming business records, but also contains communications between Mr. Smith, Damian Capozzola, and other attorneys, with Mark Dillon and other Fleming employees, who are now C&S employees.  C&S argues that the files will be used to harass and annoy C&S and its employees if Plaintiff does not return or destroy the Disputed Drive.  C&S also argues that the files on the Disputed Drive have no relevance to the Stipulated Injunction between Plaintiff and Hawaiian Express.  Finally, C&S argues that, even if the Disputed Drive did not have a "highly confidential" sticker on it, Plaintiff's counsel knew that the drive was being produced pursuant to the Discovery Master's Order, which ordered that the production be considered highly confidential.

## DISCUSSION

Federal Rules of Civil Procedure, Rule 26(c)(1) provides that "[a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense . . . ."  Fed. R. Civ. P. 26(c)(1).  Once a protective order is issued, a party seeking enforcement of the terms of the order may bring a motion under Federal Rule of Civil Procedure 37(b), which provides possible sanctions for failing to comply with a court order.  See Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 935 (9th Cir. 1993) (citing Fed. R. Civ. P. 37(b)(2), Advisory Committee Note, 1970 Amendment, subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders.)). Even where an action has concluded, a district retains the power to enforce protective orders that it has entered.  See id. at 934 ("'[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court.'" (quoting In re Debs, 158 U.S. 564, 594 (1895)) (alteration in original) (some citations omitted)).

   The relevant portions of the Protective Order provides as follows:

> **Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this proceeding, each Receiving Party must return all Protected Material to the Producing Party upon written request from the Producing Party, at Producing Party's cost. . . .**  As used in this Section, "all Protected

>     Material" includes all copies, or any other form
>     of reproducing any of the Protected Material.  The
>     Receiving Party shall destroy any summaries,
>     compilations, and abstracts of all Protected
>     Material prepared by the Receiving Party.  With
>     permission in writing from the Designating Party,
>     the Receiving Party may destroy some or all of the
>     Protected Material instead of returning it.  In
>     either event, the Receiving Party must submit to
>     the Producing Party (and, if not the same, to the
>     Designating Party) a written certification that
>     the Receiving Party has complied with all of its
>     obligations hereunder and has returned or
>     destroyed all Protected Material and all
>     summaries, compilations, and abstracts of all
>     Protected Material prepared by Receiving Party
>     within sixty days following a written request from
>     the Producing Party. . . .

[Protective Order at 24-25, ¶ 12 (emphasis added).]  "Protected Material" is defined as "any Discovery Material that is designated as 'Confidential' or as 'Highly Confidential - Attorneys' Eyes Only.'"  [Id. at 5, ¶ 2.14.]  Information and items that are "Highly Confidential - Attorneys' Eyes Only" are defined as "extremely sensitive 'Confidential Information', disclosure of which, to another Party or nonparty, would create a substantial risk of serious injury that could not be avoided by less restrictive means."  [Id. at 4, ¶ 2.8.]

According to the Protective Order, any discovery that a party asserts is Highly Confidential - Attorneys' Eyes Only Information must be clearly designated as such, according to the time and manner set forth in the Protective Order.  [Id. at 7, ¶ 5.2.]  However, the Protective Order also provides that "[i]f only portions of the information or item are Protected Material,

10

the Producing Party, to the extent practicable, shall identify only the Protected Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  [Id. at 10 ¶ 5.3(e).]

The Discovery Master's Order required Plaintiff to provide Guidance and the Discovery Master with electronic versions of the list of files he identified as suspect.  The Discovery Master further ordered Guidance to produce the identified files to Plaintiff after it received the electronic lists.  The Discovery Master's Order stated: "Said production shall be identified, and considered, as **'Highly Confidential-Attorneys' Eyes Only'**, and subject to the Protective Order . . . ."  [Discovery Master's Order at 3 (emphasis in original).]

Plaintiff admits that Mr. Smith produced the Disputed Drive, although Plaintiff contends Mr. Smith was PCT's counsel (and not C&S's counsel) at the time of the production.  Mr. Smith produced the Disputed Drive to Plaintiff on September 21, 2005.  [Exh. C to Motion (Letter dated 9/21/05)].  At the time, C&S's motion for summary judgment had been granted.  [Order Granting C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers, Inc., C&S Acquisition, LLC, ES3, LLC, and Richard Cohen's Motion for Summary Judgment, filed 6/27/05 (dkt. no. 569).]  PCT, however, had an obligation to produce certain documents in the litigation and these documents were apparently in the control of C&S who, in turn, produced the Disputed Drive as set forth in Mr. Smith's

letter.  At the time of the production, Mr. Smith was C&S's counsel of record.  This Court finds therefore that C&S was the producing party for purposes of the Protective Order.

While Plaintiff argues that the Disputed Drive is not subject to the Protective Order, this Court finds otherwise.  The Protective Order extends to all discovery that the Discovery Master ordered produced.  As the Discovery Master order the Disputed Drive to be produced, the Disputed Drive is therefore "protected material" under the Protective Order.  The proceeding pursuant to which the Protective Order was entered was terminated on March 16, 2006 when the Second Amended Judgment was entered in this action.

Accordingly, this Court hereby GRANTS Defendant C&S Wholesale Grocers, Inc.'s Motion for Enforcement of Protective Order, filed November 17, 2008.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 16, 2008.



　　　　　　　　　　　　　　　　/S/ Leslie E. Kobayashi
　　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　　United States Magistrate Judge

**WAYNE BERRY V. HAWAIIAN EXPRESS SERVICES, INC., ET AL; CIVIL NO. 03-00385 DAE-LEK; ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER, FILED NOVEMBER 17, 2008**